**No. 20-17490**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PANGEA LEGAL SERVICES, et al.
Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.
Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

### APPELLANTS' OPENING BRIEF

JOHN V. COGHLAN
*Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
PATRICK GLEN
CHRISTINA P. GREER
*Senior Litigation Counsel*
CRAIG NEWELL
*Trial Attorney*

## TABLE OF CONTENTS

INTRODUCTION..................................................................................1

STATEMENT OF JURISDICTION........................................................6

STATEMENT OF THE ISSUES............................................................6

PERTINENT STATUTES AND REGULATIONS..................................7

STATEMENT OF THE CASE................................................................7

I.    Legal Background.......................................................................7

II.   Factual Background ...................................................................8

II.   Procedural History .................................................................10

SUMMARY OF ARGUMENT.............................................................12

STANDARD OF REVIEW ..................................................................15

ARGUMENT ......................................................................................15

I.    The Injunction Should Be Vacated Because the Merits and All Other
Factors Weigh Strongly Against Injunctive Relief....................................15

      A.    The Rule Is a Valid Exercise of Asylum Authority ............................15

      B.    The Rule is Neither Arbitrary Nor Capricious....................................25

      C.    The Rule Is Procedurally Valid..........................................................34

      D.    Equitable Factors Foreclose a Preliminary Injunction........................38

II.   Even If Injunctive Relief Were Warranted, the District Court's
Nationwide Injunction Is Vastly Overbroad and Should Be Narrowed 41

**CONCLUSION**................................................................................................**43**

**CERTIFICATE OF SERVICE** .................................................................**45**

**STATEMENT OF RELATED CASES**.............................................................**46**

**CERTIFICATE OF COMPLIANCE** ...............................................................**46**

# TABLE OF AUTHORITIES

## CASE LAW

*Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*,
  926 F.3d 1061 (9th Cir. 2019) ............................................................................33

*Am. Mining Cong. v. EPA*,
  965 F.2d 759 (9th Cir. 1992) .................................................................. 5, 14, 32

*Barton v. Barr*,
  140 S. Ct. 1442 (2020) ........................................................................................21

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984) .............................................................................................40

*Cal-Almond, Inc. v. U.S. Dep't of Agric.*,
  14 F.3d 429 (9th Cir. 1993) .................................................................................37

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ........................................................................ 42, 43

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) ...............................................................................39

*City & Cty. of San Francisco v. USCIS*,
  944 F.3d 773 (9th Cir. 2019) ...................................................................15, 34, 39

*City & Cty. of San Francisco v. Trump*,
  897 F.3d 1244 (9th Cir. 2018) .............................................................................42

*City of Los Angeles v. Barr*,
  929 F.3d 1163 (9th Cir. 2019) .............................................................................26

*City of Sausalito v. O'Neill*,
  386 F.3d 1186 (9th Cir. 2004) .............................................................................35

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019) ........................................................................................23

*E. & J. Gallo Winery v. Andina Licores S.A.*,
446 F.3d 984 (9th Cir. 2006) ..................................................................15

*East Bay Sanctuary Covenant v. Barr*,
909 F.3d 1241 (9th Cir. 2018) ..............................................................40

*East Bay Sanctuary Covenant v. Barr*,
934 F.3d 1026 (9th Cir. 2019) ............................................... 41, 42, 43

*East Bay Sanctuary Covenant v. Trump*,
950 F.3d 1242 (9th Cir. 2020) ................................. 3, 13, 17, 20, 22, 40

*East Bay Sanctuary Covenant v. Barr*,
964 F.3d 832 (9th Cir. 2020) ........................................ 3, 13, 16, 17, 22

*East Bay Sanctuary Covenant v. Trump*,
932 F.3d 742 (9th Cir. 2018) ....................................................... 18, 39

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ..............................................................................29

*Fook Hong Mak v. INS*,
435 F.2d 728 (2d Cir. 1970) ..................................................................18

*Gill v. U.S. Dep't of Justice*,
913 F.3d 1179 (9th Cir. 2019) ..............................................................26

*Gill v. Whitford*,
138 S. Ct. 1916 (2018)................................................................. 41, 43

*Innovation Law Lab v. McAleenan*,
924 F.3d 503 (9th Cir. 2019) ................................................................40

*INS v. Aguirre-Aguirre*,
526 U.S. 415 (1999) ..............................................................................16

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ...................................................... 40, 42

iv

*L.A. Haven Hospice, Inc. v. Sebelius*,
   638 F.3d 644 (9th Cir. 2011) ..................................................................41

*Lamie v. United States Trustee*,
   540 U.S. 526 (2004) ...........................................................................21

*Landon v. Plasencia*,
   459 U.S. 21 (1982) .............................................................................38

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973) ...........................................................................40

*Lopez v. Davis*,
   531 U.S. 230 (2001) ...........................................................................18

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ...........................................................................41

*Marx v. General Revenue Corp.*,
   568 U.S. 371 (2013) ...........................................................................21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
   463 U.S. 29 (1983) ................................................................. 26, 29, 31

*Municipality of Anchorage v. United States*,
   980 F.2d 1320 (9th Cir. 1992) ............................................................37

*Phillips Petroleum Co. v. EPA*,
   803 F.2d 545 (10th Cir. 1986) ..................................................... 34, 36

*Portland Cement Ass'n v. EPA*,
   665 F.3d 177 (9th Cir. 2011) ..............................................................37

*Power Corp. v. NRDC*,
   435 U.S. 519 (1978) ...........................................................................35

*Rimini Street, Inc. v. Oracle USA, Inc.*,
   139 S. Ct. 873 (2019) .........................................................................22

*Riverbend Farms, Inc. v. Madigan*,
    958 F.2d 1479 (9th Cir. 1992) ............................................................... 34, 35, 36

*Sacora v. Thomas*,
    628 F.3d 1059 (9th Cir. 2010) ................................................................... 25, 26

*Sure-Tan, Inc. v. NLRB*,
    467 U.S. 883 (1984) ...........................................................................................40

*Torres v. Lynch*,
    136 S. Ct. 1619 (2016).........................................................................................23

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018).........................................................................................20

*Trump v. Int'l Refugee Assistance Project*,
    137 S. Ct. 2080 (2017)................................................................................... 38, 41

*Va. Soc'y for Human Life v. FEC*,
    263 F.3d 379 (4th Cir. 2001) ..............................................................................42

## ADMINISTRATIVE DECISIONS

*Matter of D-A-C-,*
    27 I&N Dec. 575 (BIA 2019)...............................................................................18

*Matter of Thomas and Thompson*,
    27 I&N Dec. 674 (A.G. 2019)....................................................................... 29, 30

## STATUTES

5 U.S.C. § 553 ...................................................................................... 34, 35

8 U.S.C. § 1158............................................................................... 6, 7, 19

8 U.S.C. § 1158(a)(2)(A) ......................................................................16

8 U.S.C. § 1158(b)(1)(A) ................................................................ 7, 16,

8 U.S.C. § 1158(b)(2)(A) ............................................................... 20, 24

8 U.S.C. § 1158(b)(2)(A)(i) ...................................................................17

8 U.S.C. § 1158(b)(2)(A)(i)-(iv) ..............................................................7

8 U.S.C. § 1158(b)(2)(A)(i)-(v) .............................................................16

8 U.S.C. § 1158(b)(2)(A)(ii) ..................................................................17

8 U.S.C. § 1158(b)(2)(A)(iii) .................................................................17

8 U.S.C. § 1158(b)(2)(A)(iv)-(v) ...........................................................17

8 U.S.C. § 1158(b)(2)(A)(v)-(vi) ...........................................................17

8 U.S.C. § 1158(b)(2)(A)(vi) .................................................................16

8 U.S.C. § 1158(b)(2)(B)(i) ................................................................7, 24

8 U.S.C. § 1158(b)(2)(B)(ii) ....................................................................8

8 U.S.C. § 1158(b)(2)(B)(iv) ...................................................................3

8 U.S.C. § 1158(b)(2)(C) ...................................... 1, 2, 8, 12, 16, 18, 19, 20

8 U.S.C. § 1159(b) ................................................................................31

8 U.S.C. § 1231(a)(5)....................................................................... 17, 22

8 U.S.C. § 1231(b)(2)(B)(ii) .......................................................... 3, 13, 19

8 U.S.C. § 1231(b)(2)(B)(iv) ......................................................... 3, 13, 19

8 U.S.C. § 1231(b)(3)(1) .......................................................................32

8 U.S.C. § 1231(b)(3)(A) .....................................................................8, 31

8 U.S.C. § 1252(a)(5)............................................................................42

8 U.S.C. § 1252(b)(9)............................................................................42

8 U.S.C. § 1427 ...................................................................................................31

28 U.S.C. § 1292(a)(1) ..........................................................................................6

28 U.S.C. § 1331 .....................................................................................................6

## FEDERAL REGULATIONS

8 C.F.R. § 208.13 ...................................................................................................25

8 C.F.R. § 208.16(c) ...............................................................................................8

8 C.F.R. § 1208.13 ................................................................................................25

8 C.F.R. § 1208.16(c) .............................................................................................8

8 C.F.R. § 1208.16(f) ...................................................................................... 31, 32

8 C.F.R. § 1208.24(b) ..................................................................................... 31, 32

8 C.F.R. § 1208.24(f) ...................................................................................... 31, 32

## FEDERAL RULES OF APPELLATE PROCEDURE

Fed. R. App. P. 4(a)(1)(B) .....................................................................................6

Fed. R. App. P. 27 ................................................................................................46

## FEDERAL REGISTER

84 Fed. Reg. 69,640 ...............................................................................................8

84 Fed. Reg. 69,647 .............................................................................................27

84 Fed. Reg. 69,648 ..................................................................................... 27, 28

84 Fed. Reg. 69,650 .............................................................................................28

84 Fed. Reg. 69,651 .............................................................................................28

84 Fed. Reg. 69,652 ......................................................................... 27, 28

84 Fed. Reg. 69,653 ..............................................................................28

84 Fed. Reg. 69,654 ..............................................................................28

84 Fed. Reg. 69,655-56 .........................................................................28

84 Fed. Reg. 69,659-61 .........................................................................38

85 Fed. Reg. 67,202 ............................................................................1, 9

85 Fed. Reg. 67,204 ..............................................................................35

85 Fed. Reg. 67,204-05 .........................................................................32

85 Fed. Reg. 67,207-08 .............................................................. 5, 14, 33, 37

85 Fed. Reg. 67,209 ..............................................................................27

85 Fed. Reg. 67,211 ..............................................................................29

85 Fed. Reg. 67,213 ..............................................................................32

85 Fed. Reg. 67,214 ..............................................................................33

85 Fed. Reg. 67,219 ......................................................................... 27, 33

85 Fed. Reg. 67,222 ......................................................................... 28, 32

85 Fed. Reg. 67,223 ..............................................................................33

85 Fed. Reg. 67,224-26 .........................................................................28

85 Fed. Reg. 67,225 ............................................. 2, 4, 13, 17, 23, 26, 30, 32, 34, 38

85 Fed. Reg. 67,225-26 ................................................................. 4, 13, 30

85 Fed. Reg. 67,226 ..............................................................................33

85 Fed. Reg. 67,227 ...................................................................................34

85 Fed. Reg. 67,227-28 ...........................................................................28

85 Fed. Reg. 67,228 ...................................................................................33

85 Fed. Reg. 67,229 ................................................................... 27, 28, 34

85 Fed. Reg. 67,230 ...................................................................................33

85 Fed. Reg. 67,231 ...................................................................... 4, 13, 28

85 Fed. Reg. 67,233-34 ........................................................................ 28, 33

85 Fed. Reg. 67,236 ...................................................................................28

85 Fed. Reg. 67,242 ...................................................................................27

85 Fed. Reg. 67,242-43 ........................................ 1, 4, 12, 13, 30, 32, 38

85 Fed. Reg. 67,245 ...............................................................................4, 13

85 Fed. Reg. 67,247 ........................................................................... 28, 31

85 Fed. Reg. 67,248 ...................................................................................31

85 Fed. Reg. 67,249 ........................................... 1, 4, 12, 13, 23, 30, 38

85 Fed. Reg. 67,252 .............................................. 1, 4, 12, 13, 38

85 Fed. Reg. 67,528 ...................................................................................17

85 Fed. Reg. 67,528-29 ...........................................................................17

## EXECUTIVE ORDERS

Executive Order 12866, *Regulatory Planning and Review*, 58 Fed. Reg. 51,735
   (Sept. 30, 1993) .....................................................................................36

**INTRODUCTION**

The district court has entered a nationwide injunction barring enforcement of an important final rule, jointly issued by the Departments of Justice and Homeland Security after notice and comment, *Procedures for Asylum and Bars to Asylum Eligibility*, 85 Fed. Reg. 67,202 (Oct. 21, 2020) (Rule), 2-ER-136, that is designed to ensure that the discretionary benefit of asylum is not awarded to those who have been convicted of certain crimes or engaged in certain criminal conduct. The injunction harms the public by halting a rule that reflects an exercise of express statutory authority granted to the Attorney General and the Secretary of Homeland Security to determine who may receive the discretionary benefit of asylum. And the ruling second-guesses the Executive Branch's considered policy judgments concerning whether certain classes of criminal aliens are a threat to public safety in this country. The district court manifestly erred in issuing that relief. This Court should vacate the injunction.

In keeping with a statute authorizing the Departments to adopt "limitations and conditions" on asylum eligibility, 8 U.S.C. § 1158(b)(2)(C), the Rule renders ineligible for asylum aliens who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States." 85 Fed. Reg. at 67,242-43, 67,249, 67,252. These crimes include child abuse, alien smuggling, domestic abuse, stalking, serial drunk driving, certain

1

fraud offenses, and gang violence. As the Departments explained, "[a]warding the discretionary benefit of asylum" to these criminals encourages lawless behavior, endangers the United States, and undermines the asylum system. *Id.* at 67,225. Despite the Executive Branch's broad authority and sound aims, the district court enjoined the Rule so that the government could not apply it to *anyone*.

The district court was manifestly wrong and its injunction profoundly harms the United States. This Court should vacate that injunction.

First, the district court incorrectly determined that the Rule is contrary to the INA. Congress granted the Executive Branch broad discretion to impose categorical "limitations and conditions" on asylum eligibility. 8 U.S.C. § 1158(b)(2)(C). The Rule reasonably exercises that discretion by providing that, for aliens who have been convicted of certain crimes or have committed certain criminal acts, granting the significant benefit of asylum—an entirely discretionary benefit that brings with it significant other benefits, such as a pathway to U.S. citizenship—"would encourage lawless behavior, subject the United States to certain dangers, and otherwise undermine the policies underlying the statutory framework for asylum." 85 Fed. Reg. at 67,225. And the Rule accords with the sole limit on the Executive's authority to adopt categorical limitations on asylum eligibility: It is "consistent with" the asylum statute, *id.*, because nothing in the statute prohibits additional bars on asylum eligibility based on criminal conduct. The district court concluded that the Rule was

inconsistent with the statute because it believed that section 1158(b)(2)(A)(ii)—which authorizes the Attorney General to "designate by regulation" "offenses" to be considered "particularly serious crimes" that bar an alien from asylum—provided the sole authority for the government to adopt further crime-based bars to asylum eligibility. Op. 19-22, 1-ER-22-25; *see also* Op. 23-24, 1-ER-26-27. But nothing in the asylum statute provides that only section 1158(b)(2)(A)(ii) may be used to adopt crime-based bars to asylum. That provision speaks to a specific type of severe and dangerous crime—"particularly serious crimes"—and using that provision has broader effect outside of the asylum statute, since a particularly serious crime can also render an alien ineligible for withholding of removal, a mandatory form of protection from persecution that implements our non-refoulement obligations under treaty. *See* 8 U.S.C. § 1231(b)(2)(B)(ii), (iv). Section 1158(b)(2)(C) provides broader authority: it permits the agencies to bar aliens from asylum—but not withholding protection—if they conclude that certain criminality renders those aliens "not to be deserving of" asylum, *East Bay Sanctuary Covenant v. Barr* (*East Bay IV*), 964 F.3d 832, 846 (9th Cir. 2020) (internal quotation marks and citation omitted) (emphasis removed), because they may, among other things, pose a threat to "the safety of those already in the United States," *East Bay Sanctuary Covenant v. Trump* (*East Bay III*), 950 F.3d 1242, 1275-76 (9th Cir. 2020).

Second, the Rule rests on sound reasoning and is not arbitrary and capricious. The agencies explained the basis for the Rule and supported their judgments with a robust administrative record: the Rule reasonably aims to discourage "lawless behavior," to protect "the United States from certain dangers" and to safeguard the "policies underlying the statutory framework for asylum" by barring those who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States." 85 Fed. Reg. at 67,225, 67,242-43, 67,249, 67,252. The district court deemed the Rule arbitrary primarily on the ground that the Rule did not provide an "adequate explanation" for why it chose categorical rules over case-by-case "totality of the circumstances" analyses for asylum eligibility because the explanations provided "contradict the text of the rule itself." Op. 25-28, 1-ER-28-31, But the Rule explains how its eligibility bars—including those requiring case-by-case fact-finding—promote its goals, 85 Fed. Reg. at 67,245; *see id.* at 67,225-26, 67,231, and the alleged contradictions do not exist.

The court also faulted the Rule for purportedly not responding to comments concerning the agencies' authority to issue the Rule. Op. 28-30, 1-ER-31-33. But the Departments did not need to provide any further response because they determined that reliance on section 1158(b)(2)(A)(ii), which authorizes the agencies to separately designate new particularly serious crimes that render aliens ineligible for

asylum, was unnecessary. The Departments explained that the regulatory text as proposed in the NPRM did not designate any new particularly serious crimes. 85 Fed. Reg. at 67,207-08. That decision was reasonable and rendered the comments regarding that basis irrelevant to the Rule and thus no longer significant comments to which they needed to respond. *See Am. Mining Cong. v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992).

Third, the Rule is procedurally sound. The Departments provided the public 30 days to submit comments. The 30-day period provided gave the public sufficient opportunity to comment: the Departments received 581 comments (including from three of the four Plaintiffs here) and responded to them over more than 50 pages in the Federal Register. Plaintiffs (and the district court) identified no issue that the comment period did not allow to be addressed. Indeed, every ground on which the district court ruled was raised by public comments and addressed in the final Rule— confirming that the comment period was adequate.

Finally, the injunction inflicts profound harm on the United States by summarily halting a year-long rulemaking effort designed to promote the sound granting of asylum. And it is vastly overbroad. Plaintiffs are organizations who did not identify a single alien affected by the Rule or non-speculative injury to themselves. At most, an injunction limited to Plaintiffs and their bona fide clients provides them full relief.

The Court should vacate the injunction.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331.  On November 19, 2020, the district court issued a temporary restraining order that it converted to a preliminary injunction on November 24, 2020.  1-ER-2, 1-ER-49. The government filed a timely notice of appeal.  Notice of Appeal, 12-ER-3052; *see* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

The issues presented in this appeal are as follows:

I.        Whether the district court erred in issuing a preliminary injunction enjoining operation of the rule, where: (A) Congress has granted the Attorney General and Secretary of Homeland Security broad discretionary authority to decline to grant asylum and to establish bars to asylum eligibility under 8 U.S.C. § 1158, and the rule establishes a bar to asylum eligibility; (B) the Rule was issued after notice and comment and explained its rationales under the Administrative Procedure Act (APA); (C) the agencies provided a 30-day comment period during which commenters, including most of the Plaintiffs, commented extensively on every provision of the Rule; and (D) the government is harmed in its ability to lawfully adopt a rule issued after notice and comment.

II.    Whether the district court's nationwide injunction was overly broad where it provides relief beyond what is needed to remedy the alleged injuries suffered by the organizational plaintiffs.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

## I.    Legal Background

The asylum statute, 8 U.S.C. § 1158, provides that "[t]he Secretary of Homeland Security or the Attorney General may grant asylum to an alien" who is a refugee. 8 U.S.C. § 1158(b)(1)(A). After providing that general discretionary authority to grant asylum, the statute then identifies six categories of aliens who may not be granted asylum: those who have persecuted others, have been convicted of "particularly serious crimes" (which includes any offense that Congress has deemed to be an "aggravated felony"), have committed serious non-political crimes outside the United States, or may be terrorists or a danger to the security of the United States. *Id.* § 1158(b)(2)(A)(i)-(iv), (b)(2)(B)(i). The statute then contains two provisions authorizing the Attorney General and Secretary to issue regulations adopting other bars to asylum. First, Congress provided that the agency heads may "designate by regulation offenses that will be considered to be a crime described in clause (ii) or (iii)" of section 1158(b)(2)(A)—"particularly serious crime[s]" and "serious

nonpolitical crime[s]"—that bar asylum eligibility. *Id.* § 1158(b)(2)(B)(ii). Second, the agency heads may "by regulation establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum." *Id.* § 1158(b)(2)(C).

Separate from the discretionary authority to grant asylum, the United States has a duty to provide two forms of non-discretionary protection from removal: statutory withholding of removal (when an alien faces a probability of persecution on account of a protected ground in another country) and protection under the Convention Against Torture (CAT) (when an alien faces a probability of torture in another country). *See* 8 U.S.C. § 1231(b)(3)(A) (statutory withholding); 8 C.F.R. §§ 208.16(c), 1208.16(c) (CAT).

## II.    Factual Background

On December 19, 2019, the Departments published a Notice of Proposed Rulemaking (NPRM), with a 30-day comment period, notifying the public of their intention "to amend their respective regulations to bar asylum eligibility." *Procedures for Asylum and Bars to Asylum Eligibility*, 84 Fed. Reg. 69,640 (Dec. 19, 2019), 11-ER-3029. It proposed to render ineligible for asylum—but not statutory withholding or CAT protection—aliens convicted of: "alien harboring, alien smuggling, and illegal reentry"; crimes "committed in support, promotion, or furtherance of the activity of a criminal street gang"; certain DUI offenses;

"stalking," "child abuse, child neglect, or child abandonment," or "domestic assault or battery"; "any felony"; or "any misdemeanor ... that involves" certain instances of identity fraud, "the receipt of Federal public benefits … without lawful authority," or "possession or trafficking of a controlled substance or controlled substance paraphernalia, other than a single offense involving possession for one's own use of 30 grams or less of marijuana." *Id.* at 67,202-03. The NPRM also proposed to bar from asylum aliens "for whom there are serious reasons to believe have engaged in acts of battery or extreme cruelty." *Id.* at 67,203. The Departments identified both the authority to designate crimes as "particularly serious crimes" and the authority to adopt "additional limitations and conditions" on asylum eligibility as providing authority for the proposed bars in the NPRM's preamble, but the regulatory text proposed in the NPRM did not explicitly designate any additional particularly serious crimes.

On October 20, 2020, the Departments issued the final version of the Rule, effective November 20, 2020, adopting the bars largely as proposed. 85 Fed. Reg. 67,202, 2-ER-136. The final Rule explained that the Departments were issuing the new asylum bars only under their authority to adopt "additional limitations and conditions" on asylum eligibility; they did not designate any new crimes as "particularly serious crimes." They explained that the Rule aims to discourage "lawless behavior," to protect "the United States from certain dangers," and to

9

safeguard the "policies underlying the statutory framework for asylum" by barring those who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States." *Id.* at 67,225, 67,242-43, 67,249, 67,252.

## III. Procedural History

On November 2, 2020, four organizations that provide services to aliens filed this suit. Plaintiffs allege that the Rule unlawfully "curtail[s] the availability of asylum to people fleeing persecution." Compl. ¶ 1, 2-ER-87. Plaintiffs' own alleged injuries are different, however, because none of them is an alien seeking asylum: Plaintiffs allege that they must "divert resources" to "address the impact of the Rule," *id.* ¶¶ 15-18, 2-ER-92-94, "update [their] client database and intake process," *id.* ¶ 101, 2-ER-114, and "analyze the new Rule" to "revise their training materials, and create new curricula," *id.* ¶ 102, 2-ER-115, and that the Rule could mean fewer cases and less "funding," *id.* ¶ 106, 2-ER-117. As relevant here, Plaintiffs sought a universal injunction of the Rule, arguing that it conflicts with the asylum statute, is arbitrary and capricious, and was issued without sufficient time for public comment. Compl. ¶¶ 122-38, 2-ER-116. Plaintiffs contended that the Rule will undermine their missions and require them to divert resources to respond to the Rule. *Id.* ¶¶ 15-18, 101-06, 2-ER-92-93, 2-ER-115-18. Plaintiffs moved for a TRO preventing the Rule from taking effect anywhere, against anyone. Mot. 5-25, 2-ER-63-83.

On November 19, 2020, the district court granted a universal temporary restraining order of the Rule, which it then converted into a preliminary injunction. Op. 1-47, 1-ER-4-50; Dkt. 74, 1-ER-2.

The district court concluded that the Rule likely conflicts with the Immigration and Nationality Act (INA) because the INA does not give the Departments "the authority to designate additional [criminal] offenses" beyond that given in section 1158(b)(2)(B)(ii), the statutory provision detailing particularly serious crimes, (Op. 19-24, 1-ER-12-27), and the newly designated crimes were not sufficiently "serious" to warrant a categorical bar to asylum eligibility (Op. 21-22, 1-ER-24-25). It further concluded that the Rule is likely arbitrary and capricious (Op. 24-30, 1-ER-27-33), because not all of the Rule's changes promote adjudicative efficiency, one of the Rule's goals; because it believed that the Rule did not provide "concrete reasoning" in support of the goal of promoting lawfulness; and because it believed that the Rule had not properly responded to all comments. It determined the Rule to be likely procedurally deficient (Op. 30-36, 1-ER-33-39) because it only provided a 30-day comment window within which Christmas and New Year's Day fell; other rules received longer comment periods; the Rule overlaps with others so the public could not comment on the interaction of all the rules; and the public was deprived of the ability to consider whether 1158(b)(2)(C) alone could justify the rule changes. It also held that other considerations favored relief (Op. 38-43, 1-ER-41-

46), and that only a universal injunction would provide Plaintiffs full relief (Op. 43-46, 1-ER-46-49).

## SUMMARY OF THE ARGUMENT

This Court should vacate the preliminary injunction in this case. The preliminary injunction rests on serious errors of law.

First, the Rule, which limits asylum for aliens who have committed certain crimes that demonstrate a disregard for the societal values of the United States, is a valid exercise of the Executive Branch's authority to promulgate rules creating categorical limitations on asylum eligibility. 85 Fed. Reg. at 67,242-43, 67,249, 67,252. Congress has authorized the Executive to "establish additional limitations and conditions" "by regulation." 8 U.S.C. § 1158(b)(2)(C). There is one limit on the Executive's authority to adopt categorical limitations on asylum eligibility: a rule must be "consistent with" the asylum statute. *Id.* This rule is consistent with the asylum statute because nothing in the statute prohibits additional bars on asylum eligibility based on criminal conduct. And nothing in the asylum statute provides that section 1158(b)(2)(A)(ii)—which authorizes the Attorney General to "designate by regulation" "offenses" to be considered "particularly serious crimes" that bar an alien from asylum—is the government's sole authority to adopt further crime-based bars to asylum eligibility. That provision authorizes the Executive Branch to define certain severe and dangerous crimes as "particularly serious crimes," and doing so

12

can also render an alien who has convicted of one ineligible for withholding of removal, a mandatory form of protection from persecution. *See* 8 U.S.C. § 1231(b)(2)(B)(ii), (iv). Section 1158(b)(2)(C) provides broader authority to bar aliens from asylum—but not withholding protection—if the Executive Branch concludes that they are "not … deserving of" asylum, *East Bay IV*, 964 F.3d at 846 (internal quotation marks and citation omitted) (emphasis removed), or because they may pose a threat to "the safety of those already in the United States," *East Bay III*, 950 F.3d at 1275-76. This authority can be based on criminal conduct. It is that lawful authority on which the agencies relied to promulgate the Rule.

Second, the Rule is not arbitrary and capricious. The agencies explained that the Rule aims to discourage "lawless behavior," to protect "the United States from certain dangers" and to safeguard the "policies underlying the statutory framework for asylum" by barring those who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States." 85 Fed. Reg. at 67,225, 67,242-43, 67,249, 67,252. The Rule explains how its eligibility bars, including those requiring case-by-case fact-finding, promote its goals, 85 Fed. Reg. at 67,245; *see id.* at 67,225-26, 67,231.

The Departments also did not need to provide any further response to comments about section 1158(b)(2)(A)(ii), which authorizes the agencies to separately designate new particularly serious crimes that render aliens ineligible for

asylum, because they determined that reliance on it was unnecessary. 85 Fed. Reg. at 67,207-08. That decision was reasonable and rendered the comments regarding that basis irrelevant to the Rule and thus no longer significant comments to which the Departments needed to respond. *See Am. Mining Cong. v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992).

Third, the Rule is procedurally sound. The Departments provided the public 30 days to submit comments, which provided sufficient opportunity for the public to comment. Indeed, the Departments received 581 comments, including from three of the four Plaintiffs, and responded to them in more than 50 pages in the Federal Register. Plaintiffs and the district court identified no issue left unaddressed because of the 30-day comment period. Indeed, each of the court's grounds for ruling was raised by public comments and addressed in the final Rule, which makes clear that the comment period was sufficient.

Finally, the balance of equities weighs in favor of the United States because the district court order halts a year-long rulemaking effort designed to promote the public interest. It is also vastly overbroad and should at the very least be narrowed. Plaintiffs are organizations who did not identify a single alien affected by the Rule or any non-speculative injury to their own organizations, so the injunction could be more narrowly tailored to afford them relief at minimum.

## STANDARD OF REVIEW

The grant of a preliminary injunction is reviewed for abuse of discretion, but "the district court's interpretation of the underlying legal principles is subject to de novo review and a district court abuses its discretion when it makes an error of law." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006) (internal quotation marks, brackets, and ellipsis omitted).

## ARGUMENT

This Court should vacate the injunction. The Rule is consistent with federal law, is not arbitrary or capricious, and went through sufficient comment. Considerations of harm and the equities favor the United States. And the injunction is overbroad in any event.

## I. The Injunction Should Be Vacated Because the Merits and All Other Factors Weigh Strongly Against Injunctive Relief

### A. The Rule Is a Valid Exercise of Asylum Authority

The Rule should not have been enjoined as unlawful. The Rule is consistent with the asylum statute, and the district court erred in concluding otherwise. Op. 19-24, 1-ER-22-27.

Unless "Congress has directly spoken to the precise question at issue," the agency's application of the statute must be upheld if "based on a permissible construction of the statute." *City & Cty. of San Francisco v. USCIS*, 944 F.3d 773, 790 (9th Cir. 2019). That is the case here. The asylum statute provides that a grant

of asylum is a matter of discretion: asylum "*may* [be] grant[ed] to an alien" who satisfies all governing requirements—it never *must* be granted to an alien. 8 U.S.C. § 1158(b)(1)(A) (emphasis added); *see INS v. Aguirre-Aguirre*, 526 U.S. 415, 420 (1999). The statute further provides that certain aliens are categorically ineligible for asylum, either because they "pose a threat to society" (aliens who have persecuted others, have been convicted of particularly serious crimes, have committed serious non-political crimes outside the United States, or may be terrorists or a danger to the security of the United States, *id.* § 1158(b)(2)(A)(i)–(v)), or because they "do not need the protection of asylum in the United States" (aliens who may be removed to a safe third country and aliens who have firmly resettled in another country, *id.* § 1158(a)(2)(A), (b)(2)(A)(vi)). *East Bay IV*, 964 F.3d at 846. The statute expressly authorizes the Executive to establish further categorical "limitations and conditions" on asylum eligibility, 8 U.S.C. § 1158(b)(2)(A), so long as those limitations and conditions are "consistent with" the asylum statute. 8 U.S.C. § 1158(b)(2)(A).

The Rule falls within those grants of authority. The broad delegation of authority to establish additional eligibility bars requires only that those bars be "consistent with" section 1158. 8 U.S.C. § 1158(b)(2)(C). That describes the Rule. To start, it is consistent with the discretionary nature of asylum and the authority to adopt new eligibility bars. In the Rule, the Departments determined that aliens who are convicted of certain crimes or have committed certain criminal acts should not

16

be eligible for the discretionary benefit of asylum, because granting "such individuals [relief] would encourage lawless behavior, subject the United States to certain dangers, and otherwise undermine the policies underlying the statutory framework for asylum." 85 Fed. Reg. at 67,225. It bars asylum eligibility for aliens who have engaged in conduct that, the agencies determined, categorically undermines any claim that they should obtain a discretionary grant of asylum—a significant benefit that can provide a pathway to U.S. citizenship and benefits to an asylee's family members. Nothing in section 1158 precludes such a rule. And section 1158(b)(2)(C) squarely authorizes the Departments to adopt additional asylum bars for aliens "considered not to be deserving of" that discretionary benefit, *East Bay IV*, 964 F.3d at 846—including those who may pose a danger to "the safety of those already in the United States." *East Bay III*, 950 F.3d at 1275-76. The Rule targets conduct that, the Departments determined, endangers the security, safety, and welfare of the United States, *compare* 85 Fed. Reg. at 67,528-29 *with* 8 U.S.C. §§ 1158(b)(2)(A)(ii), (iv)-(v); forecloses discretionary relief for those who flout important immigration laws, *compare* 85 Fed. Reg. at 67,528 *with* 8 U.S.C. § 1231(a)(5) (reinstatement bar to relief for aliens previously ordered removed); and bars relief for classes of aliens who, the Departments determined, are not deserving of the benefit of asylum given the nature of their conduct, *compare* 85 Fed. Reg. at 67, 528 *with* 8 U.S.C. §§ 1158(b)(2)(A)(i), (iii), (v)-(vi).

The Rule is also consistent with principles governing the agencies' ultimate exercise of discretion. "The ultimate consideration when balancing factors in the exercise of discretion is to determine whether a grant of relief ... appears to be in the best interest of the United States." *Matter of D-A-C-*, 27 I&N Dec. 575, 578 (BIA 2019). The Departments determined that the commission of certain crimes renders an asylum grant not in the "best interest of the United States." *Id.* Nothing in section 1158 forecloses that view, and securing the best interests of the country is a reasonable policy goal under section 1158.

The Rule's adoption of categorical bars is consistent with the asylum statute and precedent. The statute itself provides for new eligibility requirements promulgated "by regulation." 8 U.S.C. § 1158(b)(2)(C). And even without that provision, if the Attorney General and the Secretary may take account of criminal activity in individual cases, administrative-law principles dictate that they may do so categorically too. *See Lopez v. Davis*, 531 U.S. 230, 243-44 (2001); *Fook Hong Mak v. INS*, 435 F.2d 728, 730 (2d Cir. 1970) (upholding INS's authority to "determine[] certain conduct to be so inimical to the statutory scheme that all persons who have engaged in it shall be ineligible for favorable consideration").[1]

---

[1] This Court has suggested that *Lopez*'s endorsement of categorical rules may not apply if "Congress spoke to the precise issue." *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 772 n.13 (9th Cir. 2018). There, the Court explained that section 1158(b)(2)(C) did not authorize categorical bars based on an alien's unlawful

In ruling otherwise, the district court reasoned that section 1158(b)(2)(C) "does not give the" Departments "the authority to designate additional [criminal] offenses that will render someone ineligible for asylum." Op. 20, 1-ER-23; *see also* Op. 19-21, 1-ER-22-24. The court reasoned that section 1158(b)(2)(B)(ii) is the only provision permitting the government to establish asylum-eligibility bars based on criminality, because reading section 1158(b)(2)(C) to allow the adoption of crime-based eligibility bars "would render [section 1158(b)(2)(B)(ii)] entirely superfluous." Op. 20, 1-ER-23. That is wrong. Nothing in section 1158 provides that only crimes covered by section 1158(b)(2)(B)(ii) may bar asylum eligibility. That provision speaks to a specific type of severe and dangerous crime that can also, in certain circumstances, render an alien ineligible for withholding of removal, a mandatory form of protection from persecution—the narrowing of which could create tension with the United States' non-refoulement obligations, which this Rule does not affect. *See* 8 U.S.C. § 1231(b)(2)(B)(ii), (iv). Section 1158(b)(2)(C) provides broader authority: it permits the agencies to bar aliens from asylum—but not withholding—if it concludes that certain conduct or criminality renders an alien

---

entry into the United States because "Congress spoke to the precise issue when it stated that aliens may apply [for asylum] 'whether or not' they arrived at a designated port of entry." *Id.* Here, Congress did not directly speak to the permissibility of additional criminal bars to eligibility—other than its express grant of authority to adopt additional eligibility bars by "regulation," 8 U.S.C. § 1158(b)(2)(C)—so *Lopez* applies fully.

a threat to "the safety of those already in the United States," such that discretionary asylum relief should not be awarded. *See East Bay III*, 950 F.3d at 1275-76. Section 1158(b)(2)(C) nowhere says that new eligibility bars are reserved only for a particular level of crime or must parrot the level of seriousness that warrants ineligibility under the particularly serious crime bar. *Cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2411-12 (2018) (concluding that the INA's express provisions regarding the entry of aliens "did not implicitly foreclose the Executive from imposing tighter restrictions"—even when the Executive's restrictions addressed a subject that is "similar" to one that Congress "already touch[ed] on in the INA"). Put differently, Congress generally made asylum a matter of Executive discretion—except that in section 1158(b)(2)(A) it *eliminated* the discretion to *grant* asylum for (among others) certain categories of criminals who *obviously* do not merit it. Congress then expressly authorized the Executive Branch to issue bars to cover additional categories of such aliens. 8 U.S.C. § 1158(b)(2)(C). Hence nothing in section 1158 forecloses the Executive from imposing more eligibility bars based on criminal convictions and activity, even if those bars address subjects that are similar to those that Congress already touched on in the asylum statute.

The court also erred in concluding that the Rule renders section 1158(b)(2)(A)(ii) superfluous by including minor offenses that do not rise to the level of being particularly serious crimes. Op. 21-22, 1-ER-24-25. As already

explained, section 1158(b)(2)(A)(ii)'s particularly-serious-crime bar can have more far-reaching immigration implications by affecting an alien's ability to receive *withholding of removal*, i.e. rendering the alien removable to even the country in which he or she may face persecution. Meanwhile, the Rule designates crimes that render an alien unable to receive asylum, a bundle of benefits that go above and beyond merely forgoing removal of that person. So, because the Rule and the particularly-serious-crime bar serve two different functions, the Rule does not render section 1158(b)(2)(A)(ii) superfluous.

Regardless, even if the Rule would cause a certain portion of the particularly-serious-crime bar to be surplusage in some discrete applications, that surplusage is not grounds to impose atextual limits on the agencies' statutory authority to adopt additional bars. "The canon against surplusage is not an absolute rule." *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013). As the Supreme Court has recognized, "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton v. Barr*, 140 S. Ct. 1442, 1453 (2020). Where the text of the statute is "plain," it would be "inappropriate" to apply the canon to depart from that "plain meaning." *Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004); *see also Barton*, 140 S. Ct. at 1453 ("Sometimes the better overall reading

of the statute contains some redundancy.") (quoting *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019)). Sometimes surplusage is simply an indication that Congress wants to be doubly certain on what it intends. Here, it is clear that Congress gave the Executive Branch broad authority to adopt additional rules, and that it wanted to create a group of aliens for whom the Executive would have no discretion to grant asylum.

Plaintiffs are incorrect to suggest that the crimes covered by the rule are not sufficiently serious to warrant a categorical bar. Instead, section 1158 permits new eligibility bars for aliens not "deserving of international protection." *East Bay IV*, 964 F.3d at 846. Such aliens include those who are a danger to "the safety of those already in the United States" because they have committed "serious crimes." *East Bay III*, 950 F.3d at 1275-76. The Rule fits comfortably within that principle. The safety of the United States' population is clearly safeguarded by denying a safe haven to those who would commit felonies, those who undertake gang-related activities, individuals with multiple DUI convictions, and those who engage in domestic violence. So, too, is the safety and integrity of the United States protected by barring those who would engage in document fraud or violate the immigration laws. *Cf., e.g.*, 8 U.S.C. § 1231(a)(5). The court is thus simply wrong in suggesting

some baseline level of "seriousness" is required before a crime may form a basis for an eligibility bar.

The court's implication that crimes covered—including second "conviction[s]" for drug possession or "acts of domestic battery and extreme cruelty"—are insufficiently "serious" to warrant a categorical eligibility bar is also incorrect. *See* Op. 21-22, 1-ER-24-25. Congress entrusted the Departments—not the district court or Plaintiffs—to make judgments about what crimes "subject the United States to certain dangers," "disregard ... the societal values of the United States," and undermine "American ideals of the rule of law and a commitment to public safety" to the point where discretionary asylum is categorically inappropriate. 85 Fed. Reg. at 67,225, 67,249; *see East Bay III*, 950 F.3d at 1275-76. Disagreement with those judgments is not a basis for invalidating the Rule. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2571 (2019) (courts should not "second-guess[ ]" agencies' "weighing of risks and benefits").[2]

The court also believed that certain of the Rule's new bars "conflict directly

---

[2] Moreover, the INA's "aggravated felony" definition—a category of crimes a conviction for which render an alien ineligible for asylum under section 1158(b)(2)(A)(ii), (B)(i)—already includes comparatively numerous "minor offenses [such] as operating an unlawful gambling business, and possessing a firearm not identified by a serial number," as well as offenses targeting "nonviolent activity such as receiving stolen property, or forging documents," *Torres v. Lynch*, 136 S. Ct. 1619, 1628 (2016) (internal citations omitted), so even if the Rule covered crimes beyond "particularly serious" ones as defined by section 1158(b)(2)(A)(ii), it would not be inconsistent with section 1158.

with the asylum statute" by rendering someone ineligible for asylum even where Congress has purportedly "carve[d]-out" such persons from ineligibility. Op. 22, 1-ER-25. Specifically, the asylum statute defines "particularly serious crime" to include all "aggravated felonies," 8 U.S.C. § 1158(b)(2)(B)(i), and the definition for "aggravated felony" includes convictions for alien smuggling and illegal reentry, but with explicit exceptions, *id.* § 1101(a)(43)(N) (offenses relating to alien smuggling are aggravated felonies unless the conviction is for a first offense where the person aided was the alien's spouse, child, or parent); *id.* § 1101(a)(43)(O) (a conviction for illegal reentry is an aggravated felony only if the alien was previously deported due to an aggravated felony conviction). But the court was simply wrong: By erecting certain statutory bars to asylum in section 1158(b)(2)(A), Congress was not guaranteeing that asylum would be categorically available for asylum seekers who do not fall within one of those bars. Rather, section 1158(b)(2)(A) reflects Congress's view that some offenses are so serious that the Executive Branch should have *no discretion* to grant asylum for aliens who committed them. That decision did not limit the Executive Branch from exercising its law-enforcement and immigration-enforcement judgment to determine that other offenses merit a categorical eligibility bar. Indeed, the whole point of the authority to adopt further eligibility bars is to permit the Executive to decide what additional bars *not* already covered by existing bars are warranted. The court erred in holding otherwise.

Finally, the court concluded that because it found the criminal bars at paragraph (c)(6) of 8 C.F.R. §§ 208.13, 1208.13 likely to violate the APA as contrary to the INA, definition paragraphs at (c)(7), (c)(8), and (c)(9) that are referenced in (c)(6) "likewise violate the APA in a similar manner" and "have no force if paragraph (c)(6) is not valid." Op. 23-24. In other words, the court determined that because the provisions setting forth offenses are contrary to the INA, provisions defining terms used in those provisions also violate the INA and will have no effect without the criminal bars. This conclusion lacks any analysis of the provisions themselves. It does not follow that because one paragraph violates the INA—and it does not—that other paragraphs defining terms that the paragraph contains are necessarily also contrary to the INA. The court's reasoning here is flawed.

The district court erred in holding that that provision does not authorize the Rule's new bars.

### B.    The Rule is Neither Arbitrary Nor Capricious.

The Rule reflects sound decision-making and satisfies the Administrative Procedure Act's (APA) requirements. The court erred in concluding otherwise. Op. 24-36, 1-ER-27-39.

Arbitrary-and-capricious review is limited and "highly deferential, presuming the agency action to be valid," *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010) (internal quotation marks and citation omitted), and courts may not substitute

25

their "judgment for that of the agency." *Gill v. U.S. Dep't of Justice*, 913 F.3d 1179, 1187-88 (9th Cir. 2019). It is "reasonable for the [agency] to rely on its experience" to arrive at its conclusions—even if those conclusions are not supported with "empirical research." *Sacora*, 628 F.3d at 1068-69. The agency need only articulate "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted). In cases like this one, which does not concern a statutory gap but rather the express grant of authority to prescribe rules and standards, the "agency's promulgations are entitled to more than mere deference or weight; rather, they are entitled to legislative effect." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1177 (9th Cir. 2019) (internal quotation marks and citation omitted).

The Rule satisfies these standards. The Rule reasonably explains its objectives and its chosen methods for achieving them, and so is not arbitrary and capricious. The Departments adopted it based on their determination that "[a]warding the discretionary benefit of asylum to individuals" subject to the Rule's new criminal bars "would encourage lawless behavior, subject the United States to certain dangers, and otherwise undermine the policies underlying the statutory framework for asylum." 85 Fed. Reg. at 67,225; *see also id.* at 67,222; *see, e.g.*, AR 7,731-74, 7,912-75, 7,992-97, 8,032-34, 2-ER-195-238, 2-ER-303-308, 2-ER-309-311. The Rule justified those policy goals on multiple grounds including promoting regard for

the societal values of the United States, 85 Fed. Reg. at 67,242; efficiency and predictability in adjudications, 84 Fed. Reg. at 69,647; 85 Fed. Reg. at 67,209, 67,216-17, 67,220, 67,242, 67,245-46, 67,248; and protecting the United States from those who have committed or been convicted of crimes showing dangerousness, *see* 84 Fed. Reg. at 69,647 (discussing "serious social cost of" felony crimes); *id.* at 69,648 (discussing recidivism statistics); *id.* at 69,650 (discussing dangerousness of street gangs); 85 Fed Reg. at 67,225 (same); *id.* at 67,227 (discussing case law recognizing "gravity of" drunk driving offenses); 84 Fed. Reg. at 69,652 (discussing Congress's determination that offenses against women and children and domestic-violence offenses are reprehensible); 85 Fed. Reg. at 67,229 (same).

As to felonies, the Rule explains that "[t]reating a felony conviction as disqualifying for purposes of obtaining the discretionary benefit of asylum ... would reflect the serious social cost of such crimes" and also promote predictability and efficiency in adjudications. 84 Fed. Reg. at 69,647; *see* 85 Fed. Reg. at 67,209, 67,216-17, 67,220, 67,242, 67,245-46, 67,248. The Rule further explains that barring asylum to those convicted of alien smuggling furthers the goal of not providing asylum to those who "display[] a serious disregard for U.S. immigration law," 84 Fed. Reg. at 69,648, and whose "offenses present a danger to the community," 85 Fed. Reg. at 67,219. Likewise, barring asylum for aliens convicted of illegal reentry "harmonizes the treatment of most aliens who have illegally reentered the United

27

States after being removed," where normally asylum is unavailable as a statutory matter, 84 Fed. Reg. at 69,648; 85 Fed. Reg. at 67,222, and is aimed at conduct that "undermines th[e] goal" of "maintaining the orderly and lawful admission of aliens into the United States," 85 Fed. Reg. at 67,222. The Rule also explains that barring asylum for aliens convicted of gang crimes or domestic violence protects the American public from aliens who represent "particular dangers to society," 84 Fed. Reg. at 69,650; 85 Fed. Reg. at 67,224-26, or commit acts that are "particularly reprehensible because the perpetrator takes advantage of an 'especially vulnerable' victim," 84 Fed. Reg. at 69,652; 85 Fed. Reg. at 67,229, 67,231, 67,247. The Rule explains that barring aliens convicted for repeated and serious offenses of driving while under the influence from asylum eligibility protects the community from aliens who "threaten[] community safety" by repeatedly engaging in an "extremely dangerous crime." 84 Fed. Reg. at 69,651; 85 Fed. Reg. at 67,227-28. Further, the Rule discourages document fraud and public-benefit offenses that pose "a significant affront to government integrity" and public safety. 84 Fed. Reg. at 69,653; 85 Fed. Reg. at 67,233-34. The Rule also promotes public health and safety against the harmful effects of controlled substance offences. 84 Fed. Reg. at 69,654; 85 Fed. Reg. at 67,236.

And the Rule's clarification of when post-conviction relief will render a conviction invalid for immigration purposes codifies agency precedent (*Matter of*

*Thomas and Thompson*, 27 I&N Dec. 674, 680 (A.G. 2019)) while also dissuading "gamesmanship and manipulation in the drafting of orders vacating a conviction or modifying a criminal sentence," delineating the burden allocation, and "promot[ing] finality in immigration proceedings by encouraging an alien to act diligently if there is a legitimate basis to challenge a conviction or sentence." 84 Fed. Reg. at 69,655-56; 85 Fed. Reg. at 67,211. The Rule thus articulates "a rational connection between the facts found and the choice made." *Motor Vehicle*, 463 U.S. at 43. And the Rule reasonably explains any new policy choices because it "is permissible under the statute," *supra*, "there are good reasons for it, and [] the agency believes it to be better" than the prior policy, "which the conscious change of course adequately indicates." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). That satisfies the APA's deferential standard of review.

The court incorrectly deemed the Rule arbitrary and capricious on the ground that several justifications for it were unsound. Op. 25-28, 1-ER-28-31. Each of the district court's reasons for this view is flawed. To start, the court believed that the Rule's aim of adjudicatory efficiency is undermined by "parts of the Rule that would do the opposite," for example, by requiring adjudicators to undertake some case-by-case analysis by making assessments beyond whether an alien had a criminal conviction. Op. 25, 1-ER-28; *see also* Op. 25-26, 1-ER-28-29. But most of the Rule's new bars provide bright lines that *obviously* promote adjudicative

efficiency—the bars for felonies, DUIs, and other offenses are, unquestionably, easy and efficient to administer. Moreover, asylum adjudicators already use the analyses prescribed in the Rule. *See Matter of Thomas and Thompson*, 27 I. & N. Dec. 674 (A.G. 2019) (providing when an order vacating a conviction will render a conviction invalid for immigration purposes), 85 Fed. Reg. at 67,225-26 (explaining that the "reason to believe" and "all reliable evidence" standards used in the bar based on gang-related offenses are used in other analyses); *id.* at 67,231 (noting that adjudicators already engage in fact-based inquiries that account for state law). Even if some of the new bars may require additional analysis, that does not undermine the reasoned decision to rely on rules rather than a totality-of-the-circumstances, case-by-case analysis.

Next, the court faulted the Rule's goal of promoting lawfulness because it "[could not] discern any concrete reasoning to support this goal." Op. 26, 1-ER-29; *see also* Op. 26-27, 1-ER-29-30. But the Rule's goal is obvious—it withdraws eligibility for a major benefit from those who engage in certain criminal conduct in order to promote adherence to the law. 85 Fed. Reg. at 67,225, 67,242-43, 67,249, 67,252. This conclusion is well within the Departments' law-enforcement and immigration-enforcement judgment. The court further faulted the Rule for not protecting the United States, because it supposedly "encompasses conduct that cannot arguably show the individual poses a danger as well as conduct that Congress

expressly kept in the asylum laws." Op. 27, 1-ER-30; *see also* Op. 27-28, 1-ER-30-31. In doing so, the court improperly supplanted the Departments' determinations with its own. Importantly, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43. The agencies considered these issues, 85 Fed. Reg. at 67,247, but concluded that streamlining the adjudication process was preferable, 85 Fed. Reg. at 67,248, a determination that the court lacks authority to replace with its own and which the Court cannot find arbitrary and capricious because it disagrees, *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 29, 43.

The district court also misapprehended withholding of removal when it determined that the Departments' acknowledgment of withholding is "directly at odds with the subsequent rationale" for barring such aliens from asylum. Op. 28, 1-ER-31. Withholding does not provide a path to permanent status or to citizenship like asylum does, *see* 8 U.S.C. §§ 1159(b), 1427, but merely prevents removal to a specific country where the alien will be persecuted, 8 U.S.C. § 1231(b)(3)(A). The alien may still be removed to a third country, 8 C.F.R. § 1208.16(f), and the grant of withholding may be terminated and the removal order executed if there has been a fundamental change in circumstances such that the alien's life or freedom is no longer threatened on account of a protected ground in the country for which the alien was granted withholding, 8 C.F.R. § 1208.24(b), (f). This does not undermine the

Departments' determination that certain criminal aliens should not be provided the significant benefit of asylum, which promotes a central goal while still protecting those who need it. 85 Fed. Reg. at 67,225; *see also id.* at 67,222. *See, e.g.*, AR 7,731-74, 7,912-75, 7,992-97, 8,032-34, 2-ER-195-238, 2-ER-239-302, 2-ER-303-08, 2-ER-309-12. The Court's conclusion to the contrary—that "[i]f individuals who truly pose a danger are able to obtain withholding of removal after a failed asylum application, then the danger to the community is the same, regardless of how they were able to remain in the country"—is wrong. Op. 28, 1-ER-31. There is nothing irrational about complying with mandatory international non-refoulement commitments, while using non-mandatory discretionary benefits like asylum—which accord aliens a pathway to permanent residence and citizenship that withholding does not, *see* 8 U.S.C. § 1231(b)(3)(1); 8 C.F.R. §§ 1208.16(f), 1208.24(b), (f)—to encourage lawful behavior. 85 Fed. Reg. at 67,213, 67,242-43, 67,249, 67,252; AR 7,731-74, 2-ER-195-238.

The district court also wrongly faulted the Departments for purportedly not responding to certain comments, Op. 28-30, 1-ER-31-33, when they responded to all "significant comments," i.e. those that "raise relevant points, and which, if adopted, would require a change in the agency's proposed rule," *Am. Mining Cong. v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992) (internal quotation marks omitted), in over 50 single-spaced, multi-columned pages. *See* 85 Fed. Reg. at 67,204-55. They

explained their reasons for declining to address other comments, *e.g.*, 85 Fed. Reg. at 67,214, 67,219, 67,223, 67,226, 67,228, 67,230, 67,233-34—because all "had no bearing on 'relevant factors' to the rulemaking, nor any bearing on the final rule." *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1082 (9th Cir. 2019) (citation omitted).

The court incorrectly concluded that the Departments did not respond to comments asserting that they improperly relied on section 1158(b)(2)(C) instead of section 1158(b)(2)(B)(ii). Op. 28-30. The Rule addressed that issue, 85 Fed. Reg. at 67,207-08, and repeatedly explained that although the NPRM's preamble invoked both sections, the regulatory text proposed in the NPRM did not designate any new particularly serious crimes and thus the Departments did not need to invoke that provision. *Id.* at 67,207, 67,208. Thus, contrary to the court's conclusion that the Rule conflicts with the NPRM's justifications, it reasonably brought the Rule's justifications in line with the NRPM's regulatory text—i.e., the Departments did not need to rely on the ability to designate additional particularly serious crimes when they were not doing so. Op. 29-30, 1-ER-32-33. The Rule also responded to comments that "Congress intended for the only criminal bars to asylum to be those contemplated by the particularly serious crime and serious nonpolitical crime bars," *id.*, concluding that nothing in the INA "suggests that Congress intended" that result. *Id.* at 67,208. The Departments further explained why the crimes covered are grave

enough, even if not rising to the level of "particularly serious crimes," to warrant asylum ineligibility. *See, e.g.*, 85 Fed. Reg. at 67,225, 67,227, 67,229. And even were that not enough, that is no basis to enjoin the Rule universally: "An agency's failure to respond to any particular comment or point put forward by a rule's opponents is not a ground for finding per se arbitrary-and-capricious action." *City and Cty. of San Francisco*, 944 F.3d at 800.

Thus, the district court erred in holding that the rule is arbitrary and capricious.

## C. The Rule Is Procedurally Valid.

The Rule satisfies the APA's procedural requirements, and the court erred in deeming the comment period too short. Op. 30-36, 1-ER-33-39.

*First*, the APA has no minimum-length requirement for notice and comment. Title 5 U.S.C. § 553 sets forth the procedures for informal rulemaking: the agency must provide notice of the proposed rulemaking and "give interested persons an opportunity to participate ... through submission of written data, views, or arguments." The APA "mandates no minimum comment period." *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1484 (9th Cir. 1992) ("usual[]" practice is to allow "thirty days or more" for comment). Some "opportunity to participate is all that the APA requires." *Phillips Petroleum Co. v. EPA*, 803 F.2d 545, 559 (10th Cir. 1986); *see Riverbend Farms*, 958 F.2d at 1484 (noting with approval the "usual[]" practice to allow "thirty days or more" for comment). Thus, the time for comment is left to

an agency's reasonable discretion. *See, e.g.*, *Vt. Yankee Nucl. Power Corp. v. NRDC*, 435 U.S. 519, 543 (1978). And it is clear that the 30-day period provided here gave the public sufficient opportunity to comment, given that 581 comments were received. 85 Fed. Reg. at 67204; *see* 5 U.S.C. § 553; *Riverbend*, 958 F.2d at 1484; AR 8,356-11,063, 2-ER-312-11-ER-3028. Even were something more necessary, a failure to afford adequate opportunity for comment is harmless "where the agency's mistake clearly had no bearing on the procedure used or the substance of decision reached." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1220 (9th Cir. 2004). Here, 581 commenters, including three of the four Plaintiffs, commented extensively, so there can be no serious suggestion of prejudice.

The district court nevertheless believed that the notice-and-comment process was insufficient because (1) the 30-day comment period was too short because the holidays shortened the amount of time, Op. 32-33, 1-ER-35-36, there are indications that 60 to 90 days is more appropriate, Op. 33, 1-ER-36, other rules received longer comment periods, Op. 33, 1-ER-36, and the number of comments received was lower than for other rules, Op. 33-34, 1-ER-36-37; (2) the existence of other overlapping proposed rules deprived the public from being able to meaningfully comment, Op. 34-35, 1-ER-37-38; and (3) the public was deprived of the ability to consider whether section 1158(b)(2)(C) standing alone gave the Departments the

authority to promulgate these changes, Op. 36, 1-ER-39. The district court was wrong.

The length of the comment period was sufficient. Some "opportunity to participate is all that the APA requires." *Phillips Petroleum Co. v. EPA*, 803 F.2d 545, 559 (10th Cir. 1986); *see Riverbend Farms*, 958 F.2d at 1484 (noting with approval the "usual[]" practice to allow "thirty days or more" for comment). This is supported by the fact that three of the four Plaintiffs and counsel from the National Lawyers' Guild commented on the Rule. AR 8,956-71, 9,999-10,024, 10,095-10,135, 10,487-508; 4-ER-914-29, 8-ER-1961-86, 8-ER-2057-97, 9-ER-2450-10-ER-2472. That the Departments received 581 comments on this Rule while it received 1,074 and 3,200 on other asylum-related rules is irrelevant. Op. 33-34, 1-ER-36-37. The total number of comments does not dictate whether the public had meaningful opportunity to comment. The public commented on every provision of the Rule, including its legality, policy wisdom, and impact on the regulated community. AR 8,356-11,063, 2-ER-312-11-ER-3028. That is all that was required. Nor is the Departments' reliance in certain other rulemakings on "Executive Order 12866" in providing "a 60-day comment period" determinative. Op. 33, 1-ER-36. That order is "intended only to improve the internal management of the Federal Government and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States," Executive Order

36

12866, *Regulatory Planning and Review*, 58 Fed. Reg. 51,735, § 10 (Sept. 30, 1993). Hence it provides no basis to infer a private right of action under the APA or otherwise. *See Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 14 F.3d 429, 445 (9th Cir. 1993) (rejecting similar APA claim involving substantially similar language precluding private right of action).

*Second*, the existence of other proposed rules does not render the procedures for this Rule improper. *Contra* Op. 34-35, 1-ER-37-38. Plaintiffs had the ability to comment on those other rules, and any challenge to the processes that the Departments used for those rules are proper only in challenges to those rules, not this Rule. The court should not have considered those challenges in this case. *See Portland Cement Ass'n v. EPA*, 665 F.3d 177, 185 (9th Cir. 2011) (even where a challenger claims they "could not have reasonably anticipated" a rule's impact on a separate rulemaking, the remedy is to petition for "reconsideration of the rule"). Moreover, they identify no comment that they would have made on *this* Rule in light of those other rules. Any ruling on hypothetical future rules is a "premature" advisory opinion. *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1324-25 (9th Cir. 1992) (rejecting similar claim).

*Third*, and finally, the court erred by determining that the Departments "deprived commenters of the ability to comment on whether § 1158(b)(2)(C) standing alone gave the Departments authority to promulgate these changes." Op.

36, 1-ER-39. Commenters indeed did comment on this issue. 85 Fed. Reg. at 67,207-08; *see, e.g.*, AR 8410, 8444, 8509, 8604, 8902, 8905-08, 8961-62, 9317, 9478, 9496, 9546, 9590, 9671, 9677, 9760, 9995, 10067, 10101-02, 10484, 10508-09, 10598, 10629, 10676, 10723, 10755-56, 10784, 10804-05, 10925, 3-ER-367, 3-ER-401, 3-ER-466, 3-ER-561, 4-ER-860, 4-ER-863-66, 4-ER-919-20, 6-ER-1277, 6-ER-1438, 6-ER-1456, 6-ER-1506, 6-ER-1550, 7-ER-1632, 7-ER-1638, 7-ER-1721, 8-ER-1957, 8-ER-2029, 8-ER-2063-64, 9-ER-2447, 10-ER-2472-73, 10-ER-2562, 10-ER-2593, 10-ER-2640, 10-ER-2687, 10-ER-2719-20, 10-ER-2748, 11-ER-2769-70, 11-ER-2890. Additionally, the proposed regulatory language in the NPRM did not designate any offenses as particularly serious crimes. 84 Fed. Reg. 69,659-61. Thus, the public was on notice that the authority to so designate offenses was not actually invoked.

Thus, the district court erred in holding that the rule did not properly adhere to the Administrative Procedure Act's procedural requirements.

### D. Equitable Factors Foreclose a Preliminary Injunction.

The injunction irreparably harms the United States and the public and the equities strongly weigh against any injunctive relief. *Contra* Op. 41-43, 1-ER-44-46.

It is always in the public interest to protect the country's borders and enforce its immigration laws. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The

Executive Branch issued the Rule after notice and comment to ensure that dangerous criminal aliens and threats to public safety do not receive asylum. 85 Fed. Reg. at 67,225; 67,242-43, 67,249, 67,252. Preventing such criminals from endangering our national community is "an urgent objective of the highest order." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2088 (2017) (internal quotation marks and citation omitted). The injunction irreparably harms the government and the public by allowing such aliens to circumvent the considered judgment of the Executive Branch that they do not warrant asylum, and so "will force DHS to grant [legal] status" to the very aliens the Departments, in the exercise of their discretion, would otherwise deem unsuitable for asylum in this country. *City & Cty. of San Francisco v. USCIS*, 944 F.3d 773, 806 (9th Cir. 2019).

Against this, neither Plaintiffs nor the district court identified a single alien who would be affected by the Rule. That is important, because many of the eligibility bars the Rule establishes require assessment of specific facts in the concrete circumstances in an alien's immigration proceedings. Even if they had, aliens ineligible for asylum lose only a discretionary benefit to which they are never entitled. And the Rule does not "return people to persecution," Op. 41, 1-ER-44, as aliens remain eligible for mandatory protections from removal, including withholding of removal and CAT protection, which are the provisions that implement our treaty non-refoulement obligations. Plaintiffs may not invoke third-

party harms to non-party aliens in any event. *See East Bay Sanctuary Covenant v. Trump* (*East Bay I*), 932 F.3d 742, 764 (9th Cir. 2018). As to Plaintiffs, they also failed to show any "immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). They are organizations, and the *only* harms they allege to themselves are speculations about funding and the need of familiarizing themselves with new law. *E.g.*, Compl. ¶¶ 92-108, 2-ER-112-17. But those harms do not establish irreparable injury. [3] Even if credited, those inconveniences do not outweigh the harm imposed by enjoining an important rule and undermining the "efficient administration of the immigration laws." *Innovation*

---

[3] This Court has concluded that organizations may establish *Article III standing* based on diversion-of-resource harms. *East Bay III*, 950 F.3d at 1267. But *East Bay III* does not hold that this kind of speculation requires universal injunctive relief. Moreover, the government respectfully disagrees with *East Bay III*'s theory that advocacy organizations can have standing or a cognizable claim under the APA to enjoin policies directed to aliens under the immigration laws based on the diversion of their resources, 909 F.3d at 1241-43, and wishes to preserve the issue. The government disagrees that Plaintiffs' alleged injuries—alleged "diversion-of-resources" and "funding" harms—even satisfy Article III or the zone-of-interests test. That portion of *East Bay* is inconsistent with the rule that a party, organizational or otherwise, generally "lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), including "enforcement of the immigration laws." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984). And as explained *infra*, even were standing established, the INA's carefully circumscribed judicial review scheme channels review of challenges to any removal-related activity to the courts of appeals, *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031-38 (9th Cir. 2016), and so forecloses any cause of action for organizations to pursue in district court, *see Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 344-45, 349-51 (1984).

*Law Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019) (internal quotation marks and citation omitted). And the court's conclusion that an injunction promotes compliance with the APA and that the Rule exceeds the Executive's powers, Op. 41-42, 1-ER-44-45, fail for the reasons explained above. *Supra* Part I.

Therefore, the balance of the equities weighs in favor of vacating the district court's injunction.

## II. Even If Injunctive Relief Were Warranted, the District Court's Nationwide Injunction Is Vastly Overbroad and Should Be Narrowed.

At all events, the district court's universal injunction is vastly overbroad—it goes well beyond affording Plaintiffs complete relief for demonstrated irreparable harms—and so should be substantially narrowed. *Contra* Op. 43-46, 1-ER-46-49.

Under Article III, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). And the rule in equity is that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (internal quotation marks and citation omitted). "[A]ll injunctions—even ones involving national policies—must be narrowly tailored to remedy the specific harm shown." *East Bay Sanctuary Covenant v. Barr* (*East Bay II*), 934 F.3d 1026, 1029 (9th Cir. 2019) (internal quotation marks and citation omitted). "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves

forward." *Trump*, 137 S. Ct. at 2087 (internal citation omitted); *see L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011). Given the serious harms to the government and the public of enjoining universally a rule preventing dangerous criminals from gaining status in this country, an injunction limited to the Plaintiffs and their bona fide clients balances the relevant equities and "provide[s] complete [interim] relief to them." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). Universal relief was even more inappropriate here, where the Rule erects multiple bars addressing different conduct and issues, many of which require assessment of specific facts in the concrete circumstances in an alien's immigration proceedings. Relief to such aliens should come, if at all, in the concrete setting of an alien's removal proceedings, 8 U.S.C. §§ 1229a(b)(4)(A)-(B), (c)(1)(A), (c)(4)(B), and in later judicial review, which may occur "*only* through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031-38 (9th Cir. 2016); *see* 8 U.S.C. § 1252(a)(5), (b)(9).

The district court's contrary rationales fail. The court erred in determining that because *final* relief available in an APA case can include vacatur of the Rule and "affect an entire regulatory program," therefore the court may likewise set aside the Rule universally in a *preliminary* posture. Op. 44-45, 1-ER-47-48. "Nothing in the language of the APA ... requires [a court] to exercise such far-reaching power." *Va. Soc'y for Human Life v. FEC*, 263 F.3d 379, 394 (4th Cir. 2001). Indeed, this Court

42

has repeatedly rejected Plaintiffs' view that universal relief follows automatically in an APA case, including immigration cases. *See Azar*, 911 F.3d at 584 (narrowing nationwide preliminary injunction in APA case to apply "only to the plaintiff[s]" as that would "provide complete relief to them"); *East Bay II*, 934 F.3d at 1029 (similar); *City and Cty. of San Francisco*, 897 F.3d at 1244 (similar). In the absence of a clear statement in the APA that it displaces traditional equity rules, the Court should adopt the narrower view, particularly given the preliminary posture of this case. *See, e.g.*, *East Bay II*, 934 F.3d at 1029; *Azar*, 911 F.3d at 584.

Nor does the fact that this case involves immigration warrant nationwide relief. *Id*. at 1029. Other Circuits have not held the Rule unlawful, so it should at least continue to apply to aliens in those Circuits. *See id.* The nationwide scope of the plaintiffs' practice is no matter given that an injunction can be limited to their bona fide clients. The court thought this untenable because "plaintiffs would be inundated with asylum requests." Op. 45, 1-ER-48. But an injunction providing Plaintiffs *more* clients and resources cannot possibly threaten Plaintiffs' ability to exist as a business—the basis for their alleged harm, Op. 45-46, 1-ER-48-49—and distorts Article III's requirement that a "remedy must be tailored to redress the plaintiff's particular injury" beyond recognition. *See Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018).

Therefore, at the very least, the injunction should be limited to Plaintiffs and their bona fide clients.

## CONCLUSION

The Court should vacate the district court's injunction for the foregoing reasons. At a minimum, the Court should limit the scope of the injunction to Plaintiffs and their bona fide clients.

Respectfully submitted,

JOHN V. COGHLAN
*Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
By: */s/ Erez Reuveni*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov
PATRICK GLEN
CHRISTINA P. GREER
*Senior Litigation Counsel*
CRAIG NEWELL
*Trial Attorney*

Dated: January 19, 2021                *Attorneys for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2021, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, appellants state that they know of no related case pending in this Court.

By: */s/ Erez Reuveni*
      EREZ REUVENI
      Assistant Director
      United States Department of Justice
      Civil Division

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27 because it contains 10,362 words. This motion complies with the typeface and the type style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

By: */s/ Erez Reuveni*
      EREZ REUVENI
      Assistant Director
      United States Department of Justice
      Civil Division