**No. 20-17490**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PANGEA LEGAL SERVICES, et al.
Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.
Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

### APPELLANTS' ADDENDUM

JOHN V. COGHLAN
*Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
PATRICK GLEN
CHRISTINA P. GREER
*Senior Litigation Counsel*
CRAIG NEWELL
*Trial Attorney*

# TABLE OF CONTENTS

## STATUTES

5 U.S.C. § 553.................................................................Addendum0001

8 U.S.C. § 1101(a)(43)(N), (O)........................................Addendum00016

8 U.S.C. § 1158(b)(1)(A)................................................Addendum00024

8 U.S.C. § 1158(b)(2)(A)(i)-(vi)......................................Addendum00025

8 U.S.C. § 1158(b)(2)(B)(i)............................................Addendum00025

8 U.S.C. § 1158(b)(2)(B)(ii)...........................................Addendum00026

8 U.S.C. § 1158(b)(2)(C)................................................Addendum00026

8 U.S.C. § 1159(b)........................................................Addendum00029

8 U.S.C. § 1229a(b)(4)(A)-(B).........................................Addendum00031

8 U.S.C. § 1229a(c)(1)(A), (B)........................................Addendum00033

8 U.S.C. § 1231(a)(5)....................................................Addendum00038

8 U.S.C. § 1231(b)(2)(B)(ii)...........................................Addendum00040

8 U.S.C. § 1231(b)(2)(B)(iv)...........................................Addendum00040

8 U.S.C. § 1231(b)(3)(A)................................................Addendum00040

8 U.S.C. § 1252(a)(5)....................................................Addendum00047

8 U.S.C. § 1252(b)(9)....................................................Addendum00049

8 U.S.C. § 1427...........................................................Addendum00052

28 U.S.C. § 1292(a)(1)..................................................Addendum00055

28 U.S.C. § 1331..........................................................Addendum00057

## REGULATIONS

8 C.F.R. § 208.13.........................................................Addendum00058

8 C.F.R. § 1208.13.......................................................Addendum00064

8 C.F.R. § 1208.16(b)....................................................Addendum00072

8 C.F.R. § 1208.16(f).....................................................Addendum00074

8 C.F.R. § 1208.24(b)....................................................Addendum00076

8 C.F.R. § 1208.24(f).....................................................Addendum00077

## *5 USCS § 553*

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service > TITLE 5. GOVERNMENT ORGANIZATION AND EMPLOYEES (§§ 101 — 11001) > Part I. The Agencies Generally (Chs. 1 — 9) > CHAPTER 5. Administrative Procedure (Subchs. I — V) > Subchapter II. Administrative Procedure (§§ 551 — 559)*

## § 553. Rule making

(**a**)This section applies, according to the provisions thereof, except to the extent that there is involved—

    (**1**)a military or foreign affairs function of the United States; or

    (**2**)a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(**b**)General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

    (**1**)a statement of the time, place, and nature of public rule making proceedings;

    (**2**)reference to the legal authority under which the rule is proposed; and

    (**3**)either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

    (**A**)to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

    (**B**)when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(**c**)After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title [*5 USCS §§ 556* and *557*] apply instead of this subsection.

(**d**)The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

    (**1**)a substantive rule which grants or recognizes an exemption or relieves a restriction;

    (**2**)interpretative rules and statements of policy; or

    (**3**)as otherwise provided by the agency for good cause found and published with the rule.

(**e**)Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

## History

**HISTORY:**

Added Sept. 6, 1966, *P. L. 89-554*, § 1, *80 Stat. 383*.

5 USCS § 553

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

---

**End of Document**

## 8 USCS § 1101, Part 1 of 3

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service  >  TITLE 8. ALIENS AND NATIONALITY (Chs. 1 — 15)  >  CHAPTER 12. IMMIGRATION AND NATIONALITY (§§ 1101 — 1537)  >  GENERAL PROVISIONS (§§ 1101 — 1107)*

# § 1101. Definitions

(**a**)As used in this Act—

(**1**)The term "administrator" means the official designated by the Secretary of State pursuant to section 104(b) of this Act [*8 USCS § 1104(b)*].

(**2**)The term "advocates" includes, but is not limited to, advises, recommends, furthers by overt act, and admits belief in.

(**3**)The term "alien" means any person not a citizen or national of the United States.

(**4**)The term "application for admission" has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa.

(**5**)The term "Attorney General" means the Attorney General of the United States.

(**6**)The term "border crossing identification card" means a document of identity bearing that designation issued to an alien who is lawfully admitted for permanent residence, or to an alien who is a resident in foreign contiguous territory, by a consular officer or an immigration officer for the purpose of crossing over the borders between the United States and foreign contiguous territory in accordance with such conditions for its issuance and use as may be prescribed by regulations. Such regulations shall provide that (A) each such document include a biometric identifier (such as the fingerprint or handprint of the alien) that is machine readable and (B) an alien presenting a border crossing identification card is not permitted to cross over the border into the United States unless the biometric identifier contained on the card matches the appropriate biometric characteristic of the alien.

(**7**)The term "clerk of court" means a clerk of a naturalization court.

(**8**)The terms "Commissioner" and "Deputy Commissioner" mean the Commissioner of Immigration and Naturalization and a Deputy Commissioner of Immigration and Naturalization, respectively.

(**9**)The term "consular officer" means any consular, diplomatic, or other officer or employee of the United States designated under regulations prescribed under authority contained in this Act, for the purpose of issuing immigrant or nonimmigrant visas or, when used in title III [*8 USCS §§ 1401* et seq.], for the purpose of adjudicating nationality.

(**10**)The term "crewman" means a person serving in any capacity on board a vessel or aircraft.

(**11**)The term "diplomatic visa" means a nonimmigrant visa bearing that title and issued to a nonimmigrant in accordance with such regulations as the Secretary of State may prescribe.

(**12**)The term "doctrine" includes, but is not limited to, policies, practices, purposes, aims, or procedures.

(**13**)

(**A**)The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

(**B**)An alien who is paroled under section 212(d)(5) [*8 USCS § 1182(d)(5)*] or permitted to land temporarily as an alien crewman shall not be considered to have been admitted.

**(C)**An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—

**(i)**has abandoned or relinquished that status,

**(ii)**has been absent from the United States for a continuous period in excess of 180 days,

**(iii)**has engaged in illegal activity after having departed the United States,

**(iv)**has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this Act and extradition proceedings,

**(v)**has committed an offense identified in section 212(a)(2) [*8 USCS § 1182(a)(2)*], unless since such offense the alien has been granted relief under section 212(h) or 240A(a) [*8 USCS § 1182(h)* or *1229b(a)*], or

**(vi)**is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

**(14)**The term "foreign state" includes outlying possessions of a foreign state, but self-governing dominions or territories under mandate or trusteeship shall be regarded as separate foreign states.

**(15)**The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

**(A)**

**(i)**an ambassador, public minister, or career diplomatic or an ambassador, public minister, or career diplomatic or consular officer who has been accredited by a foreign government recognized de jure by the United States and who is accepted by the President or by the Secretary of State, and the members of the alien's immediate family;

**(ii)**upon a basis of reciprocity, other officials and employees who have been accredited by a foreign government recognized de jure by the United States, who are accepted by the Secretary of State, and the members of their immediate families; and

**(iii)**upon a basis of reciprocity, attendants, servants, personal employees, and members of their immediate families, of the officials and employees who have a nonimmigrant status under (i) and (ii) above;

**(B)**an alien (other than one coming for the purpose of study or of performing skilled or unskilled labor or as a representative of foreign press, radio, film, or other foreign information media coming to engage in such vocation) having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure;

**(C)**an alien in immediate and continuous transit through the United States, or an alien who qualifies as a person entitled to pass in transit to and from the United Nations Headquarters District and foreign countries, under the provisions of paragraphs (3), (4), and (5) of section 11 of the Headquarters Agreement with the United Nations (*61 Stat. 758*) [*22 USCS § 287* note];

**(D)**

**(i)**an alien crewman serving in good faith as such in a capacity required for normal operation and service on board a vessel, as defined in section 258(a) [*8 USCS § 1288(a)*] (other than a fishing vessel having its home port or an operating base in the United States), or aircraft, who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft;

**(ii)**an alien crewman serving in good faith as such in any capacity required for normal operations and service aboard a fishing vessel having its home port or an operating base in the United States who intends to land temporarily in Guam or the Commonwealth of the Northern Mariana Islands and solely in

pursuit of his calling as a crewman and to depart from Guam or the Commonwealth of the Northern Mariana Island with the vessel on which he arrived;

**(E)**an alien entitled to enter the United States under and in pursuance of the provisions of a treaty of commerce and navigation between the United States and the foreign state of which he is a national, and the spouse and children of any such alien if accompanying or following to join him: (i) solely to carry on substantial trade, including trade in services or trade in technology, principally between the United States and the foreign state of which he is a national; (ii) solely to develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, a substantial amount of capital; or (iii) solely to perform services in a specialty occupation in the United States if the alien is a national of the Commonwealth of Australia and with respect to whom the Secretary of Labor determines and certifies to the Secretary of Homeland Security and the Secretary of State that the intending employer has filed with the Secretary of Labor an attestation under section 212(t)(1) [*8 USCS § 1182(t)(1)*];

**(F)**(i) an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study consistent with section 214(l) at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States, particularly designated by him and approved by the Attorney General after consultation with the Secretary of Education, which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student, and if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn, (ii) the alien spouse and minor children of any alien described in clause (i) if accompanying or following to join such an alien, and (iii) an alien who is a national of Canada or Mexico, who maintains actual residence and place of abode in the country of nationality, who is described in clause (i) except that the alien's qualifications for and actual course of study may be full or part-time, and who commutes to the United States institution or place of study from Canada or Mexico;

**(G)**

**(i)**a designated principal resident representative of a foreign government recognized de jure by the United States, which foreign government is a member of an international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (*59 Stat. 669*), accredited resident members of the staff of such representatives, and members of his or their immediate family;

**(ii)**other accredited representatives of such a foreign government to such international organizations, and the members of their immediate families;

**(iii)**an alien able to qualify under (i) or (ii) above except for the fact that the government of which such alien is an accredited representative is not recognized de jure by the United States, or that the government of which he is an accredited representative is not a member of such international organization, and the members of his immediate family;

**(iv)**officers, or employees of such international organizations, and the members of their immediate families;

**(v)**attendants, servants, and personal employees of any such representative, officer, or employee, and the members of the immediate families of such attendants, servants, and personal employees;

**(H)**[Caution: For expiration of amendments made to this subparagraph by Act Nov. 12, 1999, *P. L. 106-95*, see § 2(e) of such Act, which appears as *8 USCS § 1182* note.] an alien (i)(a) [Deleted] (b) subject to section 212(j)(2) [*8 USCS § 1182(j)(2)*] who is coming temporarily to the United States to perform services (other than services described in subclause (a) during the period in which such subclause applies and other than services described in subclause (ii)(a) or in subparagraph (O) or (P)) in a specialty occupation described in section 214(i)(1) [*8 USCS § 1184(i)(1)*] or as a fashion model, who meets the requirements for the occupation specified in section 214(i)(2) [*8 USCS § 1184(i)(2)*] or, in the case of a fashion model, is of distinguished merit and ability, and with respect to whom the Secretary of Labor determines and certifies to

the Attorney General that the intending employer has filed with the Secretary an application under section 212(n)(1) [*8 USCS § 1182(n)(1)*], or (b1) who is entitled to enter the United States under and in pursuance of the provisions of an agreement listed in section 214(g)(8)(A) [*8 USCS § 1184(g)(8)(A)*], who is engaged in a specialty occupation described in section 214(i)(3) [*8 USCS § 1184(i)(3)*], and with respect to whom the Secretary of Labor determines and certifies to the Secretary of Homeland Security and the Secretary of State that the intending employer has filed with the Secretary of Labor an attestation under section 212(t)(1) [*8 USCS § 1182(t)(1)*], or (c) who is coming temporarily to the United States to perform services as a registered nurse, who meets the qualifications described in section 212(m)(1) [*8 USCS § 1182(m)(1)*], and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that an unexpired attestation is on file and in effect under section 212(m)(2) [*8 USCS § 1182(m)(2)*] for the facility (as defined in section 212(m)(6)) [*8 USCS § 1182(m)(6)*]) for which the alien will perform the services; or (ii)(a) having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform agricultural labor or services, as defined by the Secretary of Labor in regulations and including agricultural labor defined in *section 3121(g) of the Internal Revenue Code of 1986* [*26 USCS § 3121(g)*], agriculture as defined in section 3(f) of the Fair Labor Standards Act of 1938 (*29 U.S.C. 203(f)*), and the pressing of apples for cider on a farm, of a temporary or seasonal nature, or (b) having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country, but this clause shall not apply to graduates of medical schools coming to the United States to perform services as members of the medical profession; or (iii) having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States as a trainee, other than to receive graduate medical education or training; and the alien spouse and minor children of any such alien specified in this paragraph if accompanying him or following to join him, in a training program that is not designed primarily to provide productive employment;

**(I)**upon a basis of reciprocity, an alien who is a bona fide representative of foreign press, radio, film, or other foreign information media, who seeks to enter the United States solely to engage in such vocation, and the spouse and children of such a representative, if accompanying or following to join him;

**(J)**an alien having a residence in a foreign country which he has no intention of abandoning who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill, or other person of similar description, who is coming temporarily to the United States as a participant in a program designated by the Director of the United States Information Agency, for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, or receiving training and who, if he is coming to the United States to participate in a program under which he will receive graduate medical education or training, also meets the requirements of section 212(j) [*8 USCS § 1182(j)*], and the alien spouse and minor children of any such alien if accompanying him or following to join him;

**(K)**subject to subsections (d) and (p) of section 214 [*8 USCS § 1184*], an alien who—

**(i)**is the fiancée or fiancé of a citizen of the United States (other than a citizen described in section 204(a)(1)(A)(viii)(I) [*8 USCS § 1154(a)(1)(A)(viii)(I)*]) and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission;

**(ii)**has concluded a valid marriage with a citizen of the United States (other than a citizen described in section 204(a)(1)(A)(viii)(I) [*8 USCS § 1154(a)(1)(A)(viii)(I)*]) who is the petitioner, is the beneficiary of a petition to accord a status under section 201(b)(2)(A)(i) [*8 USCS § 1151(b)(2)(A)(i)*] that was filed under section 204 [*8 USCS § 1154*] by the petitioner, and seeks to enter the United States to await the approval of such petition and the availability to the alien of an immigrant visa; or

**(iii)**is the minor child of an alien described in clause (i) or (ii) and is accompanying, or following to join, the alien;

**(L)**subject to section 214(c)(2) [*8 USCS § 1184(c)(2)*], an alien who, within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States

temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge, and the alien spouse and minor children of any such alien if accompanying him or following to join him;

**(M)**(i) an alien having a residence in a foreign country which he has no intention of abandoning who seeks to enter the United States temporarily and solely for the purpose of pursuing a full course of study at an established vocational or other recognized nonacademic institution (other than in a language training program) in the United States particularly designated by him and approved by the Attorney General, after consultation with the Secretary of Education, which institution shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant nonacademic student and if any such institution fails to make reports promptly the approval shall be withdrawn, (ii) the alien spouse and minor children of any alien described in clause (i) if accompanying or following to join such an alien, and (iii) an alien who is a national of Canada or Mexico, who maintains actual residence and place of abode in the country of nationality, who is described in clause (i) except that the alien's course of study may be full or part-time, and who commutes to the United States institution or place of study from Canada or Mexico;

**(N)**

    **(i)**the parent of an alien accorded the status of special immigrant under paragraph (27)(I)(i) (or under analogous authority under paragraph (27)(L)), but only if and while the alien is a child, or

    **(ii)**a child of such parent or of an alien accorded the status of a special immigrant under clause (ii), (iii), or (iv) of paragraph (27)(I) (or under analogous authority under paragraph (27)(L));

**(O)**an alien who—

    **(i)**has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim or, with regard to motion picture and television productions a demonstrated record of extraordinary achievement, and whose achievements have been recognized in the field through extensive documentation, and seeks to enter the United States to continue work in the area of extraordinary ability;

    **(ii)**

        **(I)**seeks to enter the United States temporarily and solely for the purpose of accompanying and assisting in the artistic or athletic performance by an alien who is admitted under clause (i) for a specific event or events,

        **(II)**is an integral part of such actual performance,

        **(III)**(a) has critical skills and experience with such alien which are not of a general nature and which cannot be performed by other individuals, or (b) in the case of a motion picture or television production, has skills and experience with such alien which are not of a general nature and which are critical either based on a pre-existing longstanding working relationship or, with respect to the specific production, because significant production (including pre- and post-production work) will take place both inside and outside the United States and the continuing participation of the alien is essential to the successful completion of the production, and

        **(IV)**has a foreign residence which the alien has no intention of abandoning; or

    **(iii)**is the alien spouse or child of an alien described in clause (i) or (ii) and is accompanying, or following to join, the alien;

**(P)**an alien having a foreign residence which the alien has no intention of abandoning who—

    **(i)**(a) is described in section 214(c)(4)(A) [*8 USCS § 1184(c)(4)(A)*] (relating to athletes), or (b) is described in section 214(c)(4)(B) [*8 USCS § 1184(c)(4)(B)*] (relating to entertainment groups);

    **(ii)**

**(I)**performs as an artist or entertainer, individually or as part of a group, or is an integral part of the performance of such a group, and

**(II)**seeks to enter the United States temporarily and solely for the purpose of performing as such an artist or entertainer or with such a group under a reciprocal exchange program which is between an organization or organizations in the United States and an organization or organizations in one or more foreign states and which provides for the temporary exchange of artists and entertainers, or groups of artists and entertainers;

**(iii)**

**(I)**performs as an artist or entertainer, individually or as part of a group, or is an integral part of the performance of such a group, and

**(II)**seeks to enter the United States temporarily and solely to perform, teach, or coach as such an artist or entertainer or with such a group under a commercial or noncommercial program that is culturally unique; or

**(iv)**is the spouse or child of an alien described in clause (i), (ii), or (iii) and is accompanying, or following to join, the alien;

**(Q)**an alien having a residence in a foreign country which he has no intention of abandoning who is coming temporarily (for a period not to exceed 15 months) to the United States as a participant in an international cultural exchange program approved by the Secretary of Homeland Security for the purpose of providing practical training, employment, and the sharing of the history, culture, and traditions of the country of the alien's nationality and who will be employed under the same wages and working conditions as domestic workers;

**(R)**an alien, and the spouse and children of the alien if accompanying or following to join the alien, who—

**(i)**for the 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States; and

**(ii)**seeks to enter the United States for a period not to exceed 5 years to perform the work described in subclause (I), (II), or (III) of paragraph (27)(C)(ii);

**(S)**subject to section 214(k) [*8 USCS § 1184(k)*], an alien—

**(i)**who the Attorney General determines—

**(I)**is in possession of critical reliable information concerning a criminal organization or enterprise;

**(II)**is willing to supply or has supplied such information to Federal or State law enforcement authorities or a Federal or State court; and

**(III)**whose presence in the United States the Attorney General determines is essential to the success of an authorized criminal investigation or the successful prosecution of an individual involved in the criminal organization or enterprise; or

**(ii)**who the Secretary of State and the Attorney General jointly determine—

**(I)**is in possession of critical reliable information concerning a terrorist organization, enterprise, or operation;

**(II)**is willing to supply or has supplied such information to Federal law enforcement authorities or a Federal court;

**(III)**will be or has been placed in danger as a result of providing such information; and

**(IV)**is eligible to receive a reward under section 36(a) of the State Department Basic Authorities Act of 1956 [*22 USCS § 2708(a)*],

and, if the Attorney General (or with respect to clause (ii), the Secretary of State and the Attorney General jointly) considers it to be appropriate, the spouse, married and unmarried sons and daughters, and parents of an alien described in clause (i) or (ii) if accompanying, or following to join, the alien;

**(T)**

**(i)**subject to section 214(o) [*8 USCS § 1184(o)*], an alien who the Secretary of Homeland Security, or in the case of subclause (III)(aa) the Secretary of Homeland Security, in consultation with the Attorney General, determines—

**(I)**is or has been a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000 [*22 USCS § 7102*];

**(II)**is physically present in the United States, American Samoa, or the Commonwealth of the Northern Mariana Islands, or at a port of entry thereto, on account of such trafficking, including physical presence on account of the alien having been allowed entry into the United States for participation in investigative or judicial processes associated with an act or a perpetrator of trafficking;

**(III)**

**(aa)**has complied with any reasonable request for assistance in the Federal, State, or local investigation or prosecution of acts of trafficking or the investigation of crime where acts of trafficking are at least one central reason for the commission of that crime;

**(bb)**in consultation with the Attorney General, as appropriate, is unable to cooperate with a request described in item (aa) due to physical or psychological trauma; or

**(cc)**has not attained 18 years of age; and

**(IV)**the alien would suffer extreme hardship involving unusual and severe harm upon removal; and

**(ii)**if accompanying, or following to join, the alien described in clause (i)—

**(I)**in the case of an alien described in clause (i) who is under 21 years of age, the spouse, children, unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause, and parents of such alien;

**(II)**in the case of an alien described in clause (i) who is 21 years of age or older, the spouse and children of such alien; or

**(III)**any parent or unmarried sibling under 18 years of age, or any adult or minor children of a derivative beneficiary of the alien, as of an alien described in subclause (I) or (II) who the Secretary of Homeland Security, in consultation with the law enforcement officer investigating a severe form of trafficking, determines faces a present danger of retaliation as a result of the alien's escape from the severe form of trafficking or cooperation with law enforcement.

**(iii)**[Deleted]

**(U)**

**(i)**subject to section 214(p) [*8 USCS § 1184(p)*], an alien who files a petition for status under this subparagraph, if the Secretary of Homeland Security determines that—

**(I)**the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);

**(II)**the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) possesses information concerning criminal activity described in clause (iii);

**(III)**the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the

Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and

(IV)the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States;

(ii)if accompanying, or following to join, the alien described in clause (i)—

(I)in the case of an alien described in clause (i) who is under 21 years of age, the spouse, children, unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause, and parents of such alien; or

(II)in the case of an alien described in clause (i) who is 21 years of age or older, the spouse and children of such alien; and

(iii)the criminal activity referred to in this clause is that involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law: rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; stalking; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; fraud in foreign labor contracting (as defined in *section 1351 of title 18, United States Code*); or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes; or

(V)subject to section 214(q) [*8 USCS § 1184(q)*], an alien who is the beneficiary (including a child of the principal alien, if eligible to receive a visa under section 203(d) [*8 USCS § 1153(d)*]) of a petition to accord a status under section 203(a)(2)(A) [*8 USCS § 1153(a)(2)(A)*] that was filed with the Attorney General under section 204 [*8 USCS § 1154*] on or before the date of the enactment of the Legal Immigration Family Equity Act [enacted Dec. 21, 2000], if—

(i)such petition has been pending for 3 years or more; or

(ii)such petition has been approved, 3 years or more have elapsed since such filing date, and—

(I)an immigrant visa is not immediately available to the alien because of a waiting list of applicants for visas under section 203(a)(2)(A) [*8 USCS § 1153(a)(2)(A)*]; or

(II)the alien's application for an immigrant visa, or the alien's application for adjustment of status under section 245 [*8 USCS § 1255*], pursuant to the approval of such petition, remains pending.

(16)The term "immigrant visa" means an immigrant visa required by this Act and properly issued by a consular officer at his office outside of the United States to an eligible immigrant under the provisions of this Act.

(17)The term "immigration laws" includes this Act and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, expulsion, or removal of aliens.

(18)The term "immigration officer" means any employee or class of employees of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer specified by this Act or any section thereof.

(19)The term "ineligible to citizenship," when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (*54 Stat. 885*; *55 Stat. 844*), or under section 4(a) of the Selective Service Act of 1948, as amended (*62 Stat. 605*; *65 Stat. 76*) [section 4(a) of the Military Selective Service Act, *50 USCS § 3803(a)*], or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts.

(20) The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

(21) The term "national" means a person owing permanent allegiance to a state.

(22) The term "national of the United States" means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.

(23) The term "naturalization" means the conferring of nationality of a state upon a person after birth, by any means whatsoever.

(24) [Repealed]

(25) The term "noncombatant service" shall not include service in which the individual is not subject to military discipline, court martial, or does not wear the uniform of any branch of the armed forces.

(26) The term "nonimmigrant visa" means a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in this Act.

(27) The term "special immigrant" means—

(A) an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad;

(B) an immigrant who was a citizen of the United States and may, under section 324(a) or 327 of title III [*8 USCS §§ 1435(a)* or *1438*], apply for reacquisition of citizenship;

(C) an immigrant, and the immigrant's spouse and children if accompanying or following to join the immigrant, who—

(i) for at least 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States;

(ii) seeks to enter the United States—

(I) solely for the purpose of carrying on the vocation of a minister of that religious denomination,

(II) before September 30, 2015, in order to work for the organization at the request of the organization in a professional capacity in a religious vocation or occupation, or

(III) before September 30, 2015, in order to work for the organization (or for a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in *section 501(c)(3) of the Internal Revenue Code of 1986* [*26 USCS § 501(c)(3)*]) at the request of the organization in a religious vocation or occupation; and

(iii) has been carrying on such vocation, professional work, or other work continuously for at least the 2-year period described in clause (i);

(D) an immigrant who is an employee, or an honorably retired former employee, of the United States Government abroad, or of the American Institute in Taiwan, and who has performed faithful service for a total of fifteen years, or more, and his accompanying spouse and children: *Provided,* That the principal officer of a Foreign Service establishment (or, in the case of the American Institute in Taiwan, the Director thereof), in his discretion, shall have recommended the granting of special immigrant status to such alien in exceptional circumstances and the Secretary of State approves such recommendation and finds that it is in the national interest to grant such status;

(E) an immigrant, and his accompanying spouse and children, who is or has been an employee of the Panama Canal Company or Canal Zone Government before the date on which the Panama Canal Treaty of 1977 (as described in section 3(a)(1) of the Panama Canal Act of 1979 [*22 USCS § 3602(a)(1)*]) enters into force, who was resident in the Canal Zone on the effective date of the exchange of instruments of ratification of such Treaty, and who has performed faithful service as such an employee for one year or more;

**(F)**an immigrant, and his accompanying spouse and children, who is a Panamanian national and (i) who, before the date on which such Panama Canal Treaty of 1977 enters into force, has been honorably retired from United States Government employment in the Canal Zone with a total of 15 years or more of faithful service, or (ii) who, on the date on which such Treaty enters into force, has been employed by the United States Government in the Canal Zone with a total of 15 years or more of faithful service and who subsequently is honorably retired from such employment or continues to be employed by the United States Government in an area of the former Canal Zone;

**(G)**an immigrant, and his accompanying spouse and children, who was an employee of the Panama Canal Company or Canal Zone Government on the effective date of the exchange of instruments of ratification of such Panama Canal Treaty of 1977, who has performed faithful service for five years or more as such an employee, and whose personal safety, or the personal safety of whose spouse or children, as a direct result of such Treaty, is reasonably placed in danger because of the special nature of any of that employment;

**(H)**an immigrant, and his accompanying spouse and children, who—

**(i)**has graduated from a medical school or has qualified to practice medicine in a foreign state,

**(ii)**was fully and permanently licensed to practice medicine in a State on January 9, 1978, and was practicing medicine in a State on that date,

**(iii)**entered the United States as a nonimmigrant under subsection (a)(15)(H) or (a)(15)(J) before January 10, 1978, and

**(iv)**has been continuously present in the United States in the practice or study of medicine since the date of such entry;

**(I)**

**(i)**an immigrant who is the unmarried son or daughter of an officer or employee, or of a former officer or employee, of an international organization described in paragraph (15)(G)(i), and who (I) while maintaining the status of a nonimmigrant under paragraph (15)(G)(iv) or paragraph (15)(N), has resided and been physically present in the United States for periods totaling at least one-half of the seven years before the date of application for a visa or for adjustment of status to a status under this subparagraph and for a period or periods aggregating at least seven years between the ages of five and 21 years, and (II) applies for a visa or adjustment of status under this subparagraph no later than his twenty-fifth birthday or six months after the date of enactment of the Immigration Technical Corrections Act of 1988 [enacted Oct. 24, 1988], whichever is later;

**(ii)**an immigrant who is the surviving spouse of a deceased officer or employee of such an international organization, and who (I) while maintaining the status of a nonimmigrant under paragraph (15)(G)(iv) or paragraph (15)(N), has resided and been physically present in the United States for periods totaling at least one-half of the seven years before the date of application for a visa or for adjustment of status to a status under this subparagraph and for a period or periods aggregating at least 15 years before the date of the death of such officer or employee, and (II) files a petition for status under this subparagraph no later than six months after the date of such death or six months after the date of enactment of the Immigration Technical Corrections Act of 1988 [enacted Oct. 24, 1988], whichever is later;

**(iii)**an immigrant who is a retired officer or employee of such an international organization, and who (I) while maintaining the status of a nonimmigrant under paragraph (15)(G)(iv), has resided and been physically present in the United States for periods totaling at least one-half of the seven years before the date of application for a visa or for adjustment of status to a status under this subparagraph and for a period or periods aggregating at least 15 years before the date of the officer or employee's retirement from any such international organization, and (II) files a petition for status under this subparagraph no later than six months after the date of such retirement or six months after the date of enactment of the Immigration and Nationality Technical Corrections Act of 1994 [enacted Oct. 25, 1994], whichever is later; or

**(iv)**an immigrant who is the spouse of a retired officer or employee accorded the status of special immigrant under clause (iii), accompanying or following to join such retired officer or employee as a member of his immediate family;

**(J)**an immigrant who is present in the United States—

**(i)**who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

**(ii)**for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

**(iii)**in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—

**(I)**no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

**(II)**no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act;

**(K)**an immigrant who has served honorably on active duty in the Armed Forces of the United States after October 15, 1978, and after original lawful enlistment outside the United States (under a treaty or agreement in effect on the date of the enactment of this subparagraph) for a period or periods aggregating—

**(i)**12 years and who, if separated from such service, was never separated except under honorable conditions, or

**(ii)**6 years, in the case of an immigrant who is on active duty at the time of seeking special immigrant status under this subparagraph and who has reenlisted to incur a total active duty service obligation of at least 12 years,

and the spouse or child of any such immigrant if accompanying or following to join the immigrant, but only if the executive department under which the immigrant serves or served recommends the granting of special immigrant status to the immigrant;

**(L)**an immigrant who would be described in clause (i), (ii), (iii), or (iv) of subparagraph (I) if any reference in such a clause—

**(i)**to an international organization described in paragraph (15)(G)(i) were treated as a reference to the North Atlantic Treaty Organization (NATO);

**(ii)**to a nonimmigrant under paragraph (15)(G)(iv) were treated as a reference to a nonimmigrant classifiable under NATO-6 (as a member of a civilian component accompanying a force entering in accordance with the provisions of the NATO Status-of-Forces Agreement, a member of a civilian component attached to or employed by an Allied Headquarters under the "Protocol on the Status of International Military Headquarters" set up pursuant to the North Atlantic Treaty, or as a dependent); and

**(iii)**to the Immigration Technical Corrections Act of 1988 or to the Immigration and Nationality Technical Corrections Act of 1994 were a reference to the American Competitiveness and Workforce Improvement Act of 1998[; or]

**(M)**subject to the numerical limitations of section 203(b)(4) [*8 USCS § 1153(b)(4)*], an immigrant who seeks to enter the United States to work as a broadcaster in the United States for the International Broadcasting Bureau of the Broadcasting Board of Governors [United States Agency for Global Media], or for a grantee of

the Broadcasting Board of Governors [United States Agency for Global Media], and the immigrant's accompanying spouse and children.

**(28)**The term "organization" means, but is not limited to, an organization, corporation, company, partnership, association, trust, foundation or fund; and includes a group of persons, whether or not incorporated, permanently or temporarily associated together with joint action on any subject or subjects.

**(29)**The term "outlying possessions of the United States" means American Samoa and Swains Island.

**(30)**The term "passport" means any travel document issued by competent authority showing the bearer's origin, identity, and nationality if any, which is valid for the admission of the bearer into a foreign country.

**(31)**The term "permanent" means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law.

**(32)**The term "profession" shall include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies, or seminaries.

**(33)**The term "residence" means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent.

**(34)**The term "Service" means the Immigration and Naturalization Service of the Department of Justice.

**(35)**The term [terms] "spouse," "wife," or "husband" do not include a spouse, wife, or husband by reason of any marriage ceremony where the contracting parties thereto are not physically present in the presence of each other, unless the marriage shall have been consummated.

**(36)**The term "State" includes the District of Columbia, Puerto Rico, Guam, the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands.

**(37)**The term "totalitarian party" means an organization which advocates the establishment in the United States of a totalitarian dictatorship or totalitarianism. The terms "totalitarian dictatorship" and "totalitarianism" mean and refer to systems of government not representative in fact, characterized by (A) the existence of a single political party, organized on a dictatorial basis, with so close an identity between such party and its policies and the governmental policies of the country in which it exists, that the party and the government constitute an indistinguishable unit, and (B) the forcible suppression of opposition to such party.

**(38)**The term "United States," except as otherwise specifically herein provided, when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands.

**(39)**The term "unmarried," when used in reference to any individual as of any time, means an individual who at such time is not married, whether or not previously married.

**(40)**The term "world communism" means a revolutionary movement, the purpose of which is to establish eventually a Communist totalitarian dictatorship in any or all the countries of the world through the medium of an internationally coordinated Communist political movement.

**(41)**The term "graduates of a medical school" means aliens who have graduated from a medical school or who have qualified to practice medicine in a foreign state, other than such aliens who are of national or international renown in the field of medicine.

**(42)**The term "refugee" means (A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or (B) in such special circumstances as the President after appropriate consultation (as defined in section 207(e) of this Act [*8 USCS § 1157(e)*]) may specify, any person who is within the country of such person's nationality or, in the case of a person having no nationality, within the country in which such person is habitually residing, and who is persecuted or who has a well-founded

fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. The term "refugee" does not include any person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion. For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

**(43)** The term "aggravated felony" means—

**(A)** murder, rape, or sexual abuse of a minor;

**(B)** illicit trafficking in a controlled substance (as defined in section 102 of the Controlled Substances Act [*21 USCS § 802*]), including a drug trafficking crime (as defined in *section 924(c) of title 18, United States Code*);

**(C)** illicit trafficking in firearms or destructive devices (as defined in *section 921 of title 18, United States Code*) or in explosive materials (as defined in section 841(c) of that title);

**(D)** an offense described in *section 1956 of title 18, United States Code* (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000;

**(E)** an offense described in—

> **(i)** section 842 (h) or (i) of title 18, United States Code, or section 844 (d), (e), (f), (g), (h), or (i) of that title (relating to explosive materials offenses);

> **(ii)** section 922(g) (1), (2), (3), (4), or (5), (j), (n), (o), (p), or (r) or 924 (b) or (h) of title 18, United States Code (relating to firearms offenses); or

> **(iii)** *section 5861 of the Internal Revenue Code of 1986* [*26 USCS § 5861*] (relating to firearms offenses);

**(F)** a crime of violence (as defined in *section 16 of title 18, United States Code*, but not including a purely political offense) for which the term of imprisonment [is] at least one year;

**(G)** a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year;

**(H)** an offense described in section 875, 876, 877, or *1202 of title 18, United States Code* (relating to the demand for or receipt of ransom);

**(I)** an offense described in section 2251, 2251A, or *2252 of title 18, United States Code* (relating to child pornography);

**(J)** an offense described in *section 1962 of title 18, United States Code* (relating to racketeer influenced corrupt organizations), or an offense described in section 1084 (if it is a second or subsequent offense) or 1955 of that title (relating to gambling offenses), for which a sentence of one year imprisonment or more may be imposed;

**(K)** an offense that—

> **(i)** relates to the owning, controlling, managing, or supervising of a prostitution business;

> **(ii)** is described in section 2421, 2422, or *2423 of title 18, United States Code* (relating to transportation for the purpose of prostitution) if committed for commercial advantage; or

> **(iii)** is described in any of sections 1581–1585 or 1588–*1591 of title 18, United States Code* (relating to peonage, slavery, involuntary servitude, and trafficking in persons);

**(L)** an offense described in—

**(i)** section 793 (relating to gathering or transmitting national defense information), 798 (relating to disclosure of classified information), 2153 (relating to sabotage) or 2381 or 2382 (relating to treason) of title 18, United States Code;

**(ii)** section 601 of the National Security Act of 1947 [*50 USCS § 421*] (relating to protecting the identity of undercover intelligence agents);

**(iii)** section 601 of the National Security Act of 1947 [*50 USCS § 421*] (relating to protecting the identity of undercover agents);

**(M)** an offense that—

**(i)** involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or

**(ii)** is described in *section 7201 of the Internal Revenue Code of 1986* [*26 USCS § 7201*] (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000;

**(N)** an offense described in paragraph (1)(A) or (2) of section 274(a) [*8 USCS § 1324(a)(1)(A)* or (2)] (relating to alien smuggling), except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this Act[;]

**(O)** an offense described in section 275(a) or 276 [*8 USCS § 1325(a)* or *1326*] committed by an alien who was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph;

**(P)** an offense (i) which either is falsely making, forging, counterfeiting, mutilating, or altering a passport or instrument in violation of *section 1543 of title 18, United States Code*, or is described in section 1546(a) of such title (relating to document fraud) and (ii) for which the term of imprisonment is at least 12 months, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this Act;

**(Q)** an offense relating to a failure to appear by a defendant for service of sentence if the underlying offense is punishable by imprisonment for a term of 5 years or more;

**(R)** an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year;

**(S)** an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year;

**(T)** an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed; and

**(U)** an attempt or conspiracy to commit an offense described in this paragraph.

The term applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years. Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph.

**(44)**

**(A)** The term "managerial capacity" means an assignment within an organization in which the employee primarily—

**(i)** manages the organization, or a department, subdivision, function, or component of the organization;

**(ii)**supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

**(iii)**if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

**(iv)**exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

**(B)**The term "executive capacity" means an assignment within an organization in which the employee primarily—

**(i)**directs the management of the organization or a major component or function of the organization;

**(ii)**establishes the goals and policies of the organization, component, or function;

**(iii)**exercises wide latitude in discretionary decision-making; and

**(iv)**receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

**(C)**If staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the Attorney General shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function. An individual shall not be considered to be acting in a managerial or executive capacity (as previously defined) merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed.

**(45)**The term "substantial" means, for purposes of paragraph (15)(E) with reference to trade or capital, such an amount of trade or capital as is established by the Secretary of State, after consultation with appropriate agencies of Government.

**(46)**The term "extraordinary ability" means, for purposes of section 101(a)(15)(O)(i) [*8 USCS § 1101(a)(15)(O)(i)*], in the case of the arts, distinction.

**(47)**

**(A)**The term "order of deportation" means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.

**(B)**The order described under subparagraph (A) shall become final upon the earlier of—

**(i)**a determination by the Board of Immigration Appeals affirming such order; or

**(ii)**the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

**(48)**

**(A)**The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

**(i)**a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

**(ii)**the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

**(B)**Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.

**(49)**The term "stowaway" means any alien who obtains transportation without the consent of the owner, charterer, master or person in command of any vessel or aircraft through concealment aboard such vessel or aircraft. A passenger who boards with a valid ticket is not to be considered a stowaway.

**(50)**The term "intended spouse" means any alien who meets the criteria set forth in section 204(a)(1)(A)(iii)(II)(aa)(BB), 204(a)(1)(B)(ii)(II)(aa)(BB), or 240A(b)(2)(A)(i)(III) [*8 USCS § 1154(a)(1)(A)(iii)(II)(aa)(BB)*, *1154(a)(1)(B)(ii)(II)(aa)(BB)*, or *1229b(b)(2)(A)(i)(III)*].

**(51)**The term "VAWA self-petitioner" means an alien, or a child of the alien, who qualifies for relief under—

**(A)**clause (iii), (iv), or (vii) of section 204(a)(1)(A) [*8 USCS § 1154(a)(1)(A)*];

**(B)**clause (ii) or (iii) of section 204(a)(1)(B) [*8 USCS § 1154(a)(1)(B)*];

**(C)**section 216(c)(4)(C) [*8 USCS § 1186(c)(4)(C)*];

**(D)**the first section of *Public Law 89-732* (*8 U.S.C. 1255* note) (commonly known as the Cuban Adjustment Act) as a child or spouse who has been battered or subjected to extreme cruelty;

**(E)**section 902(d)(1)(B) of the Haitian Refugee Immigration Fairness Act of 1998 (*8 U.S.C. 1255* note);

**(F)**section 202(d)(1) of the Nicaraguan Adjustment and Central American Relief Act [*8 USCS § 1255* note]; or

**(G)**section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [note to this section] (division C of *Public Law 104-208*).

**(52)**The term "accredited language training program" means a language training program that is accredited by an accrediting agency recognized by the Secretary of Education.

**(b)**As used in titles I and II [*8 USCS §§ 1101* et seq., *1151* et seq.]—

**(1)**The term "child" means an unmarried person under twenty-one years of age who is—

**(A)**a child born in wedlock;

**(B)**a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred;

**(C)**a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation;

**(D)**a child born out of wedlock, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural mother or to its natural father if the father has or had a bona fide parent-child relationship with the person;

**(E)**

**(i)**a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years or if the child has been battered or subject to extreme cruelty by the adopting parent or by a family member of the adopting parent residing in the same household: *Provided,* That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act; or

**(ii)**subject to the same proviso as in clause (i), a child who: (I) is a natural sibling of a child described in clause (i) or subparagraph (F)(i); (II) was adopted by the adoptive parent or parents of the sibling described in such clause or subparagraph; and (III) is otherwise described in clause (i), except that the child was adopted while under the age of 18 years;

**(F)**

**(i)** a child, under the age of sixteen at the time a petition is filed in his behalf to accord a classification as an immediate relative under section 201(b) [*8 USCS § 1151(b)*], who is an orphan because of the death or disappearance of, abandonment or desertion by, or separation or loss from, both parents, or for whom the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption; who has been adopted abroad by a United States citizen and spouse jointly, or by an unmarried United States citizen who is at least 25 years of age, at least 1 of whom personally saw and observed the child before or during the adoption proceedings; or who is coming to the United States for adoption by a United States citizen and spouse jointly, or by an unmarried United States citizen at least twenty-five years of age, who have or has complied with the preadoption requirements, if any, of the child's proposed residence: *Provided,* That the Attorney General is satisfied that proper care will be furnished the child if admitted to the United States: *Provided further,* That no natural parent or prior adoptive parent of any such child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act; or

**(ii)** subject to the same provisos as in clause (i), a child who: (I) is a natural sibling of a child described in clause (i) or subparagraph (E)(i); (II) has been adopted abroad, or is coming to the United States for adoption, by the adoptive parent (or prospective adoptive parent) or parents of the sibling described in such clause or subparagraph; and (III) is otherwise described in clause (i), except that the child is under the age of 18 at the time a petition is filed in his or her behalf to accord a classification as an immediate relative under section 201(b) [*8 USCS § 1151(b)*]; or

**(G)**

**(i)** a child, younger than 16 years of age at the time a petition is filed on the child's behalf to accord a classification as an immediate relative under section 201(b) [*8 USCS § 1151(b)*], who has been adopted in a foreign state that is a party to the Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption, done at The Hague on May 29, 1993, or who is emigrating from such a foreign state to be adopted in the United States by a United States citizen and spouse jointly or by an unmarried United States citizen who is at least 25 years of age, *Provided,* That—

**(I)** the Secretary of Homeland Security is satisfied that proper care will be furnished the child if admitted to the United States;

**(II)** the child's natural parents (or parent, in the case of a child who has one sole or surviving parent because of the death or disappearance of, abandonment or desertion by, the other parent), or other persons or institutions that retain legal custody of the child, have freely given their written irrevocable consent to the termination of their legal relationship with the child, and to the child's emigration and adoption;

**(III)** in the case of a child having two living natural parents, the natural parents are incapable of providing proper care for the child;

**(IV)** the Secretary of Homeland Security is satisfied that the purpose of the adoption is to form a bona fide parent-child relationship, and the parent-child relationship of the child and the natural parents has been terminated (and in carrying out both obligations under this subclause the Secretary of Homeland Security may consider whether there is a petition pending to confer immigrant status on one or both of such natural parents); and

**(V)** in the case of a child who has not been adopted—

**(aa)** the competent authority of the foreign state has approved the child's emigration to the United States for the purpose of adoption by the prospective adoptive parent or parents; and

**(bb)** the prospective adoptive parent or parents has or have complied with any pre-adoption requirements of the child's proposed residence; and

(ii)except that no natural parent or prior adoptive parent of any such child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter; or

(iii)subject to the same provisos as in clauses (i) and (ii), a child who—

(I)is a natural sibling of a child described in clause (i), subparagraph (E)(i), or subparagraph (F)(i);

(II)was adopted abroad, or is coming to the United States for adoption, by the adoptive parent (or prospective adoptive parent) or parents of the sibling described in clause (i), subparagraph (E)(i), or subparagraph (F)(i); and

(III)is otherwise described in clause (i), except that the child is younger than 18 years of age at the time a petition is filed on his or her behalf for classification as an immediate relative under section 201(b) [*8 USCS § 1151(b)*].

(2)The terms "parent," "father," or "mother" mean a parent, father, or mother only where the relationship exists by reason of any of the circumstances set forth in (1) above, except that, for purposes of paragraph (1)(F) (other than the second proviso therein) and paragraph (1)(G)(i) in the case of a child born out of wedlock described in paragraph (1)(D) (and not described in paragraph (1)(C)), the term "parent" does not include the natural father of the child if the father has disappeared or abandoned or deserted the child or if the father has in writing irrevocably released the child for emigration and adoption.

(3)The term "person" means an individual or an organization.

(4)The term "immigration judge" means an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review, qualified to conduct specified classes of proceedings, including a hearing under section 240 [*8 USCS § 1229a*]. An immigration judge shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe, but shall not be employed by the Immigration and Naturalization Service.

(5)The term "adjacent islands" includes Saint Pierre, Miquelon, Cuba, the Dominican Republic, Haiti, Bermuda, the Bahamas, Barbados, Jamaica, the Windward and Leeward Islands, Trinidad, Martinique, and other British, French, and Netherlands territory or possessions in or bordering on the Caribbean Sea.

(c)As used in title III [*8 USCS §§ 1401* et seq.]—

(1)The term "child" means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and, except as otherwise provided in sections 320 and 321 of title III [*8 USCS §§ 1431, 1432*], a child adopted in the United States, if such legitimation or adoption takes place before the child reaches the age of 16 years (except to the extent that the child is described in subparagraph (E)(ii) or (F)(ii) of subsection (b)(1)), and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

(2)The terms "parent," "father," and "mother" include in the case of a posthumous child a deceased parent, father, and mother.

(d)[Repealed]

(e)For the purposes of this Act—

(1)The giving, loaning, or promising of support or of money or any other thing of value to be used for advocating any doctrine shall constitute the advocating of such doctrine; but nothing in this paragraph shall be construed as an exclusive definition of advocating.

(2)The giving, loaning, or promising of support or of money or any other thing of value for any purpose to any organization shall be presumed to constitute affiliation therewith; but nothing in this paragraph shall be construed as an exclusive definition of affiliation.

(3)Advocating the economic, international, and governmental doctrines of world communism means advocating the establishment of a totalitarian Communist dictatorship in any or all of the countries of the world through the medium of an internationally coordinated Communist movement.

(f)For the purposes of this Act—

No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

(1)a habitual drunkard;

(2)[Repealed]

(3)a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 212(a) of this Act [*8 USCS § 1182(a)*]; or subparagraphs (A) and (B) of section 212(a)(2) [*8 USCS § 1182(a)(2)*] and subparagraph (C) thereof [of such section] (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

(4)one whose income is derived principally from illegal gambling activities;

(5)one who has been convicted of two or more gambling offenses committed during such period;

(6)one who has given false testimony for the purpose of obtaining any benefits under this Act;

(7)one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

(8)one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43)); or

(9)one who at any time has engaged in conduct described in section 212(a)(3)(E) [*8 USCS § 1182(a)(3)(E)*] (relating to assistance in Nazi persecution, participation in genocide, or commission of acts of torture or extrajudicial killings) or 212(a)(2)(G) [*8 USCS § 1182(a)(2)(G)*] (relating to severe violations of religious freedom).

The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character. In the case of an alien who makes a false statement or claim of citizenship, or who registers to vote or votes in a Federal, State, or local election (including an initiative, recall, or referendum) in violation of a lawful restriction of such registration or voting to citizens, if each natural parent of the alien (or, in the case of an adopted alien, each adoptive parent of the alien) is or was a citizen (whether by birth or naturalization), the alien permanently resided in the United States prior to attaining the age of 16, and the alien reasonably believed at the time of such statement, claim, or violation that he or she was a citizen, no finding that the alien is, or was, not of good moral character may be made based on it.

(g)For the purposes of this Act any alien ordered deported or removed (whether before or after the enactment of this Act [enacted June 27, 1952]) who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed.

(h)For purposes of section 212(a)(2)(E) [*8 USCS § 1182(a)(2)(E)*], the term "serious criminal offense" means—

(1)any felony;

(2)any crime of violence, as defined in *section 16 of title 18 of the United States Code*; or

(3)any crime of reckless driving or of driving while intoxicated or under the influence of alcohol or of prohibited substances if such crime involves personal injury to another.

(i)With respect to each nonimmigrant alien described in subsection (a)(15)(T)(i)—

8 USCS § 1101, Part 1 of 3

**(1)** the Secretary of Homeland Security, the Attorney General, and other Government officials, where appropriate, shall provide the alien with a referral to a nongovernmental organization that would advise the alien regarding the alien's options while in the United States and the resources available to the alien; and

**(2)** the Secretary of Homeland Security shall, during the period the alien is in lawful temporary resident status under that subsection, grant the alien authorization to engage in employment in the United States and provide the alien with an "employment authorized" endorsement or other appropriate work permit.

## History

**HISTORY:**

Act June 27, 1952, ch 477, Title I, § 101, *66 Stat. 166*; Sept. 11, 1957, *P. L. 85-316*, §§ 1, 2, *71 Stat. 639*; July 7, 1958, *P. L. 85-508*, § 22, *72 Stat. 351*; March 18, 1959, *P. L. 86-3*, § 20(a), *73 Stat. 13*; Sept. 21, 1961, *P. L. 87-256*, § 109(a), (b), *75 Stat. 534*; Sept. 26, 1961, *P. L. 87-301*, §§ 1, 2, 7, *75 Stat. 650*, 653; Oct. 3, 1965, *P. L. 89-236*, §§ 8, 24, *79 Stat. 916*, 922; Nov. 2, 1966, *P. L. 89-710*, *80 Stat. 1104*; April 7, 1970, *P. L. 91-225*, § 1, *84 Stat. 116*; Dec. 16, 1975, *P. L. 94-155*, *89 Stat. 824*; Oct. 12, 1976, *P. L. 94-484*, Title VI, § 601(b), (e), *90 Stat. 2301*, 2302; Oct. 20, 1976, *P. L. 94-571*, § 7(a), *90 Stat. 2706*; Oct. 12, 1976, *P. L. 94-484*, Title VI, § 602(c), as added Aug. 1, 1977, *P. L. 95-83*, Title III, § 307(q)(3), *91 Stat. 395*; Aug. 17, 1977, *P. L. 95-105*, Title I, § 109(b)(3), *91 Stat 847*; Sept. 27, 1979, *P. L. 96-70*, Title III, Ch 1, § 3201(a), *93 Stat. 496*; March 17, 1980, *P. L. 96-212*, Title II, § 201(a), *94 Stat. 102*; Dec. 29, 1981, *P. L. 97-116*, §§ 2, 5(d)(1), 18(a), *95 Stat. 1611*, 1614, 1619; Oct. 30, 1984, *Priv. L. 98-47*, § 3, *98 Stat. 3435*; Oct. 21, 1986, *P. L. 99-505*, § 1, *100 Stat. 1806*; Nov. 6, 1986, *P. L. 99-603*, Title III, Part A, § 301(a), Part B, §§ 312, 315(a), *100 Stat. 3411*, 3434, 3439; Nov. 14, 1986, *P. L. 99-653*, §§ 2, 3, *100 Stat. 3655*; Oct. 1, 1988, *P. L. 100-459*, Title II, § 210(a), *102 Stat. 2203*; Oct. 24, 1988, *P. L. 100-525*, §§ 2(o)(1), 8(b), 9(a), *102 Stat. 2613*, 2617, 2619; Nov. 18, 1988, *P. L. 100-690*, Title VII, Subtitle J, § 7342, *102 Stat. 4469*; Nov. 21, 1989, *P. L. 101-162*, Title VI, § 611(a), *103 Stat. 1038*; Dec. 18, 1989, *P. L. 101-238*, § 3(a), *103 Stat. 2100*; Feb. 16, 1990, *P. L. 101-246*, Title I, Part C, § 131(b), *104 Stat. 31*; Nov. 29, 1990, *P. L. 101-649*, Title I, Subtitle B, Part 2, § 123, Subtitle D, §§ 151(a), 153(a), Subtitle E, § 161(f)(2)(A), Title II, Subtitle A, §§ 203(c), 204(a), (c), 205(c)(1), (d), (e), 206(c), 207(a), 208, 209, Title IV, § 407(a)(2), Title V, Subtitle A, §§ 501(a), 509(a), Title VI, § 603(a)(1), *104 Stat. 4995*, 5004, 5005, 5012, 5018, 5019, 5020, 5023, 5026, 5027, 5040, 5048, 5051, 5082; Oct. 1, 1991, *P. L. 102-110*, § 2(a), *105 Stat. 555*; Dec. 12, 1991, *P. L. 102-232*, Title II, §§ 203(a), 205(a)–(b), 206(b), (c)(1), (d), 207(b), 302(e)(8)(A), 303(a)(5)(A), (7)(A), 305(m)(1), 306(a)(1), 309(b)(1), *105 Stat. 1737*, 1740, 1741, 1746, 1747, 1748, 1750, 1751, 1758; April 30, 1994, *P. L. 103-236*, Title I, Part C, § 162(h)(1), *108 Stat. 407*; Sept. 13, 1994, *P. L. 103-322*, Title XIII, § 130003(a), *108 Stat. 2024*; Oct. 5, 1994, *P. L. 103-337*, Div C, Title XXXVI, § 3605, *108 Stat. 3113*; Oct. 25, 1994, *P. L. 103-416*, Title II, §§ 201, 202, 214, 219(a), 222(a), *108 Stat. 4310*, 4311, 4314, 4316, 4320; Nov. 15, 1995, *P. L. 104-51*, § 1, *109 Stat. 467*; April 24, 1996, *P. L. 104-132*, Title IV, Subtitle D, § 440(b), (e), *110 Stat. 1277*; Sept. 30, 1996, *P. L. 104-208*, Div C, Title I, Subtitle A, § 104(a), Title III, Subtitle A, §§ 301(a), 308(d)(3)(A), (4)(A), (e)(3), (f)(1)(A), (B), Subtitle B, §§ 321(a), (b), 322(a)(1), (2)(A), Subtitle E, § 361(a), Subtitle F, § 371(a), Title VI, Subtitle A, § 601(a), Subtitle B, § 625(a)(2), Subtitle E, § 671(a)(3)(B), (b)(5), (e)(2), *110 Stat. 3009-555*, 3009-575, 3009-617, 3009-620, 3009-621, 3009-627, 3009-629, 3009-644, 3009-645, 3009-689, 3009-700, 3009-721, 3009-722, 3009-723; Oct. 6, 1997, *P. L. 105-54*, § 1(a), *111 Stat. 1175*; Nov. 26, 1997, *P. L. 105-119*, Title I, § 113, *111 Stat. 2460*; Oct. 21, 1998, *P. L. 105-277*, Div C, Title IV, § 421, Div G, Title XXII, Ch 2, § 2222(e), *112 Stat. 2681*-657, 2681-819; Oct. 30, 1998, *P. L. 105-319*, § 2(b), (d)(2), *112 Stat. 3014*, 3015; Nov. 12, 1999, *P. L. 106-95*, § 2(a), (c), *113 Stat. 1312*, 1316; Dec. 7, 1999, *P. L. 106-139*, § 1(a), (b)(1), *113 Stat. 1696*; Oct. 6, 2000, *P. L. 106-279*, Title III, § 302(a), (c), *114 Stat. 838*, 839; Oct. 28, 2000, *P. L. 106-386*, Div A, § 107(e)(1), (4), Div B, Title V, §§ 1503(a), 1513(b), *114 Stat. 1477*, 1479, 1518, 1534; Oct. 30, 2000, *P. L. 106-395*, Title II, § 201(a)(1), *114 Stat. 1633*; Nov. 1, 2000, *P. L. 106-409*, § 2(a), *114 Stat. 1787*; Nov. 22, 2000, *P. L. 106-536*, § 1(a), *114 Stat. 2560*; Dec. 21, 2000, *P. L. 106-553*, § 1(a)(2), *114 Stat. 2762*; Jan. 16, 2002, *P. L. 107-125*, § 2(b), *115 Stat. 2403*; Oct. 4, 2002, *P. L. 107-234*, § 1(4), *116 Stat. 1481*; Nov. 2, 2002, *P. L. 107-274*, § 2(a), (b), 116 Stat. 1923; Sept. 3, 2003, *P. L. 108-77*, Title IV, § 402(a)(1), *117 Stat. 939*; Oct. 15, 2003, *P. L. 108-99*, § 1, *117 Stat. 1176*; Dec. 19, 2003, *P. L. 108-193*, §§ 4(b)(1), (5), 8(a)(1), *117 Stat. 2878*, 2879, 2886; Dec. 10, 2004, *P. L. 108-449*, § 1(a)(2)(B), (3)(A), (b)(1), *118 Stat. 3469*, 3470; Dec. 17, 2004, *P. L. 108-458*, Title V, Subtitle E, § 5504, *118 Stat. 3741*; May 11, 2005, *P. L. 109-13*, Div B, Title V, § 501(a), *119 Stat. 321*; Oct. 18, 2005, *P. L. 109-90*, Title V, § 536, *119 Stat. 2087*; Jan. 5, 2006, *P. L. 109-162*, Title VIII, Subtitle A, §§ 801, 805(d), Subtitle B, § 811, Subtitle C, § 822(c)(1), *119 Stat. 3053*, 3056, 3057, 3063; July 27, 2006, *P. L. 109-248*, Title IV, § 402(b), *120 Stat. 623*; May 8, 2008, *P. L. 110-229*, Title VII, Subtitle A, §

702(j)(1)–(3), *122 Stat. 866*; Oct. 10, 2008, *P. L. 110-391*, § 2(a), *122 Stat. 4193*; Dec. 23, 2008, *P. L. 110-457*, Title II, Subtitle A, § 201(a), Subtitle D, § 235(d)(1), *122 Stat. 5052*, 5079; March 20, 2009, *P. L. 111-9*, § 1, *123 Stat. 989*; Oct. 28, 2009, *P. L. 111-83*, Title V, § 568(a)(1), *123 Stat. 2186*; Nov. 30, 2010, *P. L. 111-287*, § 3, *124 Stat. 3058*; Dec. 14, 2010, *P. L. 111-306*, § 1(a), *124 Stat. 3280*; Sept. 28, 2012, *P. L. 112-176*, § 3, *126 Stat. 1325*; March 7, 2013, *P. L. 113-4*, Title VIII, § 801, Title XII, Subtitle B, Part II, §§ 1221, 1222, *127 Stat. 110*, 144; Jan. 17, 2014, *P. L. 113-76*, Div K, Title VII, § 7083, *128 Stat. 567*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## *8 USCS § 1158, Part 1 of 2*

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service  >  TITLE 8. ALIENS AND NATIONALITY (Chs. 1 — 15)  >  CHAPTER 12.*
*IMMIGRATION AND NATIONALITY (§§ 1101 — 1537)  >  IMMIGRATION (§§ 1151 — 1382)  >*
*SELECTION SYSTEM (§§ 1151 — 1161)*

## § 1158. Asylum

(a) **Authority to apply for asylum.**

(1)In general. Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 235(b) [*8 USCS § 1225*].

(2)Exceptions.

(A)Safe third country. Paragraph (1) shall not apply to an alien if the Attorney General determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General finds that it is in the public interest for the alien to receive asylum in the United States.

(B)Time limit. Subject to subparagraph (D), paragraph (1) shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States.

(C)Previous asylum applications. Subject to subparagraph (D), paragraph (1) shall not apply to an alien if the alien has previously applied for asylum and had such application denied.

(D)Changed circumstances. An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

(E)Applicability. Subparagraphs (A) and (B) shall not apply to an unaccompanied alien child (as defined in section 462(g) of the Homeland Security Act of 2002 (*6 U.S.C. 279(g)*)).

(3)Limitation on judicial review. No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).

(b) **Conditions for granting asylum.**

(1)In general.

(A)Eligibility. The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under this section if the Secretary of Homeland Security or the

Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A) [*8 USCS § 1101(A)(42)(A)*].

**(B)**Burden of proof.

**(i)**In general. The burden of proof is on the applicant to establish that the applicant is a refugee, within the meaning of section 101(a)(42)(A) [*8 USCS § 1101(a)(42)(A)*]. To establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant.

**(ii)**Sustaining burden. The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

**(iii)**Credibility determination. Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

**(2)**Exceptions.

**(A)**In general. Paragraph (1) shall not apply to an alien if the Attorney General determines that—

**(i)**the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

**(ii)**the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

**(iii)**there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States;

**(iv)**there are reasonable grounds for regarding the alien as a danger to the security of the United States;

**(v)**the alien is described in subclause (I), (II), (III), (IV), or (VI) of section 212(a)(3)(B)(i) [*8 USCS § 1182(a)(3)(B)(i)*] or section 237(a)(4)(B) [*8 USCS § 1227(a)(4)(B)*] (relating to terrorist activity), unless, in the case only of an alien described in subclause (IV) of section 212(a)(3)(B)(i) [*8 USCS § 1182(a)(3)(B)(i)*], the Attorney General determines, in the Attorney General's discretion, that there are not reasonable grounds for regarding the alien as a danger to the security of the United States; or

**(vi)**the alien was firmly resettled in another country prior to arriving in the United States.

**(B)**Special rules.

**(i)**Conviction of aggravated felony. For purposes of clause (ii) of subparagraph (A), an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime.

**(ii)**Offenses. The Attorney General may designate by regulation offenses that will be considered to be a crime described in clause (ii) or (iii) of subparagraph (A).

**(C)**Additional limitations. The Attorney General may by regulation establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum under paragraph (1).

**(D)**No judicial review. There shall be no judicial review of a determination of the Attorney General under subparagraph (A)(v).

**(3)**Treatment of spouse and children.

**(A)**In general. A spouse or child (as defined in section 101(b)(1) A), (B), (C), (D), or (E) [*8 USCS § 1101(b)(1)(A)*, (B), (C), (D), or (E)]) of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien.

**(B)**Continued classification of certain aliens as children. An unmarried alien who seeks to accompany, or follow to join, a parent granted asylum under this subsection, and who was under 21 years of age on the date on which such parent applied for asylum under this section, shall continue to be classified as a child for purposes of this paragraph and section 209(b)(3) [*8 USCS § 1159(b)(3)*], if the alien attained 21 years of age after such application was filed but while it was pending.

**(C)**Initial jurisdiction. An asylum officer (as defined in section 235(b)(1)(E) [*8 USCS § 1225(b)(1)(E)*]) shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child (as defined in section 462(g) of the Homeland Security Act of 2002 (*6 U.S.C. 279(g)*)), regardless of whether filed in accordance with this section or section 235(b) [*8 USCS § 1225(b)*].

**(c) Asylum status.**

**(1)**In general. In the case of an alien granted asylum under subsection (b), the Attorney General—

**(A)**shall not remove or return the alien to the alien's country of nationality or, in the case of a person having no nationality, the country of the alien's last habitual residence;

**(B)**shall authorize the alien to engage in employment in the United States and provide the alien with appropriate endorsement of that authorization; and

**(C)**may allow the alien to travel abroad with the prior consent of the Attorney General.

**(2)**Termination of asylum. Asylum granted under subsection (b) does not convey a right to remain permanently in the United States, and may be terminated if the Attorney General determines that—

**(A)**the alien no longer meets the conditions described in subsection (b)(1) owing to a fundamental change in circumstances;

**(B)**the alien meets a condition described in subsection (b)(2);

**(C)**the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien is eligible to receive asylum or equivalent temporary protection;

**(D)**the alien has voluntarily availed himself or herself of the protection of the alien's country of nationality or, in the case of an alien having no nationality, the alien's country of last habitual residence, by returning to such country with permanent resident status or the reasonable possibility of obtaining such status with the same rights and obligations pertaining to other permanent residents of that country; or

**(E)**the alien has acquired a new nationality and enjoys the protection of the country of his or her new nationality.

(3)Removal when asylum is terminated. An alien described in paragraph (2) is subject to any applicable grounds of inadmissibility or deportability under section [sections] 212(a) and 237(a) [*8 USCS §§ 1182(a)*, *1227(a)*], and the alien's removal or return shall be directed by the Attorney General in accordance with sections 240 and 241 [*8 USCS §§ 1229a*, *1231*].

**(d) Asylum procedure.**

(1)Applications. The Attorney General shall establish a procedure for the consideration of asylum applications filed under subsection (a). The Attorney General may require applicants to submit fingerprints and a photograph at such time and in such manner to be determined by regulation by the Attorney General.

(2)Employment. An applicant for asylum is not entitled to employment authorization, but such authorization may be provided under regulation by the Attorney General. An applicant who is not otherwise eligible for employment authorization shall not be granted such authorization prior to 180 days after the date of filing of the application for asylum.

(3)Fees. The Attorney General may impose fees for the consideration of an application for asylum, for employment authorization under this section, and for adjustment of status under section 209(b) [*8 USCS § 1159(b)*]. Such fees shall not exceed the Attorney General's costs in adjudicating the applications. The Attorney General may provide for the assessment and payment of such fees over a period of time or by installments. Nothing in this paragraph shall be construed to require the Attorney General to charge fees for adjudication services provided to asylum applicants, or to limit the authority of the Attorney General to set adjudication and naturalization fees in accordance with section 286(m) [*8 USCS § 1356(m)*].

(4)Notice of privilege of counsel and consequences of frivolous application. At the time of filing an application for asylum, the Attorney General shall—

(A)advise the alien of the privilege of being represented by counsel and of the consequences, under paragraph (6), of knowingly filing a frivolous application for asylum; and

(B)provide the alien a list of persons (updated not less often than quarterly) who have indicated their availability to represent aliens in asylum proceedings on a pro bono basis.

(5)Consideration of asylum applications.

(A)Procedures. The procedure established under paragraph (1) shall provide that—

(i)asylum cannot be granted until the identity of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State, including the Automated Visa Lookout System, to determine any grounds on which the alien may be inadmissible to or deportable from the United States, or ineligible to apply for or be granted asylum;

(ii)in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed;

(iii)in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed;

(iv)any administrative appeal shall be filed within 30 days of a decision granting or denying asylum, or within 30 days of the completion of removal proceedings before an immigration judge under section 240 [*8 USCS § 1229a*], whichever is later; and

(v)in the case of an applicant for asylum who fails without prior authorization or in the absence of exceptional circumstances to appear for an interview or hearing, including a hearing under section 240 [*8 USCS § 1229a*], the application may be dismissed or the applicant may be otherwise sanctioned for such failure.

(B)Additional regulatory conditions. The Attorney General may provide by regulation for any other conditions or limitations on the consideration of an application for asylum not inconsistent with this Act.

(**6**)Frivolous applications. If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under this Act, effective as of the date of a final determination on such application.

(**7**)No private right of action. Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

(**e**) **Commonwealth of the Northern Mariana Islands.** The provisions of this section and section 209(b) [*8 USCS § 1159(b)*] shall apply to persons physically present in the Commonwealth of the Northern Mariana Islands or arriving in the Commonwealth (whether or not at a designated port of arrival and including persons who are brought to the Commonwealth after having been interdicted in international or United States waters) only on or after January 1, 2014.

# History

HISTORY:

Act June 27, 1952, ch 477, Title II, Ch 1, § 208, as added March 17, 1980, *P.L. 96-212*, Title II, § 201(b), *94 Stat. 105*; Nov. 29, 1990, *P. L. 101-649*, Title V, Subtitle A, § 515(a)(1), *104 Stat. 5053*; Sept. 13, 1994, *P. L. 103-322*, Title XIII, § 130005(b), *108 Stat. 2028*; April 24, 1996, *P. L. 104-132*, Title IV, Subtitle C, § 421(a), *110 Stat. 1270*; Sept. 30, 1996, *P. L. 104-208*, Div C, Title VI, Subtitle A, § 604(a), *110 Stat. 3009*-690; Oct. 26, 2001, *P. L. 107-56*, Title IV, Subtitle B, § 411(b)(2), *115 Stat. 348*; Aug. 6, 2002, *P. L. 107-208*, § 4, *116 Stat. 928*; May 11, 2005, *P. L. 109-13*, Div B, Title I, § 101(a), (b), *119 Stat. 302*; May 8, 2008, *P. L. 110-229*, Title VII, Subtitle A, § 702(j)(4), *122 Stat. 866*; Dec. 23, 2008, *P. L. 110-457*, Title II, Subtitle D, § 235(d)(7), *122 Stat. 5080*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

End of Document

## *8 USCS § 1159*

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service > TITLE 8. ALIENS AND NATIONALITY (Chs. 1 — 15) > CHAPTER 12. IMMIGRATION AND NATIONALITY (§§ 1101 — 1537) > IMMIGRATION (§§ 1151 — 1382) > SELECTION SYSTEM (§§ 1151 — 1161)*

# § 1159. Adjustment of status of refugees

**(a) Inspection and examination by Department of Homeland Security.**

**(1)**Any alien who has been admitted to the United States under section 207 [*8 USCS § 1157*]—

**(A)**whose admission has not been terminated by the Secretary of Homeland Security or the Attorney General pursuant to such regulations as the Secretary of Homeland Security or the Attorney General may prescribe,

**(B)**who has been physically present in the United States for at least one year, and

**(C)**who has not acquired permanent resident status,

shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 235, 240, and 241 [*8 USCS §§ 1225*, *1229a*, and *1251*].

**(2)**Any alien who is found upon inspection and examination by an immigration officer pursuant to paragraph (1) or after a hearing before an immigration judge to be admissible (except as otherwise provided under subsection (c)) as an immigrant under this Act at the time of the alien's inspection and examination shall, notwithstanding any numerical limitation specified in this Act, be regarded as lawfully admitted to the United States for permanent residence as of the date of such alien's arrival into the United States.

**(b) Requirements for adjustment.** The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who—

**(1)**applies for such adjustment,

**(2)**has been physically present in the United States for at least one year after being granted asylum,

**(3)**continues to be a refugee within the meaning of section 101(a)(42)(A) [*8 USCS § 1101(a)(42)(A)*] or a spouse or child of such a refugee,

**(4)**is not firmly resettled in any foreign country, and

**(5)**is admissible (except as otherwise provided under subsection (c)) as an immigrant under this Act at the time of examination for adjustment of such alien.

Upon approval of an application under this subsection, the Secretary of Homeland Security or the Attorney General shall establish a record of the alien's admission for lawful permanent residence as of the date one year before the date of the approval of the application.

**(c) Coordination with** *8 USCS § 1182*.The provisions of paragraphs (4), (5), and (7)(A) of section 212(a) [*8 USCS § 1182(a)*] shall not be applicable to any alien seeking adjustment of status under this section, and the Secretary of Homeland Security or the Attorney General may waive any other provision of such section (other than paragraph (2)(C) or subparagraph (A), (B), (C), or (F) of paragraph (3)) with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest.

8 USCS § 1159

# History

**HISTORY:**

Act June 27, 1952, ch 477, Title II, Ch 1, § 209, as added March 17, 1980, *P. L. 96-212*, Title II, § 201(b), *94 Stat. 105*; Nov. 29, 1990, *P. L. 101-649*, Title I, Subtitle A, § 104(a)(1), Title VI, § 603(a)(4), *104 Stat. 4985*, 5082; Dec. 12, 1991, *P. L. 102-232*, Title III, § 307(l)(1), *105 Stat. 1756*; Sept. 30, 1996, *P. L. 104-208*, Div C, Title III, Subtitle A, § 308(g)(3)(A), (4)(A), Subtitle F, § 371(b)(2), *110 Stat. 3009*-622, 3009-645; May 11, 2005, *P. L. 109-13*, Div B, Title I, § 101(g)(1), *119 Stat. 305*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

# *8 USCS § 1229a*

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service > TITLE 8. ALIENS AND NATIONALITY (Chs. 1 — 15) > CHAPTER 12. IMMIGRATION AND NATIONALITY (§§ 1101 — 1537) > IMMIGRATION (§§ 1151 — 1382) > INSPECTION, APPREHENSION, EXAMINATION, EXCLUSION, AND REMOVAL (§§ 1221 — 1232)*

## § 1229a. Removal proceedings

**(a) Proceeding.**

**(1)**In general. An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien.

**(2)**Charges. An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility under section 212(a) [*8 USCS § 1182(a)*] or any applicable ground of deportability under section 237(a) [*8 USCS § 1227(a)*].

**(3)**Exclusive procedures. Unless otherwise specified in this Act, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States. Nothing in this section shall affect proceedings conducted pursuant to section 238 [*8 USCS § 1228*].

**(b) Conduct of proceeding.**

**(1)**Authority of immigration judge. The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses. The immigration judge may issue subpoenas for the attendance of witnesses and presentation of evidence. The immigration judge shall have authority (under regulations prescribed by the Attorney General) to sanction by civil money penalty any action (or inaction) in contempt of the judge's proper exercise of authority under this Act.

**(2)**Form of proceeding.

**(A)**In general. The proceeding may take place—

**(i)**in person,

**(ii)**where agreed to by the parties, in the absence of the alien,

**(iii)**through video conference, or

**(iv)**subject to subparagraph (B), through telephone conference.

**(B)**Consent required in certain cases. An evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or through video conference.

**(3)**Presence of alien. If it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien.

**(4)**Aliens rights in proceeding. In proceedings under this section, under regulations of the Attorney General—

**(A)**the alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings,

**(B)**the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government but these

8 USCS § 1229a

rights shall not entitle the alien to examine such national security information as the Government may proffer in opposition to the alien's admission to the United States or to an application by the alien for discretionary relief under this Act, and

**(C)** a complete record shall be kept of all testimony and evidence produced at the proceeding.

**(5)** Consequences of failure to appear.

**(A)** In general. Any alien who, after written notice required under paragraph (1) or (2) of section 239(a) [*8 USCS § 1229(a)*] has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2)). The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 239(a)(1)(F) [*8 USCS § 1229(a)(1)(F)*].

**(B)** No notice if failure to provide address information. No written notice shall be required under subparagraph (A) if the alien has failed to provide the address required under section 239(a)(1)(F) [*8 USCS § 1229(a)(1)(F)*].

**(C)** Rescission of order. Such an order may be rescinded only—

**(i)** upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1)), or

**(ii)** upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 239(a) [*8 USCS § 1229(a)*] or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.

The filing of the motion to reopen described in clause (i) or (ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge.

**(D)** Effect on judicial review. Any petition for review under section 242 [*8 USCS § 1252*] of an order entered in absentia under this paragraph shall (except in cases described in section 242(b)(5) [*8 USCS § 1252(b)(5)*]) be confined to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable.

**(E)** Additional application to certain aliens in contiguous territory. The preceding provisions of this paragraph shall apply to all aliens placed in proceedings under this section, including any alien who remains in a contiguous foreign territory pursuant to section 235(b)(2)(C) [*8 USCS § 1225(b)(2)(C)*].

**(6)** Treatment of frivolous behavior. The Attorney General shall, by regulation—

**(A)** define in a proceeding before an immigration judge or before an appellate administrative body under this title, frivolous behavior for which attorneys may be sanctioned,

**(B)** specify the circumstances under which an administrative appeal of a decision or ruling will be considered frivolous and will be summarily dismissed, and

**(C)** impose appropriate sanctions (which may include suspension and disbarment) in the case of frivolous behavior.

Nothing in this paragraph shall be construed as limiting the authority of the Attorney General to take actions with respect to inappropriate behavior.

**(7)** Limitation on discretionary relief for failure to appear. Any alien against whom a final order of removal is entered in absentia under this subsection and who, at the time of the notice described in paragraph (1) or (2) of section 239(a) [*8 USCS § 1229(a)*], was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences under this paragraph of failing, other than because of exceptional circumstances (as defined in subsection (e)(1)) to attend a

proceeding under this section, shall not be eligible for relief under section 240A, 240B, 245, 248, or 249 [*8 USCS § 1229b*, *1229c*, *1255*, *1258*, or *1259*] for a period of 10 years after the date of the entry of the final order of removal.

**(c) Decision and burden of proof.**

    **(1)** Decision.

        **(A)** In general. At the conclusion of the proceeding the immigration judge shall decide whether an alien is removable from the United States. The determination of the immigration judge shall be based only on the evidence produced at the hearing.

        **(B)** Certain medical decisions. If a medical officer or civil surgeon or board of medical officers has certified under section 232(b) [*8 USCS § 1222(b)*] that an alien has a disease, illness, or addiction which would make the alien inadmissible under paragraph (1) of section 212(a) [*8 USCS § 1182(a)*], the decision of the immigration judge shall be based solely upon such certification.

    **(2)** Burden on alien. In the proceeding the alien has the burden of establishing—

        **(A)** if the alien is an applicant for admission, that the alien is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 212 [*8 USCS § 1182*]; or

        **(B)** by clear and convincing evidence, that the alien is lawfully present in the United States pursuant to a prior admission.

In meeting the burden of proof under subparagraph (B), the alien shall have access to the alien's visa or other entry document, if any, and any other records and documents, not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States.

    **(3)** Burden on service in cases of deportable aliens.

        **(A)** In general. In the proceeding the Service has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable. No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

        **(B)** Proof of convictions. In any proceeding under this Act, any of the following documents or records (or a certified copy of such an official document or record) shall constitute proof of a criminal conviction:

            **(i)** An official record of judgment and conviction.

            **(ii)** An official record of plea, verdict, and sentence.

            **(iii)** A docket entry from court records that indicates the existence of the conviction.

            **(iv)** Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.

            **(v)** An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.

            **(vi)** Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.

            **(vii)** Any document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.

        **(C)** Electronic records. In any proceeding under this Act, any record of conviction or abstract that has been submitted by electronic means to the Service from a State or court shall be admissible as evidence to prove a criminal conviction if it is—

8 USCS § 1229a

(i)certified by a State official associated with the State's repository of criminal justice records as an official record from its repository or by a court official from the court in which the conviction was entered as an official record from its repository, and

(ii)certified in writing by a Service official as having been received electronically from the State's record repository or the court's record repository.

A certification under clause (i) may be by means of a computer-generated signature and statement of authenticity.

(4)Applications for relief from removal.

(A)In general. An alien applying for relief or protection from removal has the burden of proof to establish that the alien—

(i)satisfies the applicable eligibility requirements; and

(ii)with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.

(B)Sustaining burden. The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

(C)Credibility determination. Considering the totality of the circumstances, and all relevant factors, the immigration judge may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

(5)Notice. If the immigration judge decides that the alien is removable and orders the alien to be removed, the judge shall inform the alien of the right to appeal that decision and of the consequences for failure to depart under the order of removal, including civil and criminal penalties.

(6)Motions to reconsider.

(A)In general. The alien may file one motion to reconsider a decision that the alien is removable from the United States.

(B)Deadline. The motion must be filed within 30 days of the date of entry of a final administrative order of removal.

(C)Contents. The motion shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority.

(7)Motions to reopen.

8 USCS § 1229a

**(A)**In general. An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv).

**(B)**Contents. The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.

**(C)**Deadline.

**(i)**In general. Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.

**(ii)**Asylum. There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections [section] 208 or 241(b)(3) [*8 USCS § 1158* or *1251(b)(3)*] and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

**(iii)**Failure to appear. The filing of a motion to reopen an order entered pursuant to subsection (b)(5) is subject to the deadline specified in subparagraph (C) of such subsection.

**(iv)**Special rule for battered spouses, children, and parents. Any limitation under this section on the deadlines for filing such motions shall not apply—

**(I)**if the basis for the motion is to apply for relief under clause (iii) or (iv) of section 204(a)(1)(A) [*8 USCS § 1154(a)(1)(A)*], clause (ii) or (iii) of section 204(a)(1)(B) [*8 USCS § 1154(a)(1)(B)*],[,] section 240A(b) [*8 USCS § 1229b(b)*], or section 244(a)(3) (as in effect on March 31, 1997) [former *8 USCS § 1254(a)(3)*];

**(II)**if the motion is accompanied by a cancellation of removal application to be filed with the Attorney General or by a copy of the self-petition that has been or will be filed with the Immigration and Naturalization Service upon the granting of the motion to reopen;

**(III)**if the motion to reopen is filed within 1 year of the entry of the final order of removal, except that the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child; and

**(IV)**if the alien is physically present in the United States at the time of filing the motion.

The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien (as defined in section 431(c)(1)(B) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (*8 U.S.C. 1641(c)(1)(B)*)[)] pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien.

**(d) Stipulated removal.**The Attorney General shall provide by regulation for the entry by an immigration judge of an order of removal stipulated to by the alien (or the alien's representative) and the Service. A stipulated order shall constitute a conclusive determination of the alien's removability from the United States.

**(e) Definitions.** In this section and section 240A [*8 USCS § 1229b*]:

**(1)**Exceptional circumstances. The term "exceptional circumstances"' refers to exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien.

**(2)**Removable. The term "removable" means—

**(A)**in the case of an alien not admitted to the United States, that the alien is inadmissible under section 212 [*8 USCS § 1182*], or

8 USCS § 1229a

**(B)**in the case of an alien admitted to the United States, that the alien is deportable under section 237 [*8 USCS § 1227*].

## History

**HISTORY:**

Act June 27, 1952, ch 477, Title II, Ch 4, § 240, as added Sept. 30, 1996, *P. L. 104-208*, Div C, Title III, Subtitle A, § 304(a)(3), *110 Stat. 3009*-589; Oct. 28, 2000, *P. L. 106-386*, Div B, Title V, § 1506(c)(1)(A), *114 Stat. 1528*; May 11, 2005, *P. L. 109-13*, Div B, Title I, § 101(d), *119 Stat. 304*; Jan. 5, 2006, *P. L. 109-162*, Title VIII, Subtitle B, § 813(a)(1), Subtitle C, § 825(a), *119 Stat. 3057*, 3063.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## *8 USCS § 1231, Part 1 of 2*

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service > TITLE 8. ALIENS AND NATIONALITY (Chs. 1 — 15) > CHAPTER 12. IMMIGRATION AND NATIONALITY (§§ 1101 — 1537) > IMMIGRATION (§§ 1151 — 1382) > INSPECTION, APPREHENSION, EXAMINATION, EXCLUSION, AND REMOVAL (§§ 1221 — 1232)*

## § 1231. Detention and removal of aliens ordered removed

**(a) Detention, release, and removal of aliens ordered removed.**

**(1)**Removal period.

**(A)**In general. Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B)**Beginning of period. The removal period begins on the latest of the following:

**(i)**The date the order of removal becomes administratively final.

**(ii)**If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)**If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C)**Suspension of period. The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

**(2)**Detention. During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 212(a)(2) or 212(a)(3)(B) [*8 USCS § 1182(a)(2)* or (a)(3)(B)] or deportable under section 237(a)(2) or 237(a)(4)(B) [*8 USCS § 1227(a)(2)* or (a)(4)(B)].

**(3)**Supervision after 90-day period. If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—

**(A)**to appear before an immigration officer periodically for identification;

**(B)**to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

**(C)**to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

**(D)**to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

**(4)**Aliens imprisoned, arrested, or on parole, supervised release, or probation.

**(A)**In general. Except as provided in section 343(a) of the Public Health Service Act (*42 U.S.C. 259(a)*) and paragraph (2) [subparagraph (B)], the Attorney General may not remove an alien who is sentenced to

8 USCS § 1231, Part 1 of 2

imprisonment until the alien is released from imprisonment. Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal.

(**B**)Exception for removal of nonviolent offenders prior to completion of sentence of imprisonment. The Attorney General is authorized to remove an alien in accordance with applicable procedures under this Act before the alien has completed a sentence of imprisonment—

(**i**)in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense related to smuggling or harboring of aliens or an offense described in section 101(a)(43)(B), (C), (E), (I), or (L) [*8 USCS § 1101(a)(43)(B)*, (C), (E), (I), or (L)] []] and (II) the removal of the alien is appropriate and in the best interest of the United States; or

(**ii**)in the case of an alien in the custody of a State (or a political subdivision of a State), if the chief State official exercising authority with respect to the incarceration of the alien determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense described in section 101(a)(43)(C) or (E) [*8 USCS § 1101(a)(43)(C)*]), (II) the removal is appropriate and in the best interest of the State, and (III) submits a written request to the Attorney General that such alien be so removed.

(**C**)Notice. Any alien removed pursuant to this paragraph shall be notified of the penalties under the laws of the United States relating to the reentry of deported aliens, particularly the expanded penalties for aliens removed under subparagraph (B).

(**D**)No private right. No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

(**5**)Reinstatement of removal orders against aliens illegally reentering. If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry.

(**6**)Inadmissible or criminal aliens. An alien ordered removed who is inadmissible under section 212 [*8 USCS § 1182*], removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) [*8 USCS § 1227(a)(1)(C)*, (a)(2), or (a)(4)] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

(**7**)Employment authorization. No alien ordered removed shall be eligible to receive authorization to be employed in the United States unless the Attorney General makes a specific finding that—

(**A**)the alien cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien, or

(**B**)the removal of the alien is otherwise impracticable or contrary to the public interest.

(b) **Countries to which aliens may be removed.**

(**1**)Aliens arriving at the United States. Subject to paragraph (3)—

(**A**)In general. Except as provided by subparagraphs (B) and (C), an alien who arrives at the United States and with respect to whom proceedings under section 240 [*8 USCS § 1229a*] were initiated at the time of such alien's arrival shall be removed to the country in which the alien boarded the vessel or aircraft on which the alien arrived in the United States.

(**B**)Travel from contiguous territory. If the alien boarded the vessel or aircraft on which the alien arrived in the United States in a foreign territory contiguous to the United States, an island adjacent to the United States, or an island adjacent to a foreign territory contiguous to the United States, and the alien is not a native,

citizen, subject, or national of, or does not reside in, the territory or island, removal shall be to the country in which the alien boarded the vessel that transported the alien to the territory or island.

**(C)**Alternative countries. If the government of the country designated in subparagraph (A) or (B) is unwilling to accept the alien into that country's territory, removal shall be to any of the following countries, as directed by the Attorney General:

> **(i)**The country of which the alien is a citizen, subject, or national.

> **(ii)**The country in which the alien was born.

> **(iii)**The country in which the alien has a residence.

> **(iv)**A country with a government that will accept the alien into the country's territory if removal to each country described in a previous clause of this subparagraph is impracticable, inadvisable, or impossible.

**(2)**Other aliens. Subject to paragraph (3)—

> **(A)**Selection of country by alien. Except as otherwise provided in this paragraph—

>> **(i)**any alien not described in paragraph (1) who has been ordered removed may designate one country to which the alien wants to be removed, and

>> **(ii)**the Attorney General shall remove the alien to the country the alien so designates.

> **(B)**Limitation on designation. An alien may designate under subparagraph (A)(i) a foreign territory contiguous to the United States, an adjacent island, or an island adjacent to a foreign territory contiguous to the United States as the place to which the alien is to be removed only if the alien is a native, citizen, subject, or national of, or has resided in, that designated territory or island.

> **(C)**Disregarding designation. The Attorney General may disregard a designation under subparagraph (A)(i) if—

>> **(i)**the alien fails to designate a country promptly;

>> **(ii)**the government of the country does not inform the Attorney General finally, within 30 days after the date the Attorney General first inquires, whether the government will accept the alien into the country;

>> **(iii)**the government of the country is not willing to accept the alien into the country; or

>> **(iv)**the Attorney General decides that removing the alien to the country is prejudicial to the United States.

> **(D)**Alternative country. If an alien is not removed to a country designated under subparagraph (A)(i), the Attorney General shall remove the alien to a country of which the alien is a subject, national, or citizen unless the government of the country—

>> **(i)**does not inform the Attorney General or the alien finally, within 30 days after the date the Attorney General first inquires or within another period of time the Attorney General decides is reasonable, whether the government will accept the alien into the country; or

>> **(ii)**is not willing to accept the alien into the country.

> **(E)**Additional removal countries. If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:

>> **(i)**The country from which the alien was admitted to the United States.

>> **(ii)**The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.

>> **(iii)**A country in which the alien resided before the alien entered the country from which the alien entered the United States.

>> **(iv)**The country in which the alien was born.

(**v**)The country that had sovereignty over the alien's birthplace when the alien was born.

(**vi**)The country in which the alien's birthplace is located when the alien is ordered removed.

(**vii**)If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

(**F**)Removal country when United States is at war. When the United States is at war and the Attorney General decides that it is impracticable, inadvisable, inconvenient, or impossible to remove an alien under this subsection because of the war, the Attorney General may remove the alien—

(**i**)to the country that is host to a government in exile of the country of which the alien is a citizen or subject if the government of the host country will permit the alien's entry; or

(**ii**)if the recognized government of the country of which the alien is a citizen or subject is not in exile, to a country, or a political or territorial subdivision of a country, that is very near the country of which the alien is a citizen or subject, or, with the consent of the government of the country of which the alien is a citizen or subject, to another country.

(**3**)Restriction on removal to a country where alien's life or freedom would be threatened.

(**A**)In general. Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

(**B**)Exception. Subparagraph (A) does not apply to an alien deportable under section 237(a)(4)(D) [*8 USCS § 1227(a)(4)(D)*] or if the Attorney General decides that—

(**i**)the alien ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group, or political opinion;

(**ii**)the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States;

(**iii**)there are serious reasons to believe that the alien committed a serious nonpolitical crime outside the United States before the alien arrived in the United States; or

(**iv**)there are reasonable grounds to believe that the alien is a danger to the security of the United States.

For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime. For purposes of clause (iv), an alien who is described in section 237(a)(4)(B) [*8 USCS § 1227(a)(4)(B)*] shall be considered to be an alien with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States.

(**C**)Sustaining burden of proof; credibility determinations. In determining whether an alien has demonstrated that the alien's life or freedom would be threatened for a reason described in subparagraph (A), the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 208(b)(1)(B) [*8 USCS § 1158(b)(1)(B)*].

**(c) Removal of aliens arriving at port of entry.**

(**1**)Vessels and aircraft. An alien arriving at a port of entry of the United States who is ordered removed either without a hearing under section 235(b)(1) or 235(c) [*8 USCS § 1225(b)(1)* or (c)] or pursuant to proceedings under section 240 [*8 USCS § 1229a*] initiated at the time of such alien's arrival shall be removed immediately on

a vessel or aircraft owned by the owner of the vessel or aircraft on which the alien arrived in the United States, unless—

**(A)**it is impracticable to remove the alien on one of those vessels or aircraft within a reasonable time, or

**(B)**the alien is a stowaway—

**(i)**who has been ordered removed in accordance with section 235(a)(1) [*8 USCS § 1225(a)(1)*],

**(ii)**who has requested asylum, and

**(iii)**whose application has not been adjudicated or whose asylum application has been denied but who has not exhausted all appeal rights.

**(2)**Stay of removal.

**(A)**In general. The Attorney General may stay the removal of an alien under this subsection if the Attorney General decides that—

**(i)**immediate removal is not practicable or proper; or

**(ii)**the alien is needed to testify in the prosecution of a person for a violation of a law of the United States or of any State.

**(B)**Payment of detention costs. During the period an alien is detained because of a stay of removal under subparagraph (A)(ii), the Attorney General may pay from the appropriation "Immigration and Naturalization Service—Salaries and Expenses"—

**(i)**the cost of maintenance of the alien; and

**(ii)**a witness fee of $1 a day.

**(C)**Release during stay. The Attorney General may release an alien whose removal is stayed under subparagraph (A)(ii) on—

**(i)**the alien's filing a bond of at least $500 with security approved by the Attorney General;

**(ii)**condition that the alien appear when required as a witness and for removal; and

**(iii)**other conditions the Attorney General may prescribe.

**(3)**Costs of detention and maintenance pending removal.

**(A)**In general. Except as provided in subparagraph (B) and subsection (d) [(e)], an owner of a vessel or aircraft bringing an alien to the United States shall pay the costs of detaining and maintaining the alien—

**(i)**while the alien is detained under subsection (d)(1), and

**(ii)**in the case of an alien who is a stowaway, while the alien is being detained pursuant to—

**(I)**subsection (d)(2)(A) or (d)(2)(B)(i),

**(II)**subsection (d)(2)(B)(ii) or (iii) for the period of time reasonably necessary for the owner to arrange for repatriation or removal of the stowaway, including obtaining necessary travel documents, but not to extend beyond the date on which it is ascertained that such travel documents cannot be obtained from the country to which the stowaway is to be returned, or

**(III)**section 235(b)(1)(B)(ii) [*8 USCS § 1225(b)(1)(B)(ii)*], for a period not to exceed 15 days (excluding Saturdays, Sundays, and holidays) commencing on the first such day which begins on the earlier of 72 hours after the time of the initial presentation of the stowaway for inspection or at the time the stowaway is determined to have a credible fear of persecution.

**(B)**Nonapplication. Subparagraph (A) shall not apply if—

**(i)**the alien is a crewmember;

**(ii)**the alien has an immigrant visa;

**(iii)**the alien has a nonimmigrant visa or other documentation authorizing the alien to apply for temporary admission to the United States and applies for admission not later than 120 days after the date the visa or documentation was issued;

**(iv)**the alien has a reentry permit and applies for admission not later than 120 days after the date of the alien's last inspection and admission;

**(v)**

**(I)**the alien has a nonimmigrant visa or other documentation authorizing the alien to apply for temporary admission to the United States or a reentry permit;

**(II)**the alien applies for admission more than 120 days after the date the visa or documentation was issued or after the date of the last inspection and admission under the reentry permit; and

**(III)**the owner of the vessel or aircraft satisfies the Attorney General that the existence of the condition relating to inadmissibility could not have been discovered by exercising reasonable care before the alien boarded the vessel or aircraft; or

**(vi)**the individual claims to be a national of the United States and has a United States passport.

**(d) Requirements of persons providing transportation.**

**(1)**Removal at time of arrival. An owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel or aircraft bringing an alien (except an alien crewmember) to the United States shall—

**(A)**receive an alien back on the vessel or aircraft or another vessel or aircraft owned or operated by the same interests if the alien is ordered removed under this part; and

**(B)**take the alien to the foreign country to which the alien is ordered removed.

**(2)**Alien stowaways. An owner, agent, master, commanding officer, charterer, or consignee of a vessel or aircraft arriving in the United States with an alien stowaway—

**(A)**shall detain the alien on board the vessel or aircraft, or at such place as the Attorney General shall designate, until completion of the inspection of the alien by an immigration officer;

**(B)**may not permit the stowaway to land in the United States, except pursuant to regulations of the Attorney General temporarily—

**(i)**for medical treatment,

**(ii)**for detention of the stowaway by the Attorney General, or

**(iii)**for departure or removal of the stowaway; and

**(C)**if ordered by an immigration officer, shall remove the stowaway on the vessel or aircraft or on another vessel or aircraft.

The Attorney General shall grant a timely request to remove the stowaway under subparagraph (C) on a vessel or aircraft other than that on which the stowaway arrived if the requester has obtained any travel documents necessary for departure or repatriation of the stowaway and removal of the stowaway will not be unreasonably delayed.

**(3)**Removal upon order. An owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel, aircraft, or other transportation line shall comply with an order of the Attorney General to take on board, guard safely, and transport to the destination specified any alien ordered to be removed under this Act.

**(e) Payment of expenses of removal.**

**(1)**Costs of removal at time of arrival. In the case of an alien who is a stowaway or who is ordered removed either without a hearing under section 235(a)(1) [235(b)(1)] or 235(c) [*8 USCS § 1225(b)(1)* or (c)] or pursuant to proceedings under section 240 [*8 USCS § 1229a*] initiated at the time of such alien's arrival, the owner of the vessel or aircraft (if any) on which the alien arrived in the United States shall pay the transportation cost of

removing the alien. If removal is on a vessel or aircraft not owned by the owner of the vessel or aircraft on which the alien arrived in the United States, the Attorney General may—

   **(A)**pay the cost from the appropriation "Immigration and Naturalization Service—Salaries and Expenses"; and

   **(B)**recover the amount of the cost in a civil action from the owner, agent, or consignee of the vessel or aircraft (if any) on which the alien arrived in the United States.

**(2)**Costs of removal to port of removal for aliens admitted or permitted to land. In the case of an alien who has been admitted or permitted to land and is ordered removed, the cost (if any) of removal of the alien to the port of removal shall be at the expense of the appropriation for the enforcement of this Act.

**(3)**Costs of removal from port of removal for aliens admitted or permitted to land.

   **(A)**Through appropriation. Except as provided in subparagraph (B), in the case of an alien who has been admitted or permitted to land and is ordered removed, the cost (if any) of removal of the alien from the port of removal shall be at the expense of the appropriation for the enforcement of this Act.

   **(B)**Through owner.

      **(i)**In general. In the case of an alien described in clause (ii), the cost of removal of the alien from the port of removal may be charged to any owner of the vessel, aircraft, or other transportation line by which the alien came to the United States.

      **(ii)**Aliens described. An alien described in this clause is an alien who—

         **(I)**is admitted to the United States (other than lawfully admitted for permanent residence) and is ordered removed within 5 years of the date of admission based on a ground that existed before or at the time of admission, or

         **(II)**is an alien crewman permitted to land temporarily under section 252 [*8 USCS § 1282*] and is ordered removed within 5 years of the date of landing.

   **(C)**Costs of removal of certain aliens granted voluntary departure. In the case of an alien who has been granted voluntary departure under section 240B [*8 USCS § 1229c*] and who is financially unable to depart at the alien's own expense and whose removal the Attorney General deems to be in the best interest of the United States, the expense of such removal may be paid from the appropriation for the enforcement of this Act.

**(f) Aliens requiring personal care during removal.**

   **(1)**In general. If the Attorney General believes that an alien being removed requires personal care because of the alien's mental or physical condition, the Attorney General may employ a suitable person for that purpose who shall accompany and care for the alien until the alien arrives at the final destination.

   **(2)**Costs. The costs of providing the service described in paragraph (1) shall be defrayed in the same manner as the expense of removing the accompanied alien is defrayed under this section.

**(g) Places of detention.**

   **(1)**In general. The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal. When United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General may expend from the appropriation "Immigration and Naturalization Service—Salaries and Expenses", without regard to section 3709 of the Revised Statutes (41 U.S.C. 5) [*41 USCS § 6101*], amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities (including living quarters for immigration officers if not otherwise available) necessary for detention.

   **(2)**Detention facilities of the immigration and naturalization service. Prior to initiating any project for the construction of any new detention facility for the Service, the Commissioner shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for such use.

**(h) Statutory construction.** Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

**(i) Incarceration.**

**(1)** If the chief executive officer of a State (or, if appropriate, a political subdivision of the State) exercising authority with respect to the incarceration of an undocumented criminal alien submits a written request to the Attorney General, the Attorney General shall, as determined by the Attorney General—

**(A)** enter into a contractual arrangement which provides for compensation to the State or a political subdivision of the State, as may be appropriate, with respect to the incarceration of the undocumented criminal alien; or

**(B)** take the undocumented criminal alien into the custody of the Federal Government and incarcerate the alien.

**(2)** Compensation under paragraph (1)(A) shall be the average cost of incarceration of a prisoner in the relevant State as determined by the Attorney General.

**(3)** For purposes of this subsection, the term "undocumented criminal alien" means an alien who—

**(A)** has been convicted of a felony or two or more misdemeanors; and

**(B)**

**(i)** entered the United States without inspection or at any time or place other than as designated by the Attorney General;

**(ii)** was the subject of exclusion or deportation proceedings at the time he or she was taken into custody by the State or a political subdivision of the State; or

**(iii)** was admitted as a nonimmigrant and at the time he or she was taken into custody by the State or a political subdivision of the State has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 248 [*8 USCS § 1258*], or to comply with the conditions of any such status.

**(4)**

**(A)** In carrying out paragraph (1), the Attorney General shall give priority to the Federal incarceration of undocumented criminal aliens who have committed aggravated felonies.

**(B)** The Attorney General shall ensure that undocumented criminal aliens incarcerated in Federal facilities pursuant to this subsection are held in facilities which provide a level of security appropriate to the crimes for which they were convicted.

**(5)** There are authorized to be appropriated to carry out this subsection—

**(A)** $750,000,000 for fiscal year 2006;

**(B)** $850,000,000 for fiscal year 2007; and

**(C)** $950,000,000 for each of the fiscal years 2008 through 2011.

**(6)** Amounts appropriated pursuant to the authorization of appropriations in paragraph (5) that are distributed to a State or political subdivision of a State, including a municipality, may be used only for correctional purposes.

# History

**HISTORY:**

Act June 27, 1952, ch 477, Title II, Ch. 4, § 241, as added Sept. 30, 1996, *P. L. 104-208*, Div C, Title III, Subtitle A, §§ 305(a)(3), 306(a)(1), Subtitle B, § 328(a)(1), *110 Stat. 3009*-598, 3009-607, 3009-630; Nov. 2, 2002, *P. L. 107-273*, Div C,

Title I, Subtitle A, § 11014, *116 Stat. 1824*; May 11, 2005, *P. L. 109-13*, Div B, Title I, § 101(c), *119 Stat. 303*; Jan. 5, 2006, *P. L. 109-162*, Title XI, Subtitle C, § 1196(a), (b), *119 Stat. 3130*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## 8 USCS § 1252, Part 1 of 2

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service > TITLE 8. ALIENS AND NATIONALITY (Chs. 1 — 15) > CHAPTER 12. IMMIGRATION AND NATIONALITY (§§ 1101 — 1537) > IMMIGRATION (§§ 1151 — 1382) > ADJUSTMENT AND CHANGE OF STATUS (§§ 1251 — 1260)*

# § 1252. Judicial review of orders of removal

**(a) Applicable provisions.**

**(1)**General orders of removal. Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 235(b)(1) [*8 USCS § 1225(b)(1)*]) is governed only by chapter 158 of title 28 of the United States Code [*28 USCS §§ 2341* et seq.], except as provided in subsection (b) and except that the court may not order the taking of additional evidence under section 2347(c) of such title.

**(2)**Matters not subject to judicial review.

**(A)**Review relating to section 235(b)(1). Notwithstanding any other provision of law (statutory or nonstatutory), including *section 2241 of title 28, United States Code* [*28 USCS § 2241*], or any other habeas corpus provision, and sections 1361 and 1651 of such title [*28 USCS §§ 1361* and *1651*], no court shall have jurisdiction to review—

**(i)**except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 235(b)(1) [*8 USCS § 1225(b)(1)*],

**(ii)**except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,

**(iii)**the application of such section to individual aliens, including the determination made under section 235(b)(1)(B) [*8 USCS § 1225(b)(1)(B)*], or

**(iv)**except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 235(b)(1) [*8 USCS § 1225(b)(1)*].

**(B)**Denials of discretionary relief. Notwithstanding any other provision of law (statutory or nonstatutory), including *section 2241 of title 28, United States Code* [*28 USCS § 2241*], or any other habeas corpus provision, and sections 1361 and 1651 of such title [*28 USCS §§ 1361* and *1651*], and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

**(i)**any judgment regarding the granting of relief under section 212(h), 212(i), 240A, 240B, or 245 [*8 USCS § 1182(h)*, *1182(i)*, *1229b*, *1229c*, or *1255*], or

**(ii)**any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title [*8 USCS §§ 1151* et seq.] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 208(a) [*8 USCS § 1158(a)*].

**(C)**Orders against criminal aliens. Notwithstanding any other provision of law (statutory or nonstatutory), including *section 2241 of title 28, United States Code* [*28 USCS § 2241*], or any other habeas corpus provision, and sections 1361 and 1651 of such title [*28 USCS §§ 1361* and *1651*], and except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who

is removable by reason of having committed a criminal offense covered in section 212(a)(2) or 237(a)(2)(A)(iii), (B), (C), or (D) [*8 USCS § 1182(a)(2)* or *1227(a)(2)(A)(iii)*, (B), (C), or (D)], or any offense covered by section 237(a)(2)(A)(ii) [*8 USCS § 1227(a)(2)(A)(ii)*] for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 237(a)(2)(A)(i) [*8 USCS § 1227(a)(2)(A)(i)*].

**(D)** Judicial review of certain legal claims. Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

**(3)** Treatment of certain decisions. No alien shall have a right to appeal from a decision of an immigration judge which is based solely on a certification described in section 240(c)(1)(B) [*8 USCS § 1229a(c)(1)(B)*].

**(4)** Claims under the United Nations Convention. Notwithstanding any other provision of law (statutory or nonstatutory), including *section 2241 of title 28, United States Code* [*28 USCS § 2241*], or any other habeas corpus provision, and sections 1361 and 1651 of such title [*28 USCS §§ 1361* and *1651*], a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the *United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment*, except as provided in subsection (e).

**(5)** Exclusive means of review. Notwithstanding any other provision of law (statutory or nonstatutory), including *section 2241 of title 28, United States Code* [*28 USCS § 2241*], or any other habeas corpus provision, and sections 1361 and 1651 of such title [*28 USCS §§ 1361* and *1651*], a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e). For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to *section 2241 of title 28, United States Code* [*28 USCS § 2241*], or any other habeas corpus provision, sections 1361 and 1651 of such title [*28 USCS §§ 1361* and *1651*], and review pursuant to any other provision of law (statutory or nonstatutory).

**(b) Requirements for review of orders of removal.** With respect to review of an order of removal under subsection (a)(1), the following requirements apply:

**(1)** Deadline. The petition for review must be filed not later than 30 days after the date of the final order of removal.

**(2)** Venue and forms. The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings. The record and briefs do not have to be printed. The court of appeals shall review the proceeding on a typewritten record and on typewritten briefs.

**(3)** Service.

**(A)** In general. The respondent is the Attorney General. The petition shall be served on the Attorney General and on the officer or employee of the Service in charge of the Service district in which the final order of removal under section 240 [*8 USCS § 1229a*] was entered.

**(B)** Stay of order. Service of the petition on the officer or employee does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise.

**(C)** Alien's brief. The alien shall serve and file a brief in connection with a petition for judicial review not later than 40 days after the date on which the administrative record is available, and may serve and file a reply brief not later than 14 days after service of the brief of the Attorney General, and the court may not extend these deadlines except upon motion for good cause shown. If an alien fails to file a brief within the time provided in this paragraph, the court shall dismiss the appeal unless a manifest injustice would result.

**(4)** Scope and standard for review. Except as provided in paragraph (5)(B)—

**(A)** the court of appeals shall decide the petition only on the administrative record on which the order of removal is based,

**(B)**the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary,

**(C)**a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law, and

**(D)**the Attorney General's discretionary judgment whether to grant relief under section 208(a) [*8 USCS § 1158(a)*] shall be conclusive unless manifestly contrary to the law and an abuse of discretion.

No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 208(b)(1)(B), 240(c)(4)(B), or 241(b)(3)(C) [*8 USCS § 1158(b)(1)(B)*, *1229a(c)(4)(B)*, or *1231(b)(3)(C)*], unless the court finds, pursuant to section 242(b)(4)(B) [subsec. (b)(4)(B) of this section], that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.

**(5)**Treatment of nationality claims.

**(A)**Court determination if no issue of fact. If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

**(B)**Transfer if issue of fact. If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under *section 2201 of title 28, United States Code*.

**(C)**Limitation on determination. The petitioner may have such nationality claim decided only as provided in this paragraph.

**(6)**Consolidation with review of motions to reopen or reconsider. When a petitioner seeks review of an order under this section, any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order.

**(7)**Challenge to validity of orders in certain criminal proceedings.

**(A)**In general. If the validity of an order of removal has not been judicially decided, a defendant in a criminal proceeding charged with violating section 243(a) [*8 USCS § 1253(a)*] may challenge the validity of the order in the criminal proceeding only by filing a separate motion before trial. The district court, without a jury, shall decide the motion before trial.

**(B)**Claims of United States nationality. If the defendant claims in the motion to be a national of the United States and the district court finds that—

**(i)**no genuine issue of material fact about the defendant's nationality is presented, the court shall decide the motion only on the administrative record on which the removal order is based and the administrative findings of fact are conclusive if supported by reasonable, substantial, and probative evidence on the record considered as a whole; or

**(ii)**a genuine issue of material fact about the defendant's nationality is presented, the court shall hold a new hearing on the nationality claim and decide that claim as if an action had been brought under *section 2201 of title 28, United States Code*.

The defendant may have such nationality claim decided only as provided in this subparagraph.

**(C)**Consequence of invalidation. If the district court rules that the removal order is invalid, the court shall dismiss the indictment for violation of section 243(a) [*8 USCS § 1253(a)*]. The United States Government may appeal the dismissal to the court of appeals for the appropriate circuit within 30 days after the date of the dismissal.

**(D)**Limitation on filing petitions for review. The defendant in a criminal proceeding under section 243(a) [*8 USCS § 1253(a)*] may not file a petition for review under subsection (a) during the criminal proceeding.

**(8)**Construction. This subsection—

**(A)**does not prevent the Attorney General, after a final order of removal has been issued, from detaining the alien under section 241(a) [*8 USCS § 1231(a)*];

**(B)**does not relieve the alien from complying with section 241(a)(4) [*8 USCS § 1231(a)(4)*] and section 243(g); and

**(C)**does not require the Attorney General to defer removal of the alien.

**(9)**Consolidation of questions for judicial review. Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title [*8 USCS §§ 1151* et seq.] shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under *section 2241 of title 28, United States Code* [*28 USCS § 2241*], or any other habeas corpus provision, by section 1361 or 1651 of such title [*28 USCS § 1361* or *1651*], or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

**(c) Requirements for petition.** A petition for review or habeas corpus of an order of removal—

**(1)**shall attach a copy of such order, and

**(2)**shall state whether a court has upheld the validity of the order, and, if so, shall state the name of the court, the date of the court's ruling, and the kind of proceeding.

**(d) Review of final orders.** A court may review a final order of removal only if—

**(1)**the alien has exhausted all administrative remedies available to the alien as of right, and

**(2)**another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

**(e) Judicial review of orders under section 235(b)(1).**

**(1)**Limitations on relief. Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may—

**(A)**enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 235(b)(1) [*8 USCS § 1225(b)(1)*] except as specifically authorized in a subsequent paragraph of this subsection, or

**(B)**certify a class under *Rule 23 of the Federal Rules of Civil Procedure* in any action for which judicial review is authorized under a subsequent paragraph of this subsection.

**(2)**Habeas corpus proceedings. Judicial review of any determination made under section 235(b)(1) [*8 USCS § 1225(b)(1)*] is available in habeas corpus proceedings, but shall be limited to determinations of—

**(A)**whether the petitioner is an alien,

**(B)**whether the petitioner was ordered removed under such section, and

**(C)**whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 207 [*8 USCS § 1157*], or has been granted asylum under section 208 [*8 USCS § 1158*], such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 235(b)(1)(C) [*8 USCS § 1225(b)(1)(C)*].

**(3)**Challenges on validity of the system.

8 USCS § 1252, Part 1 of 2

(**A**)In general. Judicial review of determinations under section 235(b) [*8 USCS § 1225(b)*] and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(**i**)whether such section, or any regulation issued to implement such section, is constitutional; or

(**ii**)whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this title or is otherwise in violation of law.

(**B**)Deadlines for bringing actions. Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented.

(**C**)Notice of appeal. A notice of appeal of an order issued by the District Court under this paragraph may be filed not later than 30 days after the date of issuance of such order.

(**D**)Expeditious consideration of cases. It shall be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any case considered under this paragraph.

(**4**)Decision. In any case where the court determines that the petitioner—

(**A**)is an alien who was not ordered removed under section 235(b)(1) [*8 USCS § 1225(b)(1)*], or

(**B**)has demonstrated by a preponderance of the evidence that the alien is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 207 [*8 USCS § 1157*], or has been granted asylum under section 208 [*8 USCS § 1158*], the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 240 [*8 USCS § 1229a*]. Any alien who is provided a hearing under section 240 [*8 USCS § 1229a*] pursuant to this paragraph may thereafter obtain judicial review of any resulting final order of removal pursuant to subsection (a)(1).

(**5**)Scope of inquiry. In determining whether an alien has been ordered removed under section 235(b)(1) [*8 USCS § 1225(b)(1)*], the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

(**f**) **Limit on injunctive relief.**

(**1**)In general. Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of chapter 4 of title II [*8 USCS §§ 1221* et seq.], as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such chapter have been initiated.

(**2**)Particular cases. Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

(**g**) **Exclusive jurisdiction.** Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including *section 2241 of title 28, United States Code* [*28 USCS § 2241*], or any other habeas corpus provision, and sections 1361 and 1651 of such title [*28 USCS §§ 1361* and *1651*], no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

# History

**HISTORY:**

8 USCS § 1252, Part 1 of 2

Act June 27, 1952, ch 477, Title II, Ch 5, § 242, *66 Stat. 208*; Sept. 3, 1954, ch 1263, § 17, *68 Stat. 1232*; Dec. 29, 1981, *P. L. 97-116*, § 18(h)(1), *95 Stat. 1620*; Nov. 6, 1986, *P. L. 99-603*, Title VII, § 701, *100 Stat. 3445*; Oct. 12, 1984, *P. L. 98-473*, Title II, Ch II, § 220(b), *98 Stat. 2029*; Oct. 24, 1988, *P. L. 100-525*, § 9(n), *102 Stat. 2620*; Nov. 18, 1988, *P. L. 100-690*, Title VII, Subtitle J, § 7343(a), *102 Stat. 4470*; Nov. 29, 1990, *P. L. 101-649*, Title V, Subtitle A, § 504(a), Subtitle D, § 545(e), Title VI, § 603(b)(2), *104 Stat. 5049*, 5066, 5085; Dec. 12, 1991, *P. L. 102-232*, Title III, §§ 306(a)(4), (c)(7), 307(m)(2), 309(b)(9), *105 Stat. 1751*, 1753, 1757, 1759; Sept. 13, 1994, *P. L. 103-322*, Title II, Subtitle C, § 20301(a), Title XIII, § 130001(a), *108 Stat. 1823*, 2023; Oct. 25, 1994, *P. L. 103-416*, Title II, §§ 219(h), 224(b), *108 Stat. 4317*, 4324; April 24, 1996, *P. L. 104-132*, Title IV, Subtitle D, §§ 436(a), (b)(1), 438, 440(c), (h), *110 Stat. 1275*, 1277, 1279; Sept. 30, 1996, *P. L. 104-208*, Div C, Title III, Subtitle A, §§ 306(a)(1), (2), (d), 308(g)(10)(H), Subtitle F, § 371(b)(6), *110 Stat. 3009*-607, 3009-612, 3009-625, 3009-645; May 11, 2005, *P. L. 109-13*, Div B, Title I, §§ 101(e), (f), 106(a), *119 Stat. 305*, 310.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

### 8 USCS § 1427

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service > TITLE 8. ALIENS AND NATIONALITY (Chs. 1 — 15) > CHAPTER 12. IMMIGRATION AND NATIONALITY (§§ 1101 — 1537) > NATIONALITY AND NATURALIZATION (§§ 1401 — 1504) > NATIONALITY THROUGH NATURALIZATION (§§ 1421 — 1459)*

## § 1427. Requirements of naturalization

**(a) Residence.** No person, except as otherwise provided in this title, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time[,] and who has resided within the State or within the district of the Service in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

**(b) Absences.** Absence from the United States of more than six months but less than one year during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the application for naturalization, or during the period between the date of filing the application and the date of any hearing under section 336(a) [*8 USCS § 1447(a)*], shall break the continuity of such residence, unless the applicant shall establish to the satisfaction of the Attorney General that he did not in fact abandon his residence in the United States during such period.

Absence from the United States for a continuous period of one year or more during the period for which continuous residence is required for admission to citizenship (whether preceding or subsequent to the filing of the application for naturalization) shall break the continuity of such residence, except that in the case of a person who has been physically present and residing in the United States, after being lawfully admitted for permanent residence, for an uninterrupted period of at least one year, and who thereafter is employed by or under contract with the Government of the United States or an American institution of research recognized as such by the Attorney General, or is employed by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof more than 50 per centum of whose stock is owned by an American firm or corporation, or is employed by a public international organization of which the United States is a member by treaty or statute and by which the alien was not employed until after being lawfully admitted for permanent residence, no period of absence from the United States shall break the continuity of residence if—

**(1)** prior to the beginning of such period of employment (whether such period begins before or after his departure from the United States), but prior to the expiration of one year of continuous absence from the United States, the person has established to the satisfaction of the Attorney General that his absence from the United States for such period is to be on behalf of such Government, or for the purpose of carrying on scientific research on behalf of such institution, or to be engaged in the development of such foreign trade and commerce or whose residence abroad is necessary to the protection of the property rights in such countries of such firm or corporation, or to be employed by a public international organization of which the United States is a member by treaty or statute and by which the alien was not employed until after being lawfully admitted for permanent residence; and

**(2)** such person proves to the satisfaction of the court that his absence from the United States for such period has been for such purpose.

The spouse and dependent unmarried sons and daughters who are members of the household of a person who qualifies for the benefits of this subsection shall also be entitled to such benefits during the period for which they were residing abroad as dependent members of the household of the person.

**(c) Physical presence.** The granting of the benefits of subsection (b) of this section shall not relieve the applicant from the requirement of physical presence within the United States for the period specified in subsection (a) of this section, except in the case of those persons who are employed by, or under contract with, the Government of the United States. In the case of a person employed by or under contract with Central Intelligence Agency, the requirement in subsection (b) of an uninterrupted period of at least one year of physical presence in the United States may be complied with by such person at any time prior to filing an application for naturalization.

**(d) Moral character.** No finding by the Attorney General that the applicant is not deportable shall be accepted as conclusive evidence of good moral character.

**(e) Determination.** In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the petition, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

**(f) Persons making extraordinary contributions to national security.**

**(1)** Whenever the Director of Central Intelligence, the Attorney General and the Commissioner of Immigration determine that an applicant otherwise eligible for naturalization has made an extraordinary contribution to the national security of the United States or to the conduct of United States intelligence activities, the applicant may be naturalized without regard to the residence and physical presence requirements of this section, or to the prohibitions of section 313 of this Act [*8 USCS § 1424*], and no residence within a particular State or district of the Service in the United States shall be required: *Provided,* That the applicant has continuously resided in the United States for at least one year prior to naturalization: *Provided further,* That the provisions of this subsection shall not apply to any alien described in clauses (i) through (v) of section 208(b)(2)(A) of this Act [*8 USCS § 1158(b)(2)(A)*].

**(2)** An applicant for naturalization under this subsection may be administered the oath of allegiance under section 337(a) [*8 USCS § 1448(a)*] by any district court of the United States, without regard to the residence of the applicant. Proceedings under this subsection shall be conducted in a manner consistent with the protection of intelligence sources, methods and activities.

**(3)** The number of aliens naturalized pursuant to this subsection in any fiscal year shall not exceed five. The Director of Central Intelligence shall inform the Select Committee on Intelligence and the Committee on the Judiciary of the Senate and the Permanent Select Committee on Intelligence and the Committee on the Judiciary of the House of Representatives within a reasonable time prior to the filing of each petition under the provisions of this subsection.

# History

**HISTORY:**

Act June 27, 1952, ch 477, Title III, Ch 2, § 316, *66 Stat. 242*; Dec. 29, 1981, *P. L. 97-116*, § 14, *95 Stat. 1619*; Dec. 4, 1985, *P. L. 99-169*, Title VI, § 601, *99 Stat. 1007*; Nov. 29, 1990, *P. L. 101-649*, Title IV, §§ 402, 407(c)(2), (d)(1), (e)(1), *104 Stat. 5038*, 5041, 5046; Sept. 30, 1996, *P. L. 104-208*, Div C, Title III, Subtitle A, § 308(g)(7)(F), *110 Stat. 3009*-624; Dec. 30, 2005, *P. L. 109-149*, Title V, § 518, *119 Stat. 2882*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)

8 USCS § 1427

All rights reserved. All rights reserved.

**End of Document**

## *28 USCS § 1292, Part 1 of 2*

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service > TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE (§§ 1 — 5001) > Part IV. Jurisdiction and Venue (Chs. 81 — 99) > CHAPTER 83. Courts of Appeals (§§ 1291 — 1296)*

# § 1292. Interlocutory decisions

**(a)**Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

    **(1)**Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

    **(2)**Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

    **(3)**Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

**(b)**When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

**(c)**The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

    **(1)**of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title [*28 USCS § 1295*]; and

    **(2)**of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

**(d)**

    **(1)**When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title [*28 USCS § 256(b)*], or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

    **(2)**When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title [*28 USCS § 798(b)*], or when any judge of the United States Claims Court [United States Court of Federal Claims], in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court

of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

**(3)**Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Claims Court [Court of Federal Claims], as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Claims Court [Court of Federal Claims] or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

**(4)**

**(A)**The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Claims Court [United States Court of Federal Claims] under section 1631 of this title [*28 USCS § 1631*].

**(B)**When a motion to transfer an action to the Claims Court [Court of Federal Claims] is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Claims Court [Court of Federal Claims] pursuant to the motion shall be carried out.

**(e)**The Supreme Court may prescribe rules, in accordance with section 2072 of this title [*28 USCS § 2072*], to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

# History

**HISTORY:**

Act June 25, 1948, ch 646, *62 Stat. 929*; Oct. 31, 1951, ch 655, § 49, *65 Stat. 726*; July 7, 1958, *P. L. 85-508*, § 12(e), *72 Stat. 348*; Sept. 2, 1958, *P. L. 85-919*, *72 Stat. 1770*; April 2, 1982, *P. L. 97-164*, Title I, Part A, § 125, *96 Stat. 36*; Nov. 8, 1984, *P. L. 98-620*, Title IV, Subtitle C, § 412, *98 Stat. 3362*; Nov. 19, 1988, *P. L. 100-702*, Title V, § 501, *102 Stat. 4652*; Oct. 29, 1992, *P. L. 102-572*, Title I, § 101, Title IX, § 906(c), *106 Stat. 4506*, 4518.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

End of Document

## *28 USCS § 1331, Part 1 of 3*

Current through Public Law 116-259, approved December 23, 2020.

*United States Code Service  >  TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE (§§ 1 — 5001)  >  Part IV. Jurisdiction and Venue (Chs. 81 — 99)  >  CHAPTER 85. District Courts; Jurisdiction (§§ 1330 — 1389)*

## § 1331. Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## History

**HISTORY:**

Act June 25, 1948, ch 646, *62 Stat. 930*; July 25, 1958, *P. L. 85-554*, § 1, *72 Stat. 415*; Oct. 21, 1976, *P. L. 94-574*, § 2, *90 Stat. 2721*; Dec. 1, 1980, *P. L. 96-486*, § 2(a), *94 Stat. 2369*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## *8 CFR 208.13*

This document is current through November 20, 2020 issue of the Federal Register, with the exception of the amendments appearing at 85 FR 73229 and 85 FR 73854.

*Code of Federal Regulations > Title 8 Aliens and Nationality > Chapter I — Department of Homeland Security (Immigration and Naturalization) > Subchapter B — Immigration Regulations > Part 208 — Procedures for Asylum and Withholding of Removal > Subpart A — Asylum and Withholding of Removal*

# § 208.13 Establishing asylum eligibility.

**(a)**Burden of proof. The burden of proof is on the applicant for asylum to establish that he or she is a refugee as defined in section 101(a)(42) of the Act. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. The fact that the applicant previously established a credible fear of persecution for purposes of section 235(b)(1)(B) of the Act does not relieve the alien of the additional burden of establishing eligibility for asylum.

**(b)**Eligibility. The applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution.

**(1)**Past persecution. An applicant shall be found to be a refugee on the basis of past persecution if the applicant can establish that he or she has suffered persecution in the past in the applicant's country of nationality or, if stateless, in his or her country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion, and is unable or unwilling to return to, or avail himself or herself of the protection of, that country owing to such persecution. An applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim. That presumption may be rebutted if an asylum officer or immigration judge makes one of the findings described in paragraph (b)(1)(i) of this section. If the applicant's fear of future persecution is unrelated to the past persecution,

the applicant bears the burden of establishing that the fear is well-founded.

**(i)**Discretionary referral or denial. Except as provided in paragraph (b)(1)(iii) of this section, an asylum officer shall, in the exercise of his or her discretion, refer or deny, or an immigration judge, in the exercise of his or her discretion, shall deny the asylum application of an alien found to be a refugee on the basis of past persecution if any of the following is found by a preponderance of the evidence:

**(A)**There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality or, if stateless, in the applicant's country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion; or

**(B)**The applicant could avoid future persecution by relocating to another part of the applicant's country of nationality or, if stateless, another part of the applicant's country of last habitual residence, and under all the circumstances, it would be reasonable to expect the applicant to do so.

**(ii)**Burden of proof. In cases in which an applicant has demonstrated past persecution under paragraph (b)(1) of this section, the Service shall bear the burden of establishing by a preponderance of the evidence the requirements of paragraphs (b)(1)(i)(A) or (B) of this section.

**(iii)**Grant in the absence of well-founded fear of persecution. An applicant described in paragraph (b)(1)(i) of this section who is not barred from a grant of asylum under paragraph (c) of this section, may be granted asylum, in the exercise of the decision-maker's discretion, if:

**(A)**The applicant has demonstrated compelling reasons for being unwilling

or unable to return to the country arising out of the severity of the past persecution; or

**(B)**The applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.

**(2)**Well-founded fear of persecution

**(i)**An applicant has a well-founded fear of persecution if:

**(A)**The applicant has a fear of persecution in his or her country of nationality or, if stateless, in his or her country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion;

**(B)**There is a reasonable possibility of suffering such persecution if he or she were to return to that country; and

**(C)**He or she is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear.

**(ii)**An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality or, if stateless, another part of the applicant's country of last habitual residence, if under all the circumstances it would be reasonable to expect the applicant to do so.

**(iii)**In evaluating whether the applicant has sustained the burden of proving that he or she has a well-founded fear of persecution, the asylum officer or immigration judge shall not require the applicant to provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution if:

**(A)**The applicant establishes that there is a pattern or practice in his or her country of nationality or, if stateless, in his or her country of last habitual residence, of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular

social group, or political opinion; and

**(B)**The applicant establishes his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.

**(3)**Reasonableness of internal relocation. For purposes of determinations under paragraphs (b)(1)(i), (b)(1)(ii), and (b)(2) of this section, adjudicators should consider, but are not limited to considering, whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties. Those factors may, or may not, be relevant, depending on all the circumstances of the case, and are not necessarily determinative of whether it would be reasonable for the applicant to relocate.

**(i)**In cases in which the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, unless the persecution is by a government or is government-sponsored.

**(ii)**In cases in which the persecutor is a government or is government-sponsored, or the applicant has established persecution in the past, it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate.

**(c)**Mandatory denials —

**(1)**Applications filed on or after April 1, 1997. For applications filed on or after April 1, 1997, an applicant shall not qualify for asylum if section 208(a)(2) or 208(b)(2) of the Act applies to the applicant. If the applicant is found to be ineligible for asylum under either section 208(a)(2) or 208(b)(2) of the Act, the applicant shall be considered for eligibility for withholding of removal under section 241(b)(3) of the Act. The applicant shall also be considered for eligibility for withholding of removal under the Convention Against Torture

8 CFR 208.13

if the applicant requests such consideration or if the evidence presented by the alien indicates that the alien may be tortured in the country of removal.

**(2)** Applications filed before April 1, 1997

**(i)** An immigration judge or asylum officer shall not grant asylum to any applicant who filed his or her application before April 1, 1997, if the alien:

**(A)** Having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community;

**(B)** Has been firmly resettled within the meaning of § 208.15;

**(C)** Can reasonably be regarded as a danger to the security of the United States;

**(D)** Has been convicted of an aggravated felony, as defined in section 101(a)(43) of the Act; or

**(E)** Ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion.

**(F)** Is described within section 212(a)(3)(B)(i)(I),(II), and (III) of the Act as it existed prior to April 1, 1997, and as amended by the Anti-terrorist and Effective Death Penalty Act of 1996 (AEDPA), unless it is determined that there are no reasonable grounds to believe that the individual is a danger to the security of the United States.

**(ii)** If the evidence indicates that one of the above grounds apply to the applicant, he or she shall have the burden of proving by a preponderance of the evidence that he or she did not so act.

**(3)** Additional limitation on eligibility for asylum. For applications filed after November 9, 2018, an alien shall be ineligible for asylum if the alien is subject to a presidential proclamation or other presidential order suspending or limiting the entry of aliens along the southern border with Mexico that is issued pursuant to

subsection 212(f) or 215(a)(1) of the Act on or after November 9, 2018 and the alien enters the United States after the effective date of the proclamation or order contrary to the terms of the proclamation or order. This limitation on eligibility does not apply if the proclamation or order expressly provides that it does not affect eligibility for asylum, or expressly provides for a waiver or exception that makes the suspension or limitation inapplicable to the alien.

**(4)** Additional limitation on eligibility for asylum. Notwithstanding the provisions of § 208.15, any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence en route to the United States, shall be found ineligible for asylum unless:

**(i)** The alien demonstrates that he or she applied for protection from persecution or torture in at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence through which the alien transited en route to the United States, and the alien received a final judgment denying the alien protection in such country;

**(ii)** The alien demonstrates that he or she satisfies the definition of "victim of a severe form of trafficking in persons" provided in *8 CFR 214.11*; or

**(iii)** The only countries through which the alien transited en route to the United States were, at the time of the transit, not parties to the 1951 United Nations Convention relating to the Status of Refugees, the 1967 Protocol Relating to the Status of Refugees, or the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.

**(5)** Non-binding determinations. Determinations made with respect to paragraph (c)(4)(ii) of this section are not binding on Federal departments or agencies in subsequent determinations of eligibility for T or U nonimmigrant status under section 101(a)(15)(T) or (U) of the INA or for benefits or services under *22 U.S.C. 7105* or *8 U.S.C. 1641(c)(4)*.

**(6)** Additional limitations on eligibility for asylum. For applications filed on or after November 20, 2020, an alien shall be found ineligible for asylum if:

**(i)** The alien has been convicted on or after such date of an offense arising under sections 274(a)(1)(A), 274(a)(2), or 276 of the Act;

**(ii)** The alien has been convicted on or after such date of a Federal, State, tribal, or local crime that the asylum officer knows or has reason to believe was committed in support, promotion, or furtherance of the activity of a criminal street gang as that term is defined either under the jurisdiction where the conviction occurred or in section 521(a) of title 18;

**(iii)** The alien has been convicted on or after such date of an offense for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the conviction occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs) without regard to whether the conviction is classified as a misdemeanor or felony under Federal, State, tribal, or local law, in which such impaired driving was a cause of serious bodily injury or death of another person;

**(iv)**

**(A)** The alien has been convicted on or after such date of a second or subsequent offense for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the conviction occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs) without regard to whether the conviction is classified as a misdemeanor or felony under Federal, State, tribal, or local law;

**(B)** A finding under paragraph (c)(6)(iv)(A) of this section does not require the asylum officer to find the first conviction for driving while intoxicated or impaired (including a conviction for driving while under the influence of or impaired by alcohol or drugs) as a predicate offense. The asylum officer need only make a factual determination that the alien was previously convicted for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the convictions occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs).

**(v)**

**(A)** The alien has been convicted on or after such date of a crime that involves conduct amounting to a crime of stalking; or a crime of child abuse, child neglect, or child abandonment; or that involves conduct amounting to a domestic assault or battery offense, including a misdemeanor crime of domestic violence, as described in section 922(g)(9) of title 18, a misdemeanor crime of domestic violence as described in section 921(a)(33) of title 18, a crime of domestic violence as described in section 12291(a)(8) of title 34, or any crime based on conduct in which the alien harassed, coerced, intimidated, voluntarily or recklessly used (or threatened to use) force or violence against, or inflicted physical injury or physical pain, however slight, upon a person, and committed by:

**(1)** An alien who is a current or former spouse of the person;

**(2)** An alien with whom the person shares a child in common;

**(3)** An alien who is cohabiting with or has cohabited with the person as a spouse;

**(4)** An alien similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs; or

**(5)** Any other alien against a person who is protected from that alien's acts under the domestic or family violence laws of the United States or any State, tribal government, or

8 CFR 208.13

unit of local government.

**(B)** In making a determination under paragraph (c)(6)(v)(A) of this section, including in determining the existence of a domestic relationship between the alien and the victim, the underlying conduct of the crime may be considered and the asylum officer is not limited to facts found by the criminal court or provided in the underlying record of conviction.

**(C)** An alien who was convicted of offenses described in paragraph (c)(6)(v)(A) of this section is not subject to ineligibility for asylum on that basis if the alien would be described in section 237(a)(7)(A) of the Act were the crimes or conduct considered grounds for deportability under section 237(a)(2)(E)(i) through (ii) of the Act.

**(vi)** The alien has been convicted on or after such date of—

**(A)** Any felony under Federal, State, tribal, or local law;

**(B)** Any misdemeanor offense under Federal, State, tribal, or local law involving:

**(1)** The possession or use of an identification document, authentication feature, or false identification document without lawful authority, unless the alien can establish that the conviction resulted from circumstances showing that the document was presented before boarding a common carrier, that the document related to the alien's eligibility to enter the United States, that the alien used the document to depart a country in which the alien has claimed a fear of persecution, and that the alien claimed a fear of persecution without delay upon presenting himself or herself to an immigration officer upon arrival at a United States port of entry;

**(2)** The receipt of Federal public benefits, as defined in *8 U.S.C.*

*1611(c)*, from a Federal entity, or the receipt of similar public benefits from a State, tribal, or local entity, without lawful authority; or

**(3)** Possession or trafficking of a controlled substance or controlled substance paraphernalia, other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

**(vii)** The asylum officer knows or has reason to believe that the alien has engaged on or after such date in acts of battery or extreme cruelty as defined in *8 CFR 204.2(c)(1)(vi)*, upon a person, and committed by:

**(A)** An alien who is a current or former spouse of the person;

**(B)** An alien with whom the person shares a child in common;

**(C)** An alien who is cohabiting with or has cohabited with the person as a spouse;

**(D)** An alien similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs; or

**(E)** Any other alien against a person who is protected from that alien's acts under the domestic or family violence laws of the United States or any State, tribal government, or unit of local government, even if the acts did not result in a criminal conviction;

**(F)** Except that an alien who was convicted of offenses or engaged in conduct described in paragraph (c)(6)(vii) of this section is not subject to ineligibility for asylum on that basis if the alien would be described in section 237(a)(7)(A) of the Act were the crimes or conduct considered grounds for deportability under section 237(a)(2)(E)(i)–(ii) of the Act.

**(7)** For purposes of paragraph (c)(6) of this section:

8 CFR 208.13

**(i)**The term ''felony'' means any crime defined as a felony by the relevant jurisdiction (Federal, State, tribal, or local) of conviction, or any crime punishable by more than one year of imprisonment.

**(ii)**The term ''misdemeanor'' means any crime defined as a misdemeanor by the relevant jurisdiction (Federal, State, tribal, or local) of conviction, or any crime not punishable by more than one year of imprisonment.

**(iii)**Whether any activity or conviction also may constitute a basis for removability under the Act is immaterial to a determination of asylum eligibility.

**(iv)**All references to a criminal offense or criminal conviction shall be deemed to include any attempt, conspiracy, or solicitation to commit the offense or any other inchoate form of the offense.

**(v)**No order vacating a conviction, modifying a sentence, clarifying a sentence, or otherwise altering a conviction or sentence, shall have any effect unless the asylum officer determines that—

    **(A)**The court issuing the order had jurisdiction and authority to do so; and

    **(B)**The order was not entered for rehabilitative purposes or for purposes of ameliorating the immigration consequences of the conviction or sentence.

**(8)**For purposes of paragraph (c)(7)(v)(B) of this section, the order shall be presumed to be for the purpose of ameliorating immigration consequences if:

**(i)**The order was entered after the initiation of any proceeding to remove the alien from the United States; or

**(ii)**The alien moved for the order more than one year after the date of the original order of conviction or sentencing.

**(9)**An asylum officer is authorized to look beyond the face of any order purporting to vacate a conviction, modify a sentence, or clarify a sentence to determine whether the requirements of paragraph (c)(7)(v) of this section have been met in order to determine

whether such order should be given any effect under this section.

## Statutory Authority

*Authority Note Applicable to Title 8, Ch. I, Subch. B, Pt. 208*

## History

[55 FR 30680, July 27, 1990; 59 FR 62300, Dec. 5, 1994; *62 FR 10312*, 10342, Mar. 6, 1997; *64 FR 8478*, 8488, Feb. 19, 1999; *65 FR 76121*, 76133, Dec. 6, 2000; *83 FR 55934*, 55952, Nov. 9, 2018; *84 FR 33829*, 33843, July 16, 2019; *85 FR 67202*, 67259, Oct. 21, 2020]

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2020 All rights reserved.

**End of Document**

## *8 CFR 1208.13*

This document is current through December 30, 2020 issue of the Federal Register, with the exception of the amendments appearing at 85 FR 83416, 85 FR 84262, 85 FR 85380, and 85 FR 86511.

*Code of Federal Regulations > Title 8 Aliens and Nationality > Chapter V — Executive Office for Immigration Review, Department of Justice > Subchapter B — Immigration Regulations > Part 1208 — Procedures for Asylum and Withholding of Removal > Subpart A — Asylum and Withholding of Removal*

## Notice

. This section has more than one version with varying effective dates.

## § 1208.13 Establishing asylum eligibility. [Effective January 19, 2021; Effective until January 22, 2021]

**(a)**Burden of proof. The burden of proof is on the applicant for asylum to establish that he or she is a refugee as defined in section 101(a)(42) of the Act. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. The fact that the applicant previously established a credible fear of persecution for purposes of section 235(b)(1)(B) of the Act does not relieve the alien of the additional burden of establishing eligibility for asylum.

**(b)**Eligibility. The applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution.

**(1)**Past persecution. An applicant shall be found to be a refugee on the basis of past persecution if the applicant can establish that he or she has suffered persecution in the past in the applicant's country of nationality or, if stateless, in his or her country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion, and is unable or unwilling to return to, or avail himself or herself of the protection of, that country owing to such persecution. An applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim. That presumption may be rebutted if an asylum officer or immigration judge makes one of the findings described in paragraph (b)(1)(i) of this section. If the applicant's fear of future persecution is unrelated to the past persecution, the applicant bears the burden of establishing that the fear is well-founded.

**(i)**Discretionary referral or denial. Except as provided in paragraph (b)(1)(iii) of this section, an asylum officer shall, in the exercise of his or her discretion, refer or deny, or an immigration judge, in the exercise of his or her discretion, shall deny the asylum application of an alien found to be a refugee on the basis of past persecution if any of the following is found by a preponderance of the evidence:

**(A)**There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality or, if stateless, in the applicant's country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion; or

**(B)**The applicant could avoid future persecution by relocating to another part of the applicant's country of nationality or, if stateless, another part of the applicant's country of last habitual residence, and under all the circumstances, it would be reasonable to expect the applicant to do so.

8 CFR 1208.13

**(ii)**Burden of proof. In cases in which an applicant has demonstrated past persecution under paragraph (b)(1) of this section, the Service shall bear the burden of establishing by a preponderance of the evidence the requirements of paragraphs (b)(1)(i)(A) or (B) of this section.

**(iii)**Grant in the absence of well-founded fear of persecution. An applicant described in paragraph (b)(1)(i) of this section who is not barred from a grant of asylum under paragraph (c) of this section, may be granted asylum, in the exercise of the decision-maker's discretion, if:

**(A)**The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or

**(B)**The applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.

**(2)**Well-founded fear of persecution

**(i)**An applicant has a well-founded fear of persecution if:

**(A)**The applicant has a fear of persecution in his or her country of nationality or, if stateless, in his or her country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion;

**(B)**There is a reasonable possibility of suffering such persecution if he or she were to return to that country; and

**(C)**He or she is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear.

**(ii)**An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality or, if stateless, another part of the applicant's country of last habitual residence, if under all the circumstances it would be reasonable to expect the applicant to do so.

**(iii)**In evaluating whether the applicant has sustained the burden of proving that he or she has a well-founded fear of persecution, the asylum officer or immigration judge shall not require the applicant to provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution if:

**(A)**The applicant establishes that there is a pattern or practice in his or her country of nationality or, if stateless, in his or her country of last habitual residence, of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and

**(B)**The applicant establishes his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.

**(3)**Reasonableness of internal relocation. For purposes of determinations under paragraphs (b)(1)(i) and (ii) and (b)(2) of this section, adjudicators should consider the totality of the relevant circumstances regarding an applicant's prospects for relocation, including the size of the country of nationality or last habitual residence, the geographic locus of the alleged persecution, the size, numerosity, and reach of the alleged persecutor, and the applicant's demonstrated ability to relocate to the United States in order to apply for asylum.

**(i)**In cases in which the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, unless the persecution is by a government or is government-sponsored.

**(ii)**In cases in which the persecutor is a government or is government-sponsored, it shall be presumed that internal relocation would not be reasonable, unless the Department of Homeland Security establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate.

8 CFR 1208.13

(iii)Regardless of whether an applicant has established persecution in the past, in cases in which the persecutor is not the government or a government-sponsored actor, or otherwise is a private actor, there shall be a presumption that internal relocation would be reasonable unless the applicant establishes, by a preponderance of the evidence, that it would be unreasonable to relocate.

(iv)For purposes of determinations under paragraphs (b)(3)(ii) and (iii) of this section, persecutors who are private actors—including persecutors who are gang members, officials acting outside their official capacity, family members who are not themselves government officials, or neighbors who are not themselves government officials—shall not be considered to be persecutors who are the government or government sponsored absent evidence that the government sponsored the persecution.

(c)Mandatory denials —

(1)Applications filed on or after April 1, 1997. For applications filed on or after April 1, 1997, an applicant shall not qualify for asylum if section 208(a)(2) or 208(b)(2) of the Act applies to the applicant. If the applicant is found to be ineligible for asylum under either section 208(a)(2) or 208(b)(2) of the Act, the applicant shall be considered for eligibility for withholding of removal under section 241(b)(3) of the Act. The applicant shall also be considered for eligibility for withholding of removal under the Convention Against Torture if the applicant requests such consideration or if the evidence presented by the alien indicates that the alien may be tortured in the country of removal.

(2)Applications filed before April 1, 1997

(i)An immigration judge or asylum officer shall not grant asylum to any applicant who filed his or her application before April 1, 1997, if the alien:

(A)Having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community;

(B)Has been firmly resettled within the meaning of § 1208.15;

(C)Can reasonably be regarded as a danger to the security of the United States;

(D)Has been convicted of an aggravated felony, as defined in section 101(a)(43) of the Act; or

(E)Ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion.

(F)Is described within section 212(a)(3)(B)(i)(I),(II), and (III) of the Act as it existed prior to April 1, 1997, and as amended by the Anti-terrorist and Effective Death Penalty Act of 1996 (AEDPA), unless it is determined that there are no reasonable grounds to believe that the individual is a danger to the security of the United States.

(ii)If the evidence indicates that one of the above grounds apply to the applicant, he or she shall have the burden of proving by a preponderance of the evidence that he or she did not so act.

(3)Additional limitation on eligibility for asylum. For applications filed after November 9, 2018, an alien shall be ineligible for asylum if the alien is subject to a presidential proclamation or other presidential order suspending or limiting the entry of aliens along the southern border with Mexico that is issued pursuant to subsection 212(f) or 215(a)(1) of the Act on or after November 9, 2018 and the alien enters the United States after the effective date of the proclamation or order contrary to the terms of the proclamation or order. This limitation on eligibility does not apply if the proclamation or order expressly provides that it does not affect eligibility for asylum, or expressly provides for a waiver or exception that makes the suspension or limitation inapplicable to the alien.

(4)Additional limitation on eligibility for asylum. Notwithstanding the provisions of §1208.15, any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence en route to the United States, shall be found ineligible for asylum unless

(i)The alien demonstrates that he or she applied for protection from persecution in at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence through which the alien

transited en route to the United States and the alien received a final judgment denying the alien protection in such country.

**(ii)**The alien demonstrates that he or she satisfies the definition of "victim of a severe form of trafficking in persons" provided in *8 CFR 214.11*; or

**(iii)**The only country or countries through which the alien transited en route to the United States were, at the time of the transit, not parties to the 1951 United Nations Convention relating to the Status of Refugees or the 1967 Protocol relating to the Status of Refugees.

**(5)**Non-binding determinations. Determinations made with respect to paragraph (c)(4)(ii) of this section are not binding on Federal departments or agencies in subsequent determinations of eligibility for T or U nonimmigrant status under section 101(a)(15)(T) or (U) of the Act or for benefits or services under *22 U.S.C. 7105* or *8 U.S.C. 1641(c)(4)*.

**(6)**Additional limitations on eligibility for asylum. For applications filed on or after November 20, 2020, an alien shall be found ineligible for asylum if:

**(i)**The alien has been convicted on or after such date of an offense arising under sections 274(a)(1)(A), 274(a)(2), or 276 of the Act;

**(ii)**The alien has been convicted on or after such date of a Federal, State, tribal, or local crime that the immigration judge knows or has reason to believe was committed in support, promotion, or furtherance of the activity of a criminal street gang as that term is defined either under the jurisdiction where the conviction occurred or in section 521(a) of title 18;

**(iii)**The alien has been convicted on or after such date of an offense for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the conviction occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs) without regard to whether the conviction is classified as a misdemeanor or felony under Federal, State, tribal, or local law, in which such impaired driving was a cause of serious bodily injury or death of another person;

**(iv)**

**(A)**The alien has been convicted on or after such date of a second or subsequent offense for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the conviction occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs) without regard to whether the conviction is classified as a misdemeanor or felony under Federal, State, tribal, or local law;

**(B)**A finding under paragraph (c)(6)(iv)(A) of this section does not require the immigration judge to find the first conviction for driving while intoxicated or impaired (including a conviction for driving while under the influence of or impaired by alcohol or drugs) as a predicate offense. The immigration judge need only make a factual determination that the alien was previously convicted for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the convictions occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs).

**(v)**

**(A)**The alien has been convicted on or after such date of a crime that involves conduct amounting to a crime of stalking; or a crime of child abuse, child neglect, or child abandonment; or that involves conduct amounting to a domestic assault or battery offense, including a misdemeanor crime of domestic violence, as described in section 922(g)(9) of title 18, a misdemeanor crime of domestic violence as described in section 921(a)(33) of title 18, a crime of domestic violence as described in section 12291(a)(8) of title 34, or any crime based on conduct in which the alien harassed, coerced, intimidated, voluntarily or recklessly used (or threatened to use) force or violence against, or inflicted physical injury or physical pain, however slight, upon a person, and committed by:

**(1)**An alien who is a current or former spouse of the person;

8 CFR 1208.13

(2)An alien with whom the person shares a child in common;

(3)An alien who is cohabiting with or has cohabited with the person as a spouse;

(4)An alien similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs; or

(5)Any other alien against a person who is protected from that alien's acts under the domestic or family violence laws of the United States or any State, tribal government, or unit of local government.

(B)In making a determination under paragraph (c)(6)(v)(A) of this section, including in determining the existence of a domestic relationship between the alien and the victim, the underlying conduct of the crime may be considered and the immigration judge is not limited to facts found by the criminal court or provided in the underlying record of conviction.

(C)An alien who was convicted of offenses described in paragraph (c)(6)(v)(A) of this section is not subject to ineligibility for asylum on that basis if the alien would be described in section 237(a)(7)(A) of the Act were the crimes or conduct considered grounds for deportability under section 237(a)(2)(E)(i) through (ii) of the Act.

(vi)The alien has been convicted on or after such date of—

(A)Any felony under Federal, State, tribal, or local law;

(B)Any misdemeanor offense under Federal, State, tribal, or local law involving:

(1)The possession or use of an identification document, authentication feature, or false identification document without lawful authority, unless the alien can establish that the conviction resulted from circumstances showing that the document was presented before boarding a common carrier, that the document related to the alien's eligibility to enter the United States, that the alien used the document to depart a country in which the alien has claimed a fear of persecution, and that the alien claimed a fear of persecution without delay upon presenting himself or herself to an immigration officer upon arrival at a United States port of entry;

(2)The receipt of Federal public benefits, as defined in *8 U.S.C. 1611(c)*, from a Federal entity, or the receipt of similar public benefits from a State, tribal, or local entity, without lawful authority; or

(3)Possession or trafficking of a controlled substance or controlled-substance paraphernalia, other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

(vii)The immigration judge knows or has reason to believe that the alien has engaged on or after such date in acts of battery or extreme cruelty as defined in *8 CFR 204.2(c)(1)(vi)*, upon a person, and committed by:

(A)An alien who is a current or former spouse of the person;

(B)An alien with whom the person shares a child in common;

(C)An alien who is cohabiting with or has cohabited with the person as a spouse;

(D)An alien similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs; or

(E)Any other alien against a person who is protected from that alien's acts under the domestic or family violence laws of the United States or any State, tribal government, or unit of local government, even if the acts did not result in a criminal conviction;

(F)Except that an alien who was convicted of offenses or engaged in conduct described in paragraph (c)(6)(vii) of this section is not subject to ineligibility for asylum on that basis if the alien would be described in section 237(a)(7)(A) of the Act were the crimes or conduct considered grounds for deportability under section 237(a)(2)(E)(i)–(ii) of the Act.

(7)For purposes of paragraph (c)(6) of this section:

8 CFR 1208.13

**(i)**The term ''felony'' means any crime defined as a felony by the relevant jurisdiction (Federal, State, tribal, or local) of conviction, or any crime punishable by more than one year of imprisonment.

**(ii)**The term ''misdemeanor'' means any crime defined as a misdemeanor by the relevant jurisdiction (Federal, State, tribal, or local) of conviction, or any crime not punishable by more than one year of imprisonment.

**(iii)**Whether any activity or conviction also may constitute a basis for removability under the Act is immaterial to a determination of asylum eligibility.

**(iv)**All references to a criminal offense or criminal conviction shall be deemed to include any attempt, conspiracy, or solicitation to commit the offense or any other inchoate form of the offense.

**(v)**No order vacating a conviction, modifying a sentence, clarifying a sentence, or otherwise altering a conviction or sentence, shall have any effect unless the immigration judge determines that—

**(A)**The court issuing the order had jurisdiction and authority to do so; and

**(B)**The order was not entered for rehabilitative purposes or for purposes of ameliorating the immigration consequences of the conviction or sentence.

**(8)**For purposes of paragraph (c)(7)(v)(B) of this section, the order shall be presumed to be for the purpose of ameliorating immigration consequences if:

**(i)**The order was entered after the initiation of any proceeding to remove the alien from the United States; or

**(ii)**The alien moved for the order more than one year after the date of the original order of conviction or sentencing.

**(9)**An immigration judge is authorized to look beyond the face of any order purporting to vacate a conviction, modify a sentence, or clarify a sentence to determine whether the requirements of paragraph (c)(7)(v) of this section have been met in order to determine whether such order should be given any effect under this section.

**(d)**Discretion. Factors that fall short of grounds of mandatory denial of an asylum application may constitute discretionary considerations.

**(1)**The following are significant adverse discretionary factors that a decision-maker shall consider, if applicable, in determining whether an alien merits a grant of asylum in the exercise of discretion:

**(i)**An alien's unlawful entry or unlawful attempted entry into the United States unless such entry or attempted entry was made in immediate flight from persecution in a contiguous country or unless such entry or attempted entry was made by an alien under the age of 18 at the time the entry or attempted entry was made;

**(ii)**The failure of an alien to apply for protection from persecution or torture in at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence through which the alien transited before entering the United States unless:

**(A)**The alien received a final judgment denying the alien protection in such country;

**(B)**The alien demonstrates that he or she satisfies the definition of ''victim of a severe form of trafficking in persons'' provided in *8 CFR 214.11*; or

**(C)**Such country or countries were, at the time of the transit, not parties to the 1951 Convention relating to the Status of Refugees, the 1967 Protocol relating to the Status of Refugees, or the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment; and

**(iii)**An alien's use of fraudulent documents to enter the United States, unless the alien arrived in the United States by air, sea, or land directly from the applicant's home country without transiting through any other country.

**(2)**

**(i)**The Attorney General, except as provided in paragraph (d)(2)(ii) of this section, will not favorably exercise discretion under section 208 of the Act for an alien who:

8 CFR 1208.13

**(A)**Immediately prior to his arrival in the United States or en route to the United States from the alien's country of citizenship, nationality, or last lawful habitual residence, spent more than 14 days in any one country unless:

> **(1)**The alien demonstrates that he or she applied for protection from persecution or torture in such country and the alien received a final judgment denying the alien protection in such country;

> **(2)**The alien demonstrates that he or she satisfies the definition of ''victim of a severe form of trafficking in persons'' provided in *8 CFR 214.11*; or

> **(3)**Such country was, at the time of the transit, not a party to the 1951 Convention relating to the Status of Refugees the 1967 Protocol relating to the Status of Refugees, or the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment;

**(B)**Transits through more than one country between his country of citizenship, nationality, or last habitual residence and the United States unless:

> **(1)**The alien demonstrates that he or she applied for protection from persecution or torture in at least one such country and the alien received a final judgment denying the alien protection in such country;

> **(2)**The alien demonstrates that he or she satisfies the definition of ''victim of a severe form of trafficking in persons'' provided in *8 CFR 214.11*; or

> **(3)**All such countries through which the alien transited en route to the United States were, at the time of the transit, not parties to the 1951 Convention relating to the Status of Refugees, the 1967 Protocol relating to the Status of Refugees, or the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment;

**(C)**Would otherwise be subject to § 1208.13(c) but for the reversal, vacatur, expungement, or modification of a conviction or sentence unless the alien was found not guilty;

**(D)**Accrued more than one year of unlawful presence in the United States, as defined in sections 212(a)(9)(B)(ii) and (iii) of the Act, prior to filing an application for asylum;

**(E)**At the time the asylum application is filed with the immigration court or is referred from DHS has:

> **(1)**Failed to timely file (or timely file a request for an extension of time to file) any required Federal, State, or local income tax returns;

> **(2)**Failed to satisfy any outstanding Federal, State, or local tax obligations; or

> **(3)**Has income that would result in tax liability under *section 1 of the Internal Revenue Code of 1986* and that was not reported to the Internal Revenue Service;

**(F)**Has had two or more prior asylum applications denied for any reason;

**(G)**Has withdrawn a prior asylum application with prejudice or been found to have abandoned a prior asylum application;

**(H)**Failed to attend an interview regarding his or her asylum application with DHS, unless the alien shows by a preponderance of the evidence that:

> **(1)**Exceptional circumstances prevented the alien from attending the interview; or

> **(2)**The interview notice was not mailed to the last address provided by the alien or the alien's representative and neither the alien nor the alien's representative received notice of the interview; or

**(I)**Was subject to a final order of removal, deportation, or exclusion and did not file a motion to reopen to seek asylum based on changed country conditions within one year of the changes in country conditions.

**(ii)**Where one or more of the adverse discretionary factors set forth in paragraph (d)(2)(i) of this section are present, the Attorney General, in extraordinary circumstances, such as those involving national security or

8 CFR 1208.13

foreign policy considerations, or cases in which an alien, by clear and convincing evidence, demonstrates that the denial of the application for asylum would result in exceptional and extremely unusual hardship to the alien, may favorably exercise discretion under section 208 of the Act, notwithstanding the applicability of paragraph (d)(2)(i). Depending on the gravity of the circumstances underlying the application of paragraph (d)(2)(i), a showing of extraordinary circumstances might still be insufficient to warrant a favorable exercise of discretion under section 208 of the Act.

(e)Prima facie eligibility.

(1)Notwithstanding any other provision of this part, upon oral or written motion by the Department of Homeland Security, an immigration judge shall, if warranted by the record, pretermit and deny any application for asylum, withholding of removal under section 241(b)(3) of the Act, or protection under the regulations issued pursuant to the Convention Against Torture's implementing legislation if the alien has not established a prima facie claim for relief or protection under applicable law. An immigration judge need not conduct a hearing prior to pretermitting and denying an application under this paragraph (e)(1) but must consider any response to the motion before making a decision.

(2)Notwithstanding any other provision of this part, upon his or her own authority, an immigration judge shall, if warranted by the record, pretermit and deny any application for asylum, withholding of removal under section 241(b)(3) of the Act, or protection under the regulations issued pursuant to the Convention Against Torture's implementing legislation if the alien has not established a prima facie claim for relief or protection under applicable law, provided that the immigration judge shall give the parties at least 10 days' notice prior to entering such an order. An immigration judge need not conduct a hearing prior to pretermitting and denying an application under this paragraph (e)(2) but must consider any filings by the parties within the 10-day period before making a decision.

## Statutory Authority

*Authority Note Applicable to Title 8, Ch. V, Subch. B, Pt. 1208*

## History

[55 FR 30680, July 27, 1990; 59 FR 62300, Dec. 5, 1994; *62 FR 10312*, 10342, Mar. 6, 1997; *64 FR 8478*, 8488, Feb. 19, 1999; *65 FR 76121*, 76133, Dec. 6, 2000; *68 FR 9824*, 9834, 9846, Feb. 28, 2003; *83 FR 55934*, 55952, Nov. 9, 2018; *84 FR 33829*, 33844, July 16, 2019; *85 FR 67202*, 67259, Oct. 21, 2020; *85 FR 80274*, 80396, Dec. 11, 2020; *85 FR 82260*, 82289, Dec. 17, 2020; *85 FR 84160*, 84196, Dec. 23, 2020]

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2021 All rights reserved.

End of Document

## *8 CFR 1208.16*

This document is current through January 5, 2020 issue of the Federal Register, with the exception of the amendments appearing at 85 FR 83416, 85 FR 86511, 85 FR 87000, 85 FR 86824, 85 FR 86835, and 86 FR 254.

*Code of Federal Regulations  >  Title 8 Aliens and Nationality  >  Chapter V — Executive Office for Immigration Review, Department of Justice  >  Subchapter B — Immigration Regulations  >  Part 1208 — Procedures for Asylum and Withholding of Removal  >  Subpart A — Asylum and Withholding of Removal*

## Notice

⚑ . This section has more than one version with varying effective dates.

## § 1208.16 Withholding of removal under section 241(b)(3)(B) of the Act and withholding of removal under the Convention Against Torture. [Effective January 11, 2021; Effective until January 22, 2021]

**(a)**Consideration of application for withholding of removal. An asylum officer shall not decide whether the exclusion, deportation, or removal of an alien to a country where the alien's life or freedom would be threatened must be withheld, except in the case of an alien who is otherwise eligible for asylum but is precluded from being granted such status due solely to section 207(a)(5) of the Act. In exclusion, deportation, or removal proceedings, an immigration judge may adjudicate both an asylum claim and a request for withholding of removal whether or not asylum is granted.

**(b)**Eligibility for withholding of removal under section 241(b)(3) of the Act; burden of proof. The burden of proof is on the applicant for withholding of removal under section 241(b)(3) of the Act to establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. The evidence shall be evaluated as follows:

**(1)**Past threat to life or freedom

**(i)**If the applicant is determined to have suffered past persecution in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim. This presumption may be rebutted if an asylum officer or immigration judge finds by a preponderance of the evidence:

**(A)**There has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds mentioned in this paragraph upon the applicant's removal to that country; or

**(B)**The applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so.

**(ii)**In cases in which the applicant has established past persecution, the Service shall bear the burden of establishing by a preponderance of the evidence the requirements of paragraphs (b)(1)(i)(A) or (b)(1)(i)(B) of this section.

8 CFR 1208.16

(iii)If the applicant's fear of future threat to life or freedom is unrelated to the past persecution, the applicant bears the burden of establishing that it is more likely than not that he or she would suffer such harm.

(2)Future threat to life or freedom. An applicant who has not suffered past persecution may demonstrate that his or her life or freedom would be threatened in the future in a country if he or she can establish that it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country. Such an applicant cannot demonstrate that his or her life or freedom would be threatened if the asylum officer or immigration judge finds that the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so. In evaluating whether it is more likely than not that the applicant's life or freedom would be threatened in a particular country on account of race, religion, nationality, membership in a particular social group, or political opinion, the asylum officer or immigration judge shall not require the applicant to provide evidence that he or she would be singled out individually for such persecution if:

(i)The applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and

(ii)The applicant establishes his or her own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return to that country.

(3)Reasonableness of internal relocation. For purposes of determinations under paragraphs (b)(1) and (2) of this section, adjudicators should consider the totality of the relevant circumstances regarding an applicant's prospects for relocation, including the size of the country of nationality or last habitual residence, the geographic locus of the alleged persecution, the size, reach, or numerosity of the alleged persecutor, and the applicant's demonstrated ability to relocate to the United States in order to apply for withholding of removal.

(i)In cases in which the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, unless the persecutor is a government or is government-sponsored.

(ii)In cases in which the persecutor is a government or is government-sponsored, it shall be presumed that internal relocation would not be reasonable, unless the DHS establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate.

(iii)Regardless of whether an applicant has established persecution in the past, in cases in which the persecutor is not the government or a government-sponsored actor, or otherwise is a private actor, there shall be a presumption that internal relocation would be reasonable unless the applicant establishes, by a preponderance of the evidence, that it would be unreasonable to relocate.

(iv)For purposes of determinations under paragraphs (b)(3)(ii) and (iii) of this section, persecutors who are private actors, including persecutors who are gang members, public official who are not acting under color of law, or family members who are not themselves government officials or neighbors who are not themselves government officials, shall not be considered to be persecutors who are the government or government-sponsored absent evidence that the government sponsored the persecution.

(c)Eligibility for withholding of removal under the Convention Against Torture.

(1)For purposes of regulations under Title II of the Act, "Convention Against Torture" shall refer to the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, subject to any reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention, as implemented by section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998 (*Pub. L. 105-277, 112 Stat. 2681*, 2681-821). The definition of torture contained in § 1208.18(a) of this part shall govern all decisions made under regulations under Title II of the Act about the applicability of Article 3 of the Convention Against Torture.

8 CFR 1208.16

**(2)**The burden of proof is on the applicant for withholding of removal under this paragraph to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.

**(3)**In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:

    **(i)**Evidence of past torture inflicted upon the applicant;

    **(ii)**Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;

    **(iii)**Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

    **(iv)**Other relevant information regarding conditions in the country of removal.

**(4)**In considering an application for withholding of removal under the Convention Against Torture, the immigration judge shall first determine whether the alien is more likely than not to be tortured in the country of removal. If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture. Protection under the Convention Against Torture will be granted either in the form of withholding of removal or in the form of deferral of removal. An alien entitled to such protection shall be granted withholding of removal unless the alien is subject to mandatory denial of withholding of removal under paragraphs (d)(2) or (d)(3) of this section. If an alien entitled to such protection is subject to mandatory denial of withholding of removal under paragraphs (d)(2) or (d)(3) of this section, the alien's removal shall be deferred under § 1208.17(a).

**(d) Approval or denial of application.**

    **(1)**General. Subject to paragraphs (d)(2) and (d)(3) of this section, an application for withholding of deportation or removal to a country of proposed removal shall be granted if the applicant's eligibility for withholding is established pursuant to paragraphs (b) or (c) of this section.

    **(2)**Mandatory denials. Except as provided in paragraph (d)(3) of this section, an application for withholding of removal under section 241(b)(3) of the Act or under the Convention Against Torture shall be denied if the applicant falls within section 241(b)(3)(B) of the Act or, for applications for withholding of deportation adjudicated in proceedings commenced prior to April 1, 1997, within section 243(h)(2) of the Act as it appeared prior to that date. For purposes of section 241(b)(3)(B)(ii) of the Act, or section 243(h)(2)(B) of the Act as it appeared prior to April 1, 1997, an alien who has been convicted of a particularly serious crime shall be considered to constitute a danger to the community. If the evidence indicates the applicability of one or more of the grounds for denial of withholding enumerated in the Act, the applicant shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.

    **(3)**Exception to the prohibition on withholding of deportation in certain cases. Section 243(h)(3) of the Act, as added by section 413 of *Pub. L. 104-132* (*110 Stat. 1214*), shall apply only to applications adjudicated in proceedings commenced before April 1, 1997, and in which final action had not been taken before April 24, 1996. The discretion permitted by that section to override section 243(h)(2) of the Act shall be exercised only in the case of an applicant convicted of an aggravated felony (or felonies) where he or she was sentenced to an aggregate term of imprisonment of less than 5 years and the immigration judge determines on an individual basis that the crime (or crimes) of which the applicant was convicted does not constitute a particularly serious crime. Nevertheless, it shall be presumed that an alien convicted of an aggravated felony has been convicted of a particularly serious crime. Except in the cases specified in this paragraph, the grounds for denial of withholding of deportation in section 243(h)(2) of the Act as it appeared prior to April 1, 1997, shall be deemed to comply with the Protocol Relating to the Status of Refugees, Jan. 31, 1967, T.I.A.S. No. 6577.

**(e)**[Removed and reserved].

**(f)**Removal to third country. Nothing in this section or §1208.17 shall prevent the Service from removing an alien to a third country other than the country to which removal has been withheld or deferred.

## Statutory Authority

*Authority Note Applicable to Title 8, Ch. V, Subch. B, Pt. 1208*

## History

[55 FR 30680, July 27, 1990; 59 FR 62301, Dec. 5, 1994; *60 FR 44260*, 44264, Aug. 25, 1995; *62 FR 10312*, 10343, Mar. 6, 1997; *64 FR 8478*, 8488, Feb. 19, 1999; *65 FR 76121*, 76135, Dec. 6, 2000; *68 FR 9824*, 9834, 9846, Feb. 28, 2003; *85 FR 67202*, 67260, Oct. 21, 2020; *85 FR 80274*, 80398, Dec. 11, 2020]; *85 FR 84160*, 84197, Dec. 23, 2020]

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2021 All rights reserved.

**End of Document**

## 8 CFR 1208.24

This document is current through December 28, 2020 issue of the Federal Register, with the exception of the amendments appearing at 85 FR 83409, 85 FR 83411, 85 FR 83416, 85 FR 84472, 85 FR 84262, 85 FR 85380.

*Code of Federal Regulations > Title 8 Aliens and Nationality > Chapter V — Executive Office for Immigration Review, Department of Justice > Subchapter B — Immigration Regulations > Part 1208 — Procedures for Asylum and Withholding of Removal > Subpart A — Asylum and Withholding of Removal*

## § 1208.24 Termination of asylum or withholding of removal or deportation.

[PUBLISHER'S NOTE: *68 FR 10349*, 10352, Mar. 5, 2003, purported to substitute "1003.2 and 1003.23" for "3.2 and 3.23" in paragraph (f) of § 1208.23. However this could not implemented, since paragraph (f) did not exist in § 1208.23. It was determined that paragraph (f) of § 1208.24 should instead be amended. For the convenience of the user, the amendment has been implemented according to the apparent intent of the agency. A correction is anticipated.]

**(a)**Termination of asylum by the Service. Except as provided in paragraph (e) of this section, an asylum officer may terminate a grant of asylum made under the jurisdiction of an asylum officer or a district director if following an interview, the asylum officer determines that:

**(1)**There is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted;

**(2)**As to applications filed on or after April 1, 1997, one or more of the conditions described in section 208(c)(2) of the Act exist; or

**(3)**As to applications filed before April 1, 1997, the alien no longer has a well-founded fear of persecution upon return due to a change of country conditions in the alien's country of nationality or habitual residence or the alien has committed any act that would have been grounds for denial of asylum under § 1208.13(c)(2).

**(b)**Termination of withholding of deportation or removal by the Service. Except as provided in paragraph (e) of this section, an asylum officer may terminate a grant of withholding of deportation or removal made under the jurisdiction of an asylum officer or a district director if the asylum officer determines, following an interview, that:

**(1)**The alien is no longer entitled to withholding of deportation or removal because, owing to a fundamental change in circumstances relating to the original claim, the alien's life or freedom no longer would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion in the country from which deportation or removal was withheld.

**(2)**There is a showing of fraud in the alien's application such that the alien was not eligible for withholding of removal at the time it was granted;

**(3)**The alien has committed any other act that would have been grounds for denial of withholding of removal under section 241(b)(3)(B) of the Act had it occurred prior to the grant of withholding of removal; or

**(4)**For applications filed in proceedings commenced before April 1, 1997, the alien has committed any act that would have been grounds for denial of withholding of deportation under section 243(h)(2) of the Act.

**(c)**Procedure. Prior to the termination of a grant of asylum or withholding of deportation or removal, the alien shall be given notice of intent to terminate, with the reasons therefor, at least 30 days prior to the interview specified in paragraph (a) of this section before an asylum officer. The alien shall be provided the opportunity to present evidence showing that he or she is still eligible for asylum or withholding of deportation or removal. If the asylum officer determines that the alien is no longer eligible for asylum or withholding of deportation or removal, the alien shall be given written notice that asylum status or withholding of deportation or removal and any employment authorization issued pursuant thereto, are terminated.

8 CFR 1208.24

(**d**)Termination of derivative status. The termination of asylum status for a person who was the principal applicant shall result in termination of the asylum status of a spouse or child whose status was based on the asylum application of the principal. Such termination shall not preclude the spouse or child of such alien from separately asserting an asylum or withholding of deportation or removal claim.

(**e**)Removal proceedings. When an alien's asylum status or withholding of removal or deportation is terminated under this section, the Service shall initiate removal proceedings, as appropriate, if the alien is not already in exclusion, deportation, or removal proceedings. Removal proceedings may take place in conjunction with a termination hearing scheduled under § 1208.24(f).

(**f**)Termination of asylum, or withholding of deportation or removal, by an immigration judge or the Board of Immigration Appeals. An immigration judge or the Board of Immigration Appeals may reopen a case pursuant to § 1003.2 or § 1003.23 of this chapter for the purpose of terminating a grant of asylum, or a withholding of deportation or removal. In such a reopened proceeding, the Service must establish, by a preponderance of evidence, one or more of the grounds set forth in paragraphs (a) or (b) of this section. In addition, an immigration judge may terminate a grant of asylum, or a withholding of deportation or removal, made under the jurisdiction of the Service at any time after the alien has been provided a notice of intent to terminate by the Service. Any termination under this paragraph may occur in conjunction with an exclusion, deportation, or removal proceeding.

(**g**)Termination of asylum for arriving aliens. If the Service determines that an applicant for admission who had previously been granted asylum in the United States falls within conditions set forth in § 1208.24 and is inadmissible, the Service shall issue a notice of intent to terminate asylum and initiate removal proceedings under section 240 of the Act. The alien shall present his or her response to the intent to terminate during proceedings before the immigration judge.

## Statutory Authority

*Authority Note Applicable to Title 8, Ch. V, Subch. B, Pt. 1208*

## History

[55 FR 30680, July 27, 1990; *62 FR 10312*, 10344, Mar. 6, 1997; redesignated at *64 FR 8478*, 8490, Feb. 19, 1999; redesignated and amended at *65 FR 76121*, 76136, Dec. 6, 2000; *68 FR 9824*, 9834, 9846, Feb. 28, 2003; *68 FR 10349*, 10352, Mar. 5, 2003]

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2021 All rights reserved.

**End of Document**