No. 20-17490

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PANGEA LEGAL SERVICES, et al.
Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.
Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

## APPELLANTS' EXCERPTS OF RECORD
## VOL. 3 OF 12

JOHN V. COGHLAN
*Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
PATRICK GLEN
CHRISTINA P. GREER
*Senior Litigation Counsel*
CRAIG NEWELL
*Trial Attorney*

Specifically, the bars to asylum based on allegations of criminal conduct are *already* sweeping and over-broad in nature and scope. Any conviction for an offense determined to be an "aggravated felony" is considered a *per se* "particularly serious crime" and therefore a mandatory bar to asylum. "Aggravated felony" is a notoriously vague term, which exists only in immigration law. Originally limited to murder, weapons trafficking and drug trafficking, it has metastasized to encompass hundreds of offenses, many of them neither a felony nor aggravated, including petty offenses such as misdemeanor shoplifting, simple misdemeanor battery, or sale of counterfeit DVDs. The existing crime bars should be narrowed, not expanded. Even for those not categorically barred from relief, the immigration adjudicator maintains full discretion to deny asylum.

Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed. The agencies' efforts to add *seven* new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel. The Proposed Rules drain the phrase "*particularly serious* crime," 8 U.S.C. § 1158, of any sensible meaning.

The Proposed Rules are also arbitrary and capricious. They would constitute a marked departure from past practice. And the agencies have proffered no evidence or data to support these changes.

One assumption fundamentally underlying the Proposed Rules, for example, is that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. But no evidence is provided to support that assumption, and a criminal record, does not, in fact, reliably predict future dangerousness. The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence. Conviction for a crime does not, without more, make one a present or future danger—which is why the Refugee Convention's particularly serious crime bar, made part of United States law through 8 U.S.C. § 1158, should only properly apply if both (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows that she is a present or future danger.

Similarly, the Proposed Rules fail to address or account for the fact that a significant number of people may agree to plead to a crime as to avoid the threat of a severe sentence; not only is a conviction an unreliable predictor of future danger, it can also be an unreliable indicator of past criminal conduct. In addition, the Proposed Rules do not address and make no exception for convictions for conduct influenced by mental illness or duress.

The Board of Immigration Appeals has cautioned that, "in light of the unusually harsh consequences which may befall a [noncitizen] who has established a well-founded fear of persecution; the danger of persecution should generally outweigh all but the most egregious of adverse factors." Yet because of the categorical nature of the seven news bars proposed here, asylum seekers will be precluded from obtaining protection on the

AR.08395

basis of a vast array of conduct, without any discretion left to the immigration adjudicator to determine whether the circumstances merit such a harsh penalty. Indeed, in the case of the domestic-violence related ground, the categorical bar will be imposed on the basis of *mere allegations* of conduct without any adjudication of guilt.

Those unjustly precluded from even seeking a discretionary grant of asylum by the Proposed Rules will include, for example: individuals struggling with addiction with one drug-related conviction, regardless of the circumstances of the offense; asylum seekers with two convictions for driving under the influence, regardless of whether the applicant has sought treatment for alcohol addiction or the circumstances of the convictions; community members seeking asylum defensively who have been convicted of a document fraud offense related to their immigration status; and asylum-seeking mothers convicted for bringing their own child across the southern border in an effort to find safety.

> *The Proposed Rules cruelly disregard the connections between trauma and involvement in the criminal legal system.*

The harsh nature of the Proposed Rules is especially evident when viewed through a trauma-informed lens. Asylum seekers are an inherently vulnerable population because of the trauma they have experienced in their countries of origin and, often, along the journey to find safety. Existing literature suggests that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD). One recent study found the mental health problems facing refugees and asylum seekers so acute that more than a third of the study's sample admitted having suicidal thoughts in the preceding two weeks.  My own experience in working closely with asylum seekers mirrors these findings.

Studies also consistently reveal a high prevalence of comorbidity of PTSD and substance use disorders, with individuals with PTSD *up to 14 times more likely* to struggle with a substance use disorder. Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma; some turn to drugs and alcohol in an effort to self-medicate. The proposed new bars to asylum include *any* drug-related conviction (with one exception for a first minor marijuana possessory offense) and any second conviction for driving under the influence. This approach is not only cruel but also ignores the evidence. *Particularly* given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not a closed door and deportation order.

Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply cruel.

## II.     The Proposed Rules violate the letter and spirit of United States international treaty obligations

AR.08396

By acceding to the 1967 Protocol Relating to the Status of Refugees, which binds parties to the United Nations Convention Relating to the Status of Refugees, the United States obligated itself to develop and interpret United States refugee law in a manner that complies with the Protocol's principle of non-refoulement (the commitment not to return refugees to a country where they will face persecution on protected grounds), even where potential refugees have allegedly committed criminal offenses. As noted above, adjudicators already have over-broad authority to deny asylum based on allegations of criminal activity, which vastly exceeds the categories for exclusion and expulsion set out in the Convention. Instead of working towards greater congruence with the terms of the Convention, the Proposed Rules carve out categorical bars from protection that violate both the language and spirit of the treaty.

While the Convention allows states to exclude and/or expel potential refugees from protection, the circumstances in which this can occur are limited. In particular, the Convention allows states to exclude and/or expel individuals from refugee protection if the individual "having been convicted by a final judgement of a particularly serious crime, constitutes a danger to the community of that country." However, this clause is intended for "extreme cases," in which the particularly serious crime at issue is a "capital crime or a very grave punishable act." The United Nations High Commissioner for Refugees (UNHCR) has asserted that to constitute a "particularly serious crime," the crime "must belong to the gravest category" and be limited "to refugees who become an extremely serious threat to the country of asylum due to the severity of crimes perpetrated by them in the country of asylum." Moreover, the UNHCR has specifically noted that the particularly serious crime bar does not encompass less extreme crimes; "[c]rimes such as petty theft or the possession for personal use of illicit narcotic substances would not meet the threshold of seriousness." Finally, when determining whether an individual should be barred from protection for having been convicted of a particularly serious crime, the adjudicator must conduct an individualized analysis and consider any mitigating factors.

As noted above, legislation and agency interpretation of the Immigration and Nationality Act have already expanded the particularly serious crime bar far beyond what was contemplated in the Convention by creating categorical particularly serious crimes through the aggravated felony definition. The Proposed Rules would amplify the dissonance between U.S. refugee law and the Convention, as well as the violation of U.S. obligations under the Convention, by creating categorical bars within categorical bars. For example, at p. 69659, the Proposed Rules first exclude from protection anyone who was convicted of a felony and then at p. 69660, define "felony" as "any crime punishable by more than one of imprisonment" without any reference to other factors, including dangerousness. The Proposed Rules described the increased categorization of the particularly serious crime bar as necessary because the case-by-case adjudication previously used for non-aggravated felony offenses was "inefficient," but an individualized analysis is exactly what the Convention requires to ensure only those individuals who have been convicted of crimes that are truly serious and therefore present a future danger are placed at risk of refoulement.

AR.08397

Additionally, outside of the aggravated felony context, it has generally been well understood by the Board of Immigration Appeals and the Courts of Appeals that low-level, "run-of-the-mill" offenses do not constitute particularly serious crimes. Under this long-standing interpretation of the particularly serious crime bar in the INA, there is simply no scenario in which low-level offenses like misdemeanor driving under the influence where no injury is caused to another or simple possession of a controlled substance or paraphernalia would constitute a particularly serious crime.

The reason for this is common sense. As Judge Reinhardt explained in a concurring opinion in *Delgado v. Holder*, a decision the Proposed Rules cite in support of the expanded bars, run-of-the-mill crimes like driving under the influence have "little in common" with other crimes the Board of Immigration Appeals has deemed particularly serious—e.g., felony menacing with a deadly weapon, armed robbery, and burglary of a dwelling in which the offender is armed or causes injury. Judge Reinhardt further noted that public opinion does not treat them similarly either: "American voters would be unlikely to elect a president or vice president who had committed a particularly serious crime, yet they had no difficulty in recently electing to each office a candidate with a DUI record." Barring individuals from asylum based on these relatively minor offenses renders the "particularly serious" part of the "particularly serious crime" bar meaningless.

The expansion of the asylum bar to include individuals who have been convicted of reentering the United States without inspection pursuant to INA § 276 is also unlike any of the other bars previously established or as interpreted by the Board of Immigration Appeals or Circuit Courts of Appeals. It is an offense with no element of danger or violence to others, and has no victim. Most significantly, and more so than other bars contained in the Proposed Rules, barring asylum based on the manner of entry directly violates the Convention's prohibition on imposing penalties based on a refugee's manner of entry or presence. This prohibition is a critical part of the Convention because it recognizes that refugees often have little control over the place and manner in which they enter the country where they are seeking refuge.

### III. Those precluded from asylum eligibility will be gravely impacted even if granted withholding of removal or protection under the Convention Against Torture

Throughout the Proposed Rules, the agencies defend the harsh and broad nature of their proposal by pointing to the continued availability of alternative forms of relief for those precluded from asylum eligibility under the new rules. The availability of these alternatives forms of relief, however—known as withholding of removal and protection under the Convention Against Torture (CAT)—does not nullify the harm created by the Proposed Rule's new limits on asylum. The protections afforded by CAT and by statutory withholding of removal are limited in scope and duration, and they are harder to obtain. As a result, a Rule that limits *bona fide* refugees to withholding of removal and CAT protection would impose a very real harm on individuals who have come to the United States in search of protection.

AR.08398

First, the most serious harm that can befall an individual as a result of these Proposed Rules is removal to persecution and torture, and the existence of withholding of removal does not account for that risk. CAT and withholding protections demand a higher level of proof than asylum claims: a clear probability of persecution or torture. Thus, an individual could have a valid asylum claim but be unable to meet the standard under the other forms of relief and therefore would be removed to their country of origin, where they would face persecution or even death.

Even for those who meet the higher standard, withholding and CAT recipients are still subject to significant prejudice. For example, they have no ability to travel internationally. The United Nations Convention Relating to the Status of Refugees affords refugees the right to travel in mandatory terms. Article 28 states, "Contracting States shall issue to refugees lawfully staying in their territory travel documents for the purpose of travel outside their territory." Withholding and CAT recipients do not have access to a travel document as contemplated by Article 28. By regulation, refugee travel documents are available only to asylees. And the Board of Immigration Appeals requires that an individual granted withholding and CAT—unlike an individual granted asylum—must simultaneously be ordered removed, making any international travel a "self-deportation." Refugees granted only withholding of removal or CAT protection are thus effectively trapped within the United States in long-term limbo.

Withholding and CAT recipients also face permanent separation from their spouses and children. Because international travel is prohibited, these individuals cannot reconnect with their families in a third country. And they also cannot reunite with family in the United States because only asylees and refugees are eligible to petition for a spouse and children to join them as derivatives on that status. For many, this will mean that the Proposed Rules institute yet another formal policy of family separation. For example, a mother with two young children who flees to the United States and is subject to one of the expanded asylum bars will not be able to ensure that her children will be able to obtain protection in the United States with her if she is granted relief. Rather, if her children are still in her home country, they would need to come to the United States and seek asylum on their own, likely as unaccompanied children. If her children fled to the United States with her, then they will need to establish their own eligibility for protection before an immigration judge, no matter their age.

Recently, this exact scenario played out with a mother who was subject to the so-called Migrant Protection Protocols (also known as Remain in Mexico) and the asylum "transit ban," which made the mother ineligible for asylum and thus required the children to establish their independent eligibility for withholding and CAT protection. An immigration judge granted the mother withholding of removal but denied protection to her young children, leaving the children with removal orders and immense uncertainty about their future. Under the expanded bars in the Proposed Rules, these situations will certainly increase, separating families and forcing parents to return to countries where it has been established they more likely than not will face persecution and torture, rather than leaving their children on their own.

AR.08399

Withholding recipients likewise face hurdles in access to employment. Article 17 of the Refugee Convention states that a contracting state "shall accord to refugees lawfully staying in their territory the most favorable treatment accorded to nationals of a foreign country in the same circumstances, as regards the right to wage-earning employment." Recipients of withholding enjoy no such right. They must apply for work authorization, and they face frequent delays in the adjudication of these applications, which often result in the loss of legal authorization to work.

And perhaps most fundamentally, there is continuing jeopardy for withholding and CAT recipients that does not exist for asylum recipients. When a noncitizen is granted asylum, the person receives a legal status. Asylum, once granted, protects an asylee against removal unless and until that status is revoked. None of these protections exists for withholding and CAT recipients. They have no access to permanent residency or citizenship. Instead, they are subject to a removal order and vulnerable to the permanent prospect of deportation to a third country and subject to potential check ins with immigration officials where they can be made to pursue removal to third countries to which they have no connection.

Finally, I write to highlight a different form of prejudice that will flow from the rule: one relating to judicial efficiency. Neither withholding of removal nor CAT protection allow family members who are in the United States together and pursuing protection on the same basis to apply as derivatives on a principal application. As a result, family claims for those rendered ineligible for asylum by the new rules will have to be adjudicated separately, and potentially before different adjudicators even when the claims are interrelated and even when minor children may not be in a position to explain the claim at all or as sufficiently as a parent. In addition to being unjust to the affected family members, this approach would result in gross inefficiencies, which should be avoided in a system that already contains a significant backlog of pending cases.

## IV. The Proposed Rules will result in "mini-trials" in immigration court, undermine judicial efficiency and result in racially-biased decision-making

In two significant ways, the Proposed Rules require immigration adjudicators to engage in decision-making to determine whether an asylum applicant's conduct— considered independently of any criminal court adjudication—triggers a categorical bar to asylum eligibility. First, the agencies propose that immigration adjudicators be allowed to consider "all reliable evidence" to determine whether there is "reason to believe" an offense was "committed for or related to criminal gang evidence," or "in furtherance of gang-related activity, triggering ineligibility for asylum in either case. Second, the Proposed Rules permit immigration adjudicators to "assess all reliable evidence in order to determine whether [a] conviction amounts to a domestic violence offense;" and to go even further by considering whether non-adjudicated *conduct* "amounts to a covered act of battery or extreme cruelty."

Requiring adjudicators to make complex determinations regarding the nature and scope of a particular conviction or, in the case of the domestic violence bar, *conduct*, will

AR.08400

lead to massive judicial inefficiencies and slanted "mini-trials" within the asylum adjudication process. The scope of the "reliable evidence" available to adjudicators in asylum cases is potentially limitless; advocates on both sides would be obligated to present fulsome arguments to make their cases about gang connections to the underlying activity or the relationship of the asylum applicant to the alleged victim. Because of the lack of robust evidentiary rules in immigration proceedings, it will be difficult if not impossible for many applicants to rebut negative evidence marshaled against them, even if false; and in other cases, asylum applicants will struggle to find evidence connected to events that may have happened years prior (especially for those detained). Asylum trials, which are typically three or fewer hours under current policies, would provide insufficient time to fully present arguments on both sides of these unwieldy issues.

As the immigration courts contend with backlogs that now exceed one million cases, tasking adjudicators with a highly nuanced, resource-intensive assessment of the connection of a conviction to gang activity and/or the domestic nature of alleged criminal conduct—assessments far outside their areas of expertise—will prolong asylum proceedings and invariably lead to erroneous determinations that will give rise to an increase in appeals. The Proposed Rules repeatedly cite increased efficiency as justification for many of the proposed changes. Yet requiring adjudicators to engage in mini-trials to determine the applicability of categorical criminal bars, rather than relying on adjudications obtained through the criminal legal system, will dramatically *decrease* efficiency in the asylum adjudication process.

Indeed, the Supreme Court has "long deemed undesirable" exactly the type of "post hoc investigation into the facts of predicate offenses" proposed by the agencies here. Instead, for more than a century the federal courts have repeatedly embraced the "categorical approach" to determine the immigration consequence(s) of a criminal offense, wherein the immigration adjudicator relies on the statute of conviction as adjudicated by the criminal court system, without relitigating the nature or circumstances of the offense in immigration court. As the Supreme Court has explained, this approach "promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." In *Moncrieffe v. Holder*, the Court forewarned of exactly the sort of harm that would arise from these Proposed Rules; in that case, the Court rejected the government's proposal that immigration adjudicators determine the nature and amount of remuneration involved in a marijuana-related conviction, noting that "our Nation's overburdened immigration courts" would end up weighing evidence "from, for example, the friend of a noncitizen" or the "local police officer who recalls to the contrary," with the end result a disparity of outcomes depending on the whims of the individual immigration judge and a further burdened court system.

Particularly in the context of the new proposed bar related to alleged gang affiliation, I am concerned that creating a blanket exclusion for anyone who is convicted of a crime – including a misdemeanor – that an immigration adjudicator deems linked to gang activity will erroneously prevent bona fide asylum seekers from receiving protection. This rule confers on immigration adjudicators—who generally are not criminologists, sociologists, or criminal law experts—the responsibility to determine if there is "reason to believe" any conviction flows from activity taken in furtherance of

AR.08401

gang activity. This rule will necessarily ensnare asylum seekers of color who have experienced racial profiling and a criminal legal system fraught with structural challenges and incentives to plead guilty to some crimes, particularly misdemeanors. These same individuals are vulnerable to being erroneously entered into gang databases. Such databases are notoriously inaccurate, outdated, and infected by racial bias.

Indeed, asylum applicants are *already* frequently subjected to wrongful denials of protection because of allegations of gang activity made by the Department of Homeland Security on the basis of information found in notoriously unreliable foreign databases and "fusion" intelligence-gathering centers outside the United States. Empowering immigration adjudicators to render asylum applicants *categorically* excluded from protection on the basis of such spurious allegations will inevitably result in the return of many refugees back to harm.

The Departments curiously argue that all gang-related offenses should be construed as "particularly serious crimes." They cite statistics from up to 16 years ago in an attempt to make the point that gang members commit violent crimes and drug crimes. They then make the illogical leap to the conclusion that *all crimes*—including misdemeanor property crimes—that may be construed as connected to gang activity are particularly serious. This simply does not follow; in fact, the Proposed Rules will inevitably result in the exclusion from protection of asylum seekers of color who live in economically distressed communities and have obtained a minor conviction such as a property crime. Relying on the definition of "particularly serious crime" to prevent asylum seekers convicted of even minor crimes construed as gang-related from accessing asylum protection is disingenuous at best, and tinged with racial animus at worst.

The Departments asks for comments on: (1) what should be considered a sufficient link between an asylum seeker's underlying conviction and the gang related activity in order to trigger the application of the proposed bar, and (2) any other regulatory approaches to defining the type of gang-related activities that should render individuals ineligible for asylum. The premise of these questions is wrong: a vague "gang related" bar should not be introduced at all. The Immigration and Nationality Act and existing regulations already provide overly broad bars to asylum where criminal behavior by an asylum seeker causes concern for an adjudicator. Adding this additional, superfluous layer of complication risks erroneously excluding bona fide asylum seekers from protection without adding any useful adjudicatory tool to the process.

## V. The proposed definition of "conviction" and "sentence" for the purposes of the new bars further excludes those in need of protection

The section of the Proposed Rules that outlines a new set of criteria for determining whether a conviction or sentence is valid for the purpose of determining asylum eligibility is an ultra vires exercise of authority that is not authorized by the Immigration and Nationality Act. The Proposed Rules impose an unlawful presumption against asylum eligibility for applicants who seek post-conviction relief while in removal proceedings or longer than one year after their initial convictions. They also deny full

AR.08402

faith and credit to state court proceedings by attributing improper motives to state court actors.

> *The Proposed Rules undermine Sixth Amendment protections and harms immigrants unfamiliar with the complex criminal and immigration framework governing prior convictions.*

The Proposed Rules outline a new multi-factor process asylum adjudicators must use to determine whether a conviction or sentence remains valid for the purpose of determining asylum eligibility; the proposal includes a rebuttable presumption "against the effectiveness" of an order vacating, expunging, or modifying a conviction or sentence if the order was entered into after the asylum seeker was placed in removal proceedings or if the asylum seeker moved for the order more than one year after the date the original conviction or sentence was entered.

This newly created presumption unfairly penalizes asylum applicants, many of whom may not have the opportunity to seek review of their prior criminal proceedings until applying for asylum. In *Padilla v. Kentucky*, the Supreme Court recognized that the immigration consequences of a conviction are sufficiently serious for the Sixth Amendment to require a noncitizen defendant to be competently advised of them before agreeing to a guilty plea. By imposing a presumption against the validity of a withdrawal or vacatur of a plea, the Proposed Rules hold asylum seekers whose rights were violated under *Padilla* to a different standard; even though they too were denied effective assistance of counsel in the course of their underlying criminal proceedings, asylum seekers will be forced to rebut a presumption that their court-ordered withdrawal or vacatur is invalid. The Proposed Rules therefore compound the harm to immigrants who, in addition to facing persecution in their home countries, have been denied constitutionally compliant process in the United States criminal legal system.

Many asylum applicants, especially those in vulnerable populations isolated from resources and unfamiliar with the due process protections available to them in the United States, may not have discovered the defects in their underlying criminal proceedings until their consultation with an immigration attorney, or until they are placed into removal proceedings, which may happen several years after a conviction. Imposing a presumption *against* the validity of a plea withdrawal or vacatur in these cases will undoubtedly lead to the wrongful exclusion of countless immigrants from asylum simply because they were unable to adequately rebut the presumption, particularly in a complex immigration court setting without the benefit of appointed counsel.

> *The Proposed Rules violate the full faith, and credit to which state court decisions are entitled.*

The Proposed Rules further improperly authorize immigration adjudicators to second-guess the decision of a state court, even where the order on its face cites substantive and procedural defects in the underlying proceeding. The proffered justification for this presumption against the validity of post-conviction relief is to "ensure that aliens do not have their convictions vacated or modified for purported

AR.08403

rehabilitative purposes that are, in fact, for immigration purposes," "to codify the principle set forth in *Matter of Thomas and Thompson*," and to bring the analysis of post-conviction orders in line with *Matter of Pickering*. The agencies misread the applicable law, however, by authorizing adjudicators to disregard otherwise valid state orders. The immigration law only requires that to be effective for immigration purposes, orders vacating or modifying convictions must be based on substantive or procedural infirmities in the underlying proceedings. The Proposed Rule goes well beyond that requirement.

The Proposed Rules abandon the presumption of regularity that should accompany state court orders, thus upending settled principles of law. The Proposed Rules cite a misleading quote from *Matter of F-* in support of allowing asylum adjudicators to look beyond the face of a state court order; had the Rules' authors looked to the full case, they would have read the following: "Not only the full faith and credit clause of the Federal Constitution, but familiar principles of law require the acceptance at face value of a judgment regularly granted by a competent court, unless a fatal defect is evident upon the judgment's face. However, the presumption of regularity and of jurisdiction may be overcome by extrinsic evidence or by the record itself." In *Matter of F-*, the Board of Immigration Appeals offers support for the proposition that an adjudicator should presume the validity of a state court order unless there is a reason to doubt it, contrary to the *presumption of irregularity* put forward in the Proposed Rules.

The authority extended to adjudicators by the Proposed Rules also violates the law of multiple circuits, including *Pickering*, on which it relies. In *Pickering v. Gonzales*, the Sixth Circuit Court of Appeals held that despite the petitioner's stated motive of avoiding negative immigration consequences, the Board of Immigration Appeals was limited to reviewing the authority of the court issuing the order as to the basis for his vacatur. Similarly, in *Reyes-Torres* the Ninth Circuit Court of Appeals held that the motive of the respondent was not the relevant inquiry. Rather, "the inquiry must focus on the state court's rationale for vacating the conviction." In addition, the Third Circuit Court of Appeals in *Rodriguez v. U.S. Att'y Gen.*, which the Proposed Rules cite as "existing precedent," held that the adjudicator must look only to the "reasons explicitly stated in the record and may not impute an unexpressed motive for vacating a conviction." Moreover, the *Rodriguez* court stated that to determine the purpose of a vacatur, the adjudicator must first look to the face of the order vacating the conviction, and "if the order explains the courts reasons … the [adjudicator's] inquiry must end there." The Proposed Rules contain no such limiting language to guide the adjudicator's inquiry. Instead, the Rules grant adjudicators vague and indefinite authority to look beyond even a facially valid vacatur. Such breadth of authority undermines asylum seekers' rights to a full and fair proceeding.

> *The Proposed Rules wrongly extend* Matter of Thomas and Thompson *to all forms of post-conviction relief and impose an ultra vires and unnecessary burden on asylum seekers.*

Finally, the above-described presumption is ultra vires and unnecessary. As an initial matter, the Proposed Rules' reliance on *Matter of Thomas and Thompson* is flawed. The Attorney General's decision in *Matter of Thomas and Thompson* has no

AR.08404

justification in the text or history of the immigration statute. Nowhere does the plain text of the Immigration and Nationality Act support giving adjudicators the authority to give effect only to state court sentence modifications undertaken to rectify substantive or procedural defects in the underlying criminal proceedings. Nor does the legislative history support such a rule. The Board of Immigration Appeals recognized this in *Matter of Cota-Vargas*, where it concluded that the application of "the *Pickering* rationale to sentence modifications has no discernible basis in the language of the Act." Based on the text of the Immigration and Nationality Act and the well-documented legislative history behind Congress's definition of "conviction" and "sentence" in 8 U.S.C. § 1101(a)(48), the Board determined that Congress intended to ensure that, generally, proper admissions or findings of guilt were treated as convictions for immigration purposes, even if the conviction itself was later vacated. Neither the text of the INA nor the legislative history of the definitions reveal any attempt on Congress's part to change the longstanding practice of giving effect to state court sentencing modifications. For these reasons, *Matter of Thomas and Thompson* lacks Congressional support for its rule and should not be extended.

Moreover, as applicants for immigration benefits or relief from removal, asylum seekers already bear the burden of demonstrating their eligibility for asylum. The Proposed Rules do not alter or shift this burden, nor do they provide evidence supporting the need for this presumption. By introducing a presumption of bad faith into asylum adjudication, the Proposed Rules unfairly interfere with asylum seekers' efforts to establish their claims. Immigration law, and asylum law in particular, is already highly complex, and the process of seeking asylum is in many instances re-traumatizing, particularly for applicants who do not have counsel to represent them and who lacked effective counsel in their underlying criminal proceedings. The Proposed Rules as applied to asylum applicants who seek post-conviction relief transform an already difficult process into an adversarial inquiry, contrary to the intent of Congress.

## VI. The Proposed Rules will disparately impact vulnerable populations already routinely criminalized, including LGBTQ immigrants, survivors of trafficking and domestic violence, and immigrant youth of color

The expanded criminal bars exclude from safety and a pathway to citizenship those convicted of offenses that are coincident to their flight from persecution, and do not accomplish the stated goal of making communities safer. They will disparately impact vulnerable populations, who comprise asylum seekers hailing primarily from Central America and the Global South, and those routinely criminalized because of their identities, racially disparate policing practices, or in connection with experiences of trafficking and domestic violence. For these populations especially, the discretion currently delegated to asylum adjudicators is crucial for them to become fully integrated in the larger community. The imposition of additional categorical bars to asylum will only further marginalize asylum seekers already struggling with trauma and discrimination.

The Proposed Rules turn asylum into a blunt instrument that would prevent the use of discretion where it is most needed and most effective. The existing framework for

AR.08405

determining if an offense falls within the particularly serious crime bar already provides the latitude for asylum adjudicators to deny relief to anyone found to pose a danger to the community. Furthermore, asylees with convictions that render them inadmissible must apply for a waiver at the time of their applications for permanent residence. These measures ensure that asylum applicants in vulnerable populations have access to supportive resources and have the opportunity to demonstrate their ongoing commitment to social and personal health. Moreover, the existence of provisions allowing the revocation of asylum status ensures that adjudicators may continue to enforce concerns related to the safety of the community even after asylum is granted.

> *Barring asylum for immigrants convicted of migration-related offenses punishes them for fleeing persecution and/or seeking safety for their children, and does not make communities safer.*

The expansion of the criminal bars to asylum to include offenses related to harboring, smuggling of noncitizens by parents and family members and those previously removed further criminalizes vulnerable populations fleeing persecution. The vast expansion of migrant prosecutions at the border during the current administration has created administrative chaos and separated families that do not pose a threat to the safety of communities in the United States. The Proposed Rules threaten to magnify the harm caused by these reckless policies by further compromising the ability of those seeking safety on the southern border to access the asylum system.

The Proposed Rules expand the asylum bar to parents or other caregivers who are convicted of smuggling or harboring offenses after taking steps to help minor children enter the United States in order to flee persecution. This proposed bar is particularly insidious in light of now-public documents revealing this administration's explicit efforts to utilize smuggling prosecutions against parents and caregivers as part of its strategy of deterring families from seeking asylum in the United States. The Proposed Rules seek to take this widely condemned strategy one step further, by additionally barring those parents *already prosecuted* from obtaining asylum protections for themselves and their children. The Proposed Rules multiply the harms parents and caregivers have experienced in their treacherous journeys to safety and callously penalize parents for doing what is only human—taking all necessary steps to protect their children.

The Proposed Rules also expand the asylum bar to those who have fled persecution multiple times and therefore been convicted of illegal reentry. Their inclusion is premised on conclusory statements regarding the dangerousness of recidivist offenders, without consideration of the seriousness of prior convictions. Rather, the Proposed Rules treat all immigration violations as similar in seriousness to those previously warranting inclusion in the particularly serious crime bar, without any independent evidence to justify the expansion. Such an approach renders meaningless the limiting language of "particularly serious" in the statute.

The Proposed Rules also conflate multiple entries by noncitizens having prior removal orders with those who have entered multiple times without ever having their asylum claims heard. Many immigrants who have previously attempted entry to the

AR.08406

United States to flee persecution could not have been aware of the complex statutory regime that governs asylum claims and would not have knowingly abandoned their right to apply for asylum. Some asylum seekers have also been wrongly assessed in prior credible fear interviews. And others yet may have previously entered or attempted to enter the United States before the onset of circumstances giving rise to their fear. Preserving discretion to grant asylum in these circumstances allows meritorious asylum seekers to be heard and corrects errors that might have previously occurred.

> *Extending the criminal bars to immigrants convicted of misdemeanor document fraud unfairly punishes low-wage immigrant workers and does not make communities safer.*

The Proposed Rules expand the asylum bar to include any asylum seeker who has been convicted of a misdemeanor offense for use of a fraudulent document. In so doing, the Rule entirely ignores the migration-related circumstances that often give rise to convictions involving document fraud. Migrants fleeing persecution often leave their home countries with nothing but the clothes on their backs and must rely on informal networks to navigate their new circumstances. Extension of a blanket bar to asylum seekers who are compelled to resort to fraudulent means to enter the United States, or to remain safely during their applications for asylum, upends decades of settled law directing that violations of law arising from an asylum applicant's manner of flight should constitute only one of many factors to be consulted in the exercise of discretion.

Moreover, migrants in vulnerable communities who are struggling to survive during the pendency of their asylum proceedings are often exploited by unscrupulous intermediaries who offer assurances and documentation that turn out to be fraudulent. Many noncitizens working in the low-wage economy face egregious workplace dangers and discrimination and suffer retaliation for asserting their rights. The continued availability of asylum to low-wage immigrant workers can encourage them to step out of the shadows. The expansion of criminal asylum bars to sweep in all document fraud offenses, on the other hand, would unfairly prejudice immigrants with meritorious asylum claims and force them deeper into the dangerous informal economy.

> *The Proposed Rules will harm communities with overlapping vulnerabilities, including LGBTQ asylum seekers, survivors of trafficking, and survivors of domestic violence.*

The Proposed Rules exclude from asylum protections countless members of vulnerable communities who have experienced trauma, abuse, coercion, and trafficking. Many of these individuals may only become aware of their ability to apply for asylum after law enforcement encounters that lead them to service providers who can educate them about their immigration options. Despite the unique difficulties they face, the Proposed Rules would compound their harm and prevent them from achieving family unification and a pathway to citizenship.

The Proposed Rules pose a unique threat to LGBTQ immigrant community members. LGBTQ immigrants in particular may have already experienced a high degree

AR.08407

of violence and disenfranchisement from economic and political life in their home countries. Hate violence towards undocumented LGBTQ immigrants in the United States is already disproportionately higher than for other members of the LGBTQ population. Members of these communities also experience isolation from their kinship and national networks following their migration. This isolation, compounded by the continuing discrimination towards the LGBTQ population at large, leave many in the LGBTQ immigrant community vulnerable to trafficking, domestic violence, and substance abuse, in addition to discriminatory policing practices. The expansion of criminal enforcement and prosecution of undocumented people also harms the LGBTQ immigrant community. The Proposed Rules will therefore have a disparate impact on LGBTQ individuals whose involvement in the criminal legal system is often connected to past trauma and/or the result of biased policing. I have represented dozens of LGBTQ asylum applicants, nearly all of whom have been granted asylum because of the horrific abuse awaiting them in their home countries.

The expansion of asylum bars to include various misdemeanor offenses that were not previously considered particularly serious also unfairly sweeps trafficking survivors into its dragnet. It is becoming more widely recognized across state court systems that trafficking survivors frequently come into contact with intervention resources and service providers only after contact with law enforcement occurs. Innovative criminal justice reform efforts currently being adopted across the country include special trafficking courts that recognize the need for discretion in the determination of criminal culpability. The same approach should be employed in the determination of asylum eligibility, where the applicant's life and safety are on the line.

The Proposed Rules instead preclude asylum adjudicators from conducting a trauma-centered approach, categorically barring countless trafficking survivors convicted of misdemeanor and felony offenses without any opportunity to present the specific circumstances of their claim.

Survivors of domestic violence include trafficking survivors and LGBTQ community members, such that inclusion of offenses related to domestic violence in the expanded asylum bars affects populations with overlapping vulnerabilities. The Proposed Rules too broadly categorize domestic violence offenses as particularly serious and sweep both offenders and survivors into their dragnet. The immigration laws extend protections to domestic violence survivors outside of the asylum context, recognizing the complex dynamics surrounding intimate partner violence. Provisions in the Violence Against Women Act allow adjudicators evaluating claims for relief arising thereunder to exercise discretion based on a number of factors and circumstances. The blunt approach adopted by the Proposed Rules is inconsistent with the approach taken towards survivors elsewhere in the federal immigration statute and does not rely on any evidence-based justification for treating asylum seekers differently.

Moreover, the domestic violence sections of the Proposed Rules include the only categorical bar to asylum for which a conviction is not required. Domestic violence incidents all too often involve the arrest of both the primary perpetrator of abuse and the survivor. These "cross-arrests" do not always yield clear determinations of victim and

AR.08408

perpetrator. Authorizing asylum adjudicators to determine the primary perpetrator of domestic assault, in the absence of a judicial determination, unfairly prejudices survivors who are wrongly arrested in the course of police intervention to domestic disturbances.

Finally, the exemption for asylum applicants who can demonstrate their eligibility for a waiver under section 237(a)(7)(A) of the Immigration and Nationality Act does not cure the harm to asylum seekers caused by imposition of a categorical domestic violence related bar. Rather, it converts a non-adversarial asylum proceeding into a multi-factor, highly specific inquiry into culpability based on circumstances that may be very difficult for an asylum seeker to prove—especially if proceeding without counsel and with limited English proficiency.

> *Barring asylum for immigrants convicted of "gang-related crimes" based on unreliable evidence and racially disparate policing practices is harmful to youth of color and does not make communities safer.*

In recent years, the expansion of gang databases for use in the apprehension and removal of foreign nationals—including children—has generated tremendous concern among advocates and the communities they serve. The use of gang databases by local law enforcement and Immigration and Customs Enforcement has been widely criticized as an overbroad, unreliable and often biased measure of gang membership and involvement. The Proposed Rules expand the criminal bars to asylum to those accused of gang involvement in the commission of minor criminal offenses, embracing an open-ended adjudicative process that will inevitably result in asylum adjudicators relying unfairly on these discredited methods of gang identification. This outcome would compound the disparate racial impact of inclusion in gang databases and bar asylum seekers who are themselves fleeing violence from gangs in their home countries.

Past legislative efforts to expand the grounds of removal and inadmissibility in the Immigration and Nationality Act to include gang membership have failed to pass both houses of Congress. In addition, immigration adjudicators already routinely premise discretionary denials of relief or release on bond on purported gang membership, and scores of alleged gang members have already been deported on grounds related to immigration violations or criminal convictions for which no relief is available. Creating a "gang-related crime" bar will only exacerbate the due process violations already occurring as the result of unsubstantiated information about supposed gang ties.

In addition, by focusing on "reason to believe" as the basis for the bar, rather than the seriousness of the crime, the proposed provision is ultra vires and unconscionably limits the eligibility for asylum of those most in need of protection. The effect of the Proposed Rules would be to expand the number and type of convictions for which an analysis of eligibility is required, sweeping in even petty offenses that would otherwise not trigger immigration consequences. Thus, an asylum applicant convicted of simple assault without use of a weapon, a non-violent property crime, or even possession of under 30 grams of marijuana for personal use (otherwise exempted from the reach of the Proposed Rule), could trigger a bar to asylum if the adjudicator concludes she has "reason to believe" the offense was committed in furtherance of gang activity. In making

AR.08409

these determinations, asylum adjudicators would be unable to rely on uncorroborated allegations contained in arrest reports, but could nevertheless shield their decisions by relying on discretion.

The Proposed Rules thus invite extended inquiry into the character of young men of color who otherwise have meritorious asylum claims, based on information gained through racially disparate policing practices. These rules multiply the harm to asylum seekers of color subject to racially disparate policing that results in racially disparate rates of guilty pleas to minor offenses. This same population is overrepresented in gang databases, which are notoriously inaccurate, outdated, and infected by racial bias.

**VII.    The Proposed Rules are ultra vires to the federal immigration statute to the extent they purport to bar eligibility through a categorical exercise of discretion**

When Congress speaks clearly through a statute, the plain meaning of that statute governs. Congress by statute permits the Attorney General to designate certain categories of offenses as "particularly serious crimes." As such, Congress *explicitly* permitted the Attorney General to designate a non-aggravated felony to be a particularly serious crime and thus to disqualify a person from asylum. In the context of asylum, all aggravated felonies are *per se* particularly serious crimes and the Attorney General "may designate by regulation [other] offenses that will be considered to be" a particularly serious crime for purposes of asylum.

Here, however—seemingly in an attempt to insulate the Proposed Rules from review, the agencies attempt to designate new bars to asylum both by designating them as "particularly serious crimes" pursuant to 8 U.S.C. § 1158(b)(2)(B)(ii) and rendering them categorically exempt from a positive discretionary adjudication of asylum pursuant to 8 U.S.C. § 1158(b)(2)(C). This effort is unlawful. Section 1158(b)(2)(B)(ii) does permit the Attorney General to, if he wishes, attempt to designate some classes of offenses as particularly serious crimes; such designations are reviewable for legal error (and as explained above, the commenters believe these expansions are unlawful). However, if the offense is not a particularly serious crime, then a discretionary decision must be rendered on the application. It is true that the Attorney General may also provide for "additional limitations and conditions" on asylum applications so long as they are "consistent" with the with the asylum statute. In this case, however, the Proposed Rules add sweeping categories of offenses that automatically remove an applicant from the consideration of discretion—a regulatory proposal that is ultra vires to the plain text of the statute.

To the extent that the proposed rules would adopt a bar to asylum based on a categorical discretionary bar, rather than a particularly serious crime designation, they are similar to the rules struck down by numerous Circuit Courts of Appeal in the context of adjustment of status for those considered by law to be "arriving aliens." Purporting to exercise discretion categorically, then-Attorney General Reno putatively rendered that class of noncitizens ineligible for adjustment of status, a determination that is ordinarily discretionary, even though the statute seemed to allow eligibility. Multiple Circuit Courts of Appeal struck down the proposed regulations, finding them to reflect an impermissible

AR.08410

reading of the statute in light of the fact that Congress carefully defined in the statute the categories of people eligible to apply for adjustment of status.

The same logic applies here. In the asylum statute, Congress explicitly made the commission of a particularly serious crime a bar to asylum. The canon of interpretation known as *expressio unius est exclusio alterius* instructs that,"expressing one item of [an] associated group or series excludes another left unmentioned." The Proposed Rules attempt to create numerous categories of discretionary "pseudo-particularly serious crimes," barring asylum through a categorical exercise of discretion even if those offenses are ultimately found not to be particularly serious crimes. Such an effort violates this canon of interpretation, and places the Proposes Rules ultra vires to the statute.

## VIII.   Conclusion

In my many years of working with asylum-seekers and dealing with the Immigration Courts, USCIS, CBP, the BIA, and the Circuit Courts, I have seen our system deteriorate.  The backlogs are out of control at every level.  The law has become increasingly complicated and difficult for laypeople to navigate.  The practical effects of the newly proposed rules would wreak further havoc on our legal system, the lives of asylum-seekers and their families, and on the credibility of our nation in the eyes of the world.

Sincerely,

Aubra Fletcher

AR.08411

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 07, 2020
**Status:** Posted
**Posted:** January 08, 2020
**Tracking No.** 1k4-9eb9-db3w
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0029
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Eleanor Hoague
**Address:**
  3753 NE 188th St
  Seattle, WA, 98155
**Email:** echoague@gmail.com
**Phone:** 2063652225

---

## General Comment

I am a retired immigration attorney with substantial experience in asylum applications. I am simply appalled by the proposed changes which in effect expand the reasons by which asylum may be denied. The idea that the crime of driving while under the influence is a serious crime, constituting a danger to the United States is beyond belief. At over 1,000,000 arrests per year, it is one of the most common reasons for arrest in the United States. In most states, it is judged to be a mere misdemeanor, barring extenuating circumstances. Using a misdemeanor as a basis for denying asylum is a major redrafting of the law of asylum as it was passed by Congress.

Further, the idea that a person who has been accused BUT NOT CONVICTED of an domestic violence offense, is deeply troubling and antithetical to the constitutional guarantee against double jeopardy. Although an asylum case is not a criminal case, it takes on every quality of a criminal case when an immigrant must defend against such an accusation not only in criminal court, but also in immigration court in order to be afforded the right to asylum. This does not pass the the sniff test.

It is extremely difficult to be granted asylum in the United States. Asylum laws were passed in order to provide a form of relief for those people fleeing persecution. It would be a travesty and overzealous application of asylum limitations if a DUI conviction or a mere accusation of domestic violence would preclude such relief.

DO NOT PASS THESE ANY OF THESE LIMITATIONS PROPOSED BARS TO ASYLUM ELIGIBILITY.

AR.08412

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 07, 2020
**Status:** Posted
**Posted:** January 08, 2020
**Tracking No.** 1k4-9eb8-k7s7
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0030
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Juan Mendez

---

## General Comment

This proposed rules are a terrible idea that will harm asylum seekers. They seek to create a system of suspicion towards them and are especially harsh when viewed through a trauma-informed lens. Asylum seekers are an inherently vulnerable population because of the trauma they have experienced in their countries of origin and, often, along the journey to find safety. Existing literature suggests that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD). One recent study found the mental health problems facing refugees and asylum seekers so acute that more than a third of the study's sample admitted having suicidal thoughts in the preceding two weeks.

Studies also consistently reveal a high prevalence of comorbidity of PTSD and substance use disorders, with individuals with PTSD up to 14 times more likely to struggle with a substance use disorder. Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma; some turn to drugs and alcohol in an effort to self-medicate. The proposed new bars to asylum include any drug-related conviction (with one exception for a first minor marijuana possessory offense) and any second conviction for driving under the influence. This approach is not only cruel but also ignores the evidence. Particularly given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not a closed door and deportation order.

Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion. Denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply cruel. It rids them of the chance to actually tell their story.

AR.08413

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 07, 2020 |
| **Status:** Posted |
| **Posted:** January 08, 2020 |
| **Tracking No.** 1k4-9eb6-r4d4 |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0031
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Sebastian Zavala

---

## General Comment

I oppose the new rules for the following reasons

-they do not comply with UN rules on the treatment of refugees and asylees
-they violate the human rights of asylees
-they are arbitrary and capricious and do not have a sufficient nexus to a government interest
-they violate the due process clause and equal protection clauses of the Constitution
-they are purposely aimed at harming vulnerable populations who are fleeing persecution in their home countries


I would be personally harmed by the law going into effect because I would be unable to effectively provide aid to asylums and refugees through my programs at the Immigration Advocates Network and immi.org.

Therefore I request that this rule not go into effect, now or ever.

AR.08414

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 07, 2020
**Status:** Posted
**Posted:** January 08, 2020
**Tracking No.** 1k4-9eb5-s7qn
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0032
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Mary Durbin
**Address:**
   7425 La Vista Drive
   Apt. 611
   Dallas, Texas, 75214
**Email:** mdurbin12@yahoo.com
**Phone:** 2149062822

---

## General Comment

As an attorney who practiced asylum law exclusively for over four years, I strongly oppose this proposed regulation.

On the surface, alien smuggling or harboring may appear to be an appropriate bar to asylum. However, the statutory language is extremely broad:

"Harboring" under 8 U.S.C. 1324(a)(1)(A)(iii) entails the following three elements:
(1) the noncitizen came, entered or remained in the United States in
violation of the law,
(2) the defendant knew or recklessly disregarded that the noncitizen
entered or remained in the United States in violation of the law,
(3) the defendant concealed, harbored or shielded from detection the
noncitizen in any place, including any building or any means of
transportation.

Under this statute, one could be convicted of "harboring" for allowing any undocumented person to reside with him/her or even giving an undocumented person a ride. This may include, for example, a live-in employee who provides babysitting or elder care, a friend, or even an immediate family member. I am aware of at least one case in which a woman was prosecuted under the statute for allowing her undocumented boyfriend to live with her. It would be unjust to prevent a sincere asylum seeker from obtaining asylum simply because s/he was trying to provide lodging to a similarly situated "alien."

AR.08415

I object to the bar for illegal reentry as overbroad. Many asylum seekers I have represented have re-entered the U.S. because of a new threat that arose in their home country subsequent to their departure from the U.S.

I further object to the bar for any crime "involving street gang activity." This could include nonviolent activity as minor as spraying graffiti on a building. Further, I have personally represented sincerely reformed gang members who have learned from their pasts and devoted their lives to preventing youth from becoming involved with gangs. Surely, this is the type of person we should want in our country--especially if they are seeking asylum and would not be safe in their home country due to their prior gang affiliation or other reasons.

In addition, I find it disturbing that the proposed regulation would bar folks who merely have been arrested, but not convicted, of domestic violence offenses. Immigration officers should not attempt to substitute their own judgment for the judgment of the trier of fact in the criminal case.

For these and other reasons, I strongly urge the rejection of these proposed regulations.

AR.08416

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 08, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9ebr-yijp
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0033
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

As the Director of a Refugee Women's Health Clinic in a large urban setting I am writing to voice my opposition to the proposed changes to baring asylum eligibility. Low level offenses are not dangerous, nor should they exclude anyone from being allowed to seek refuge within our country. As someone who personally was convicted of a low level offense as a teenager I can't imagine being barred from being allowed to live in a safe, prosperous country like the US due to a silly mistake I made many years ago. There is no basis for this change, and no data to support the value of the change, so I strongly oppose it.

AR.08417

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 08, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9ebs-q1za
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0034
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Whitney Leeds
**Address:**
   1601Vine St.
   Denver,  CO,  80206

## General Comment

To Whom it May Concern:

I am writing in response to the above-referenced Proposed Rules to express my strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

For the reasons detailed in the comments that follow, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. You will find them attached.

Sincerely,
Whitney Leeds
Denver-based attorney, Colorado bar #47688

## Attachments

Comment to Proposed Rule, Jan 2020, 457452

AR.08418

*Submitted via [https://www.regulations.gov/document?D=EOIR-2019-0005-0001]*

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

January 8, 2020

---

**DETAILED COMMENTS in opposition to the Proposed Rules re Procedures for Asylum and Bars to Asylum Eligibility, 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41**

**TABLE OF CONTENTS [with jump-links]**

I.    Introduction
II.   The Proposed Rules unnecessarily and cruelly exclude bona fide refugees from asylum eligibility
III.  The Proposed Rules violate the letter and spirit of United States international treaty obligations
IV.   Those precluded from asylum eligibility will be gravely impacted even if granted withholding or protection under the Convention Against Torture
V.    The Proposed Rules will result in "mini-trials" in immigration court, undermine judicial efficiency and result in racially-biased decision-making
VI.   The proposed definition of "conviction" and "sentence" for the purposes of the new bars further excludes those in need of protection
VII.  The Proposed Rules will disparately impact vulnerable populations already routinely criminalized, including LGBTQ immigrants, survivors of trafficking and domestic violence, and immigrant youth of color
VIII. The Proposed Rules are ultra vires to the federal immigration statute to the extent they purport to bar eligibility through a categorical exercise of discretion

AR.08419

## I. Introduction

On December 19th, the Department of Homeland Security (DHS) and the Department of Justice (DOJ) issued a joint set of Proposed Rules that would make three primary changes to the rules governing asylum adjudications.

The first proposed set of changes adds the following seven *categorical* bars to asylum eligibility: (1) any conviction of a felony offense; (2) any conviction for "smuggling or harboring" under 8 U.S.C. § 1324(a), even if the asylum seeker committed the offense for the purpose of bringing her own spouse, child or parent to safety; (3) any conviction for illegal reentry under 8 U.S.C. § 1326; (4) any conviction for an offense "involving criminal street gangs," with the adjudicator empowered to look to any evidence to determine applicability; (5) any second conviction for an offense involving driving while intoxicated or impaired; (6) any conviction *or accusation of conduct* for acts of battery involving a domestic relationship; (7) and any conviction for several newly defined categories of misdemeanor offenses, including *any* drug-related offense except for a first-time marijuana possession offense, any offense involving a fraudulent document, and fraud in public benefits.

The second section of the Proposed Rules provides a multi-factor test for immigration adjudicators to determine whether a criminal conviction or sentence is valid for the purpose of determining asylum eligibility. The third section rescinds a provision in the current rules regarding the reconsideration of discretionary asylum.

Taken together, these proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. I submit submits these comments to express opposition to the entirety of the Proposed Rules and grave concerns with the administration's continued efforts to exclude refugees from obtaining the security and stability the United States asylum system has long promised. We urge that the Proposed Rules be rescinded in their entirety.

## II. The Proposed Rules unnecessarily and cruelly exclude bona fide refugees from asylum eligibility

*The barriers to asylum for those previously involved in the criminal legal system are already sweeping in scope; adding more barriers is cruel and unnecessary.*

The United States asylum system was first codified in statute through the Refugee Act of 1980, described by one prominent scholar as a bipartisan attempt to "reconcile our rhetoric with our law, our national immigration policy and our international treaty obligations so that we could

maintain a consistent posture towards the world as a nation with a strong humanitarian tradition and a unique historic role as a haven for persons fleeing oppression."[1] The Act—among other measures designed to bring the United States domestic legal code into compliance with the provisions of the United Nations Protocol Relating to the Status of Refugees—created a "broad class" of refugees eligible for a discretionary grant of asylum.[2]

The asylum protections provided by United States law are sacred. Asylum provides those fleeing horrors with physical safety, a path to citizenship and security, and the opportunity to reunite with immediate family members who may still remain abroad in danger.[3] Many see the domestic asylum system as a symbol of the United States' commitment never to repeat its failure to save thousands of Jewish refugees refused entry to the United States on the *St. Louis* and others fleeing the Holocaust.[4] Others point to the critical role that domestic asylum policy plays in serving the United States' foreign policy interests abroad.[5] For those individuals seeking asylum in the United States, the stakes could not be higher—a claim denied often means return to death or brutal persecution.[6]

The laws, regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the evidentiary burden of establishing their eligibility for asylum[7] in the face of a complex web of laws and regulations, without the benefit of appointed counsel and often from a remote immigration jail.[8] The obstacles to winning asylum are exceedingly high; indeed in some parts of the country and before certain immigration judges, almost no one succeeds.[9] Today, newly imposed barriers to accessing asylum in the United

---

[1] Deborah Anker, "The Refugee Act of 1980: An Historical Perspective," *In Defense of the Alien* 5 (1982): 89-94, https://www.jstor.org/stable/23141008?read-now=1&refreqid=excelsior%3A1060953608aa0bdd30d5d506e1ff6318&seq=1#page_scan_tab_contents.

[2] *See I.N.S. v. Cardoza-Fonseca*, 40 U.S. 421, 423 (1987).

[3] The permanency and family reunification benefits that accompany asylum are not provided to those granted withholding of removal or protection under the Convention Against Torture, the alternative forms of relief described throughout the Proposed Rules as a justification for the breadth of the new proposed bars. For more details on the differences between the forms of protection, *see* section VI *infra*.

[4] Dara Lind, "How America's rejections of Jews fleeing Nazi Germany haunts our refugee policy today," *Vox*, January 27, 2017, https://www.vox.com/policy-and-politics/2017/1/27/14412082/refugees-history-holocaust.

[5] Council on Foreign Relations, *Independent Task Force Report No. 63: U.S. Immigration Policy* (2009), 117 (additional or dissenting view by Elisa Massimino) ("For better or worse, the United States sets the standard for reasonable and humane treatment of migrants around the world. If the United States endorses harsh treatment of immigrants, it erodes the norms designed to protect them, and other countries will have license to do the same.").

[6] *See, e.g.*, Sarah Stillman, "When deportation is a death sentence," *The New Yorker*, January 8, 2018, https://www.newyorker.com/magazine/2018/01/15/when-deportation-is-a-death-sentence.

[7] 8 USC § 1158(b)(1)(B); 8 CFR § 1240.8(d).

[8] *See* Daniel Connolly, Aaron Montes, and Lauren Villagran, "Asylum seekers in U.S. face years of waiting, little chance of winning their cases," *USA Today,* September 25, 2019, https://www.usatoday.com/in-depth/news/nation/2019/09/23/immigration-court-asylum-seekers-what-to-expect/2026541001/.

[9] Manuel Roig-Franzia, "Immigrants risk it all seeking asylum. The answer is almost always 'no,'" *Washington Post,* July 24, 2019, https://www.washingtonpost.com/lifestyle/style/migrants-risk-it-all-seeking-asylum-the-answer-in-court-is-almost-always-no/2019/07/23/9c161b2e-a3f7-11e9-b732-41a79c2551bf_story.html.

3

AR.08421

States are breathtaking in scope, with those seeking safety at the southern border subject to return to dangerous conditions in Mexico and an overlapping web of policies that preclude asylum eligibility for countless migrants simply because of their national origin, manner of entry, or their flight path.[10] There are consistent reports of the documented deaths and brutalities endured by those who sought but were denied asylum protections in the United States.[11]

Specifically, the bars to asylum based on allegations of criminal conduct are *already* sweeping and over-broad in nature and scope.[12] Any conviction for an offense determined to be an "aggravated felony" is considered a *per se* "particularly serious crime" and therefore a mandatory bar to asylum.[13] "Aggravated felony" is a notoriously vague term, which exists only in immigration law. Originally limited to murder, weapons trafficking and drug trafficking,[14] it has metastasized to encompass hundreds of offenses, many of them neither a felony nor aggravated, including petty offenses such as misdemeanor shoplifting, simple misdemeanor battery, or sale of counterfeit DVDs.[15] The existing crime bars should be narrowed, not expanded. Even for those not categorically barred from relief, the immigration adjudicator maintains full discretion to deny asylum.[16]

Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct.[17] Further categorical bars are not needed. The agencies' efforts to add *seven* new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel. The Proposed Rules drain the phrase "*particularly serious* crime," 8 U.S.C. § 1158, of any sensible meaning.

---

[10] The National Immigrant Justice Center maintains a frequently updated timeline providing details of each of the asylum bans and other policies issued and implemented by the administration undermining asylum access at https://www.immigrantjustice.org/issues/asylum-seekers-refugees. For more information on the harms and rights abuses inherent in the Migrant Protection Protocols, or "Return-to-Mexico" program, *see* Human Rights First, *Delivered to Danger* (December 2019), https://www.humanrightsfirst.org/campaign/remain-mexico.

[11] *See, e.g.,* Stillman, "Death Sentence," *supra* (reporting on a database of more than sixty cases of individuals killed after deportation); *see also* Maria Sachetti, "'Death is waiting for him,'" *The Washington Post*, December 6, 2018, https://www.washingtonpost.com/graphics/2018/local/asylum-deported-ms-13-honduras/ (telling the story of Santos Chirino, denied asylum by a Virginia immigration judge, deported, and then murdered by those he told the immigration judge he feared); and Kevin Sieff, "When death awaits deported asylum seekers," *Washington Post*, December 26, 2018, https://www.washingtonpost.com/graphics/2018/world/when-death-awaits-deported-asylum-seekers/.

[12] The existing categorical bars to asylum eligibility are discussed in detail on p. 69641 of the Proposed Rules.

[13] 8 U.S.C. §§ 1158(b)(2)(A)(ii) and (B)(i).

[14] Pub. L. No. 100-690, § 7342, 102 Stat. 4181, 4469-70.

[15] 8 U.S.C. § 1101(a)(43). *See also* Nancy Morawetz, "Understanding the Impact of the 1996 Deportation Laws and the Limited Scope of Proposed Reforms," *Harvard Law Review* 113 (2000): 1939-40 (criticizing the "'Alice-in-Wonderland-like definition of the term 'aggravated felony'"); Melissa Cook, "Banished for Minor Crimes: The Aggravated Felony Provisions of the Immigration and Nationality Act as a Human Rights Violation," *Boston College Third World Law Journal* (2003): 293.

[16] *See Matter of Pula*, 19 I.&N. Dec. 467 (BIA 1987).

[17] *See id.*

AR.08422

The Proposed Rules are also arbitrary and capricious. They would constitute a marked departure from past practice. And the agencies have proffered no evidence or data to support these changes.

One assumption fundamentally underlying the Proposed Rules, for example, is that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. But no evidence is provided to support that assumption, and a criminal record, does not, in fact, reliably predict future dangerousness.[18] The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence. Conviction for a crime does not, without more, make one a present or future danger—which is why the Refugee Convention's particularly serious crime bar, made part of United States law through 8 U.S.C. § 1158, should only properly apply if both (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows that she is a present or future danger.[19]

Similarly, the Proposed Rules fail to address or account for the fact that a significant number of people may agree to plead to a crime as to avoid the threat of a severe sentence; not only is a conviction an unreliable predictor of future danger, it can also be an unreliable indicator of past criminal conduct.[20] In addition, the Proposed Rules do not address and make no exception for convictions for conduct influenced by mental illness or duress.

The Board of Immigration Appeals has cautioned that, "in light of the unusually harsh consequences which may befall a [noncitizen] who has established a well-founded fear of persecution; the danger of persecution should generally outweigh all but the most egregious of adverse factors."[21] Yet because of the categorical nature of the seven news bars proposed here, asylum seekers will be precluded from obtaining protection on the basis of a vast array of conduct, without any discretion left to the immigration adjudicator to determine whether the circumstances merit such a harsh penalty. Indeed, in the case of the domestic-violence related

---

[18] See U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (2017) (noting that recidivism rates fall substantially with age); U.S. Sentencing Commission, *Recidivism Among Federal Violent Offenders* (2019) (noting that non-violent offenders recidivate at significantly lower rates); J. Ramos and M. Wenger, "Immigration and recidivism: What is the Link?" *Justice Quarterly* (2019) (finding no correlation between recidivism rates and citizenship status among those formerly incarcerated for felonies in Florida prisons).

[19] See U.N. High Commissioner for Refugees, *Criminal Justice and Immigration Bill: Briefing for the House of Commons at Second Reading* ¶ 11 (July 2007), http://www.unhcr.org/en-us/576d237f7.pdf (the Refugee Convention's particularly serious crime bar only applies if (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows she is a "present or future danger.").

[20] John H. Blume and Rebecca K. Helm, "The Unexonerated: Factually Innocent Defendants Who Plead Guilty," *Cornell Law Review* 100 (2014): 157,
https://pdfs.semanticscholar.org/c00f/96d421adf1846d120bf802a8854b5e2c0ff2.pdf.

[21] *Pula*, 19 I.&N. Dec. at 474.

ground, the categorical bar will be imposed on the basis of *mere allegations* of conduct without any adjudication of guilt.[22]

Those unjustly precluded from even seeking a discretionary grant of asylum by the Proposed Rules will include, for example: individuals struggling with addiction with one drug-related conviction, regardless of the circumstances of the offense; asylum seekers with two convictions for driving under the influence, regardless of whether the applicant has sought treatment for alcohol addiction or the circumstances of the convictions; community members seeking asylum defensively who have been convicted of a document fraud offense related to their immigration status; and asylum-seeking mothers convicted for bringing their own child across the southern border in an effort to find safety.

> *The Proposed Rules cruelly disregard the connections between trauma and involvement in the criminal legal system.*

The harsh nature of the Proposed Rules is especially evident when viewed through a trauma-informed lens. Asylum seekers are an inherently vulnerable population because of the trauma they have experienced in their countries of origin and, often, along the journey to find safety. Existing literature suggests that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD).[23] One recent study found the mental health problems facing refugees and asylum seekers so acute that more than a third of the study's sample admitted having suicidal thoughts in the preceding two weeks.[24]

Studies also consistently reveal a high prevalence of comorbidity of PTSD and substance use disorders, with individuals with PTSD *up to 14 times more likely* to struggle with a substance use disorder.[25] Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma;[26] some turn to drugs and alcohol in an effort to self-medicate.[27] The proposed new bars to asylum include *any* drug-related conviction (with one

---

[22] The Proposed Rules at p. 69651 explain that the regulations will "render ineligible [non-citizens] who engaged in acts of battery and extreme cruelty in a domestic context in the United States, regardless of whether such conduct resulted in a criminal conviction."

[23] Giulia Turrini et al., "Common mental disorders in asylum seekers and refugees: umbrella review of prevalence and intervention studies," *International Journal of Mental Health Systems* 11 (August 2017): 51, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5571637/.

[24] Megan Brooks, "Refugees have high burden of mental health problems," *Psychiatry and Behavioral Health Learning Network*, June 2019, https://www.psychcongress.com/article/refugees-have-high-burden-mental-health-problems.

[25] Jenna L McCauley et al., "Posttraumatic Stress Disorder and Co-Occurring Substance Use Disorders: Advances in Assessment and Treatment," *Clinical Psychology Science and Practice* 19, 3 (October 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3811127/.

[26] For more information on immigrant eligibility for federal benefits, *see* https://www.nilc.org/issues/health-care/.

[27] Carrier Clinic, *Trauma and Addiction* (2019), https://carrierclinic.org/2019/08/06/trauma-and-addiction/ ("...some people struggling to manage the effects of trauma in their lives may turn to drugs and alcohol to self-medicate. PTSD symptoms like agitation, hypersensitivity to loud noises or sudden movements, depression, social withdrawal

6

AR.08424

exception for a first minor marijuana possessory offense) and any second conviction for driving under the influence. This approach is not only cruel but also ignores the evidence. *Particularly* given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not a closed door and deportation order.

Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply cruel.

## III. The Proposed Rules violate the letter and spirit of United States international treaty obligations

By acceding to the 1967 Protocol Relating to the Status of Refugees,[28] which binds parties to the United Nations Convention Relating to the Status of Refugees,[29] the United States obligated itself to develop and interpret United States refugee law in a manner that complies with the Protocol's principle of non-refoulement (the commitment not to return refugees to a country where they will face persecution on protected grounds), even where potential refugees have allegedly committed criminal offenses. As noted above, adjudicators already have over-broad authority to deny asylum based on allegations of criminal activity, which vastly exceeds the categories for exclusion and expulsion set out in the Convention. Instead of working towards greater congruence with the terms of the Convention, the Proposed Rules carve out categorical bars from protection that violate both the language and spirit of the treaty.

While the Convention allows states to exclude and/or expel potential refugees from protection, the circumstances in which this can occur are limited. In particular, the Convention allows states to exclude and/or expel individuals from refugee protection if the individual "having been convicted by a final judgement of a particularly serious crime, constitutes a danger to the community of that country."[30] However, this clause is intended for "extreme cases," in which the particularly serious crime at issue is a "capital crime or a very grave punishable act."[31] The United Nations High Commissioner for Refugees (UNHCR) has asserted that to constitute a

---

and insomnia may seem more manageable through the use of sedating or stimulating drugs depending on the symptom. However, addiction soon becomes yet another problem in the trauma survivor's life. Before long, the 'cure' no longer works and causes far more pain to an already suffering person.").

[28] United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, [1968] 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 268.

[29] Convention Relating to the Statute of Refugees, July 28, 1951, 140 U.N.T.S. 1954 (hereinafter "Refugee Convention").

[30] *Id*. at art. 33(2).

[31] U.N. High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol relating to the Status of Refugees* 2, U.N. Doc. HCR/IP/Eng/REV. ¶ 154-55, (1979, reissued 2019).

7

AR.08425

"particularly serious crime," the crime "must belong to the gravest category" and be limited "to refugees who become an extremely serious threat to the country of asylum due to the severity of crimes perpetrated by them in the country of asylum."[32] Moreover, the UNHCR has specifically noted that the particularly serious crime bar does not encompass less extreme crimes; "[c]rimes such as petty theft or the possession for personal use of illicit narcotic substances would not meet the threshold of seriousness."[33] Finally, when determining whether an individual should be barred from protection for having been convicted of a particularly serious crime, the adjudicator must conduct an individualized analysis and consider any mitigating factors.[34]

As noted above, legislation and agency interpretation of the Immigration and Nationality Act have already expanded the particularly serious crime bar far beyond what was contemplated in the Convention by creating categorical particularly serious crimes through the aggravated felony definition. The Proposed Rules would amplify the dissonance between U.S. refugee law and the Convention, as well as the violation of U.S. obligations under the Convention, by creating categorical bars within categorical bars. For example, at p. 69659, the Proposed Rules first exclude from protection anyone who was convicted of a felony and then at p. 69660, define "felony" as "any crime punishable by more than one of imprisonment" without any reference to other factors, including dangerousness. The Proposed Rules described the increased categorization of the particularly serious crime bar as necessary because the case-by-case adjudication previously used for non-aggravated felony offenses was "inefficient,"[35] but an individualized analysis is exactly what the Convention requires to ensure only those individuals who have been convicted of crimes that are truly serious and therefore present a future danger are placed at risk of refoulement.

Additionally, outside of the aggravated felony context, it has generally been well understood by the Board of Immigration Appeals and the Courts of Appeals that low-level, "run-of-the-mill" offenses do not constitute particularly serious crimes.[36] Under this long-standing interpretation of the particularly serious crime bar in the INA, there is simply no scenario in which low-level offenses like misdemeanor driving under the influence where no injury is caused to another or simple possession of a controlled substance or paraphernalia would constitute a particularly serious crime.

---

[32] U.N. High Comm'r for Refugees (UNHCR), *Criminal Justice and Immigration Bill: Briefing for the House of Commons at Second Reading* ¶ 7 (July 2007), http://www.unhcr.org/enus/576d237f7.pdf.
[33] *Id.* at ¶ 10.
[34] *Id.* at ¶ 10-11; U.N. High Commissioner for Refugees, *The Nationality, Immigration and Asylum Act 2002: UNHCR Comments on the Nationality, Immigration and Asylum Act 2002 (Specification of Particularly Serious Crimes) Order 2004*, 4 (2004).
[35] Proposed Rules at 69646.
[36] *Delgado v. Holder*, 648 F.3d 1095, 1110 (9th Cir. 2011) (en banc) (J. Reinhardt, concurring).

The reason for this is common sense. As Judge Reinhardt explained in a concurring opinion in *Delgado v. Holder*,[37] a decision the Proposed Rules cite in support of the expanded bars, run-of-the-mill crimes like driving under the influence have "little in common" with other crimes the Board of Immigration Appeals has deemed particularly serious—e.g., felony menacing with a deadly weapon, armed robbery, and burglary of a dwelling in which the offender is armed or causes injury.[38] Judge Reinhardt further noted that public opinion does not treat them similarly either: "American voters would be unlikely to elect a president or vice president who had committed a particularly serious crime, yet they had no difficulty in recently electing to each office a candidate with a DUI record."[39] Barring individuals from asylum based on these relatively minor offenses renders the "particularly serious" part of the "particularly serious crime" bar meaningless.

The expansion of the asylum bar to include individuals who have been convicted of reentering the United States without inspection pursuant to INA § 276[40] is also unlike any of the other bars previously established or as interpreted by the Board of Immigration Appeals or Circuit Courts of Appeals. It is an offense with no element of danger or violence to others, and has no victim. Most significantly, and more so than other bars contained in the Proposed Rules, barring asylum based on the manner of entry directly violates the Convention's prohibition on imposing penalties based on a refugee's manner of entry or presence.[41] This prohibition is a critical part of the Convention because it recognizes that refugees often have little control over the place and manner in which they enter the country where they are seeking refuge.

## IV. Those precluded from asylum eligibility will be gravely impacted even if granted withholding of removal or protection under the Convention Against Torture

Throughout the Proposed Rules, the agencies defend the harsh and broad nature of their proposal by pointing to the continued availability of alternative forms of relief for those precluded from asylum eligibility under the new rules.[42] The availability of these alternatives forms of relief, however—known as withholding of removal and protection under the Convention Against Torture (CAT)—does not nullify the harm created by the Proposed Rule's new limits on asylum. The protections afforded by CAT and by statutory withholding of removal are limited in scope and duration, and they are harder to obtain. As a result, a Rule that limits *bona fide* refugees to withholding of removal and CAT protection would impose a very real harm on individuals who have come to the United States in search of protection.

---

[37] 648 F.3d at 1110 (J. Reinhardt, concurring).
[38] *Id.* at 1110.
[39] *Id.* at 1110.
[40] Proposed Rules at 69659, 69660.
[41] Refugee Convention, *supra*, at art 31.
[42] *See, e.g.,* Proposed Rules at 69644.

First, the most serious harm that can befall an individual as a result of these Proposed Rules is removal to persecution and torture, and the existence of withholding of removal does not account for that risk. CAT and withholding protections demand a higher level of proof than asylum claims: a clear probability of persecution or torture.[43] Thus, an individual could have a valid asylum claim but be unable to meet the standard under the other forms of relief and therefore would be removed to their country of origin, where they would face persecution or even death.

Even for those who meet the higher standard, withholding and CAT recipients are still subject to significant prejudice. For example, they have no ability to travel internationally. The United Nations Convention Relating to the Status of Refugees[44] affords refugees the right to travel in mandatory terms. Article 28 states, "Contracting States shall issue to refugees lawfully staying in their territory travel documents for the purpose of travel outside their territory." Withholding and CAT recipients do not have access to a travel document as contemplated by Article 28. By regulation, refugee travel documents are available only to asylees.[45] And the Board of Immigration Appeals requires that an individual granted withholding and CAT—unlike an individual granted asylum—must simultaneously be ordered removed, making any international travel a "self-deportation."[46] Refugees granted only withholding of removal or CAT protection are thus effectively trapped within the United States in long-term limbo.

Withholding and CAT recipients also face permanent separation from their spouses and children. Because international travel is prohibited, these individuals cannot reconnect with their families in a third country. And they also cannot reunite with family in the United States because only asylees and refugees are eligible to petition for a spouse and children to join them as derivatives on that status.[47] For many, this will mean that the Proposed Rules institute yet another formal policy of family separation. For example, a mother with two young children who flees to the United States and is subject to one of the expanded asylum bars will not be able to ensure that her children will be able to obtain protection in the United States with her if she is granted relief.  Rather, if her children are still in her home country, they would need to come to the United States and seek asylum on their own, likely as unaccompanied children. If her

---

[43] Withholding of removal requires the petitioner to demonstrate his or her "life or freedom would be threatened in that country because of the petitioner's race, religion, nationality, membership in a particular social group, or political opinion." *INS v. Stevic*, 467 U.S. 407, 411 (1984) (quoting 8 U.S.C. § 1231(b)(3)). Unlike asylum, however, the petitioner must show a "clear probability" of the threat to life or freedom if deported to his or her country of nationality. The clear probability standard is more stringent than the well-founded fear standard for asylum. *Id; see also Cardoza-Fonseca*, 480 U.S. at 431 (describing the difference between a well-founded fear of persecution and a clear probability of persecution). For CAT relief, an applicant must show it is more likely than not that he or she will be tortured or killed by or at the government's acquiescence if removed to the home country. 8 C.F.R. § 1208.16(c)(2).

[44] 19 U.S.T. 6223 T.I.A.S. No. 6577 (1968).

[45] 8 C.F.R. § 223.1.

[46] *See Matter of I-S- & C-S-*, 24 I.&N. Dec. 432, 434 n.3 (BIA 2008); 8 C.F.R. § 241.7.

[47] 8 C.F.R. § 208.21(a).

children fled to the United States with her, then they will need to establish their own eligibility for protection before an immigration judge, no matter their age.

Recently, this exact scenario played out with a mother who was subject to the so-called Migrant Protection Protocols (also known as Remain in Mexico) and the asylum "transit ban,"[48] which made the mother ineligible for asylum and thus required the children to establish their independent eligibility for withholding and CAT protection. An immigration judge granted the mother withholding of removal but denied protection to her young children, leaving the children with removal orders and immense uncertainty about their future.[49] Under the expanded bars in the Proposed Rules, these situations will certainly increase, separating families and forcing parents to return to countries where it has been established they more likely than not will face persecution and torture, rather than leaving their children on their own.

Withholding recipients likewise face hurdles in access to employment. Article 17 of the Refugee Convention states that a contracting state "shall accord to refugees lawfully staying in their territory the most favorable treatment accorded to nationals of a foreign country in the same circumstances, as regards the right to wage-earning employment." Recipients of withholding enjoy no such right. They must apply for work authorization, and they face frequent delays in the adjudication of these applications, which often result in the loss of legal authorization to work.[50]

And perhaps most fundamentally, there is continuing jeopardy for withholding and CAT recipients that does not exist for asylum recipients. When a noncitizen is granted asylum, the person receives a legal status.[51] Asylum, once granted, protects an asylee against removal unless and until that status is revoked.[52] None of these protections exists for withholding and CAT recipients. They have no access to permanent residency or citizenship.[53] Instead, they are subject to a removal order and vulnerable to the permanent prospect of deportation to a third country and subject to potential check ins with immigration officials where they can be made to pursue removal to third countries to which they have no connection.[54]

---

[48] 8 C.F.R. § 1208.13(c)(4).

[49] Adolfo Flores, "An Immigrant Woman Was Allowed To Stay In The US — But Her Three Children Have A Deportation Order," *Buzzfeed*, December 21, 2019, https://www.buzzfeednews.com/article/adolfoflores/an-immigrant-woman-was-allowed-to-stay-in-the-us-but-not.

[50] 8 C.F.R. § 274a.12(a)(10); *Northwest Immigrant Rights Project, et al. v. USCIS, et al.*, No. 2:15-cv-00813-JLR (W.D. Wash., filed May 22, 2015) (class action regarding delays in adjudication of work authorization).

[51] *See, e.g.*, 8 C.F.R. 245.1(d)(1) (defining "lawful immigration status" to include asylees).

[52] *See* 8 U.S.C. § 1158(c)(1)(A).

[53] *Matter of Lam*, 18 I.&N. Dec. 15, 18 (BIA 1981); 8 C.F.R. § 245.1(d)(1) (explaining that only those in "lawful immigration status" can seek permanent residency and excluding withholding recipients from such status); 8 C.F.R. § 209.2(a)(1) (authorizing adjustment of status to permanent residence for asylees); 8 C.F.R. § 316.2 (naturalization available only to permanent residents).

[54] *See R–S–C v. Sessions*, 869 F.3d 1176, 1180 (10th Cir. 2017).

Finally, I write to highlight a different form of prejudice that will flow from the rule: one relating to judicial efficiency. Neither withholding of removal nor CAT protection allow family members who are in the United States together and pursuing protection on the same basis to apply as derivatives on a principal application. As a result, family claims for those rendered ineligible for asylum by the new rules will have to be adjudicated separately, and potentially before different adjudicators even when the claims are interrelated and even when minor children may not be in a position to explain the claim at all or as sufficiently as a parent. In addition to being unjust to the affected family members, this approach would result in gross inefficiencies, which should be avoided in a system that already contains a significant backlog of pending cases.[55]

## V.     The Proposed Rules will result in "mini-trials" in immigration court, undermine judicial efficiency and result in racially-biased decision-making

In two significant ways, the Proposed Rules require immigration adjudicators to engage in decision-making to determine whether an asylum applicant's conduct—considered independently of any criminal court adjudication—triggers a categorical bar to asylum eligibility. First, the agencies propose that immigration adjudicators be allowed to consider "all reliable evidence" to determine whether there is "reason to believe" an offense was "committed for or related to criminal gang evidence," or "in furtherance of gang-related activity, triggering ineligibility for asylum in either case.[56] Second, the Proposed Rules permit immigration adjudicators to "assess all reliable evidence in order to determine whether [a] conviction amounts to a domestic violence offense;" and to go even further by considering whether non-adjudicated *conduct* "amounts to a covered act of battery or extreme cruelty."[57]

Requiring adjudicators to make complex determinations regarding the nature and scope of a particular conviction or, in the case of the domestic violence bar, *conduct*, will lead to massive judicial inefficiencies and slanted "mini-trials" within the asylum adjudication process. The scope of the "reliable evidence" available to adjudicators in asylum cases is potentially limitless; advocates on both sides would be obligated to present fulsome arguments to make their cases about gang connections to the underlying activity or the relationship of the asylum applicant to the alleged victim. Because of the lack of robust evidentiary rules in immigration proceedings, it will be difficult if not impossible for many applicants to rebut negative evidence marshaled against them, even if false; and in other cases, asylum applicants will struggle to find evidence connected to events that may have happened years prior (especially for those detained).

---

[55] See, e.g., Marissa Esthimer, "Crisis in the Courts: Is the Backlogged U.S. Immigration Court System at Its Breaking Point?," *Migration Policy Institute*, October 3, 2019, https://bit.ly/2sJuEWR.

[56] *See* Proposed Rules at 69649.

[57] *See* Proposed Rules at 69652.

AR.08430

Asylum trials, which are typically three or fewer hours under current policies, would provide insufficient time to fully present arguments on both sides of these unwieldy issues.

As the immigration courts contend with backlogs that now exceed one million cases,[58] tasking adjudicators with a highly nuanced, resource-intensive assessment of the connection of a conviction to gang activity and/or the domestic nature of alleged criminal conduct—assessments far outside their areas of expertise—will prolong asylum proceedings and invariably lead to erroneous determinations that will give rise to an increase in appeals. The Proposed Rules repeatedly cite increased efficiency as justification for many of the proposed changes.[59] Yet requiring adjudicators to engage in mini-trials to determine the applicability of categorical criminal bars, rather than relying on adjudications obtained through the criminal legal system, will dramatically *decrease* efficiency in the asylum adjudication process.

Indeed, the Supreme Court has "long deemed undesirable" exactly the type of "post hoc investigation into the facts of predicate offenses" proposed by the agencies here.[60] Instead, for more than a century the federal courts have repeatedly embraced the "categorical approach" to determine the immigration consequence(s) of a criminal offense, wherein the immigration adjudicator relies on the statute of conviction as adjudicated by the criminal court system, without relitigating the nature or circumstances of the offense in immigration court.[61] As the Supreme Court has explained, this approach "promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact."[62] In *Moncrieffe v. Holder*, the Court forewarned of exactly the sort of harm that would arise from these Proposed Rules; in that case, the Court rejected the government's proposal that immigration adjudicators determine the nature and amount of remuneration involved in a marijuana-related conviction, noting that "our Nation's overburdened immigration courts" would end up weighing evidence "from, for example, the friend of a noncitizen" or the "local police officer who recalls to the contrary," with the end result a disparity of outcomes depending on the whims of the individual immigration judge and a further burdened court system.[63]

---

[58] Marissa Esthimer, "Crisis in the Courts: Is the Backlogged U.S. Immigration Court System at Its Breaking Point?," *Migration Policy Institute*, October 3, 2019, https://www.migrationpolicy.org/article/backlogged-us-immigration-courts-breaking-point.

[59] *See* Proposed Rules at 69646, 69656-8.

[60] *Moncrieffe v. Holder*, 569 U.S. 184, 186 (2013).

[61] *See Moncrieffe*, 569 U.S. at 191 ("This categorical approach has a long pedigree in our Nation's immigration law."). For a more fulsome history of the development of the categorical approach in immigration court, *see* Alina Das, "The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law," *New York University Law Review* 86, no. 6 (2011): 1689 - 1702, https://www.nyulawreview.org/wp-content/uploads/2018/08/NYULawReview-86-6-Das.pdf.

[62] *Moncrieffe*, 569 U.S. at 200-201.

[63] *Id.* at 201.

AR.08431

Particularly in the context of the new proposed bar related to alleged gang affiliation, I am concerned that creating a blanket exclusion for anyone who is convicted of a crime – including a misdemeanor – that an immigration adjudicator deems linked to gang activity will erroneously prevent bona fide asylum seekers from receiving protection. This rule confers on immigration adjudicators—who generally are not criminologists, sociologists, or criminal law experts—the responsibility to determine if there is "reason to believe" any conviction flows from activity taken in furtherance of gang activity. This rule will necessarily ensnare asylum seekers of color who have experienced racial profiling and a criminal legal system fraught with structural challenges and incentives to plead guilty to some crimes, particularly misdemeanors. These same individuals are vulnerable to being erroneously entered into gang databases. Such databases are notoriously inaccurate, outdated, and infected by racial bias.[64]

Indeed, asylum applicants are *already* frequently subjected to wrongful denials of protection because of allegations of gang activity made by the Department of Homeland Security on the basis of information found in notoriously unreliable foreign databases and "fusion" intelligence-gathering centers outside the United States. Empowering immigration adjudicators to render asylum applicants *categorically* excluded from protection on the basis of such spurious allegations will inevitably result in the return of many refugees back to harm.[65]

The Departments curiously argue that all gang-related offenses should be construed as "particularly serious crimes."[66] They cite statistics from up to 16 years ago in an attempt to make the point that gang members commit violent crimes and drug crimes. They then make the illogical leap to the conclusion that *all crimes*—including misdemeanor property crimes—that may be construed as connected to gang activity are particularly serious. This simply does not follow; in fact, the Proposed Rules will inevitably result in the exclusion from protection of asylum seekers of color who live in economically distressed communities and have obtained a minor conviction such as a property crime. Relying on the definition of "particularly serious crime" to prevent asylum seekers convicted of even minor crimes construed as gang-related from accessing asylum protection is disingenuous at best, and tinged with racial animus at worst.

The Departments asks for comments on: (1) what should be considered a sufficient link between an asylum seeker's underlying conviction and the gang related activity in order to

---

[64] Annie Sweeney and Madeline Buckley, "Chicago police gang data collection faulted by city's inspector general as unchecked and unreliable," *Chicago Tribune*, April 11, 2019, https://www.chicagotribune.com/news/breaking/ct-met-chicago-police-gang-data-04112019-story.html; Anita Chabria, "A routine police stop landed him on California's gang database. Is it racial profiling?," *Los Angeles Times*, May 9, 2019, https://www.latimes.com/politics/la-pol-ca-california-gang-database-calgang-criminal-justice-reform-20190509-story.html.
[65] Melissa del Bosque, "Immigration Officials Use Secretive Gang Databases to Deny Migrant Asylum Claims," *Pro Publica*, July 8, 2019, https://www.propublica.org/article/immigration-officials-use-secretive-gang-databases-to-deny-migrant-asylum-claims.
[66] Proposed Rules at p. 69650.

14

AR.08432

trigger the application of the proposed bar, and (2) any other regulatory approaches to defining the type of gang-related activities that should render individuals ineligible for asylum. The premise of these questions is wrong: a vague "gang related" bar should not be introduced at all. The Immigration and Nationality Act and existing regulations already provide overly broad bars to asylum where criminal behavior by an asylum seeker causes concern by an adjudicator. Adding this additional, superfluous layer of complication risks erroneously excluding bona fide asylum seekers from protection without adding any useful adjudicatory tool to the process.

## VI. The proposed definition of "conviction" and "sentence" for the purposes of the new bars further excludes those in need of protection

The section of the Proposed Rules that outlines a new set of criteria for determining whether a conviction or sentence is valid for the purpose of determining asylum eligibility is an ultra vires exercise of authority that is not authorized by the Immigration and Nationality Act. The Proposed Rules impose an unlawful presumption against asylum eligibility for applicants who seek post-conviction relief while in removal proceedings or longer than one year after their initial convictions. They also deny full faith and credit to state court proceedings by attributing improper motives to state court actors.[67]

> *The Proposed Rules undermine Sixth Amendment protections and harms immigrants unfamiliar with the complex criminal and immigration framework governing prior convictions.*

The Proposed Rules outline a new multi-factor process asylum adjudicators must use to determine whether a conviction or sentence remains valid for the purpose of determining asylum eligibility; the proposal includes a rebuttable presumption "against the effectiveness" of an order vacating, expunging, or modifying a conviction or sentence if the order was entered into after the asylum seeker was placed in removal proceedings or if the asylum seeker moved for the order more than one year after the date the original conviction or sentence was entered.[68]

This newly created presumption unfairly penalizes asylum applicants, many of whom may not have the opportunity to seek review of their prior criminal proceedings until applying for asylum.[69] In *Padilla v. Kentucky*, the Supreme Court recognized that the immigration

---

[67] *See Saleh v. Gonzales*, 495 F.3d 17, 25-26 (2d Cir. 2007) (discussing 28 U.S.C. § 1738, requiring federal courts to give full faith and credit to state acts, records, and judicial proceedings and U.S. Const. art. IV, § 1, and finding that there was no violation where the Board of Immigration Appeals stopped short of "refusing to recognize or relitigating the validity of [Saleh's] state conviction.").

[68] Proposed Rules at 69655.

[69] On page 69656 of the Proposed Rules, the Department of Homeland Security and the Department of Justice urge that "[i]t is reasonable to conclude that an alien who has a meritorious challenge to a criminal conviction based on a procedural or substantive defect is more likely to seek post-conviction relief sooner than an alien who is seeking relief on rehabilitative grounds…"

15

AR.08433

consequences of a conviction are sufficiently serious for the Sixth Amendment to require a noncitizen defendant to be competently advised of them before agreeing to a guilty plea.[70] By imposing a presumption against the validity of a withdrawal or vacatur of a plea, the Proposed Rules hold asylum seekers whose rights were violated under *Padilla* to a different standard; even though they too were denied effective assistance of counsel in the course of their underlying criminal proceedings, asylum seekers will be forced to rebut a presumption that their court-ordered withdrawal or vacatur is invalid. The Proposed Rules therefore compound the harm to immigrants who, in addition to facing persecution in their home countries, have been denied constitutionally compliant process in the United States criminal legal system.

Many asylum applicants, especially those in vulnerable populations isolated from resources and unfamiliar with the due process protections available to them in the United States, may not have discovered the defects in their underlying criminal proceedings until their consultation with an immigration attorney, or until they are placed into removal proceedings, which may happen several years after a conviction. Imposing a presumption *against* the validity of a plea withdrawal or vacatur in these cases will undoubtedly lead to the wrongful exclusion of countless immigrants from asylum simply because they were unable to adequately rebut the presumption, particularly in a complex immigration court setting without the benefit of appointed counsel.

> *The Proposed Rules violate the full faith, and credit to which state court decisions are entitled.*

The Proposed Rules further improperly authorize immigration adjudicators to second-guess the decision of a state court, even where the order on its face cites substantive and procedural defects in the underlying proceeding. The proffered justification for this presumption against the validity of post-conviction relief is to "ensure that aliens do not have their convictions vacated or modified for purported rehabilitative purposes that are, in fact, for immigration purposes," "to codify the principle set forth in *Matter of Thomas and Thompson*," and to bring the analysis of post-conviction orders in line with *Matter of Pickering*.[71] The agencies misread the applicable law, however, by authorizing adjudicators to disregard otherwise valid state orders. The immigration law only requires that to be effective for immigration purposes, orders vacating or modifying convictions must be based on substantive or procedural infirmities in the underlying proceedings. The Proposed Rule goes well beyond that requirement.

---

[70] *Padilla v. Kentucky*, 559 U.S. 356 (2010).
[71] Proposed Rules at 69655-56 (*citing Matter of Thomas and Thompson*, 27 I.&N. Dec. 674 (A.G. 2019) and *Matter of Pickering*, 23 I.&N. Dec. 621 (BIA 2003), *rev'd on other grounds by Pickering v. Gonzales*, 465 F.3d 263, 267-70 (6th Cir. 2006)).

16

AR.08434

The Proposed Rules abandon the presumption of regularity that should accompany state court orders, thus upending settled principles of law. The Proposed Rules cite a misleading quote from *Matter of F-* in support of allowing asylum adjudicators to look beyond the face of a state court order; had the Rules' authors looked to the full case, they would have read the following: "Not only the full faith and credit clause of the Federal Constitution, but familiar principles of law require the acceptance at face value of a judgment regularly granted by a competent court, unless a fatal defect is evident upon the judgment's face. However, the presumption of regularity and of jurisdiction may be overcome by extrinsic evidence or by the record itself."[72] In *Matter of F-*, the Board of Immigration Appeals offers support for the proposition that an adjudicator should presume the validity of a state court order unless there is a reason to doubt it, contrary to the *presumption of irregularity* put forward in the Proposed Rules.

The authority extended to adjudicators by the Proposed Rules also violates the law of multiple circuits, including *Pickering*, on which it relies.[73] In *Pickering v. Gonzales*, the Sixth Circuit Court of Appeals held that despite the petitioner's stated motive of avoiding negative immigration consequences, the Board of Immigration Appeals was limited to reviewing the authority of the court issuing the order as to the basis for his vacatur.[74] Similarly, in *Reyes-Torres* the Ninth Circuit Court of Appeals held that the motive of the respondent was not the relevant inquiry.[75] Rather, "the inquiry must focus on the state court's rationale for vacating the conviction."[76] In addition, the Third Circuit Court of Appeals in *Rodriguez v. U.S. Att'y Gen.*, which the Proposed Rules cite as "existing precedent," held that the adjudicator must look only to the "reasons explicitly stated in the record and may not impute an unexpressed motive for vacating a conviction."[77] Moreover, the *Rodriguez* court stated that to determine the purpose of a vacatur, the adjudicator must first look to the face of the order vacating the conviction, and "if the order explains the courts reasons … the [adjudicator's] inquiry must end there."[78] The Proposed Rules contain no such limiting language to guide the adjudicator's inquiry. Instead, the Rules grant adjudicators vague and indefinite authority to look beyond even a facially valid vacatur. Such breadth of authority undermines asylum seekers' rights to a full and fair proceeding.

---

[72] *Matter of F-*, 8 I.&N. Dec. 251, 253 (BIA 1959).

[73] *See id.* (*citing Matter of Pickering*, 23 I.&N. Dec. 621).

[74] *Pickering v. Gonzales*, 465 F.3d 263, 267-70 (6th Cir. 2006).

[75] *Reyes-Torres v. Holder*, 645 F.3d 1073, 1077-78 (9th Cir. 2011) (*citing Cardoso-Tlaseca v, Gonzales*, 460 F.3d 1102, 1107 n.3 (9th Cir. 2006) and *Pickering v. Gonzales*, 454 F.3d 525 (6th Cir. 2006), *amended and superseded* by *Pickering*, 465 F.3d at 263.

[76] *Id.*

[77] *Rodriguez v. U.S. Att'y Gen.*, 844 F.3d 392, 397 (3d Cir. 2006) (noting that "[T]he IJ may rely only on reasons explicitly stated in the record and may not impute an unexpressed motive for vacating a conviction.").

[78] *Id.* ("Put simply, '[w]e will not . . . permit[ ] . . . speculation . . . about the secret motives of state judges and prosecutors,'" *quoting Pinho v. Gonzales*, 432 F.3d 193, 214-215 (3d Cir. 2005)).

17

AR.08435

*The Proposed Rules wrongly extend* Matter of Thomas and Thompson *to all forms of post-conviction relief and impose an ultra vires and unnecessary burden on asylum seekers.*

Finally, the above-described presumption is ultra vires and unnecessary. As an initial matter, the Proposed Rules' reliance on *Matter of Thomas and Thompson* is flawed. The Attorney General's decision in *Matter of Thomas and Thompson* has no justification in the text or history of the immigration statute. Nowhere does the plain text of the Immigration and Nationality Act support giving adjudicators the authority to give effect only to state court sentence modifications undertaken to rectify substantive or procedural defects in the underlying criminal proceedings. Nor does the legislative history support such a rule. The Board of Immigration Appeals recognized this in *Matter of Cota-Vargas*, where it concluded that the application of "the *Pickering* rationale to sentence modifications has no discernible basis in the language of the Act."[79] Based on the text of the Immigration and Nationality Act and the well-documented legislative history behind Congress's definition of "conviction" and "sentence" in 8 U.S.C. § 1101(a)(48), the Board determined that Congress intended to ensure that, generally, proper admissions or findings of guilt were treated as convictions for immigration purposes, even if the conviction itself was later vacated. Neither the text of the INA nor the legislative history of the definitions reveal any attempt on Congress's part to change the longstanding practice of giving effect to state court sentencing modifications. For these reasons, *Matter of Thomas and Thompson* lacks Congressional support for its rule and should not be extended.

Moreover, as applicants for immigration benefits or relief from removal, asylum seekers already bear the burden of demonstrating their eligibility for asylum.[80] The Proposed Rules do not alter or shift this burden, nor do they provide evidence supporting the need for this presumption. By introducing a presumption of bad faith into asylum adjudication, the Proposed Rules unfairly interfere with asylum seekers' efforts to establish their claims. Immigration law, and asylum law in particular, is already highly complex, and the process of seeking asylum is in many instances re-traumatizing, particularly for applicants who do not have counsel to represent them and who lacked effective counsel in their underlying criminal proceedings. The Proposed Rules as applied to asylum applicants who seek post-conviction relief transform an already difficult process into an adversarial inquiry, contrary to the intent of Congress.

VII. **The Proposed Rules will disparately impact vulnerable populations already routinely criminalized, including LGBTQ immigrants, survivors of trafficking and domestic violence, and immigrant youth of color**

---

[79] *Matter of Cota-Vargas*, 23 I.&N. Dec. 849, 852 (BIA 2005).
[80] *Matter of S-K-*, 23 I.&N. Dec. 936, 939-40 (BIA 2006).

The expanded criminal bars exclude from safety and a pathway to citizenship those convicted of offenses that are coincident to their flight from persecution, and do not accomplish the stated goal of making communities safer. They will disparately impact vulnerable populations, who comprise asylum seekers hailing primarily from Central America and the Global South, and those routinely criminalized because of their identities, racially disparate policing practices, or in connection with experiences of trafficking and domestic violence.[81] For these populations especially, the discretion currently delegated to asylum adjudicators is crucial for them to become fully integrated in the larger community. The imposition of additional categorical bars to asylum will only further marginalize asylum seekers already struggling with trauma and discrimination.

The Proposed Rules turn asylum into a blunt instrument that would prevent the use of discretion where it is most needed and most effective. The existing framework for determining if an offense falls within the particularly serious crime bar already provides the latitude for asylum adjudicators to deny relief to anyone found to pose a danger to the community.[82] Furthermore, asylees with convictions that render them inadmissible must apply for a waiver at the time of their applications for permanent residence.[83] These measures ensure that asylum applicants in vulnerable populations have access to supportive resources and have the opportunity to demonstrate their ongoing commitment to social and personal health. Moreover, the existence of provisions allowing the revocation of asylum status ensures that adjudicators may continue to enforce concerns related to the safety of the community even after asylum is granted.[84]

> *Barring asylum for immigrants convicted of migration-related offenses punishes them for fleeing persecution and/or seeking safety for their children, and does not make communities safer.*

The expansion of the criminal bars to asylum to include offenses related to harboring, smuggling of noncitizens by parents and family members and those previously removed further

---

[81] D'Vera Cohn et al., "Rise in U.S. Immigrants from El Salvador, Guatemala and Honduras Outpaces Growth from Elsewhere," *Pew Research Center*, December 7, 2017, https://www.pewresearch.org/hispanic/wp-content/uploads/sites/5/2017/12/Pew-Research-Center_Central_American-migration-to-U.S._12.7.17.pdf.

[82] Apart from the statutory aggravated felony bar to asylum, the Board of Immigration Appeals and Attorney General have historically utilized a highly circumstantial approach to the particular serious crime determination that would bar an immigrant from receiving asylum. *See e.g., Matter of Juarez*, 19 I.&N. Dec. 664 (BIA 1988) (ordinarily a single misdemeanor that is not an aggravated felony will not be a particularly serious crime); *Matter of Frentescu*, 18 I.&N. Dec. 244 (BIA 1982), *modified* (setting forth several factors to be considered before imposing the particular serious crime bar, including: (i) the nature of the conviction, (ii) the circumstances and underlying facts for the conviction, (iii) the type of sentence imposed, and (iv) whether the type and circumstances of the crime indicate that the individual will be a danger to the community); *Matter of Y-L-, A-G-, R-S-R-*, 23 I.&N. Dec. 270 (A.G. 2002) (setting forth a multi-factor test to determine the dangerousness of a respondent convicted of a drug-trafficking offense who is otherwise barred from asylum as an aggravated felon, but seeking withholding of removal).

[83] 8 U.S.C. § 1159(c) (2012).

[84] 8 C.F.R. § 208.24(a) (2012).

criminalizes vulnerable populations fleeing persecution.[85] The vast expansion of migrant prosecutions at the border during the current administration has created administrative chaos and separated families that do not pose a threat to the safety of communities in the United States.[86] The Proposed Rules threaten to magnify the harm caused by these reckless policies by further compromising the ability of those seeking safety on the southern border to access the asylum system.

The Proposed Rules expand the asylum bar to parents or other caregivers who are convicted of smuggling or harboring offenses after taking steps to help minor children enter the United States in order to flee persecution. This proposed bar is particularly insidious in light of now-public documents revealing this administration's explicit efforts to utilize smuggling prosecutions against parents and caregivers as part of its strategy of deterring families from seeking asylum in the United States.[87] The Proposed Rules seek to take this widely condemned strategy one step further, by additionally barring those parents *already prosecuted* from obtaining asylum protections for themselves and their children. The Proposed Rules multiply the harms parents and caregivers have experienced in their treacherous journeys to safety and callously penalize parents for doing what is only human—taking all necessary steps to protect their children.

The Proposed Rules also expand the asylum bar to those who have fled persecution multiple times and therefore been convicted of illegal reentry. Their inclusion is premised on conclusory statements regarding the dangerousness of recidivist offenders, without consideration of the seriousness of prior convictions.[88] Rather, the Proposed Rules treat all immigration violations as similar in seriousness to those previously warranting inclusion in the particularly serious crime bar, without any independent evidence to justify the expansion. Such an approach renders meaningless the limiting language of "particularly serious" in the statute.

The Proposed Rules also conflate multiple entries by noncitizens having prior removal orders with those who have entered multiple times without ever having their asylum claims heard. Many immigrants who have previously attempted entry to the United States to flee persecution could not have been aware of the complex statutory regime that governs asylum

---

[85] On April 11, 2017, then-Attorney General Sessions instructed all federal prosecutors to increase their prioritization of immigration offenses for prosecution, including misdemeanor offenses committed by first time entrants. *See* Memorandum from the Attorney General: Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), https://www.justice.gov/opa/press-release/file/956841/download.

[86] *Id.*; Richard Marosi, "The aggressive prosecution of border crossers is straining the courts. Will zero tolerance make it worse?," *Los Angeles Times*, May 11, 2018, https://www.latimes.com/local/california/la-me-ln-immigrant-prosecutions-20180511-story.html.

[87] Ryan Devereaux, "Documents Detail ICE Campaign to Prosecute Migrant Parents as Smugglers," *The Intercept*, April 29, 2019, https://theintercept.com/2019/04/29/ice-documents-prosecute-migrant-parents-smugglers/ (describing how in May 2017, the Department of Homeland Security set out to target parents and family members of unaccompanied minors for prosecution).

[88] Proposed Rules at 69648.

claims and would not have knowingly abandoned their right to apply for asylum. Some asylum seekers have also been wrongly assessed in prior credible fear interviews. And others yet may have previously entered or attempted to enter the United States before the onset of circumstances giving rise to their fear. Preserving discretion to grant asylum in these circumstances allows meritorious asylum seekers to be heard and corrects errors that might have previously occurred.

> *Extending the criminal bars to immigrants convicted of misdemeanor document fraud unfairly punishes low-wage immigrant workers and does not make communities safer.*

The Proposed Rules expand the asylum bar to include any asylum seeker who has been convicted of a misdemeanor offense for use of a fraudulent document. In so doing, the Rule entirely ignores the migration-related circumstances that often give rise to convictions involving document fraud. Migrants fleeing persecution often leave their home countries with nothing but the clothes on their backs and must rely on informal networks to navigate their new circumstances.[89] Extension of a blanket bar to asylum seekers who are compelled to resort to fraudulent means to enter the United States, or to remain safely during their applications for asylum, upends decades of settled law directing that violations of law arising from an asylum applicant's manner of flight should constitute only one of many factors to be consulted in the exercise of discretion.[90]

Moreover, migrants in vulnerable communities who are struggling to survive during the pendency of their asylum proceedings are often exploited by unscrupulous intermediaries who offer assurances and documentation that turn out to be fraudulent.[91] Many noncitizens working in the low-wage economy face egregious workplace dangers and discrimination and suffer retaliation for asserting their rights.[92] The continued availability of asylum to low-wage immigrant workers can encourage them to step out of the shadows. The expansion of criminal asylum bars to sweep in all document fraud offenses, on the other hand, would unfairly prejudice immigrants with meritorious asylum claims and force them deeper into the dangerous informal economy.

> *The Proposed Rules will harm communities with overlapping vulnerabilities, including LGBTQ asylum seekers, survivors of trafficking, and survivors of domestic violence.*

---

[89] *See Pula*, 19 I.&N. Dec. at 474.
[90] *Id.*
[91] See American Bar Association, "About Notario Fraud," July 19, 2018, https://www.americanbar.org/groups/public_interest/immigration/projects_initiatives/fight-notario-fraud/about_notario_fraud/.
[92] Paul Harris, "Undocumented workers' grim reality: speak out on abuse and risk deportation," *The Guardian*, March 28, 2013, https://www.theguardian.com/world/2013/mar/28/undocumented-migrants-worker-abuse-deportation.

The Proposed Rules exclude from asylum protections countless members of vulnerable communities who have experienced trauma, abuse, coercion, and trafficking. Many of these individuals may only become aware of their ability to apply for asylum after law enforcement encounters that lead them to service providers who can educate them about their immigration options. Despite the unique difficulties they face, the Proposed Rules would compound their harm and prevent them from achieving family unification and a pathway to citizenship.

The Proposed Rules pose a unique threat to LGBTQ immigrant community members. LGBTQ immigrants in particular may have already experienced a high degree of violence and disenfranchisement from economic and political life in their home countries.[93] Hate violence towards undocumented LGBTQ immigrants in the United States is already disproportionately higher than for other members of the LGBTQ population.[94] Members of these communities also experience isolation from their kinship and national networks following their migration. This isolation, compounded by the continuing discrimination towards the LGBTQ population at large, leave many in the LGBTQ immigrant community vulnerable to trafficking, domestic violence, and substance abuse, in addition to discriminatory policing practices. The expansion of criminal enforcement and prosecution of undocumented people also harms the LGBTQ immigrant community.[95] The Proposed Rules will therefore have a disparate impact on LGBTQ individuals whose involvement in the criminal legal system is often connected to past trauma and/or the result of biased policing.

The expansion of asylum bars to include various misdemeanor offenses that were not previously considered particularly serious also unfairly sweeps trafficking survivors into its dragnet. It is becoming more widely recognized across state court systems that trafficking survivors frequently come into contact with intervention resources and service providers only after contact with law enforcement occurs. Innovative criminal justice reform efforts currently being adopted across the country include special trafficking courts that recognize the need for discretion in the determination of criminal culpability.[96] The same approach should be employed in the determination of asylum eligibility, where the applicant's life and safety are on the line.

---

[93] See Aengus Carroll and Lucas Ramon Mendos, *State Sponsored Homophobia: A World Survey of Sexual Orientation Laws: Criminalisation, Protection and Recognition* 12th Ed. (International Lesbian, Gay, Bisexual, Transgender, and Intersex Association (ILGA), 2017), https://ilga.org/downloads/2017/ILGA_State_Sponsored_Homophobia_2017_WEB.pdf.

[94] See Sharita Gruberg, "LGBTQ Undocumented Immigrants Face an Increased Risk of Hate Violence," *Center for American Progress*, June 10, 2014, https://www.americanprogress.org/issues/immigration/news/2014/06/10/91233/lgbt-undocumented-immigrants-face-an-increased-risk-of-hate-violence/.

[95] *See eg.,* Sharita Gruberg, "How Police Entanglement with Immigration Enforcement Puts LGBTQ Lives at Risk," *Center for American Progress*, April 12, 2017, https://www.americanprogress.org/issues/lgbtq-rights/reports/2017/04/12/430325/police-entanglement-immigration-enforcement-puts-lgbtq-lives-risk/.

[96] Elise White, et al., "Navigating Force and Choice: Experiences in the New York City Sex Trade and the Criminal Justice System's Response," *Center for Court Innovation*, December 2017 (noting that 78% of participants in the report's study had been arrested, mostly for non-violent, non-prostitution offenses such as *drug possession*).

The Proposed Rules instead preclude asylum adjudicators from conducting a trauma-centered approach, categorically barring countless trafficking survivors convicted of misdemeanor and felony offenses without any opportunity to present the specific circumstances of their claim.

Survivors of domestic violence include trafficking survivors and LGBTQ community members, such that inclusion of offenses related to domestic violence in the expanded asylum bars affects populations with overlapping vulnerabilities.[97] The Proposed Rules too broadly categorize domestic violence offenses as particularly serious and sweep both offenders and survivors into their dragnet. The immigration laws extend protections to domestic violence survivors outside of the asylum context, recognizing the complex dynamics surrounding intimate partner violence. Provisions in the Violence Against Women Act allow adjudicators evaluating claims for relief arising thereunder to exercise discretion based on a number of factors and circumstances.[98] The blunt approach adopted by the Proposed Rules is inconsistent with the approach taken towards survivors elsewhere in the federal immigration statute and does not rely on any evidence-based justification for treating asylum seekers differently.

Moreover, the domestic violence sections of the Proposed Rules include the only categorical bar to asylum for which a conviction is not required. Domestic violence incidents all too often involve the arrest of both the primary perpetrator of abuse and the survivor.[99] These "cross-arrests" do not always yield clear determinations of victim and perpetrator. Authorizing asylum adjudicators to determine the primary perpetrator of domestic assault, in the absence of a judicial determination, unfairly prejudices survivors who are wrongly arrested in the course of police intervention to domestic disturbances.

---

[97] Marty Schladen, "ICE Agents Detain Alleged Domestic Violence Victim," *El Paso Times*, February 16, 2017, https://www.elpasotimes.com/story/news/2017/02/15/ice-detains-domestic-violence-victim-court/97965624/ (noting that the immigrant detained, a transgender person previously deported following her conviction for crimes such as posession of stolen mail and assault, was then living at the Center Againts Sexual and Family Violence, a shelter for survivors of intimate partner violence).

[98] Nadine Shaanta Murshid and Elizabeth A. Bowen, "A Trauma-Informed Analysis of the Violence Against Women Act's Provisions for Undocumented Immigrant Women," *Violence Against Women* 24(13) (2018): 1540–1556, https://doi.org/10.1177/1077801217741991.

[99] David Hirschel, et al., "Domestic Violence and Mandatory Arrest Laws: To What Extent Do They Influence Police Arrest Decisions," *Journal of Criminal Law & Criminology* 98, no. 1 (2007-2008): 255, https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=7284&context=jclc (noting that "[i]n some cases, dual arrests may be the result of legislation, department policies, or both failing to require officers to identify the primary aggressor. In addition, when such provisions are present, police may lack the training or information needed to identify the primary aggressor when responding to a domestic violence assault. This situation may be compounded by batterers who have become increasingly adept at manipulating the criminal justice system, and may make efforts to 'pre-empt' victims from notifying police in order to further control or retaliate against them.").

23

AR.08441

Finally, the exemption for asylum applicants who can demonstrate their eligibility for a waiver under section 237(a)(7)(A) of the Immigration and Nationality Act does not cure the harm to asylum seekers caused by imposition of a categorical domestic violence related bar.[100] Rather, it converts a non-adversarial asylum proceeding into a multi-factor, highly specific inquiry into culpability based on circumstances that may be very difficult for an asylum seeker to prove—especially if proceeding without counsel and with limited English proficiency.

> *Barring asylum for immigrants convicted of "gang-related crimes" based on unreliable evidence and racially disparate policing practices is harmful to youth of color and does not make communities safer.*

In recent years, the expansion of gang databases for use in the apprehension and removal of foreign nationals—including children—has generated tremendous concern among advocates and the communities they serve.[101] The use of gang databases by local law enforcement and Immigration and Customs Enforcement has been widely criticized as an overbroad, unreliable and often biased measure of gang membership and involvement.[102] The Proposed Rules expand the criminal bars to asylum to those accused of gang involvement in the commission of minor criminal offenses, embracing an open-ended adjudicative process that will inevitably result in asylum adjudicators relying unfairly on these discredited methods of gang identification. This outcome would compound the disparate racial impact of inclusion in gang databases and bar asylum seekers who are themselves fleeing violence from gangs in their home countries.[103]

Past legislative efforts to expand the grounds of removal and inadmissibility in the Immigration and Nationality Act to include gang membership have failed to pass both houses of Congress.[104] In addition, immigration adjudicators already routinely premise discretionary denials of relief or release on bond on purported gang membership, and scores of alleged gang members have already been deported on grounds related to immigration violations or criminal

---

[100] 8 U.S.C. § 1227(a)(7)(A).

[101] *See* Nermeen Arastu, et al., "Swept Up In The Sweep: The Impact of Gang Allegations on Immigrant New Yorkers," *New York Immigration Coalition (NYIC) and CUNY School of Law's Immigrant and Non-citizen Rights Clinic*, May 2018, https://www.law.cuny.edu/wp-content/uploads/page-assets/academics/clinics/immigration/SweptUp_Report_Final-1.pdf.

[102] Ali Winston, "Marked for Life: U.S. Government Using Gang Databases to Deport Undocumented Immigrants," *The Intercept*, August 11, 2016, https://theintercept.com/2016/08/11/u-s-government-using-gang-databases-to-deport-undocumented-immigrants/.

[103] *See* Jonanthan Blitzer, "How Gang Victims Are Labeled As Gang Suspects," *The New Yorker*, January 23, 2018, https://www.newyorker.com/news/news-desk/how-gang-victims-are-labelled-as-gang-suspects.

[104] *See* Jessica Chacon, "Whose Community Shield?: Examining the Removal of the 'Criminal Street Gang Member,'" *University of Chicago Legal Forum* 317 (2007: 333-336) (reviewing legislative history of failed efforts to expand removability of those accused of gang related offenses and noting criticism that "[t]he only legal effect of the proposed legislation would be to increase the number of noncitizens lawfully present who would be subject to removal on the basis of their purported associations with individuals involved in group criminal activity.").

convictions for which no relief is available.[105] Creating a "gang-related crime" bar will only exacerbate the due process violations already occurring as the result of unsubstantiated information about supposed gang ties.[106]

In addition, by focusing on "reason to believe" as the basis for the bar, rather than the seriousness of the crime, the proposed provision is ultra vires and unconscionably limits the eligibility for asylum of those most in need of protection. The effect of the Proposed Rules would be to expand the number and type of convictions for which an analysis of eligibility is required, sweeping in even petty offenses that would otherwise not trigger immigration consequences. Thus, an asylum applicant convicted of simple assault without use of a weapon, a non-violent property crime, or even possession of under 30 grams of marijuana for personal use (otherwise exempted from the reach of the Proposed Rule), could trigger a bar to asylum if the adjudicator concludes she has "reason to believe" the offense was committed in furtherance of gang activity.[107] In making these determinations, asylum adjudicators would be unable to rely on uncorroborated allegations contained in arrest reports, but could nevertheless shield their decisions by relying on discretion.[108]

The Proposed Rules thus invite extended inquiry into the character of young men of color who otherwise have meritorious asylum claims, based on information gained through racially disparate policing practices. These rules multiply the harm to asylum seekers of color subject to racially disparate policing that results in racially disparate rates of guilty pleas to minor offenses. This same population is overrepresented in gang databases, which are notoriously inaccurate, outdated, and infected by racial bias.[109]

---

[105] For an illustration of Immigration and Customs Enforcement's propensity to make gang allegations on the basis of questionable if not fabricated evidence, and the deference to which the evidence is often granted by immigration adjudicators, *see* Mark Joseph Stern, "Bad Liars," *Slate*, May 16, 2018, https://slate.com/news-and-politics/2018/05/federal-judge-accused-ice-of-making-up-evidence-to-prove-that-dreamer-was-gang-affiliated.html.

[106] See Yvette Cabrera, "New ICE Tactic Raises Questions About Due Process," *ThinkProgress*, October 6, 2017, https://thinkprogress.org/ice-targets-gangs-6775356473a8/; Rebecca Hufstader, "Immigration Reliance On Gang Databases: Unchecked Discretion And Undesirable Consequences," 90 *New York University Law Review* 90 (2015): 671.

[107] Page 69649 of the Proposed Rules notes that the applicable standard for determining when to apply the bar on asylum seekers convicted of a crime involving criminal street gangs is "reason to believe," as used in 8 U.S.C. § 1182(a)(2)(c), and that the asylum adjudicator may consider "all reliable evidence" in making their decision.

[108] *See Garces v. U.S. A.G.*, 611 F.3d 1337, 1349-50 (11th Cir 2010) (reversing finding of "reason to believe" that the respondent was a participant in drug trafficking based on unsubstantiated arrest reports); *Matter of Rico*, 16 I.&N. Dec. 181, 185-86 (BIA 1977) (relying on pre-hearing admissions to uphold finding of inadmissibility).

[109] Annie Sweeney and Madeline Buckley, "Chicago police gang data collection faulted by city's inspector general as unchecked and unreliable," *Chicago Tribune*, April 11, 2019, https://www.chicagotribune.com/news/breaking/ct-met-chicago-police-gang-data-04112019-story.html; Anita Chabria, "A routine police stop landed him on California's gang database. Is it racial profiling?," *Los Angeles Times*, May 9, 2019, https://www.latimes.com/politics/la-pol-ca-california-gang-database-calgang-criminal-justice-reform-20190509-story.html.

25

AR.08443

**VIII.** **The Proposed Rules are ultra vires to the federal immigration statute to the extent they purport to bar eligibility through a categorical exercise of discretion**

When Congress speaks clearly through a statute, the plain meaning of that statute governs.[110] Congress by statute permits the Attorney General to designate certain categories of offenses as "particularly serious crimes."[111] As such, Congress *explicitly* permitted the Attorney General to designate a non-aggravated felony to be a particularly serious crime and thus to disqualify a person from asylum. In the context of asylum, all aggravated felonies are *per se* particularly serious crimes and the Attorney General "may designate by regulation [other] offenses that will be considered to be" a particularly serious crime for purposes of asylum.[112]

Here, however—seemingly in an attempt to insulate the Proposed Rules from review, the agencies attempt to designate new bars to asylum both by designating them as "particularly serious crimes" pursuant to 8 U.S.C. § 1158(b)(2)(B)(ii) and rendering them categorically exempt from a positive discretionary adjudication of asylum pursuant to 8 U.S.C. § 1158(b)(2)(C). This effort is unlawful. Section 1158(b)(2)(B)(ii) does permit the Attorney General to, if he wishes, attempt to designate some classes of offenses as particularly serious crimes; such designations are reviewable for legal error (and as explained above, the commenters believe these expansions are unlawful).[113] However, if the offense is not a particularly serious crime, then a discretionary decision must be rendered on the application. It is true that the Attorney General may also provide for "additional limitations and conditions" on asylum applications so long as they are "consistent" with the with the asylum statute.[114] In this case, however, the Proposed Rules add sweeping categories of offenses that automatically remove an applicant from the consideration of discretion—a regulatory proposal that is ultra vires to the plain text of the statute.

To the extent that the proposed rules would adopt a bar to asylum based on a categorical discretionary bar, rather than a particularly serious crime designation, they are similar to the rules struck down by numerous Circuit Courts of Appeal in the context of adjustment of status for those considered by law to be "arriving aliens." Purporting to exercise discretion categorically, then-Attorney General Reno putatively rendered that class of noncitizens ineligible for adjustment of status, a determination that is ordinarily discretionary, even though the statute seemed to allow eligibility. Multiple Circuit Courts of Appeal struck down the proposed regulations, finding them to reflect an impermissible reading of the statute in light of the fact that

---

[110] See, *e.g.*, *Robinson* v. *Shell Oil Co.*, 519 U.S. 337, 340 (1997).

[111] 8 U.S.C. § 1158(b)(2)(B)(ii).

[112] *Id.* The Attorney General has not designated "substantial battery" to be a particularly serious crime for any purpose, including for purposes of ineligibility to seek asylum.

[113] 8 U.S.C. § 1252(a)(2)(D).

[114] 8 U.S.C. § 1158(b)(2)(C); *see also* 8 U.S.C. § 1158(d)(5)(B).

Congress carefully defined in the statute the categories of people eligible to apply for adjustment of status.[115]

The same logic applies here. In the asylum statute, Congress explicitly made the commission of a particularly serious crime a bar to asylum. The canon of interpretation known as *expressio unius est exclusio alterius* instructs that,"expressing one item of [an] associated group or series excludes another left unmentioned."[116] The Proposed Rules attempt to create numerous categories of discretionary "pseudo-particularly serious crimes," barring asylum through a categorical exercise of discretion even if those offenses are ultimately found not to be particularly serious crimes. Such an effort violates this canon of interpretation, and places the Proposes Rules ultra vires to the statute.

---

[115] The First and Ninth Circuits found the regulations contrary to clear statutory command. *Succar v. Ashcroft*, 394 F.3d 8, 29 (1st Cir. 2005); *Bona v. Gonzales*, 425 F.3d 663, 668-71 (9th Cir. 2005). Other courts invalidated the adjustment regulations under "Step Two" of *Chevron*. Those courts found some ambiguity in the statute, but found a per se discretionary bar not based on a permissible construction of the eligibility standards set forth in the governing statute in light of the statutory scheme and congressional intent. *Zheng v. Gonzales*, 422 F.3d 98, 116-20 (3d Cir. 2005) (invalidating regulation precluding category of people from applying to adjust status "[g]iven Congress's intent as expressed in the language, structure, and legislative history of INA section 245 [8 U.S.C. § 1255]"); *Scheerer v. United States Attorney General*, 445 F.3d 1311, 1321-22 (11th Cir. 2006). This reasoning would likewise be applicable to the proposed rule. Where Congress went through the trouble to create a comprehensive statutory scheme to define asylum eligibility, the agency cannot preempt that in the guise of discretion by creating out of whole cloth a separate set of eligibility criteria.

[116] *United States* v. *Vonn*, 535 U.S. 55, 65 (2002).

27

AR.08445

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 08, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9eby-6qx4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0035
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Malena Mayorga

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that this nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

I am myself an immigrant from El Salvador who has lived in the U.S. for close to 40 years. My family fled extreme violence when i was a child and I am deeply concerned that this rule change would send other people who have fled violence back to danger and death.

I work with immigrant community members daily, and am concerned this rule would put many more people in life-threatening danger. I repeatedly hear stories of the extreme violence asylum seekers have survived and find it unbelievable that they must face more persecution when they arrive here. Everyone has a right to live free of violence, no matter their background.

I have also worked with incarcerated and formerly incarcerated people. I strongly think it's wrong to punish people a second time after they've completed their sentences. Deportation is often a matter of life and death. No one should be given a death sentence for crossing a border in order to survive.

The values this country professes demand it to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more

AR.08446

people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook.The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. This country's harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal immediately.

AR.08447

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 09, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9ec5-4d3q
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0036
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Martha J.
**Address:**
  936 Evert Ct.
  Paso Robles,  CA,  93446

## General Comment

I oppose the new rule change that would exclude many asylum seekers based on future contact with the U.S.'s flawed criminal legal system. The Trump administration and his adviser Stephen Miller have made a mockery of the Asylum laws. They are cruel and inhumane, cause trauma to families and involve racial profiling.

AR.08448

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 09, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9ecf-dkzg
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0037
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Judy Wright

## General Comment

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them. For these reasons, I call upon the Trump administration to withdraw this proposal.

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 09, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9ech-rkh9
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0038
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Dana Chou

---

## General Comment

I strongly oppose the proposed rule change. As one who has worked for several organizations serving asylum seekers, other immigrants, and refugees I know that U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

Rather than honoring American ideals of compassion, fairness, and respect for human rights the proposed rule change would make many people with involvement in our flawed legal system totally ineligible for asylum. Both our criminal and immigration systems already routinely uses the 'criminal' label as a way of stripping people of their rights and humanity, and disproportionately target people of color. The proposed rule change would only make these injustices worse and inflict further harm on people who have already suffered greatly and bar their path to establishing legal presence.

Where is the logic in demonizing and persecuting people without immigration status while simultaneously making legal status impossible for them to achieve? The proposed rule offends against logic, against compassion, against human rights, and against international law to which the US has long subscribed.

Therefore I call upon the Trump administration to withdraw this proposal.

AR.08450

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 09, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9ech-mabs
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0039
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Megan Hopkins
**Address:**
    5729 Engle Road
    Apt 8
    Carmichael, CA, 95608
**Phone:** 3233462185

## General Comment

I am writing to express my grave concern over the proposed changes. These proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. I submit these comments to express opposition to the entirety of the Proposed Rules concerns with the administration's continued efforts to exclude refugees from obtaining the security and stability the United States asylum system has long promised. I urge that the Proposed Rules be rescinded in their entirety.

The proposed rules needlessly and cruelly exclude bona fide refugees from asylum eligibility.

The United States asylum system was first codified in statute through the Refugee Act of 1980, described by one prominent scholar as a bipartisan attempt to "reconcile our rhetoric with our law, our national immigration policy and our international treaty obligations so that we could maintain a consistent posture towards the world as a nation with a strong humanitarian tradition and a unique historic role as a haven for persons fleeing oppression." The Actamong other measures designed to bring the United States domestic legal code into compliance with the provisions of the United Nations Protocol Relating to the Status of Refugeescreated a "broad class" of refugees eligible for a discretionary grant of asylum.

The asylum protections provided by United States law are sacred. Asylum provides those fleeing horrors with physical safety, a path to citizenship and security, and the opportunity to reunite with immediate family members who may still remain abroad in danger. Many see the domestic asylum system as a symbol of the United States' commitment never to repeat its failure to save thousands of Jewish refugees refused entry to the United States on the St. Louis and others fleeing the Holocaust. Others point to the critical role that domestic asylum policy plays in serving the United States' foreign policy interests abroad. For those individuals seeking asylum in the United

AR.08451

States, the stakes could not be higher—a claim denied often means return to death or brutal persecution.

The laws, regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the evidentiary burden of establishing their eligibility for asylum in the face of a complex web of laws and regulations, without the benefit of appointed counsel and often from a remote immigration jail. The obstacles to winning asylum are exceedingly high; indeed in some parts of the country and before certain immigration judges, almost no one succeeds. Today, newly imposed barriers to accessing asylum in the United States are breathtaking in scope, with those seeking safety at the southern border subject to return to dangerous conditions in Mexico and an overlapping web of policies that preclude asylum eligibility for countless migrants simply because of their national origin, manner of entry, or their flight path. There are consistent reports of the documented deaths and brutalities endured by those who sought but were denied asylum protections in the United States.

Specifically, the bars to asylum based on allegations of criminal conduct are already sweeping and over-broad in nature and scope. Any conviction for an offense determined to be an "aggravated felony" is considered a per se "particularly serious crime" and therefore a mandatory bar to asylum. "Aggravated felony" is a notoriously vague term, which exists only in immigration law. Originally limited to murder, weapons trafficking and drug trafficking, it has metastasized to encompass hundreds of offenses, many of them neither a felony nor aggravated, including petty offenses such as misdemeanor shoplifting, simple misdemeanor battery, or sale of counterfeit DVDs. The existing crime bars should be narrowed, not expanded. Even for those not categorically barred from relief, the immigration adjudicator maintains full discretion to deny asylum.

Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed. The agencies' efforts to add seven new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel. The Proposed Rules drain the phrase "particularly serious crime," 8 U.S.C. 1158, of any sensible meaning.

The Proposed Rules are also arbitrary and capricious. They would constitute a marked departure from past practice. And the agencies have proffered no evidence or data to support these changes.

AR.08452

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 09, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9eci-txlc
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0040
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Carolina Martin Ramos, Esq.
**Organization:** Centro Legal de la Raza

---

## General Comment

As the Director of Programs and Advocacy at Centro Legal de la Raza and authorized to submit comment on behalf of Centro Legal de la Raza in Oakland, CA, I write to express our strong organizational opposition to this proposed rule change. We are members of the public and stakeholders working with asylum seekers. We believe strongly that our nation must comply with obligations mandated under international human rights laws and treaties. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum. The United States must welcome and properly adjudicate the applications of asylum seekers fleeing persecution and torture outside of the U.S.

It is well documented by international refugee and human rights experts, the U.S. Citizenship & Immigration Services (USCIS) Refugee, Asylum and International Operations (RAIO) (see asylum officer and RAD officer training materials), and relative case law that asylum seekers and refugees are often charged with crimes or detained in their home countries precisely because they are being persecuted or tortured by government actors in their home countries. An asylum seeker's asylum claim may rest on extrajudicial and unjust criminalization and detention as their evidence of persecution and/or torture on account of a protected ground.

With this understanding, the U.S. congress determined that criminal conduct & convictions that do not rise to the level of: aggravated felonies; a "particularly serious crime" such that they are a danger to the U.S.; committed a "serious nonpolitical crime" outside the United States; or pose a danger to the security of the United States would not bar applicants from eligibility for asylum in the U.S. Besides these restrictions, we have bars to asylum that prohibit grants of asylum for applicants implicated in terrorism or persecution of others. The United States has entrusted specially trained asylum officers and immigration judges with discretion to make determinations about whether or not applicants are deserving of positive discretion. This proposed rule to further limit asylum seekers from gaining these humanitarian protections would undermine years of legal jurisprudence & violate our obligations under international laws and treaties. The multiple attacks against asylum seekers under this administration and the Trump administration's flagrant support of White supremacy combined with reprehensible

AR.08453

statements against Mexicans, Central Americans, and Africans and inhumane policies against migrants of color demonstrate that these proposed regulations & policies are motivated by pure malevolence and racism.

Racial profiling in the criminal justice system in the U.S. poses the threat of an unequal justice to migrants of color. We live and work in communities where we witness and experience racial profiling and disparate treatment in the criminal justice system. We have witnessed and experienced the increased criminalization of immigrant communities of color and in border states at the Mexico - U.S. border that are now, highly militarized. Racial disparities in arrests, convictions, and sentencing in the U.S. are widely known and documented. The U.S. criminal justice system has a long history of disenfranchising people of color through racist policies employed in policing, mass incarceration, & other methods widely employed and administered throughout the criminal justice system. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color. Migrants of color in particular are much more likely to suffer racial profiling that violates fundamental rights under the Fourth and Fifth Amendments of the U.S. Constitution and leads to grave collateral consequences such as removal to a country where they may be persecuted, tortured, or killed. Therefore, any proposed policies or regulations that disqualify eligibility for the protections of asylum because of criminal convictions as proposed; would implicate an unequal justice that threatens the constitutional rights we hold dear and so many have died for. The proposed changes would cause dangerous regressions in any historical achievements made towards an more equal justice in the U.S. We implore you to reject these and any proposed regulations and policies that would undermine or contradict the rights based law and policy we have created through harmonization with international human rights laws and standards.

This proposed rule would punish people who've already endured mistreatment & racial profiling in the criminal legal system a second time -- with deportation back to the persecution & torture they fled. This is profoundly immoral and makes a mockery of due process. For these reasons, we call upon the Trump administration to withdraw this proposal.

AR.08454

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 09, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9eci-62om
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0041
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Steven Volk

---

## General Comment

I write to record, in the strongest possible manner, my opposition to this proposed rule change. Despite this administration's attempt to close our nation's doors to all immigrants, I and millions of my fellow citizens strongly believe that our nation must welcome the, particularly those fleeing violence in their home countries. U.S. law upholds the protections of the international Refugee Convention. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system, and I am quite concerned about the way that this proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. I believe we must recognize the humanity of every person, including immigrants, something that this proposed rules change doesn't do. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For the love of God, stop blaming immigrants for every ill that besets our country - treat them as humans and respect the law that requires their protection. Withdraw this proposal!

AR.08455

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 09, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9ecj-88of
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0042
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Dominique Poirier
**Address:**
   7630 Little River Tpke
   #900
   Annandale,  22003
**Email:** dominique@justneighbors.org
**Phone:** 703-979-1240

---

## General Comment

As the Director of Legal Services at Just Neighbors, a Virginia-based non-profit immigration legal service provider, I am writing to register our strong opposition to the proposed changes to the asylum regulations posted in the FR of 12/19/2019. The proposed changes would adversely affect asylum seekers; most particularly, low-income asylum seekers, many of whom our non-profit serves. The following are our strongest concerns regarding the proposed changes:
1) Expansion of list of crimes which bar a refugee from applying for asylum.
a) This proposed expansion includes alien smuggling, including the "smuggling" of ones' children. However, many asylum-seekers are coming as family units and the addition of the alien smuggling category of "crimes" which bar one from applying for asylum is nothing less than a veiled attempt to exclude our mostly Central Americans clients from applying for asylum merely because they are escaping violence in Central America along with their children. It is at least arbitrary and capricious and seemingly racially motivated.
b) The proposed expanded list also includes an alien who is accused of acts of domestic battery. Again, this is a sweeping change and not based on any evidence which would support such a change. Moreover, the grant of asylum is already discretionary; therefore the addition of an exclusionary category based on an accusation of domestic battery, as opposed to a conviction, is unwarranted.
c) The proposed expanded list in it's entirety is unwarranted. The list of crimes which constitute a bar to asylum is already overbroad and should not be further broadened. There is no evidentiary basis to warrant such a broadening and, as noted above, asylum is already discretionary, therefore any convictions or arrests can be considered by an asylum officer/IJ when making a decision.
2) Applicants would need to wait 365 days to be eligible for an EAD: There is no evidentiary basis which warrants changing the wait time to apply for an EAD from 150 days to 365 days. The notion that applicants are

AR.08456

applying for asylum merely to acquire an EAD is not based on any evidence. Just Neighbors has assisted countless asylum seekers both here in Virginia as well as near the Southern border. Each individual we have worked with has a credible claim to asylum and has or will file for asylum based on the persecution suffered, not based on any alleged desire to acquire a work permit. Any notion claiming asylum seekers only wish to have a work permit is not based on reality and is arbitrary and capricious.

3) Applicants would not be eligible for an EAD if they did not enter legally through a POE: By law, asylum seekers can apply for asylum regardless of manner of entry. Any attempt to limit a work permit to those who enter legally through a POE is in contravention of the law and is unwarranted.

4) The issuance of an EAD would be discretionary: Presently, USCIS officers adjudicating EAD applications do not have to weigh any positive or negative equities when determining whether to issue an EAD. The addition of this proposed criteria would pose an undue burden on USCIS officers adjudicating applications and serve to do nothing but lengthen adjudication times and overburden adjudicating officers. Once again, the proposed change is not based on any rational explanation and is arbitrary and capricious.

As a non-profit which represents numerous asylum seekers, we submit that all the proposed changes, not merely those listed above, are unwarranted, not based on any real evidence, and are at least arbitrary and capricious and possibly motivated to exclude Central American asylum seekers in particular.

Thank you,
Dominique F. T. Poirier
Director of Legal Services
Just Neighbors
7630 Little River Tpke, Suite 900
Annandale, VA 22003

AR.08457

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 09, 2020
**Status:** Posted
**Posted:** January 10, 2020
**Tracking No.** 1k4-9ecj-wz7u
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0043
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Suchi Mathur

## General Comment

I strongly oppose this proposed rule change to asylum eligibility. As an attorney at the Bronx Defenders, I work with real people every day - some citizens and some noncitizens, and see how our criminal justice system can unfairly target low-income people of color. As a result, I am deeply concerned that this rule will endanger the lives of many people, harm our communities, and tear families apart, based on contact with the criminal legal system that is in no way probative of their danger or potential harm to the community.

The U.S. must serve as a refuge for people fleeing persecution, and our law enshrines the protections of the international Refugee Convention, drafted after the Holocaust and massive genocide during World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. There are already innumerable barriers, legal and logistical, to people seeking and being granted asylum in the U.S.

This proposed rule would unlawfully make this process - meant to be a lifeline to people in need - even less accessible, and impermissibly inject racial profiling into the asylum process. This would in turn eviscerate one of the most important defenses people who have lives and families and often contribute in numerous different ways to their communities - have against deportation.

This proposed rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. For every Harvey Weinstein who is actually arrested, there are thousands of wealthy men who escape consequence for their illegal acts and crimes - while thousands of poor people of color are arrested on extremely minor charges every day. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

AR.08458

In sum, this rule should not be implemented.

AR.08459

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 10, 2020
**Status:** Posted
**Posted:** January 12, 2020
**Tracking No.** 1k4-9ed5-k1ta
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0044
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Jay Martin Steinman
**Address:**
  1202 Hampshire Street
  Apt 13
  San Francisco,  CA,  94110
**Email:** jaysteinman@hotmail.com
**Phone:** 4156484882

## General Comment

I wish to register my strong opposition to the proposed rule. It creates new limits to asylum which tread a path that Congress declined to take. The United States has a duty under treaty and domestic law to maintain a functioning asylum system; the proposed rule is just the latest in a series of measures to destroy that system from within.

I have worked with asylum seekers for over ten years, and have known a good many with compelling asylum cases which would have been thrown out if the proposed rule were in effect. As it is, adjudicators are able to weigh any criminal history against other factors, and make a balanced determination whether asylum is warranted. The proposed rule would take away that discretion for a whole new class of cases, forcing them to be dismissed out of hand. I have seen the process up close, and know the importance of letting those claims be heard, argued, and considered. I urge the government to rescind the proposed rule.

Please see the attached letter for my full comments.

## Attachments

Regulations_comment_Proposed_rule_84 _FR_69640

AR.08460

 **CENTRAL AMERICAN RESOURCE CENTER**
**CENTRO DE RECURSOS CENTROAMERICANOS**

January 10, 2020

RE: Proposed rule # 84 FR 69640
EOIR Docket No. 18-0002

I am writing in my personal capacity, and not on behalf of any organization.

I want to register my opposition to the proposed rule that would introduce new mandatory criminal bars for asylum, in addition to getting rid of automatic reconsideration for discretionary asylum denials.

The proposed rule is just one of many regulations and policy changes aimed at dramatically reducing the number of people who may seek asylum and limiting the number of applications that are approved. Improving the regulatory framework for asylum is a legitimate purpose of government, but a wholesale attempt to destroy asylum as a pathway to legal status is not. Asylum is grounded in treaty obligations which are reflected in U.S. domestic law. The government has no authority to blow up the legal framework for asylum, whether by chopping it down in one blow or by tearing it apart piecemeal, as is being done here.

That said, I will address the content of the instant rule – specifically, the new criminal bars to asylum. I will start with legal objections, and then go on to my personal experience with the issue.

Up to now, Congress has approved a limited set of criminal bars for those seeking asylum – conviction for an aggravated felony or a particularly serious crime, as well as other security-based bars for things like terrorist activity and national security threats. In 1990, Congress ratified in law the particularly serious crime bar that had existed in previous regulation, and in 1996 it added the aggravated felony bar. It has had ample opportunity to go beyond those and provide a broader set of criminal bars; yet it declined to do so in 1996, and it has declined to do so in the two decades since then.

This statutory scheme reflects the nature of asylum as not merely a benefit, but an obligation of the United States to protect people at risk of persecution. Asylum has not been categorically denied for those with DUI's, or those who have showed a fake ID, or those who helped a relative get across the border, because the gravity of those offenses is outweighed by our country's obligation to provide a haven from persecution. This is not merely  my personal opinion. It is that of Congress, which expanded criminal bars in 1996 but chose to go no further: not then, and not since. The new regulation, which would deny asylum in all of the circumstances listed above, thus cuts against the will of Congress. The Immigration and Nationality Act allows for discretionary denials for people who are not subject to mandatory bars; that allows adjudicators to view the entire pattern of a person's conduct, their risk of persecution, and other factors in order to come to a balanced determination. Under current policy, people can be denied asylum for lesser crimes,

but their claims must be heard and put into the balance, in concordance with the interests of justice. The new rule would replace those scales with a wall.

I have spent over ten years working with people seeking asylum, in three different nonprofits that provide immigration legal services. Most of the people I have worked with would not be affected by these criminal bars, but a few would – and for many of those, their entire criminal history consisted of one mistake: One DUI, or one domestic dispute. I'm not apologizing for their behavior, and I haven't seen them apologize for it either. They have been punished by the criminal justice system, and most of them turned their life around after that experience, not wanting to be defined by their worst moment. I've known people with those convictions to be devoted parents, churchgoers, and providers for their families.

For these people, in their asylum proceedings, their history has been a hurdle to overcome; yet all of them knew that the judge (or the asylum officer) had the authority to see the full picture of their lives and rule accordingly. The mandatory bars in the propsed rule would throw away that important discretionary element. No matter how severe the threat of persecution, no matter how they live their lives or how long ago was the crime, they would be cast aside. If someone can show that they are in are threatened in their home country, and they pose no danger here, no public interest is served by not allowing them to make a case for asylum. I've known good people with horrific stories of persecution who would be denied that chance if the proposed rule goes into effect.

For all the reasons mentioned above, I respectfully request that the administration rescind its proposed rule.

Sincerely,

J. Martin Steinman
Paralegal

AR.08462

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 10, 2020
**Status:** Posted
**Posted:** January 12, 2020
**Tracking No.** 1k4-9ed3-n12f
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0045
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Gracia Valliant

---

## General Comment

I oppose these restrictions on asylum seekers. Anytime there is discretion left to a government official or agent leave the door open for an arbitrary decision not based on actual fact.
While someone who has committed a heinous crime might be excluded, it seems to me that these proposals leave the door open to excluding someone arbitrarily.
Fairness and justice should be the first rule when considering asylum for an individual coming from terror and inhumane treatment or fear for their life.

AR.08463

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 10, 2020
**Status:** Posted
**Posted:** January 12, 2020
**Tracking No.** 1k4-9edd-gyfb
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0046
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Bonita Gutierrez
**Address:**
　436 14th Street
　801
　Oakland,　CA,　94612
**Email:** bonita.gutierrez.esq@gmail.com

## General Comment

I write to oppose these proposed additional restrictions on asylum status. The laws, regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the evidentiary burden of establishing their eligibility for asylum in the face of a complex web of laws and regulations, without the benefit of appointed counsel and often from a remote immigration jail. The obstacles to winning asylum are exceedingly high; indeed in some parts of the country and before certain immigration judges, almost no one succeeds. Today, newly imposed barriers to accessing asylum in the United States are breathtaking in scope, with those seeking safety at the southern border subject to return to dangerous conditions in Mexico and an overlapping web of policies that preclude asylum eligibility for countless migrants simply because of their national origin, manner of entry, or their flight path. There are consistent reports of the documented deaths and brutalities endured by those who sought but were denied asylum protections in the United States.

Specifically, the bars to asylum based on allegations of criminal conduct are already sweeping and over-broad in nature and scope. Any conviction for an offense determined to be an "aggravated felony" is considered a per se "particularly serious crime" and therefore a mandatory bar to asylum. "Aggravated felony" is a notoriously vague term, which exists only in immigration law. Originally limited to murder, weapons trafficking and drug trafficking, it has metastasized to encompass hundreds of offenses, many of them neither a felony nor aggravated, including petty offenses such as misdemeanor shoplifting, simple misdemeanor battery, or sale of counterfeit DVDs. The existing crime bars should be narrowed, not expanded. Even for those not categorically barred from relief, the immigration adjudicator maintains full discretion to deny asylum.

Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed. The agencies' efforts to add

AR.08464

seven new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel. The Proposed Rules drain the phrase "particularly serious crime," 8 U.S.C. 1158, of any sensible meaning.

The Proposed Rules are also arbitrary and capricious. They would constitute a marked departure from past practice. And the agencies have proffered no evidence or data to support these changes.

One assumption fundamentally underlying the Proposed Rules, for example, is that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. But no evidence is provided to support that assumption, and a criminal record, does not, in fact, reliably predict future dangerousness. The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence. Conviction for a crime does not, without more, make one a present or future dangerwhich is why the Refugee Convention's particularly serious crime bar, made part of United States law through 8 U.S.C. 1158, should only properly apply if both (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows that she is a present or future danger.

Similarly, the Proposed Rules fail to address or account for the fact that a significant number of people may agree to plead to a crime as to avoid the threat of a severe sentence; not only is a conviction an unreliable predictor of future danger, it can also be an unreliable indicator of past criminal conduct. In addition, the Proposed Rules do not address and make no exception for convictions for conduct influenced by mental illness or duress.

The Board of Immigration Appeals has cautioned that, "in light of the unusually harsh consequences which may befall a [noncitizen] who has established a well-founded fear of persecution; the danger of persecution should generally outweigh all but the most egregious of adverse factors." Yet because of the categorical nature of the seven news bars proposed here, asylum seekers will be precluded from obtaining protection on the basis of a vast array of conduct, without any discretion left to the immigration adjudicator to determine whether the circumstances merit such a harsh penalty. Indeed, in the case of the domestic-violence related ground, the categorical bar will be imposed on the basis of mere allegations of conduct without any adjudication of guilt.

AR.08465

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 11, 2020
**Status:** Posted
**Posted:** January 12, 2020
**Tracking No.** 1k4-9edq-h3jv
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0047
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Mary Magdalene P

---

## General Comment

Interesting to read comments in opposition of a common sense proposal. Each & everyone of the ones in opposition get monetary compensation from the illegal immigrants. Mostly economic asylum seekers rather truly political asylum.

As far as I know as a regular citizen, almost all applicants get refusal even though 90% go to their hearings & have lawyers while in the US. So it is alarming to realize their request lack of legal merits because they aren't truly political assyles.

Question for the people opposing this proposal: are you okay with whites driving drunk? Or you just are okay with illegal immigrants driving drunk?

A proposal requesting the minimum good character and behavior in all applicants isn't evil isn't bigotry! Stop making money from your so called "non profit" organization. If you are a lawyer you are making tons of money from your clients. Stop pretending you are doing this only as charity.

I SUPPORT this proposal.

AR.08466

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 11, 2020
**Status:** Posted
**Posted:** January 12, 2020
**Tracking No.** 1k4-9ee3-4df8
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0048
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Barbara Singer
**Address:**
    PO Box 2512
    Tijeras,  87059
**Email:** bsinger3000@gmail.com
**Phone:** 5053843160

## General Comment

I am writing to express strong opposition to the December 19, 2019 proposed rule that will further impede many people seeking asylum in our country. Having had person experience and knowledge of the brutal conditions people are fleeing, I only can be impressed by the courage of those I have met.

I am concerned that our nation must welcome people fleeing violence, and racial profiling can not be introduced into this process. Immigrants are a vital part of my community, my neighborhood, and my state.

Thank you for your consideration.

Respectfully,

Barbara Singer

AR.08467

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 12, 2020
**Status:** Posted
**Posted:** January 12, 2020
**Tracking No.** 1k4-9ee6-sj1h
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0049
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Sharad Jain

---

## General Comment

I am writing to urge the Department of Homeland Security and the Department of Justice to rescind the set of Proposed Rules issued on December 19, 2019 that would make it more difficult for individuals seeking asylum in the United States. These proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. I submit these comments to express my opposition to the entirety of the Proposed Rules and my grave concerns with the administration's continued efforts to exclude refugees from obtaining the security and stability the United States asylum system has long promised. I urge that the Proposed Rules be rescinded in their entirety.

The barriers to asylum for those previously involved in the criminal legal system are already sweeping in scope; adding more barriers is cruel and unnecessary. The laws, regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the burden of establishing their eligibility for asylum in the face of a complex web of laws and regulations, without the benefit of appointed counsel and often from a remote immigration jail. Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed. The agencies' efforts to add these new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel.

The Proposed Rules are also arbitrary and are not based on evidence. There is no evidence to support the assumption that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence.

Furthermore, the Proposed Rules cruelly disregard the connections between trauma and involvement in the criminal legal system. The harsh nature of the Proposed Rules is especially evident when viewed through a trauma-informed lens. Asylum seekers are an inherently vulnerable population because of the trauma they have experienced in their countries of origin and, often, along the journey to find safety. Existing literature suggests

AR.08468

that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD). Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma; some turn to drugs and alcohol in an effort to self-medicate. The proposed new bars to asylum include any drug-related conviction (with one exception for a first minor marijuana offense) and any second conviction for driving under the influence. This approach is not only cruel but also ignores the evidence. Particularly given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not with deportation order.

Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply cruel. As a physician who works largely with immigrant populations, I know how difficult it is for individuals seeking asylum to be granted asylum, and I am appalled that this Administration is making the process more difficult without offering any evidence for why these changes are needed. I strongly urge that the new Proposal Rules be rescinded entirely.

AR.08469

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 12, 2020
**Status:** Posted
**Posted:** January 12, 2020
**Tracking No.** 1k4-9eeb-p3t2
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0050
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Diana Rodriguez

---

## General Comment

This rule perpetuates the human rights violations this administration has championed over the last 2 years. There is enough argument against this rule that is based on the law and actual field data and yet this rule is based on feelings of xenophobia, pseudofacts and complete ignorance of basic human rights. It is unconceivable that an individual may be separated from his family due to an accusation without conviction. This rule promotes frivolous accusations against migrants and puts in danger their lives and their families. Those are the same migrants who already earn way below minimum wage and receive food donations to make it through the month. How much more does this country need to opress them? There are plenty of jobless hoodlums breaking the law that justice should go after, not the migrant hard workers, the studious pupils, the all-giving parents, innocent children and vulnerable elders.

AR.08470

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 12, 2020
**Status:** Posted
**Posted:** January 12, 2020
**Tracking No.** 1k4-9eek-utn9
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0051
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Joyce Anderson
**Address:**
    2221 Country Lane
    Minnetonka,  55305-3113
**Email:** jgaanderson@excite.com
**Phone:** 9525460696

## General Comment

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn remove the heart of one of the most important defenses community members have against deportation.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08471

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 12, 2020
**Status:** Posted
**Posted:** January 13, 2020
**Tracking No.** 1k4-9eep-4zs4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0052
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Sara Koch

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08472

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 12, 2020
**Status:** Posted
**Posted:** January 13, 2020
**Tracking No.** 1k4-9eep-5xhd
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0053
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Deborra Sanders

## General Comment

Please support a compassionate and flexible policy regarding migrants seeking asylum. I prefer that our country be a welcoming place for asylum seekers.

AR.08473

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 12, 2020
**Status:** Posted
**Posted:** January 13, 2020
**Tracking No.** 1k4-9eeq-u5h6
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0054
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Laurie Gauer

## General Comment

I write to express not strong opposition to this time change. I believe in the inherent worth and dignity of every person, including immigrants, and that we must protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them. For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08474

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 13, 2020
**Status:** Posted
**Posted:** January 13, 2020
**Tracking No.** 1k4-9ef2-bhro
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0055
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** mark voorhees
**Address:**
    18386 cattail ct
    Eden prairie,  55346
**Email:** Judyandmark4@comcast.net
**Phone:** 9523039531

## General Comment

We need to supportive of people leaving their place of home due to physical violence, fear for their lives, or climate destroyed habitat. These people are fleeing not because they want to but they need to in order to survive. We must be willing to accept.

AR.08475

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 13, 2020
**Status:** Posted
**Posted:** January 13, 2020
**Tracking No.** 1k4-9ef3-7ms5
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0056
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** georgia connelly

## General Comment

Refugees need our help. It would be unamerican to turn them away.

AR.08476

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 13, 2020
**Status:** Posted
**Posted:** January 13, 2020
**Tracking No.** 1k4-9ef7-nxon
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0057
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Migrant Justice
**Address:**
  179 S Winooski Ave
  Unit 202
  Burlington, VT, 05401
**Email:** info@migrantjustice.net
**Phone:** 8025408370

## General Comment

I write to express my strong opposition to this proposed rule change.

As a grassroots farmworker organization, at Migrant Justice we with immigrant community members daily, and are concerned this rule would put many people in danger. We support many people in asylum applications and understand what an incredibly difficult and painful process the asylum application process is.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This

AR.08477

is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them

For these reasons, we call upon the Trump administration to withdraw this proposal.

AR.08478

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 13, 2020
**Status:** Posted
**Posted:** January 13, 2020
**Tracking No.** 1k4-9efa-jskm
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0058
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Stephen Fusselman

---

## General Comment

I write to express my strong opposition to this proposed rule change. I think Trump is immoral, anti-American, and anti-Christian.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

My maternal grandfather was an immigrant from Europe who settled in Nebraska and became the civil engineer of a major Nebraska community.

Please, stop hating immigrants.

Steve Fusselman
Chaska, MN

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 13, 2020
**Status:** Posted
**Posted:** January 14, 2020
**Tracking No.** 1k4-9eff-4cp7
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0059
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Mary Salit
**Address:**
　　12407 12th Ave N
　　Plymouth,  MN,  55441
**Email:** m-salit@u.northwestern.edu
**Phone:** 7634430874

---

## General Comment

Denying asylum to someone who is in danger could cost that person their life. For that reason such denials should only be issued when there is a compelling reason. The reasons listed in thrbpropksed rule change are trivial, and not worth the lives they will cost.

"(1) any conviction of a felony offense"

Very few felonies merit the death sentence, which is what asylum denial can often amount to.

"(2) any conviction for "smuggling or harboring" under 8 U.S.C. 1324(a)"

This shocks the conscience in cases where the asylum seeker committed the offense for the purpose of bringing her own spouse, child or parent to safety. For a parent to try to save their child is not only undeserving of a death sentence -- it should be rewarded and aided.

"(3) any conviction for illegal reentry under 8 U.S.C. 1326"

Asylum is meant for desperate people. Repeatedly attempting to flee to US territory is the action of a truly desperate person, and should be interpreted as evidence of that desperation.

;"(4) any conviction for an offense "involving criminal street gangs""

This is unworkable vague. In addition, it sentences people who may be fleeing gangs to possible death at the

AR.08480

hands of those gangs, precisely because of the involvement they are trying to flee.

No compelling American interest is served by this rule change, while asylum seekers are irreparably harmed I oppose this change.

Thank you.

AR.08481

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 14, 2020
**Tracking No.** 1k4-9efp-l3yc
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0060
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Judith Blau
**Address:**
   75 Summit St
   Wellfleet,  MA,  02667
**Email:** judith_blau@unc.edu
**Phone:** 7747221223

## General Comment

What makes this country great is its diversity, and diversity is achieved when there is a continuous flow of refugees and migrants

AR.08482

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 14, 2020
**Tracking No.** 1k4-9efp-9dmy
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0061
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** nancy yeaw
**Address:**
  44 Harry Kemp Way
  25
  Provincetown,  02657
**Email:** nancymuir12@gmail.com
**Phone:** 5082460557

## General Comment

I am an 82 year old American citizen who views with horror the direction my country is heading. I strongly oppose this hateful, racially biased attempt to refuse even more people seeking refuge from violence and imminent danger in their country. This is not what our country stands for. Though we have certainly not been able to live up to the ideals we profess to stand for, the people of the United States do hope to try to do so. We need to help refuge seekers, not punish them. Please do not allow this .

AR.08483

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 14, 2020
**Tracking No.** 1k4-9efp-qrut
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0062
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Evelyn Jackson
**Address:**
    Box 906
    South Wellfleet,
**Email:** Evelyn156@comcast.net
**Phone:** 508-349-5128

---

## General Comment

I am a concerned human being who is in opposition to the proposed immigration law change

My great grandparents were killed in the
Holocaust Asylum matters Refuges are counting on our country to be a place where the words of the Statue of Liberty are still true

AR.08484

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 14, 2020
**Tracking No.** 1k4-9efq-f84n
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0063
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Brigid Finucane
**Address:**
  3911 White Cloud Drive
  Skokie,  60076
**Email:** gardengoddess1@comcast.net
**Phone:** 8472130713

## General Comment

I am writing to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

Brigid Finucane

AR.08485

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 14, 2020
**Tracking No.** 1k4-9efq-fqad
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0064
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Andrea Hanson

## General Comment

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.
Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process.
I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.
For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08486

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 14, 2020
**Tracking No.** 1k4-9efr-qur1
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0065
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Address:**
     MA,  02648
**Email:** klharperuu@aol.com

## General Comment

I write to express my strong opposition to the proposed rule change. As a local Minister many of my members are immigrants or live in immigrant families. I believe that our country must protect and welcome those fleeing violence in their countries of origin. As a person of color I have intimate experience with racial profiling and our flawed criminal justice system and do not want to see nonviolent immigrants refused entry because of their race or ethnicity.

AR.08487

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efr-llkm
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0066
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** L Michael Hager
**Address:**
    115 Shady Lane
    Eastham,  MA,  02642
**Email:** l_michaelhager@hotmail.com
**Phone:** 774-207-0674

## General Comment

As a concerned citizen I oppose the proposed new procedures for asylum.

In further limiting the right to asylum, the new procedures would expose asylum-seekers to death threats and gang violence in their home countries. They would constrain the legal protections afforded asylum-seekers in U.S. law under the Refugee Act of 1980 and diminish American values that would afford refuge to people fleeing violence, starvation, poverty or persecution. The rules are patently racist and discriminatory because they are aimed at asylum-seekers, the majority of whom are poor and people of color.

The proposed rules would allow racial profiling in the asylum process. It would punish people who have already endured mistreatment and racial profiling in the criminal legal system a second time by deporting them back to the very life-threatening environment they fled.

In our racially-biased criminal justice system, the harsh immigration laws drive mass incarceration and mass deportation to people of color.

Instead of reducing asylum protections, let us restore American values and afford protection to those fleeing danger,

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eft-b5b5
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0067
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Helen Lawrence
**Address:**
   436 14th Street
   Suite 801
   Oakland, 94612
**Email:** helen@oakimmigration.com
**Phone:** 5109220261

## General Comment

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41;
Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

January 14, 2020

To Whom it May Concern:

I am writing on behalf of the Law Office of Helen Lawrence in response to the above-referenced Proposed Rules
to express our strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum

AR.08489

published in the Federal Register on December 19, 2019.

I graduated from Harvard Law School in 2009 and I have been representing asylum seekers ever since, for over 10 years. My office has represented thousands of asylum seekers. Each member of my office has traveled to many of the countries that today's asylum seekers are fleeing from and observed firsthand the imminent danger our clients face there. We have volunteered along the border and in southern detention centers, meeting with recently arrived asylum seekers and hearing their stories. Day in and day out, we meet with asylum seekers as they prepare for their adjudications and in the meantime support themselves and their children. We observe the contributions they are making to the United States, be that economically or culturally, truly enriching the fabric of this nation.

For the reasons detailed in the comments that follow, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate to contact Helen Lawrence at (925) 788-6985 or helen@oakimmigration.com to provide further information.

Sincerely,
Helen Lawrence
Managing Attorney

---

# Attachments

LOHL Comment on Asylum Bars

AR.08490

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87,
1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and
Bars to Asylum Eligibility

January 14, 2020

To Whom it May Concern:

I am writing on behalf of the Law Office of Helen Lawrence in response to the above-referenced
Proposed Rules to express our strong opposition to the Proposed Rules to amend regulations
relating to eligibility for asylum published in the Federal Register on December 19, 2019.

I graduated from Harvard Law School in 2009 and I have been representing asylum seekers ever
since, for over 10 years. My office has represented thousands of asylum seekers. Each member
of my office has traveled to many of the countries that today's asylum seekers are fleeing from
and observed firsthand the imminent danger our clients face there. We have volunteered along
the border and in southern detention centers, meeting with recently arrived asylum seekers and
hearing their stories. Day in and day out, we meet with asylum seekers as they prepare for their
adjudications and in the meantime support themselves and their children. We observe the
contributions they are making to the United States, be that economically or culturally, truly
enriching the fabric of this nation.

For the reasons detailed in the comments that follow, the Department of Homeland Security and
the Department of Justice should immediately withdraw their current proposal, and instead
dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access
to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate
to contact Helen Lawrence at (925) 788-6985 or helen@oakimmigration.com to provide further
information.

Sincerely,
Helen Lawrence
Managing Attorney

AR.08491

**DETAILED COMMENTS in opposition to the Proposed Rules re Procedures for Asylum and Bars to Asylum Eligibility, 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41**

**TABLE OF CONTENTS [with jump-links]**

I. Introduction

II. The Proposed Rules unnecessarily and cruelly exclude bona fide refugees from asylum eligibility

III. The Proposed Rules violate the letter and spirit of United States international treaty obligations

IV. Those precluded from asylum eligibility will be gravely impacted even if granted withholding or protection under the Convention Against Torture

V. The Proposed Rules will result in "mini-trials" in immigration court, undermine judicial efficiency and result in racially-biased decision-making

VI. The proposed definition of "conviction" and "sentence" for the purposes of the new bars further excludes those in need of protection

VII. The Proposed Rules will disparately impact vulnerable populations already routinely criminalized, including LGBTQ immigrants, survivors of trafficking and domestic violence, and immigrant youth of color

VIII. The Proposed Rules are ultra vires to the federal immigration statute to the extent they purport to bar eligibility through a categorical exercise of discretion

IX. Conclusion

## I. Introduction

On December 19th, the Department of Homeland Security (DHS) and the Department of Justice (DOJ) issued a joint set of Proposed Rules that would make three primary changes to the rules governing asylum adjudications. *These rules are ultra vires going beyond what Congress specifically considered in terms of limiting asylum to refugees. Moreover, they create an enormous amount of additional work for a system that cannot handle its current adjudication framework and is limping along.*

The first proposed set of changes adds the following seven *categorical* bars to asylum eligibility: (1) any conviction of a felony offense; (2) any conviction for "smuggling or harboring" under 8 U.S.C. § 1324(a), even if the asylum seeker committed the offense for the purpose of bringing her own spouse, child or parent to safety; (3) any conviction for illegal reentry under 8 U.S.C. § 1326; (4) any conviction for an offense "involving criminal street gangs," with the adjudicator empowered to look to any evidence to determine applicability; (5) any second conviction for an offense involving driving while intoxicated or impaired; (6) any conviction *or accusation of conduct* for acts of battery involving a domestic relationship; (7) and any conviction for several newly defined categories of misdemeanor offenses, including *any* drug-related offense except for a first-time marijuana possession offense, any offense involving a fraudulent document, and fraud in public benefits.

AR.08492

The second section of the Proposed Rules provides a multi-factor test for immigration adjudicators to determine whether a criminal conviction or sentence is valid for the purpose of determining asylum eligibility. The third section rescinds a provision in the current rules regarding the reconsideration of discretionary asylum.

Taken together, these proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. The Law Office of Helen Lawrence submits these comments to express opposition to the entirety of the Proposed Rules and grave concerns with the administration's continued efforts to exclude refugees from obtaining the security and stability the United States asylum system has long promised. We urge that the Proposed Rules be rescinded in their entirety.

## II. The Proposed Rules unnecessarily and cruelly exclude bona fide refugees from asylum eligibility

*The barriers to asylum for those previously involved in the criminal legal system are already sweeping in scope; adding more barriers is cruel and unnecessary.*

The United States asylum system was first codified in statute through the Refugee Act of 1980, described by one prominent scholar as a bipartisan attempt to "reconcile our rhetoric with our law, our national immigration policy and our international treaty obligations so that we could maintain a consistent posture towards the world as a nation with a strong humanitarian tradition and a unique historic role as a haven for persons fleeing oppression." The Act—among other measures designed to bring the United States domestic legal code into compliance with the provisions of the United Nations Protocol Relating to the Status of Refugees—created a "broad class" of refugees eligible for a discretionary grant of asylum.

The asylum protections provided by United States law are sacred. Asylum provides those fleeing horrors with physical safety, a path to citizenship and security, and the opportunity to reunite with immediate family members who may still remain abroad in danger. Many see the domestic asylum system as a symbol of the United States' commitment never to repeat its failure to save thousands of Jewish refugees refused entry to the United States on the *St. Louis* and others fleeing the Holocaust. Others point to the critical role that domestic asylum policy plays in serving the United States' foreign policy interests abroad. For those individuals seeking asylum in the United States, the stakes could not be higher—a claim denied often means return to death or brutal persecution.

The laws, regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the evidentiary burden of establishing their eligibility for asylum in the face of a complex web of laws and regulations, without the benefit of appointed counsel and often from a remote immigration jail. The obstacles to winning asylum are exceedingly high; indeed in some parts of the country and before certain immigration judges, almost no one succeeds. Today, newly imposed barriers to accessing asylum in the United States are breathtaking in scope, with those seeking safety at the southern border subject to return to dangerous conditions in Mexico and an overlapping web of policies that preclude asylum eligibility for countless migrants simply because of their national origin, manner of entry, or their

AR.08493

flight path. There are consistent reports of the documented deaths and brutalities endured by those who sought but were denied asylum protections in the United States.

Specifically, the bars to asylum based on allegations of criminal conduct are *already* sweeping and over-broad in nature and scope. Any conviction for an offense determined to be an "aggravated felony" is considered a *per se* "particularly serious crime" and therefore a mandatory bar to asylum. "Aggravated felony" is a notoriously vague term, which exists only in immigration law. Originally limited to murder, weapons trafficking and drug trafficking, it has metastasized to encompass hundreds of offenses, many of them neither a felony nor aggravated, including petty offenses such as misdemeanor shoplifting, simple misdemeanor battery, or sale of counterfeit DVDs. The existing crime bars should be narrowed, not expanded. Even for those not categorically barred from relief, the immigration adjudicator maintains full discretion to deny asylum.

Our office has represented clients, including children, who have been denied asylum based on discretion. Adjudicators are already armed with the power they need to deny asylum on a case-by-case basis. These regulations are not needed, irrespective of their *ultra vires* nature.

Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed. The agencies' efforts to add *seven* new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel. The Proposed Rules drain the phrase "*particularly serious* crime," 8 U.S.C. § 1158, of any sensible meaning.

The Proposed Rules are also arbitrary and capricious. They would constitute a marked departure from past practice. And the agencies have proffered no evidence or data to support these changes.

One assumption fundamentally underlying the Proposed Rules, for example, is that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. But no evidence is provided to support that assumption, and a criminal record, does not, in fact, reliably predict future dangerousness. The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence. Conviction for a crime does not, without more, make one a present or future danger—which is why the Refugee Convention's particularly serious crime bar, made part of United States law through 8 U.S.C. § 1158, should only properly apply if both (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows that she is a present or future danger.

Similarly, the Proposed Rules fail to address or account for the fact that a significant number of people may agree to plead to a crime as to avoid the threat of a severe sentence; not only is a conviction an unreliable predictor of future danger, it can also be an unreliable indicator of past criminal conduct. In addition, the Proposed Rules do not address and make no exception for convictions for conduct influenced by mental illness or duress.

AR.08494

The Board of Immigration Appeals has cautioned that, "in light of the unusually harsh consequences which may befall a [noncitizen] who has established a well-founded fear of persecution; the danger of persecution should generally outweigh all but the most egregious of adverse factors." Yet because of the categorical nature of the seven news bars proposed here, asylum seekers will be precluded from obtaining protection on the basis of a vast array of conduct, without any discretion left to the immigration adjudicator to determine whether the circumstances merit such a harsh penalty. Indeed, in the case of the domestic-violence related ground, the categorical bar will be imposed on the basis of *mere allegations* of conduct without any adjudication of guilt.

Those unjustly precluded from even seeking a discretionary grant of asylum by the Proposed Rules will include, for example: individuals struggling with addiction with one drug-related conviction, regardless of the circumstances of the offense; asylum seekers with two convictions for driving under the influence, regardless of whether the applicant has sought treatment for alcohol addiction or the circumstances of the convictions; community members seeking asylum defensively who have been convicted of a document fraud offense related to their immigration status; and asylum-seeking mothers convicted for bringing their own child across the southern border in an effort to find safety.

*The Proposed Rules cruelly disregard the connections between trauma and involvement in the criminal legal system.*

The harsh nature of the Proposed Rules is especially evident when viewed through a trauma-informed lens. Asylum seekers are an inherently vulnerable population because of the trauma they have experienced in their countries of origin and, often, along the journey to find safety. Existing literature suggests that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD). One recent study found the mental health problems facing refugees and asylum seekers so acute that more than a third of the study's sample admitted having suicidal thoughts in the preceding two weeks.

Studies also consistently reveal a high prevalence of comorbidity of PTSD and substance use disorders, with individuals with PTSD *up to 14 times more likely* to struggle with a substance use disorder. Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma; some turn to drugs and alcohol in an effort to self-medicate. The proposed new bars to asylum include *any* drug-related conviction (with one exception for a first minor marijuana possessory offense) and any second conviction for driving under the influence. This approach is not only cruel but also ignores the evidence. *Particularly* given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not a closed door and deportation order.

Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply cruel.

AR.08495

### III. The Proposed Rules violate the letter and spirit of United States international treaty obligations

By acceding to the 1967 Protocol Relating to the Status of Refugees, which binds parties to the United Nations Convention Relating to the Status of Refugees, the United States obligated itself to develop and interpret United States refugee law in a manner that complies with the Protocol's principle of non-refoulement (the commitment not to return refugees to a country where they will face persecution on protected grounds), even where potential refugees have allegedly committed criminal offenses. As noted above, adjudicators already have over-broad authority to deny asylum based on allegations of criminal activity, which vastly exceeds the categories for exclusion and expulsion set out in the Convention. Instead of working towards greater congruence with the terms of the Convention, the Proposed Rules carve out categorical bars from protection that violate both the language and spirit of the treaty.

While the Convention allows states to exclude and/or expel potential refugees from protection, the circumstances in which this can occur are limited. In particular, the Convention allows states to exclude and/or expel individuals from refugee protection if the individual "having been convicted by a final judgement of a particularly serious crime, constitutes a danger to the community of that country." However, this clause is intended for "extreme cases," in which the particularly serious crime at issue is a "capital crime or a very grave punishable act." The United Nations High Commissioner for Refugees (UNHCR) has asserted that to constitute a "particularly serious crime," the crime "must belong to the gravest category" and be limited "to refugees who become an extremely serious threat to the country of asylum due to the severity of crimes perpetrated by them in the country of asylum." Moreover, the UNHCR has specifically noted that the particularly serious crime bar does not encompass less extreme crimes; "[c]rimes such as petty theft or the possession for personal use of illicit narcotic substances would not meet the threshold of seriousness." Finally, when determining whether an individual should be barred from protection for having been convicted of a particularly serious crime, the adjudicator must conduct an individualized analysis and consider any mitigating factors.

As noted above, legislation and agency interpretation of the Immigration and Nationality Act have already expanded the particularly serious crime bar far beyond what was contemplated in the Convention by creating categorical particularly serious crimes through the aggravated felony definition. The Proposed Rules would amplify the dissonance between U.S. refugee law and the Convention, as well as the violation of U.S. obligations under the Convention, by creating categorical bars within categorical bars. For example, at p. 69659, the Proposed Rules first exclude from protection anyone who was convicted of a felony and then at p. 69660, define "felony" as "any crime punishable by more than one of imprisonment" without any reference to other factors, including dangerousness. The Proposed Rules described the increased categorization of the particularly serious crime bar as necessary because the case-by-case adjudication previously used for non-aggravated felony offenses was "inefficient," but an individualized analysis is exactly what the Convention requires to ensure only those individuals who have been convicted of crimes that are truly serious and therefore present a future danger are placed at risk of refoulement.

AR.08496

Additionally, outside of the aggravated felony context, it has generally been well understood by the Board of Immigration Appeals and the Courts of Appeals that low-level, "run-of-the-mill" offenses do not constitute particularly serious crimes. Under this long-standing interpretation of the particularly serious crime bar in the INA, there is simply no scenario in which low-level offenses like misdemeanor driving under the influence where no injury is caused to another or simple possession of a controlled substance or paraphernalia would constitute a particularly serious crime.

The reason for this is common sense. As Judge Reinhardt explained in a concurring opinion in *Delgado v. Holder*, a decision the Proposed Rules cite in support of the expanded bars, run-of-the-mill crimes like driving under the influence have "little in common" with other crimes the Board of Immigration Appeals has deemed particularly serious—e.g., felony menacing with a deadly weapon, armed robbery, and burglary of a dwelling in which the offender is armed or causes injury. Judge Reinhardt further noted that public opinion does not treat them similarly either: "American voters would be unlikely to elect a president or vice president who had committed a particularly serious crime, yet they had no difficulty in recently electing to each office a candidate with a DUI record." Barring individuals from asylum based on these relatively minor offenses renders the "particularly serious" part of the "particularly serious crime" bar meaningless.

The expansion of the asylum bar to include individuals who have been convicted of reentering the United States without inspection pursuant to INA § 276 is also unlike any of the other bars previously established or as interpreted by the Board of Immigration Appeals or Circuit Courts of Appeals. It is an offense with no element of danger or violence to others, and has no victim. Most significantly, and more so than other bars contained in the Proposed Rules, barring asylum based on the manner of entry directly violates the Convention's prohibition on imposing penalties based on a refugee's manner of entry or presence. This prohibition is a critical part of the Convention because it recognizes that refugees often have little control over the place and manner in which they enter the country where they are seeking refuge.

## IV. Those precluded from asylum eligibility will be gravely impacted even if granted withholding of removal or protection under the Convention Against Torture

Throughout the Proposed Rules, the agencies defend the harsh and broad nature of their proposal by pointing to the continued availability of alternative forms of relief for those precluded from asylum eligibility under the new rules. The availability of these alternatives forms of relief, however—known as withholding of removal and protection under the Convention Against Torture (CAT)—does not nullify the harm created by the Proposed Rule's new limits on asylum. The protections afforded by CAT and by statutory withholding of removal are limited in scope and duration, and they are harder to obtain. As a result, a Rule that limits *bona fide* refugees to withholding of removal and CAT protection would impose a very real harm on individuals who have come to the United States in search of protection.

AR.08497

First, the most serious harm that can befall an individual as a result of these Proposed Rules is removal to persecution and torture, and the existence of withholding of removal does not account for that risk. CAT and withholding protections demand a higher level of proof than asylum claims: a clear probability of persecution or torture. Thus, an individual could have a valid asylum claim but be unable to meet the standard under the other forms of relief and therefore would be removed to their country of origin, where they would face persecution or even death.

Even for those who meet the higher standard, withholding and CAT recipients are still subject to significant prejudice. For example, they have no ability to travel internationally. The United Nations Convention Relating to the Status of Refugees affords refugees the right to travel in mandatory terms. Article 28 states, "Contracting States shall issue to refugees lawfully staying in their territory travel documents for the purpose of travel outside their territory." Withholding and CAT recipients do not have access to a travel document as contemplated by Article 28. By regulation, refugee travel documents are available only to asylees. And the Board of Immigration Appeals requires that an individual granted withholding and CAT—unlike an individual granted asylum—must simultaneously be ordered removed, making any international travel a "self-deportation." Refugees granted only withholding of removal or CAT protection are thus effectively trapped within the United States in long-term limbo.

Withholding and CAT recipients also face permanent separation from their spouses and children. Because international travel is prohibited, these individuals cannot reconnect with their families in a third country. And they also cannot reunite with family in the United States because only asylees and refugees are eligible to petition for a spouse and children to join them as derivatives on that status. For many, this will mean that the Proposed Rules institute yet another formal policy of family separation. For example, a mother with two young children who flees to the United States and is subject to one of the expanded asylum bars will not be able to ensure that her children will be able to obtain protection in the United States with her if she is granted relief. Rather, if her children are still in her home country, they would need to come to the United States and seek asylum on their own, likely as unaccompanied children. If her children fled to the United States with her, then they will need to establish their own eligibility for protection before an immigration judge, no matter their age.

Recently, this exact scenario played out with a mother who was subject to the so-called Migrant Protection Protocols (also known as Remain in Mexico) and the asylum "transit ban," which made the mother ineligible for asylum and thus required the children to establish their independent eligibility for withholding and CAT protection. An immigration judge granted the mother withholding of removal but denied protection to her young children, leaving the children with removal orders and immense uncertainty about their future. Under the expanded bars in the Proposed Rules, these situations will certainly increase, separating families and forcing parents to return to countries where it has been established they more likely than not will face persecution and torture, rather than leaving their children on their own.

Withholding recipients likewise face hurdles in access to employment. Article 17 of the Refugee Convention states that a contracting state "shall accord to refugees lawfully staying in their territory the most favorable treatment accorded to nationals of a foreign country in the same

AR.08498

circumstances, as regards the right to wage-earning employment." Recipients of withholding enjoy no such right. They must apply for work authorization, and they face frequent delays in the adjudication of these applications, which often result in the loss of legal authorization to work.

And perhaps most fundamentally, there is continuing jeopardy for withholding and CAT recipients that does not exist for asylum recipients. When a noncitizen is granted asylum, the person receives a legal status. Asylum, once granted, protects an asylee against removal unless and until that status is revoked. None of these protections exists for withholding and CAT recipients. They have no access to permanent residency or citizenship. Instead, they are subject to a removal order and vulnerable to the permanent prospect of deportation to a third country and subject to potential check ins with immigration officials where they can be made to pursue removal to third countries to which they have no connection.

Finally, the Law Office of Helen Lawrence writes to highlight a different form of prejudice that will flow from the rule: one relating to judicial efficiency. Neither withholding of removal nor CAT protection allow family members who are in the United States together and pursuing protection on the same basis to apply as derivatives on a principal application. As a result, family claims for those rendered ineligible for asylum by the new rules will have to be adjudicated separately, and potentially before different adjudicators even when the claims are interrelated and even when minor children may not be in a position to explain the claim at all or as sufficiently as a parent. In addition to being unjust to the affected family members, this approach would result in gross inefficiencies, which should be avoided in a system that already contains a significant backlog of pending cases.

## V. The Proposed Rules will result in "mini-trials" in immigration court, undermine judicial efficiency and result in racially-biased decision-making

In two significant ways, the Proposed Rules require immigration adjudicators to engage in decision-making to determine whether an asylum applicant's conduct—considered independently of any criminal court adjudication—triggers a categorical bar to asylum eligibility. First, the agencies propose that immigration adjudicators be allowed to consider "all reliable evidence" to determine whether there is "reason to believe" an offense was "committed for or related to criminal gang evidence," or "in furtherance of gang-related activity, triggering ineligibility for asylum in either case. Second, the Proposed Rules permit immigration adjudicators to "assess all reliable evidence in order to determine whether [a] conviction amounts to a domestic violence offense;" and to go even further by considering whether non-adjudicated *conduct* "amounts to a covered act of battery or extreme cruelty."

Requiring adjudicators to make complex determinations regarding the nature and scope of a particular conviction or, in the case of the domestic violence bar, *conduct*, will lead to massive judicial inefficiencies and slanted "mini-trials" within the asylum adjudication process. The scope of the "reliable evidence" available to adjudicators in asylum cases is potentially limitless; advocates on both sides would be obligated to present fulsome arguments to make their cases about gang connections to the underlying activity or the relationship of the asylum applicant to the alleged victim. Because of the lack of robust evidentiary rules in immigration proceedings, it will be difficult if not impossible for many applicants to rebut negative evidence

AR.08499

marshaled against them, even if false; and in other cases, asylum applicants will struggle to find evidence connected to events that may have happened years prior (especially for those detained). Asylum trials, which are typically three or fewer hours under current policies, would provide insufficient time to fully present arguments on both sides of these unwieldy issues.

As the immigration courts contend with backlogs that now exceed one million cases, tasking adjudicators with a highly nuanced, resource-intensive assessment of the connection of a conviction to gang activity and/or the domestic nature of alleged criminal conduct—assessments far outside their areas of expertise—will prolong asylum proceedings and invariably lead to erroneous determinations that will give rise to an increase in appeals. The Proposed Rules repeatedly cite increased efficiency as justification for many of the proposed changes. Yet requiring adjudicators to engage in mini-trials to determine the applicability of categorical criminal bars, rather than relying on adjudications obtained through the criminal legal system, will dramatically *decrease* efficiency in the asylum adjudication process.

Indeed, the Supreme Court has "long deemed undesirable" exactly the type of "post hoc investigation into the facts of predicate offenses" proposed by the agencies here. Instead, for more than a century the federal courts have repeatedly embraced the "categorical approach" to determine the immigration consequence(s) of a criminal offense, wherein the immigration adjudicator relies on the statute of conviction as adjudicated by the criminal court system, without relitigating the nature or circumstances of the offense in immigration court. As the Supreme Court has explained, this approach "promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." In *Moncrieffe v. Holder*, the Court forewarned of exactly the sort of harm that would arise from these Proposed Rules; in that case, the Court rejected the government's proposal that immigration adjudicators determine the nature and amount of remuneration involved in a marijuana-related conviction, noting that "our Nation's overburdened immigration courts" would end up weighing evidence "from, for example, the friend of a noncitizen" or the "local police officer who recalls to the contrary," with the end result a disparity of outcomes depending on the whims of the individual immigration judge and a further burdened court system.

Particularly in the context of the new proposed bar related to alleged gang affiliation, the Law Office of Helen Lawrence is concerned that creating a blanket exclusion for anyone who is convicted of a crime – including a misdemeanor – that an immigration adjudicator deems linked to gang activity will erroneously prevent bona fide asylum seekers from receiving protection. This rule confers on immigration adjudicators—who generally are not criminologists, sociologists, or criminal law experts—the responsibility to determine if there is "reason to believe" any conviction flows from activity taken in furtherance of gang activity. This rule will necessarily ensnare asylum seekers of color who have experienced racial profiling and a criminal legal system fraught with structural challenges and incentives to plead guilty to some crimes, particularly misdemeanors. These same individuals are vulnerable to being erroneously entered into gang databases. Such databases are notoriously inaccurate, outdated, and infected by racial bias.

Indeed, asylum applicants are *already* frequently subjected to wrongful denials of protection because of allegations of gang activity made by the Department of Homeland Security

AR.08500

on the basis of information found in notoriously unreliable foreign databases and "fusion" intelligence-gathering centers outside the United States. Empowering immigration adjudicators to render asylum applicants *categorically* excluded from protection on the basis of such spurious allegations will inevitably result in the return of many refugees back to harm.

The Departments curiously argue that all gang-related offenses should be construed as "particularly serious crimes." They cite statistics from up to 16 years ago in an attempt to make the point that gang members commit violent crimes and drug crimes. They then make the illogical leap to the conclusion that *all crimes*—including misdemeanor property crimes—that may be construed as connected to gang activity are particularly serious. This simply does not follow; in fact, the Proposed Rules will inevitably result in the exclusion from protection of asylum seekers of color who live in economically distressed communities and have obtained a minor conviction such as a property crime. Relying on the definition of "particularly serious crime" to prevent asylum seekers convicted of even minor crimes construed as gang-related from accessing asylum protection is disingenuous at best, and tinged with racial animus at worst.

The Departments asks for comments on: (1) what should be considered a sufficient link between an asylum seeker's underlying conviction and the gang related activity in order to trigger the application of the proposed bar, and (2) any other regulatory approaches to defining the type of gang-related activities that should render individuals ineligible for asylum. The premise of these questions is wrong: a vague "gang related" bar should not be introduced at all. The Immigration and Nationality Act and existing regulations already provide overly broad bars to asylum where criminal behavior by an asylum seeker causes concern by an adjudicator. Adding this additional, superfluous layer of complication risks erroneously excluding bona fide asylum seekers from protection without adding any useful adjudicatory tool to the process.

## VI. The proposed definition of "conviction" and "sentence" for the purposes of the new bars further excludes those in need of protection

The section of the Proposed Rules that outlines a new set of criteria for determining whether a conviction or sentence is valid for the purpose of determining asylum eligibility is an ultra vires exercise of authority that is not authorized by the Immigration and Nationality Act. The Proposed Rules impose an unlawful presumption against asylum eligibility for applicants who seek post-conviction relief while in removal proceedings or longer than one year after their initial convictions. They also deny full faith and credit to state court proceedings by attributing improper motives to state court actors.

*The Proposed Rules undermine Sixth Amendment protections and harms immigrants unfamiliar with the complex criminal and immigration framework governing prior convictions.*

The Proposed Rules outline a new multi-factor process asylum adjudicators must use to determine whether a conviction or sentence remains valid for the purpose of determining asylum eligibility; the proposal includes a rebuttable presumption "against the effectiveness" of an order vacating, expunging, or modifying a conviction or sentence if the order was entered into after the

AR.08501

asylum seeker was placed in removal proceedings or if the asylum seeker moved for the order more than one year after the date the original conviction or sentence was entered.

This newly created presumption unfairly penalizes asylum applicants, many of whom may not have the opportunity to seek review of their prior criminal proceedings until applying for asylum. In *Padilla v. Kentucky*, the Supreme Court recognized that the immigration consequences of a conviction are sufficiently serious for the Sixth Amendment to require a noncitizen defendant to be competently advised of them before agreeing to a guilty plea. By imposing a presumption against the validity of a withdrawal or vacatur of a plea, the Proposed Rules hold asylum seekers whose rights were violated under *Padilla* to a different standard; even though they too were denied effective assistance of counsel in the course of their underlying criminal proceedings, asylum seekers will be forced to rebut a presumption that their court-ordered withdrawal or vacatur is invalid. The Proposed Rules therefore compound the harm to immigrants who, in addition to facing persecution in their home countries, have been denied constitutionally compliant process in the United States criminal legal system.

Many asylum applicants, especially those in vulnerable populations isolated from resources and unfamiliar with the due process protections available to them in the United States, may not have discovered the defects in their underlying criminal proceedings until their consultation with an immigration attorney, or until they are placed into removal proceedings, which may happen several years after a conviction. Imposing a presumption *against* the validity of a plea withdrawal or vacatur in these cases will undoubtedly lead to the wrongful exclusion of countless immigrants from asylum simply because they were unable to adequately rebut the presumption, particularly in a complex immigration court setting without the benefit of appointed counsel.

We have represented many immigrant clients who have sought and obtained post conviction relief for convictions that were procedurally flawed.

*The Proposed Rules violate the full faith, and credit to which state court decisions are entitled.*

The Proposed Rules further improperly authorize immigration adjudicators to second-guess the decision of a state court, even where the order on its face cites substantive and procedural defects in the underlying proceeding. The proffered justification for this presumption against the validity of post-conviction relief is to "ensure that aliens do not have their convictions vacated or modified for purported rehabilitative purposes that are, in fact, for immigration purposes," "to codify the principle set forth in *Matter of Thomas and Thompson*," and to bring the analysis of post-conviction orders in line with *Matter of Pickering*. The agencies misread the applicable law, however, by authorizing adjudicators to disregard otherwise valid state orders. The immigration law only requires that to be effective for immigration purposes, orders vacating or modifying convictions must be based on substantive or procedural infirmities in the underlying proceedings. The Proposed Rule goes well beyond that requirement.

The Proposed Rules abandon the presumption of regularity that should accompany state court orders, thus upending settled principles of law. The Proposed Rules cite a misleading quote

AR.08502

from *Matter of F-* in support of allowing asylum adjudicators to look beyond the face of a state court order; had the Rules' authors looked to the full case, they would have read the following: "Not only the full faith and credit clause of the Federal Constitution, but familiar principles of law require the acceptance at face value of a judgment regularly granted by a competent court, unless a fatal defect is evident upon the judgment's face. However, the presumption of regularity and of jurisdiction may be overcome by extrinsic evidence or by the record itself." In *Matter of F-*, the Board of Immigration Appeals offers support for the proposition that an adjudicator should presume the validity of a state court order unless there is a reason to doubt it, contrary to the *presumption of irregularity* put forward in the Proposed Rules.

The authority extended to adjudicators by the Proposed Rules also violates the law of multiple circuits, including *Pickering*, on which it relies. In *Pickering v. Gonzales*, the Sixth Circuit Court of Appeals held that despite the petitioner's stated motive of avoiding negative immigration consequences, the Board of Immigration Appeals was limited to reviewing the authority of the court issuing the order as to the basis for his vacatur. Similarly, in *Reyes-Torres* the Ninth Circuit Court of Appeals held that the motive of the respondent was not the relevant inquiry. Rather, "the inquiry must focus on the state court's rationale for vacating the conviction." In addition, the Third Circuit Court of Appeals in *Rodriguez v. U.S. Att'y Gen.*, which the Proposed Rules cite as "existing precedent," held that the adjudicator must look only to the "reasons explicitly stated in the record and may not impute an unexpressed motive for vacating a conviction." Moreover, the *Rodriguez* court stated that to determine the purpose of a vacatur, the adjudicator must first look to the face of the order vacating the conviction, and "if the order explains the courts reasons … the [adjudicator's] inquiry must end there." The Proposed Rules contain no such limiting language to guide the adjudicator's inquiry. Instead, the Rules grant adjudicators vague and indefinite authority to look beyond even a facially valid vacatur. Such breadth of authority undermines asylum seekers' rights to a full and fair proceeding.

> *The Proposed Rules wrongly extend* Matter of Thomas and Thompson *to all forms of post-conviction relief and impose an ultra vires and unnecessary burden on asylum seekers.*

Finally, the above-described presumption is ultra vires and unnecessary. As an initial matter, the Proposed Rules' reliance on *Matter of Thomas and Thompson* is flawed. The Attorney General's decision in *Matter of Thomas and Thompson* has no justification in the text or history of the immigration statute. Nowhere does the plain text of the Immigration and Nationality Act support giving adjudicators the authority to give effect only to state court sentence modifications undertaken to rectify substantive or procedural defects in the underlying criminal proceedings. Nor does the legislative history support such a rule. The Board of Immigration Appeals recognized this in *Matter of Cota-Vargas*, where it concluded that the application of "the *Pickering* rationale to sentence modifications has no discernible basis in the language of the Act." Based on the text of the Immigration and Nationality Act and the well-documented legislative history behind Congress's definition of "conviction" and "sentence" in 8 U.S.C. § 1101(a)(48), the Board determined that Congress intended to ensure that, generally, proper admissions or findings of guilt were treated as convictions for immigration purposes, even if the conviction itself was later vacated. Neither the text of the INA nor the legislative history of

the definitions reveal any attempt on Congress's part to change the longstanding practice of giving effect to state court sentencing modifications. For these reasons, *Matter of Thomas and Thompson* lacks Congressional support for its rule and should not be extended.

Moreover, as applicants for immigration benefits or relief from removal, asylum seekers already bear the burden of demonstrating their eligibility for asylum. The Proposed Rules do not alter or shift this burden, nor do they provide evidence supporting the need for this presumption. By introducing a presumption of bad faith into asylum adjudication, the Proposed Rules unfairly interfere with asylum seekers' efforts to establish their claims. Immigration law, and asylum law in particular, is already highly complex, and the process of seeking asylum is in many instances re-traumatizing, particularly for applicants who do not have counsel to represent them and who lacked effective counsel in their underlying criminal proceedings. The Proposed Rules as applied to asylum applicants who seek post-conviction relief transform an already difficult process into an adversarial inquiry, contrary to the intent of Congress.

## VII. The Proposed Rules will disparately impact vulnerable populations already routinely criminalized, including LGBTQ immigrants, survivors of trafficking and domestic violence, and immigrant youth of color

The expanded criminal bars exclude from safety and a pathway to citizenship those convicted of offenses that are coincident to their flight from persecution, and do not accomplish the stated goal of making communities safer. They will disparately impact vulnerable populations, who comprise asylum seekers hailing primarily from Central America and the Global South, and those routinely criminalized because of their identities, racially disparate policing practices, or in connection with experiences of trafficking and domestic violence. For these populations especially, the discretion currently delegated to asylum adjudicators is crucial for them to become fully integrated in the larger community. The imposition of additional categorical bars to asylum will only further marginalize asylum seekers already struggling with trauma and discrimination.

The Proposed Rules turn asylum into a blunt instrument that would prevent the use of discretion where it is most needed and most effective. The existing framework for determining if an offense falls within the particularly serious crime bar already provides the latitude for asylum adjudicators to deny relief to anyone found to pose a danger to the community. Furthermore, asylees with convictions that render them inadmissible must apply for a waiver at the time of their applications for permanent residence. These measures ensure that asylum applicants in vulnerable populations have access to supportive resources and have the opportunity to demonstrate their ongoing commitment to social and personal health. Moreover, the existence of provisions allowing the revocation of asylum status ensures that adjudicators may continue to enforce concerns related to the safety of the community even after asylum is granted.

*Barring asylum for immigrants convicted of migration-related offenses punishes them for fleeing persecution and/or seeking safety for their children, and does not make communities safer.*

AR.08504

The expansion of the criminal bars to asylum to include offenses related to harboring, smuggling of noncitizens by parents and family members and those previously removed further criminalizes vulnerable populations fleeing persecution. The vast expansion of migrant prosecutions at the border during the current administration has created administrative chaos and separated families that do not pose a threat to the safety of communities in the United States. The Proposed Rules threaten to magnify the harm caused by these reckless policies by further compromising the ability of those seeking safety on the southern border to access the asylum system.

The Proposed Rules expand the asylum bar to parents or other caregivers who are convicted of smuggling or harboring offenses after taking steps to help minor children enter the United States in order to flee persecution. This proposed bar is particularly insidious in light of now-public documents revealing this administration's explicit efforts to utilize smuggling prosecutions against parents and caregivers as part of its strategy of deterring families from seeking asylum in the United States. The Proposed Rules seek to take this widely condemned strategy one step further, by additionally barring those parents *already prosecuted* from obtaining asylum protections for themselves and their children. The Proposed Rules multiply the harms parents and caregivers have experienced in their treacherous journeys to safety and callously penalize parents for doing what is only human—taking all necessary steps to protect their children.

The Proposed Rules also expand the asylum bar to those who have fled persecution multiple times and therefore been convicted of illegal reentry. Their inclusion is premised on conclusory statements regarding the dangerousness of recidivist offenders, without consideration of the seriousness of prior convictions. Rather, the Proposed Rules treat all immigration violations as similar in seriousness to those previously warranting inclusion in the particularly serious crime bar, without any independent evidence to justify the expansion. Such an approach renders meaningless the limiting language of "particularly serious" in the statute.

The Proposed Rules also conflate multiple entries by noncitizens having prior removal orders with those who have entered multiple times without ever having their asylum claims heard. Many immigrants who have previously attempted entry to the United States to flee persecution could not have been aware of the complex statutory regime that governs asylum claims and would not have knowingly abandoned their right to apply for asylum. Some asylum seekers have also been wrongly assessed in prior credible fear interviews. And others yet may have previously entered or attempted to enter the United States before the onset of circumstances giving rise to their fear. Preserving discretion to grant asylum in these circumstances allows meritorious asylum seekers to be heard and corrects errors that might have previously occurred.

*Extending the criminal bars to immigrants convicted of misdemeanor document fraud unfairly punishes low-wage immigrant workers and does not make communities safer.*

The Proposed Rules expand the asylum bar to include any asylum seeker who has been convicted of a misdemeanor offense for use of a fraudulent document. In so doing, the Rule

AR.08505

entirely ignores the migration-related circumstances that often give rise to convictions involving document fraud. Migrants fleeing persecution often leave their home countries with nothing but the clothes on their backs and must rely on informal networks to navigate their new circumstances. Extension of a blanket bar to asylum seekers who are compelled to resort to fraudulent means to enter the United States, or to remain safely during their applications for asylum, upends decades of settled law directing that violations of law arising from an asylum applicant's manner of flight should constitute only one of many factors to be consulted in the exercise of discretion.

Moreover, migrants in vulnerable communities who are struggling to survive during the pendency of their asylum proceedings are often exploited by unscrupulous intermediaries who offer assurances and documentation that turn out to be fraudulent. Many noncitizens working in the low-wage economy face egregious workplace dangers and discrimination and suffer retaliation for asserting their rights. The continued availability of asylum to low-wage immigrant workers can encourage them to step out of the shadows. The expansion of criminal asylum bars to sweep in all document fraud offenses, on the other hand, would unfairly prejudice immigrants with meritorious asylum claims and force them deeper into the dangerous informal economy.

*The Proposed Rules will harm communities with overlapping vulnerabilities, including LGBTQ asylum seekers, survivors of trafficking, and survivors of domestic violence.*

The Proposed Rules exclude from asylum protections countless members of vulnerable communities who have experienced trauma, abuse, coercion, and trafficking. Many of these individuals may only become aware of their ability to apply for asylum after law enforcement encounters that lead them to service providers who can educate them about their immigration options. Despite the unique difficulties they face, the Proposed Rules would compound their harm and prevent them from achieving family unification and a pathway to citizenship.

The Proposed Rules pose a unique threat to LGBTQ immigrant community members. LGBTQ immigrants in particular may have already experienced a high degree of violence and disenfranchisement from economic and political life in their home countries. Hate violence towards undocumented LGBTQ immigrants in the United States is already disproportionately higher than for other members of the LGBTQ population. Members of these communities also experience isolation from their kinship and national networks following their migration. This isolation, compounded by the continuing discrimination towards the LGBTQ population at large, leave many in the LGBTQ immigrant community vulnerable to trafficking, domestic violence, and substance abuse, in addition to discriminatory policing practices. The expansion of criminal enforcement and prosecution of undocumented people also harms the LGBTQ immigrant community. The Proposed Rules will therefore have a disparate impact on LGBTQ individuals whose involvement in the criminal legal system is often connected to past trauma and/or the result of biased policing.

The expansion of asylum bars to include various misdemeanor offenses that were not previously considered particularly serious also unfairly sweeps trafficking survivors into its

AR.08506

dragnet. It is becoming more widely recognized across state court systems that trafficking survivors frequently come into contact with intervention resources and service providers only after contact with law enforcement occurs. Innovative criminal justice reform efforts currently being adopted across the country include special trafficking courts that recognize the need for discretion in the determination of criminal culpability. The same approach should be employed in the determination of asylum eligibility, where the applicant's life and safety are on the line.

The Proposed Rules instead preclude asylum adjudicators from conducting a trauma-centered approach, categorically barring countless trafficking survivors convicted of misdemeanor and felony offenses without any opportunity to present the specific circumstances of their claim.

Survivors of domestic violence include trafficking survivors and LGBTQ community members, such that inclusion of offenses related to domestic violence in the expanded asylum bars affects populations with overlapping vulnerabilities. The Proposed Rules too broadly categorize domestic violence offenses as particularly serious and sweep both offenders and survivors into their dragnet. The immigration laws extend protections to domestic violence survivors outside of the asylum context, recognizing the complex dynamics surrounding intimate partner violence. Provisions in the Violence Against Women Act allow adjudicators evaluating claims for relief arising thereunder to exercise discretion based on a number of factors and circumstances. The blunt approach adopted by the Proposed Rules is inconsistent with the approach taken towards survivors elsewhere in the federal immigration statute and does not rely on any evidence-based justification for treating asylum seekers differently.

Moreover, the domestic violence sections of the Proposed Rules include the only categorical bar to asylum for which a conviction is not required. Domestic violence incidents all too often involve the arrest of both the primary perpetrator of abuse and the survivor. These "cross-arrests" do not always yield clear determinations of victim and perpetrator. Authorizing asylum adjudicators to determine the primary perpetrator of domestic assault, in the absence of a judicial determination, unfairly prejudices survivors who are wrongly arrested in the course of police intervention to domestic disturbances.

Finally, the exemption for asylum applicants who can demonstrate their eligibility for a waiver under section 237(a)(7)(A) of the Immigration and Nationality Act does not cure the harm to asylum seekers caused by imposition of a categorical domestic violence related bar. Rather, it converts a non-adversarial asylum proceeding into a multi-factor, highly specific inquiry into culpability based on circumstances that may be very difficult for an asylum seeker to prove—especially if proceeding without counsel and with limited English proficiency.

*Barring asylum for immigrants convicted of "gang-related crimes" based on unreliable evidence and racially disparate policing practices is harmful to youth of color and does not make communities safer.*

In recent years, the expansion of gang databases for use in the apprehension and removal of foreign nationals—including children—has generated tremendous concern among advocates

AR.08507

and the communities they serve. The use of gang databases by local law enforcement and Immigration and Customs Enforcement has been widely criticized as an overbroad, unreliable and often biased measure of gang membership and involvement. The Proposed Rules expand the criminal bars to asylum to those accused of gang involvement in the commission of minor criminal offenses, embracing an open-ended adjudicative process that will inevitably result in asylum adjudicators relying unfairly on these discredited methods of gang identification. This outcome would compound the disparate racial impact of inclusion in gang databases and bar asylum seekers who are themselves fleeing violence from gangs in their home countries.

Past legislative efforts to expand the grounds of removal and inadmissibility in the Immigration and Nationality Act to include gang membership have failed to pass both houses of Congress. In addition, immigration adjudicators already routinely premise discretionary denials of relief or release on bond on purported gang membership, and scores of alleged gang members have already been deported on grounds related to immigration violations or criminal convictions for which no relief is available. Creating a "gang-related crime" bar will only exacerbate the due process violations already occurring as the result of unsubstantiated information about supposed gang ties.

In addition, by focusing on "reason to believe" as the basis for the bar, rather than the seriousness of the crime, the proposed provision is ultra vires and unconscionably limits the eligibility for asylum of those most in need of protection. The effect of the Proposed Rules would be to expand the number and type of convictions for which an analysis of eligibility is required, sweeping in even petty offenses that would otherwise not trigger immigration consequences. Thus, an asylum applicant convicted of simple assault without use of a weapon, a non-violent property crime, or even possession of under 30 grams of marijuana for personal use (otherwise exempted from the reach of the Proposed Rule), could trigger a bar to asylum if the adjudicator concludes she has "reason to believe" the offense was committed in furtherance of gang activity. In making these determinations, asylum adjudicators would be unable to rely on uncorroborated allegations contained in arrest reports, but could nevertheless shield their decisions by relying on discretion.

The Proposed Rules thus invite extended inquiry into the character of young men of color who otherwise have meritorious asylum claims, based on information gained through racially disparate policing practices.  These rules multiply the harm to asylum seekers of color subject to racially disparate policing that results in racially disparate rates of guilty pleas to minor offenses. This same population is overrepresented in gang databases, which are notoriously inaccurate, outdated, and infected by racial bias.

ICE and CBP are well known to include inaccurate and many times patently false information on their forms that under these proposed rules could be used to be found ineligible for asylum.

**VIII.    The Proposed Rules are ultra vires to the federal immigration statute to the extent they purport to bar eligibility through a categorical exercise of discretion**

AR.08508

When Congress speaks clearly through a statute, the plain meaning of that statute governs. Congress by statute permits the Attorney General to designate certain categories of offenses as "particularly serious crimes." As such, Congress *explicitly* permitted the Attorney General to designate a non-aggravated felony to be a particularly serious crime and thus to disqualify a person from asylum. In the context of asylum, all aggravated felonies are *per se* particularly serious crimes and the Attorney General "may designate by regulation [other] offenses that will be considered to be" a particularly serious crime for purposes of asylum.

Here, however—seemingly in an attempt to insulate the Proposed Rules from review, the agencies attempt to designate new bars to asylum both by designating them as "particularly serious crimes" pursuant to 8 U.S.C. § 1158(b)(2)(B)(ii) and rendering them categorically exempt from a positive discretionary adjudication of asylum pursuant to 8 U.S.C. § 1158(b)(2)(C). This effort is unlawful. Section 1158(b)(2)(B)(ii) does permit the Attorney General to, if he wishes, attempt to designate some classes of offenses as particularly serious crimes; such designations are reviewable for legal error (and as explained above, the commenters believe these expansions are unlawful). However, if the offense is not a particularly serious crime, then a discretionary decision must be rendered on the application. It is true that the Attorney General may also provide for "additional limitations and conditions" on asylum applications so long as they are "consistent" with the with the asylum statute. In this case, however, the Proposed Rules add sweeping categories of offenses that automatically remove an applicant from the consideration of discretion—a regulatory proposal that is ultra vires to the plain text of the statute.

To the extent that the proposed rules would adopt a bar to asylum based on a categorical discretionary bar, rather than a particularly serious crime designation, they are similar to the rules struck down by numerous Circuit Courts of Appeal in the context of adjustment of status for those considered by law to be "arriving aliens." Purporting to exercise discretion categorically, then-Attorney General Reno putatively rendered that class of noncitizens ineligible for adjustment of status, a determination that is ordinarily discretionary, even though the statute seemed to allow eligibility. Multiple Circuit Courts of Appeal struck down the proposed regulations, finding them to reflect an impermissible reading of the statute in light of the fact that Congress carefully defined in the statute the categories of people eligible to apply for adjustment of status.

The same logic applies here. In the asylum statute, Congress explicitly made the commission of a particularly serious crime a bar to asylum. The canon of interpretation known as *expressio unius est exclusio alterius* instructs that,"expressing one item of [an] associated group or series excludes another left unmentioned." The Proposed Rules attempt to create numerous categories of discretionary "pseudo-particularly serious crimes," barring asylum through a categorical exercise of discretion even if those offenses are ultimately found not to be particularly serious crimes. Such an effort violates this canon of interpretation, and places the Proposes Rules ultra vires to the statute.

## IX.   Conclusion

AR.08509

For the reasons above, the Law Office of Helen Lawrence strongly urges the withdrawal of these proposed regulations. The current regulations more than sufficiently arm adjudicators with the power to deny asylum on a case-by-case basis. These regulations are ultra vires and should not be implemented.

AR.08510

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efu-uv09
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0068
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Itzel Nuno

---

## General Comment

I am writing to let my government know that I strongly oppose the proposed rule change. As an immigrant rights organizer in California, I see first hand the effects these racist and classist regulations have on our most vulnerable community members. I am the Bay Area Rapid Response Coordinator with the California Collaborative for Immigrant Justice. Every day our emergency hotlines, along with our dozens of volunteers, attorneys, dispatchers, and coordinators, work tirelessly to protect due process for all. We help people maneuver the insanely painful and unfair American Immigration process. The people we work with are just trying to survive, just that. Most miss their home country and wish they could go back and raise their families surrounded by the familiar sounds and smells they were raised around. However, they have decided to leave their homes because they had no other choice if they wanted to survive. People don't put their life and that of their children's at immense risk for no reason. Folks are fleeing violence they are not being protected from. They make the dangerous trek to the U.S and then are met here with only more hate and state sanctioned violence. Yet, they persist because going back home is not an option. It is our responsibility as a nation to stand by what we have claimed to stand by: "Give me your tired, your poor, Your huddled masses yearning to breathe free, The wretched refuse of your teeming shore." We cannot inject even more racial profiling into our judicial systems, we can't take anymore. For these reasons, I call on the Trump Administration to withdraw this racist and violent proposal.

AR.08511

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efu-t7vj
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0069
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Sandra Faiman-Silva, Ph.D.
**Address:**
   50 Davis Road
   Falmouth,  MA,  02540
**Email:** sfaiman@aol.com
**Phone:** 508-274-1131

## General Comment

These proposed rule changes are extreme and will further burden valid and worthy asylum-seekers from entering the United States. Ours is a nation of immigrants, and we welcome those who have come to our shores in desperate circumstances. To deny an asylum-seeker entry because of an auto infraction or other misdemeanor is punitive in the extreme. Also it should not be the privilege of the Attorney General and Director of Homeland Security to determine who can or cannot be deemed eligible for asylum. These two individuals have demonstrated a lack of objectivity in this area, and have unduly politicized the asylum-seeking process. That is not the intent of our immigration regulations. I strongly object to the proposed changes.

AR.08512

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efu-gjb7
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0070
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Ann Cotter

---

## General Comment

I am writing to express my abhorrence at this latest rule by the Trump administration to hurt asylum seekers. All based on future contact with the U.S.'s flawed criminal legal system. This administration continues to illegally detain lawful asylum seekers for limitless periods of time with no accountability and without fair legal representation. The treatment is a disgusting violation of the human rights of these asylum seekers.

Rather than a further dismantling of our already flawed asylum process with this rule, I urge the support of the New Way Forward Act (H.R. 6383), which rolls back harmful immigration laws as it proposes immigration reform measures that dismantle abuses of our system and our asylum seeking community. We are, after all, a nation of immigrants. And we know that immigrants are the backbone of our country and our democracy. We need to properly treat asylum seekers as potential contributors to our society.

AR.08513

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efv-l3mr
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0071
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I strongly oppose this proposed rule because it endangers the lives of people who are legally claiming asylum.

AR.08514

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efw-qi6s
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0072
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Lourdes Best

---

## General Comment

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.
This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

It's important to our communities that the Trump administration withdraw this proposal.

AR.08515

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efx-7q4n
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0073
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I want to express my strong opposition to the proposed changes to the regulations regarding asylum adjudication. As an immigration attorney at a nonprofit, these changes to the regulations concern me because of the violations of basic fundamental rights they will cause for clients. In my experience, deportation means life or death for many of my clients. The addition of seven categorical bars to asylum will severely impact those who have bona fide asylum claims and will exclude those that under international law should be granted protection. This rule would endanger the life of so many individuals who would be valuable members to our society and our country. This proposed rule would result in punishing people who already have endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to life-threatening situations that they are attempting to escape. This is profoundly immoral and violates due process. Further, it unnecessarily places further restrictions on Immigration Judge's and Asylum Officer's ability to determine eligibility on a case by case basis. In matters of life and death, all factors should be considered and categorical bars undermine our nation's obligation to protect. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum. These regulations would make a mockery of Congress's intent in enacting this statute and would create irreparable harm and damage not only to individuals but also to our country as a whole.

For the reasons above, I strongly urge the administration to withdraw these rules so that our country can be a world leader who values individuals rights as it once was, rather than a nation who fails to uphold its principles and obligations under international law.

AR.08516

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efx-h3wq
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0074
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Victoria Hartanto
**Address:**
  1121 Mission Street
  San Francisco, CA, 94103
**Email:** vhartanto@apilegaloutreach.org
**Phone:** 4155676255

## General Comment

I am writing to express my strong opposition to this proposed rule change to further unfairly attack asylum seekers. I am a staff attorney at the non-profit legal aid organization, Asian Pacific Islander Legal Outreach (API Legal Outreach). I work with immigrants and asylum seekers every day, representing them in their claims for asylum and other humanitarian relief. I am also an immigrant myself. This rule would harshly exclude many refugees, those with valid asylum claims, from seeking asylum in this country. This would be in direct violation of the United States' obligations under the Refugee Convention. Our country should be a leader in the world in protecting refugees and human rights, not one that attacks, derides and criminalizes asylum seekers. Excluding asylum seekers means returning them to a place where they face persecution and death. I have many clients in this very position. That is not what this country should stand for. The Trump Administration should withdraw this proposal immediately.

AR.08517

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020<br>**Received:** January 14, 2020<br>**Status:** Posted<br>**Posted:** January 15, 2020<br>**Tracking No.** 1k4-9efx-nkhi<br>**Comments Due:** January 21, 2020<br>**Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0075
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** F X Martn del Campo

---

## General Comment

We are Mexicans in the US who maintain our roots to Jalisco, Mxico for two generations.

We are deeply concerned that this rule change would send people who fled violence back to danger and death.

Los Martn del Campo,

Oakland, Ca

AR.08518

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efx-ozhm
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0076
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Sasha Feldstein

## General Comment

This proposal goes against everything that this country stands for. The U.S. has founded as being a place of refuge for people. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

The Statue of Liberty does not say "Give me your tired, your poor, your huddled masses yearning to breathe free UNLESS you look a certain way." No. And this proposal, as well as all of the other proposal's I've seen relating to the asylum process under the Trump Administration, only punishes people who endure mistreatment and racial profiling in the criminal legal system -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, and makes a mockery of due process, but more important, it puts lives at danger and goes against our country's founding values.

AR.08519

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efy-2bh9
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0077
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Judith Sockloff

## General Comment

We should be a country of compassion. Most of our ancestors fled oppression and these new asylum seekers are fleeing even worse, where their lives are at risk.

What is wrong with us?!!!!

AR.08520

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efy-116k
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0078
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Lynda Pauling
**Address:**
   Stillwater,  MN,  55082
**Email:** lmp5812@comcast.net
**Phone:** 6513510000

## General Comment

The proposed rule change would hurt many asylum seekers. The rule change would bar many people from seeking asylum based on contact with the U.S.'s flawed criminal legal system. This proposed rule would inject racial profiling into the asylum process and put asylum seekers at risk of danger even death.

I oppose a Federal Register.

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-3kwe
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0079
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Caryn Graves
**Address:**
   Berkeley,  CA,  94702
**Email:** caryn@lmi.net
**Phone:** 5105599047

---

## General Comment

I oppose the rule change. Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08522

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-wicy
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0080
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Kathy Bernard
**Address:**
    7620 Ravenhill Dr
    St. Louis,  MO,  63123
**Email:** kathybernard.mktg@yahoo.com

## General Comment

Refugees bring intelligence, hard work, incredible spirit and new culture to America. Millions are in need and the United States should do our part to take in refugees!

AR.08523

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-87l3
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0081
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I strongly oppose this rule change. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08524

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-8imw
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0082
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Tatiana Castro Pavich
**Address:**
    500 S. Claremont
    Chicago, IL, 60612

---

## General Comment

The United States was built on the backs of immigrants from all over the world. We cannot turn our backs on those seeking asylum merely on the fact that they have been accused of gang activity. What would one define gang activity to begin with. Further many of those fleeing is due to the fact that they are trying to escape the gangs they were forced to join to begin with. What kind of country would we be if we turn our backs on them. The US is not what it was but we can change that by keeping our values and allowing others to contribute to this great nation. My family migrated here from El Salvador in the late 70's early 80's during the Civil War. My father obtained two Master's degree and worked for the State in the Dept. of Family Services. I am currently in Law School (John Marshall) obtaining my JD. We were once all illegal immigrants as well. Now we are all US citizens contributing to society. Where would my family be if we had been turned away when we were seeking political asylum. We must not turn our backs on those seeking a better life.

AR.08525

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-saft
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0083
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I am opposed to the rule change. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

AR.08526

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-hi9p
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0084
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Susan Wald

## General Comment

I strongly oppose the proposed change to the rule governing procedures for asylum and bars to asylum eligibility. The United States has long been a place of refuge for people fleeing violence, starvation, poverty, or persecution. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. The proposed rule would inject racial profiling into the asylum process, putting even more asylum seekers at risk of danger and even death. This would in turn eviscerate one of the most important defenses community members have against deportation. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights, not trample them.

AR.08527

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-wl1j
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0085
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Claire Battle

---

## General Comment

I strongly oppose the proposed rule change.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. In contrast, this proposed rule would inject racial profiling into the asylum process and put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08528

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-vjni
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0086
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I request that the above regulation not be implemented at all I trust the judge The regulation would be too wide and blanketing
The important considerations with the trivial and superficial
And leaves the judge no room to judge

AR.08529

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-oc8c
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0087
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Mari Barnes

---

## General Comment

I oppose the rule change to the Federal Register. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

We are diminishing our country with every hateful action condoned by rules like this.

AR.08530

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-nicq
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0088
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Karen Jacques
**Address:**
  1209 T St
  Sacramento,  CA,  95811
**Email:** threegables1819@gmail.com

---

## General Comment

I am strongly opposed to your proposed rule change that would make any asylum seeker who has ever committed a crime, however minor, or ever been associated or alleged to be associated with a gang ineligible for asylum and lead to such persons immediately being sent back to the country from which they fled, regardless of their circumstances. This rule is arbitrary and capricious and doesn't allow for any review of individual cases or circumstances. It completely fails to recognize that people who come to the attention of the criminal justice center can, and often do, change for the better. It doesn't recognize that it is easy to falsely accuse someone of being associated with a gang or being a gang member and that, in some communities, being part of a gang or associating with gang members is a necessary condition of survival. It also doesn't recognize that racial profiling is rampant in our criminal justice system and that this rule while unfairly and disproportionately target immigrants of color.

During my career as a psychologist, I have worked in immigrant communities, worked with formerly incarcerated people and worked with gang members. I have seen many, many people who make mistakes when they were young (often small and stupid mistakes) that resulted in their entering the criminal justice system. I have seen many of them completely change their lives. One young man I worked with, spent time in juvenile hall and on probation turned his life around dramatically that he ended up graduating from college phi beta kappa. I hired a staff member who had served 23 years in prison because of a gang murder he had committed when he was 19. He totally turned around his life when In prison. I gave him his first job on the outside and he went on to establish a visual arts non-profit that provided art lessons to low income children, teenagers and seniors.

I see this proposal as yet another excuse for and means of turning away desperate people, even if doing so means sending them back to their deaths. It is profoundly unjust and morally wrong and it flies in the face of so many decent Americans who view asylum as life saving and want to welcome immigrants to our communities. I also

AR.08531

see this proposal as more evidence of this administration's hatred toward people of color and people who are not rich and, as an American, it makes me deeply ashamed.

AR.08532

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-o443
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0089
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Bethany Hoffmann
**Address:**
    4206 River Hawk Drive
    Rockford,  IL,  61111
**Email:** beth@hil-llc.com
**Phone:** 8159758093

---

## General Comment

I have been practicing immigration and asylum law for almost 12 years. During this time, I have represented women, children, and men fleeing persecution in their home countries. This proposed rule would inject racial profiling into the asylum process and deny the most vulnerable populations in the world and relegate them to being sent back to a country where their lives are in serious danger. We should recognize the humanity of every person, and understand that asylum and immigration law are a cornerstone of human rights. The United States is a country that was founded by people fleeing persecution. We have ratified treaties agreeing to protect people from persecution. These regulations would eviscerate the core of what it means to be American--to respect and uphold human rights. I vehemently oppose these rules.

AR.08533

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-mk7b
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0090
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Aubra Fletcher

---

## General Comment

I oppose this change to the regulations. The proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

AR.08534

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9efz-t2f2
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0091
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Nan Warshaw
**Address:**
   4515 N Saint Louis Ave
   Chicago,  IL,  60625
**Email:** nan62@narl.com

## General Comment

I oppose this rule. We must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our country's ideals of compassion, fairness, and respect for human rights - not trample them. I stand in opposition to this proposed rule.

AR.08535

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg0-nbmh
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0092
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Robert Brown
**Address:**
  1443 Edwards Avenue
  Fircrest,  WA,  98466
**Email:** larkbrown@comcast.net
**Phone:** 253-302-4480

---

## General Comment

I am for immigration. I think immigrants add color and variety and interest to our social structure. That being said, I am also for treating asylum seekers and all immigrants with respect by the current administration; something which is not happening now. No family members should be separated, no child (or adult, for that matter) should spend a minute in a cage. We should be following international laws which forbid having immigrants wait in the neighboring country while awaiting a trial/hearing for asylum. There are so many abuses of power by President Trump, and they must stop.

AR.08536

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg0-ka7b
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0093
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Robert Fingerman

## General Comment

I object to the proposed rule change as it would inject racial profiling into the asylum process and put asylum seekers at risk of danger even death. This would in turn eviscerate one of the most important defenses community members have against deportation.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Sincerely,
Robert Fingerman

AR.08537

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg0-yly4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0094
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Sheryl Munoz-Bergman

## General Comment

I am writing to express my opposition to these proposed changes to the procedures for asylum and bars to asylum eligibility. These proposed changes will make it harder for some legitimate asylum seekers to access the protections that they need and deserve, putting their wellbeing and even their lives at risk. My family, like most families in the United States, is a family of immigrants. Some have arrived here in recent years, and some members of my family can trace their immigration history back for decades. Many of my family members came to the United States seeking refuge from government persecution, police brutality, religious persecution, inability of state government to ensure the protection and well-being of the local populace, and dire economic situations in their home countries. These circumstances are just as true for family members who immigrated a century ago as it is for family members who have immigrated more recently.

These proposed restrictions would open the doors for racial profiling to limit who is able to seek refuge and protection in our country. I believe we must hold true to our nation's values as a place of refuge for those fleeing religious, political or social persecution, and these changes would limit our ability to do so. Every human being deserves to be safe, and protected from harm. We are a great nation, and the vibrancy of immigrant and refugee communities helps to keep us great.

I respectfully request that the Administration withdraw this proposal, and create welcoming policies for those in need.

AR.08538

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg0-3o74
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0095
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Carl Malischke
**Address:**
  2770 North 74th Street
  Milwaukee, WI, 53210
**Email:** cjsquirrel@mac.com
**Phone:** 4146872606

## General Comment

Everything we are doing with regard to asylum seekers and migrants and refugees goes against my Catholic values, principles and morals. In the words of Steve Schmidt, former GOP strategist, The "zero tolerance" policy, the family separations issue....What's at stake....."is a question of national honor. The United States of America should not separate mothers and children and lock the children into cages, into detention facilities. Should not. And it recalls the worst excesses in American history: the separation of African American mothers and children during slavery; the separation of mothers and children who were Native Americans. We have had great injustice in the country, but the greatness of the country is the ability to make great progress combating it. It's wrong. When you see a government official with an American flag on their shoulder committing that act, it's disgraceful, it's cruel, and it's inhumane. But we have become desensitized in this era of Trump to cruelty, to inhumanity, to indecency, to dishonesty, to all of our great detriment."

AR.08539

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg0-qy5x
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0096
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

The American police system relies on racial profiling, and is designed to escalate minor infractions, such as speeding, into situations that often lead to death or arrest, especially for black and other nonwhite populations. The list of "aggravated felonies" used to judge whether an asylum seeker is worthy continuing to stay in the US is ever-shifting and includes, for one, petty theft if theft is repeated. Stealing food to eat, stealing diapers for one's child, stealing practically anything is not equivalent to sending someone back to a dangerous situation in another country, where the conflict often stems from some US "intervention" many decades ago to begin with, and where the asylum seeker faces persecution or poverty and likely death. Another category that under this proposed rule that would guarantee deportation is "acts of violence." How specific! America jails women for fighting back against their abusers and exploiters, and it would send an asylum-seeking woman to her death for the same thing. How can we trust a judicial system that already does not treat its own people fairly, to make these life or death judgement calls for those whose circumstances are unfairly dire and are desperately petitioning the US for charity, only to be let in and then their new lives destroyed by a mercurial, racist application of American law. For humanity's sake, reconsider this proposal.

AR.08540

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg0-655b
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0097
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Don Jantzi

## General Comment

I am writing in regards to to "Procedures for Asylum Eligibility and Bars to Asylum Eligibility." This cannot be allowed to pass! I believe our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

Let's return to the ideals of Democracy and the values of followers of Christ!

AR.08541

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg1-gghp
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0098
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Matthew Genaze
**Address:**
   334 Harvard Street
   Cambridge, MA, 02139
**Email:** aquarover@hotmail.com

## General Comment

Just before the holidays, the Trump administration quietly introduced a proposed rule change that would hurt many asylum seekers. I oppose this change.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them. I am only able to support legislators and the parties they are members of that oppose this type of legislation.

AR.08542

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg1-s41w
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0099
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** JeVerna Haynes
**Address:**
    914 Northside Dr.
    Fredericksburg,  22405
**Email:** lynnhaynesaccess@yahoo.com
**Phone:** 5408999661

## General Comment

Donald Trump's rules regarding asylum seekers violates the very spirit of the Constitution of the United States of America. He has made a mockery of who and what we are. His vile bigoty should not be allowed to destroy the honor of our democratic republic and should continue to welcome and come to the aid of asylum seekers. Misdemeanors in this country are non-violent crimes. In countries these people are coming from, in protection of their lives, and in considering corrupt governments, they should not be a factor. Although, every step our government takes under this administration proves more corrupt every day too.

AR.08543

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg1-ocxp
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0100
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Whitney Schmidt

---

## General Comment

I want to voice my strong opposition to this rule change. My understanding of US values is that the founders wanted our control to be a place of refuge for people fleeing violence, poverty, persecution and violence.

This proposed rule would add racial profiling into the asylum process which is wrong. Our immigration and asylum process must honor our US ideals of compassion, fairness and respect for all human rights and lives.

AR.08544

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg1-6h7i
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0101
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Deena Gottlieb

---

## General Comment

I am opposed to this rule change.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.
I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Again, I oppose this rule change.

Deena Gottlieb

AR.08545

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg1-mo16
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0102
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Lydia Hosek

## General Comment

I oppose this rule change. Do not make it more difficult for those fleeing violence to reach safety in our nation.

AR.08546

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg1-dgg3
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0103
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Lorraine Johnson

## General Comment

I oppose the change in the Procedures for asylum that is being considered. We are a nation of immigrants and refugees from our history. We need the input of others to grow and develop.

AR.08547

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg1-oko8
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0104
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

This is poor rule making and legislates racial profiling

AR.08548

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg1-zanb
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0105
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

Stop making asylum harder. If you cared about legality, you would be clearing the legal path, not denying everyone their legal right to asylum.

Release the children you are torturing! Close the concentration camps!

AR.08549

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg2-hjxk
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0106
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Christine Austin
**Address:**
  606 N Saluki Dr
  Marion,  IL,  62959
**Email:** stine_310@yahoo.com
**Phone:** 6189931503

## General Comment

This proposed rule would inject racial profiling into the asylum process and put asylum seekers at risk of danger even death. It's no secret that racial profiling and obstacles to equal justice run rampant in the criminal legal system. Under this rule change, asylum seekers who have been convicted of almost any crime or accused of gang involvement could be punished a second time by being barred from asylum and deported back to the very life-threatening situation they fled. And judges would be powerless to help.

AR.08550

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg2-v3ob
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0107
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Michael Lyon
**Address:**
    1536B Tyler St.
    Berkeley,  CA,  94703
**Email:** mlyon01@comcast.net
**Phone:** 415-215-7575

---

## General Comment

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41;
Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

January 14, 2020

To Whom it May Concern:

I am writing on behalf of Gray Panthers of San Francisco in response to the above-referenced Proposed Rules to express our strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

AR.08551

As an organization we strongly believe everyone should have the right to live in safety, without fear for their lives. For millions, their only immediate solution is seeking asylum in other countries. Our members have heard eye-witness accounts of seeing severed heads of young men who refused to join gangs in rural Latin America. Some members remember their parents talking about many hundreds of Jews in a ship off the US Atlantic coast being forced back to Nazi death camps because the US would not grant them asylum. Simple decency and international convention demand that asylum be denied only the most dire circumstances and after painstaking investigation into individual cases. Therefore, the proposed rule changes denoting entire categories of refugee applicants inadmissible is intolerable and must be rejected.

We cannot help observing that these proposed rule changes, like so many others proposed recently, are grievous threats to the lives of millions of immigrants and would-be immigrants, mostly people of color. Whether it is denying permanent residence to sick people who do not speak English, or ruling that documented and undocumented family members cannot live together in public housing, these rule changes are driven by racial animus rather than pubic policy.

For these reasons, the Department of Homeland Security and the Department of Justice must immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate to contact [contact name and email address] to provide further information.

Sincerely,
Michael Lyon
Board Member, Gray Panthers of San Franacisco

AR.08552

# PUBLIC SUBMISSION

| | |
|---|---|
| **As of:** January 22, 2020 |
| **Received:** January 14, 2020 |
| **Status:** Posted |
| **Posted:** January 15, 2020 |
| **Tracking No.** 1k4-9eg2-rx2w |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0108
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Bernie Barrett

## General Comment

I oppose this new regulation regarding people seeking asylum in the U.S. People seeking asylum are under a lot of stress
coming from places of violence, war, and danger. They do not need to be treated with suspicion. There are already rules
in place regarding past criminal acts. We do not need to keep making asylum seekers look like gangsters. They are human
beings. The U.S. values the dignity of people and in the past treated people as children of God. The U.S. should be a place
where people can expect to be treated with dignity.

AR.08553

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg2-6vxh
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0109
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Patricia Copenhaver
**Address:**
   710 Union St.
   Iowa Falls,  IA,  50126
**Email:** patcope@ymail.com
**Phone:** 641-640-0754

## General Comment

Racial profiling is a discriminatory tactic used by xenophobic bigots to keep immigrants and refugees from applying for asylum, regardless of their circumstances. Discrimination is illegal, regardless of who it is leveled at, and certainly has no place in the immigration process. The majority of refugees, for example, are widows and orphans. All they want is a chance to rebuild their lives. Immigrants, such as migrant farm workers, come seeking work depending on the season. They do the work that most Americans don't want to do. Same goes for those who clean offices and homes, landscaping, and other manual labor. All they want is a chance at 'The American Dream.'

AR.08554

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg2-irhb
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0110
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Suzanne Hesh
**Address:**
    930 E. Foothills Dr.
    Tucson,  AZ,  85718
**Email:** textilz1@comcast.net

## General Comment

The U.S. must be a place of refuge for people fleeing violence, starvation, poverty, or persecution. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation."
We must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.
I am in extreme opposition to this change in rules of procedure.

AR.08555

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg2-he0h
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0111
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Lisa Merchant

## General Comment

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution." "This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation." "I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them."

AR.08556

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg3-1lsr
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0112
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Des Anonymous

## General Comment

I disagree with this racist policy and believe the US has an international responsibility to provide pathways to legal status that are accessible.

AR.08557

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg3-bzrs
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0113
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Moira Birss
**Address:**
    1734 20TH AVE
    OAKLAND, CA, 94606
**Email:** moira.birss@gmail.com
**Phone:** 6505200042

---

## General Comment

I am write today strongly communicate my total opposition to this proposed rule change.

I am a US citizen, and I believe wholeheartedly that this country can, should and MUST welcome people fleeing violence, and I am very concerned about racial profiling in the criminal legal system.

The values of the US state that it should be a place of refuge for people fleeing violence, starvation, poverty, or persecution. Not only that, but U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 198 and passed with bipartisan support, which states that anyone present or arriving in the U.S. can apply for asylum.

For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

This proposed rule would also punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral and makes a mockery of due process.

AR.08558

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08559

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg3-lmub
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0114
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Cathy Baird

---

## General Comment

I oppose "Procedures for Asylum and Bars to Asylum Eligibility".

Asylum ideally provides those fleeing dangers in their native country with physical safety, a path to citizenship, and the opportunity to reunite with immediate family members who may remain abroad in danger. The United States committed to the domestic asylum system in an attempt to atone for for failing to save Jewish refugees who tried to flee the Holocaust.

When an asylum claim is denied, people often must return to death or persecution. Asylum seekers bear the burden of establishing their eligibility in the face of a complex web of laws and regulations, usually without the benefit of counsel and from a remote immigration jail. In some parts of the country, almost no one succeeds in winning asylum. This proposal would impose even more barriers to accessing asylum in the United States, so that even more people seeking safety would be returned to dangerous conditions.

"Aggravated felony" is a vague term that exists only in immigration law. It now encompasses hundreds of offenses, including misdemeanor shoplifting, misdemeanor battery, and sale of counterfeit DVDs. In addition, the proposed rules do not acknowledge that a significant number of people may plead to a crime to avoid the threat of a severe sentence, even though they may not have committed the offense. The proposed rules do not make exceptions for convictions influenced by mental illness or duress, even though people seeking asylum have a high rate of PTSD and other mental difficulties.

The proposed rules would bar parents and other caregivers who are convicted of smuggling or harboring after trying to help minor children to enter the United States in order to flee persecution. This is particularly insidious now that we know this administration has explicitly tried to use smuggling prosecutions against parents and caregivers to deter families from seeking asylum.

The proposed rules would disproportionately impact vulnerable people already routinely criminalized, including

AR.08560

LGBTQ immigrants, survivors of trafficking and domestic violence, and immigrant youth of color.

I ask you not to adopt the proposed rules.

AR.08561

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg4-oixs
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0115
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Rose Mendelsohn

---

## General Comment

To Whom it May Concern:

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook.

For these reasons, I call upon the Trump administration to withdraw this proposal.

Sincerely,
Rose Mendelsohn

AR.08562

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg4-gckq
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0116
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Pete Woiwode
**Address:**
   5688 Telegraph Ave #4
   Oakland, CA, 94609
**Email:** sweetfeetpete@gmail.com
**Phone:** 7347091789

## General Comment

I write to express my strong opposition to this proposed rule change.

I believe the soul of our country is about welcoming people in duress, and who is strongly concerned about racial profiling in the criminal legal system. My Immigrant neighbors are a vital part of my life and my community.

U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This rule would punish those most vulnerable, and do so for a second time- and then send those people back to dangerous experiences that they've fled.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08563

I demand that the Trump administration withdraw this proposal.

AR.08564

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg4-5mhz
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0117
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Daren Garshelis

## General Comment

I write to express my strong opposition to this proposed rule change. Immigrants and refugees are a vital part of the United States, and we should be welcoming people who are fleeing violence, not turning them away.

This proposed rule change would inject racial profiling into the asylum process and put people's lives in danger.

Please do the morally right thing and reject this reprehensible rule change.

AR.08565

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg4-k6kw
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0118
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Meredith Wilkinson

## General Comment

To Whom it May Concern:

I am writing on behalf of NISGUA (Network in Solidarity with the People of Guatemala) in response to the above-referenced Proposed Rules to express our strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

We work alongside human rights defenders, land rights activists, and survivors of trauma/genocide from Guatemala. Many of them are forced to leave their homelands and migrate to the US seeking asylum for fear or violence, discrimination, etc. This rule could impact our partners, their family members, and community members negatively.

For the reasons detailed in the comments that follow, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States. The barriers to asylum for those previously involved in the criminal legal system are already sweeping in scope; adding more barriers is cruel and unnecessary.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate to contact [contact name and email address] to provide further information.

Sincerely,
Meredith Wilkinson
US Operations and Programs Coordinator

AR.08566

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg4-iigc
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0119
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I am writing to express my disagreement with this proposed rules change to asylum eligibility. I am a concerned member of the public who believes strongly that our nation have a responsibility to people fleeing violence. Immigrants made up my community, my neighborhood, and my state. As a naturalized U.S. citizen, I am deeply concerned that this rule change would force people in my community who fled violence back to danger and death. Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system and will encounter more should this rules change come to pass.

I am strongly concerned about racial profiling in the criminal legal system. This proposed asylum rule change would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses my community have against deportation. The criminal legal system in the U.S. is wracked with racial profiling practices. This rule change will further enable our harsh immigration laws exploit these practices to drive mass incarceration and mass deportation of people of color.

I believe my government must recognize the humanity of immigrants and protect my neighbors from discrimination and abuse. Our immigration and asylum policies must honor ideals of compassion, fairness, and respect for human rights - not trample them. It is for these reasons I call upon the federal administration to withdraw this proposal to change asylum rules.

AR.08567

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg4-1h9c
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0120
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Erin Burns
**Address:**
   1825 Pine Street
   Apt. 1
   San Francisco,  CA,  94109
**Email:** ahhitburns@gmail.com
**Phone:** 9047429139

## General Comment

I'm writing to strongly oppose the proposed rule. I previously worked with asylum-seekers and refugees at a refugee resettlement agency. The men, women, and children I worked with bore deep psychological scars from fleeing persecution, political violence, and gangs. The United States must remain a beacon of hope and opportunity, and grant refuge to our most vulnerable neighbors. To pass this rule would betray our fundamental values as Americans. I urge the Trump administration to withdraw this rule, which doubly punishes asylum-seekers in a flagrant violation of due process.

AR.08568

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg4-ppfm
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0121
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** James Deshotels
**Address:**
  161 Vondera Dr
  Robertsville,  MT,  63072
**Email:** jdesh@loyno.edu

## General Comment

This rule change is wrong and un-American.

"Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution."
"This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation."
"I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them."

This rule change is wrong and un-American.

AR.08569

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 14, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg4-elvu
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0122
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Thomas Brudenell
**Address:**
    5049 Smith Road
    Rohrersville,  MD,  21779
**Email:** lynntom@myactv.net
**Phone:** 3019914815

---

## General Comment

I believe our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights. But the Trump administration is gutting asylum with an unrelenting series of attacks.

In fact, just before the holidays, the Trump administration quietly introduced a proposed rule change that would hurt many asylum seekers. The rule change would bar many people from seeking asylum based on contact with the U.S.'s flawed criminal legal system.

This proposed rule would inject racial profiling into the asylum process and put asylum seekers at risk of danger even death

AR.08570

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 14, 2020 |
| **Status:** Posted |
| **Posted:** January 15, 2020 |
| **Tracking No.** 1k4-9eg4-u8oi |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0123
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Kathy Bradley

## General Comment

I strongly oppose the proposed rule change. Our national values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08571

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg5-hmlg
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0124
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** anonymous anonymous
**Organization:** API Legal Outreach

## General Comment

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08572

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9eg6-cm3d
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0125
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Rena Stoler

## General Comment

I am commenting to express my strong opposition to this rule change proposal. This proposed rule change is concerning to me as a member of the public who believes strongly that America is a country with a history of welcoming and protecting people who flee violence and dangerous situations across the world. I am very concerned that this proposal will increase racial profiling in the criminal legal system and go against American values. I believe our government must recognize everyone in our community's- including immigrants- unique contribution to society, and protect the vulnerable from discrimination and abuse. Our immigration and asylum policies need to honor our ideals of human rights, equality and fairness. For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08573

# PUBLIC SUBMISSION

| | |
|---|---|
| **As of:** January 22, 2020 | |
| **Received:** January 15, 2020 | |
| **Status:** Posted | |
| **Posted:** January 15, 2020 | |
| **Tracking No.** 1k4-9eg6-2wkd | |
| **Comments Due:** January 21, 2020 | |
| **Submission Type:** Web | |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0126
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ellen Hage
**Address:**
    10 Buffalo Court
    Pacifica, CA,

## General Comment

I strongly oppose the proposed rule change that will cause suffering and harm to immigrants fleeing their country and seeking refuge and asylum in our country. How is it possible to turn away people coming to our border for no other reason than to protect their lives and those if their families. I am a leader in my faith community. This is what we are called to do, to welcome the stranger, "to act justly, to love tenderly, and to walk humbly with your God". This proposed rule change is cruel and inhumane. Thank God my friend who sought asylum with her family is here now, healing from the trauma she experienced and contributing to our country. All the talk about Pro-Life, Protecting her life and the lives of other immigrants who come to our country seeking a chance to be safe and make a life, that is truly Pro-Life.

AR.08574

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** k5e-xtlm-044l
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0127
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I am a physician who works for and cares for the medically underserved, including undocumented immigrants, asylum seekers, and refugees. Our country was built on the backbone of immigrants and with the new proposed changes to asylum laws which will make it harder for individuals to make a new life for themselves and their families, is truly heartbreaking and cruel.

I am writing to urge the Department of Homeland Security and the Department of Justice to rescind the set of Proposed Rules issued on December 19, 2019 that would make it more difficult for individuals seeking asylum in the United States. These proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. I submit these comments to express my opposition to the entirety of the Proposed Rules and my grave concerns with the administration's continued efforts to exclude refugees from obtaining the security and stability the United States asylum system has long promised. I urge that the Proposed Rules be rescinded in their entirety.

The barriers to asylum for those previously involved in the criminal legal system are already sweeping in scope; adding more barriers is cruel and unnecessary. The laws, regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the burden of establishing their eligibility for asylum in the face of a complex web of laws and regulations, without the benefit of appointed counsel and often from a remote immigration jail. Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed. The agencies' efforts to add these new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel.

The Proposed Rules are also arbitrary and are not based on evidence. There is no evidence to support the assumption that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence.

AR.08575

Furthermore, the Proposed Rules cruelly disregard the connections between trauma and involvement in the criminal legal system. The harsh nature of the Proposed Rules is especially evident when viewed through a trauma-informed lens. Asylum seekers are an inherently vulnerable population because of the trauma they have experienced in their countries of origin and, often, along the journey to find safety. Existing literature suggests that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD). Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma; some turn to drugs and alcohol in an effort to self-medicate. The proposed new bars to asylum include any drug-related conviction (with one exception for a first minor marijuana offense) and any second conviction for driving under the influence. This approach is not only cruel but also ignores the evidence. Particularly given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not with deportation order.

Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply cruel. As a physician who works largely with immigrant populations, I know how difficult it is for individuals seeking asylum to be granted asylum, and I am appalled that this Administration

is making the process more difficult without offering any evidence for why these changes are needed. I strongly urge that the new Proposal Rules be rescinded entirely.

AR.08576

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egb-4uan
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0128
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Susan Babbitt

## General Comment

This country is by tradition a place of refuge for people fleeing violence, starvation, poverty, or persecution. The proposed rule would inject racial profiling into the process and increase the number of people at risk of danger - and death. We should not expose more vulnerable people to deportation. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. We must protect people and our values, and reject this rule.

AR.08577

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egc-h6ia
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0129
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Elissa Steglich

---

## General Comment

See attached file(s)

---

## Attachments

comments asylum expansion regs

AR.08578

**DETAILED COMMENTS in opposition to the Proposed Rules re Procedures for Asylum and Bars to Asylum Eligibility, 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41**

**TABLE OF CONTENTS**

I.  Introduction

II.  The Proposed Rules unnecessarily and cruelly exclude bona fide refugees from asylum eligibility

III.  The Proposed Rules violate the letter and spirit of United States international treaty obligations

IV.  Those precluded from asylum eligibility will be gravely impacted even if granted withholding or protection under the Convention Against Torture

V.  The Proposed Rules will result in "mini-trials" in immigration court, undermine judicial efficiency and result in racially-biased decision-making

VI.  The proposed definition of "conviction" and "sentence" for the purposes of the new bars further excludes those in need of protection

VII.  The Proposed Rules will disparately impact vulnerable populations already routinely criminalized, including LGBTQ immigrants, survivors of trafficking and domestic violence, and immigrant youth of color

VIII.  The Proposed Rules are ultra vires to the federal immigration statute to the extent they purport to bar eligibility through a categorical exercise of discretion

IX.  Conclusion

**I.   Introduction**

On December 19th, the Department of Homeland Security (DHS) and the Department of Justice (DOJ) issued a joint set of Proposed Rules that would make three primary changes to the rules governing asylum adjudications.

The first proposed set of changes adds the following seven *categorical* bars to asylum eligibility: (1) any conviction of a felony offense; (2) any conviction for "smuggling or harboring" under 8 U.S.C. § 1324(a), even if the asylum seeker committed the offense for the purpose of bringing her own spouse, child or parent to safety; (3) any conviction for illegal reentry under 8 U.S.C. § 1326; (4) any conviction for an offense "involving criminal street gangs," with the adjudicator empowered to look to any evidence to determine applicability; (5) any second conviction for an offense involving driving while intoxicated or impaired; (6) any

conviction *or accusation of conduct* for acts of battery involving a domestic relationship; (7) and any conviction for several newly defined categories of misdemeanor offenses, including *any* drug-related offense except for a first-time marijuana possession offense, any offense involving a fraudulent document, and fraud in public benefits.

The second section of the Proposed Rules provides a multi-factor test for immigration adjudicators to determine whether a criminal conviction or sentence is valid for the purpose of determining asylum eligibility. The third section rescinds a provision in the current rules regarding the reconsideration of discretionary asylum.

Taken together, these proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. As an immigration lawyer and US citizen, these comments to express my opposition to the entirety of the Proposed Rules and grave concerns with the administration's continued efforts to exclude refugees from obtaining the security and stability the United States asylum system has long promised. We urge that the Proposed Rules be rescinded in their entirety.

## II. The Proposed Rules unnecessarily and cruelly exclude bona fide refugees from asylum eligibility

*The barriers to asylum for those previously involved in the criminal legal system are already sweeping in scope; adding more barriers is cruel and unnecessary.*

The United States asylum system was first codified in statute through the Refugee Act of 1980, described by one prominent scholar as a bipartisan attempt to "reconcile our rhetoric with our law, our national immigration policy and our international treaty obligations so that we could maintain a consistent posture towards the world as a nation with a strong humanitarian tradition and a unique historic role as a haven for persons fleeing oppression."[1] The Act—among other measures designed to bring the United States domestic legal code into compliance with the provisions of the United Nations Protocol Relating to the Status of Refugees—created a "broad class" of refugees eligible for a discretionary grant of asylum.[2]

The asylum protections provided by United States law are sacred. Asylum provides those fleeing horrors with physical safety, a path to citizenship and security, and the opportunity to reunite with immediate family members who may still remain abroad in danger.[3] Many see the

---

[1] Deborah Anker, "The Refugee Act of 1980: An Historical Perspective," *In Defense of the Alien* 5 (1982): 89-94, https://www.jstor.org/stable/23141008?read-now=1&refreqid=excelsior%3A1060953608aa0bdd30d5d506e1ff6318&seq=1#page_scan_tab_contents.

[2] *See I.N.S. v. Cardoza-Fonseca*, 40 U.S. 421, 423 (1987).

[3] The permanency and family reunification benefits that accompany asylum are not provided to those granted withholding of removal or protection under the Convention Against Torture, the alternative forms of relief described

domestic asylum system as a symbol of the United States' commitment never to repeat its failure to save thousands of Jewish refugees refused entry to the United States on the *St. Louis* and others fleeing the Holocaust.[4] Others point to the critical role that domestic asylum policy plays in serving the United States' foreign policy interests abroad.[5] For those individuals seeking asylum in the United States, the stakes could not be higher—a claim denied often means return to death or brutal persecution.[6]

The laws, regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the evidentiary burden of establishing their eligibility for asylum[7] in the face of a complex web of laws and regulations, without the benefit of appointed counsel and often from a remote immigration jail.[8] The obstacles to winning asylum are exceedingly high; indeed in some parts of the country and before certain immigration judges, almost no one succeeds.[9] Today, newly imposed barriers to accessing asylum in the United States are breathtaking in scope, with those seeking safety at the southern border subject to return to dangerous conditions in Mexico and an overlapping web of policies that preclude asylum eligibility for countless migrants simply because of their national origin, manner of entry, or their flight path.[10] There are consistent reports of the documented deaths and brutalities endured by those who sought but were denied asylum protections in the United States.[11]

---

throughout the Proposed Rules as a justification for the breadth of the new proposed bars. For more details on the differences between the forms of protection, *see* section VI *infra*.

[4] Dara Lind, "How America's rejections of Jews fleeing Nazi Germany haunts our refugee policy today," *Vox*, January 27, 2017, https://www.vox.com/policy-and-politics/2017/1/27/14412082/refugees-history-holocaust.

[5] Council on Foreign Relations, *Independent Task Force Report No. 63: U.S. Immigration Policy* (2009), 117 (additional or dissenting view by Elisa Massimino) ("For better or worse, the United States sets the standard for reasonable and humane treatment of migrants around the world. If the United States endorses harsh treatment of immigrants, it erodes the norms designed to protect them, and other countries will have license to do the same.").

[6] *See, e.g.*, Sarah Stillman, "When deportation is a death sentence," *The New Yorker*, January 8, 2018, https://www.newyorker.com/magazine/2018/01/15/when-deportation-is-a-death-sentence.

[7] 8 USC § 1158(b)(1)(B); 8 CFR § 1240.8(d).

[8] *See* Daniel Connolly, Aaron Montes, and Lauren Villagran, "Asylum seekers in U.S. face years of waiting, little chance of winning their cases," *USA Today*, September 25, 2019, https://www.usatoday.com/in-depth/news/nation/2019/09/23/immigration-court-asylum-seekers-what-to-expect/2026541001/.

[9] Manuel Roig-Franzia, "Immigrants risk it all seeking asylum. The answer is almost always 'no,'" *Washington Post*, July 24, 2019, https://www.washingtonpost.com/lifestyle/style/migrants-risk-it-all-seeking-asylum-the-answer-in-court-is-almost-always-no/2019/07/23/9c161b2e-a3f7-11e9-b732-41a79c2551bf_story.html.

[10] The National Immigrant Justice Center maintains a frequently updated timeline providing details of each of the asylum bans and other policies issued and implemented by the administration undermining asylum access at https://www.immigrantjustice.org/issues/asylum-seekers-refugees. For more information on the harms and rights abuses inherent in the Migrant Protection Protocols, or "Return-to-Mexico" program, *see* Human Rights First, *Delivered to Danger* (December 2019), https://www.humanrightsfirst.org/campaign/remain-mexico.

[11] *See, e.g.,* Stillman, "Death Sentence," *supra* (reporting on a database of more than sixty cases of individuals killed after deportation); *see also* Maria Sachetti, "'Death is waiting for him,'" *The Washington Post*, December 6, 2018, https://www.washingtonpost.com/graphics/2018/local/asylum-deported-ms-13-honduras/ (telling the story of Santos Chirino, denied asylum by a Virginia immigration judge, deported, and then murdered by those he told the immigration judge he feared); and Kevin Sieff, "When death awaits deported asylum seekers," *Washington Post*, December 26, 2018, https://www.washingtonpost.com/graphics/2018/world/when-death-awaits-deported-asylum-seekers/.

3

AR.08581

Specifically, the bars to asylum based on allegations of criminal conduct are *already* sweeping and over-broad in nature and scope.[12] Any conviction for an offense determined to be an "aggravated felony" is considered a *per se* "particularly serious crime" and therefore a mandatory bar to asylum.[13] "Aggravated felony" is a notoriously vague term, which exists only in immigration law. Originally limited to murder, weapons trafficking and drug trafficking,[14] it has metastasized to encompass hundreds of offenses, many of them neither a felony nor aggravated, including petty offenses such as misdemeanor shoplifting, simple misdemeanor battery, or sale of counterfeit DVDs.[15] The existing crime bars should be narrowed, not expanded. Even for those not categorically barred from relief, the immigration adjudicator maintains full discretion to deny asylum.[16]

Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct.[17] Further categorical bars are not needed. The agencies' efforts to add *seven* new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel. The Proposed Rules drain the phrase "*particularly serious* crime," 8 U.S.C. § 1158, of any sensible meaning.

The Proposed Rules are also arbitrary and capricious. They would constitute a marked departure from past practice. And the agencies have proffered no evidence or data to support these changes.

One assumption fundamentally underlying the Proposed Rules, for example, is that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. But no evidence is provided to support that assumption, and a criminal record, does not, in fact, reliably predict future dangerousness.[18] The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the

---

[12] The existing categorical bars to asylum eligibility are discussed in detail on p. 69641 of the Proposed Rules.

[13] 8 U.S.C. §§ 1158(b)(2)(A)(ii) and (B)(i).

[14] Pub. L. No. 100-690, § 7342, 102 Stat. 4181, 4469-70.

[15] 8 U.S.C. § 1101(a)(43). *See also* Nancy Morawetz, "Understanding the Impact of the 1996 Deportation Laws and the Limited Scope of Proposed Reforms," *Harvard Law Review* 113 (2000): 1939-40 (criticizing the "'Alice-in-Wonderland-like definition of the term 'aggravated felony'"); Melissa Cook, "Banished for Minor Crimes: The Aggravated Felony Provisions of the Immigration and Nationality Act as a Human Rights Violation," *Boston College Third World Law Journal* (2003): 293.

[16] *See Matter of Pula*, 19 I.&N. Dec. 467 (BIA 1987).

[17] *See id.*

[18] See U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (2017) (noting that recidivism rates fall substantially with age); U.S. Sentencing Commission, *Recidivism Among Federal Violent Offenders* (2019) (noting that non-violent offenders recidivate at significantly lower rates); J. Ramos and M. Wenger, "Immigration and recidivism: What is the Link?" *Justice Quarterly* (2019) (finding no correlation between recidivism rates and citizenship status among those formerly incarcerated for felonies in Florida prisons).

AR.08582

community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence. Conviction for a crime does not, without more, make one a present or future danger—which is why the Refugee Convention's particularly serious crime bar, made part of United States law through 8 U.S.C. § 1158, should only properly apply if both (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows that she is a present or future danger.[19]

Similarly, the Proposed Rules fail to address or account for the fact that a significant number of people may agree to plead to a crime as to avoid the threat of a severe sentence; not only is a conviction an unreliable predictor of future danger, it can also be an unreliable indicator of past criminal conduct.[20] In addition, the Proposed Rules do not address and make no exception for convictions for conduct influenced by mental illness or duress.

The Board of Immigration Appeals has cautioned that, "in light of the unusually harsh consequences which may befall a [noncitizen] who has established a well-founded fear of persecution; the danger of persecution should generally outweigh all but the most egregious of adverse factors."[21] Yet because of the categorical nature of the seven news bars proposed here, asylum seekers will be precluded from obtaining protection on the basis of a vast array of conduct, without any discretion left to the immigration adjudicator to determine whether the circumstances merit such a harsh penalty. Indeed, in the case of the domestic-violence related ground, the categorical bar will be imposed on the basis of *mere allegations* of conduct without any adjudication of guilt.[22]

Those unjustly precluded from even seeking a discretionary grant of asylum by the Proposed Rules will include, for example: individuals struggling with addiction with one drug-related conviction, regardless of the circumstances of the offense; asylum seekers with two convictions for driving under the influence, regardless of whether the applicant has sought treatment for alcohol addiction or the circumstances of the convictions; community members seeking asylum defensively who have been convicted of a document fraud offense related to their immigration status; and asylum-seeking mothers convicted for bringing their own child across the southern border in an effort to find safety.

---

[19] See U.N. High Commissioner for Refugees, *Criminal Justice and Immigration Bill: Briefing for the House of Commons at Second Reading* ¶ 11 (July 2007), http://www.unhcr.org/en-us/576d237f7.pdf (the Refugee Convention's particularly serious crime bar only applies if (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows she is a "present or future danger.").

[20] John H. Blume and Rebecca K. Helm, "The Unexonerated: Factually Innocent Defendants Who Plead Guilty," *Cornell Law Review* 100 (2014): 157, https://pdfs.semanticscholar.org/c00f/96d421adf1846d120bf802a8854b5e2c0ff2.pdf.

[21] *Pula*, 19 I.&N. Dec. at 474.

[22] The Proposed Rules at p. 69651 explain that the regulations will "render ineligible [non-citizens] who engaged in acts of battery and extreme cruelty in a domestic context in the United States, regardless of whether such conduct resulted in a criminal conviction."

*The Proposed Rules cruelly disregard the connections between trauma and involvement in the criminal legal system.*

The harsh nature of the Proposed Rules is especially evident when viewed through a trauma-informed lens. Asylum seekers are an inherently vulnerable population because of the trauma they have experienced in their countries of origin and, often, along the journey to find safety. Existing literature suggests that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD).[23] One recent study found the mental health problems facing refugees and asylum seekers so acute that more than a third of the study's sample admitted having suicidal thoughts in the preceding two weeks.[24]

Studies also consistently reveal a high prevalence of comorbidity of PTSD and substance use disorders, with individuals with PTSD *up to 14 times more likely* to struggle with a substance use disorder.[25] Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma;[26] some turn to drugs and alcohol in an effort to self-medicate.[27] The proposed new bars to asylum include *any* drug-related conviction (with one exception for a first minor marijuana possessory offense) and any second conviction for driving under the influence. This approach is not only cruel but also ignores the evidence. *Particularly* given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not a closed door and deportation order.

Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply cruel.

---

[23] Giulia Turrini et al., "Common mental disorders in asylum seekers and refugees: umbrella review of prevalence and intervention studies," *International Journal of Mental Health Systems* 11 (August 2017): 51, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5571637/.

[24] Megan Brooks, "Refugees have high burden of mental health problems," *Psychiatry and Behavioral Health Learning Network*, June 2019, https://www.psychcongress.com/article/refugees-have-high-burden-mental-health-problems.

[25] Jenna L McCauley et al., "Posttraumatic Stress Disorder and Co-Occurring Substance Use Disorders: Advances in Assessment and Treatment," *Clinical Psychology Science and Practice* 19, 3 (October 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3811127/.

[26] For more information on immigrant eligibility for federal benefits, *see* https://www.nilc.org/issues/health-care/.

[27] Carrier Clinic, *Trauma and Addiction* (2019), https://carrierclinic.org/2019/08/06/trauma-and-addiction/ ("...some people struggling to manage the effects of trauma in their lives may turn to drugs and alcohol to self-medicate. PTSD symptoms like agitation, hypersensitivity to loud noises or sudden movements, depression, social withdrawal and insomnia may seem more manageable through the use of sedating or stimulating drugs depending on the symptom. However, addiction soon becomes yet another problem in the trauma survivor's life. Before long, the 'cure' no longer works and causes far more pain to an already suffering person.").

AR.08584

III.    **The Proposed Rules violate the letter and spirit of United States international treaty obligations**

By acceding to the 1967 Protocol Relating to the Status of Refugees,[28] which binds parties to the United Nations Convention Relating to the Status of Refugees,[29] the United States obligated itself to develop and interpret United States refugee law in a manner that complies with the Protocol's principle of non-refoulement (the commitment not to return refugees to a country where they will face persecution on protected grounds), even where potential refugees have allegedly committed criminal offenses. As noted above, adjudicators already have over-broad authority to deny asylum based on allegations of criminal activity, which vastly exceeds the categories for exclusion and expulsion set out in the Convention. Instead of working towards greater congruence with the terms of the Convention, the Proposed Rules carve out categorical bars from protection that violate both the language and spirit of the treaty.

While the Convention allows states to exclude and/or expel potential refugees from protection, the circumstances in which this can occur are limited. In particular, the Convention allows states to exclude and/or expel individuals from refugee protection if the individual "having been convicted by a final judgement of a particularly serious crime, constitutes a danger to the community of that country."[30] However, this clause is intended for "extreme cases," in which the particularly serious crime at issue is a "capital crime or a very grave punishable act."[31] The United Nations High Commissioner for Refugees (UNHCR) has asserted that to constitute a "particularly serious crime," the crime "must belong to the gravest category" and be limited "to refugees who become an extremely serious threat to the country of asylum due to the severity of crimes perpetrated by them in the country of asylum."[32] Moreover, the UNHCR has specifically noted that the particularly serious crime bar does not encompass less extreme crimes; "[c]rimes such as petty theft or the possession for personal use of illicit narcotic substances would not meet the threshold of seriousness."[33] Finally, when determining whether an individual should be barred from protection for having been convicted of a particularly serious crime, the adjudicator must conduct an individualized analysis and consider any mitigating factors.[34]

---

[28] United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, [1968] 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 268.

[29] Convention Relating to the Statute of Refugees, July 28, 1951, 140 U.N.T.S. 1954 (hereinafter "Refugee Convention").

[30] *Id.* at art. 33(2).

[31] U.N. High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol relating to the Status of Refugees* 2, U.N. Doc. HCR/IP/Eng/REV. ¶ 154-55, (1979, reissued 2019).

[32] U.N. High Comm'r for Refugees (UNHCR), *Criminal Justice and Immigration Bill: Briefing for the House of Commons at Second Reading* ¶ 7 (July 2007), http://www.unhcr.org/enus/576d237f7.pdf.

[33] *Id.* at ¶ 10.

[34] *Id.* at ¶ 10-11; U.N. High Commissioner for Refugees, *The Nationality, Immigration and Asylum Act 2002: UNHCR Comments on the Nationality, Immigration and Asylum Act 2002 (Specification of Particularly Serious Crimes) Order 2004*, 4 (2004).

7

AR.08585

As noted above, legislation and agency interpretation of the Immigration and Nationality Act have already expanded the particularly serious crime bar far beyond what was contemplated in the Convention by creating categorical particularly serious crimes through the aggravated felony definition. The Proposed Rules would amplify the dissonance between U.S. refugee law and the Convention, as well as the violation of U.S. obligations under the Convention, by creating categorical bars within categorical bars. For example, at p. 69659, the Proposed Rules first exclude from protection anyone who was convicted of a felony and then at p. 69660, define "felony" as "any crime punishable by more than one of imprisonment" without any reference to other factors, including dangerousness. The Proposed Rules described the increased categorization of the particularly serious crime bar as necessary because the case-by-case adjudication previously used for non-aggravated felony offenses was "inefficient,"[35] but an individualized analysis is exactly what the Convention requires to ensure only those individuals who have been convicted of crimes that are truly serious and therefore present a future danger are placed at risk of refoulement.

Additionally, outside of the aggravated felony context, it has generally been well understood by the Board of Immigration Appeals and the Courts of Appeals that low-level, "run-of-the-mill" offenses do not constitute particularly serious crimes.[36] Under this long-standing interpretation of the particularly serious crime bar in the INA, there is simply no scenario in which low-level offenses like misdemeanor driving under the influence where no injury is caused to another or simple possession of a controlled substance or paraphernalia would constitute a particularly serious crime.

The reason for this is common sense. As Judge Reinhardt explained in a concurring opinion in *Delgado v. Holder*,[37] a decision the Proposed Rules cite in support of the expanded bars, run-of-the-mill crimes like driving under the influence have "little in common" with other crimes the Board of Immigration Appeals has deemed particularly serious—e.g., felony menacing with a deadly weapon, armed robbery, and burglary of a dwelling in which the offender is armed or causes injury.[38] Judge Reinhardt further noted that public opinion does not treat them similarly either: "American voters would be unlikely to elect a president or vice president who had committed a particularly serious crime, yet they had no difficulty in recently electing to each office a candidate with a DUI record."[39] Barring individuals from asylum based on these relatively minor offenses renders the "particularly serious" part of the "particularly serious crime" bar meaningless.

---

[35] Proposed Rules at 69646.

[36] *Delgado v. Holder*, 648 F.3d 1095, 1110 (9th Cir. 2011) (en banc) (J. Reinhardt, concurring).

[37] 648 F.3d at 1110 (J. Reinhardt, concurring).

[38] *Id.* at 1110.

[39] *Id.* at 1110.

The expansion of the asylum bar to include individuals who have been convicted of reentering the United States without inspection pursuant to INA § 276[40] is also unlike any of the other bars previously established or as interpreted by the Board of Immigration Appeals or Circuit Courts of Appeals. It is an offense with no element of danger or violence to others, and has no victim. Most significantly, and more so than other bars contained in the Proposed Rules, barring asylum based on the manner of entry directly violates the Convention's prohibition on imposing penalties based on a refugee's manner of entry or presence.[41] This prohibition is a critical part of the Convention because it recognizes that refugees often have little control over the place and manner in which they enter the country where they are seeking refuge.

## IV. Those precluded from asylum eligibility will be gravely impacted even if granted withholding of removal or protection under the Convention Against Torture

Throughout the Proposed Rules, the agencies defend the harsh and broad nature of their proposal by pointing to the continued availability of alternative forms of relief for those precluded from asylum eligibility under the new rules.[42] The availability of these alternatives forms of relief, however—known as withholding of removal and protection under the Convention Against Torture (CAT)—does not nullify the harm created by the Proposed Rule's new limits on asylum. The protections afforded by CAT and by statutory withholding of removal are limited in scope and duration, and they are harder to obtain. As a result, a Rule that limits *bona fide* refugees to withholding of removal and CAT protection would impose a very real harm on individuals who have come to the United States in search of protection.

First, the most serious harm that can befall an individual as a result of these Proposed Rules is removal to persecution and torture, and the existence of withholding of removal does not account for that risk. CAT and withholding protections demand a higher level of proof than asylum claims: a clear probability of persecution or torture.[43] Thus, an individual could have a valid asylum claim but be unable to meet the standard under the other forms of relief and

---

[40] Proposed Rules at 69659, 69660.

[41] Refugee Convention, *supra*, at art 31.

[42] *See, e.g.,* Proposed Rules at 69644.

[43] Withholding of removal requires the petitioner to demonstrate his or her "life or freedom would be threatened in that country because of the petitioner's race, religion, nationality, membership in a particular social group, or political opinion." *INS v. Stevic*, 467 U.S. 407, 411 (1984) (quoting 8 U.S.C. § 1231(b)(3)). Unlike asylum, however, the petitioner must show a "clear probability" of the threat to life or freedom if deported to his or her country of nationality. The clear probability standard is more stringent than the well-founded fear standard for asylum. *Id; see also Cardoza-Fonseca*, 480 U.S. at 431 (describing the difference between a well-founded fear of persecution and a clear probability of persecution). For CAT relief, an applicant must show it is more likely than not that he or she will be tortured or killed by or at the government's acquiescence if removed to the home country. 8 C.F.R. § 1208.16(c)(2).

therefore would be removed to their country of origin, where they would face persecution or even death.

Even for those who meet the higher standard, withholding and CAT recipients are still subject to significant prejudice. For example, they have no ability to travel internationally. The United Nations Convention Relating to the Status of Refugees[44] affords refugees the right to travel in mandatory terms. Article 28 states, "Contracting States shall issue to refugees lawfully staying in their territory travel documents for the purpose of travel outside their territory." Withholding and CAT recipients do not have access to a travel document as contemplated by Article 28. By regulation, refugee travel documents are available only to asylees.[45] And the Board of Immigration Appeals requires that an individual granted withholding and CAT—unlike an individual granted asylum—must simultaneously be ordered removed, making any international travel a "self-deportation."[46] Refugees granted only withholding of removal or CAT protection are thus effectively trapped within the United States in long-term limbo.

Withholding and CAT recipients also face permanent separation from their spouses and children. Because international travel is prohibited, these individuals cannot reconnect with their families in a third country. And they also cannot reunite with family in the United States because only asylees and refugees are eligible to petition for a spouse and children to join them as derivatives on that status.[47] For many, this will mean that the Proposed Rules institute yet another formal policy of family separation. For example, a mother with two young children who flees to the United States and is subject to one of the expanded asylum bars will not be able to ensure that her children will be able to obtain protection in the United States with her if she is granted relief. Rather, if her children are still in her home country, they would need to come to the United States and seek asylum on their own, likely as unaccompanied children. If her children fled to the United States with her, then they will need to establish their own eligibility for protection before an immigration judge, no matter their age.

Recently, this exact scenario played out with a mother who was subject to the so-called Migrant Protection Protocols (also known as Remain in Mexico) and the asylum "transit ban,"[48] which made the mother ineligible for asylum and thus required the children to establish their independent eligibility for withholding and CAT protection. An immigration judge granted the mother withholding of removal but denied protection to her young children, leaving the children

---

[44] 19 U.S.T. 6223 T.I.A.S. No. 6577 (1968).

[45] 8 C.F.R. § 223.1.

[46] *See Matter of I-S- & C-S-*, 24 I.&N. Dec. 432, 434 n.3 (BIA 2008); 8 C.F.R. § 241.7.

[47] 8 C.F.R. § 208.21(a).

[48] 8 C.F.R. § 1208.13(c)(4).

with removal orders and immense uncertainty about their future.[49] Under the expanded bars in the Proposed Rules, these situations will certainly increase, separating families and forcing parents to return to countries where it has been established they more likely than not will face persecution and torture, rather than leaving their children on their own.

Withholding recipients likewise face hurdles in access to employment. Article 17 of the Refugee Convention states that a contracting state "shall accord to refugees lawfully staying in their territory the most favorable treatment accorded to nationals of a foreign country in the same circumstances, as regards the right to wage-earning employment." Recipients of withholding enjoy no such right. They must apply for work authorization, and they face frequent delays in the adjudication of these applications, which often result in the loss of legal authorization to work.[50]

And perhaps most fundamentally, there is continuing jeopardy for withholding and CAT recipients that does not exist for asylum recipients. When a noncitizen is granted asylum, the person receives a legal status.[51] Asylum, once granted, protects an asylee against removal unless and until that status is revoked.[52] None of these protections exists for withholding and CAT recipients. They have no access to permanent residency or citizenship.[53] Instead, they are subject to a removal order and vulnerable to the permanent prospect of deportation to a third country and subject to potential check ins with immigration officials where they can be made to pursue removal to third countries to which they have no connection.[54]

Finally, I write to highlight a different form of prejudice that will flow from the rule: one relating to judicial efficiency. Neither withholding of removal nor CAT protection allow family members who are in the United States together and pursuing protection on the same basis to apply as derivatives on a principal application. As a result, family claims for those rendered ineligible for asylum by the new rules will have to be adjudicated separately, and potentially before different adjudicators even when the claims are interrelated and even when minor children may not be in a position to explain the claim at all or as sufficiently as a parent. In addition to being unjust to the affected family members, this approach would result in gross inefficiencies,

---

[49] Adolfo Flores, "An Immigrant Woman Was Allowed To Stay In The US — But Her Three Children Have A Deportation Order," *Buzzfeed*, December 21, 2019, https://www.buzzfeednews.com/article/adolfoflores/an-immigrant-woman-was-allowed-to-stay-in-the-us-but-not.

[50] 8 C.F.R. § 274a.12(a)(10); *Northwest Immigrant Rights Project, et al. v. USCIS, et al.*, No. 2:15-cv-00813-JLR (W.D. Wash., filed May 22, 2015) (class action regarding delays in adjudication of work authorization).

[51] *See, e.g.*, 8 C.F.R. 245.1(d)(1) (defining "lawful immigration status" to include asylees).

[52] *See* 8 U.S.C. § 1158(c)(1)(A).

[53] *Matter of Lam*, 18 I.&N. Dec. 15, 18 (BIA 1981); 8 C.F.R. § 245.1(d)(1) (explaining that only those in "lawful immigration status" can seek permanent residency and excluding withholding recipients from such status); 8 C.F.R. § 209.2(a)(1) (authorizing adjustment of status to permanent residence for asylees); 8 C.F.R. § 316.2 (naturalization available only to permanent residents).

[54] *See R–S–C v. Sessions*, 869 F.3d 1176, 1180 (10th Cir. 2017).

AR.08589

which should be avoided in a system that already contains a significant backlog of pending cases.[55]

## V. The Proposed Rules will result in "mini-trials" in immigration court, undermine judicial efficiency and result in racially-biased decision-making

In two significant ways, the Proposed Rules require immigration adjudicators to engage in decision-making to determine whether an asylum applicant's conduct—considered independently of any criminal court adjudication—triggers a categorical bar to asylum eligibility. First, the agencies propose that immigration adjudicators be allowed to consider "all reliable evidence" to determine whether there is "reason to believe" an offense was "committed for or related to criminal gang evidence," or "in furtherance of gang-related activity, triggering ineligibility for asylum in either case.[56] Second, the Proposed Rules permit immigration adjudicators to "assess all reliable evidence in order to determine whether [a] conviction amounts to a domestic violence offense;" and to go even further by considering whether non-adjudicated *conduct* "amounts to a covered act of battery or extreme cruelty."[57]

Requiring adjudicators to make complex determinations regarding the nature and scope of a particular conviction or, in the case of the domestic violence bar, *conduct*, will lead to massive judicial inefficiencies and slanted "mini-trials" within the asylum adjudication process. The scope of the "reliable evidence" available to adjudicators in asylum cases is potentially limitless; advocates on both sides would be obligated to present fulsome arguments to make their cases about gang connections to the underlying activity or the relationship of the asylum applicant to the alleged victim. Because of the lack of robust evidentiary rules in immigration proceedings, it will be difficult if not impossible for many applicants to rebut negative evidence marshaled against them, even if false; and in other cases, asylum applicants will struggle to find evidence connected to events that may have happened years prior (especially for those detained). Asylum trials, which are typically three or fewer hours under current policies, would provide insufficient time to fully present arguments on both sides of these unwieldy issues.

As the immigration courts contend with backlogs that now exceed one million cases,[58] tasking adjudicators with a highly nuanced, resource-intensive assessment of the connection of a conviction to gang activity and/or the domestic nature of alleged criminal conduct—assessments far outside their areas of expertise—will prolong asylum proceedings and invariably lead to

---

[55] See, e.g., Marissa Esthimer, "Crisis in the Courts: Is the Backlogged U.S. Immigration Court System at Its Breaking Point?," *Migration Policy Institute*, October 3, 2019, https://bit.ly/2sJuEWR.

[56] *See* Proposed Rules at 69649.

[57] *See* Proposed Rules at 69652.

[58] Marissa Esthimer, "Crisis in the Courts: Is the Backlogged U.S. Immigration Court System at Its Breaking Point?," *Migration Policy Institute*, October 3, 2019, https://www.migrationpolicy.org/article/backlogged-us-immigration-courts-breaking-point.

AR.08590

erroneous determinations that will give rise to an increase in appeals. The Proposed Rules repeatedly cite increased efficiency as justification for many of the proposed changes.[59] Yet requiring adjudicators to engage in mini-trials to determine the applicability of categorical criminal bars, rather than relying on adjudications obtained through the criminal legal system, will dramatically *decrease* efficiency in the asylum adjudication process.

Indeed, the Supreme Court has "long deemed undesirable" exactly the type of "post hoc investigation into the facts of predicate offenses" proposed by the agencies here.[60] Instead, for more than a century the federal courts have repeatedly embraced the "categorical approach" to determine the immigration consequence(s) of a criminal offense, wherein the immigration adjudicator relies on the statute of conviction as adjudicated by the criminal court system, without relitigating the nature or circumstances of the offense in immigration court.[61] As the Supreme Court has explained, this approach "promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact."[62] In *Moncrieffe v. Holder*, the Court forewarned of exactly the sort of harm that would arise from these Proposed Rules; in that case, the Court rejected the government's proposal that immigration adjudicators determine the nature and amount of remuneration involved in a marijuana-related conviction, noting that "our Nation's overburdened immigration courts" would end up weighing evidence "from, for example, the friend of a noncitizen" or the "local police officer who recalls to the contrary," with the end result a disparity of outcomes depending on the whims of the individual immigration judge and a further burdened court system.[63]

Particularly in the context of the new proposed bar related to alleged gang affiliation, I am concerned that creating a blanket exclusion for anyone who is convicted of a crime – including a misdemeanor – that an immigration adjudicator deems linked to gang activity will erroneously prevent bona fide asylum seekers from receiving protection. This rule confers on immigration adjudicators—who generally are not criminologists, sociologists, or criminal law experts—the responsibility to determine if there is "reason to believe" any conviction flows from activity taken in furtherance of gang activity. This rule will necessarily ensnare asylum seekers of color who have experienced racial profiling and a criminal legal system fraught with structural challenges and incentives to plead guilty to some crimes, particularly misdemeanors. These same

---

[59] *See* Proposed Rules at 69646, 69656-8.

[60] *Moncrieffe v. Holder*, 569 U.S. 184, 186 (2013).

[61] *See Moncrieffe*, 569 U.S. at 191 ("This categorical approach has a long pedigree in our Nation's immigration law."). For a more fulsome history of the development of the categorical approach in immigration court, *see* Alina Das, "The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law," *New York University Law Review* 86, no. 6 (2011): 1689 - 1702, https://www.nyulawreview.org/wp-content/uploads/2018/08/NYULawReview-86-6-Das.pdf.

[62] *Moncrieffe*, 569 U.S. at 200-201.

[63] *Id.* at 201.

AR.08591

individuals are vulnerable to being erroneously entered into gang databases. Such databases are notoriously inaccurate, outdated, and infected by racial bias.[64]

Indeed, asylum applicants are *already* frequently subjected to wrongful denials of protection because of allegations of gang activity made by the Department of Homeland Security on the basis of information found in notoriously unreliable foreign databases and "fusion" intelligence-gathering centers outside the United States. Empowering immigration adjudicators to render asylum applicants *categorically* excluded from protection on the basis of such spurious allegations will inevitably result in the return of many refugees back to harm.[65]

The Departments curiously argue that all gang-related offenses should be construed as "particularly serious crimes."[66] They cite statistics from up to 16 years ago in an attempt to make the point that gang members commit violent crimes and drug crimes. They then make the illogical leap to the conclusion that *all crimes*—including misdemeanor property crimes—that may be construed as connected to gang activity are particularly serious. This simply does not follow; in fact, the Proposed Rules will inevitably result in the exclusion from protection of asylum seekers of color who live in economically distressed communities and have obtained a minor conviction such as a property crime. Relying on the definition of "particularly serious crime" to prevent asylum seekers convicted of even minor crimes construed as gang-related from accessing asylum protection is disingenuous at best, and tinged with racial animus at worst.

The Departments asks for comments on: (1) what should be considered a sufficient link between an asylum seeker's underlying conviction and the gang related activity in order to trigger the application of the proposed bar, and (2) any other regulatory approaches to defining the type of gang-related activities that should render individuals ineligible for asylum. The premise of these questions is wrong: a vague "gang related" bar should not be introduced at all. The Immigration and Nationality Act and existing regulations already provide broad bars to asylum where criminal behavior by an asylum seeker causes concern by an adjudicator. Adding this additional, superfluous layer of complication risks erroneously excluding bona fide asylum seekers from protection without adding any useful adjudicatory tool to the process.

---

[64] Annie Sweeney and Madeline Buckley, "Chicago police gang data collection faulted by city's inspector general as unchecked and unreliable," *Chicago Tribune*, April 11, 2019, https://www.chicagotribune.com/news/breaking/ct-met-chicago-police-gang-data-04112019-story.html; Anita Chabria, "A routine police stop landed him on California's gang database. Is it racial profiling?," *Los Angeles Times*, May 9, 2019, https://www.latimes.com/politics/la-pol-ca-california-gang-database-calgang-criminal-justice-reform-20190509-story.html.

[65] Melissa del Bosque, "Immigration Officials Use Secretive Gang Databases to Deny Migrant Asylum Claims," *Pro Publica*, July 8, 2019, https://www.propublica.org/article/immigration-officials-use-secretive-gang-databases-to-deny-migrant-asylum-claims.

[66] Proposed Rules at p. 69650.

14

AR.08592

**VI.    The proposed definition of "conviction" and "sentence" for the purposes of the new bars further excludes those in need of protection**

The section of the Proposed Rules that outlines a new set of criteria for determining whether a conviction or sentence is valid for the purpose of determining asylum eligibility is an ultra vires exercise of authority that is not authorized by the Immigration and Nationality Act. The Proposed Rules impose an unlawful presumption against asylum eligibility for applicants who seek post-conviction relief while in removal proceedings or longer than one year after their initial convictions. They also deny full faith and credit to state court proceedings by attributing improper motives to state court actors.[67]

*The Proposed Rules undermine Sixth Amendment protections and harms immigrants unfamiliar with the complex criminal and immigration framework governing prior convictions.*

The Proposed Rules outline a new multi-factor process asylum adjudicators must use to determine whether a conviction or sentence remains valid for the purpose of determining asylum eligibility; the proposal includes a rebuttable presumption "against the effectiveness" of an order vacating, expunging, or modifying a conviction or sentence if the order was entered into after the asylum seeker was placed in removal proceedings or if the asylum seeker moved for the order more than one year after the date the original conviction or sentence was entered.[68]

This newly created presumption unfairly penalizes asylum applicants, many of whom may not have the opportunity to seek review of their prior criminal proceedings until applying for asylum.[69] In *Padilla v. Kentucky*, the Supreme Court recognized that the immigration consequences of a conviction are sufficiently serious for the Sixth Amendment to require a noncitizen defendant to be competently advised of them before agreeing to a guilty plea.[70] By imposing a presumption against the validity of a withdrawal or vacatur of a plea, the Proposed Rules hold asylum seekers whose rights were violated under *Padilla* to a different standard; even though they too were denied effective assistance of counsel in the course of their underlying criminal proceedings, asylum seekers will be forced to rebut a presumption that their court-ordered withdrawal or vacatur is invalid. The Proposed Rules therefore compound the harm to

---

[67] *See Saleh v. Gonzales*, 495 F.3d 17, 25-26 (2d Cir. 2007) (discussing 28 U.S.C. § 1738, requiring federal courts to give full faith and credit to state acts, records, and judicial proceedings and U.S. Const. art. IV, § 1, and finding that there was no violation where the Board of Immigration Appeals stopped short of "refusing to recognize or relitigating the validity of [Saleh's] state conviction.").

[68] Proposed Rules at 69655.

[69] On page 69656 of the Proposed Rules, the Department of Homeland Security and the Department of Justice urge that "[i]t is reasonable to conclude that an alien who has a meritorious challenge to a criminal conviction based on a procedural or substantive defect is more likely to seek post-conviction relief sooner than an alien who is seeking relief on rehabilitative grounds…"

[70] *Padilla v. Kentucky*, 559 U.S. 356 (2010).

15

AR.08593

immigrants who, in addition to facing persecution in their home countries, have been denied constitutionally compliant process in the United States criminal legal system.

Many asylum applicants, especially those in vulnerable populations isolated from resources and unfamiliar with the due process protections available to them in the United States, may not have discovered the defects in their underlying criminal proceedings until their consultation with an immigration attorney, or until they are placed into removal proceedings, which may happen several years after a conviction. Imposing a presumption *against* the validity of a plea withdrawal or vacatur in these cases will undoubtedly lead to the wrongful exclusion of countless immigrants from asylum simply because they were unable to adequately rebut the presumption, particularly in a complex immigration court setting without the benefit of appointed counsel.

> *The Proposed Rules violate the full faith, and credit to which state court decisions are entitled.*

The Proposed Rules further improperly authorize immigration adjudicators to second-guess the decision of a state court, even where the order on its face cites substantive and procedural defects in the underlying proceeding. The proffered justification for this presumption against the validity of post-conviction relief is to "ensure that aliens do not have their convictions vacated or modified for purported rehabilitative purposes that are, in fact, for immigration purposes," "to codify the principle set forth in *Matter of Thomas and Thompson*," and to bring the analysis of post-conviction orders in line with *Matter of Pickering*.[71] The agencies misread the applicable law, however, by authorizing adjudicators to disregard otherwise valid state orders. The immigration law only requires that to be effective for immigration purposes, orders vacating or modifying convictions must be based on substantive or procedural infirmities in the underlying proceedings. The Proposed Rule goes well beyond that requirement.

The Proposed Rules abandon the presumption of regularity that should accompany state court orders, thus upending settled principles of law. The Proposed Rules cite a misleading quote from *Matter of F-* in support of allowing asylum adjudicators to look beyond the face of a state court order; had the Rules' authors looked to the full case, they would have read the following: "Not only the full faith and credit clause of the Federal Constitution, but familiar principles of law require the acceptance at face value of a judgment regularly granted by a competent court, unless a fatal defect is evident upon the judgment's face. However, the presumption of regularity and of jurisdiction may be overcome by extrinsic evidence or by the record itself."[72] In *Matter of*

---

[71] Proposed Rules at 69655-56 (*citing Matter of Thomas and Thompson*, 27 I.&N. Dec. 674 (A.G. 2019) and *Matter of Pickering*, 23 I.&N. Dec. 621 (BIA 2003), *rev'd on other grounds by Pickering v. Gonzales*, 465 F.3d 263, 267-70 (6th Cir. 2006)).

[72] *Matter of F-*, 8 I.&N. Dec. 251, 253 (BIA 1959).

16

AR.08594

*F-*, the Board of Immigration Appeals offers support for the proposition that an adjudicator should presume the validity of a state court order unless there is a reason to doubt it, contrary to the *presumption of irregularity* put forward in the Proposed Rules.

The authority extended to adjudicators by the Proposed Rules also violates the law of multiple circuits, including *Pickering*, on which it relies.[73] In *Pickering v. Gonzales*, the Sixth Circuit Court of Appeals held that despite the petitioner's stated motive of avoiding negative immigration consequences, the Board of Immigration Appeals was limited to reviewing the authority of the court issuing the order as to the basis for his vacatur.[74] Similarly, in *Reyes-Torres* the Ninth Circuit Court of Appeals held that the motive of the respondent was not the relevant inquiry.[75] Rather, "the inquiry must focus on the state court's rationale for vacating the conviction."[76] In addition, the Third Circuit Court of Appeals in *Rodriguez v. U.S. Att'y Gen*., which the Proposed Rules cite as "existing precedent," held that the adjudicator must look only to the "reasons explicitly stated in the record and may not impute an unexpressed motive for vacating a conviction."[77] Moreover, the *Rodriguez* court stated that to determine the purpose of a vacatur, the adjudicator must first look to the face of the order vacating the conviction, and "if the order explains the courts reasons … the [adjudicator's] inquiry must end there."[78] The Proposed Rules contain no such limiting language to guide the adjudicator's inquiry. Instead, the Rules grant adjudicators vague and indefinite authority to look beyond even a facially valid vacatur. Such breadth of authority undermines asylum seekers' rights to a full and fair proceeding.

> *The Proposed Rules wrongly extend* Matter of Thomas and Thompson *to all forms of post-conviction relief and impose an ultra vires and unnecessary burden on asylum seekers.*

Finally, the above-described presumption is ultra vires and unnecessary. As an initial matter, the Proposed Rules' reliance on *Matter of Thomas and Thompson* is flawed. The Attorney General's decision in *Matter of Thomas and Thompson* has no justification in the text or history of the immigration statute. Nowhere does the plain text of the Immigration and Nationality Act support giving adjudicators the authority to give effect only to state court sentence modifications undertaken to rectify substantive or procedural defects in the underlying

---

[73] *See id*. (*citing Matter of Pickering*, 23 I.&N. Dec. 621).

[74] *Pickering v. Gonzales*, 465 F.3d 263, 267-70 (6th Cir. 2006).

[75] *Reyes-Torres v. Holder*, 645 F.3d 1073, 1077-78 (9th Cir. 2011) (*citing Cardoso-Tlaseca v, Gonzales*, 460 F.3d 1102, 1107 n.3 (9th Cir. 2006) and *Pickering v. Gonzales*, 454 F.3d 525 (6th Cir. 2006), *amended and superseded* by *Pickering*, 465 F.3d at 263.

[76] *Id*.

[77] *Rodriguez v. U.S. Att'y Gen*., 844 F.3d 392, 397 (3d Cir. 2006) (noting that "[T]he IJ may rely only on reasons explicitly stated in the record and may not impute an unexpressed motive for vacating a conviction.").

[78] *Id*. ("Put simply, '[w]e will not . . . permit[ ] . . . speculation . . . about the secret motives of state judges and prosecutors,'" *quoting Pinho v. Gonzales*, 432 F.3d 193, 214-215 (3d Cir. 2005)).

criminal proceedings. Nor does the legislative history support such a rule. The Board of Immigration Appeals recognized this in *Matter of Cota-Vargas*, where it concluded that the application of "the *Pickering* rationale to sentence modifications has no discernible basis in the language of the Act."[79] Based on the text of the Immigration and Nationality Act and the well-documented legislative history behind Congress's definition of "conviction" and "sentence" in 8 U.S.C. § 1101(a)(48), the Board determined that Congress intended to ensure that, generally, proper admissions or findings of guilt were treated as convictions for immigration purposes, even if the conviction itself was later vacated. Neither the text of the INA nor the legislative history of the definitions reveal any attempt on Congress's part to change the longstanding practice of giving effect to state court sentencing modifications. For these reasons, *Matter of Thomas and Thompson* lacks Congressional support for its rule and should not be extended.

Moreover, as applicants for immigration benefits or relief from removal, asylum seekers already bear the burden of demonstrating their eligibility for asylum.[80] The Proposed Rules do not alter or shift this burden, nor do they provide evidence supporting the need for this presumption. By introducing a presumption of bad faith into asylum adjudication, the Proposed Rules unfairly interfere with asylum seekers' efforts to establish their claims. Immigration law, and asylum law in particular, is already highly complex, and the process of seeking asylum is in many instances re-traumatizing, particularly for applicants who do not have counsel to represent them and who lacked effective counsel in their underlying criminal proceedings. The Proposed Rules as applied to asylum applicants who seek post-conviction relief transform an already difficult process into an adversarial inquiry, contrary to the intent of Congress.

## VII. The Proposed Rules will disparately impact vulnerable populations already routinely criminalized, including LGBTQ immigrants, survivors of trafficking and domestic violence, and immigrant youth of color

The expanded criminal bars exclude from safety and a pathway to citizenship those convicted of offenses that are coincident to their flight from persecution, and do not accomplish the stated goal of making communities safer. They will disparately impact vulnerable populations, who comprise asylum seekers hailing primarily from Central America and the Global South, and those routinely criminalized because of their identities, racially disparate policing practices, or in connection with experiences of trafficking and domestic violence.[81] For these populations especially, the discretion currently delegated to asylum adjudicators is crucial for them to become fully integrated in the larger community. The imposition of additional

---

[79] *Matter of Cota-Vargas*, 23 I.&N. Dec. 849, 852 (BIA 2005).

[80] *Matter of S-K-*, 23 I.&N. Dec. 936, 939-40 (BIA 2006).

[81] D'Vera Cohn et al., "Rise in U.S. Immigrants from El Salvador, Guatemala and Honduras Outpaces Growth from Elsewhere," *Pew Research Center*, December 7, 2017, https://www.pewresearch.org/hispanic/wp-content/uploads/sites/5/2017/12/Pew-Research-Center_Central_American-migration-to-U.S._12.7.17.pdf.

AR.08596

categorical bars to asylum will only further marginalize asylum seekers already struggling with trauma and discrimination.

The Proposed Rules turn asylum into a blunt instrument that would prevent the use of discretion where it is most needed and most effective. The existing framework for determining if an offense falls within the particularly serious crime bar already provides the latitude for asylum adjudicators to deny relief to anyone found to pose a danger to the community.[82] Furthermore, asylees with convictions that render them inadmissible must apply for a waiver at the time of their applications for permanent residence.[83] These measures ensure that asylum applicants in vulnerable populations have access to supportive resources and have the opportunity to demonstrate their ongoing commitment to social and personal health. Moreover, the existence of provisions allowing the revocation of asylum status ensures that adjudicators may continue to enforce concerns related to the safety of the community even after asylum is granted.[84]

> *Barring asylum for immigrants convicted of migration-related offenses punishes them for fleeing persecution and/or seeking safety for their children, and does not make communities safer.*

The expansion of the criminal bars to asylum to include offenses related to harboring, smuggling of noncitizens by parents and family members and those previously removed further criminalizes vulnerable populations fleeing persecution.[85] The vast expansion of migrant prosecutions at the border during the current administration has created administrative chaos and separated families that do not pose a threat to the safety of communities in the United States.[86] The Proposed Rules threaten to magnify the harm caused by these reckless policies by further

---

[82] Apart from the statutory aggravated felony bar to asylum, the Board of Immigration Appeals and Attorney General have historically utilized a highly circumstantial approach to the particular serious crime determination that would bar an immigrant from receiving asylum. *See e.g., Matter of Juarez*, 19 I.&N. Dec. 664 (BIA 1988) (ordinarily a single misdemeanor that is not an aggravated felony will not be a particularly serious crime); *Matter of Frentescu*, 18 I.&N. Dec. 244 (BIA 1982), *modified* (setting forth several factors to be considered before imposing the particular serious crime bar, including: (i) the nature of the conviction, (ii) the circumstances and underlying facts for the conviction, (iii) the type of sentence imposed, and (iv) whether the type and circumstances of the crime indicate that the individual will be a danger to the community); *Matter of Y-L-, A-G-, R-S-R-,* 23 I.&N. Dec. 270 (A.G. 2002) (setting forth a multi-factor test to determine the dangerousness of a respondent convicted of a drug-trafficking offense who is otherwise barred from asylum as an aggravated felon, but seeking withholding of removal).

[83] 8 U.S.C. § 1159(c) (2012).

[84] 8 C.F.R. § 208.24(a) (2012).

[85] On April 11, 2017, then-Attorney General Sessions instructed all federal prosecutors to increase their prioritization of immigration offenses for prosecution, including misdemeanor offenses committed by first time entrants. *See* Memorandum from the Attorney General: Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), https://www.justice.gov/opa/press-release/file/956841/download.

[86] *Id.*; Richard Marosi, "The aggressive prosecution of border crossers is straining the courts. Will zero tolerance make it worse?," *Los Angeles Times*, May 11, 2018, https://www.latimes.com/local/california/la-me-ln-immigrant-prosecutions-20180511-story.html.

19

AR.08597

compromising the ability of those seeking safety on the southern border to access the asylum system.

The Proposed Rules expand the asylum bar to parents or other caregivers who are convicted of smuggling or harboring offenses after taking steps to help minor children enter the United States in order to flee persecution. This proposed bar is particularly insidious in light of now-public documents revealing this administration's explicit efforts to utilize smuggling prosecutions against parents and caregivers as part of its strategy of deterring families from seeking asylum in the United States.[87] The Proposed Rules seek to take this widely condemned strategy one step further, by additionally barring those parents *already prosecuted* from obtaining asylum protections for themselves and their children. The Proposed Rules multiply the harms parents and caregivers have experienced in their treacherous journeys to safety and callously penalize parents for doing what is only human—taking all necessary steps to protect their children.

The Proposed Rules also expand the asylum bar to those who have fled persecution multiple times and therefore been convicted of illegal reentry. Their inclusion is premised on conclusory statements regarding the dangerousness of recidivist offenders, without consideration of the seriousness of prior convictions.[88] Rather, the Proposed Rules treat all immigration violations as similar in seriousness to those previously warranting inclusion in the particularly serious crime bar, without any independent evidence to justify the expansion. Such an approach renders meaningless the limiting language of "particularly serious" in the statute.

The Proposed Rules also conflate multiple entries by noncitizens having prior removal orders with those who have entered multiple times without ever having their asylum claims heard. Many immigrants who have previously attempted entry to the United States to flee persecution could not have been aware of the complex statutory regime that governs asylum claims and would not have knowingly abandoned their right to apply for asylum. Some asylum seekers have also been wrongly assessed in prior credible fear interviews. And others yet may have previously entered or attempted to enter the United States before the onset of circumstances giving rise to their fear. Preserving discretion to grant asylum in these circumstances allows meritorious asylum seekers to be heard and corrects errors that might have previously occurred.

*Extending the criminal bars to immigrants convicted of misdemeanor document fraud unfairly punishes low-wage immigrant workers and does not make communities safer.*

---

[87] Ryan Devereaux, "Documents Detail ICE Campaign to Prosecute Migrant Parents as Smugglers," *The Intercept*, April 29, 2019, https://theintercept.com/2019/04/29/ice-documents-prosecute-migrant-parents-smugglers/ (describing how in May 2017, the Department of Homeland Security set out to target parents and family members of unaccompanied minors for prosecution).

[88] Proposed Rules at 69648.

20

AR.08598

The Proposed Rules expand the asylum bar to include any asylum seeker who has been convicted of a misdemeanor offense for use of a fraudulent document. In so doing, the Rule entirely ignores the migration-related circumstances that often give rise to convictions involving document fraud. Migrants fleeing persecution often leave their home countries with nothing but the clothes on their backs and must rely on informal networks to navigate their new circumstances.[89] Extension of a blanket bar to asylum seekers who are compelled to resort to fraudulent means to enter the United States, or to remain safely during their applications for asylum, upends decades of settled law directing that violations of law arising from an asylum applicant's manner of flight should constitute only one of many factors to be consulted in the exercise of discretion.[90]

Moreover, migrants in vulnerable communities who are struggling to survive during the pendency of their asylum proceedings are often exploited by unscrupulous intermediaries who offer assurances and documentation that turn out to be fraudulent.[91] Many noncitizens working in the low-wage economy face egregious workplace dangers and discrimination and suffer retaliation for asserting their rights.[92] The continued availability of asylum to low-wage immigrant workers can encourage them to step out of the shadows. The expansion of criminal asylum bars to sweep in all document fraud offenses, on the other hand, would unfairly prejudice immigrants with meritorious asylum claims and force them deeper into the dangerous informal economy.

> *The Proposed Rules will harm communities with overlapping vulnerabilities, including LGBTQ asylum seekers, survivors of trafficking, and survivors of domestic violence.*

The Proposed Rules exclude from asylum protections countless members of vulnerable communities who have experienced trauma, abuse, coercion, and trafficking. Many of these individuals may only become aware of their ability to apply for asylum after law enforcement encounters that lead them to service providers who can educate them about their immigration options. Despite the unique difficulties they face, the Proposed Rules would compound their harm and prevent them from achieving family unification and a pathway to citizenship.

The Proposed Rules pose a unique threat to LGBTQ immigrant community members. LGBTQ immigrants in particular may have already experienced a high degree of violence and

---

[89] *See Pula*, 19 I.&N. Dec. at 474.

[90] *Id.*

[91] See American Bar Association, "About Notario Fraud," July 19, 2018, https://www.americanbar.org/groups/public_interest/immigration/projects_initiatives/fight-notario-fraud/about_notario_fraud/.

[92] Paul Harris, "Undocumented workers' grim reality: speak out on abuse and risk deportation," *The Guardian*, March 28, 2013, https://www.theguardian.com/world/2013/mar/28/undocumented-migrants-worker-abuse-deportation.

AR.08599

disenfranchisement from economic and political life in their home countries.[93] Hate violence towards undocumented LGBTQ immigrants in the United States is already disproportionately higher than for other members of the LGBTQ population.[94] Members of these communities also experience isolation from their kinship and national networks following their migration. This isolation, compounded by the continuing discrimination towards the LGBTQ population at large, leave many in the LGBTQ immigrant community vulnerable to trafficking, domestic violence, and substance abuse, in addition to discriminatory policing practices. The expansion of criminal enforcement and prosecution of undocumented people also harms the LGBTQ immigrant community.[95] The Proposed Rules will therefore have a disparate impact on LGBTQ individuals whose involvement in the criminal legal system is often connected to past trauma and/or the result of biased policing.

The expansion of asylum bars to include various misdemeanor offenses that were not previously considered particularly serious also unfairly sweeps trafficking survivors into its dragnet. It is becoming more widely recognized across state court systems that trafficking survivors frequently come into contact with intervention resources and service providers only after contact with law enforcement occurs. Innovative criminal justice reform efforts currently being adopted across the country include special trafficking courts that recognize the need for discretion in the determination of criminal culpability.[96] The same approach should be employed in the determination of asylum eligibility, where the applicant's life and safety are on the line.

The Proposed Rules instead preclude asylum adjudicators from conducting a trauma-centered approach, categorically barring countless trafficking survivors convicted of misdemeanor and felony offenses without any opportunity to present the specific circumstances of their claim.

Survivors of domestic violence include trafficking survivors and LGBTQ community members, such that inclusion of offenses related to domestic violence in the expanded asylum

---

[93] *See* Aengus Carroll and Lucas Ramon Mendos, *State Sponsored Homophobia: A World Survey of Sexual Orientation Laws: Criminalisation, Protection and Recognition* 12th Ed. (International Lesbian, Gay, Bisexual, Transgender, and Intersex Association (ILGA), 2017), https://ilga.org/downloads/2017/ILGA_State_Sponsored_Homophobia_2017_WEB.pdf.

[94] *See* Sharita Gruberg, "LGBTQ Undocumented Immigrants Face an Increased Risk of Hate Violence," *Center for American Progress*, June 10, 2014, https://www.americanprogress.org/issues/immigration/news/2014/06/10/91233/lgbt-undocumented-immigrants-face-an-increased-risk-of-hate-violence/.

[95] *See eg.,* Sharita Gruberg, "How Police Entanglement with Immigration Enforcement Puts LGBTQ Lives at Risk," *Center for American Progress*, April 12, 2017, https://www.americanprogress.org/issues/lgbtq-rights/reports/2017/04/12/430325/police-entanglement-immigration-enforcement-puts-lgbtq-lives-risk/.

[96] Elise White, et al., "Navigating Force and Choice: Experiences in the New York City Sex Trade and the Criminal Justice System's Response," *Center for Court Innovation*, December 2017 (noting that 78% of participants in the report's study had been arrested, mostly for non-violent, non-prostitution offenses such as *drug possession*).

AR.08600

bars affects populations with overlapping vulnerabilities.[97] The Proposed Rules too broadly categorize domestic violence offenses as particularly serious and sweep both offenders and survivors into their dragnet. The immigration laws extend protections to domestic violence survivors outside of the asylum context, recognizing the complex dynamics surrounding intimate partner violence. Provisions in the Violence Against Women Act allow adjudicators evaluating claims for relief arising thereunder to exercise discretion based on a number of factors and circumstances.[98] The blunt approach adopted by the Proposed Rules is inconsistent with the approach taken towards survivors elsewhere in the federal immigration statute and does not rely on any evidence-based justification for treating asylum seekers differently.

Moreover, the domestic violence sections of the Proposed Rules include the only categorical bar to asylum for which a conviction is not required. Domestic violence incidents all too often involve the arrest of both the primary perpetrator of abuse and the survivor.[99] These "cross-arrests" do not always yield clear determinations of victim and perpetrator. Authorizing asylum adjudicators to determine the primary perpetrator of domestic assault, in the absence of a judicial determination, unfairly prejudices survivors who are wrongly arrested in the course of police intervention to domestic disturbances.

Finally, the exemption for asylum applicants who can demonstrate their eligibility for a waiver under section 237(a)(7)(A) of the Immigration and Nationality Act does not cure the harm to asylum seekers caused by imposition of a categorical domestic violence related bar.[100] Rather, it converts a non-adversarial asylum proceeding into a multi-factor, highly specific inquiry into culpability based on circumstances that may be very difficult for an asylum seeker to prove—especially if proceeding without counsel and with limited English proficiency.

---

[97] Marty Schladen, "ICE Agents Detain Alleged Domestic Violence Victim," *El Paso Times*, February 16, 2017, https://www.elpasotimes.com/story/news/2017/02/15/ice-detains-domestic-violence-victim-court/97965624/ (noting that the immigrant detained, a transgender person previously deported following her conviction for crimes such as posession of stolen mail and assault, was then living at the Center Againts Sexual and Family Violence, a shelter for survivors of intimate partner violence).

[98] Nadine Shaanta Murshid and Elizabeth A. Bowen, "A Trauma-Informed Analysis of the Violence Against Women Act's Provisions for Undocumented Immigrant Women," *Violence Against Women* 24(13) (2018): 1540–1556, https://doi.org/10.1177/1077801217741991.

[99] David Hirschel, et al., "Domestic Violence and Mandatory Arrest Laws: To What Extent Do They Influence Police Arrest Decisions," *Journal of Criminal Law & Criminology* 98, no. 1 (2007-2008): 255, https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=7284&context=jclc (noting that "[i]n some cases, dual arrests may be the result of legislation, department policies, or both failing to require officers to identify the primary aggressor. In addition, when such provisions are present, police may lack the training or information needed to identify the primary aggressor when responding to a domestic violence assault. This situation may be compounded by batterers who have become increasingly adept at manipulating the criminal justice system, and may make efforts to 'pre-empt' victims from notifying police in order to further control or retaliate against them.").

[100] 8 U.S.C. § 1227(a)(7)(A).

*Barring asylum for immigrants convicted of "gang-related crimes" based on unreliable evidence and racially disparate policing practices is harmful to youth of color and does not make communities safer.*

In recent years, the expansion of gang databases for use in the apprehension and removal of foreign nationals—including children—has generated tremendous concern among advocates and the communities they serve.[101] The use of gang databases by local law enforcement and Immigration and Customs Enforcement has been widely criticized as an overbroad, unreliable and often biased measure of gang membership and involvement.[102] The Proposed Rules expand the criminal bars to asylum to those accused of gang involvement in the commission of minor criminal offenses, embracing an open-ended adjudicative process that will inevitably result in asylum adjudicators relying unfairly on these discredited methods of gang identification. This outcome would compound the disparate racial impact of inclusion in gang databases and bar asylum seekers who are themselves fleeing violence from gangs in their home countries.[103]

Past legislative efforts to expand the grounds of removal and inadmissibility in the Immigration and Nationality Act to include gang membership have failed to pass both houses of Congress.[104] In addition, immigration adjudicators already routinely premise discretionary denials of relief or release on bond on purported gang membership, and scores of alleged gang members have already been deported on grounds related to immigration violations or criminal convictions for which no relief is available.[105] Creating a "gang-related crime" bar will only exacerbate the due process violations already occurring as the result of unsubstantiated information about supposed gang ties.[106]

---

[101] *See* Nermeen Arastu, et al., "Swept Up In The Sweep: The Impact of Gang Allegations on Immigrant New Yorkers," *New York Immigration Coalition (NYIC) and CUNY School of Law's Immigrant and Non-citizen Rights Clinic*, May 2018, https://www.law.cuny.edu/wp-content/uploads/page-assets/academics/clinics/immigration/SweptUp_Report_Final-1.pdf.

[102] Ali Winston, "Marked for Life: U.S. Government Using Gang Databases to Deport Undocumented Immigrants," *The Intercept*, August 11, 2016, https://theintercept.com/2016/08/11/u-s-government-using-gang-databases-to-deport-undocumented-immigrants/.

[103] *See* Jonanthan Blitzer, "How Gang Victims Are Labeled As Gang Suspects," *The New Yorker*, January 23, 2018, https://www.newyorker.com/news-desk/how-gang-victims-are-labelled-as-gang-suspects.

[104] *See* Jessica Chacon, "Whose Community Shield?: Examining the Removal of the 'Criminal Street Gang Member,'" *University of Chicago Legal Forum* 317 (2007: 333-336) (reviewing legislative history of failed efforts to expand removability of those accused of gang related offenses and noting criticism that "[t]he only legal effect of the proposed legislation would be to increase the number of noncitizens lawfully present who would be subject to removal on the basis of their purported associations with individuals involved in group criminal activity.").

[105] For an illustration of Immigration and Customs Enforcement's propensity to make gang allegations on the basis of questionable if not fabricated evidence, and the deference to which the evidence is often granted by immigration adjudicators, *see* Mark Joseph Stern, "Bad Liars," *Slate*, May 16, 2018, https://slate.com/news-and-politics/2018/05/federal-judge-accused-ice-of-making-up-evidence-to-prove-that-dreamer-was-gang-affiliated.html.

[106] See Yvette Cabrera, "New ICE Tactic Raises Questions About Due Process," *ThinkProgress*, October 6, 2017, https://thinkprogress.org/ice-targets-gangs-6775356473a8/; Rebecca Hufstader, "Immigration Reliance On Gang Databases: Unchecked Discretion And Undesirable Consequences," 90 *New York University Law Review* 90 (2015): 671.

In addition, by focusing on "reason to believe" as the basis for the bar, rather than the seriousness of the crime, the proposed provision is ultra vires and unconscionably limits the eligibility for asylum of those most in need of protection. The effect of the Proposed Rules would be to expand the number and type of convictions for which an analysis of eligibility is required, sweeping in even petty offenses that would otherwise not trigger immigration consequences. Thus, an asylum applicant convicted of simple assault without use of a weapon, a non-violent property crime, or even possession of under 30 grams of marijuana for personal use (otherwise exempted from the reach of the Proposed Rule), could trigger a bar to asylum if the adjudicator concludes she has "reason to believe" the offense was committed in furtherance of gang activity.[107] In making these determinations, asylum adjudicators would be unable to rely on uncorroborated allegations contained in arrest reports, but could nevertheless shield their decisions by relying on discretion.[108]

The Proposed Rules thus invite extended inquiry into the character of young men of color who otherwise have meritorious asylum claims, based on information gained through racially disparate policing practices. These rules multiply the harm to asylum seekers of color subject to racially disparate policing that results in racially disparate rates of guilty pleas to minor offenses. This same population is overrepresented in gang databases, which are notoriously inaccurate, outdated, and infected by racial bias.[109]

## VIII. The Proposed Rules are ultra vires to the federal immigration statute to the extent they purport to bar eligibility through a categorical exercise of discretion

When Congress speaks clearly through a statute, the plain meaning of that statute governs.[110] Congress by statute permits the Attorney General to designate certain categories of offenses as "particularly serious crimes."[111] As such, Congress *explicitly* permitted the Attorney General to designate a non-aggravated felony to be a particularly serious crime and thus disqualify a person from asylum. In the context of asylum, all aggravated felonies are *per se*

---

[107] Page 69649 of the Proposed Rules notes that the applicable standard for determining when to apply the bar on asylum seekers convicted of a crime involving criminal street gangs is "reason to believe," as used in 8 U.S.C. § 1182(a)(2)(c), and that the asylum adjudicator may consider "all reliable evidence" in making their decision.

[108] *See Garces v. U.S. A.G.*, 611 F.3d 1337, 1349-50 (11ᵗʰ Cir 2010) (reversing finding of "reason to believe" that the respondent was a participant in drug trafficking based on unsubstantiated arrest reports); *Matter of Rico*, 16 I.&N. Dec. 181, 185-86 (BIA 1977) (relying on pre-hearing admissions to uphold finding of inadmissibility).

[109] Annie Sweeney and Madeline Buckley, "Chicago police gang data collection faulted by city's inspector general as unchecked and unreliable," *Chicago Tribune*, April 11, 2019, https://www.chicagotribune.com/news/breaking/ct-met-chicago-police-gang-data-04112019-story.html; Anita Chabria, "A routine police stop landed him on California's gang database. Is it racial profiling?," *Los Angeles Times*, May 9, 2019, https://www.latimes.com/politics/la-pol-ca-california-gang-database-calgang-criminal-justice-reform-20190509-story.html.

[110] See, *e.g.*, *Robinson* v. *Shell Oil Co.*, 519 U.S. 337, 340 (1997).

[111] 8 U.S.C. § 1158(b)(2)(B)(ii).

particularly serious crimes and the Attorney General "may designate by regulation [other] offenses that will be considered to be" a particularly serious crime for purposes of asylum.[112]

Here, however—seemingly in an attempt to insulate the Proposed Rules from review, the agencies attempt to designate new bars to asylum both by designating them as "particularly serious crimes" pursuant to 8 U.S.C. § 1158(b)(2)(B)(ii) and rendering them categorically exempt from a positive discretionary adjudication of asylum pursuant to 8 U.S.C. § 1158(b)(2)(C). This effort is unlawful. Section 1158(b)(2)(B)(ii) does permit the Attorney General to, if he wishes, attempt to designate some classes of offenses as particularly serious crimes; such designations are reviewable for legal error (and as explained above, the commenters believe these expansions are unlawful).[113] However, if the offense is not a particularly serious crime, then a discretionary decision must be rendered on the application. It is true that the Attorney General may also provide for "additional limitations and conditions" on asylum applications so long as they are "consistent" with the with the asylum statute.[114] In this case, however, the Proposed Rules add sweeping categories of offenses that automatically remove an applicant from the consideration of discretion—a regulatory proposal that is ultra vires to the plain text of the statute.

To the extent that the proposed rules would adopt a bar to asylum based on a categorical discretionary bar, rather than a particularly serious crime designation, they are similar to the rules struck down by numerous Circuit Courts of Appeal in the context of adjustment of status for those considered by law to be "arriving aliens." Purporting to exercise discretion categorically, then-Attorney General Reno putatively rendered that class of noncitizens ineligible for adjustment of status, a determination that is ordinarily discretionary, even though the statute seemed to allow eligibility. Multiple Circuit Courts of Appeal struck down the proposed regulations, finding them to reflect an impermissible reading of the statute in light of the fact that Congress carefully defined in the statute the categories of people eligible to apply for adjustment of status.[115]

---

[112] *Id.* The Attorney General has not designated "substantial battery" to be a particularly serious crime for any purpose, including for purposes of ineligibility to seek asylum.

[113] 8 U.S.C. § 1252(a)(2)(D).

[114] 8 U.S.C. § 1158(b)(2)(C); *see also* 8 U.S.C. § 1158(d)(5)(B).

[115] The First and Ninth Circuits found the regulations contrary to clear statutory command. *Succar v. Ashcroft*, 394 F.3d 8, 29 (1st Cir. 2005); *Bona v. Gonzales*, 425 F.3d 663, 668-71 (9th Cir. 2005). Other courts invalidated the adjustment regulations under "Step Two" of *Chevron*. Those courts found some ambiguity in the statute, but found a per se discretionary bar not based on a permissible construction of the eligibility standards set forth in the governing statute in light of the statutory scheme and congressional intent. *Zheng v. Gonzales*, 422 F.3d 98, 116-20 (3d Cir. 2005) (invalidating regulation precluding category of people from applying to adjust status "[g]iven Congress's intent as expressed in the language, structure, and legislative history of INA section 245 [8 U.S.C. § 1255]"); *Scheerer v. United States Attorney General*, 445 F.3d 1311, 1321-22 (11th Cir. 2006). This reasoning would likewise be applicable to the proposed rule. Where Congress went through the trouble to create a comprehensive statutory scheme to define asylum eligibility, the agency cannot preempt that in the guise of discretion by creating out of whole cloth a separate set of eligibility criteria.

AR.08604

The same logic applies here. In the asylum statute, Congress explicitly made the commission of a particularly serious crime a bar to asylum. The canon of interpretation known as *expressio unius est exclusio alterius* instructs that,"expressing one item of [an] associated group or series excludes another left unmentioned."[116] The Proposed Rules attempt to create numerous categories of discretionary "pseudo-particularly serious crimes," barring asylum through a categorical exercise of discretion even if those offenses are ultimately found not to be particularly serious crimes. Such an effort violates this canon of interpretation, and places the Proposes Rules ultra vires to the statute.

## IX.    Conclusion

Moving forwarding with these regulations will do a great disservice to our nation. Immigrants are the lifeblood of our country. We need to ensure that our borders remain open and our asylum system fair and accessible to all who need protection.

Sincerely,

Elissa Steglich, Esq.

---

[116] *United States* v. *Vonn*, 535 U.S. 55, 65 (2002).

27

AR.08605

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egc-hgrm
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0130
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

This proposed rule would inject racial profiling into the asylum process and put asylum seekers at risk of danger even death.

AR.08606

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egc-63ne
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0131
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Noam Brown

## General Comment

I would like to express my strong disapproval of this proposed new asylum rule which is aimed at broadening the scope of cases barred from getting their asylum cases heard. Barring asylum seekers who have been charged but not convicted of any crime, for example, is unjust and further breaks down the extremely important asylum laws already on the books meant to protect people escaping horrific and often life threatening conditions in their home countries.

AR.08607

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egd-4mus
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0132
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Catherine Byrne

## General Comment

I object to the rule change proposed because it injects racial profiling.

AR.08608

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9ege-aqbo
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0133
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Carolyn Tacke
**Address:**
    Wellfleet, MA, 02667
**Email:** latack@comcast.net
**Phone:** 5083493668

---

## General Comment

I can't believe I am living in a first-world country that is rapidly becoming an elitist, white-supremacist nation. To treat asylum-seekers as criminals is criminal. And to send them back to the situations that put them in crisis is, in essence sentencing them to death.
Here in the "Land of the Free & the Home of the Brave", where everyone but Native American Indians has descended from immigrants, we should not be screening for just the "cream", but taking the poor, the huddled masses yearning to be free. Give them the chance to rise to their full potential. Look to Melanija Knavs, born in Novo Mesto, Sloveniaour and married into citizenship to become our First Lady.

AR.08609

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9ege-yj5s
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0134
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Bill Swartzendruber

---

## General Comment

I am opposed to the proposed rule making. We are a country built on the principles of equal rights for all. This rule change would introduce racial profiling into the asylum process and deny protection to the most vulnerable people when they need it the most. I have good friends who have minor noncriminal offenses who are denied documentation in spite of living an exemplary life of responsibility and family life,working hard to support themselves and paying taxes. I oppose making it more difficult for people to reach safety in our country.

AR.08610

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9ege-5ulg
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0135
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Elizabeth Corcoran

## General Comment

We need to preserve asylum as a way for people to escape harmful situations, even if they have or will have contact with the legal system.

AR.08611

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9ege-e1q8
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0136
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Martha Schmitz
**Address:**
  14 Greentree Drive
  Phoenix,  MD,  21131
**Email:** mamasch@hotmail.com

## General Comment

I would like to express my passionate opposition to the proposed rule change laid out in EOIR Docket No. 18-0002 by the Executive Office for Immigration Review, Department of Justice; U.S. Citizenship and Immigration Services, Department of Homeland Security.

I am a U.S. citizen with years of experience working on human rights in Guatemala, a country from which many have been forced to flee, often as a direct consequence of U.S. policy that engenders poverty, corruption, genocide, criminalization and assassinations. I am deeply concerned that those fleeing violence continue to encounter further discrimination, racial profiling and criminalization at the hands of the above-named departments upon their entry into the U.S.

This proposed rule flies in the face of U.S. law, which commits to protecting refugees. It criminalizes, rather than welcomes those seeking asylum. It is part of a host of cruel policies imposed by the administration, which place those seeking refuge and safety into situations of further abuse and danger. Asylum seekers already face unjust obstacles and this further criminalizes them.

The U.S. justice and carceral system already suffer from deep problems with injustice and racial profiling. It is a travesty to subject immigrants to that system, then to deport them to their countries of origin, where they likely face threats to their life -- again, often thanks to U.S. government and business interests that have caused instability and propped up racist, violent, corrupt, narco-trafficking governments from which many are forced to flee.

This proposed rule change is deeply cruel and immoral and further drives a system of mass incarceration/deportation, wielded almost exclusively against communities of color. We must make changes to

AR.08612

create an immigration system that honors the humanity of each person.

AR.08613

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9ege-sw5k
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0137
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Nicole Morse

## General Comment

I am commenting to express my deep opposition to this proposed rule change. For people seeking asylum, a denial of asylum can be a death sentence, a punishment completely disproportionate to the crimes that this proposed rule would address. Additionally, people seeking asylum should have the right to be considered innocent until proven guilty, and should not be denied asylum based on an accusation. The United States should be a place of freedom, second chances, and justice with mercy. This proposed rule change violates the spirit of the constitution and would be a black mark upon our history.

AR.08614

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9ege-dd7i
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0138
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anna Cupito

## General Comment

I strongly urge EOIR to reconsider this rule. It will cause irreparable harm to families and the American communities in which they reside. The right to seek asylum is enshrined in both international law, and in the values that guide our countries. This proposal would put people in immediate danger of their lives, by deporting them to countries from which they fled. Over-policing and racial profiling of ethnic minorities is a well-documented fact, and further victimizing individuals seeking legal protections in this country based on past convictions is unhelpful. By and large, immigrant communities commit crimes at lower rates than native-born populations, and are an overall asset to the economies of the areas where they reside. Barring an individual from seeking asylum because of any sort of involvement in a deeply flawed, structurally racist criminal justice system will only cause more harm. It will not make our country, our communities, or our families safer.

AR.08615

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9ege-7rm3
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0139
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Lucy Duff
**Address:**
    9210 Fowler Ln
    Lanham,  MD,  20706-2454
**Email:** lucyduff@comcast.net
**Phone:** 3015772350

## General Comment

I would reject the proposed changes to the asylum eligibility rule.
The proposed rule would inject racial profiling into the asylum process, and so endanger even more people seeking asylum.
The United States should be a place of refuge from violence, starvation,poverty, or persecution.

AR.08616

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egf-eqsp
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0140
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Kevin Dixler
**Address:**
  542 S. Dearborn St.
  Suite 590
  Chicago, IL, 60605-1573
**Email:** kd@dixler.com
**Phone:** 3125880500

## General Comment

The proposed rule overlooks why asylum exists. The reason is corruption and the use of crime and immoral conduct to deter liberty and justice. Criminal cartels and gangs have significant control over politicians in too many nations. That means that those persecuted are often targeted for a variety of reasons. To impute alleged crime upon those who flee will allow their persecutors to summon them back to be used as an example.

I have practiced immigration law for over 25 years. I have taught other attorneys how to practice immigration law in National Conferences.

The proposed regulations are woefully vague and are fraught with vague and unclear language. In essence, they overlook how corrupt nations politicians and supporters criminalize their opponents in order to cause others to threaten beat, injure and kill them based upon their 'actual' and 'perceived' beliefs. This defeats the purpose of why asylum laws exist. That is, to protect those with a well founded fear of persecution on account of politics, race, religion, and/or particular social group.

The proposed regulations seem in direct conflict with the Immigration and Nationality Act, provided, regulators take a step back and consider how criminals through politicians, and corrupted law enforcement, persecute others.

AR.08617

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egf-n7ys
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0141
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

"Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution."
"This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation."
"I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them."

AR.08618

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egg-8321
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0142
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Haley Millner

---

## General Comment

See attached document.

---

## Attachments

2020-01-15 Haley Millner Comment on Asylum Criminal Bars Proposed Rule

AR.08619

*Submitted via https://www.regulations.gov/document?D=EOIR-2019-0005-0001*

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

January 15, 2020

To Whom it May Concern:

I am writing in a personal capacity in response to the above-referenced Proposed Rules to express my strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

For the reasons detailed in the comments that follow, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

As an immigration attorney, I work with individuals daily who will be seriously prejudiced by this rule. I represent many asylum-seekers with criminal records and have seen how the legal system already unfairly holds minor arrests or convictions from many years ago against them. The immigration laws and regulations do not need to be harsher when it comes to criminal records; they need to be more forgiving.

One aspect of the proposed regulations that I find particularly troubling is the fact that adjudicators will have to try to re-litigate criminal convictions to determine whether they involve vague and amorphous qualities. In two significant ways, the Proposed Rules require immigration adjudicators to engage in decision-making to determine whether an asylum applicant's conduct—considered independently of any criminal court adjudication—triggers a categorical bar to asylum eligibility. First, the agencies propose that immigration adjudicators be allowed to consider "all reliable evidence" to determine whether there is "reason to believe" an offense was "committed for or related to criminal gang evidence," or "in furtherance of gang-related activity, triggering ineligibility for asylum in either case. Second, the Proposed Rules permit immigration

AR.08620

adjudicators to "assess all reliable evidence in order to determine whether [a] conviction amounts to a domestic violence offense;" and to go even further by considering whether non-adjudicated *conduct* "amounts to a covered act of battery or extreme cruelty."

Requiring adjudicators to make complex determinations regarding the nature and scope of a particular conviction or, in the case of the domestic violence bar, *conduct*, will lead to massive judicial inefficiencies and slanted "mini-trials" within the asylum adjudication process. The scope of the "reliable evidence" available to adjudicators in asylum cases is potentially limitless; advocates on both sides would be obligated to present fulsome arguments to make their cases about gang connections to the underlying activity or the relationship of the asylum applicant to the alleged victim. Because of the lack of robust evidentiary rules in immigration proceedings, it will be difficult if not impossible for many applicants to rebut negative evidence marshaled against them, even if false; and in other cases, asylum applicants will struggle to find evidence connected to events that may have happened years prior (especially for those detained). Asylum trials, which are typically three or fewer hours under current policies, would provide insufficient time to fully present arguments on both sides of these unwieldy issues.

These mini-trials would result in an egregious waste of judicial resources. Even as the laws and regulations stand today, judges have to expend significant time determining whether a respondent's crime meets the "particularly serious crime" bar to asylum. My law firm has been asked numerous times to brief the issue of whether the respondent committed a particularly serious crime, which added delays to the respondents' cases and required the judge to spend time reviewing the briefs submitted and evaluating this issue. As the immigration courts contend with backlogs that now exceed one million cases, tasking adjudicators with a highly nuanced, resource-intensive assessment of the connection of a conviction to gang activity and/or the domestic nature of alleged criminal conduct—assessments far outside their areas of expertise— will prolong asylum proceedings and invariably lead to erroneous determinations that will give rise to an increase in appeals. The Proposed Rules repeatedly cite increased efficiency as justification for many of the proposed changes. Yet requiring adjudicators to engage in mini-trials to determine the applicability of categorical criminal bars, rather than relying on adjudications obtained through the criminal legal system, will dramatically *decrease* efficiency in the asylum adjudication process.

Indeed, the Supreme Court has "long deemed undesirable" exactly the type of "post hoc investigation into the facts of predicate offenses" proposed by the agencies here. Instead, for more than a century the federal courts have repeatedly embraced the "categorical approach" to determine the immigration consequence(s) of a criminal offense, wherein the immigration adjudicator relies on the statute of conviction as adjudicated by the criminal court system, without relitigating the nature or circumstances of the offense in immigration court. As the Supreme Court has explained, this approach "promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." In *Moncrieffe v. Holder*, the Court forewarned of exactly the sort of harm that would arise from these Proposed Rules; in that case, the Court rejected the government's proposal that immigration adjudicators determine the nature and amount of remuneration involved in a marijuana-related conviction, noting that "our Nation's overburdened immigration courts" would end up weighing evidence "from, for example, the friend of a noncitizen" or the "local police

officer who recalls to the contrary," with the end result a disparity of outcomes depending on the whims of the individual immigration judge and a further burdened court system.

Particularly in the context of the new proposed bar related to alleged gang affiliation, I am concerned that creating a blanket exclusion for anyone who is convicted of a crime – including a misdemeanor – that an immigration adjudicator deems linked to gang activity will erroneously prevent bona fide asylum seekers from receiving protection. This rule confers on immigration adjudicators—who generally are not criminologists, sociologists, or criminal law experts—the responsibility to determine if there is "reason to believe" any conviction flows from activity taken in furtherance of gang activity. This rule will necessarily ensnare asylum seekers of color who have experienced racial profiling and a criminal legal system fraught with structural challenges and incentives to plead guilty to some crimes, particularly misdemeanors. These same individuals are vulnerable to being erroneously entered into gang databases. Such databases are notoriously inaccurate, outdated, and infected by racial bias. I have heard of asylum-seekers being identified as having gang ties just because of the brand and style of shoes that they wore; I fear that the proposed regulation will encourage adjudicators to cast an even wider net when it comes to identifying alleged gang members.

Indeed, asylum applicants are *already* frequently subjected to wrongful denials of protection because of allegations of gang activity made by the Department of Homeland Security on the basis of information found in notoriously unreliable foreign databases and "fusion" intelligence-gathering centers outside the United States. Empowering immigration adjudicators to render asylum applicants *categorically* excluded from protection on the basis of such spurious allegations will inevitably result in the return of many refugees back to harm.

The Departments curiously argue that all gang-related offenses should be construed as "particularly serious crimes." They cite statistics from up to 16 years ago in an attempt to make the point that gang members commit violent crimes and drug crimes. They then make the illogical leap to the conclusion that *all crimes*—including misdemeanor property crimes—that may be construed as connected to gang activity are particularly serious. This simply does not follow; in fact, the Proposed Rules will inevitably result in the exclusion from protection of asylum seekers of color who live in economically distressed communities and have obtained a minor conviction such as a property crime. Relying on the definition of "particularly serious crime" to prevent asylum seekers convicted of even minor crimes construed as gang-related from accessing asylum protection is disingenuous at best, and tinged with racial animus at worst.

The Departments asks for comments on: (1) what should be considered a sufficient link between an asylum seeker's underlying conviction and the gang related activity in order to trigger the application of the proposed bar, and (2) any other regulatory approaches to defining the type of gang-related activities that should render individuals ineligible for asylum. The premise of these questions is wrong: a vague "gang related" bar should not be introduced at all. The Immigration and Nationality Act and existing regulations already provide overly broad bars to asylum where criminal behavior by an asylum seeker causes concern by an adjudicator. Adding this additional, superfluous layer of complication risks erroneously excluding bona fide asylum seekers from protection without adding any useful adjudicatory tool to the process.

AR.08622

I urge the Department to withdraw its current proposal, because it threatens to harm many immigrants with criminal histories who have already moved forward with their lives and rehabilitated themselves. I do not think that someone's minor past mistakes should be held against them for the rest of their lives. I ask that the Department show some compassion for these individuals, who have already suffered so much even before making it to the United States. They deserve the opportunity to seek asylum.

Please do not hesitate to contact me at haley@oakimmigration.com to provide further information.

Sincerely,

Haley Millner
Attorney at Law

Law Office of Helen Lawrence
Oakland, CA

AR.08623

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egg-fl3p
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0143
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Bruce Hartford

## General Comment

I strongly oppose this blatant effort to prevent refugees and people under dire threat from seeking asylum in America. We have always been a haven for those fleeing persecution, systemic abuse, and threat of racial, gender, religious, or political violence -- and we have been richer for it. This rule is just one more instance of a racist, white-nationalist assault on and discrimination against people of color by Lord Trump and his Republican Party. We have always been a multi-racial nation and I oppose all their efforts to legally impose their white-supremacist agenda on my country. America was formed and built by immigrants from around the world and our society has greatly benefited from our mixture of cultures and races. I stand with the Statue of Liberty: "Give me your tired, your poor, Your huddled masses yearning to breathe free, The wretched refuse of your teeming shore. Send these, the homeless, tempest-tossed to me, I lift my lamp beside the golden door."

AR.08624

# PUBLIC SUBMISSION

| | |
|---|---|
| **As of:** January 22, 2020 | |
| **Received:** January 15, 2020 | |
| **Status:** Posted | |
| **Posted:** January 15, 2020 | |
| **Tracking No.** 1k4-9egg-chqk | |
| **Comments Due:** January 21, 2020 | |
| **Submission Type:** Web | |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0144
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I am opposed to the proposed rule change regarding asylum seekers.

I believe our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights.

However, a proposed rule change would hurt many asylum seekers. The rule change would bar many people from seeking asylum based on contact with the U.S.'s flawed criminal legal system.

This proposed rule would inject racial profiling into the asylum process and put asylum seekers at risk of danger even death. It's no secret that racial profiling and obstacles to equal justice run rampant in the criminal legal system. Under this rule change, asylum seekers who have been convicted of almost any crime or accused of gang involvement could be punished a second time by being barred from asylum and deported back to the very life-threatening situation they fled. And judges would be powerless to help.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Again, I am opposed to this proposed rule change.

AR.08625

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egg-qjti
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0145
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Cristina Martinez

## General Comment

Lauren Alder Reid, Assitant Director
Office of Policy, EOIR
5107 Leesburg Pike, Suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
USCIS
DHS
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41;
Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

January 15, 2020

To Whom It May Concern:

I am writing in response to the above-referenced Proposed Rules to express my strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

The proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in the United States and International law. They are unnecessarily cruel and will serve as a barrier to safety for many who feel hopeless and cannot find safety in their home country. So many have already been denied asylum and sent back to their home countries where they inevitably face the same dangers that forced them to flee.

AR.08626

Adding a fee requirement will prevent those who did not have the opportunity to properly prepare before leaving from applying. Adding additional criminal statutes that prevent asylum seekers from applying only further deters people from finding safety. While the safety of our nation is important, the criminal statute barriers do not focus on safety but rather effects nonviolent offenders disproportionally.

Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed. The agencies' efforts to add seven new sweeping categories of barred conduct to the asylum eligibility criteria are unnecessary and cruel. The Proposed Rules drain the phrase "particularly serious crime," 8 U.S.C. 1158, of any sensible meaning.

The Proposed Rules are also arbitrary and capricious. They would constitute a marked departure from past practice. And the agencies have proffered no evidence or support these changes.

One assumption fundamentally underlying the Proposed Rules, for example, is that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. But no evidence is provided to support that assumption, and a criminal record, does not, in fact, reliably predict future dangerousness. The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence. A conviction for a crime does not, without more, make one a present or future danger--which is why the Refugee Convention's particularly serious crime bar, made part of United States law through 8 U.S.C. 1158, should only properly apply if both (a) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows that she is a present or future danger.

The asylum protections provided by Unites States law are sacred. Asylum provides those fleeing horrors with physical safety, a path to citizenship and security, and the opportunity to reunite with immediate family members who may still remain abroad in danger. Many see the domestic asylum system as a symbol of the United States' commitment never to repeat its failure to save thousands of Jewish refugees refused entry to the United States on the St. Louis ant. d others fleeing the s. Others' foreign policy interests abroad. point to the critical role that domestic asylum policy plays in serving the United States' foreign policy interests abroad. For those individuals seeking asylum in the United States, the stakes could not be higher--a claim denied often means a return to death or brutal persecution.

Adjudicators already have so much discretion that makes it nearly impossible for many who truly fear for their lives to be granted asylum. Adding these proposed rules will only keep countless more from safety and send the message that the United States is no longer a safe haven for those in need.

For the reasons detailed in the comments that follow, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead, dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate to contact me at cmartinez@immigrantlc.org to provide further information.


Sincerely,
Cristina Martinez
Attorney

AR.08627

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egg-4dwa
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0146
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I am against this proposal. It will criminalize immigrants who have already been impacted by our criminal legal system. It harshly expands the number of convictions that would make asylum ineligible. Asylum seekers make our community better!

AR.08628

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egg-66fp
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0147
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Julia Gittleman

## General Comment

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system.

Immigrants are a vital part of my community, my neighborhood, and my state. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse.

Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08629

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 15, 2020 |
| **Status:** Posted |
| **Posted:** January 15, 2020 |
| **Tracking No.** 1k4-9egh-tcls |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0148
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Kim Tran

## General Comment

Hello, I'm a medical student and a United States citizen located in California writing to oppose the rules expanding asylum bars. I believe that this will further divide families for individuals who have worked really hard to get here and be a productive member of the American society. They have gone through a lot of trauma and as a result, they may have had some misdemeanors. However, they deserve a second chance to recover and stay with their families. We should not be punishing these people for all that they have gone through and endured in their home countries. It is just basic human rights and we need to stand up for them.

AR.08630

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egh-hsxw
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0149
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Milan Chang

---

## General Comment

Working in the immigration and criminal legal field, I am well aware that existing laws make it all too difficult for asylum seekers to receive the protections they need to ensure their safety and to honor the United States' commitment to refugees fleeing violence. Many of the vulnerable populations who face threats to their safety based on their identities are criminalized for those same qualities by our legal system; to deny asylum on this basis is not only illogical, it is a cruel application of our laws to persecute those most vulnerable among us. I strongly oppose any attempts to gut asylum protections as I believe the proposed changes will gravely endanger human lives and run counter to our country's purported values of justice and equality.

AR.08631

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egh-a73y
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0150
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Nathan Mendelsohn

## General Comment

I am writing to express my strong opposition to this rule change. I am a concerned citizen with many loved ones from all over the world, who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community in Brooklyn, my social professional and creative lives, and my family.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. Anything less is hypocrisy, short-sighted, and shameful.

U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08632

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egh-1y5m
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0151
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Rebecca Rojas
**Address:**
  2150 Old Orchard Dr
  Marietta,  30068
**Email:** rrojas621@gmail.com
**Phone:** 42305042038

## General Comment

I write to express my concern regarding this new proposed regulation. The rules for obtaining asylum in the United States are already very strict and adequately filter out merit less cases. It is exceedingly difficult to obtain asylum in the United States and most cases are in fact denied. Further, there is already a discretionary factor in all asylum cases that adequately covers these situations. This purpose of the many new regulations is clear: this administration wants to eliminate asylum in the United States. Time and again the administration has made it harder for the people in flight from life-threatening conditions in their homelands, to have meaningful access to seek relief. This regulation is completely unnecessary yet it purpose is clear - it is designed to purposely create an increasingly complex system which will effectively eliminate asylum.

AR.08633

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egh-9gsg
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0152
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Patrick Bosold

## General Comment

I urge you to NOT move forward with this rule. I have a friend who is slowly making her way through the asylum process, with a claim that is fully justifiable. A rule like this would unjustly harm her and many others like her. Don't do it. Please think about how you would feel, and what you would want, if you were applying for asylum and the consequence of having it denied would be deportation back to a country where you would be facing arrest, imprisonment and possibly even execution due to your religious preferences or political beliefs.

AR.08634

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egh-9jc0
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0153
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Adria Orr

---

## General Comment

I am writing to raise a strong object to this proposed rule change. As an American who is the child of two immigrants, I believe that immigration is a wonderful benefit to our country and culture. I also believe that we have a responsibility to open our doors to people fleeing violence and persecution, sometimes caused by conflicts that we have caused or worsened through our political and economic machinations.

People who have been through the criminal justice system cannot be automatically sorted into the category of being a 'bad' person. The world doesn't work like that. It's not a binary black and white system. People may have been arrested, convicted, or incarcerated, but that doesn't mean they do not deserve a chance to be safe and seek opportunity in this country. Deportation is a second round of punishment on top of a sentence already served.

We have been on the wrong side of history before, turning away Jewish refugees who were seeking to escape certain death. It seems like we should have learned our lesson, and developed a conscience and values that tell us that those who are fleeing violence, starvation, desperate poverty, and persecution deserve our compassion and assistance. In fact, we acted on those values when we passed the Refugee Act of 1980, with BIPARTISAN support.

As Americans who are proud of our country, we should be proud that people think they can come here and be safe. We should honor the concept of fairness in the process of evaluating and identifying those who need our help. We should not allow discrimination and abuse to play outsize roles in the process of seeking asylum. I ask that the Trump administration withdraw this proposal.

AR.08635

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egi-810o
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0154
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anna Kaplan

---

## General Comment

I am writing to oppose this rule change.

I believe the proposed changes stand in direct conflict with the founding principles of the United States. I am the great-grandchild of immigrants who fled government violence and unsafe homelands. Their story of immigration is deeply ingrained in my family's values, and these values are reflected in the laws of the United States that have allowed people seek refuge from persecution and torture.

There is no reason to inflict the racist profiling and discrimination of our criminal justice system on asylum seekers. Everyone deserves a chance at finding safety and building community, as my family did several generations ago. Instead of investing in broken institutions that disproportionately impact people of color and poor people, we should direct resources to creating a clear asylum process that recognizes the humanity of all people. I urge the administration to withdraw these proposed changes and consider the immense value that immigrants bring to our communities.

AR.08636

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egi-1s8n
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0155
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Regina Islas
**Address:**
  1369 Hyde St
  56A
  SAN FRANCISCO, CA, 94109
**Email:** regina.islas@gmail.com
**Phone:** 6504847706

---

## General Comment

The proposed policy change is wrong, it must not pass. Period. Rather devious to rush it through during the holiday.

AR.08637

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 15, 2020 |
| **Status:** Posted |
| **Posted:** January 15, 2020 |
| **Tracking No.** 1k4-9egi-6f71 |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0156
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Nicole Joseph

## General Comment

I am writing to oppose the rule. I believe that the United States should be a place people in need can flee from violence or threats to their well being. The reason I was born in the United States and am an active citizen in because my parents had a pathway to citizenship after they immigrated to the US. Choosing to run from the place you know to and take so many risks is hard enough. Let us be a people that openly welcome people as Jesus would and has done. Again I strongly oppose this proposal and believe that it should not be passed in the USA

AR.08638

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egi-z1rb
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0157
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Crawford MacCallum
**Address:**
    144 Sedillo Hill Rd
    Tijeras,  NM,  87059
**Email:** MCCALLUM@UNM.EDU
**Phone:** 5055739493

## General Comment

Procedures for Asylum and Bars to Asylum Eligibility should be made easier not harder. Asylum seekers should be shown compassion and also welcomed for economic reasons.

AR.08639

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egj-whmq
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0158
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Catherine Brady

## General Comment

The right to asylum should not be taken away based on any contact at all with the criminal system. Someone who incurs a traffic ticket while awaiting a pending asylum case should not have to fear being detained by ICE. The government should not place these people in a position of being terrified to drive a car, for fear that they might be pulled over and detained for failure to make a complete stop at a stop sign. This constitutes cruel and unusual punishment.

AR.08640

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egj-4gmy
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0159
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I write to express my strong opposition to this proposed rule change. As an LGBT Asylum Seeker, I am writing to say this law can not be implemented because we have many immigrants seeking asylum in this country because our home countries are not good places to live, since we do not feel safe living with so much crime. We come here for fear of being victims. For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08641

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egj-dj6v
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0160
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Edwin Carmona-Cruz

---

## General Comment

As a co-director at a nonprofit organization, I find these proposed rules incredibly alarming. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights. Without any hesitation, I strongly oppose these rules. This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. I firmly stand with our communities to pursue their right to a life of dignity and respect, and these proposed rules are the complete opposite of that.

AR.08642

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egk-gwye
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0161
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Devon Persing

## General Comment

Denying asylum to people in danger is a death sentence for many. By condoning this behavior, the administration is signing off on the murder of the most in need.

ER-0600

AR.08643

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egk-kpx3
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0162
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Misha Seay

---

## General Comment

I write to express my strong opposition and concern about the implications of this proposed rule change.

As a managing attorney at a civil legal aid organization, I also work with immigrant community members daily, and am concerned this rule would put many people in danger.

The barriers to asylum for those previously involved in the criminal legal system are already sweeping in scope; adding more barriers is cruel and unnecessary.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

The Proposed Rules also cruelly disregards the connections between trauma and involvement in the criminal legal system. Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply cruel.

Requiring adjudicators to make complex determinations regarding the nature and scope of a particular conviction or, in the case of the domestic violence bar, conduct, will lead to massive judicial inefficiencies and slanted "mini-trials" within the asylum adjudication process. The scope of the "reliable evidence" available to adjudicators in asylum cases is potentially limitless; advocates on both sides would be obligated to present fulsome arguments to make their cases about gang connections to the underlying activity or the relationship of the asylum applicant to the alleged victim. Because of the lack of robust evidentiary rules in immigration

AR.08644

proceedings, it will be difficult if not impossible for many applicants to rebut negative evidence marshaled against them, even if false; and in other cases, asylum applicants will struggle to find evidence connected to events that may have happened years prior (especially for those detained). Asylum trials, which are typically three or fewer hours under current policies, would provide insufficient time to fully present arguments on both sides of these unwieldy issues.

As the immigration courts contend with backlogs that now exceed one million cases, tasking adjudicators with a highly nuanced, resource-intensive assessment of the connection of a conviction to gang activity and/or the domestic nature of alleged criminal conduct—assessments far outside their areas of expertise—will prolong asylum proceedings and invariably lead to erroneous determinations that will give rise to an increase in appeals. The Proposed Rules repeatedly cite increased efficiency as justification for many of the proposed changes. Yet requiring adjudicators to engage in mini-trials to determine the applicability of categorical criminal bars, rather than relying on adjudications obtained through the criminal legal system, will dramatically decrease efficiency in the asylum adjudication process.

Please do not adopt this awful proposed rule change that is contrary to the values of this nation.

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egk-yauj
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0163
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ryan Pryor
**Address:**
   29 Williams Street
   Apt. 2
   Northampton,  01060
**Email:** ryanpryor4@gmail.com

## General Comment

I write to express my strong opposition to this proposed rule change and its implications for human rights and public health. I am a concerned Certified Nurse Midwife, Registered Nurse and Family Nurse Practitioner who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. As a healthcare provider I witness the negative impact of racism, criminalization of immigrants and deportation on clients and their families. This is wrong and preventable- this proposed rule will make things worse. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system. I oppose this proposed rule and any like it. We need to remove barriers to legal paths to citizenship and increase protections for immigrants and this proposed rule would do the opposite, causing suffering, premature death, and increasing preventable health outcomes and health disparities. Thank you.

AR.08646

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egk-53u7
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0164
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

AR.08647

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egk-jcmg
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0165
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Isobel White

---

## General Comment

I am strongly opposed to these proposed rules. People asking for asylum are fleeing death, torture, and persecution. You only leave home when home won't let you stay.
"You have to understand,
that no one puts their children in a boat
unless the water is safer than the land
no one burns their palms
under trains
beneath carriages
no one spends days and nights in the stomach of a truck
feeding on newspaper unless the miles travelled
means something more than journey." - by Warshan Shire.
This rule endangers people who may not have committed any crimes or may have committed crimes that harmed no one and simply reflected their determination to be with and protect their families.
Everyone deserves a second chance.

AR.08648

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egk-wyo1
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0166
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ursula Murphy

## General Comment

I am strongly opposed to the whole of these proposed asylum rules. They restrict asylum protections for people in danger, who are the very people who need it!
The asylum rules have been intended to protect people fleeing from imminent danger, death, torture, and persecution. Our system is already limited and already includes harsh exclusions for past criminal activity. The administration's proposed rules would make many people who've been victims of corrupt and flawed criminal legal system totally ineligible for asylum.
This rule also endangers people who may not have committed any crimes or may have committed crimes that harmed no one, did not involve moral turpitude, and simply reflected their determination to be with and protect their families.
Asylum is for protecting people from deportation to a place where they are in danger. No one should be abandoned to persecution or torture, regardless of their past mistakes.
When people who fear for their lives are denied asylum, it is the same as sending them to their deaths.

AR.08649

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egl-ru3c
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0167
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Irina Faber

## General Comment

I strongly oppose to this proposed rule change. I am an Ivy League educated professional, who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system.
Immigrants are a vital part of my community, my neighborhood, and my state. I am an immigrant myself, and while I am a US citizen, I think it's atrocious the way we treat undocumented immigrants.

AR.08650

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egl-arkb
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0168
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Jonathan Kleinman

---

## General Comment

I will take it as a given that our criminal justice system has a history of bias against black and brown people, just as our immigration system does. DHS already is barring asylum seekers from remaining in the United States if they crossed a third country to make here, which in reality means sending asylum seekers who pass through Mexico to return there while waiting an indeterminate time to have their cases heard. This, despite our State Department issuing travel warnings to those who might travel to Mexico and the fact that criminal gangs have made asylum seekers their victims, including by kidnapping them and demanding ransom from relatives already in the U.S.

The proposed rule change would impose a very low bar to asylum refusal by imposing these standards: "(5) certain federal, state, tribal, or local offenses concerning the operation of a motor vehicle while under the influence of an intoxicant" and (7)..."the possession or trafficking of a controlled substance or controlled-substance paraphernalia." While I agree that driving while under the influence of an intoxicant is dangerous, it should not be grounds for deportation. In the same vain, as long as marijuana is considered a controlled substance at the federal level, using possession of it as grounds for deportation is ridiculous, considering the number of states that have de-criminalized it's possession. This would put at risk a person in a state which prohibits marijuana possession, while not jeopardizing one in another state. This is unequal justice under the law. In addition, numerous studies have shown that black and brown people are disproportionately charged with drug offenses despite similar rates of use among white Americans.

Finally this statement: "Convictions for such misdemeanor offenses should be disqualifying because these offenses inherently undermine public safety or Government integrity" is ridiculous on it's face as there are many examples of such offenses that neither 'undermine public safety or Government integrity' - such as being found guilty of marijuana possession for smoking a joint while sitting at a sidewalk caf.

AR.08651

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egl-1c2c
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0169
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Juliana Morris
**Address:**
   3301 E 12th St
   Apt 316
   Oakland, CA, 94601
**Email:** juliana.e.morris@gmail.com

---

## General Comment

I am a concerned citizen and primary care physician who opposes the proposed rule change. Many of my patients are immigrants, refugees, and asylees. Many have come to the U.S. fleeing violence and destruction and it would be incredibly harmful to their health, even fatal in some cases, if they are forced to return. Many of my patients have also had interactions with the criminal justice system, in many cases as a result of racial profiling in their communities, racism in the trial and sentencing process, economic deprivation, and/or the burden of unprocessed and untreated trauma. After serving their time, they must be given a chance at safety, rehabilitation, and health. They are members of our communities that have valuable contributions to offer. They must not be re-criminalized due to prior mistakes (either on their part or on the part of unjust criminal justice practices). Please stop this proposed rule change.

AR.08652

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** k5f-tftu-bpfb
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0170
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Elaine Khoong
**Address:** United States,
**Email:** ekhoong@gmail.com

## General Comment

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

I'm writing in response to the above-referenced Proposed Rules to express my strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

As a child of immigrants and primary care clinician who provides care for many refugee and immigrant patients, these proposed rules do not align with the values that make America great a beacon of help or that have helped establish this land of immigrants to be the global leader that it is today. Populations that are fleeing violence to seek a better life are a great resource to our country, as evidenced by the large number that have gone on to build new companies, become healthcare professionals, and serve in many other needed roles within our country.

For the reasons detailed in the comments that follow, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate to contact me to provide further information.

Sincerely,
Elaine Khoong, MD

AR.08653

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egl-k1a4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0171
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Leah Carnine

## General Comment

I am a concerned healthcare provider who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. I see immigrants daily in my health clinic and they are so often trying to survive persecution, climate induced crisis in their home countries, and come here to survive and support their families. I am concerned about the way that immigrants are treated, and I daily see the way that it impacts their health in my clinic. It increases blood pressure, diabetes, and risks for acute crises like heart attacks which harm immigrant communities and negatively impact our healthcare system. This proposed rule would inject racial profiling into the asylum process. This attack would put even more people seeking asylum at risk of danger - and death. And it would in turn eviscerate one of the most important defenses community members have against deportation. This is very concerning to me as a community member, a friend of many immigrants, and a healthcare provider. I call upon the Trump administration to withdraw this proposal, in the name of health and wellness of our entire country.

AR.08654

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egm-g69n
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0172
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I am writing to express my devout opposition to this proposed rule change. I am a concerned member of the public and a child of immigrants who strongly believes that our nation must welcome people fleeing violence. I am rigidly against racial profiling in the criminal legal system. I am an immigrant rights community organizer and immigrants are a vital part of my family, my neighborhood, my city and state. This country was founded by immigrants who stole this land and I believe it is imperative that the damage that was and continues to be inflicted is not furthered by racist rules like the one that is being proposed on asylum.

AR.08655

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egm-f956
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0173
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Lisa Bernstein
**Address:**
  2850 Pebble Creek
  Ann Arbor, MI, 48108
**Email:** zachary042812@gmail.com

## General Comment

I am strongly opposed to the Executive Office for Immigration Review proposed rule change regarding asylum eligibility. My cousin sought asylum in America in the early 1990's when she arrived from Russia. She was fleeing violence against Jews and found safety in the United States. She is now a doctor, giving back to her community. I am very concerned that others may not be given the same chance as her. Discrimination in immigration law is not what this country should be about. We must welcome people fleeing violence-- deportation can put people in mortal danger--literally. Our values and our history demand that the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

The proposed rule would allow for racial profiling during the asylum process. This would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and is clearly racist. We can protect our borders without separating families, without racial profiling, and without turning into an evil society. We can live up to the values of this country.

Do not allow this rule change to deport people who can become contributing members of our great country, like my cousin. Let justice and compassion be the values that determine our immigration policy.

For these reasons, I call upon the administration to withdraw this policy change.

AR.08656

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egm-xtau
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0174
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Isabel Ullmann

---

## General Comment

My name is Isabel Ullmann, I am a resident of San Francisco, California and I am a DOJ Accredited Representative, representing clients in their removal proceedings. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook.

The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

The clients that I work with are escaping rape, torture, child abuse, forced labor, homophobic persecution, political persecution, religious persecution, murder of family members, and so much more. They were the people that the asylum law was written for, people who would be harmed or persecuted in their home countries should they return. Due to racial profiling, my clients are sometimes cited and unfairly convicted of crimes. One youth

AR.08657

client of mine was convicted of "Street terrorism" when a kid pulled a knife on him at school. Our clients are charged with "smuggling" for bringing their babies with them as they escape abusive partners together. These people should not be barred for asylum. This policy only seeks to dismantle and gut the asylum system in a racist and discriminatory way, and would penalize people who are VICTIMS of crime and violence by preventing them from accessing the protection they are promised by the 1951 Refugee Convention to which the US is a signatory and our asylum laws here in the United States.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Thank you for resolving this issue.


Sincerely,
Isabel Ullmann
La Raza Centro Legal

AR.08658

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egm-vbmd
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0175
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Alessandra Stamper

## General Comment

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08659

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egm-6th4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0176
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Hoi-Fei Mok

## General Comment

I am a child of immigrants, born and raised in CA. Much of my community are immigrants or descendants of immigrants. We understand that refugees and asylum seekers are people who are fleeing from violence and it is absolutely the moral duty of the US government to accept them for shelter, no matter what. Racial profiling does not have a place in barring asylum seekers from entering the country. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation. It is amoral to do this to people who have already been through so much and are merely looking to escape from the violence and trauma of places they have lived before. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08660

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egm-du3l
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0177
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Sara Zimmerman
**Address:**
   1425 Ward St
   Berkeley, CA, 94702
**Email:** sarazi@gmail.com

---

## General Comment

I am submitting these comments because I am strongly opposed to the whole of the proposed rules. As a Jewish American, I deeply object to how these rules restrict asylum protections for people who are in danger. Inhumane, restrictive, and poorly structured and managed asylum and immigration systems condemned millions upon millions of Jews, people with disabilities, and people of different races, religions, sexual orientations, and political beliefs to death during WWII. Had many of those people committed some kind of crime? Yes, in part because desperate circumstances and the experience of extreme hardship and persecution can drive people to flout societal rules, out of necessity or damaged decision making. Should those actions be a death sentence? Absolutely not.

Our rules for granting asylum are intended to protect people who are fleeing from death, torture, and persecution. Our asylum system is already unfair and too limited, and already includes harsh and overbroad exclusions for past criminal activity. Combined with the fact that our criminal justice system is one that has been abundantly shown through studies and analyses to have racial bias that leads to more arrests, more criminal charges, harsher plea bargains, and harsher sentences for people of color and immigrants, and this proposal is layering injustice upon injustice. (Please include this report, Report to the United Nations on Racial Disparities in the U.S. Criminal Justice System, in the comment record for these proposed rules:
https://www.sentencingproject.org/publications/un-report-on-racial-disparities/.)

Please abandon these proposed rules. They endanger people who may not have committed any crimes or may have committed crimes that harmed no one, did not involve moral turpitude, and simply reflected their determination to be with and protect their families. We must protect people from deportation to a place where they are in danger. No one should be abandoned to persecution or torture. We as a country are better than this - we can right the wrongs of the past and regain our international reputation as a contributor to a compassionate,

AR.08661

thriving, healthy world, but not with this kind of action.

AR.08662

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 15, 2020
**Tracking No.** 1k4-9egn-uoxy
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0178
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Julie Starobin
**Address:**
    Pacifica,  CA,  94044
**Email:** juliestarobin@gmail.com

## General Comment

I am completely and totally opposed to the rule change that Trump proposed in December. It would hurt many asylum seekers because it would exclude people based on future contact with the U.S.'s flawed criminal legal system. This would allow racial profiling to affect the asylum process and put many at risk.

I am very concerned that this rule change is in contradiction to the values i always thought the u.s. represented in the world: a place for people who are escaping violence, poverty and persecution. The International Refugee Convention that was created in after WW II protects refugees and asylum seekers. The government of the u.s. should never let unjust obstacles stop people from trying to be safe.

Immigrants and refugees are our neighbors, we are all human beings in need of respect and compassion. Please do not allow the new rule change proposed by the president.

Thank you.

AR.08663

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egn-x6lu
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0179
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Danny Kay

## General Comment

I am a concerned physician who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. There is more than enough resources in this country to support asylum seekers (if we just re directed corporate tax cuts and bloated military budgets).

AR.08664

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egn-xjix
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0180
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I oppose this rule change. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

AR.08665

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egn-9c44
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0181
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Cynthia Tuthill

## General Comment

I want to express my strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum. The Department of Homeland Security and the Department of Justice should immediately withdraw this proposal, and instead direct their efforts to ensure that individuals fleeing violence are granted full and fair access to asylum protections in the United States. This is what our country is all about! Adding more barriers to asylum seekers is not necessary, as we already have quite a strong set of rules in place. There is no need to block anyone who has been ACCUSED of domestic battery (without even a requirement for having been indicted or convicted), nor for misdemeanor offenses such as marijuana possession, fraudulent documents, or fraud in public benefits. What about the fact that in their home country, the danger of persecution could affect these kinds of offenses and accusations? These dangers to the person(s) seeking asylum should generally outweigh all but the most egregious (and proven) offenses. PLEASE do not allow this draconian increase in the difficulty for the United States to continue to be a safe haven.

AR.08666

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egn-hk3y
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0182
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of Daly City, California and I am an LGBT asylum seeker. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. For asylum seekers, like me, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet we face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

I believe that we all have the right to an opportunity to feel safe. We have immigrated to this country with the goal of feeling complete and without any fear of anything. I think that if this law is approved, that we will no longer have the opportunity to start over, from all that we thought that we lost of which this country gave us hope. We want to feel safe without any fear of anything.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08667

Thank you for resolving this issue.

AR.08668

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9ego-pj75
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0183
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Kelli Livermore

## General Comment

As a concerned member of the public, I hereby express strong opposition to this proposed rule change. I strongly believe our nation must welcome people fleeing violence. I am also deeply concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. In fact, if we look at the history of our country, except for Native Americans, we are ALL immigrants or descendants of immigrants.

The United States has historically been a place of refuge for people fleeing violence, starvation, poverty, persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in our current immigration system. To add to that, this proposed rule would inject racial profiling into the asylum process. This would put even more people seeking asylum at risk of danger and death. It would in turn eviscerate one of the most important defenses community members have against deportation.

Lastly, this proposed rule would punish people a second time who've already endured mistreatment and racial profiling in the criminal legal system -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral because it mocks due process. We must recognize the humanity of every person, including immigrants, and protect each other from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them For these reasons, I call upon the Trump administration to withdraw this proposal..

AR.08669

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9ego-6lyi
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0184
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Clara Guerrero
**Address:**
    Chicago,  IL,  60641
**Email:** clara_badillo@yahoo.com
**Phone:** 7734306914

## General Comment

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08670

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9ego-lz07
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0185
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** D Gold

---

## General Comment

I am writing to express my opposition to the proposed change in the rule. I am particularly opposed to broadening the bars on eligibility for asylum.

I am a U.S. citizen of European Jewish descent. The failure of our country to provide asylum to people fleeing persecution and death in Europe under German occupation resulted in millions of deaths. It was this knowledge that led to the creation of the current asylum process in 1980.

As a resident of the San Francisco Bay Area, I became aware of the desperate need for asylum created by the human rights violations of various governments in Central and South America in the 1980s. This continual need for asylum has been exacerbated by the growth of organized criminal enterprises in the area, in some cases with the collusion of agencies of the U.S. government.

I am also a lesbian, and I am very aware of the persecution faced by many in the lesbian, gay, bisexual, and transgender communities particularly in Africa and Asia.

It is important to me that the U.S. live up to its international image, if not it's actual practice, as a haven for people fleeing persecution. Immigrants have enriched this country in every possible way.

It is therefore important that any potential consequences of considering asylum for an individual be sufficiently strong to outweigh the risk of death, torture, or incarceration that causes an individual to seek asylum, rather than be returned to the country that threatens their existence.

I further believe that while this rulemaking process should be revised to eliminate the additional proposed bars, rulemaking should be conducted to narrow existing bars, such as convictions in other countries. People who are at risk of death, torture or incarceration, or other serious consequences, are often people who may be at risk of persecution under the legal system in their country of origin. For example, it is not unusual to find homosexuals in countries in which homosexuality is outlawed to have been charged with a variety of "crimes" that consist

AR.08671

solely of private, consenting sexual or assumed sexual conduct among adults.

Specifically:

1. I am opposed creating a bar to any person who has been convicted of a felony in any domestic jurisdiction. A prior conviction of a felony does not indicate an existing threat, and certainly not one that should overwhelm the likelihood that a person will face death, torture or imprisonment if denied asylum. Studies have proven that people of color are considered for felony prosecution more frequently than white people are for the same alleged acts. People facing prosecution may choose to plead guilty in order to mitigate potential damages, or because they are incapable of sustaining lengthy legal defense. There are hundreds of potential acts that may be considered felonies here in California.

This proposed rule would eliminate any discretion for judges in determining whether a specific felony conviction is sufficient to overwhelm the probability of death, torture or imprisonment if the person is denied asylum.

I am further opposed to broadening the "felony" bar to include any crime for which incarceration of over 1 year is possible. Many people caught up in the criminal justice system will plead guilty to a "lesser charge". These people will be further punished, although denial of asylum was not a consideration when the person accepted the plea, and the person may well have not made the choice to plead to this charge if the consequence was known at the time.

2. I am opposed to creating a bar to any person who has been convicted of illegal entry or reentry. People often have to leave their home countries and seek safety somewhere, with little notice. Recently, the huge delay in processing asylum seekers at the border has created circumstances in which many people cross without permission, and in many cases with the intention of turning themselves in to border patrol authorities. And these people are often not provided with asylum proceedings, even if they are requested. There is simply no reason to create a new bar on asylum based on this.

3. I am opposed to creating a bar to any person who has been convicted of certain offences regarding identity or documentation. The unfair application of immigration regulations, delays in processing of work permits for asylum seekers, and force people into an untenable choice between starvation and working without appropriate documentation. Further, laws applying to identity and documentation are disparately enforced, and are often based on racial profiling.

AR.08672

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9ego-je5g
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0186
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Christina Antonakos-Wallace

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system.

Immigrants and refugees are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II.

Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

I call upon the Trump administration to withdraw this proposal immediately.

AR.08673

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9ego-jg1s
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0187
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Quade Gallagher

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protection of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would, in turn, eviscerate one of the most important defenses community members have against deportation.
This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08674

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08675

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9ego-r6vz
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0188
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of San Francisco, California and I am an immigrant. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook.

Please help with all the refugee procedures to help them get political asylum, because if they are in this country they cannot return to their home countries, because they and their families are in danger and they want to help their families get ahead. It is their right to be helped by the president. Why doesn't the president want to help them? Please help them, do not change the law for worse, change it for the better of all asylum seekers.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08676

Thank you for resolving this issue.

AR.08677

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9ego-q3te
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0189
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Amanda Alvarado Ford

---

## General Comment

My name is Amanda Alvarado Ford, I am a resident of _____San Mateo_____, California and I am an immigrant/child of immigrants/descendant of immigrants/concerned individual (please circle one). I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."


I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.


This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.
This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

AR.08678

I am opposed to the proposed rule, please consider people are fleeing for their lives and many will face severe harm or death if deported, and this rule would have the net effect of criminalizing innocent people who were simply arrested and not convicted or convicted of minor offenses or convicted of offenses they did not commit.

Thank you

AR.08679

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9ego-jqfh
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0190
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Luis Vasquez Gomez

## General Comment

My name is Luis Vasquez, I am a resident of San Francisco, California and I am a concerned individual. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

This new proposal will drastically penalize our communities in their search for asylum. It is a right for a person to apply for asylum and criminalization will not help obtain this right.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Thank you for resolving this issue.

Sincerely,
Luis Vasquez Gomez

AR.08680

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9ego-90ck
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0191
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of San Francisco, California and I am a descendant of immigrants. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

It is important, from my personal point of view, to advocate for people asking for asylum because many of them are fleeing violence, poverty, and corruption in their home countries. Please. Do. Not. Block. People. From. Seeking. Asylum.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.
Thank you for resolving this issue.

AR.08681

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egp-xip7
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0192
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Shannon Jew

---

## General Comment

My name is Shannon Jew, I am a resident of San Francisco, California and I am a child of immigrants. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

The Trump Administration from the very beginning of his campaign, ran his campaign by demonizing and criminalizing the immigrant population of our community. They fail to empathize and have a lack of compassion for the people who flee from dangerous countries who are suffering violence and injustice. I urge this administration to withdraw this proposal and think about the type of message the United States wants to portray out to the world. We are a country of refuge. We are a country of immigrants.

AR.08682

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** k5g-1j63-q15r
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0193
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Kate Benham-Suk
**Address:**
    Oakland,  CA,  94611
**Email:** kbenham7@gmail.com
**Phone:** 4156520011

---

## General Comment

Asylum is about escaping persecution and we cannot call ourself America if we start making stipulations about that, such as only 'good' persecuted people are allowed in this country.

AR.08683

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egp-vhyz
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0194
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

---

## General Comment

I am a resident of San Francisco, California, I am an immigrant and I work at a food bank for low income immigrants. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

Times are always difficult, but now even more so with the person in charge of the presidency. Sometimes, in our countries, those of us who are not educated do not have any support for our lives. Life is very difficult and more than that, I think that like little animals we do things like immigrate for something better. This is the daily survival. We can't be quiet while we see immigrants suffering and not do anything for them.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Thank you for resolving this issue.

AR.08684

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egp-dd4u
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0195
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of San Mateo, California and I am a concerned individual. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Please drop the proposal so that people can be eligible for asylum. I am sick and tired of the government separating families. No More Separation of Families!!!

Thank you for resolving this issue.

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egp-nyoz
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0196
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of San Francisco, California and I am an asylum seeker. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

These deportations cannot continue. We have all come from our countries escaping violence and the governments in our countries do nothing to protect or support us. We have fled from our countries because our lives are at risk. Even the police put us in danger. We are threatened by them as well. There are people who have committed crimes, but they are also escaping from threats and dangers on their lives. We are people who comes to this country, not because we want to, but because we have to protect our lives and find the support we need. I don't think that people should keep being deported and separated from their families. It is not easy to live in this country, surviving through discrimination and racism every day, but we want to make our children's lives better. People are in danger. The pain is very great. More people would make comments like me, but it is very hard to find the time because our community works such long hours. Just because someone has a crime on their record, doesn't mean they should be sent to their death in their home country.

For these reasons, I am not in agreement of this rule.

AR.08686

AR.08687

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egp-9mwf
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0197
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Chris Accomando

## General Comment

I am strongly opposed to the rule change on Procedures for Asylum and Bars to Asylum Eligibility. The current Administration is attempting to gut vital asylum protections by excluding many asylum seekers based on contact with a legal system that criminalizes vulnerable populations. This rule change would further reproduce injustices already deeply embedded in our criminal legal system.

AR.08688

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egp-3nzi
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0198
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Maribel Sanchez

---

## General Comment

My name is Maribel Sanchez. I am a resident of San Francisco, California and I am a child of immigrants and a concerned individual. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

This is just one more discriminatory rule change that the Trump Administration is trying to implement. Ever since he came into office, he has spread nothing but hate and racism towards all people of color, including the immigrant population. This country was built by immigrants and whether or not the government wants to admit it, EVERYONE BUT THE NATIVE AMERICANS ARE IMMIGRANTS.

I am from San Francisco, where we have a huge undocumented and unhoused population. The biased racist policies that are currently in place make it so easy for someone to easily commit one of these crimes just for trying to survive and make a life for themselves. Everyone should have the right to seek asylum, regardless if they committed a crime or not. A DUI should not be the reason why someone should be deported and condemned to death.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Thank you for resolving this issue.

AR.08689

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egr-s6de
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0199
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Penny Robinson
**Address:**
   1708 S Weimar St
   Appleton,  WI,  54915

---

## General Comment

I am strongly opposed to this proposed rule change. I am a concerned citizen who believes that we must continue to welcome people fleeing violence. I am also concerned about racial profiling in the criminal legal system. Immigrants are our neighbors and friends and a vital part of our community.

According to international as well as national law (Refugee Act of 1980) anyone present or arriving in the U.S. can apply for asylum. Making it here often means they have finally reached safety from violence, persecution, torture, and sometimes death. We cannot place even more unjust obstacles in the immigration system.

This proposed rule would add racial profiling into the asylum process and put even more individuals seeking asylum at risk by deporting them back to the very life-threatening situation they fled. This flies in the face of one of our most valued rights - due process.

We must not only follow the International and federal laws, but we must uphold the values long held by our citizens of fairness and respect for human rights.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08690

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 15, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egs-2qz0
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0200
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Alyssa Bell

---

## General Comment

This terrible rule would inject racial profiling into the asylum process and put asylum-seekers at risk of danger - even death. It's no secret that racial profiling and obstacles to equal justice run rampant in the criminal legal system. Under this rule change, people who have endured mistreatment and profiling would be punished a second time -- with deportation back to the very life-threatening situation they fled. And judges would be powerless to help. That is unthinkable and unacceptable in our society. I vehemently object.

AR.08691

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egu-2eoc
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0201
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Kathryn Hedges

## General Comment

It is understandable to avoid sheltering people who have committed serious crimes.

However, the new rules won't distinguish between rapists, murderers, and people who get traffic tickets. If you have been careful enough to avoid getting traffic tickets, I'm sure someone in your family has had a burned-out taillight, been late on their registration, or even been caught speeding. Do you treat them the same way as you would if they were convicted of murder? If not, how do you justify treating asylum seekers with traffic tickets or other misdemeanors the same as a murderer?

We need to be compassionate to asylum seekers instead of making excuses to send them back to danger.

AR.08692

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9egv-8urc
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0202
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I am writing to express my strong opposition to this proposed rule change. As an American Jew who does volunteer community organizing around issues of criminal justice reform, I believe deeply that we all have a moral obligation to honor the dignity and humanity of all people. These rules changes are the antithesis of my values. Instead of promoting racial profiling in the asylum process, we should be opening our doors to those fleeing violence and persecution to seek safety and a better life in the US. This rule change, seemingly proposed by those aligned with white nationalists, could put asylum seekers in further danger, punishing folks who have already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly racist, immoral, and makes a mockery of due process. I implore you to immediately withdraw this proposal.

AR.08693