## No. 20-17490

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PANGEA LEGAL SERVICES, et al.
Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.
Defendants-Appellants.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## APPELLANTS' EXCERPTS OF RECORD

## VOL. 4 OF 12

JOHN V. COGHLAN
*Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
PATRICK GLEN
CHRISTINA P. GREER
*Senior Litigation Counsel*
CRAIG NEWELL
*Trial Attorney*

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh1-aqg6
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0203
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Rachel Ishikawa

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a the child of an immigrant father, who has lived in this country for the 30 years. I fear that this rule change would send people who fled violence and death back into these dangerous situations.

U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum. These are values engrained into the U.S. Should we not protect them with all we have?

I believe we must recognize the humanity of every person. I call upon the Trump administration to withdraw this proposal.

AR.08694

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 16, 2020 |
| **Status:** Posted |
| **Posted:** January 16, 2020 |
| **Tracking No.** 1k4-9eh1-b8xb |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0204
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. Our historical values require the United States to be a place of refuge for people fleeing violence, starvation, poverty, persecution, and other unjust treatment. Further, our criminal legal system is plagued daily by racial profiling and obstructs equal justice. Our cruel immigration laws continue to exploit these obstacles by driving the mass incarceration and mass deportation of people of color, specifically. Your proposed rule and your abetting of it would further inject racial profiling into our asylum process. This attack will sentence even more innocent people seeking asylum to the very danger and death they are coming to our nation to escape. This would in turn eviscerate one of the most important defenses community members have against deportation. It is our duty to recognize the humanity of every person, including immigrants seeking our help, and protect our neighbors from discrimination and abuse -- not discriminate and abuse them ourselves. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not disintegrate them. For these reasons, I call upon the Trump administration -- and upon you who are reading this to do your part -- to withdraw this proposal.

AR.08695

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 16, 2020 |
| **Status:** Posted |
| **Posted:** January 16, 2020 |
| **Tracking No.** 1k4-9eh1-e76t |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0205
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Molly McClure

## General Comment

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41;
Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

January 16, 2020

To Whom it May Concern:

I am writing regarding with strong objection to the proposed amend in regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

I have worked with immigrants for the last 12 years in my community organization and have seen first-hand the challenges that individuals escaping violence experience. Rather than add more barriers to their efforts at securing safety, I urge you to see that they are granted full and fair access to asylum protections in the United States.

I appreciate your consideration, and please do not hesitate to contact me to provide further information.

Best,
Molly McClure
Causa Justa :: Just Cause

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh2-u2hc
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0206
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Brian Smedley

---

## General Comment

I write to express my strong opposition to the proposed rule change that would make it harder for immigrants to seek asylum based on prior or future criminal justice contact.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Research shows that people of color are disproportionately targeted by law enforcement, which contributes to their overrepresentation in criminal justice systems. Many innocent asylum seekers could therefore be unfairly prohibited from seeking refuge in the United States, as required by U.S. and international law.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Immigrants are a vital part of my community, my neighborhood, and my state. For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08697

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh4-1zq7
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0207
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Haley Roe

---

## General Comment

To Whom It May Concern:

On behalf of the Wyoming Coalition Against Domestic Violence and Sexual Assault (WCADVSA), we are submitting comments in response to the DHS and DOJ's Joint Notice of Proposed Rulemaking Procedures for Asylum and Bars to Asylum Eligibility published in the Federal Register on December 19, 2019 to express our STRONG OPPOSITION to the proposed changes to the asylum process and asylum eligibility.

WCADVSA has grave concerns regarding the immense harm that these changes in the proposed rule will have on immigrant survivors of domestic violence, sexual assault, and other gender-based abuses. We urge DHS and DOJ to withdraw the proposed rule in its entirety.

At WCADVSA we strive to provide holistic legal services to all survivors in Wyoming, immigrant or not. While working with survivors and immigrants for the last 4 years I know from experience this new rule will put the safety of survivors at risk.

Immigrant survivors who flee to the U.S. to seek asylum have endured horrific domestic violence, sexual assault, rape, and other gender-based forms of abuse that have threatened their and their children's lives. The journey to the U.S. is a dangerous one. Still, survivors traverse the hundreds to thousands of miles because they strongly believe that it is safer to make the journey for the possibility of finding safety and protection in the U.S. than to stay in their home countries where their governments do little to protect them from their abusers and perpetrators.

The proposed rule would limit women who bring their children with them claiming they are "alien smuggling" and not that they are doing this to protect themselves and their families. Our immigration system claims to make families the top priority, but this rule change is directly contrary to that.

I understand the goals of this administration include limiting the amount of immigrants in the U.S., this however is not the way to do this. Limiting survivors access to safety is contrary to public policy, regardless of the side of

AR.08698

the aisle a person sits. It is vital that we, as the greatest country on Earth, do our part to help the many survivors of domestic violence, sexual assault, and rape. These survivors are coming to the US for help, turning our back on them would be reprehensible.

Thank you for the opportunity to submit comments on the Joint Notice of Proposed Rulemaking Procedures for Asylum and Bars to Asylum Eligibility. Please contact me if you have any questions or concerns relating to these comments. Thank you.
Respectfully submitted,

WCADVSA
Haley Roe
Program Attorney
307-259-4219

AR.08699

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh5-kzai
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0208
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Tessa Pulaski
**Address:**
   3115 Mt. Pleasant St. NW
   Washington,  DC,  20010
**Email:** tpulaski@law.gwu.edu
**Phone:** 6175990048
**Organization:** IRAP GW Law

---

## General Comment

On behalf of the George Washington University Law School chapter of the International Refugee Assistance Project, we strongly oppose the proposed policy. As students interested in practicing asylum law, we believe this policy is too vague, has drastic consequences, and is not supported by a valid government interest.

First, the policy does not establish how these misdemeanors should preclude individuals from applying for asylum. People who have valid asylum claims and are fleeing violent contexts, should not be barred from receiving asylee status in the United States.

Second, committing misdemeanors does not speak to the character of these individuals. These people should still be eligible for asylum since the misdemeanors do not make them national security threats and they do not pose other risks to our country. There are other bars to receiving asylum and extensive screening mechanisms that already ensure that people who want to commit serious harm in the country are not able to receive relief.

Finally, asylum is fundamentally about providing a safe haven for individuals who are facing threats or violence on account of their race, nationality, social group, religion or political opinion. The United States should be a beacon of freedom for the world and accept individuals who have to flee their country. We should not prevent people from getting asylee status on this basis.

For the foregoing reasons, we ask that this policy not be implemented.

AR.08700

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh5-21qz
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0209
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Evan Monod
**Address:**
    DC,

## General Comment

I strongly oppose this proposed rule. As the son of an immigrant, I believe that immigration strengthens our country immeasurably. This is doubly true of the asylum seekers who have come to this country fleeing war, religious persecution, genocide, and the like. The United States remains a beacon of hope for millions around the globe in desperate situations. Given that asylum seekers are already subjected to a rigorous application process that can take several months, the addition of several low level misdemeanor offenses will only serve to make the process more onerous. It will not serve the public interest to bar someone who has been convicted of a low-level, nonviolent drug offense, simply because of that one mistake. For these reasons, I call upon this administration to withdraw this proposal.

AR.08701

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh5-nv37
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0210
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Javier Chavez

---

## General Comment

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

As an immigrant from Mexico who has lived in the U.S. for 30 years, I am deeply concerned that this rule change would send people who fled violence back to danger and death.

As a formerly incarcerated person, I think it's wrong to punish people a second time after they've completed their sentences. Deportation is often a matter of life and death.

As [Community Liasion] at Redwood Coast Medical Services], I work with immigrant community members daily, and am concerned this rule would put many people in danger

AR.08702

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh5-dli4
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0211
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I write to oppose this proposed rule change. I am a third-year law student who has researched and written about the most effective ways to help voluntary migrants and asylum seekers while maintaining sovereignty and national security. The proposed rule would extend bars to entry and protection based on misdemeanors to those seeking asylum.

By extending the entry bar based on certain misdemeanor offenses to asylum seekers, the rule creates another hurdle for extremely vulnerable populations to clear. Asylum seekers are already vetted and subject to intense scrutiny. Whatever the merits of barring voluntary migrants based on misdemeanor offenses, extending those to asylum seekers would only limit the amount of qualifying persons with no corresponding benefit to national security. The rule, along with prior restrictions on asylum-seeking, would have the purpose and effect of reducing the class of persons eligible for asylum.

Generalized appeals to "public safety" cannot and should not be used as a magic bullet to justify ever increasing restrictions on our liberty and the liberties of those fleeing war and dangerous circumstances abroad. Because this rule would serve no public purpose and would only discriminate against vulnerable populations, I urge the administration to withdraw this rule.

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh6-pg6s
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0212
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ilyce Shugall
**Address:**
    Justice & Diversity Center of the Bar Association of San Francisco
    301 Battery Street, Third Floor
    San Francisco,  CA,  94111
**Email:** ishugall@sfbar.org
**Phone:** (415) 575-3123
**Fax:** (415) 688-4633

## General Comment

See attached file(s)

## Attachments

Comment on DoJ asylum bars 01.2020_Signed

AR.08704

**JUSTICE & DIVERSITY CENTER**
OF THE BAR ASSOCIATION OF SAN FRANCISCO

Pro Bono Legal Services Program
**Homeless Advocacy Project**
**Immigrant Legal Defense Program**
**Diversity Educational Program**

**Board of Directors**

Doris Cheng
President

Stuart C. Plunkett
President-Elect

Marvin K. Anderson
Treasurer

Mary McNamara
Secretary

Khaldoun Baghdadi
A. Marisa Chun
Michelle Ferreira
Alicia Gámez
Lindsay M. Gehman
Matthew Gluck
Ari Hersher
Laura C. Hurtado
Jessica Jacob
Adam I. Kaplan
David Kelly
Anjali Kulkarni
Elinor Leary
David A. Lucero
Marie Ma
Gonzalo C. Martinez
Rob Meyerhoff
Catherine Ongiri
David Reidy
Charles O. Thompson
Demetria Vong-Spillan
Blair Walsh
Jee Young You

**Senior Staff**

Yolanda M. Jackson
Executive Director

Gloria Chun
Pro Bono Legal Services
Program Director

Teresa Lynn Friend
Homeless Advocacy
Project (HAP) Director

Carole Conn
Immigrant Legal Defense
Program Director

Samantha Akwei
Diversity & Pipeline
Programs Director

Shuwaski Young
Director of Donor &
Community Engagement

January 16, 2020

Submitted via www.regulations.gov

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

**Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility**

Dear Ms. Alder Reid and Ms. Dunn,

I am writing on behalf of the Justice & Diversity Center of the Bar Association of San Francisco to express our strong opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility, 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41.

The Justice & Diversity Center (JDC) is a non-profit organization located in San Francisco, California which has been in existence since 1977. We are committed to providing free legal services to low-income residents of the Bay Area, enabling Bay Area residents to access the judicial system, and strengthening the community's personal, professional, and economic security.

One of JDC's programs, the Immigrant Legal Defense Program (ILDP), works to increase access to justice and protect the due process rights of low-income and unrepresented immigrants facing removal from the United States. ILDP builds legal capacity and resources throughout Northern and Central California to defend immigrants facing removal in the San Francisco Immigration Court. Most ILDP clients are asylum seekers. JDC opposes the proposed rule, which will significantly limit access to asylum for the most vulnerable non-citizens.

**JUSTICE & DIVERSITY CENTER**
Tel 415.982.1600   Fax 415.477.2390
301 Battery Street, Third Floor, San Francisco, CA 94111
www.sfbar.org/jdc

**HOMELESS ADVOCACY PROJECT**
Tel 415.575.3130   Fax 415.575.3132
Tanya Neiman Building
125 Hyde Street, San Francisco, CA 94102
www.sfbar.org/hap

AR.08705

**JUSTICE & DIVERSITY CENTER**
OF THE BAR ASSOCIATION OF SAN FRANCISCO

**Introduction**

On December 19th, the Department of Homeland Security (DHS) and the Department of Justice (DOJ) issued a joint set of Proposed Rules that would make three primary changes to the rules governing asylum adjudications.

The first proposed set of changes adds the following seven *categorical* bars to asylum eligibility: (1) any conviction of a felony offense; (2) any conviction for "smuggling or harboring" under 8 U.S.C. § 1324(a), even if the asylum seeker committed the offense for the purpose of bringing her own spouse, child, or parent to safety; (3) any conviction for illegal reentry under 8 U.S.C. § 1326; (4) any conviction for an offense "involving criminal street gangs"; (5) any second conviction for an offense involving driving while intoxicated or impaired; (6) any conviction *or accusation of conduct* for acts of battery involving a domestic relationship; (7) and any conviction for several newly defined categories of misdemeanor offenses, including *any* drug-related offense except for a first-time marijuana possession offense, any offense involving a fraudulent document, and fraud in public benefits.

The second section of the Proposed Rules provides a multi-factor test for immigration adjudicators to determine whether a criminal conviction or sentence is valid for the purpose of determining asylum eligibility. The third section rescinds a provision in the current rules regarding the reconsideration of discretionary asylum.

Cumulatively, these proposed changes constitute an unnecessary and unlawful destruction of asylum protections under United States and international law. JDC submits these comments to express opposition to the entirety of the Proposed Rules and grave concerns with the administration's continued efforts to deny refugees the right to obtain the security and stability the United States asylum system has long promised. We urge that the Proposed Rules be rescinded in their entirety.

**The Proposed Rules Unnecessarily and Unlawfully Bar Legitimate Refugees from Asylum**

The laws, regulations, and process governing asylum adjudications are already extensive and harsh.[1] Asylum seekers bear the evidentiary burden of establishing their eligibility for asylum[2] under complex laws, regulations, and procedures without the benefit of appointed counsel and often from a remote immigration jail.[3] A large number of asylum

---

[1] 8 USC § 1158(b)(2)(A), (B); 8 CFR § 1240.14
[2] 8 USC § 1158(b)(1)(B); 8 CFR § 1240.8(d).
[3] *See* Daniel Connolly, Aaron Montes, and Lauren Villagran, "Asylum seekers in U.S. face years of waiting, little chance of winning their cases," *USA Today,* September 25, 2019,

AR.08706

**JUSTICE ❷ DIVERSITY CENTER**
OF THE BAR ASSOCIATION OF SAN FRANCISCO

applicants present their cases without the benefit of representation. According to data from the courts, as of 2017, 20.6% of asylum cases in the courts were decided without the benefit of counsel[4] ILDP provides primarily limited scope assistance to non-citizens in removal proceedings, including asylum applicants. This additional hurdle to establishing eligibility for asylum will make it significantly more difficult for organizations like JDC to provide limited scope assistance to unrepresented asylum seekers.

Furthermore, the current bars to asylum based on allegations of criminal conduct and convictions are *already* sweeping and over-broad.[5] Any conviction for an offense determined to be an "aggravated felony" is considered a *per se* "particularly serious crime" and therefore a mandatory bar to asylum.[6] "Aggravated felony" is a vague term, which exists only in immigration law. The definition encompasses hundreds of offenses, many of them neither a felony nor aggravated, including petty offenses such as misdemeanor shoplifting, simple misdemeanor battery, or sale of counterfeit DVDs.[7] For this reason, the existing crime bars should be narrowed, not expanded.

Asylum is a discretionary form of relief, such that adjudicators are tasked with exercising discretion in determining whether or not to grant relief. Therefore, for those not categorically barred from asylum, the adjudicator maintains full discretion to deny asylum if a criminal offense is serious or if there are other adverse factors.[8] The Board of Immigration Appeals has cautioned that, "in light of the unusually harsh consequences which may befall a [noncitizen] who has established a well-founded fear of persecution; the danger of persecution should generally outweigh all but the most egregious of adverse factors."[9] However, the seven new bars proposed here preclude asylum seekers from obtaining protection on the basis of a vast array of conduct, without any discretion left to the immigration adjudicator to determine whether the circumstances merit such a harsh penalty. Indeed, in the case of the domestic-violence

---

https://www.usatoday.com/in-depth/news/nation/2019/09/23/immigration-court-asylum-seekers-what-to-expect/2026541001/.

[4] "Asylum Representation Rates Have Fallen Amid Rising Denial Rates," TRAC Immigration; available at: https://trac.syr.edu/immigration/reports/491/

[5] 8 USC 1158(b)(2)(A)(ii), (iii); (B); *see also* 84 FR 69641(setting forth existing categorical bars to asylum eligibility).

[6] 8 U.S.C. §§ 1158(b)(2)(A)(ii) and (B)(i).

[7] 8 U.S.C. § 1101(a)(43). *See also* Nancy Morawetz, "Understanding the Impact of the 1996 Deportation Laws and the Limited Scope of Proposed Reforms," *Harvard Law Review* 113 (2000): 1939-40 (criticizing the "'Alice-in-Wonderland-like definition of the term 'aggravated felony'"); Melissa Cook, "Banished for Minor Crimes: The Aggravated Felony Provisions of the Immigration and Nationality Act as a Human Rights Violation," *Boston College Third World Law Journal* (2003): 293.

[8] 8 USC § 1158(b)(1)(A); *See also Matter of Pula*, 19 I.&N. Dec. 467 (BIA 1987).

[9] *Pula*, 19 I.&N. Dec. at 474.

AR.08707

**JUSTICE & DIVERSITY CENTER**
OF THE BAR ASSOCIATION OF SAN FRANCISCO

related ground, the categorical bar will be imposed on the basis of *mere allegations* of conduct without any adjudication of guilt.[10]

Moreover, the Proposed Rules are ultra vires to the statute, as they render meaningless the phrase "*particularly serious* crime."[11] If Congress intended to include all criminal convictions within the definition of particularly serious crime, it would have specifically indicated that anyone with a criminal conviction is barred from asylum.

**The Proposed Rules are In Violation of International Treaty Obligations**

In addition to violating the Immigration and Nationality Act, as discussed above, by acceding to the 1967 Protocol Relating to the Status of Refugees,[12] which binds parties to the United Nations Convention Relating to the Status of Refugees,[13] the United States obligated itself to develop and interpret United States refugee law in a manner that complies with the Protocol's principle of non-refoulement (the commitment not to return refugees to a country where they will face persecution on protected grounds), even where potential refugees have allegedly committed criminal offenses.

While the Convention allows states to exclude and/or expel potential refugees from protection, the circumstances in which this can occur are limited. In particular, the Convention allows states to exclude and/or expel individuals from refugee protection if the individual "having been convicted by a final judgement of a particularly serious crime, constitutes a danger to the community of that country."[14] However, this clause is intended for "extreme cases," in which the particularly serious crime at issue is a "capital crime or a very grave punishable act."[15] The United Nations High Commissioner for Refugees (UNHCR) has asserted that to constitute a "particularly serious crime," the crime "must belong to the gravest category" and be limited "to refugees who become an extremely serious threat to the country of asylum due to the severity of crimes

---

[10] The Proposed Rules at p. 69651 explain that the regulations will "render ineligible [non-citizens] who engaged in acts of battery and extreme cruelty in a domestic context in the United States, regardless of whether such conduct resulted in a criminal conviction."

[11] 8 U.S.C. § 1158(b)(2)(A)(ii)

[12] United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, [1968] 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 268.

[13] Convention Relating to the Statute of Refugees, July 28, 1951, 140 U.N.T.S. 1954 (hereinafter "Refugee Convention").

[14] *Id.* at art. 33(2).

[15] U.N. High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol relating to the Status of Refugees* 2, U.N. Doc. HCR/IP/Eng/REV. ¶ 154-55, (1979, reissued 2019).

AR.08708



**JUSTICE @ DIVERSITY CENTER**

OF THE BAR ASSOCIATION OF SAN FRANCISCO

perpetrated by them in the country of asylum."[16] Moreover, the UNHCR has specifically noted that the particularly serious crime bar does not encompass less extreme crimes; "[c]rimes such as petty theft or the possession for personal use of illicit narcotic substances would not meet the threshold of seriousness."[17] Finally, when determining whether an individual should be barred from protection for having been convicted of a particularly serious crime, the adjudicator must conduct an individualized analysis and consider any mitigating factors.[18]

As discussed above, legislation and agency interpretation of the Immigration and Nationality Act have already expanded the particularly serious crime bar beyond what was contemplated in the Convention by creating categorical particularly serious crimes through the aggravated felony definition. The Proposed Rules would pull the United States farther away from its treaty obligations, as they would render nearly all criminal convictions bars to asylum.

Additionally, outside of the aggravated felony context, the Board of Immigration Appeals and the Courts of Appeals have generally agreed that low-level, "run-of-the-mill" offenses do not constitute particularly serious crimes, which is consistent with our country's international treaty obligations.[19] Under this long-standing interpretation of the particularly serious crime bar in the INA, there is no scenario in which offenses like misdemeanor driving under the influence without injury or simple possession of a controlled substance or paraphernalia would constitute a particularly serious crime.

**Withholding of Removal and Protection Under the Convention Against Torture is an Insufficient Remedy for Refugees Who Are Eligible for and Deserving of Asylum**

Although individuals barred from asylum may nonetheless be eligible for withholding of removal and protection under the Convention Against Torture (CAT), refugees should not be required to settle for these lesser forms of relief. Withholding and CAT recipients face permanent separation from their spouses and children. By regulation, refugee travel documents are available only to asylees.[20] Further, the Board of Immigration Appeals requires that an individual granted withholding and CAT—unlike an individual

---

[16] U.N. High Comm'r for Refugees (UNHCR), *Criminal Justice and Immigration Bill: Briefing for the House of Commons at Second Reading* ¶ 7 (July 2007), http://www.unhcr.org/enus/576d237f7.pdf.

[17] *Id.* at ¶ 10.

[18] *Id.* at ¶ 10-11; U.N. High Commissioner for Refugees, *The Nationality, Immigration and Asylum Act 2002: UNHCR Comments on the Nationality, Immigration and Asylum Act 2002 (Specification of Particularly Serious Crimes) Order 2004*, 4 (2004).

[19] *Delgado v. Holder*, 648 F.3d 1095, 1110 (9th Cir. 2011) (en banc) (J. Reinhardt, concurring).

[20] 8 C.F.R. § 223.1.

AR.08709



**JUSTICE ⊘ DIVERSITY CENTER**
OF THE BAR ASSOCIATION OF SAN FRANCISCO

granted asylum—must simultaneously be ordered removed, making any international travel a "self-deportation."[21] Because international travel is prohibited, individuals granted withholding of removal and CAT cannot reconnect with their families in a third country. Likewise, they cannot reunite with family in the United States because only asylees and refugees are eligible to petition for a spouse and children as derivative beneficiaries.[22] For many, this will mean that the Proposed Rules institute yet another formal policy of family separation.

In the San Francisco Immigration Court, where JDC's clients are in removal proceedings, many asylum seekers are family units. In these family units, oftentimes, only the parent has an asylum claim, as the children are too young to have their own claims. In these scenarios, if the parents were only eligible for withholding of removal or CAT, the children would be ineligible for relief. Accordingly, the agencies cannot rely on the availability of such forms of relief as the way to meet the country's international treaty obligations.

**The Proposed Rules Will Result In "Mini-Trials" in Immigration Court, Rendering it Impossible for Pro Se Litigants to Effectively Present Their Cases**

In two significant ways, the Proposed Rules require immigration adjudicators to engage in decision-making to determine whether an asylum applicant's conduct—considered independently of any criminal court adjudication—triggers a categorical bar to asylum eligibility. First, the agencies propose that immigration adjudicators be allowed to consider "all reliable evidence" to determine whether there is "reason to believe" an offense was "committed for or related to criminal gang evidence," or "in furtherance of gang-related activity," triggering ineligibility for asylum in either case.[23] Second, the Proposed Rules permit immigration adjudicators to "assess all reliable evidence in order to determine whether [a] conviction amounts to a domestic violence offense;" and to further pry into the details in order to decide whether non-adjudicated *conduct* "amounts to a covered act of battery or extreme cruelty."[24]

Requiring adjudicators to make complex determinations regarding the nature and scope of a particular conviction or, in the case of the domestic violence bar, *conduct*, will lead to judicial inefficiencies and unfair "mini-trials" within the asylum adjudication process. The scope of the "reliable evidence" available to adjudicators in asylum cases is potentially limitless; advocates on both sides would be obligated to present fulsome arguments to make their cases about gang connections to the underlying activity or the

---

[21] *See Matter of I-S- & C-S-*, 24 I.&N. Dec. 432, 434 n.3 (BIA 2008); 8 C.F.R. § 241.7.

[22] 8 C.F.R. § 208.21(a).

[23] 84 Fed Reg 69649.

[24] 84 Fed. Reg. 69652.

AR.08710



relationship of the asylum applicant to the alleged victim. Because of the lack of robust evidentiary rules in immigration proceedings, it will be difficult, if not impossible, for many applicants to rebut negative evidence marshaled against them, even if false. In other cases, asylum applicants will struggle to find evidence connected to events that may have happened years prior (especially detained applicants). Asylum trials, which are typically three or fewer hours under current policies, would provide insufficient time to fully present arguments on both sides of these unwieldy issues. Presenting such extensive evidence is particularly problematic for pro se litigants, who are already at a disadvantage, facing a trained prosecutor without representation. Pro se asylum applicants will be unable to effectively respond to endless hearsay evidence presented by government attorneys.

Furthermore, the immigration courts contend with backlogs that now exceed one million cases,[25] so tasking adjudicators with a highly nuanced, resource-intensive assessment of the connection of a conviction to gang activity and/or the domestic nature of alleged criminal conduct will prolong asylum proceedings and invariably lead to erroneous determinations, which will increase appeals. The Proposed Rules repeatedly cite increased efficiency as justification for many of the proposed changes.[26] However, requiring adjudicators to engage in mini-trials to determine the applicability of categorical criminal bars, rather than relying on adjudications obtained through the criminal legal system, will dramatically *decrease* efficiency in the asylum adjudication process.

The Supreme Court has "long deemed undesirable" exactly the type of "post hoc investigation into the facts of predicate offenses" proposed by the agencies here.[27] Instead, the federal courts have repeatedly embraced the "categorical approach" to determine the immigration consequence(s) of a criminal offense, wherein the immigration adjudicator relies on the statute of conviction as adjudicated by the criminal court system, without relitigating the nature or circumstances of the offense in immigration court.[28] As the Supreme Court has explained, this approach "promotes

---

[25] Marissa Esthimer, "Crisis in the Courts: Is the Backlogged U.S. Immigration Court System at Its Breaking Point?," *Migration Policy Institute*, October 3, 2019,
https://www.migrationpolicy.org/article/backlogged-us-immigration-courts-breaking-point.
[26] *See* Proposed Rules at 69646, 69656-8.
[27] *Moncrieffe v. Holder*, 569 U.S. 184, 186 (2013).
[28] *See Moncrieffe*, 569 U.S. at 191 ("This categorical approach has a long pedigree in our Nation's immigration law."). For a more fulsome history of the development of the categorical approach in immigration court, *see* Alina Das, "The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law," *New York University Law Review* 86, no. 6 (2011): 1689 - 1702, https://www.nyulawreview.org/wp-content/uploads/2018/08/NYULawReview-86-6-Das.pdf.

AR.08711

**JUSTICE & DIVERSITY CENTER**
OF THE BAR ASSOCIATION OF SAN FRANCISCO

judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact."[29]

**The proposed definition of "conviction" and "sentence" for the purposes of the new bars further excludes those in need of protection and Imposes Greater Burdens on Pro Se Litigants**

The Proposed Rules impose an unlawful presumption against asylum eligibility for applicants who seek post-conviction relief while in removal proceedings or longer than one year after their initial convictions. They also deny full faith and credit to state court proceedings by attributing improper motives to state court adjudicators.[30]

The Proposed Rules outline a new multi-factor process asylum adjudicators must use to determine whether a conviction or sentence remains valid for the purpose of determining asylum eligibility; the proposal includes a rebuttable presumption "against the effectiveness" of an order vacating, expunging, or modifying a conviction or sentence if the order was entered into after the asylum seeker was placed in removal proceedings or if the asylum seeker moved for the order more than one year after the date the original conviction or sentence was entered.[31]

This newly created presumption unfairly penalizes asylum applicants, many of whom may not have the opportunity to seek review of their prior criminal proceedings until applying for asylum.[32] In *Padilla v. Kentucky*, the Supreme Court recognized that the immigration consequences of a conviction are sufficiently serious for the Sixth Amendment to require a noncitizen defendant to be competently advised of them before agreeing to a guilty plea.[33] By imposing a presumption against the validity of a withdrawal or vacatur of a plea, the Proposed Rules hold asylum seekers whose rights were violated under *Padilla* to a different standard. Even though they too were denied effective assistance of counsel in the course of their underlying criminal proceedings,

---

[29] *Moncrieffe*, 569 U.S. at 200-201.

[30] *See Saleh v. Gonzales*, 495 F.3d 17, 25-26 (2d Cir. 2007) (discussing 28 U.S.C. § 1738, requiring federal courts to give full faith and credit to state acts, records, and judicial proceedings and U.S. Const. art. IV, § 1, and finding that there was no violation where the Board of Immigration Appeals stopped short of "refusing to recognize or relitigating the validity of [Saleh's] state conviction.").

[31] Proposed Rules at 69655.

[32] On page 69656 of the Proposed Rules, the Department of Homeland Security and the Department of Justice urge that "[i]t is reasonable to conclude that an alien who has a meritorious challenge to a criminal conviction based on a procedural or substantive defect is more likely to seek post-conviction relief sooner than an alien who is seeking relief on rehabilitative grounds…"

[33] *Padilla v. Kentucky*, 559 U.S. 356 (2010).

AR.08712



asylum seekers will be forced to rebut a presumption that their court-ordered withdrawal or vacatur is invalid. The Proposed Rules therefore compound the harm to immigrants who, in addition to facing persecution in their home countries, have been denied constitutionally compliant process in the United States criminal legal system.

Many of the asylum applicants, especially those in vulnerable populations isolated from resources and unfamiliar with the due process protections available to them in the United States, may not have not discovered the defects in their underlying criminal proceedings until their consultation with an immigration attorney, or until they are placed into removal proceedings, which may happen several years after a conviction. Imposing a presumption *against* the validity of a plea withdrawal or vacatur in these cases will undoubtedly lead to the wrongful exclusion of countless immigrants from asylum simply because they were unable to adequately rebut the presumption. It will place an undue burden on these applicants, particularly in a complex immigration court setting without the benefit of appointed counsel.

The Proposed Rules further improperly authorize immigration adjudicators to second-guess the order and jurisdiction of a state court, even where the order on its face cites substantive and procedural defects in the underlying proceeding. The proffered justification for this presumption against the validity of post-conviction relief is to "ensure that aliens do not have their convictions vacated or modified for purported rehabilitative purposes that are, in fact, for immigration purposes," "to codify the principle set forth in *Matter of Thomas and Thompson*," and to bring the analysis of post-conviction orders in line with *Matter of Pickering*.[34] The agencies misread the applicable law, however, by authorizing adjudicators to disregard otherwise valid state orders. The immigration law only requires that, to be effective for immigration purposes, orders vacating or modifying convictions must be based on substantive or procedural infirmities in the underlying proceedings. The Proposed Rule goes well beyond that requirement.

The Proposed Rules abandon the presumption of regularity that should accompany state court orders, thus upending settled principles of law. The Proposed Rules cite a misleading quote from *Matter of F-* in support of allowing asylum adjudicators to look beyond the face of a state court order. However, the case does not support the Proposed Rule. The Board held: "Not only the full faith and credit clause of the Federal Constitution, but familiar principles of law require the acceptance at face value of a judgment regularly granted by a competent court, unless a fatal defect is evident upon

---

[34] Proposed Rules at 69655-56 (*citing Matter of Thomas and Thompson*, 27 I.&N. Dec. 674 (A.G. 2019) and *Matter of Pickering*, 23 I.&N. Dec. 621 (BIA 2003), *rev'd on other grounds by Pickering v. Gonzales*, 465 F.3d 263, 267-70 (6th Cir. 2006)).

AR.08713



the judgment's face. However, the presumption of regularity and of jurisdiction may be overcome by extrinsic evidence or by the record itself."[35] In *Matter of F-*, the Board of Immigration Appeals offers support for the proposition that an adjudicator should presume the validity of a state court order unless there is a reason to doubt it, contrary to the *presumption of irregularity* put forward in the Proposed Rules.

The authority extended to adjudicators by the Proposed Rules also violates the law of multiple circuits, including *Pickering*, on which it relies.[36] In *Pickering v. Gonzales*, the Sixth Circuit Court of Appeals held that despite the petitioner's stated motive of avoiding negative immigration consequences, the Board of Immigration Appeals was limited to reviewing the authority of the court issuing the order as to the basis for his vacatur.[37] Similarly, in *Reyes-Torres* the Ninth Circuit Court of Appeals held that the motive of the respondent was not the relevant inquiry.[38] Rather, "the inquiry must focus on the state court's rationale for vacating the conviction."[39] In addition, the Third Circuit Court of Appeals in *Rodriguez v. U.S. Att'y Gen.*, which the Proposed Rules cite as "existing precedent," held that the adjudicator must look only to the "reasons explicitly stated in the record and may not impute an unexpressed motive for vacating a conviction."[40] Moreover, the *Rodriguez* court stated that to determine the purpose of a vacatur, the adjudicator must first look to the face of the order vacating the conviction, and "if the order explains the courts reasons ... the [adjudicator's] inquiry must end there."[41] The Proposed Rules contain no such limiting language to guide the adjudicator's inquiry. Instead, the Rules grant adjudicators vague and indefinite authority to look beyond even a facially valid vacatur. Such breadth of authority undermines asylum seekers' rights to a full and fair proceeding.

Finally, the above-described presumption is ultra vires and unnecessary. As an initial matter, the Proposed Rules' reliance on *Matter of Thomas and Thompson* is flawed. The Attorney General's decision in *Matter of Thomas and Thompson* has no justification in the text or history of the immigration statute. Nowhere does the plain text of the

---

[35] *Matter of F-*, 8 I.&N. Dec. 251, 253 (BIA 1959).

[36] *See id.* (*citing Matter of Pickering*, 23 I.&N. Dec. 621).

[37] *Pickering v. Gonzales*, 465 F.3d 263, 267-70 (6th Cir. 2006).

[38] *Reyes-Torres v. Holder*, 645 F.3d 1073, 1077-78 (9th Cir. 2011) (*citing Cardoso-Tlaseca v, Gonzales*, 460 F.3d 1102, 1107 n.3 (9th Cir. 2006) and *Pickering v. Gonzales*, 454 F.3d 525 (6th Cir. 2006), *amended and superseded by Pickering*, 465 F.3d at 263.

[39] *Id.*

[40] *Rodriguez v. U.S. Att'y Gen.*, 844 F.3d 392, 397 (3d Cir. 2006) (noting that "[T]he IJ may rely only on reasons explicitly stated in the record and may not impute an unexpressed motive for vacating a conviction.").

[41] *Id.* ("Put simply, '[w]e will not ... permit[ ] ... speculation ... about the secret motives of state judges and prosecutors,'" *quoting Pinho v. Gonzales*, 432 F.3d 193, 214-215 (3d Cir. 2005)).

AR.08714



**JUSTICE & DIVERSITY CENTER**
OF THE BAR ASSOCIATION OF SAN FRANCISCO

Immigration and Nationality Act support giving adjudicators the authority to give effect only to state court sentence modifications undertaken to rectify substantive or procedural defects in the underlying criminal proceedings. Nor does the legislative history support such a rule. The Board of Immigration Appeals recognized this in *Matter of Cota-Vargas*, where it concluded that the application of "the *Pickering* rationale to sentence modifications has no discernible basis in the language of the Act."[42] Based on the text of the Immigration and Nationality Act and the well-documented legislative history behind Congress's definition of "conviction" and "sentence" in 8 U.S.C. § 1101(a)(48), the Board determined that Congress intended to ensure that, generally, proper admissions or findings of guilt were treated as convictions for immigration purposes, even if the conviction itself was later vacated. Neither the text of the INA nor the legislative history of the definitions reveal any attempt on Congress's part to change the longstanding practice of giving effect to state court sentencing modifications. For these reasons, *Matter of Thomas and Thompson* lacks Congressional support for its rule and should not be extended.

Moreover, as applicants for immigration benefits or relief from removal, asylum seekers already bear the burden of demonstrating their eligibility for asylum.[43] By introducing a presumption of bad faith into asylum adjudication, the Proposed Rules unfairly interfere with asylum seekers' efforts to establish their claims. Immigration law, and asylum law in particular, is already highly complex, and the process of seeking asylum is often re-traumatizing, particularly for applicants who do not have counsel to represent them and who lacked effective counsel in their underlying criminal proceedings. The Proposed Rules, as applied to asylum applicants who seek post-conviction relief, transform an already difficult process into an adversarial inquiry, contrary to the intent of Congress.

**Conclusion**

The proposed rules will harm individuals, families, and communities that JDC serves—those who come to the U.S. seeking safety and security. The proposed rules eliminate asylum as a form of relief to a huge population of individuals, barring them from the protection of permanent status in the U.S. contrary to the intention of the Immigration and Nationality Act, applicable case law and international treaty obligations. Based on all the above reasons, we urge the Department of Justice and Department of Homeland Security to withdraw, not implement this rule.

*//*

---

[42] *Matter of Cota-Vargas*, 23 I.&N. Dec. 849, 852 (BIA 2005).
[43] *Matter of S-K-*, 23 I.&N. Dec. 936, 939-40 (BIA 2006).

AR.08715

**JUSTICE & DIVERSITY CENTER**

OF THE BAR ASSOCIATION OF SAN FRANCISCO

Sincerely,

Ilyce Shugall

Director, Immigrant Legal Defense Program

Justice & Diversity Center of the Bar Association of San Francisco

AR.08716

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh6-w9zc
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0213
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ny Nourn
**Address:**
    55 Columbus Avenue
    San Francisco, CA, 94111
**Email:** nyn@advancingjustice-alc.org
**Phone:** (415) 896-1701

## General Comment

I want to express my opposition to the Proposed Rules to amend regulations relating to eligibility for asylum. This proposal should not bar asylum seekers full protection because of past conviction(s), it is an inhumane practice that this administration should stop pursuing. Everyone should be eligible for asylum and to deny them protection due to their conviction(s) is to say they are undeserving to live. No one should be abandoned to persecution or torture, regardless of past mistakes. The United States should be a leading nation in protecting asylum seekers instead of discriminating immigrants.

AR.08717

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh6-9vyy
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0214
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Audrey Robert-Ramirez
**Address:**
  50 Congress St
  Ste 200
  Boston, MA, 02109
**Email:** audrey@ramirezkain.com
**Phone:** 617-545-4804

## General Comment

I oppose the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019. I represent asylum seekers in the greater Boston area with cases pending before the asylum office and immigration court. Taken together, the proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. I urge that the Proposed Rules be rescinded in their entirety. Specifically, the bars to asylum based on allegations of criminal conduct are already sweeping and over-broad in nature and scope. The existing crime bars should be narrowed, not expanded. Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed. The agencies' efforts to add seven new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel. The Proposed Rules are also arbitrary and capricious. They would constitute a marked departure from past practice. One assumption fundamentally underlying the Proposed Rules, for example, is that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. Similarly, the Proposed Rules fail to address or account for the fact that a significant number of people may agree to plead to a crime as to avoid the threat of a severe sentence; not only is a conviction an unreliable predictor of future danger, it can also be an unreliable indicator of past criminal conduct. In addition, the Proposed Rules do not address and make no exception for convictions for conduct influenced by mental illness or duress. The Proposed Rules cruelly disregard the connections between trauma and involvement in the criminal legal system. I am concerned that creating a blanket exclusion for anyone who is convicted of a crime - including a misdemeanor - that an immigration adjudicator deems linked to gang activity will erroneously prevent bona fide asylum seekers from receiving protection. This rule confers on immigration adjudicatorswho generally are not criminologists, sociologists, or criminal law expertsthe responsibility to

AR.08718

determine if there is "reason to believe" any conviction flows from activity taken in furtherance of gang activity and placed in gang databases. Such databases are notoriously inaccurate, outdated, and infected by racial bias. Relying on the definition of "particularly serious crime" to prevent asylum seekers convicted of even minor crimes construed as gang-related from accessing asylum protection is disingenuous at best, and tinged with racial animus at worst. The Proposed Rules expand the asylum bar to parents or other caregivers who are convicted of smuggling or harboring offenses after taking steps to help minor children enter the United States in order to flee persecution. This proposed bar is particularly insidious in light of now-public documents revealing this administration's explicit efforts to utilize smuggling prosecutions against parents and caregivers as part of its strategy of deterring families from seeking asylum in the United States. The Proposed Rules seek to take this widely condemned strategy one step further, by additionally barring those parents already prosecuted from obtaining asylum protections for themselves and their children. The Proposed Rules multiply the harms parents and caregivers have experienced in their treacherous journeys to safety and callously penalize parents for doing what is only humantaking all necessary steps to protect their children. The Proposed Rules would directly and effectively harm my clients, all of whom who individually and as a family would be impacted by the barriers to protection in the U.S. Survivors of domestic violence include trafficking survivors and LGBTQ community members, such that inclusion of offenses related to domestic violence in the expanded asylum bars affects populations with overlapping vulnerabilities. The Proposed Rules too broadly categorize domestic violence offenses as particularly serious and sweep both offenders and survivors into their dragnet. The blunt approach adopted by the Proposed Rules is inconsistent with the approach taken towards survivors elsewhere in the federal immigration statute and does not rely on any evidence-based justification for treating asylum seekers differently. I strongly oppose the oppressive expansion of barriers to asylum law - laws founded to protect the most vulnerable. Thank you for the opportunity to comment.

AR.08719

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh6-tj8b
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0215
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Hunter King

## General Comment

I write to express my adamant opposition to this proposed rule change. Immigrants and people of color within my community are already racially profiled and overpoliced. This rule change creates further incentive to target immigrant communities and communities of color, including those who are documented and US citizens, further eroding our justice system. I work with immigrant communities and many of my neighbors are immigrants. They live under constant fear of deportation and the double punishment of criminalization and deportation. The United States should live up to the ideals upon which we were founded and welcome and protect those fleeing violence. I urge you to withdraw this proposal and support fair and full asylum protections in the US.

AR.08720

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh7-vmvb
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0216
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Mary Kennedy
**Address:**
 1700 Fernon St
 inas Center
 Philadelphia, PA, 19145
**Email:** Sr.mkennedy@chs-adphila.org
**Phone:** 610-675-7707

---

## General Comment

I am writing to express my very strong opposition to the EOIR Propose Rule: "Procedures for Asylum and Bars to Asylum Eligibility because of the increased risk of racial profiling, and the double jeopardy asylum seekers are likely to experience.
Living and working in Philadelphia, I am acutely aware of how people of color have been convicted an imprisoned for many years, only to be found innocent of all charges due to modern forensic science.
I have lived and worked in Guatemala, in a zone of conflict from the late 80's to the mid-nineties. I know people who have been brutalized and killed because they expressed a different view from the government. Perpetrators of violence, murder, mayhem are protected whereas the innocent are victimized and killed.
Racial profiling is alive and strong here in the US and I would hate to see that attitude being strengthened by the proposed new rule. America used to be a shining example of true democracy; now we seem to be moving to a Hitler-style approach to government.

AR.08721

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh7-9q8i
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0217
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Karen Bentrup

## General Comment

I am writing from our whole family and we strongly oppose this proposed rule change.
We are a devout Christian family that firmly places the teachings of Christ in our center. The attacks by the Trump administration on all refugees, asylum seekers, and immigrants is 100% opposed to Jesus' teachings about compassion, care and kindness to others.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

And, many of the Central and South American immigrants are fleeing horrible conditions that the U.S. is DIRECTLY RESPONSIBLE for creating. We cannot, as a nation that claims to be for democracy and liberty, destroy nations and then deny their fleeing people respite.

These changes are wrong for so many reasons. Please do NOT CHANGE these rules.

AR.08722

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh7-3jns
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0218
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Caitlin Schaninger
**Address:**
  377 Santa Clara Ave
  PH2
  Oakland,  CA,  94610
**Email:** caitlin.schaninger@gmail.com
**Phone:** 4802257978

## General Comment

I am an emergency physician practicing in California and am a volunteer with UCSF's asylum clinic and have special training on how to perform medical and psychological assessments for people seeking asylum. As a physician who provides medical evaluations for people that are seeking asylum I oppose this rule. Granting asylum is and always has been discretionary and a judge can decide not to grant asylum for any reasonable cause, including those that the proposed rule states. Many of the people that I have evaluated have suffered from post-traumatic stress disorder (PTSD), depression, and/or anxiety. People who suffer from mental illness (sometimes as a result of the trauma they experienced previously) sometimes have concomitant difficulties with substance use disorders, such as alcohol or marijuana. This new proposal takes away the judge's ability to have discretion and consider a person's whole case, situation, mitigating factors, rehabilitation, trauma suffered, etc. This rule imposes more of a cookie-cutter judgement that doesn't adequately account for person-specific characteristics like judges can do now. Those who commit crimes that are dangerous to others are already barred from asylum. Adding this additional restriction would serve to unjustly exclude some people who merit further consideration. Please feel free to contact me with any questions.

AR.08723

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh8-nb5e
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0219
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Rachael Sevilla

## General Comment

As a concerned citizen and a descendant of immigrants who came to the US to escape persecution and poverty, I believe that this proposal is morally wrong and would weaken our country. It would use racial profiling as a part of the asylum process and punish people who have already dealt with mistreatment in the legal system.

Our values as human beings and as a country demand that we take care of each other, our neighbors, our community, and help those in danger who come to us for help.

For these reasons I call upon the administration to withdraw this proposal.

AR.08724

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh8-e73o
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0220
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Philip Verma

## General Comment

I am a concerned about this rule. I believe strongly that our nation must welcome people fleeing violence and do not want to see continued racial profiling in the criminal legal system affect our immigration and asylum laws. Immigrants are a vital part of my community and my state and this law would punish people convicted of low-level crimes who have already served time. As a government worker in the Richmond, California, I work with immigrant community members daily, and am concerned this rule would put many people in danger and make them more vulnerable.

AR.08725

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 16, 2020
**Tracking No.** 1k4-9eh8-vpoj
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0221
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Avik Chatterjee

## General Comment

I write to oppose the proposed rule changes punishing asylum-seekers in the US. I am a primary care physician in Boston and also volunteer doing asylum evaluations for applicants pursuing asylum in the area. The people I work with have experienced severe, almost unspeakable trauma coming from countries where freedom and justice are absent, and people can by physically attacked and even killed for their beliefs and identity. Sending asylum-seekers out of the country is potentially harmful and is definitely un-American.

On a personal note, I come from a family with a refugee background, and the presence of a country with democracy where freedom is valued is the only reason my family has survived. Please reconsider this rule change.

AR.08726

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9eh8-plz4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0222
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Donna Lucero

## General Comment

So you believe in second chances for Americans, but no second chance for refugees escaping danger in their countries! Give me a break! What has happened to the empathy in our government, as it seems to no longer exist!

AR.08727

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 16, 2020 |
| **Status:** Posted |
| **Posted:** January 17, 2020 |
| **Tracking No.** 1k4-9eh8-sq61 |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0223
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Carolyn Davidson
**Address:**
  360 Vernon St
  Apt 108
  Oakland,  94610
**Email:** carrie.m.davidson@gmail.com
**Phone:** 6035044268

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook.

The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08728

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9eh8-mhw3
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0224
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Tom Kearney

---

## General Comment

I'm writing to strongly oppose this change in rules. I believe it is our national duty to welcome those running from violence in their homes. We are a nation of immigrants and it is a disgrace to our national character to deny that. The criminal justice system is not currently a fair system, by allowing it to determine the deportation of asylum seekers we risk a death sentence for an innocent person. The refugee act of 1980 outlines our commitment to refugees and was a bipartisan piece of legislation, we cannot simply back down from our promises based on the whims of the current executive branch. Again i do not support this change without the involvement of congress. I do not support this at all.

AR.08729

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9eha-k575
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0225
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Barbara Taylor
**Address:**
 Immigrant Legal Advocacy Project
 PO Box 17917
 Portland, ME, 04112
**Email:** btaylor@ilapmaine.org
**Phone:** 2077801593

---

## General Comment

January 16, 2020

Lauren A Reid, Assistant Director
Office of Policy, E.O.I.R.
5107 Leesburg Pike suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S.C.I.S.
20 Massachusetts Ave. NW
Washington DC 20529-2140

Re: Re:84 FR 69640; EOIR Docket No. 18-0002, AG Order No. 4592-2019 RIN 1125-AA87, 1615 AC41
Comment in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

I am writing on behalf of the Immigrant Legal Advocacy Project (ILAP), Maine's only comprehensive
immigration legal service organization. We serve hundreds of low-income asylum seekers who have fled
violence in their home countries and are seeking safety and protection in Maine. ILAP wishes to convey is strong
opposition to the Proposed Rules and we ask that Departments of Homeland Security and Justice remove this
proposal and turn their attention to giving full and fair access to asylum protection to people fleeing violence in

AR.08730

their home countries. Our reasons for concern are detailed in the comments that follow.
Sincerely,


Barbara Taylor, Esq.
Senior Staff Attorney
Immigrant Legal Advocacy Project

---

# Attachments

Asylum bar

AR.08731

**DETAILED COMMENT in opposition to the Proposed Rules re: Procedures for Asylum and Bars to Asylum Eligibility, 84 FR 69640 EOIR Docket No. 18-0002, AG Order No. 4592-2019  RIN 1125-AA87, 1615-AC41**

**From: Immigrant Legal Advocacy Project**

Immigrant Legal Advocacy Project (ILAP) is the only state-wide immigration legal service provider in the State of Maine. It serves low-income Maine residents seeking help with immigration legal matters.   Each year, ILAP provides legal services to hundreds of asylum-seekers in Maine. ILAP vehemently opposes the Proposed Rules for the following reasons, among others:

**I.  Current barriers to asylum, including for those with minor criminal matters, are broad and harsh, and should not be increased.**

These barriers include the daunting burden of proof and evidence placed on those seeking asylum under our current laws, the complexity of laws and procedures faced by asylum-seekers, the lack of appointed counsel for navigating the immigration system, the current likelihood of having to do so while in detention or in another country, and dismal nation-wide percentage of people fleeing violence who are successful in their asylum bids.

Bars to asylum based on criminal conduct are likewise already sweeping and harsh. Conviction for a wide collection of offenses deemed Aggravated Felonies (and which might be neither felonies nor aggravated) are currently a mandatory bar to asylum.

A second bar to asylum, for conviction of a "Particularly Serious Crime," has been expanded by U.S. agencies and legislation beyond the definition given by the United Nations High Commissioner for Refugees.  (The UNHCR requires such a criminal bar to belong in the "gravest category" of offenses.)  The Board of Immigration Appeals has defined such crimes to include armed robbery, felony menacing with a dangerous weapon, burglary when the offender is armed or causes injury.

The Proposed Rule would bar asylum for the smallest of offenses; a second OUI conviction, or any misdemeanor suggesting certain conduct or simple possession of a controlled substance.  Such offenses do not remotely approach the standard of a Particularly Serious Crimes either in international treaties, BIA case law, or in normal public understanding of the term.

II. **Barring asylum for non-adjudicated conduct alone will turn asylum hearings into mini-trials and cause additional inefficiency, delay, and unfairness in Immigration Courts**

The Proposed Rules require asylum adjudicators to make new decisions about whether an asylum-seeker's behavior-independent of any conviction-has triggered asylum bar.  The Rules propose allowing "all reliable evidence" to be introduced in this process of determining if there was an "act" or "reason to believe" the conduct implicated gang-related matters or

AR.08732

domestic violence.  Such determinations are essentially unfair, subject to bias based on appearance or assumption, and discretionary, so non-appealable in almost every case.

Such alleged conduct may also have occurred long in the past. Under the Proposed Rules, asylum seekers will be tasked with producing evidence to refute such allegations. This kind of "post hoc investigation into the facts of predicate offenses" has long been rejected by Federal Courts, in favor of the categorical approach, which relies on analyzing statutes of conviction rather than re-litigating the alleged circumstances of past events. Among the reasons for Federal Courts' favoring the categorical approach-judicial efficiency, a factor of major concern in our backlogged, under-staffed Immigration Courts.

**III. Barring asylum for immigrants convicted of migration-related offenses punishes them for seeking safety for their families, supporting their families, and repeatedly fleeing danger and persecution.**

By expanding the bars to asylum to include offenses related to smuggling family members, harboring, re-entering to again seek asylum, and use of false documents, the Proposed Rules multiply the suffering arising from the chaotic and dangerous situation at the southern border. Those most affected will separated families, low-wage workers, and people fleeing extreme danger, any of whom may have experienced trauma, or have little understanding of the complexities of entry, smuggling or document laws. And none of whom pose a risk to the community safety.

The asylum seekers we serve in Maine include young families, unaccompanied minors, LGBTQ persons, the elderly, trafficking survivors, survivors of horrific violence and persecution. All seek to make lives here, work, attend school and build our community. We see them as assets to our community and economy and our future. ILAP seeks to promote their legal status and well-being in accordance with our complex and confusing current laws, and our over-burdened Immigration Court system.  The Proposed Rules are a huge step backward to efficiency and to the U.S. meeting its humanitarian, legal and treaty obligations to those seeking asylum in the U.S.   We urge they be withdrawn.


Sincerely,

Barbara Taylor, Esq.

Senior Staff Attorney

Immigrant Legal Advocacy Project

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9eha-d1b5
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0226
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Galileo Medrano

## General Comment

These are onerous rules concerning the granting of political asylum. There are no "safe" countries, specially in Central America" where those seeking asylum are safely detained. They are fleeing these countries in the first place because of on-going violence and poverty. I think is rather racist and inhumane to not grant asylum to people of the Americas. They are the original inhabitants of the American Continent who live under unbearable circumstances and are seeking protection and a better life for their families.

AR.08734

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9eha-vouh
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0227
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Elizabeth Clendenin
**Address:**
  99 Concord St.
  San Francisco,  94112
**Email:** beth.clendenin@gmail.com
**Phone:** 831-239-6734

## General Comment

I am writing to voice my objection to the recent moves to gut the asylum protections we have had in our immigration system. Seeking asylum is not a crime and should not be treated as such. As a proud citizen of this country I think we as a nation should open ourselves with open arms those who are fleeing violence and danger in their home countries and we should not hinder them as they hope to build a new life here. I am STRONGLY against racial profiling in the criminal justice system. Immigrants and children of immigrants are members of my community and my state. Our ideals of compassion, fairness and dignity of human rights should not be compromised by the current administration's attack on immigration.

AR.08735

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9eha-ce5o
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0228
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I oppose this rule change because it is in humane.

AR.08736

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9eha-5wgz
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0229
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Amos Lim

---

## General Comment

I strongly oppose the proposed rule change. I'm an immigrant from Singapore who has been here since 1999, 20 years ago. I oppose this rule change because I believe it would send people who's trying to escape from violence back to certain deaths and put theirs live in danger.

This proposed rule would inject racial profiling into the asylum process. It would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook.

The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

I therefore hope the proposed rule will be withdrawn.

AR.08737

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehb-noah
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0230
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

This change violates my religious obligations to help others, please do not change.

AR.08738

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehb-zq76
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0231
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

My family was refuges and I oppose this rule change.

AR.08739

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehb-edf0
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0232
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Emily Edmond
**Address:**
    Sacramento,  CA,  95814
**Email:** ejedmond@me.com
**Phone:** 3013353767

## General Comment

I am writing on behalf of myself in response to the above-referenced Proposed Rules to express my strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

I cannot find enough words to describe how negatively I feel about this, but here are some: criminal, shameful, disgusting, cruel, hateful, and many more containing curse words.

AR.08740

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 16, 2020 |
| **Status:** Posted |
| **Posted:** January 17, 2020 |
| **Tracking No.** 1k4-9ehb-zszc |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0233
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Eileen Andros
**Address:**
  187 Pinebrook Dr
  Hyde Park,  NY,  12538
**Email:** nesnurse01@gmail.com

---

## General Comment

These changes do nothing to make America safer. Asylum seekers need our protection and help not more impossible bars. These bars will exclude many asylum seekers trying to comply. Asylum denials may mean life or death to some seekers and should continue to be heard. America is a nation of immigrants, not white people and it is time to rise up and protect asylum seekers instead of constantly penalizing them.

AR.08741

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehb-ybhp
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0234
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I am writing to register my strong opposition to the new asylum restrictions proposed on December 19, 2019. I am a U.S. citizen, immigrant, and staff member at an agency serving asylees, immigrants, and refugees.

Over the years I've been with this agency, I've seen time and time again that the decision to flee one's home is not taken lightly. Deportation and asylum denials would return families to untenable and often life-threatening situations. (Situations that U.S. involvement has oftentimes had a hand in creating.)

The new asylum regulations ostensibly target asylum-seekers who've committed crimes. However, they've already paid for these crimes, IF they actually committed them. (The criminal justice system is notoriously flawed and ensnares many innocents, especially those from racial and ethnic minorities.) Why punish people further by sending them to injury and death?

This rule will not make our communities safer. It also goes against the long-standing American ideals of providing refuge to those in danger.

AR.08742

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehb-511x
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0235
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Maritza Perez
**Address:**
    1620 I Street NW, Suite 925
    Washington,  DC,  20006
**Email:** mperez@drugpolicy.org
**Phone:** 202.683.2985

## General Comment

See attached file(s)

## Attachments

NPRM re Comment Opposing New Asylum Bars

AR.08743

January 16, 2020

**We are the Drug Policy Alliance.**

Lauren Alder Reid
Assistant Director, Office of Policy
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2616
Falls Church, VA 22041

Maureen Dunn
Chief, Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services, DHS
20 Massachusetts NW
Washington, DC 20529-2140

**RE: EIOR Docket No. 18-0002**
Procedures for Asylum and Bars to Asylum Eligibility

Dear Ms. Reid and Ms. Dunn,

The Drug Policy Alliance (DPA) welcomes the opportunity to comment on the above-referenced joint notice of proposed rulemaking (NPRM) issued by the U.S. Department of Justice (DOJ) and the Department of Homeland Security (DHS). As the leading organization in the United States committed to advancing drug policies grounded in science, compassion, health and human rights, DPA advocates for the implementation of evidence-based policies and practices that address harms associated both with drug use and the stigmatization and criminalization of people who use drugs.

DPA strongly opposes this proposed rule that would allow grants of asylum to be denied to any applicants convicted of minor drug offenses, even those whose prior conviction has been expunged or modified. We are concerned by the grave implications of this rule on the most vulnerable in our society. The safety and security of refugees seeking asylum should not be predicated on their abstinence from drugs, especially at a time of such inconsistency in federal laws surrounding drug legalization. More broadly, we are troubled by the continued use of federal government machinery to perpetuate the war on drugs. Decades of unjust, ineffective, and racially discriminatory policy have led to profound harms in countless communities around the U.S., especially communities of color. The Administration could truly further public health and security, instead of just fueling stigma and punishment, by reducing the role of punishment as a response to drugs. It should instead build out access to voluntary treatment and other forms of support for those who need it, and roll back the prohibitionist policies that help to generate so much violence and corruption abroad.

We strongly oppose this proposed rule, and urge DOJ and DHS to reconsider their punitive approach to deciding grants for asylum.

Respectfully Submitted,

*Maritza Perez*

Maritza Perez
Director, National Affairs
Drug Policy Alliance

**Drug Policy Alliance | 1620 I Street NW, Suite 925, Washington, DC 20006**
**212.683.2030 voice | 202.216.0803 fax | www.drugpolicy.org**

ER-0702

AR.08744

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehb-fncd
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0236
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Jay Son-Bell

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death.
Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation. This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08745

AR.08746

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehc-8obr
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0237
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Cassie Bishop

---

## General Comment

Call to Safety has grave concerns regarding the immense harm that these changes in the proposed rule will have on immigrant survivors of domestic violence, sexual assault, and other gender-based abuses. We urge DHS and DOJ to withdraw the proposed rule in its entirety.

AR.08747

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehc-q3b8
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0238
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

When I came to the country, I fled domestic violence and experienced similar violence in the U.S. I applying for asylum and VAWA. Now, I feel like I could breathe. I feel safe to be in this country. I am grateful to be in the U.S. to see my girls grow up. I believe it is unjust to approve these proposed rules. There are people who in actuality need to stay here. What are they going to do? Die in their country? I do not approve of these rules. We must be more humane with people. We must listen to everyone and give them the opportunity to speak. I am against these proposed rules.

AR.08748

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehc-vi38
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0239
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Marie Mazzone

## General Comment

I am writing to express my opposition to this regulation which functions to bar asylum seekers based on discriminatory practices.

The concept of asylum - providing a place of refuge, sanctuary, shelter - is the soul of the United States, the beacon that has made us a great nation. I can only think we have entered a very dark and soulless period.

As a first generation American, whose parents and grandparents suffered discrimination so I could be a fully integrated American ( Italians are no longer considered black), I am appalled that legislated discrimination is eroding the country that I love.

Please do not pass this.

AR.08749

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehc-2dsh
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0240
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I am against the proposed rules. It is not fair that if the police stop you or if you have contact with law enforcement ,it will prevent you from obtaining immigration relief. Trump keeps torturing asylum seekers, we are victims of the obstacles this administration puts to get asylum. We come to fight our lives from our home country. It is an injustice that asylum is not being granted just because you have minor issues with the legal system. The proposed rules will take our dreams away. I do not support the proposed rules.

AR.08750

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehc-380u
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0241
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Gloria Martinez

## General Comment

To Whom it May Concern:

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes that our nation should welcome people fleeing violence into our communities. We should instead find these folks the correct resources they need to heal and prosper.

I believe that immigrants are a vital part of my community, my neighborhood, and my state. If it were not for my parents emigrating from Mexico to the US, I would not be here today. My parents were some of the lucky few who were able to adjust their legal status, however, there are many other folks who have been here for years and could potentially be barred from adjusting their status due to this proposed asylum rule. I oppose this proposed rule change because I believe that everyone who comes to this country, no matter how they came here, should have the opportunity to adjust their status if they can.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08751

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehc-kdti
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0242
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Jacqueline Esposito

## General Comment

I submit this comment in strong opposition to the proposed rules. As a former public defender I have represented many individuals in state court facing criminal charges. In this capacity, I have observed injustices and constitutional violations such as failure to provide adequate translation services thereby violating a defendant's right to notice of the charges against them, instances of racial profiling, unlawful searches, police abuse, and ineffective assistance of counsel. To limit an asylum seeker's ability to seek refuge in the U.S. based on contact with an unjust criminal legal system is misguided and cruel.

As a member of the bar, I strongly urge you to rescind these proposed rules.

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehd-4cl6
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0243
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Sarah Lee
**Address:** United States,

## General Comment

I write to strongly oppose the ruling on "Procedures for Asylum and Bars to Asylum Eligibility." In my job, I work with immigrants every day, including those who have former convictions and who have served their time. The people I work with are community leaders, parents, educators, and social workers who contribute immensely to the communities they are a part of. Many of my organization's clients have been pardoned by our Governor, recognizing the clear transformation that has happened in their lives.

To punish asylum seekers with this ruling harshly bars them from seeking safety, protection, and reunification with their loved ones. To subject them to deportation to countries where they have fled not only threatens their lives, but places a two-tiered system of justice for mistakes they have already served their time for. This ruling also completely ignores racial bias, harsh sentencing, and barriers to equal justice already present in our criminal legal system.

This ruling is inhumane, grossly violates due process, and should be dismissed immediately.

AR.08753

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 16, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehe-vfz4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0244
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Wallis Adams
**Address:**
   16 HOLYOKE ROAD
   Somerville, MA, 02144
**Email:** wallis.adams@gmail.com
**Phone:** 8056033607

## General Comment

I strongly oppose this proposed rule change, and am writing against it. As a PhD level sociologist, I can state with conviction that immigrants and asylum seekers are net positives for the economic and social stability and growth of our nation. Furthermore, this proposal would further institutionalize racial profiling within the already fundamentally broken and racialized criminal justice system. From a human perspective, this proposal would lead to further and unnecessary suffering and danger for marginalized individuals. I urge the Trump administration to withdraw this misinformed and unethical proposal.

AR.08754

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehi-3yv9
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0245
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Tyler R

## General Comment

I oppose the proposed rule change. The clear aim of the rule change is to further limit the grounds for asylum to otherwise eligible refugees and non-citizens. It is apparent to all that this Administration is using every avenue available to it, including executive rule changes, to bar and punish people seeking assistance and refuge in this country. It is a hate-based, ignorant worldview that gives rise to the proposed rule change. It may or may not be constitutional or authorized by the congressional grant of authority but it is nonetheless immoral and wrong. The rule should be rejected and those proposing and implementing it ashamed.

AR.08755

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9eho-w4zi
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0246
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Mary Kohrell
**Address:**
   900 Clara St
   Appleton, WI, 54915
**Email:** Mary.kohrell@gmail.com
**Phone:** 9204181062

## General Comment

I am writing in opposition to the proposed rule change.
I believe strongly that our nation must welcome people fleeing violence, and am concerned about racial profiling in the criminal legal system. Immigrants are an important part of my community, my neighborhood, and my state.

AR.08756

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** 1k4-9ehq-sdnt
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0247
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Marie Vincent

---

## General Comment

I strongly oppose this proposed rule change. I firmly believe that the United States has a moral and legal responsibility to welcome people fleeing violence, and to remedy decades of harmful racial profiling in the criminal and immigration legal systems. The U.S. must take responsibility for creating migration patterns in the Americas and beyond, and must deeply rethink its unjust criminal justice system. Until then, penalizing refugees (and other people of color, many of whom are U.S. citizen) who were caught up in the criminal justice system makes no sense and is morally wrong. As an immigrant who has lived in the U.S. for over 10 years, I am deeply concerned that this rule change would send people who fled violence back to danger and death. And as an attorney working with incarcerated migrants, I am concerned this rule would put many people who were already victimized in danger. All my clients who were accused of committing crimes were themselves victimized, usually in their childhood or adolescence, and authorities in their country of origin or the United States failed to protect them and to rehabilitate them. The U.S. should spend its resources on education, health, and restorative justice. Not on furthering a cycle of violence by criminalizing, incarcerating, and deporting underprivileged humans. I call upon the administration to withdraw this proposal.

AR.08757

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 17, 2020
**Tracking No.** k5i-d9ig-fm19
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0248
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Brittany Dixon
**Address:**
   Oakland,  CA,  94611
**Email:** brittanyjoydixon@gmail.com
**Phone:** 5305199955

---

## General Comment

To Whom it May Concern:

I am writing in response to the above-referenced Proposed Rules to express my strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

For the reasons detailed in the comments that follow, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

On December 19th, the Department of Homeland Security (DHS) and the Department of Justice (DOJ) issued a joint set of Proposed Rules that would make three primary changes to the rules governing asylum adjudications. The first proposed set of changes adds the following seven categorical bars to asylum eligibility: (1) any conviction of a felony offense; (2) any conviction for "smuggling or harboring" under 8 U.S.C. § 1324(a), even if the asylum seeker committed the offense for the purpose of bringing her own spouse, child or parent to safety; (3) any conviction for illegal reentry under 8 U.S.C. § 1326; (4) any conviction for an offense "involving criminal street gangs," with the adjudicator empowered to look to any evidence to determine applicability; (5) any second conviction for an offense involving driving while intoxicated or impaired; (6) any conviction or accusation of conduct for acts of battery involving a domestic relationship; (7) and any conviction for several newly defined categories of misdemeanor offenses, including any drug-related offense except for a first-time marijuana possession offense, any offense involving a fraudulent document, and fraud in public benefits. The second section of the Proposed Rules provides a multi-factor test for immigration adjudicators to determine whether a criminal conviction or sentence is valid for the purpose of determining asylum eligibility. The third

AR.08758

section rescinds a provision in the current rules regarding the reconsideration of discretionary asylum.

Taken together, these proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. I submit these comments to express opposition to the entirety of the Proposed Rules and grave concerns with the administration's continued efforts to exclude refugees from obtaining the security and stability the United States asylum system has long promised. I urge that the Proposed Rules be rescinded in their entirety.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate to contact me to provide further support for dismissing this proposal.

Sincerely,
Brittany J. Dixon MD, MPH
Emergency Physician

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eht-4ys9
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0249
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Ariana Thompson-Lastad, PhD
**Address:**
   Berkeley,  CA,  94710
**Email:** arianajl@gmail.com
**Phone:** 9165080502
**Organization:** Hand in Hand and UC San Francisco

---

## General Comment

I write to express my strong opposition to this proposed rule change related to asylum eligibility. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence. In addition, I am a health researcher who is concerned about racial profiling in the criminal legal system. Immigrants are my neighbors, friends, and colleagues, and a vital part of my community, neighborhood, and state.

The expanded criminal bars exclude from safety and a pathway to citizenship those convicted of offenses that are coincident to their flight from persecution, and do not accomplish the stated goal of making communities safer. They will disparately impact vulnerable populations, who comprise asylum seekers hailing primarily from Central America and the Global South, and those routinely criminalized because of their identities, racially disparate policing practices, or in connection with experiences of trafficking and domestic violence. For these populations especially, the discretion currently delegated to asylum adjudicators is crucial for them to become fully integrated in the larger community. The imposition of additional categorical bars to asylum will only further marginalize asylum seekers already struggling with trauma and discrimination, and will have negative health consequences for individuals, communities, and the nation as a whole.

The Proposed Rules turn asylum into a blunt instrument that would prevent the use of discretion where it is most needed and most effective. The existing framework for determining if an offense falls within the particularly serious crime bar already provides the latitude for asylum adjudicators to deny relief to anyone found to pose a danger to the community. Furthermore, asylees with convictions that render them inadmissible must apply for a waiver at the time of their applications for permanent residence. These measures ensure that asylum applicants in vulnerable populations have access to supportive resources and have the opportunity to demonstrate their

AR.08760

ongoing commitment to social and personal health. Moreover, the existence of provisions allowing the revocation of asylum status ensures that adjudicators may continue to enforce concerns related to the safety of the community even after asylum is granted.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08761

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eht-7dmp
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0250
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Stef Lynch
**Address:**
    1368 N. Avenue 46
    Los Angeles,  90041
**Email:** stefanie.lynch@gmail.com
**Phone:** 7032834478

---

## General Comment

We should treat others as we would like to be treated, and that applies even more to those coming to our country to seek out a better lives for themselves. What kind of a country are we without our reputation for being a refuge for those who need our help? One of our most iconic American statues literally bears the inscription of: "Give me your tired, your poor, Your huddled masses yearning to breathe free, The wretched refuse of your teeming shore, Send these, the homeless, tempest-tost to me, I lift my lamp beside the golden door!". It would be hypocritical of us to have immigration or asylum policies that do not honor these ideals of compassion, fairness, and respect for human rights. If it's important enough to put on an iconic statue it should be important enough to be upheld by our elected politicians who are supposed to represent us, and certainly should be good enough to be reflected in our policies.

I am in opposition to this rule change because it will hurt, not help, our asylum seekers and that feels un-American. Furthermore, this rule change is dependent on future interactions with an institution that needs reform in and of itself as well: the U.S. criminal legal system. Please do not allow racial profiling into the asylum process and add more obstacles for our asylum seeker to to equal justice already run rampant in the criminal legal system.

I urge you to drop this rule change and work towards implementing legislation that respects and honors the great contributions asylum seekers and immigrants make to our country. From the Economic Policy Institute: "Immigrants have an outsized role in U.S. economic output because they are disproportionately likely to be working and are concentrated among prime working ages. Indeed, despite being 13 percent of the population, immigrants comprise 16 percent of the labor force. Moreover, many immigrants are business owners. In fact, the share of immigrant workers who own small businesses is slightly higher than the comparable share among U.S.-

AR.08762

born workers. (Immigrants comprise 18 percent of small business owners.)" And that was in 2014- their contribution has only grown more since. These populations are invaluable for American to run and we should be opening our doors wider instead of making it harder for them to be productive and contributing members of our society.

AR.08763

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eht-p08d
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0251
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Sulma Arias
**Email:** kkahan@communitychange.org
**Organization:** Community Change

---

## General Comment

January 17, 2020
Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41;
Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

Dear Assistant Director Reid and Chief Dunn:

On behalf of the Fair Immigration Reform Movement (FIRM), a project of Community Change, a national organization dedicated to improving the lives of low-income people and people of color, I submit this comment strongly opposing the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

FIRM is a national grassroots coalition led by 44 member organizations across 32 states. Every day, FIRM organizations feel the crushing impact that Americas broken immigration system has on immigrant families. And every day, FIRM leaders personify and project the uplifting spirit of hope found in immigrant communities.

On December 19th, the U.S. Department of Homeland Security (DHS) and the U.S. Department of Justice (DOJ) issued a joint set of proposed rules seeking to make sweeping changes to the asylum process, dramatically limiting access to asylum eligibility. The proposed rules seek to create additional barriers to asylum on top of the extensive restrictions already in place for individuals previously involved in the criminal legal system.

The aspiration of America is that all people are created equal and that each of usno matter the color of our skin or the place of our birthdeserves equal treatment under the law. These proposed rules stand in stark contrast to those ideals.

The proposed rules would drastically limit eligibility for asylum and are the latest in a series of attempts by the

AR.08764

Trump administration to restrict immigration. Our nations immigration system should respect human dignity and protect families, but the Trump administration, through these latest proposed rules, is seeking once again to undermine these ideals. America should be a place of refuge for people fleeing violence or persecution. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet they face many unjust obstacles when they navigate our nations immigration system. The proposed rules would exacerbate these challenges by stripping adjudicators of meaningful discretion and making many more people ineligible for asylum protection.

The proposed rules strip people of their right to meaningful due process. Federal policy should promote due process not seek to undermine it. Those impacted by the proposed rules have either already served their sentences in an appallingly unjust justice system plagued by racial profiling and other obstacles to equal justice, or, in some cases, have never been convicted at all. By preventing the use of discretion in such cases the proposed rules have a chilling effect on due process. Ensuring adjudicators have discretion to grant asylum under such circumstances allows asylum seekers to have a fair day in court and guards against further injustice resulting from errors that might have occurred in the criminal legal system.

For these reasons, the Department of Homeland Security and the Department of Justice should rescind the proposed rules and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the U.S.

Sincerely,

Sulma Arias
Director of Immigrant Rights
Community Change | Fair Immigration Reform Movement

---

# Attachments

FIRM Comment on Proposed Changes to Asylum Eligibility

  

January 17, 2020

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87,
1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and
Bars to Asylum Eligibility

Dear Assistant Director Reid and Chief Dunn:

On behalf of the Fair Immigration Reform Movement (FIRM), a project of Community Change,
a national organization dedicated to improving the lives of low-income people and people of
color, I submit this comment strongly opposing the Proposed Rules to amend regulations relating
to eligibility for asylum published in the Federal Register on December 19, 2019.

FIRM is a national grassroots coalition led by 44 member organizations across 32 states. Every
day, FIRM organizations feel the crushing impact that America's broken immigration system has
on immigrant families. And every day, FIRM leaders personify and project the uplifting spirit of
hope found in immigrant communities.

On December 19th, the U.S. Department of Homeland Security (DHS) and the U.S. Department
of Justice (DOJ) issued a joint set of proposed rules seeking to make sweeping changes to the
asylum process, dramatically limiting access to asylum eligibility. The proposed rules seek to
create additional barriers to asylum – on top of the extensive restrictions already in place – for
individuals previously involved in the criminal legal system.

AR.08766

The aspiration of America is that all people are created equal and that each of us—no matter the color of our skin or the place of our birth—deserves equal treatment under the law. These proposed rules stand in stark contrast to those ideals.

**The proposed rules would drastically limit eligibility for asylum and are the latest in a series of attempts by the Trump administration to restrict immigration**. Our nation's immigration system should respect human dignity and protect families, but the Trump administration, through these latest proposed rules, is seeking once again to undermine these ideals. America should be a place of refuge for people fleeing violence or persecution. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet they face many unjust obstacles when they navigate our nation's immigration system. The proposed rules would exacerbate these challenges by stripping adjudicators of meaningful discretion and making many more people ineligible for asylum protection.

**The proposed rules strip people of their right to meaningful due process**. Federal policy should promote due process not seek to undermine it. Those impacted by the proposed rules have either already served their sentences in an appallingly unjust "justice" system plagued by racial profiling and other obstacles to equal justice, or, in some cases, have never been convicted at all. By preventing the use of discretion in such cases the proposed rules have a chilling effect on due process. Ensuring adjudicators have discretion to grant asylum under such circumstances allows asylum seekers to have a fair day in court and guards against further injustice resulting from errors that might have occurred in the criminal legal system.

For these reasons, the Department of Homeland Security and the Department of Justice should rescind the proposed rules and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the U.S.


Sincerely,

Sulma Arias
Director of Immigrant Rights
Community Change | Fair Immigration Reform Movement

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehu-2369
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0252
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

Are we part of this planet or not? Are we an actual functioning nation or a falling apart dictatorship rogue state? If we're an actual nation, we are required and morally obligated to accept refugees and asylum seekers. It's that simple.

AR.08768

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehu-82sf
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0253
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Laura Atkins

## General Comment

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08769

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehu-1jeh
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0254
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I strongly object to this proposed rule change. Our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

AR.08770

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehu-uc0i
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0255
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Elizabeth Ferguson

## General Comment

I write to express my strong opposition to this proposed rule change.

I have witnessed firsthand the trauma caused by incarcerating immigrants. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital and respected part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights.

Thank you

AR.08771

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehu-mkw9
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0256
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Alison Traina
**Address:**
   Alameda,  CA,  94501
**Email:** alison.traina@gmail.com
**Phone:** 4085293871

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08772

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehu-f8gd
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0257
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Christine Shirilla

---

## General Comment

I am writing to oppose this rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08773

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehv-pbjw
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0258
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Katheryn Simpson
**Address:**
    157 27th street
    Apt 4
    San Francisco,  CA,  94110
**Email:** Katherynsimp18@gmail.com
**Phone:** 7034057780

## General Comment

This rule change is deeply disturbing to me. As an Ashkanazi Jew, these sorts of rule changes would have made it difficult for my ancestors to be able to come to America. Asylum seekers are those fleeing horrors many of us cannot imagine. As my ancestors fled pogroms, threats to their physical safety simply because of their religious beliefs, so too are many people fleeing arbitrary violence and seeking only the opportunity for a better life.

We have failed before: when we turned our back on the St.Louis and allowed thousands of Jews to die in concentration camps. We've already created incredibly high barriers, not even allowing many refugees counsel they so desperately need to navigate this complex web. We've already made petty crimes such as shoplifting and sale of counterfeit DVDs reasons to deny people asylum.

If anything, rather than make cruel and further arbitrary rules re: asylum, we need to simplify our system. We are a country 3,000 miles wide. Surely we can have more open doors, rather than less.

With these rules in place, my family would not be able to be in this country. In fact, many of us who make and decide these rules would not be able to be here. This rule change is bad not just for asylum seekers today but the future prosperity of our nation.

AR.08774

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehv-bheb
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0259
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Sarah Marxer
**Address:**
    292 Farrelly Drive
    San Leandro,  CA,  94577
**Email:** smarxer@sbcglobal.net

---

## General Comment

I AM DEEPLY OPPOSED TO THIS PROPOSED RULE CHANGE. I am a mother, a voter, and concerned community member. I believe strongly that our nation must welcome people fleeing violence. I am deeply concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, my state, and our country.

For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system. This proposed rule would inject racial profiling into the asylum process.

We must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights.

I urge the rejection of this proposed rule change.

AR.08775

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehv-261a
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0260
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Sheila Goldmacher
**Address:**
    2341 Parker St. #8
    Berkeley,  CA,  94704
**Email:** sheinaleah@comcast.net

---

## General Comment

I am strongly opposed to bars to aslyum procedures
It is against all I hold dear as a first generation daughter of an immigrant.
It stands against long held values that our nation has held dear for many years.
To send those seeking asylum fleeing violence and abuse back into those circumstances horrifies me and makes me feel ashamed of my country's behaviors towards people that could have been me or my father.
For the above reasons I am strongly opposed to any attempt to undercut our current procedures. Shameful in my humble opinion.

AR.08776

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehv-esho
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0261
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Maureen Abell

## General Comment

This is a terrible idea. Many of these new bars - specifically the DUI, controlled substances and the (absurdly vague)"cruelty" even without any conviction - will penalize traumatized people for self-medicating or outburst in the absence of needed mental health treatment to deal with the trauma that qualifies them for asylum. Given how broadly 1324 is written (and how broadly it is occasionally interpreted by the government) this could be used to target any asylum applicant in order to make him/her ineligible.

AR.08777

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehv-7j78
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0262
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Jessica L.

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my family and community.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08778

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehv-92ou
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0263
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Alex Dillon

## General Comment

I strongly oppose this proposed rule change. As an American Jew, I am appalled that further barriers would be thrown up in the face of people fleeing violence and other desperate circumstances, as so many of my people did in the 1940s (and as so many of my people were unable to, including those on board the St. Louis, which was turned around at the American border, to our national shame). Recognizing our culpability in the past, US Law enshrines the international refugee convention in the Refugee Law of 1980, which guarantees anyone on US soil or at the border the right to apply for asylum. This is a necessary protection in our ever changing world and a fundamental human right. Doing anything to undermine it - as introducing even more racial profiling into the asylum process would do - is contrary to both universal human values and our specific heritage as Americans.

AR.08779

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehv-xaw3
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0264
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Eden Mendel

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

My family immigrated from Eastern Europe and Germany and we have lived here for almost 100 years. I am deeply concerned that this rule change would send people who fled violence back to danger and death. If my family had been sent back they would have been murdered by Nazis or Cossacks. Deportation is often a matter of life and death.

If you pass this rule, you are showing your true disregard for human life. Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

I believe we must recognize the humanity of every person and protect our neighbors from discrimination and abuse by people who have a total disregard for human life. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08780

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehv-albx
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0265
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Allegra Mautner

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence. I am strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. My mother is of Mexican descent and has been racially profiled her whole life. I do not want to encourage or sanction structural systems which further vilify her or my fellow neighbors.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in our current immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook.

The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color. We cannot continue to profit off of others' pain. We must be on the right side of history and support those who are

AR.08781

needy and looking for a new life.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them. Since our nation's inception we have been a refuge for those looking for a better life and we must continue to allow this to happen.

Over the past ten years there has been a decrease in the number of immigrants to our country from Central and South America. Life has gotten better for many and many people do not need to escape harm or poverty as they did before. However, we must allow those who are most at the margins a safe refuge. We must give up some of our privilege to those who are wanting.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08782

# PUBLIC SUBMISSION

| | |
|---|---|
| **As of:** January 22, 2020 | |
| **Received:** January 17, 2020 | |
| **Status:** Posted | |
| **Posted:** January 21, 2020 | |
| **Tracking No.** 1k4-9ehv-nd00 | |
| **Comments Due:** January 21, 2020 | |
| **Submission Type:** Web | |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0266
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

As an American citizen, voter, and taxpayer, I oppose this proposed change in rules for asylum seekers. I believe that immigrants should be welcomed into our neighborhoods, and that people seeking asylum in our country should be treated with dignity, respect, and fairness. After all, people who are seeking asylum are fleeing violent and precarious situations in their countries--it is our duty to help & support them as they flee this trauma. This rule proposes to do exactly the opposite: instead of treating asylum seekers fairly, it would poison the process with racial profiling by connecting it to previous involvement with the US criminal justice system. We know very well that racism and xenophobia in the US criminal justice system have had a terrible impact on immigrants and people of color. This rule would perpetuate that unjust legacy. Instead, we should seek to uphold the bipartisan Refugee Act of 1980, honor the UN guidelines governing the right to seek asylum, and protect the most vulnerable people who seek refuge in our country. I hope that you will reconsider this misconceived proposed change to rules and instead uphold ACTUAL American values: equality, compassion, justice, and freedom for all.

AR.08783

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehv-a5na
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0267
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Deborah Apple

---

## General Comment

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence. Immigrants are a vital part of my community, my neighborhood, and my state, and this country. All Americans are descended from immigrants, it is part of what makes this country great.
Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.
I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.
For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08784

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 17, 2020 |
| **Status:** Posted |
| **Posted:** January 21, 2020 |
| **Tracking No.** 1k4-9ehv-x50m |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0268
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Lindsay Mulcahy

## General Comment

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.
I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.
For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08785

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehw-qt2a
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0269
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Dana Bergen

## General Comment

I write to express my strong opposition to this proposed rule change.

Immigrants are a vital part of my community, my neighborhood, and my state. I believe we must welcome people fleeing violence. I am also very concerned about racial profiling in the criminal legal system.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08786

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehw-bqzp
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0270
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Patricia Bowers
**Address:**
    341 36th Ave.
    Santa Cruz,  CA,  95062
**Email:** patriciabowers2010@att.net

## General Comment

I am opposed to this proposed rule change.
I live in a county of many immigrants and see and experience the hard work and close family connections in this community.
We have prided ourselves as Americans on our open hearted welcoming of immigrants. Most of us would not be here if parents or grandparents had not made the effort to come to this country. Many came for the same reasons a hundred years ago they come today.
Make immigrants welcome here for the same reasons we have in the past. We need them and they need us.

AR.08787

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehw-reo4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0271
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Richard Henighan
**Address:**
   619 Mt. View Dr.
   Seymour, 37865
**Email:** rhenighan@igc.org
**Phone:** 8655733579

## General Comment

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public, a healthcare provider who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

This proposed rule would inject racial profiling into the asylum process. This proposed rule would punish for a second time people who've already endured mistreatment and racial profiling in the criminal legal system. This would put even more people seeking asylum at risk of danger and death. This is profoundly immoral, makes a mockery of due process, and comes right out of a racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Harsh immigration rules such as this one exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08788

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehw-ek9m
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0272
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Rachel Cloud-Holloway

---

## General Comment

I'm writing to express my strong opposition to this rule change. I'm an early childhood social worker and have worked with many families who fled to this country due to violence and poverty so deep it was lethal. I've seen families arrive in the US and have a chance to thrive and heal, while continuing to learn of suffering and death in their countries of origin. Children need education, healthcare, food, and to be safe with their families to thrive. Everyone deserves safety. I want to live in a country that values everyone, supports those looking for safety and holistic health, and responds ethically and compassionately, the way we would like to be treated. We must end abuse of immigrants, refugees, migrants. We must end racial profiling and abuse. We need safe supportive comprehensive ways for people to come to the US. Our country is better with racial, ethic, and religious diversity. Differences make us better. We must recognize the humanity of people arriving here, and not lose our own humanity by forgetting those with more resources must morally support those with less. For these reasons I ask the Trump administration to withdraw this proposal. Thank you!

AR.08789

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehw-l4uc
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0273
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Vanessa Anonymous

## General Comment

My name is Vanessa and I live in contra costa county. I am a concerned individual who does not want this rule to go into effect. I have friends and family who would be really effected by it. I don't believe that people should be deported or sent to their death because they committed a crime. I urge you to please drop this proposed rule. Thank you for your consideration

AR.08790

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehw-a718
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0274
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I write to express my adamant opposition to this proposed rule change.

As an immigrant from Australia who has lived in the U.S. for 32 years, I am deeply concerned that this rule change would send people who fled violence back to danger and death.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people who are seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.
This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.
I believe we must recognize the humanity of every person, including immigrants. We are all immigrants, or descendants of immigrants if we are not part of the Indigenous First Nations People. I believe we have a moral imperative to protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08791

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehw-hj8w
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0275
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Charlotte Jones-Carroll
**Address:**
　11 E Irving St
　Chevy Chase,  Maryland,  20815
**Email:** cjonescarroll@aol.com

---

## General Comment

I write to oppose this proposed rule change. Having read through the text, I have a grave concern that simple mistakes (driving after one drink, applying for a benefit in the innocent belief that one is eligible, etc) made by human beings who happen to have immigrated here will be used as grounds for denying asylum. Our long history of profiling people of color or "different" appearance and the costly, lengthy and hard-to-understand judicial system could easily create a situation where a person worthy of asylum is denied because he or she had an unprovoked run-in with law enforcement. Personally, I firmly believe we should be welcoming people into our country, on grounds of my faith, and as an economist who understands the key role in our economy that immigrants play. This proposed change is too draconian to be justified simply as making our society safer. The existing rules (gangs, terrorists, convicted criminals) are sufficient, more than sufficient, to be applied within the discretionary limits of US Government to asylum-seekers as "making the country safe."

AR.08792

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehw-f6bf
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0276
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Douglas Daetz
**Address:**
  1744 KARAMEOS DRIVE
  SUNNYVALE, CA, 94087
**Email:** douglas.daetz@aya.yale.edu
**Phone:** 4087384726

---

## General Comment

I STRONGLY OPPOSE YOUR PROPOSED CHANGES TO "PROCEDURES FOR ASYLUM AND BARS TO ASYLUM ELIGIBILITY.

Racial and/or ethnic profiling when considering a person's request for asylum is morally wrong and ill-advised with respect to America's well-being.

I have benefited greatly from having an immigrant wife from Germany, a late father-in-law from the Philippines, a former sister-in-law and niece from Ghana, the mother-in-law from Okinawa (Japan) of our middle son, neighbors on each side from India and from China, gardeners from Vietnam and Mexico, landscapers from El Salvador. I lived two years in Mexico and saw what hard-working people Mexicans are. I have twice visited El Salvador for 10 to 14 days each time to partner with communities there. My wife and I have traveled to over 40 countries on 6 continents and have gained knowledge and insights that have helped us understand ourselves and others. In our current highly-interconnected world, it is no time for the U.S. to have racial and/or ethnic profiling when considering a person who applies to the U.S. for asylum.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

AR.08793

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed rule by the Trump Administration would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of presidential advisor Steven Miller's racist playbook.

As a Christian, I urge you most strongly not to implement the proposed changes to "Procedures for Asylum and Bars to Asylum Eligibility" that I believe are immoral and would work to undermine America's status in the world community.

Sincerely,

Douglas Daetz
Sunnyvale, CA 94087

AR.08794

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehx-t2hu
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0277
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Lisa van Wambeck

## General Comment

I believe strongly that our nation must welcome people fleeing violence, and am strongly against racial profiling in the criminal legal system. This proposal adversely and unfairly affects immigrants, who are a vital part of my community, my neighborhood, and my state. Please rescind this proposal.

AR.08795

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehx-qkcx
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0278
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am the child of immigrants and a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

AR.08796

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehx-nq9i
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0279
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Kelly Morgen

---

## General Comment

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.
This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.
This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.
I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08797

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehx-8m9u
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0280
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Kate Voigt
**Organization:** American Immigration Lawyers Association

---

## General Comment

Dear Ms. Alder Reid and Ms. Dunn,

Please see attached for the American Immigration Lawyers Association's (AILA's) comments. In sum, AILA strongly opposes the proposed regulations. The draft regulations are overbroad and will exclude from asylum eligibility people who are not threats to public safety and who have well-founded fears of being persecuted abroad. It will keep people who have fled persecution and torture in a state of unprotected legal limbo, or far worse, return them to their life-threatening circumstances. AILA also objects to the inappropriately short 30-day comment period.

Best,
Kate Voigt
Associate Director of Government Relations
American Immigration Lawyers Association

---

## Attachments

FINAL - AILA Comments 1-17-20

AR.08798



**AMERICAN
IMMIGRATION
LAWYERS
ASSOCIATION**

January 17, 2020

Lauren Alder Reid
Assistant Director, Office of Policy
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2616
Falls Church, VA 22041

Maureen Dunn
Chief, Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
20 Massachusetts Avenue, NW
Washington, DC 20529–214

**Submitted via: www.regulations.gov**

**Re: Joint Notice of Proposed Rulemaking: Procedures for Asylum and Bars to Asylum
Eligibility (EOIR Docket No. 18–0002) (A.G. Order No. 4592–2019) (RIN 1125–AA87) (RIN
1615–AC41)[1]**

Dear Ms. Alder Reid and Ms. Dunn,

Established in 1946, the American Immigration Lawyers Association (AILA) is a voluntary bar
association of more than 15,000 attorneys and law professors practicing, researching, and teaching in the
field of immigration and nationality law. AILA's mission includes the advancement of the law pertaining
to immigration and nationality and the facilitation of justice in the field. AILA members regularly advise
and represent businesses, U.S. citizens, lawful permanent residents, and foreign nationals regarding the
application and interpretation of U.S. immigration laws. AILA and its members have extensive
experience advocating for and representing noncitizens seeking asylum and other humanitarian relief.

AILA strongly opposes the above-mentioned proposed rulemaking. The draft regulations are overbroad
and will exclude from asylum eligibility people who are not threats to public safety and who have well-
founded fears of being persecuted abroad. It will keep people who have fled persecution and torture in a
state of unprotected legal limbo, or far worse, return them to their life-threatening circumstances. AILA
also objects to the inappropriately short 30-day comment period.  This comment does not address every
one of AILA's concerns but instead focuses on the most problematic repercussions of the proposed rule.

**The Comment Period for the Proposed Rule Is Insufficient**

The 30-day comment period provided by U.S. Citizenship and Immigration Services (USCIS) and the
Executive Office for Immigration Review (EOIR) (collectively "the Agencies") is insufficient for the
public to have a meaningful opportunity to comment adequately on a proposed rule that will have a severe
impact on the availability of protection from persecution. The proposed rule is a significant change to the
regulations and will greatly restrict the ability of individuals to qualify for asylum. The rule was published
on Thursday, December 19, 2019 and comments must be submitted on or before January 21, 2020. This
comment period includes two weeks with major holidays that fall in the middle of them, when the federal

---

[1] Procedures for Asylum and Bars to Asylum Eligibility, 84 Fed. Reg. 69640 (December 19, 2019).

government is closed for three days, and when many people are on vacation and spending time with their families, further limiting the ability of interested parties to fully assess and comment on the rule.

Executive Orders require that, under most circumstances, agencies furnish public comment periods of at least 60 days. Executive Order 12866 directs that agencies generally furnish "not less than 60 days" for public comment to "afford the public a meaningful opportunity to comment on any proposed regulation." Executive Order 13563 states that "[t]o the extent feasible and permitted by law, each agency shall afford the public a meaningful opportunity to comment through the Internet on any proposed regulation, with a comment period that should generally be at least 60 days." In this case, the agencies provide no explanation why a shorter comment period of 30 days is necessary, and there is no evidence to support that the normal time period of 60 days would be inappropriate in this case. The 30-day comment period is insufficient to allow the robust, meaningful input of interested stakeholders, particularly considering the serious consequences and human costs that this proposed regulation will have, as set forth in detail below.

**The Proposed Regulations Undermine the Purpose of Our Asylum System**

The United States enacted the Refugee Act of 1980 in order to create a consistent legal framework for providing a safe haven to individuals fleeing persecution.[2] The Refugee Act of 1980 was designed to comply with the United Nations Protocol Relating to the Status of Refugees and established a "broad class" of refugees who could be granted asylum.[3] The U.S. asylum system was put in place to ensure that people are not sent back to places where they might be persecuted. These laws were enacted to ensure compliance with our international legal obligations and our moral and ethical obligations to protect those fleeing persecution.[4] While it is critical that we take measures to maintain the integrity of the U.S. asylum system, it is also essential to ensure that any potential refugee is provided a meaningful opportunity to seek protection and that bona fide refugees are not deported to be persecuted, tortured, or killed. Congress designed our current laws to provide a safe haven for asylum seekers and their immediate family members who are still in danger abroad. If an asylum claim is denied, those individuals may be killed, tortured, or subjected to grave harm after being deported.

The U.S. asylum system already has stringent eligibility criteria to asylum that balance the need to provide meaningful protection to bona fide refugees with the need to maintain the integrity of the legal system. As mentioned in the proposed regulation itself, these bars include criminal bars for those who have committed an "aggravated felony" or a "particularly serious crime." Also barred, is anyone who "ordered, incited, or otherwise participated" in the persecution of others, individuals who committed a "serious nonpolitical crime" outside the US, individuals who are a "danger to the security of the United States," individuals who have engaged in terrorist activity, individuals who apply more than one year after entry to the U.S. (with limited exceptions), individuals who can live in a safe third country, and individuals who are "firmly resettled" in another country prior to arriving in the U.S.[5] Beyond these bars to asylum eligibility, the government also has discretion to deny asylum to anyone deemed to be undeserving of protection.[6] The intention of these criteria is to protect the U.S. from those who pose a threat to public safety, and to reserve U.S. protection for those who applied promptly and who do not

---

[2] *See* Deborah Anker, "The Refugee Act of 1980: An Historical Perspective," *In Defense of the Alien* 5 (1982): 89-94, https://www.jstor.org/stable/23141008?read-now=1&refreqid=excelsior%3A1060953608aa0bdd30d5d506e1ff6318&seq=1#page_scan_tab_contents.

[3] *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987).

[4] *See* Universal Declaration of Human Rights, Article 14, December 1948, https://www.un.org/en/universal-declaration-human-rights/.

[5] *See* 84 Fed. Reg. at 69641.

[6] *See Matter of Pula*, 19 I.&N. Dec. 467 (BIA 1987).

2

AR.08800

have another safe place to go. The existing rules have properly served that purpose for decades and there is no evidence that they have failed to serve that purpose.

Overly broad restrictions like the ones being proposed in this regulation are not only superfluous, they also eviscerate the spirit and overall purpose of the U.S. asylum system by categorically refusing protection to large groups of vulnerable people who are neither a danger to the public nor a threat to U.S. national security interests, and who have no other safe and reasonable option for protection.

**The Proposed Regulations Penalize Asylum Seekers for Actions That Are the Direct Consequence of Fleeing Persecution**

The proposed rule includes several new bars to asylum eligibility for people that have been convicted of crimes that are often a byproduct of fleeing persecution and/or living in the country without status such as using false documents, illegal re-entry, and harboring. These immigration-related crimes should not block asylum seekers who have well-founded fears of persecution and torture abroad from accessing protection. To do so is to punish individuals for doing what is necessary to save their own lives and the lives of their family members.

People fleeing harm and persecution should not be held to such a harsh standard. Under the current system, asylum adjudicators have the authority to evaluate these immigration-related crimes when deciding whether to approve an asylum application. But under current law, the crimes are not an absolute bar to receiving protection. By contrast, the proposed rule would require adjudicators to deny cases categorically without allowing them discretion to look at the circumstances surrounding a case and whether a conviction was for an act that was a byproduct of fleeing persecution or living in the U.S. with no status. In effect, the bars penalize asylum seekers for seeking safety, and AILA strongly opposes them.

*Convictions for Reentry Under 8 USC § 1326*

The proposed rule would add all convictions for illegal reentry under 8 USC § 1326 as a bar to asylum eligibility. By imposing this categorical bar, the proposed rule contravenes the refugee protection provision of the INA § 208(a)(1), which states that anyone "who is physically present in the United States or who arrives in the United States . . . *whether or not at a designated port of arrival* . . . may apply for asylum" (emphasis added). The proposed rule itself acknowledges that many convictions under section 1326 *already* qualify as aggravated felonies under INA § 101(a)(43)(O), including reentry offenses committed by individuals who had previously been convicted of aggravated felonies.[7] Additionally, individuals who are convicted of an offense under section 1326 are also subject to reinstatement of a prior removal order, and, under current practice, generally already barred from applying for asylum under INA § 241(a)(5).[8] The proposed rule would broaden the bar to exclude *anyone* convicted of an offense under section 1326.[9]

---

[7] *See* 84 Fed. Reg. at 69649.
[8] *See* INA § 241(a)(5). If an individual with a prior removal order attempts to re-enter the U.S. and expresses a fear of persecution, the DHS official must refer that individual to an asylum officer for a "reasonable fear" screening with USCIS to determine whether there is a reasonable possibility of persecution or torture. *See* 8 C.F.R. §§ 208.31; 241.8(e). If an asylum officer determines that the person has a "reasonable fear of persecution or torture," the person may apply only for withholding of removal or relief under the Convention Against Torture before an immigration. *See* 8 C.F.R. §§ 208.31(e). *See also* 84 Fed. Reg. at 69649.
[9] *See* 84 Fed. Reg. at 69649.

3

AR.08801

These bars to asylum eligibility do not take into account the credible reports showing that removal orders are often issued improperly and would not withstand legal scrutiny.[10] DHS officers are required to inform individuals subject to expedited removal of their rights and refer those with a fear of return to asylum officers for credible fear interviews (CFIs).[11] These responsibilities are supposed to be carried out without harassment, intimidation, or misinformation.[12] However, multiple non-governmental and governmental reports show that DHS officers frequently neglect these responsibilities.[13] Officers routinely fail to record statements that indicate a fear of return by potential refugees and fail to refer individuals who express a fear of return for CFIs.[14] Additionally, officers have subjected individuals to harassment and misinformation, which interferes with their ability to pursue asylum.[15] Given these serious and well-documented flaws in the process, the proposed rule would essentially punish asylum seekers for the failure of DHS officers to follow the agency's own rules.

The proposed rule specifically bars people who were persecuted after their initial removal and reentry. The agencies state that this is justified because someone seeking protection "may present himself or herself at a port of entry without illegally reentering the U.S."[16] However, the Administration has implemented several deterrent policies that prevent people from doing just that.[17] For example, in a process commonly referred to as "metering," Customs and Border Protection (CBP) turns away asylum seekers who lawfully present themselves at ports of entry along the U.S. southern border, telling them

---

[10] *See* American Immigration Lawyers Association et. al, *AILA, NIJC, and Others File CRCL Complaint Reporting Serious Flaws in CBP Fear Screening* (November 2014) (reporting that CBP officers regularly fail to properly screen individuals to determine whether they have a fear of returning to their home country), *available at* https://www.aila.org/infonet/aila-nijc-and-others-file-crcl-complaint.

[11] *See id.*

[12] *See id.*

[13] *See, e.g.,* American Immigration Lawyers Association et. al, *AILA, NIJC, and Others File CRCL Complaint Reporting Serious Flaws in CBP Fear Screening* (November 2014) (reporting that CBP officers regularly fail to properly screen individuals to determine whether they have a fear of returning to their home country); Human Rights Watch, *You Don't Have Rights Here* 6 (2014) (finding that fewer than half of individuals interviewed who claimed a fear of return were referred for credible fear hearings); Amnesty International, *Facing Walls: USA and Mexico's Violations of the Rights of Asylum-Seekers* (2017) (describing CBP agents' coercion of and threats to asylum seekers, including making them recant their claims of fear on video, claiming that they cannot seek asylum without a ticket from officials in Mexico, and claiming that there is no more asylum for individuals from certain countries); American Immigration Council, *Deportations in the Dark: Lack of Process and Information in the Removal of Mexican Migrants*, 1, 2, 5, 7- 8 (Sept. 2017) (reporting that 55.7% of a survey of 600 deported Mexican migrants were not asked if they feared return to Mexico and describing numerous incidents of CBP interference with asylum claims); Human Rights First, *Crossing the Line: U.S. Border Agents Illegally Reject Asylum Seekers* (May 2017) (documenting CBP abuses towards asylum seekers, including ignoring asylum claims, providing false information— e.g., that the United States no longer provides asylum— mocking and intimidating asylum seekers, imposing procedures to deter asylum seekers from pursuing their claims, and coercing asylum seekers into giving up their claims); 2016 USCIRF Study at 20-32 (documenting examples of failure to properly screen for fear of return in CBP primary inspection interviews and noting "certain CBP officers' outright skepticism, if not hostility, toward asylum claims"); American Civil Liberties Union, *American Exile: Rapid Deportations That Bypass the Courtroom*, 4 (Dec. 2014) (reporting that 55% of 89 interviewed individuals who received summary removal orders, including expedited removal orders, were not asked about fear of persecution in language they could understand and 40% of those asked about fear were deported without CFI despite expressing fear of return).

[14] *See id*.

[15] *See id.*

[16] 84 Fed. Reg. at 69648.

[17] *See* AILA, *AILA Policy Brief: New Barriers at the Border Impede Due Process and Access to Asylum* (June 1, 2018), https://www.aila.org/infonet/policy-brief-new-barriers-at-the-border; American Immigration Council, *A Guide to Policies Affecting Asylum Seekers at the Border* (November 19, 2019), https://www.americanimmigrationcouncil.org/research/guide-policies-affecting-asylum-seekers-border.

4

they have to wait in Mexico before they can have the opportunity to claim asylum.[18] In the past two years, metering has increased both in frequency and in duration, forcing asylum seekers to wait for days, weeks, and even months in Mexico before allowing them to request asylum at the port of entry.[19] Asylum seekers subject to metering are told to put their names on increasingly lengthy waitlists – lists that are not in any way officially maintained or even controlled by the U.S. government.[20] DHS does not commit to any certain number of asylum seekers it will process in any given day, and there may be some days where no individuals are taken off the waitlist at all.[21] In fact, there is no guarantee that they will ever be taken off the lists, meaning many are left struggling to survive and are vulnerable to serious and life-threatening danger in Mexican border towns for an indefinite time period after lawfully presenting themselves at ports of entry to request asylum.[22]

The agencies have also deterred people from seeking asylum at ports of entry by implementing the Migrant Protection Protocols (MPP), a policy also known as "Remain in Mexico," which requires individuals seeking asylum at the southern border to remain in Mexico for the entire time that their U.S. removal proceedings are pending. People subject to MPP are instructed to come back to the ports of entry at specific dates and times for their next court hearings, at which time CBP transports them to either immigration courts in the border region or tent courts set up at ports of entry.[23] MPP is rife with serious due process concerns.[24] Asylum seekers subject to MPP are not asked whether they fear persecution in

---

[18] *See* Amended Complaint, *Al Otro Lado, Inc. v. Nielsen*, No. 3:17-cv-02366-BAS-KSC (S.D. Cal. 2018) (ECF No. 189); American Immigration Council, *Challenging Customs and Border Protection's Unlawful Practice of Turning Away Asylum Seekers*, https://www.americanimmigrationcouncil.org/litigation/challenging-customs-and-borderprotectionsunlawful-practice-turning-away-asylum-seekers; AILA, *AILA Policy Brief: New Barriers at the Border Impede Due Process and Access to Asylum* (June 1, 2018), https://www.aila.org/infonet/policy-brief-new-barriers-at-the-border; American Immigration Council, *A Guide to Policies Affecting Asylum Seekers at the Border* (November 19, 2019), https://www.americanimmigrationcouncil.org/research/guide-policies-affecting-asylum-seekers-border; Dara Lind, *The US has made migrants at the border wait months to apply for asylum. Now the dam is breaking.*, Vox (November 28, 2018), *available at* https://www.vox.com/2018/11/28/18089048/border-asylum-trump-metering-legally-ports; James Fredrick, *'Metering' At The Border*, NPR (June 29, 2019), *available at* https://www.npr.org/2019/06/29/737268856/metering-at-the-border; Camila DeChalus, *'Metered' immigrants face long waits at the border*, Roll Call (October 4, 2019), *available at* https://www.rollcall.com/news/congress/metered-immigrants-face-long-waits-border.

[19] *See* Camila DeChalus, *'Metered' immigrants face long waits at the border*, Roll Call (October 4, 2019), *available at* https://www.rollcall.com/news/congress/metered-immigrants-face-long-waits-border.

[20] *See* Dara Lind, *The US has made migrants at the border wait months to apply for asylum. Now the dam is breaking.*, Vox (November 28, 2018), *available at* https://www.vox.com/2018/11/28/18089048/border-asylum-trump-metering-legally-ports; American Immigration Council, *A Guide to Policies Affecting Asylum Seekers at the Border* (November 19, 2019), *available at* https://www.americanimmigrationcouncil.org/research/guide-policies-affecting-asylum-seekers-border.

[21] *See* Dara Lind, *The US has made migrants at the border wait months to apply for asylum. Now the dam is breaking.*, Vox (November 28, 2018), *available at* https://www.vox.com/2018/11/28/18089048/border-asylum-trump-metering-legally-ports.

[22] *See id.*

[23] *See* AILA, *Policy Brief: DHS and DOJ Are Opening Secretive Port Courts Along the Southern Border*, AILA Doc. No. 19090631 (September 6, 2019), *available at* https://www.aila.org/advo-media/aila-policy-briefs/aila-policy-brief-dhs-and-doj-are-opening-secret.

[24] *Congress Requests Information on the Management of the Tent Courts in Laredo and Brownsville*, AILA Doc. No. 19112537 (November 25, 2019), *available at* https://www.aila.org/advo-media/whats-happening-in-congress/congressional-updates/congress-requests-information-on-the-management; *Congress Calls on Secretary Pompeo and Acting Secretary McAleenan to End the Remain in Mexico Policy*, AILA Doc. No. 19120933 (August 27, 2019), *available at* https://www.aila.org/advo-media/whats-happening-in-congress/congressional-

AR.08803

Mexico and can be sent to locations in Mexico far from where they originally arrived at the border.[25] The program effectively denies asylum seekers their right to the tools necessary to meaningfully apply for protection, including access to counsel, witnesses, and evidence, curtailing their ability to successfully argue their case.[26] Additionally, AILA members and media reports have documented instances where there have been inaccurate and incomplete NTAs, documents falsely indicating future hearing dates, and other implementation concerns that impede asylum seekers' abilities to receive a fair and meaningful review of their claims.[27]

Both metering and MPP strand asylum seekers in dangerous parts of Mexico for weeks or months at a time without adequate access to basic life necessities like food, water, shelter, and safety. Asylum seekers are forced to stay in some of the most dangerous areas of Mexico.[28] Those waiting in Mexico frequently experience violence. The Dilley Pro Bono Project, a collaboration run by AILA and several other organizations, found that 90.3% of the 500 respondents they surveyed in January and February of 2019 said they did not feel safe in Mexico, and 46% reported that they or their child had experienced at least one type of harm while in Mexico.[29] And according to Human Rights First, there are now at least 636 public reports of rape, kidnapping, torture, and other violent attacks against asylum seekers and migrants returned to Mexico under MPP.[30] While in Mexico, asylum seekers often must stay in shelters or temporary camps set up by local nonprofit organizations with limited resources.[31] The camps have been

updates/congress-calls-on-secretary-pompeo-and-acting; *AILA Statement for House Subcommittee Hearing on Remain in Mexico*, AILA Doc. No. 19111931 (November 19, 2019), *available at* https://www.aila.org/advo-media/aila-correspondence/2019/aila-statement-for-house-subcommittee-hearing; AILA Joins Organizations and Academics to Call for End to Remain in Mexico Program, AILA Doc. No. 19111890 (November 18, 2019), *available at* https://www.aila.org/advo-media/aila-correspondence/2019/call-for-end-to-remain-in-mexico-program.

[25] Rafael Carranza, "*How Trump's 'Remain in Mexico' program affects Arizona border despite no formal policy*," Arizona Republic, October 10, 2019, https://www.azcentral.com/story/news/politics/immigration/2019/10/10/remain-mexico-program-affects-arizona-border-despite-no-formal-policy/3866006002/; American Immigration Council, *A Guide to Policies Affecting Asylum Seekers at the Border* (November 19, 2019), https://www.americanimmigrationcouncil.org/research/guide-policies-affecting-asylum-seekers-border.

[26] *AILA Sends Letter to DHS Acting Secretary Detailing MPP's Barriers to Counsel*, AILA Doc. No. 19060336 (June 3, 2019), *available at* https://www.aila.org/infonet/aila-sends-letter-to-dhs-acting-secretary-mpp

[27] *AILA Statement for House Subcommittee Hearing on Remain in Mexico*, AILA Doc. No. 19111931 (November 19, 2019), *available at* https://www.aila.org/advo-media/aila-correspondence/2019/aila-statement-for-house-subcommittee-hearing.

[28] *See* Patrick McDonnell, *Pastor's kidnapping underscores threat to migrants returned to Mexican border towns, LA Times* (September 2, 2019), *available at* https://www.latimes.com/world-nation/story/2019-09-01/kidnapping-of-pastor-in-mexican-border-town-dramatizes-threats-to-migrants. For example, Nuevo Laredo and Matamoros, two locations in Mexico where MPP-subject asylum-seekers are forced to wait, have both been designated by the U.S. State Department with a level four "Do Not Travel" warning due to high rates of crime and kidnapping. Department of State, *Mexico Travel Advisory* (April 9, 2019), *available at* https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/mexico-travel-advisory.html.

[29] *AILA and Advocates Send Letter Urging Secretary Nielsen to End the Migrant Protection Protocols Policy*, AILA Doc. No. 19020631 (February 6, 2019), *available at https://www.aila.org/advo-media/aila-correspondence/2019/aila-and-advocates-send-letter-urging-secretary. See also* Human Rights First, *Delivered to Danger: Illegal Remain in Mexico Policy Imperils Asylum Seekers' Lives and Denies Due Process* (August 2019), *available at* https://www.humanrightsfirst.org/sites/default/files/Delivered-to-Danger-August-2019%20.pdf.

[30] Human Rights First, *Human Rights Fiasco: The Trump Administration's Dangerous Asylum Returns Continue* (December 2019), *available at* https://www.humanrightsfirst.org/sites/default/files/HumanRightsFiascoDec19.pdf.

[31] *See* Patrick Timmons, *Squalid migrant shantytowns forms in Mexican border city*, May 14, 2019, *available at* https://www.upi.com/Top_News/World-News/2019/05/14/Squalid-migrant-shantytown-forms-in-Mexican-border-city/5501557701209/.

6

AR.08804

unable to keep up with the demand for housing and basic services, and conditions are deteriorating.[32] When space is full, asylum seekers are forced to find alternative housing, even though they may not speak Spanish and often do not have any local family or other ties. Many end up sleeping on the streets. Conditions for asylum seekers in these border towns are squalid and life-threatening and are worse than the conditions in many refugee camps in the world due in part to the absence of international humanitarian and UN assistance.[33]

Desperate and fearing for their lives, asylum seekers – some of whom have been convicted of illegally entering the U.S. previously – feel they have no choice but to cross the border between ports of entry in order to access safety.[34] The proposed rule would ban such people from qualifying for asylum protection. Punishing individuals subject to MPP, metering, or improper removal orders for doing what is necessary to save their life is unacceptable.

### *Convictions for Harboring*

The rule also proposes to designate all offenses involving the federal crimes of bringing in or harboring individuals under INA §274(a)(1)(A) and (2) as particularly serious crimes -- and would make any such offense a bar to asylum eligibility.[35] All crimes under that section are already considered aggravated felonies – which already bar an individual from asylum eligibility – with the one narrow exception of a first-time offense for people that were helping their spouse, child, or parent "and no other individual."[36]

The proposed rule goes further than the INA by specifically punishing family members who may be helping their loved ones flee the same persecutors they fled in their home countries. This bar would apply even to parents fleeing with their children or asylum seekers in the U.S. who help loved ones who encountered a crisis in transit after fleeing their home country. At its core, the proposed rule forces family members to choose between their loved ones remaining in danger and themselves being barred from asylum and returned to their persecutors.

### *Use of Fraudulent Documents*

The rule proposes to bar from asylum anyone who has been convicted of a federal, state, or local crime – even a misdemeanor – for the possession or use of certain fraudulent documents.[37] This proposal is deeply problematic for several reasons. First, it would bar from asylum eligibility people who used false documents to flee persecution abroad with only one narrow exception: if the asylum seekers can show

---

[32] *See id.*

[33] *See* Human Rights First, *Delivered to Danger*, available at https://www.humanrightsfirst.org/campaign/remain-mexico.

[34] Dara Lind, *The US has made migrants at the border wait months to apply for asylum. Now the dam is breaking.*, Vox (November 28, 2018), *available at* https://www.vox.com/2018/11/28/18089048/border-asylum-trump-metering-legally-ports.

[35] 84 Fed. Reg. at 69647 ("The Attorney General and the Secretary propose to designate all offenses involving the federal crimes of bringing in or harboring certain aliens pursuant to sections 274(a)(1)(A) and (2) of the INA, 8 U.S.C. 1324(a)(1)(A), (2), as particularly serious crimes and, in all events, as discrete bases for ineligibility.").

[36] INA § 101(a)(43)(N) ("except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual)").

[37] 84 Fed. Reg. at 69653 ("The Departments propose to make aliens ineligible for asylum when they are convicted of a federal, state, tribal, or local misdemeanor for the possession or use, without lawful authority, of an identification document, authentication feature, or false identification document as defined in 18 U.S.C. 1028(d).").

7

AR.08805

that the document was used to leave a country in which the person fears persecution, and if they claim a fear of persecution immediately upon arrival at a port of entry.[38]

This narrow exception goes against years of established policy and legal precedent recognizing that making false statements or using false documents should not prevent someone from being granted protection when done for the very purpose of fleeing persecution. Courts have consistently held that making false statements or using false documents should not be held against someone if their reason for doing so was connected to their flight from persecution.[39]

This narrow exception is also insufficient to prevent the return of bona fide refugees to situations of persecution and torture. Often, people fleeing persecution do not know how the U.S. asylum system works, and do not have the resources to find out before fleeing or even soon after their entry. Even if they are aware of how to ask for asylum, they may be too afraid to come forward to the first uniformed CBP official they see, especially if they were persecuted by police or other authorities in their home country. This legitimate fear makes it particularly difficult for many asylum seekers to come forward immediately and disclose sensitive information, such as the use of fraudulent documents. Moreover, if they do have the opportunity to ask for asylum at the port of entry, CBP has a history of ignoring individuals who do express a fear of persecution.[40]

There may also be other unique issues at play for asylum seekers such as psychological trauma making it difficult for them to accurately describe their situation, especially under pressure, at the port of entry. Language barriers also prevent many asylum seekers from communicating with a CBP officer at the time of entry. As a result of these obstacles and the proposed rule, many people fleeing persecution will not qualify for the exception and will be barred from asylum.

Additionally, after arriving in the U.S., asylum seekers may use fraudulent documents in order to survive by seeking work and driving.[41] DHS recently made it harder for asylum seekers to support themselves by proposing a rule that would extend the waiting period for asylum seekers to apply for work authorization from 180 days to one year.[42] DHS is also proposing to no longer grant a work permit within 30 days to asylum applicants.[43] It is already exceedingly difficult for asylum seekers, who are often indigent, to survive in the U.S. for the 180 days they are not allowed to work under the current system. They can be unable to afford legal representation, dependent on charities, or prey on people that take advantage of

---

[38] 84 Fed. Reg. at 69653 ("[T]he proposed rule would provide an exception for the bar to asylum based on convictions for use or misuse of identification documents if the alien can show that the document was presented before boarding a common carrier for the purpose of coming to the United States, that the document relates to the alien's eligibility to enter the United States, that the alien used the document to depart a country in which the alien has claimed a fear of persecution, and that the alien claimed a fear of persecution without delay upon presenting himself or herself to an immigration officer upon arrival at a United States port of entry.").

[39] See e.g., Mamouzian v. Ashcroft, 390 F. 3d 1129, 1138 (9th Circ. 2004), Edimo-Doualla v. Gonzales, 464 F.3d 276, 288-89 (2d Cir 2006); Lin v. Gonzales, 445 F.3d 127, 133-34 (2d Cir. 2006).

[40] AILA, NIJC, and Others File CRCL Complaint Reporting Serious Flaws in CBP Fear Screening, AILA Doc. No. 14111748 (November 13, 2014), available at https://www.aila.org/infonet/aila-nijc-and-others-file-crcl-complaint.

[41] While there are no doubt serious crimes that could fall under this category, the rule itself notes that many such convictions already bar individuals from being eligible for asylum. 84 Fed. Reg. at 69653 ("Aliens convicted of falsifying passports or other identity documents where the term of imprisonment is at least a year are already ineligible for asylum (unless the conduct was a first-time offense for purposes of aiding a specified family member) because such conduct constitutes an aggravated felony under 8 U.S.C. 1101(a)(43)(P).").

[42] Asylum Application, Interview, and Employment Authorization for Applicants, 84 Fed. Reg. 62374 (November 14, 2019).

[43] Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, 84 Fed. Reg. 47148 (September 9, 2019).

8

AR.08806

their vulnerability. By actively preventing asylum seekers from working while pursuing their asylum applications for longer periods of time, the government is preventing them from being able to support themselves, and then barring them from protection when they do what is necessary to survive. Again, this highly restrictive bar is unnecessary and would result in grave harms to those in danger.

**The Proposed Regulations Include Overbroad Criminal Bars**

The new proposed bars would single out asylum seekers and make them subject to the harshest criminal bars in the history of immigration law. The proposed rule expands who is barred from asylum for convictions to encompass minor offenses, such as shoplifting. The proposed rule would also bar individuals from asylum based on being charged with an offense rather than requiring conviction of a crime. As previously mentioned, asylum law already has stringent criteria for eligibility. By establishing several categorical bars to asylum, the proposed rule strips asylum adjudicators of the discretion and responsibility they have long exercised – to balance compelling equities with adverse factors.

### *Felonies*

The agencies propose to bar from asylum anyone who has been convicted of a crime designated as a felony by the relevant jurisdiction or crimes punishable by more than one year's imprisonment. Adding all felonies to the list of asylum bars will sweep in relatively minor crimes and nonviolent crimes, including, for example, shoplifting or the receipt of stolen goods.[44] The agencies justify the change by saying that "crimes with potential for longer sentences tend to indicate that the offenders who commit such crimes are greater dangers to the community."[45] However, the agencies offer no evidence that existing asylum criteria are insufficient rigorous to screen out disqualify people who may pose a danger to the public.

For example, under current law, anyone who has been convicted of a "particularly serious crime" is already ineligible for asylum, as is anyone who may pose a threat to national security.[46] The definition of a "particularly serious crime" explicitly includes all aggravated felonies.[47] Additionally, adjudicators have authority to determine that a crime is a "particularly serious crime" and that the applicant constitutes a danger to the community.[48] Even beyond these bars to asylum eligibility, the government also has discretion to deny asylum to anyone deemed to be undeserving of protection.

Additionally, under state law, what is considered a felony and what is not varies greatly. For example, in Arizona, a felony charge for shoplifting stolen goods is triggered if the goods are valued more than $1,000.[49] In Florida, on the other hand, a felony charge for shoplifting is triggered if the value of stolen goods are valued over $300.[50] In California, individuals receiving stolen property can be charged with a felony if the value of the stolen property exceeds $950.[51] In Georgia, in order for an individual to be charged with the felony of receipt of stolen goods, the goods must be valued at more than $1,500.[52]

---

[44] *See* AR Rev. Stat. § 13-1805; FL Stat. § 812.014; CA Pen. Code. § 496(a); O.C.G.A. § 16-8-7(a).
[45] 84 Fed. Reg. at 69646 ("This calculation thus reflects a recognition that crimes with the potential for longer sentences tend to indicate that the offenders who commit such crimes are greater dangers to the community.").
[46] INA §208(b)(2)(B)(i); INA §208(b)(2)(A)(iv). *See also Matter of A–H–*, 23 I&N Dec. 774, at 788-89.
[47] INA §208(b)(2)(B)(i).
[48] *See Matter of N-A-M*, 24 I&N Dec. 336 (BIA 2007); INA §208(b)(2)(A)(ii).
[49] *See* AR Rev. Stat. § 13-1805.
[50] *See* FL Stat. § 812.014.
[51] *See* CA Pen. Code. § 496(a); *People v. Land* (1994) 30 Cal.App.4th 220, 223.
[52] *See* O.C.G.A. §16-8-7(a).

9

AR.08807

Including all felonies to the list of asylum bars would create disparities between similarly situated individuals.

### Crimes "In Furtherance of Criminal Street Gang Activity"

The rule also proposes to bar from asylum anyone who has been convicted of *any crime* if an adjudicator decides there is "reason to believe" the crime was committed in furtherance of criminal street gang activity.[53] The rule does not require a conviction for a gang-related crime, as defined by federal or state law (most such crimes would already be a bar to asylum eligibility). Instead, the rule proposes that the adjudicator act as a second prosecutor and decide, without the benefit of a criminal trial and due process of law, whether a crime could have been potentially gang related.

Allowing immigration adjudicators to make this determination after the fact is a significant overreach that would turn them into prosecutor, jury, and judge. Asylum adjudicators are not experts in gang-related crimes and crime databases are notoriously inaccurate and outdated.[54] For example, one report showed that "race, gender and age significantly determine who ends up" in California's statewide gang database.[55] Any tattoos an applicant has can be misconstrued as gang tattoos by law enforcement officials without proper training, unjustly landing the applicant in a gang database. Serious crimes are already captured by current bars – the rule itself notes that some of the "relevant criminal street gang-related offenses may already constitute aggravated felonies," and already bar eligibility for asylum.[56]

### Bars Based on Alleged Conduct, Not Convictions

The rule proposes to make anyone ineligible for asylum who "engaged in acts of battery and extreme cruelty in a domestic context … regardless of whether such conduct resulted in a criminal conviction".[57] The proposed rule assumes that the mere charging of the offense renders the person guilty of these crimes. By so doing, it deprives the individual the opportunity to challenge the alleged behavior and does away with the presumption of innocence. If the criminal prosecutors thought there was sufficient evidence to charge and convict the person of an additional crime or domestic violence-based enhancement, they would have done so during a criminal trial. And, serious crimes are already captured by current bars - the

---

[53] 84 Fed. Reg. at 69649 ("Specifically, the proposed rule would cover individuals convicted of federal, state, tribal, or local crimes in cases in which the adjudicator knows or has reason to believe the crime was committed in furtherance of criminal street gang activity.").

[54] *See* Anita Chabria, *A routine police stop landed him on California's gang database. Is it racial profiling?*, La Times (May 9, 2019), *available at* https://www.latimes.com/politics/la-pol-ca-california-gang-database-calgang-criminal-justice-reform-20190509-story.html; Hannah Dreier, *He Drew His School Mascot — and ICE Labeled Him a Gang Member, Propublica* (December 27, 2018), *available at* https://features.propublica.org/ms-13-immigrant-students/huntington-school-deportations-ice-honduras/; Sarah Gonzalez, *Undocumented Teens Say They're Falsely Accused of Being In A Gang, NPR* (August 17, 2017), *available a*t https://www.npr.org/2017/08/17/544081085/teens-in-u-s-illegally-say-theyre-falsely-accused-of-being-in-a-gang.

[55] Immigrant Rights Clinic, *Mislabeled: Allegations of Gang Membership and Their Immigration Consequences, University of California*, Irvine School of Law, April 2016, www.law.uci.edu/academics/real-life-learning/clinics/ucilawirc-MislabeledReport.pdf.

[56] 84 Fed. Reg. at 69650 ("Some of the relevant criminal street gang-related offenses may already constitute aggravated felonies, such that aliens convicted of such offenses would already be ineligible for asylum.").

[57] 84 Fed. Reg. at 69651 ("the regulation would also render ineligible aliens who engaged in acts of battery and extreme cruelty in a domestic context in the United States, regardless of whether such conduct resulted in a criminal conviction.").

10

AR.08808

rule itself notes "some of the offenses described above may already render an alien ineligible for asylum."[58]

The proposed rule professes to justify barring someone for alleged conduct by saying that the asylum statute "already contemplates that individuals who engage in certain harmful behavior will be ineligible." However, in reality, the statutes only bars asylum seekers for alleged conduct in exceptional circumstances like potential terrorist activity or persecution of others.[59] In order to preserve the presumption of innocence and ensure that falsely accused asylum seekers are not unduly penalized, conduct-based asylum bars should be used only in very limited circumstances, and in this case should not be expanded. Again, the current asylum laws already allow for the denial of asylum protection for these types of crimes when appropriate and the new bars will bar protection for vulnerable individuals.

### Effect of Sentence Vacaturs, Expungements, and Modifications

The proposed rule would set restrictive limits on how sentence vacaturs, expungements, and modifications affect a person's eligibility for asylum. The regulations would allow vacated or expunged convictions to bar someone from asylum, permit an adjudicator to look at a wide range of evidence to see whether an order was issued for rehabilitative or immigration purposes, and create a presumption against the asylum applicant in certain cases.[60] It would also put the burden on the asylum seekers to show 1) that the order was not entered for rehabilitative or immigration purposes, and 2) that the court had jurisdiction to alter the order.[61] This new bar to asylum would undermine valid judicial determinations of rehabilitation that typically are the basis for vacaturs, expungements and other sentence modifications.

For over half a century, until the recent decision in *Matter of Thomas and Thompson*, the Board of Immigration Appeals has accepted "at face value ... a judgment regularly granted by a competent court, unless a fatal defect is evident upon the judgment's face."[62] Although in 1996 Congress imposed certain limitations on vacaturs of convictions, it left intact the long history of applying this principle to state court sentencing decisions and alterations.[63] Refusing to "go behind" state court sentencing judgments is necessary to ensure that immigration authorities do not deviate from their role in enforcing federal immigration law. This makes sense because allowing both parties and adjudicators to look behind and challenge facially valid state court judgments will bog down an already overwhelmed asylum adjudications process, produce inconsistent results, and prejudice *pro se* or detained applicants who cannot readily access the necessary state court documents. Additionally, board members and immigration judges do not have expertise in state criminal law, including the vagaries of state sentencing law.[64] For

---

[58] 84 Fed. Reg. at 69651 ("Some of the offenses described above may already render an alien ineligible for asylum, to the extent that a particular conviction qualifies as an aggravated felony.").

[59] INA §208(b)(2)(A)(i), (iii)–(v).

[60] 84 Fed. Reg. at 69654 ("For convictions or sentences imposed thereafter, the proposed rule would provide that (1) vacated or expunged convictions, or modified convictions or sentences, remain valid for purposes of ascertaining eligibility for asylum if courts took such action for rehabilitative or immigration purposes…").

[61] *See id.*

[62] *See Matter of Thomas and Thompson*, 27 I&N Dec. 674 (A.G. 2019). *See also AILA and Partners Submit Amicus Brief on Judicial Alteration of a Criminal Conviction or Sentence*, AILA Doc. No. 19081932 (August 2, 2019), *available at* https://www.aila.org/infonet/aila-and-partners-submit-amicus-brief-on-judicial.

[63] *See, e.g.*, *Cota-Vargas*, *23 I&N Dec*. 849, 852 (BIA 2005); *Matter of Song*, 23 I&N Dec. 173, 174 (BIA 2001).

[64] *See, e.g.*, *Alvarez-Cerriteno v. Sessions*, 899 F.3d 774, 779 (9th Cir. 2018) (observing that "the BIA has no statutory expertise in ... state law matters") (quotation omitted); *Omargharib v. Holder*, 775 F.3d 192, 196 (4th Cir. 2014) (holding that the Board has "no particular expertise" over state law) (quotation omitted); *Patel v. Holder*, 707 F.3d 77, 79 (1st Cir. 2013) (same); *Jean-Louis v. Attorney Gen. of U.S.*, 582 F.3d 462, 466 (3rd Cir. 2009) (same); *Al-Najar v. Mukasey*, 515 F.3d 708, 714 (6th Cir. 2008) (same); *Mugalli v. Ashcroft*, 258 F.3d 52, 56 (2nd Cir. 2001) (same).

11

AR.08809

this reason, the agencies are not suited to "go behind" state court sentencing decisions to determine whether they meet the requirements of state law.

**Convention Against Torture (CAT) and Withholding of Removal Are Not Adequate Substitutes**

The proposed rule states that individuals whose asylum claims are denied because of the new eligibility bars may nonetheless be able to obtain withholding of removal or deferral of removal under the Convention Against Torture (CAT).[65] These alternative forms of relief are not an adequate substitute for asylum. Withholding of removal and CAT protection are substantially more difficult to qualify for than asylum. Withholding of removal requires an applicant to demonstrate past persecution and a higher than 50% likelihood of persecution (that she is "more likely than not" to be persecuted) in her country of origin on account of a protected ground, and CAT protection requires demonstrating a more than 50% likelihood of torture.[66] In contrast, to qualify for asylum, even a 10% likelihood of persecution (a "clear probability") satisfies the individual's burden to demonstrate a well-founded fear of persecution.[67]

Individuals who manage to qualify for withholding of removal or CAT protection in the United States despite these barriers will suffer indefinite legal limbo. Under both forms of protection, the individual is first ordered removed, and then a second order is entered preventing the person's removal to the country from which they were granted protection.[68] DHS retains the authority to remove them to a third countries.[68] Moreover, they cannot obtain lawful permanent resident status and thus later apply to naturalize. They also cannot file for overseas family members to join them in the United States, leaving their families separated—and possibly at risk abroad—on a potentially permanent basis.[69] Such permanent separation directly undermines our nation's interest in safeguarding family unity.

**Conclusion**

AILA opposes the proposed regulations because they will return vulnerable individuals who deserve protection to danger and potential death. This proposed rule severely limits who is eligible for asylum protection in the U.S. Its harmful impact is compounded by several other recent agency policies that restrict asylum access including the "asylum cooperative agreements," the expansion of MPP, and an interim final rule creating a new bar to asylum for those who have transited through a third country before reaching the southern border, among other policy developments.[70] These policies are choking off access for asylum and are fundamentally undermining U.S. commitment to protect those fleeing persecution and harm. We urge the agencies to reconsider the proposed rule and withdraw it from consideration.

Sincerely,

AMERICAN IMMIGRATION LAWYERS ASSOCIATION

---

[65] 84 Fed. Reg. at 69644 ("It does not affect grants of the statutory withholding of removal or protection under the CAT regulations.").

[66] *See* 8 C.F.R. § 208.16(b), (c)(2); *see also INS v. Stevic*, 467 U.S. 407 (1984); *Matter of M-B-A*, 23 I&N Dec. 474 (BIA 2002).

[67] *See, e.g.*, *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

[68] 84 Fed. Reg. at 69642. *See also* Human Rights First, *Withholding of Removal and the U.N. Convention Against Torture—No Substitute for Asylum, Putting Refugees at Risk* (Nov. 2018), *available at* https://www.humanrightsfirst.org/sites/default/files/CAT_Withholding.pdf.

[69] *Id*.

[70] Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act, 84 Fed. Red. 63994 (November 19, 2019); Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33829 (July 16, 2019); *A Guide to Policies Affecting Asylum Seekers at the Border* (November 19, 2019), *available at* https://www.americanimmigrationcouncil.org/research/guide-policies-affecting-asylum-seekers-border.

12

AR.08810

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehx-fft2
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0281
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Gwendolyn Donaker

---

## General Comment

Dear EOIR,

As a concerned member of the public, I am writing to express my strong opposition to this proposed rule change.

Immigrants are a vital part of my community and our nation and I strongly believe that our nation must welcome people fleeing violence. Asylum should not be contingent on whether someone had an interaction with the criminal legal system, which has been proven to be highly biased and racist.

Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Sincerely,

Gwendolyn Donaker

AR.08811

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehy-r0hq
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0282
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Margaret Emslie

## General Comment

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

In the recent past, I have witnessed how this rule would put residents of Massachusetts in danger of separation from family members and deportation. Asylum is literally a matter of life and death. Vote to maintain the safeguards for immigrants as ours have been safeguarded throughout the history of the United States. Todays immigrants are tomorrow's citizens.

AR.08812

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehy-2kho
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0283
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Rhummanee Hang

## General Comment

The immigration system is already so flawed and fails to help people who are literally struggling to survive. We can not turn our backs on them. Stop criminalizing asylum!

AR.08813

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehz-5gh9
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0284
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Melanie McCrea

## General Comment

In my role as a job counselor for asylees and refugees, I worked closely with many people whose lives were in danger in their home countries and who endured great hardship to create safety for themselves and their families in the United States. If implemented, this rule change would exclude many people who are currently facing circumstances similar to those of my clients -- leading to great trauma and loss of life for vulnerable people.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. This proposed rule would inject racial profiling into the asylum process, putting lives at risk and failing to honor due process. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights.

It is our duty to support displaced people in finding safe refuge and ensuring that racial and national bias play no part in the decisions about who has access to survival.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08814

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehz-rs9o
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0285
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Angelique von Halle

---

## General Comment

I am the daughter of a US immigrant who left his home country (South Africa) in search of a better life. Before him, his father and maternal grandparents had fled their countries due to persecution in Germany & Lithuania. They survived homelessness (briefly), and prejudice (ongoing), but ultimately they found a welcoming community to which they contributed generously. My family and my grandparents were able to establish themselves as successful businesspeople in the US.
Thanks to them, I am now a property-owning mother and nurse practitioner providing care for many homeless, mentally ill youth and adults, some of whom, like my family, have fled persecution. All of them deserve love and a warm welcome and a chance at establishing themselves and contributing to their communities, something they desperately want to do, since they, like most people (and certainly most immigrants) - are inclined to "give back" and work doubly hard to demonstrate their appreciation and to create meaningful lives for themselves and their families.
I strongly oppose the rule change and encourage you to remember why and how we became a nation in the first place. Our founding fathers, while they had their flaws (slavery), also had a vision that is encumbent upon us to uphold. Please do the right thing and oppose the rule change. For the sake of humanity, please do the right thing.

AR.08815

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehz-u70s
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0286
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I work with asylum and refugee seekers everyday as a school social worker in Oakland, California. I see children traumatized by the fear their families have been through due to blackmails, threatening to kidnap, murder or seen it done to a family member and they were next. The children and families are in desperate situations and risk it all to seek the American dream. In my observations and experience, by year two the children and families are acclimated to our systems and thriving in our schools.
These policies are a danger to humanity. Its a danger to at least 3 generations in one family and it is a danger to our constitution as a nation. Physical, emotional and financial deprivation due to our policies should be recognized and punished.
Shame on us for treating people worse than our ancestors were treated who arrived to this country in the start of this nation and just as bad as the natives that were killed and/or displaced to be the America we are today.
Shame. Shame. Shame on us.

AR.08816

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ehz-1ma6
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0287
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Deborah Lelchuk

## General Comment

The proposed bars to the asylum application are unreasonable and rise to a level of cruelty that this country has never seen before.

Someone does not choose to leave their home and seek asylum lightly. The effort it takes is one of tremendous hardship.

As a Jew, and a member of HIAS and a local refugee coalition, I stand as an ally to those who seek asylum in this country and cannot stand by while this government sets up bar after bar to the rightful admission of asylum seekers.

We were strangers and we were welcomed.

AR.08817

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei0-18xo
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0288
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Bruce Mason
**Address:**
  100 Alden Street, #100
  Provincetown, MA, 02657
**Email:** brucemason78@gmail.com
**Phone:** 508.776.5958

## General Comment

"Lock em up" is being the battle cry of the executive branch - - Asylum seekers are already at risk let alone adding more rules to the game, in my opinion. The entire country, conscious or not, are feeling like "what's next?" The proposal that's being advocated changes rules to include a new group who may, or may not have had anything happen to him or her beyond racial profiling. It's all about color and hatred of immigrants (lesser than) from wherever. The entire country is feeling the increased negativity of our government's executive branch. We are caught in the administration's system of constant lying. The proposers of this proposal as well as their followers suffer in the long run from living the lie,while those who believe differently suffer from the constant backlash - wondering what is it that I can do to help bring the country back to some normalcy of positive action for the welfare of all humanity. Sadness and fear.
I know people who are here with legitimate working papers etc just waiting for the next shoe to drop. It carries over to all of as as this law is expanded - especially to people of Color. The whole country lives in sharp fear, even though many do not realize it. What are we doing? We should be refuge - not a holding tank, a prison, or a fast train to a county where his or her life is in danger.
What we are doing is an insult to humanity. Please do not support this proposal. Thank you.
Sincerely, Bruce Mason

AR.08818

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei0-n0qc
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0289
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of Oakland, California and I am an immigrant. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

Every person has the right to immigrate to the United States and ask for asylum in order to reincorporate themselves into the society of the United States. Just as we demand that foreign countries respect us, we too need to be an example.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Thank you for resolving this issue.

AR.08819

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei0-iim6
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0290
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of San Francisco, California and I am an immigrant. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

Please liberate the families!

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Thank you for resolving this issue.

AR.08820

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei0-y0lj
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0291
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of San Francisco, California and I am an asylum seeker. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

Families cannot be separated because this affects more than anyone, the children, who have suffered the most. Furthermore, we have come escaping from our countries of origin with our children in order to give them a better future and a quality education that is very difficult in our countries for many reasons.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Thank you for resolving this issue.

AR.08821

AR.08822

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei0-sond
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0292
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of San Francisco, California and I am an immigrant. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I do not agree with deportation. It is not appropriate to separate children from their parents. We come to this country in search of protection that we don't have in our countries. We fled from violence, a lack of work and a lack of education. Children and their parents should not be separated.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Thank you for resolving this issue.

AR.08823

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 22, 2020 |
| **Received:** January 17, 2020 |
| **Status:** Posted |
| **Posted:** January 21, 2020 |
| **Tracking No.** 1k4-9ei0-ntku |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0293
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** La Raza Centro Legal

## General Comment

I am a resident of San Francisco, California and I am an asylum seeker. I am writing to express my concern and opinion relating to the Department of Homeland Security's proposed rule change on "Procedures for Asylum and Bars to Asylum Eligibility."

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I think the decision would be very bad to pass this law because I am an immigrant and we all have rights and should be respected and supported with all of the protection that can be permitted.

I urge the Administration to withdraw the proposed "Procedures for Asylum and Bars to Asylum Eligibility," which would drastically undermine our community and go against our values. I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

Thank you for resolving this issue.

AR.08824

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei1-ic18
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0294
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Caitlin Miller
**Address:**
    3066 Kansas st
    Oakland,  CA,  94602
**Email:** caitlin421@gmail.com

## General Comment

To Whom it May Concern:
I write to express my strong opposition to this proposed rule change.
As a nurse midwife I have worked extensively with immigrant women fleeing violence and I believe strongly that our nation must welcome people who seek this type of refuge. I have also seen the negative health effects of racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.
Deportation is often a matter of life and death.

Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.
This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.
This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.
I believe we must recognizeabuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.
For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08825

AR.08826

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei2-632q
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0295
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Nicole Shelby

## General Comment

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state, and we as a country have a duty to provide safe haven for those seeking refuge. We must not allow this racist administration to endanger the lives of our non-white brothers and sisters who only want a better life for themselves and their families.

AR.08827

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei2-ck9e
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0296
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ben Keller

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral and makes a mockery of due process.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08828

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei2-2imy
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0297
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** John zhao

## General Comment

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. As a son of parents who fled China due to political unrest, I empathize with people all over the world who are simply trying to find a safe place to live. We should not be punishing such people, but rather we should welcome them into our nation.

AR.08829

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei2-g1p8
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0298
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Elsa Stevens
**Address:**
   3801 Lakeside Drive
   Apt. B203
   Richmond, CA, 94806
**Email:** CubanElsa@SBCglobal.net
**Phone:** 7073309434

## General Comment

I came to this country as a Cuban refugee in 1960. This country KNOWS HOW TO ROLL OUT THE RED CARPET! All refugees should be as welcomed as we first wave Cubans were. Anything less is shameful.

AR.08830

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei2-48nn
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0299
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Kathy L

## General Comment

I'm commenting to oppose this proposal to further restrict asylum based on contact with the US criminal justice system. Investigation after investigation shows that our criminal justice system is biased against the poor, the non-white, and non-mainstream people. Just this month, another investigation shows that California police are more likely to stop non-white automobile drivers, and when they do stop them, the police interact with them in a more invasive manner. (Article: https://www.sfgate.com/news/crime/article/Report-California-cops-more-likely-to-stop-black-14945942.php). This makes any proposal based on refusing asylum based on contact with our unfair criminal justice system itself unfair, inhumane, and wrong. Please do not spread the lack of fairness of our criminal justice system into our noble process of granting asylum to fellow humans.

AR.08831

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei3-xkgw
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0300
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Andrea Jones
**Email:** atelinetail@gmail.com

---

## General Comment

I am against all of the proposed rules. Our country is a nation of immigrants and we need to help our neighbors in trouble and take them in when they seek asylum. We should be making it easier for them to come here and join our country and communities, and not making it more difficult. These people come here because they are in danger and want to protect themselves and their families. They stand a good chance of dying if we send them back. Even if these people aren't perfect and may have marks on their records, they deserve to be heard and have a chance for asylum. They deserve better than horrible restrictive rules like these.

AR.08832

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei3-qaqe
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0301
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Anonymous Anonymous
**Address:**
   606 E. 22nd Street
   Oakland,  CA,  94606
**Phone:** 5035020979

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a public school teacher who has worked with recently arrived immigrants since 2010. My students came from all over the world, but primarily Mexico and Central America, China, Yemen, the Philippines, and then a few students at a time from many other countries. In my second year of teaching, it became clear in one of my classes that we needed to discuss WHY some students were here "legally," others "illegally" and - my Chinese students particularly wanted to know - why if it was illegal to come, would you come anyway? They truly did not understand, and insisted that "rules are rules." I asked students to first prepare their answers of what pulled and/or pushed them to come to the United States, then we sat in a circle, and shared. That was the first time I heard a horrific story of violence from one of my Honduran students, who had been granted asylum status, but it would certainly not be my last. He calmly told all of us that day that he did not want to leave Honduras. He loved his family, his community, his friends, his school. His older sister was studying to be a nurse, and he wanted to enter the health profession. But it was becoming increasingly difficult to live. He was stopped and robbed several different times by gangs on the way to school, leading him to avoid school. He was often mistaken for a gang member by local police (who were connected to another gang) and had been taken into custody twice. By the time he was 12 he knew three kids in his neighborhood who had been killed by gangs. The threats to boys who would not join gangs were increasing. And then the last straw came when two of his cousins - not gang members - were found cut into pieces and placed around the neighborhood. This boy was 15 years old. He had seen all of that. And then he left his mother to travel alone to the United States to escape - in order to NOT join a gang, or be killed by one.

What if this student (and there are countless others - I personally have taught probably a hundred of them) were subject to this new rule, and - due to the notoriously problematic systems used to identify who may be a

AR.08833

'criminal' - he was deemed to be associated with a gang and turned away? Or what if he had been caught experimenting with a drug? Or supporting his family be selling pirated DVDs (which is so common)? There are so many ways these rule changes could affect innocent, harmless, hard-working, wonderful individuals who desperately need asylum.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08834

# PUBLIC SUBMISSION

**As of:** January 22, 2020
**Received:** January 17, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei4-31vx
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0302
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Amber Anonymous

## General Comment

I am writing to express my strong opposition to this proposed rule change.

As a public health researcher and advocate, I understand deeply how important just immigration policy is to the health and well-being of immigrant, refugee, and asylee communities. Research shows that incarceration and deportation both are harmful to physical and emotional health.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral and makes a mockery of due process.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08835

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ei8-26iv
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0303
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Benjamin Kersten
**Address:**
   1000 Palm Ave. #21
   West Hollywood, CA, 90069
**Email:** benkersten1993@gmail.com
**Phone:** 3122133247

## General Comment

I am writing because I oppose the Proposed Rules issued on December 19th by the Department of Homeland Security U.S. Citizenship and Immigration Services (USCIS) and the Department of Justice Executive Office for Immigration Review (EOIR). As a Jewish resident of Los Angeles County, immigration is integral to my family history and to the vibrant community in which I live. In addition, I am concerned about racial profiling in the criminal justice system and how this would affect the immigration process. The United States should offer refuge to those seeking asylum, and the Refugee Act of 1980 aimed to ensure they would be able to find safety. We know that the criminal justice system in the United States is deeply flawed, and so threatening those who have already encountered the system with deportation will ultimately affect people of color, sentencing them again to danger. I believe we need to uphold ideals of compassion and care and realize that we can provide. I thus call upon the Trump administration to withdraw these Proposed Rules.

AR.08836

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eid-af3e
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0304
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Andrew Bahr
**Address:**
    14416 Jefferson Davis highway Ate. 12
    Woodbridge,  VA,  22191
**Email:** drew@lawofficehh.com
**Phone:** 5714927484

---

## General Comment

I oppose the proposed rule changes because they would be cruel to American citizen children, would violate the spirit of America's international obligations under the 1951 UN Refugee Convention, and would be ineffective at increasing public safety.

Asylum, unlike withholding of removal, allows for derivative beneficiaries in the United States to gain status as well as for derivatives to follow to join their relatives in the United States. As an immigration lawyer, I have seen many cases in which a couple's children born in the United States (Le American citizen children) would lose one of their parents to removal under the proposed rule changes because one spouse does not have a legally cognizable particular social group while the first spouse does.

The effect of this proposed rule change would therefore be to deport fathers and mothers from the United States and rip apart American families because of a single DUI conviction or a single fight at home, a result which is clearly not in the best interests of these children. The American-born children of these mothers and fathers would have less financial support and be more likely to depend on government aid in addition to being traumatized by the (likely permanent) loss of a parent in their lives under the proposed rule changes.

Second, the proposed rule changes would also violate the spirit of America's international obligations under the 1951 UN refugee convention, which states under Article I that asylum will not be granted to persons who have "committed a crime against peace, a war crime, or a crime against humanity, as defined in the international instruments drawn up to make provision in respect of such crimes." While the 1951 Convention does not specifically prohibit the proposed rule changes, these changes are certainly outside the scope of the crimes against peace, war crimes, and crimes against humanity mentioned in the Convention and therefore weaken

AR.08837

America's international reputation as a country that upholds its promises in spirit as well as in fact.

Lastly, the proposed rule changes would be ineffective at increasing public safety because withholding of removal, unlike asylum, cannot be denied under discretionary rules. Withholding of removal, like asylum, grants indefinite stay in the United States. The effect of the proposed rule changes, therefore, is to punish the families of perpetrators and not the perpetrators themselves.

On behalf of myself, my asylum-seeking friends, and my clients please do not adopt this proposed rule.

AR.08838

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eie-lz74
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0305
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Camille Mackler

---

## General Comment

The NYIC, through its members, has made a strong commitment to asylum seekers living within our state. In particular, we organize and lead the regular stakeholder meetings with the two local asylum offices, often act as a connector for asylum-seekers and legal services, and at times, such as when the Department of Homeland Security (DHS) transferred hundreds of asylum seekers from the Southern Border to facilities in and around New York State, have helped organize volunteer efforts to provide services within the jails.

For the reasons detailed in the comments that are attached, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Please see attached document for full comments

---

## Attachments

NYIC Comments re_ Asylum Changes

AR.08839



Submitted via [https://www.regulations.gov/document?D=EOIR-2019-0005-0001]

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

January 18, 2020

I am writing on behalf of the New York Immigration Coalition in response to the above-referenced Proposed Rules to express my/our strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

The New York Immigration Coalition (NYIC) is an umbrella policy and advocacy organization for more than 200 groups in New York State. We envision a New York State that is stronger because all people are welcome, treated fairly, and given the chance to pursue their dreams. Our mission is to unite immigrants, members & allies so all New Yorkers can thrive. We represent the collective interests of New York's diverse immigrant communities and organizations and devise solutions to advance them; advocate for laws, policies and programs that lead to justice and opportunity for all immigrant groups; and build the power of immigrants and the organizations that serve them to ensure their sustainability, to improve people's lives, and to strengthen our state. Founded in 1987, the NYIC has a long history of leading collaborative efforts including in health access, education, immigration advocacy, and civic engagement.

The NYIC, through its members, has made a strong commitment to asylum seekers living within our state. In particular, we organize and lead the regular stakeholder meetings with the two local asylum offices, often act as a connector for asylum-seekers and legal services,

**New York Immigration Coalition**
131 W 33rd St. Fl 6
New York, NY 10001
212 627 2227
nyic.org

AR.08840



and at times, such as when the Department of Homeland Security (DHS) transferred hundreds of asylum seekers from the Southern Border to facilities in and around New York State, have helped organize volunteer efforts to provide services within the jails.

For the reasons detailed in the comments that follow, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate to contact Camille Mackler at cmackler@nyic.org to provide further information.

Sincerely,
Camille Mackler, Esq.
Director of Immigration Legal Policy

**Introduction**

On December 19th, the Department of Homeland Security (DHS) and the Department of Justice (DOJ) issued a joint set of Proposed Rules that would make three primary changes to the rules governing asylum adjudications. New York State, particularly the more rural communities upstate, have been revitalized and have reversed economic downturns because of the settlement of asylees and refugees. New York City has a proud history of welcoming and acting as a refuge for those fleeing persecution. In turns, asylees have made countless economic and cultural to help our state thrive. In the last few years, we have grown concerned at the growing attempts to turn those seeking protection away from our country and our state.

The first proposed set of changes adds the following seven categorical bars to asylum eligibility: (1) any conviction of a felony offense; (2) any conviction for "smuggling or harboring" under 8 U.S.C. § 1324(a), even if the asylum seeker committed the offense for the purpose of bringing her own spouse, child or parent to safety; (3) any conviction for illegal reentry under 8 U.S.C. § 1326; (4) any conviction for an offense "involving criminal street gangs," with the adjudicator empowered to look to any evidence to determine applicability; (5) any second conviction for an offense involving driving while intoxicated or impaired; (6) any conviction or accusation of conduct for acts of battery involving a domestic relationship; (7) and any conviction for several newly defined categories of misdemeanor offenses, including any drug-related offense except for a first-time marijuana possession offense, any offense involving a fraudulent document, and fraud in public benefits.



The second section of the Proposed Rules provides a multi-factor test for immigration adjudicators to determine whether a criminal conviction or sentence is valid for the purpose of determining asylum eligibility. The third section rescinds a provision in the current rules regarding the reconsideration of discretionary asylum.

Taken together, these proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. [Insert organization name here] submits these comments to express opposition to the entirety of the Proposed Rules and grave concerns with the administration's continued efforts to exclude refugees from obtaining the security and stability the United States asylum system has long promised. We urge that the Proposed Rules be rescinded in their entirety.

**The Proposed Rules will result in racially-biased decision-making while undermining judicial independence and efficiency**

The NYIC is particularly concerned with the broad authority the proposed rule would give adjudicators to review purported evidence of gang activity. The NYIC has extensively researched the manner in which gang allegations are made in immigration proceedings and has found a pattern of behavior by the Department of Homeland Security (DHS) in making unsubstantiated gang allegations without giving Respondents a meaningful opportunity to rebut.[1]

In the rule, the agencies propose that immigration adjudicators be allowed to consider "all reliable evidence" to determine whether there is "reason to believe" an offense was "committed for or related to criminal gang evidence," or "in furtherance of gang-related activity, triggering ineligibility for asylum in either case.

Requiring adjudicators to make complex determinations regarding the nature and scope of a particular conviction will lead to massive judicial inefficiencies and slanted "mini-trials" within the asylum adjudication process. The scope of the "reliable evidence" available to adjudicators in asylum cases is potentially limitless; advocates on both sides would be obligated to present fulsome arguments to make their cases about gang connections to the underlying activity or the relationship of the asylum applicant to the alleged victim. Because of the lack of robust evidentiary rules in immigration proceedings, it will be difficult if not impossible for many applicants to rebut negative evidence marshaled against them, even if

---

[1] New York Immigration Coalition and New York Civil Liberties Union, "Stuck with Suspicion: How Vague Gang Allegations Impact Relief and Bond for Immigrant New Yorkers," (February 13, 2019) available at
https://thenyic.pi.bypronto.com/2/wp-content/uploads/sites/2/2019/02/020819-NYCLU-NYIC-Report.pdf



false; and in other cases, asylum applicants will struggle to find evidence connected to events that may have happened years prior (especially for those detained). Asylum trials, which are typically three or fewer hours under current policies, would provide insufficient time to fully present arguments on both sides of these unwieldy issues.

This is particularly true as the nearly 1,000 pages of documents examined by the NYIC and the New York Civil Liberties Union in our report "Stuck With Suspicion," referenced above, showed that gang evidence entered by DHS usually relied on internal memorandum written by the same agency claiming an individual was a gang member or affiliate, without producing more specific evidence or timeline of activity that led to the classification. In effect, the evidence presented by DHS to label an individual a gang member or affiliate are mainly premised on internal documents by DHS saying the individual is a gang member or affiliate, without any explanation as to why. Nonetheless, given the extraordinary deference given to DHS evidence by asylum officers, who are also DHS employees, and immigration judges, who work for a sister agency, the burden placed on Respondents to prove a negative is enormous. To give greater access and legitimacy to these types of evidentiary submissions will result in countless asylum seekers being denied protection and returned to countries where they face certain harm, contrary to the US Government's obligations under international law.

The Departments curiously argue that all gang-related offenses should be construed as "particularly serious crimes." They cite statistics from up to 16 years ago in an attempt to make the point that gang members commit violent crimes and drug crimes. They then make the illogical leap to the conclusion that all crimes—including misdemeanor property crimes—that may be construed as connected to gang activity are particularly serious. This simply does not follow; in fact, the Proposed Rules will inevitably result in the exclusion from protection of asylum seekers of color who live in economically distressed communities and have obtained a minor conviction such as a property crime. Relying on the definition of "particularly serious crime" to prevent asylum seekers convicted of even minor crimes construed as gang-related from accessing asylum protection is disingenuous at best, and tinged with racial animus at worst.

The Departments asks for comments on: (1) what should be considered a sufficient link between an asylum seeker's underlying conviction and the gang related activity in order to trigger the application of the proposed bar, and (2) any other regulatory approaches to defining the type of gang-related activities that should render individuals ineligible for asylum. The premise of these questions is wrong: a vague "gang related" bar should not be introduced at all. The Immigration and Nationality Act and existing regulations already provide overly broad bars to asylum where criminal behavior by an asylum seeker causes concern by an adjudicator. Adding this additional, superfluous layer of complication risks



erroneously excluding bona fide asylum seekers from protection without adding any useful adjudicatory tool to the process.

Finally, as the immigration courts contend with backlogs that now exceed one million cases, tasking adjudicators with a highly nuanced, resource-intensive assessment of the connection of a conviction to gang activity of alleged criminal conduct—assessments far outside their areas of expertise—will prolong asylum proceedings and invariably lead to erroneous determinations that will give rise to an increase in appeals. The Proposed Rules repeatedly cite increased efficiency as justification for many of the proposed changes. Yet requiring adjudicators to engage in mini-trials to determine the applicability of categorical criminal bars, rather than relying on adjudications obtained through the criminal legal system, will dramatically decrease efficiency in the asylum adjudication process.

Indeed, the Supreme Court has "long deemed undesirable" exactly the type of "post hoc investigation into the facts of predicate offenses" proposed by the agencies here. Instead, for more than a century the federal courts have repeatedly embraced the "categorical approach" to determine the immigration consequence(s) of a criminal offense, wherein the immigration adjudicator relies on the statute of conviction as adjudicated by the criminal court system, without relitigating the nature or circumstances of the offense in immigration court. As the Supreme Court has explained, this approach "promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." In Moncrieffe v. Holder, the Court forewarned of exactly the sort of harm that would arise from these Proposed Rules; in that case, the Court rejected the government's proposal that immigration adjudicators determine the nature and amount of remuneration involved in a marijuana-related conviction, noting that "our Nation's overburdened immigration courts" would end up weighing evidence "from, for example, the friend of a noncitizen" or the "local police officer who recalls to the contrary," with the end result a disparity of outcomes depending on the whims of the individual immigration judge and a further burdened court system.

**The Proposed Rules unnecessarily and cruelly exclude bona fide refugees from asylum eligibility**

*The barriers to asylum for those previously involved in the criminal legal system are already sweeping in scope; adding more barriers is cruel and unnecessary.*

The laws, regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the evidentiary burden of establishing their eligibility for asylum in the face of a complex web of laws and regulations, without the benefit of appointed counsel and often from a remote immigration jail. The obstacles to winning asylum are



exceedingly high; indeed in some parts of the country and before certain immigration judges, almost no one succeeds. Today, newly imposed barriers to accessing asylum in the United States are breathtaking in scope, with those seeking safety at the southern border subject to return to dangerous conditions in Mexico and an overlapping web of policies that preclude asylum eligibility for countless migrants simply because of their national origin, manner of entry, or their flight path. There are consistent reports of the documented deaths and brutalities endured by those who sought but were denied asylum protections in the United States.

Specifically, the bars to asylum based on allegations of criminal conduct are already sweeping and over-broad in nature and scope. Any conviction for an offense determined to be an "aggravated felony" is considered a per se "particularly serious crime" and therefore a mandatory bar to asylum. "Aggravated felony" is a notoriously vague term, which exists only in immigration law. Originally limited to murder, weapons trafficking and drug trafficking, it has metastasized to encompass hundreds of offenses, many of them neither a felony nor aggravated, including petty offenses such as misdemeanor shoplifting, simple misdemeanor battery, or sale of counterfeit DVDs. The existing crime bars should be narrowed, not expanded. Even for those not categorically barred from relief, the immigration adjudicator maintains full discretion to deny asylum.

Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed. The agencies' efforts to add seven new sweeping categories of barred conduct to the asylum eligibility criteria is unnecessary and cruel. The Proposed Rules drain the phrase "particularly serious crime," 8 U.S.C. § 1158, of any sensible meaning.

*The Proposed Rules are also arbitrary and capricious. They would constitute a marked departure from past practice. And the agencies have proffered no evidence or data to support these changes.*

One assumption fundamentally underlying the Proposed Rules, for example, is that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. But no evidence is provided to support that assumption, and a criminal record, does not, in fact, reliably predict future dangerousness. The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence. Conviction for a crime does not, without more, make one a present or future danger—which is why the Refugee Convention's particularly serious crime bar, made part of United States law through 8 U.S.C. § 1158, should only properly apply if both (1) a migrant is convicted of



a particularly serious crime and (2) a separate assessment shows that she is a present or future danger.

Similarly, the Proposed Rules fail to address or account for the fact that a significant number of people may agree to plead to a crime as to avoid the threat of a severe sentence; not only is a conviction an unreliable predictor of future danger, it can also be an unreliable indicator of past criminal conduct. In addition, the Proposed Rules do not address and make no exception for convictions for conduct influenced by mental illness or duress.

The Board of Immigration Appeals has cautioned that, "in light of the unusually harsh consequences which may befall a [noncitizen] who has established a well-founded fear of persecution; the danger of persecution should generally outweigh all but the most egregious of adverse factors." Yet because of the categorical nature of the seven news bars proposed here, asylum seekers will be precluded from obtaining protection on the basis of a vast array of conduct, without any discretion left to the immigration adjudicator to determine whether the circumstances merit such a harsh penalty. Indeed, in the case of the domestic-violence related ground, the categorical bar will be imposed on the basis of mere allegations of conduct without any adjudication of guilt.

Those unjustly precluded from even seeking a discretionary grant of asylum by the Proposed Rules will include, for example: individuals struggling with addiction with one drug-related conviction, regardless of the circumstances of the offense; asylum seekers with two convictions for driving under the influence, regardless of whether the applicant has sought treatment for alcohol addiction or the circumstances of the convictions; community members seeking asylum defensively who have been convicted of a document fraud offense related to their immigration status; and asylum-seeking mothers convicted for bringing their own child across the southern border in an effort to find safety.

*The Proposed Rules cruelly disregard the connections between trauma and involvement in the criminal legal system.*

The harsh nature of the Proposed Rules is especially evident when viewed through a trauma-informed lens. Asylum seekers are an inherently vulnerable population because of the trauma they have experienced in their countries of origin and, often, along the journey to find safety. Existing literature suggests that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD). One recent study found the mental health problems facing refugees and asylum seekers so acute that more than a third of the study's sample admitted having suicidal thoughts in the preceding two weeks.



Studies also consistently reveal a high prevalence of comorbidity of PTSD and substance use disorders, with individuals with PTSD up to 14 times more likely to struggle with a substance use disorder. Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma; some turn to drugs and alcohol in an effort to self-medicate. The proposed new bars to asylum include any drug-related conviction (with one exception for a first minor marijuana possessory offense) and any second conviction for driving under the influence. This approach is not only cruel but also ignores the evidence. Particularly given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not a closed door and deportation order.

Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply cruel.

**Conclusion**

Immigrants, including asylum seekers and refugees, are a vital part of New York's cultural life and economic vitality. In fact ,numerous areas of New York State have been rejuvenated and taken out of economic depression by the settlement of refugees and asylees. For these reasons, and for the concerns outlined above, the NYIC strongly objects to the proposed rules.

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eie-2n0w
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0306
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Carey Para

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned U.S. citizen who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.
This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.
I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08848

AR.08849

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eif-ecw6
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0307
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Laura Shapiro

## General Comment

I am writing to express my strong opposition to this rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system. This proposed rule would inject racial profiling into the asylum process. It would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, and makes a mockery of due process.

The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights.

AR.08850

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eig-yk5z
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0308
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Jan Wilson
**Address:**
    85 Mount Clare Ave.
    Asheville,  NC,  28801
**Email:** jmtwilson@netzero.net
**Phone:** 2404320414

## General Comment

This proposed rule would inject racial profiling into the asylum process and put asylum seekers at risk of danger even death, so I oppose it.

The values of the United States call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

The United States began as a nation of immigrants. To to turn our backs on people who are doing what our ancestors did is just wrong. To make it dangerous for them to do so is even worse and it is unchristian to say the least.

AR.08851

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eig-aozn
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0309
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Terry Fletcher
**Address:**
    1417 Carleton St.
    Berkeley,  CA,  94702-2306
**Email:** gillianf19@gmail.com
**Phone:** 5108593719

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

AR.08852

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eig-565c
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0310
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Melissa Rigoli

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II.

Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08853

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eij-h0xf
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0311
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ericka Hall
**Address:**
   8526 Springfield Oaks Dr
   Springfield,  VA,  22153
**Email:** ehall@fedethics.com
**Phone:** 5714927484
**Fax:** 5713982542

## General Comment

I oppose the proposed rule changes because they would be cruel to American citizen children, would violate the spirit of America's international obligations under the 1951 UN Refugee Convention, and would be ineffective at increasing public safety.

Asylum, unlike withholding of removal, allows for derivative beneficiaries in the United States to gain status as well as for derivatives to follow to join their relatives in the United States. As an employee of several immigration lawyers, I have seen many cases in which a couple's children born in the United States (I.e American citizen children) would lose one of their parents to removal under the proposed rule changes because one spouse does not have a legally cognizable particular social group while the first spouse does.

The effect of this proposed rule change would, therefore, be to deport fathers and mothers from the United States and rip apart American families because of a single DUI conviction or a single fight at home, a result which is clearly not in the best interests of these children. The American-born children of these mothers and fathers would also have less financial support and be more likely to depend on government aid in addition to being traumatized by the (likely permanent) loss of a parent in their lives under the proposed rule changes.

Second, the proposed rule changes would violate the spirit of America's international obligations under the 1951 UN refugee convention, which states under Article I that asylum will not be granted to persons who have "committed a crime against peace, a war crime, or a crime against humanity, as defined in the international instruments drawn up to make provision in respect of such crimes." While the 1951 Convention does not specifically prohibit the proposed rule changes, these changes are certainly outside the scope of the crimes against peace, war crimes, and crimes against humanity mentioned in the Convention and therefore weaken America's international reputation as a country that upholds its promises in spirit as well as in fact.

Lastly, the proposed rule changes would be ineffective at increasing public safety because withholding of

AR.08854

removal, unlike asylum, cannot be denied under proposed regulations affecting immigration judges' discretion. However, withholding of removal, like asylum, grants indefinite stay in the United States. The effect of the proposed rule changes, therefore, is to punish the families of perpetrators and not the perpetrators themselves. On behalf of myself, my asylum-seeking friends, and my clients please do not adopt this proposed rule.

AR.08855

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eik-k53a
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0312
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Cynthia Stahler
**Address:**
  708 W. Buena Ave.
  Apt. 2NE
  Chicago, IL, 60613
**Email:** cindystahler@yahoo.com
**Phone:** 4133200205

## General Comment

I oppose the rules change. Everyone fleeing violence or torture should have the right to have their case heard. Judges should have discretion about how they decide eligibility for asylum status in the United States. We are a country of immigrants and we should continue to include immigrants in our society.

AR.08856

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eil-uknn
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0313
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Giselle Hass

## General Comment

I am a psychologist who has worked with refugees, asylum seekers and immigrants for the past 30 years. I am alarmed at the proposed rule change because it destroys the humanity, compassion and respect for human rights characteristic of our country. This new change criminalizes asylum seekers and introduces racial profiling and discrimination in the asylum process. This is a punishment to the most needed human beings that come to our borders and it makes a mockery of due process. I strongly oppose hateful attacks like this proposed rule, and i will like to support solutions that will profoundly transform our cruel immigration system and uphold our values. This includes visionary legislation like the New Way Forward Act, which would roll back anti-immigrant laws which have fueled racial profiling and mass incarceration.

AR.08857

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eim-mrj6
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0314
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Greg Hom
**Address:**
  165 Niagara AVe
  San Francisco,  CA,  94112

## General Comment

I am a concerned member of the public who believes that our nation must welcome asylum seekers. And I'm strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my personal community, as well as my neighborhood and state.
Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them

AR.08858

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eim-aa39
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0315
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Andrew Deppe
**Address:**
    N1587 Overgaard Road
    Wonewoc,  WI,  53968
**Email:** andrewdeppe@hotmail.com
**Phone:** 608-464-3974

## General Comment

As a member of a local church that has hosted asylum seekers from other countries, I write to oppose this dangerous rule change. All people coming to the United States should have a fair hearing about their reasons for coming here. Our country was built by immigrants and those seeking refuge from violence and persecution elsewhere.

I believe we must recognize the humanity of every person, including immigrants and asylum seekers, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I strongly urge that this proposed rule change be withdrawn. Thank you for your consideration.

AR.08859

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eim-sv1a
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0316
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Jan Kalmar
**Address:**
   608 W Nevada St
   Urbana, IL, 61801-4018
**Email:** jankalmarjoy@gmail.com
**Phone:** 2176497509

## General Comment

.Today, I write imploring you to oppose the proposed rule change on asylum seekers. Having volunteered in Central and Latin America for several years, it's clear to me the cruel political and economic systems these people flee are real and life threatening. Our own laws and people uphold a deep responsibility to our neighbors who have suffered often from military and economic situations we have had a hand in creating. Under the Refugee Act of 1980 our law protects anyone present or arriving to the US to apply for asylum. We cannot relinquish our humanity by agreeing to this proposal. I beg of you. Thank you for remembering decency and the mutuality we have with all people.

AR.08860

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ein-ob9c
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0317
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Karen Fox, Esq.
**Address:** United States,

## General Comment

This is an example of the current administration's attempted end-run on asylum protection. Asylum is already a DISCRETIONARY benefit. This means that under current law, even people who are statutorily eligible for asylum--that is, protection from forced return to a place where our own government agrees that the person will face a likelihood of PERSECUTION ON THE BASIS OF A PROTECTED GROUND--can be denied such asylum protection, based on "discretionary factors".

These factors already include ALL of the issues that the new rule proposes will constitute MANDATORY bases for denial--without any permissible consideration of that person's positive factors.

This proposed rule serves to STRIP adjudicators of their current obligation to consider countervailing facts, in a way that justifies the return of human beings to situations that our law admits will involve PERSECUTION, although such person may have facts that makes that return inhumane, immoral and violative of the human values that U.S. law already support.

The current law allows, at least, the consideration of countervailing factors that mitigate such a person's negative acts. Our law is supposed to be proportional: the consequence for a bad act is supposed to be PROPORTIONAL to the act itself. This proposed rule MANDATES bringing a gun to a knife fight. It is nothing but a stripping provision, and it should not be passed.

AR.08861

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eir-5exo
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0318
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I write to express my strong opposition to this proposed rule change.

As the son of immigrants, I am deeply concerned that this rule change would send people who fled violence back to danger and death.

Racial profiling is a fascist tactic not fit for a democracy.

AR.08862

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eir-nzfx
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0319
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Graham Steele
**Address:**
  1734 20th Avenue
  OAKLAND,  CA,  94606
**Email:** graham.s.steele@gmail.com
**Phone:** 2023618830

## General Comment

Lauren Alder Reid
Assistant Director, Office of Policy
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2616
Falls Church, VA 22041.

Dear Director Reid:

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system.

First, the U.S. should be a place of refuge for people fleeing violence, starvation, poverty, or persecution. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Immigrants are a vital part of my community, my neighborhood, and my state, yet asylum seekers face many unjust obstacles in the immigration system.

Second, as someone with many friends who have come into contact with the criminal legal system in the U.S., I have seen that it is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws further exploit these obstacles to drive the mass incarceration and mass deportation of people of color. It would be wrong to punish people a second time after theyve completed their sentences. Deportation is often a matter of life and death.

ER-0821

AR.08863

Finally, I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon your agency to withdraw this proposal. Thank you for considering my views on this important matter to so many Americans--be they citizens, residents, or immigrants.

AR.08864

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eis-8uys
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0320
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Shelli Wilk

## General Comment

I oppose this cruel rule. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08865

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 18, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eis-xqrg
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0321
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Sunaina Maira

## General Comment

I write to express my strong opposition to this proposed rule change. I am an immigrant from India who has lived in the US almost all my adult life, and I am now a professor at UC Davis doing research on refugees and immigrants. Our nation must welcome people fleeing violence, and I am deeply concerned about racial profiling in the criminal legal system especially as it intersects with immigration and asylum policies. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.
We cannot claim to be a country that accepts huddled masses of people seeking freedom from persecution if we do not live up to this promise.

AR.08866

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eiw-ldwd
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0322
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I am a concerned member of the public who strongly believes that our nation must welcome ALL people fleeing violence and I oppose this rule change. This rule change is racist, inhumane, and goes against our country's values. Asylum seekers fleeing violence, starvation, poverty, or persecution face many obstacles to reach the U.S., only to be met with even more unjust barriers in our country's immigration system. Proposing to further gut asylum by expanding limitations would put these vulnerable people at more risk of dangereven deathwith deportation back to the very life-threatening situation they fled. For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08867

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eiz-xyb4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0323
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Lorraine Wilson
**Address:**
    8719 62nd Avenue
    BERWYN HEIGHTS, MD, 20740
**Email:** barranw@comcast.net
**Phone:** 3014745221

## General Comment

I believe the proposed rules are cumbersome and confusing and seek to keep out many who are victims of severe abuse (either by an individual, group, or Country) and that placing more (not less) restrictions will lead to much more unnecessary harm and even death for many.

Under these new regulations many could be considered the victim of a crime and not the perpetrator. Gang activity, for example is easily accused but it is difficult to know if it was forced under threats of harm or death (especially to other family members which is often the case). Other categories which are questionable are those including "smuggling" a family member (understandable under certain circumstances), a "victim" of human trafficking or domestic abuse, DUI's which are not aggravated felonies, and possession. Considering the humanitarian crises which is at hand, these are all things which taken into perspective should not result in a person's severe harm or death of being denied asylum.

AR.08868

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ej1-mm5b
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0324
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Cliff Zimmerman

---

## General Comment

I write to express my strong opposition to this proposed rule change.

I believe strongly that our nation must welcome people fleeing violence, and am strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution. U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum. For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation. This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08869

AR.08870

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ej2-y9t4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0325
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Penne Beckett

## General Comment

I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state. I stand with immigrants.

AR.08871

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ej5-rclr
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0326
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Corinne Anonymous

## General Comment

I am OPPOSED to this new rule. Asylum is designed to protect and support individuals who are fleeing persecution, dangerous living conditions and/or political situations, or other reasons that they seek refuge in the U.S. The proposed rule is much to broad and subject to interpretation in limiting conditions for asylum when at this point in the global universe we should NOT be restricting conditions for asylum in any way. I am very concerned that our country is becoming not only overly nationalist, but racist as well.

AR.08872

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ej6-tdus
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0327
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Patrick Long

## General Comment

The crackdown on asylum seekers punishes some of the most vulnerable people in the world for their vulnerability. It punishes them for where they were born, and for the persecution they have suffered. Adding new criminal bars in particular does so because convictions are often a result of either the persecution itself or the flight from persecution.

This is not merely an act of cruelty. Passing these regulations would make you a persecutor too.

AR.08873

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ej8-7t19
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0328
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Kate Sugarman
**Address:**
    11909 Enid Drive
    Potomac,  MD,  20854
**Email:** katesugarman@hotmail.com
**Phone:** 301-343-5724

## General Comment

I am writing to express my very strong opposition to this proposed rule change.
As a family physician I work with a large number of immigrant families. I see thousands of families who have fled violence in their countries of origin and are here seeking safety in the US. This proposed rule would punish people who have already endured mistreatment and racial profiling in the criminal legal system a second time with deportation back to the very life threatening situation they fled. As a result I call on the Trump administration to withdraw this proposal.

AR.08874

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ej8-7rqr
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0329
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** anthony hintze
**Address:**
    1718 w. albion 2b
    chicago,  IL,  60626
**Email:** tonyhintze@att.net
**Phone:** 7737616981

## General Comment

I am a US citizen who strongly believes that immigrants should not be prevented from making their case that they are seeking asylum because they are fleeing violence and oppression. I am also concerned that racial profiling in our broken criminal justice system could be used to limit legitimate asylum seeker cases.

Asylum seekers should not be limited. Migrants from poor countries should be welcome.

AR.08875

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eja-pw3j
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0330
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Iris Biblowitz
**Address:**
  2982 26st
  San Francisco, CA, 94110
**Email:** irisbiblowitz@hotmail.com

---

## General Comment

I'm a nurse who's extremely concerned about President Trump's proposed new rule to deport asylum seekers who've had contact wth the U.S. criminal justice system. As a senior and a nurse who's worked extensively with immigrants, I find this proposal blatantly unfair to people who've experienced violence, persecution, extreme poverty, hunger, and trauma, in their home countries. This would be a double jeopardy situation, where people who've been racially profiled and had to deal with the criminal justice system will also be denied the right to apply for asylum, which has been their right for many years with The Refugee Act of 1980 and The International Refugee Convention. This would put many immigrant families at great risk of harm, and would be a reversal of the policies for asylum seekers.

As a nurse, I'm committed to decreasing the suffering of people. This new policy would increase suffering of people who are looking for a safe place to call home so they can work and raise their children without fear of constant violence.

How can a country that was built by immigrants and by people who were enslaved, make policies that are tantamount to crimes against humanity?

SIncerely, Iris Biblowitz, RN

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eja-ndis
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0331
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Karen Alexander-Brown

## General Comment

No human has more, or fewer, rights than another in a democracy! The rule of law is based on this premise in a free country. Protect every human's rights and stop the racist mechanisms of control at the border. Respect the rights of assylum seekers and follow due process without over-reach.

AR.08877

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejb-uyjm
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0332
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Carrie Rosenbaum

---

## General Comment

see attached

---

## Attachments

Lauren Alder Reid

AR.08878

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41; Comments in Response to Proposed Rulemaking Procedures for Asylum and Bars to Asylum Eligibility

To Whom It May Concern:

I submit these comments in response to the Department of Homeland Security (DHS) and Department of Justice's (DOJ) Joint Notice of Proposed Rulemaking Procedures for Asylum and Bars to Asylum Eligibility published in the Federal Register on December 19, 2019 to express our strong opposition to the proposed changes to the asylum process and asylum eligibility.

I have grave concerns regarding the immense harm that these changes in the proposed rule will have on immigrant survivors of domestic violence, sexual assault, and other gender-based abuses. We urge DHS and DOJ to withdraw the proposed rule in its entirety.


Immigrant Survivors Flee to the U.S. to Seek Asylum as a Last Resort in Desperate Hope of Finding Safety and Protection.
Immigrant survivors who flee to the U.S. to seek asylum have endured horrific domestic violence, sexual assault, rape, and other gender-based forms of abuse that have threatened their and their children's lives. The journey to the U.S. is a dangerous one. Still, survivors traverse the hundreds to thousands of miles because they strongly believe that it is safer to make the journey for the possibility of finding safety and protection in the U.S. than to stay in their home countries where their governments do little to protect them from their abusers and perpetrators.
Many survivors and their children of domestic violence have endured years of abuse, terror, fear, and powerlessness before they finally take the steps to escape from their abusers to come to the U.S. Many immigrant survivors of sexual assault and rape are subjected to multiple attacks, stalked, or at risk of being murdered by their perpetrators. They are compelled to flee to the U.S. because they recognize that they will never be able to feel safe again if they remain in their home countries. Asylum is therefore for many immigrant survivors their only chance of finally obtaining safety and protection. Immigrant survivors of violence do not make the choice

AR.08879

to seek asylum in the U.S. lightly. They must leave everything they know, brace themselves for the tremendous peril that awaits them and their children during their journey, and traverse the many miles with very few possessions of their own – often with nothing but the clothing on their backs.

The proposed rule released by DHS and DOJ proposes to bar many of these vulnerable and traumatized immigrant survivors of violence from qualifying for asylum. Specifically, the proposed rule seeks to 1) establish seven new bars to eligibility for asylum, 2) authorize immigration adjudicators to determine whether a criminal conviction or sentence is valid for the purpose of determining eligibility for asylum, and 3) rescind a provision in the current regulation regarding reconsideration of discretionary denials of asylum. Immigrant survivors of violence already face numerous barriers to applying for asylum, and these proposed changes will only serve to create more barriers and prevent immigrant survivors from obtaining the asylum protections they desperately need. Rather than restricting access to protection, the administration should continue to expand opportunities for vulnerable immigrant survivors to access safety and protection.


In 2018, immigrants from Venezuela and the Northern Triangle countries – Guatemala, El Salvador, and Honduras – made up one half of the asylum seekers who filed for affirmative asylum – meaning individuals seeking asylum who are present in the U.S. and are not in removal proceedings. Immigrants from these same countries also made up the majority of the asylum seekers in the defensive asylum process – meaning asylum seekers who are in removal proceedings. Venezuela and the Northern Triangle countries are notorious for being places where it is extremely dangerous to be a woman. Many immigrant women and children who flee from these four countries to seek asylum in the U.S. have survived horrendous violence and trauma.

In Venezuela, women and girls become victims of homicide by a rate of 24.5 per every 100,000 women, putting Venezuela as the country with the second highest femicide rate in 2016 when looking at countries that are not currently in an armed conflict. Furthermore, among 357 cases brought before the International Criminal Court regarding violence, abuse, and torture perpetrated by security forces against political prisoners, 190 were about rape and sexual abuse.

El Salvador and Honduras have among the highest death rates for women in the world. However, with a 95% impunity rate for sexual and femicide crimes, perpetrators and abusers in Honduras rarely face consequences. The rate of violent death for women in El Salvador is the third highest in the world, and seven out of every ten victims of sexual violence are under the age of 20. In Guatemala, acts of violence against women are the most reported crimes, with an average of 560,000 reports a year. Physical and sexual violence against women and girls is generally committed by gang members and family members, but also by law enforcement and other governmental actors. Rape and other sexual violence is deeply embedded within gang culture and frequently used as a form of territorial domination. The United Nations has categorized this type of violence and the forced recruitment of girls and women as constituting a contemporary form of slavery. Domestic and family violence are also pervasive in all three

AR.08880

countries. According to one local NGO in El Salvador, approximately 70 percent of sexual assault perpetrators know the victim and 20 percent are family members.*

The Proposed Rule Violates U.S. Obligations Under Both Domestic and International Law.

The United States has long served as a beacon of hope for immigrant survivors of domestic and sexual violence and other gender-based abuses. As a party to the 1967 Protocol Relating to the Status of Refugees, which binds parties to the United Nations Convention Relating to the Status of Refugees, the U.S. developed section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1158 to extend asylum protections to immigrants fleeing persecution. For over forty years, the United States has continued to uphold its commitment to helping and protecting those who are fleeing persecution, including gender-based persecution. However, by carving out categorical bars from asylum protection and grossly expanding the serious crime bar beyond the Convention's definition of "capital crime or a very grave punishable act," the proposed rule violates our obligations under the Refugee Convention and the INA to provide asylum seekers with fair access to asylum protections. These increased and arbitrary hurdles to protection are wholly incongruent with the letter and spirit of the commitment the United States made in the Refugee Convention and the INA to protect vulnerable refugees fleeing persecution.

The Proposed Rule Will Unfairly Prevent Many Vulnerable Immigrant Survivors from Obtaining Asylum.

The proposed rule seeks to add seven new criminal bars to asylum eligibility. These new bars are sweeping in scope, and several will render ineligible many vulnerable immigrant survivors who are in desperate need of protection and who would otherwise be eligible for asylum protections.

The Categorical Bar for an Offense of "Smuggling or Harboring" Will Harm and Fracture Immigrant Survivors and Their Families.

The proposed rule seeks to expand the "smuggling and harboring" asylum eligibility bar to include immigrants who are convicted of assisting their spouse, children, or parents escaping persecution to come to the U.S. Under this proposal, efforts to bring children to safety will disturbingly be considered "particularly serious crimes" and classified as aggravated felonies. Immigrant survivors who are convicted of helping their children escape from an abuser or perpetrator of sexual violence and enter the U.S. will therefore be branded as felons and ineligible for asylum. Survivors who have seized their last possible chance of protecting their children by fleeing to the U.S. will essentially be punished for seeking to build a life free from violence for themselves and their children. By depriving traumatized immigrant survivors and their children of the ability to obtain asylum protections, the proposed rule will only serve to re-traumatize survivors and their children and cause them to remain vulnerable to experiencing even more violence and abuse.

The Bar for Illegal Reentry Lacks Credible Justification and Criminalizes Immigrant Survivors Desperately Fleeing Violence.

The proposed rule seeks to bar all applicants convicted of illegal reentry from being eligible for asylum. This proposal wholly ignores the reality that immigrant survivors of violence who are sent back to their countries of nationality are at risk of violent retaliation from their abusers or perpetrators, and may even face death. Survivors therefore make the treacherous journey to

AR.08881

the U.S. again after they are removed for the same exact reason they fled the time(s) before – to escape horrific domestic and sexual violence, desperately hoping that this time, they will be granted asylum and finally be safe.

Restricting asylum eligibility to exclude immigrant survivors who are convicted of illegal reentry for fleeing from violence multiple times is antithetical to the mission of the U.S. to protect the most vulnerable. The reason immigrant survivors repeatedly enter the U.S. in search of asylum is because they are subjected or at risk of being subjected to domestic or sexual violence when they are sent back to their country of nationality. By denying these survivors the ability to seek asylum, the proposed rule will be denying protection to among those who need it most.

The Bar for Conviction or an Accusation of Conduct of Battery or Extreme Cruelty Harms Survivors.

The proposed rule seeks to make ineligible for asylum all applicants who have been convicted of domestic assault or battery, stalking, or child abuse in the domestic context. The proposed rule alarmingly takes this one step further so that immigrants who are simply accused of engaging in battery and extreme cruelty.  This proposed rule creates the only crime-related bar for which a conviction is not required. DHS and DOJ paint this proposal as a way to protect survivors; however, it will cause immense harm to immigrant survivors of violence.

There are many cases in which immigrant survivors, not their abusers, are arrested and prosecuted for domestic violence offenses. Immigrant survivors who have limited English proficiency (LEP) may not be able to fully describe the situation and the abuse they experienced to police officers. In many situations, police officers may then turn to the perpetrators to interpret. In fact, a service provider explained that many survivors are arrested in dual arrests because the police use perpetrators as interpreters. In other cases, survivors are arrested and face charges for domestic violence arising from acts of self-defense or because abusive partners or perpetrators manipulate the legal system by filing false claims of abuse. Service providers report that it is common to see abusers make false allegations to police and the courts to have immigrant survivors arrested. The proposed rule's lack of requirement of a conviction increases that likelihood, given the lack of completion of a fact-finding.

Although there is a proposed waiver for survivors who are deemed to not be the primary aggressor, the waiver is insufficient to mitigate the harm that many survivors will experience. Not only will victim-defendants be swept in, but survivors and their families will be harmed in cases where the allegedly abusive family member has not engaged in a pattern of coercive, controlling behavior, or has demonstrated actual rehabilitation and accountability and plays an important contribution to the health and well-being to the family.

The Eligibility Bar for Misdemeanor Document Fraud Ignores Migration-related Circumstances.

One of the misdemeanor offenses that would render an immigrant ineligible for asylum is the use of fraudulent documents. This bar will sharpen the tools of control and coercion used by abusers, and punish immigrant survivors who have themselves fallen victim to fraud. Abusers often hide or destroy survivors' documents in order to exert dominance and prevent survivors from being able to leave the relationship. As such, immigrant survivors who escape from violence must often search for other ways to obtain documentation. This leads survivors to be

AR.08882

highly vulnerable to falling prey to fraud by individuals who falsely claim to have the ability to prepare legal documentation for them. Immigrant survivors who have fraudulent documents may therefore genuinely believe that they had taken the necessary steps to acquire legal documents.

Most survivors of violence have experienced financial abuse, where the abuser has limited their access to financial resources and forced survivors to depend on them for housing, food, health care, and other basic needs. Survivors who escape from abusive relationships therefore risk falling into poverty and homelessness. As such, survivors may be compelled to resort to any measure to obtain documentation so that they can work and sustain themselves and their children. Access to economic resources is absolutely critical in supporting the safety of survivors who are fleeing domestic violence, sexual assault, and human trafficking. Barring immigrant survivors from asylum for taking measures to ensure that they could feed, clothe, and house themselves and their children is cruel and will only serve to render them even more vulnerable to exploitation.

The Proposed Rule Creates Inconsistency in Adjudications and Provides Immigration Adjudicators with an Unprecedented Amount of Authority.

The proposed rule aims to permit immigration adjudicators to determine whether a conviction or conduct related to domestic violence or battery and extreme cruelty would render an immigrant ineligible for asylum. First, the definition of battery and extreme cruelty in particular differs from state-law domestic violence criminal definitions, creating inconsistency in determining who is covered by the asylum bar. While such language is appropriate in providing protection for those seeking it, it is highly inappropriate in the context of barring individuals seeking protection against persecution. In addition, in order to properly and accurately assess domestic violence, battery, or extreme cruelty, one must have experience and in-depth knowledge of the intricacies of abuser-survivor relationships and dynamics; the nuances of the tactics abusers and perpetrators use to control, intimidate, and manipulate survivors; understanding of the ongoing pattern of behavior in abusive relationships; specific vulnerabilities of immigrants to being victimized; and many other important analyses of the domestic nature of abusive conduct. Immigration adjudicators, in all likelihood, lack this expertise and intimate understanding. As such, putting the responsibility on immigration adjudicators to make these complex decisions about whether conduct amounts to a covered act of battery or extreme cruelty without court findings, following presentations of evidence under oath by adverse parties, is wholly inappropriate, and will likely result in erroneous determinations that will cruelly strip immigrant survivors of their right to seek asylum.

The proposed rule also seeks to provide immigration adjudicators with the authority to determine whether a vacated, expunged, or modified conviction or sentence should be recognized in determining whether an immigrant is eligible for asylum. This proposed change undermines the authority of state courts that have experience and expertise and allows immigration adjudicators to essentially question and disbelieve the decisions of court judges. Providing immigration adjudicators with this broad and overextending authority will compromise the ability for immigrant survivors to have a fair and full proceeding.

Alternative Forms of Relief Are Insufficient to Protecting Immigrant Survivors of Violence

AR.08883

The proposed rule offers that immigrants who become ineligible for asylum under the seven new bars of asylum ineligibility could still qualify for other forms of protection, namely withholding of removal or protection under the Torture Convention (CAT). However, these forms of relief require a higher burden of proof than asylum, meaning that many asylum seekers excluded from eligibility under the proposed rule will face deportation back to harm if they cannot meet this higher burden. Furthermore, the protections afforded by CAT and by statutory withholding of removal are limited in scope and duration. Withholding of removal and CAT protection do not provide a path to lawful permanent residence and do not allow for freedom of travel or for family reunification, with detrimental consequences for other family members fleeing domestic and sexual violence and trafficking. Limiting protections for immigrant survivors to withholding of removal and CAT will leave them in a continued state of limbo and unable to truly build a safe and secure life for themselves and their children.
Removing Reconsiderations of Discretionary Denials of Asylum Will Deprive Immigrant Survivors of the Opportunity to Seek Safety Despite Having Viable Claims of Asylum.
The proposed rule seeks to remove automatic review of a discretionary denial of an asylum seeker's application in the event that the immigrant is denied asylum solely in the exercise of discretion. Rescinding the review of discretionary denials will be extremely harmful to immigrant survivors of violence. Many immigrant survivors are LEP or lack the financial resources to retain an attorney. The immigration legal system is incredibly complex and difficult to navigate, and many immigrant survivors with viable claims for asylum find their cases denied due to these barriers. Even if the survivor is granted withholding of removal or protection under CAT, as detailed in the section above, these alternative forms of protection do not allow for the same level of relief and benefits as asylum protection. Maintaining reconsiderations of discretionary denials of asylum is therefore absolutely critical to ensuring that immigrant survivors who are eligible for asylum have another opportunity to defend and prove their right to obtain asylum protections and remain in the U.S.

Conclusion
For the foregoing reasons, I urge DOJ and DHS to rescind the proposed rule, which violates our nation's laws and moral obligations and cruelly prevents many survivors of domestic violence, sexual assault, and human trafficking who are fleeing persecution from obtaining the asylum protections they need and deserve. We instead urge DOJ and DHS to promote policies that account for the dire reality that traumatized refugees face and seek to maximize their safety throughout the asylum process.

Thank you for the opportunity to submit comments on the Joint Notice of Proposed Rulemaking Procedures for Asylum and Bars to Asylum Eligibility. Please contact me if you have any questions or concerns relating to these comments. Thank you.
Respectfully submitted,

Carrie Rosenbaum

AR.08884

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejc-9ob3
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0333
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Susie Murphy
**Address:**
    14334 Glen Acres Road SW
    Vashon,  WA,  98070
**Email:** susiemurf@gmail.com
**Phone:** (206)769-0830
**Fax:** N/A
**Organization:** Indivisible Vashon: Immigrant/Refugee Rights Group

## General Comment

See attached file(s)

## Attachments

VRRG Lttr to Govt re Proposed Asylum Rules--final--reduced

AR.08885

 **Immigrant/Refugee Rights Group**

Indivisible Vashon: Immigrant/Refugee Rights Group
Vashon, WA 98070
(206) 769-0830

*Submitted via https://www.regulations.gov/document?D-EOIR-2019-0005-0001*

January 17, 2020

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2616
Falls Church, VA 22041

Maureen Dunn
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. Nw
Washington, DC 20529-2140

     Re:    84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87,
             1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum
             and Bars to Asylum Eligibility

Dear Ms. Reid and Ms. Dunn and Your Respective Agencies:

I am writing on behalf of the Indivisible Vashon: Immigrant/Refugee Rights Group in response to the above-referenced Proposed Rules to express our strong opposition to the Proposed Rules to amend regulations relating to eligibility for asylum published in the Federal Register on December 19, 2019.

Our group is particularly focused on the proposed rules with respect to (1) any conviction of a felony offense; (2) any conviction for "smuggling or harboring" under 8 U.S.C. Sec. 1324(a), even if the asylum seeker committed the offense for the purpose of bringing her own spouse, child or parent to safety.

The asylum protections provided by United States law are sacred. Asylum provides those fleeing from horrors in their homelands with physical safety, a path to citizenship and security, and the opportunity to reunite with immediate family members who may already be in the United States. If they have immediate family members still in danger abroad, asylum in the U.S. may give them the opportunity to help those family members in danger immigrate to the U.S. Many see the United States domestic

 AR.08886

asylum system as a symbol of the United States commitment never to repeat its failure to save thousands of Jewish refugees fleeing the Holocaust who were refused entry to the United States on the *St. Louis.* For those individuals seeking asylum in the United States a claim denied often means a return to brutal persecution or death.

The second section of the proposed rules provides a multi-factor test for immigration adjudicators to determine whether a criminal conviction or sentence is valid for the purpose of determining asylum eligibility. The third section of the proposed rules rescinds a provision in the current rules regarding the reconsideration of discretionary asylum.

Our group believes that these proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protection enshrined in United States and international law. Accordingly, the Indivisible Vashon: Immigrant/Refugee Rights Group submits these comments to express opposition to certain of the proposed rules as explained below. We strongly believe that these proposed rules exclude refugees from obtaining the security and stability the United States asylum system has long promised and provided in the past. We urge that the Proposed Rules that we specifically object to be rescinded in their entirety.

The United States asylum system was first codified in statute through the Refugee Act of 1980 to enshrine our long-standing tradition as a haven for persons fleeing oppression, *Anything that detracts from our long-standing tradition as a haven for persons fleeing oppression is totally unacceptable in our nation of freedom and equal rights – and to our citizens who originally came here from all over the world seeking freedom and equal rights under the law. They came here to a nation of laws – to escape systems that denied freedom and equal rights under the law.[i]*

Our group has members who are "court-watchers" at the Northwest ICE Processing Center in Tacoma, Washington, (NWPC) formerly known as the Northwest Detention Center. The NWPC is one of the largest immigration prisons in the country with a capacity to hold up to 1575 inmates per day. Detainees/prisoners end up in the Processing Center after immigration raids, after being transferred from local law enforcement in our region, and after being transferred from the border regions, even some as far away as the border between El Paso and Juarez and other Texas border areas. Up to 200 undocumented persons, many of whom are seeking asylum, are transferred from the U.S.-Mexico border to the NWPC each month. Other undocumented persons held at the NWPC have lived in the U.S. for years, in some cases for the majority of their lives. We do not claim any expertise in this area. All we know is what we see and hear while watching cases in the administrative courts before administrative judges at the NWPC. We have been told at least a majority, if not all, of the administrative judges at the NWPC are former prosecutors of undocumented persons. As such former prosecutors, such administrative judges are subject to implicit bias against the undocumented persons they formerly prosecuted. Scientific studies show that all persons are subject to implicit bias based on their life experiences.[ii] In fact, one of our members was recently called to jury duty at the King County Superior Court. The head of the jury assembly room showed several videos concerning the duty of jurors and about how the system works. Then he showed a video about implicit bias that included interviews with a federal judge, a King County Superior Court Judge, a lawyer and a social worker. They spoke at length about implicit bias. The assembled potential jurors, numbering about 200, were told that all personnel in the King County Court system, including judges and prosecutors, are required to undergo bias training on a regular basis. *We strongly urge that such a requirement be added to your*

AR.08887

*rules to require that all immigrant administrative judges and all immigrant prosecutors be provided bias training on a regular basis of not less than once a year.*

The laws regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the evidentiary burden of establishing their eligibility for asylum in the face of a complex web of laws and regulations, without even the benefit of appointed counsel.

Additionally, the Form for Asylum, Form I-589, that must be filled out by asylum seekers is in English and the Instructions are in English. No provision is made for asylum seekers that do not speak English. Further, the detainee/asylum seeker must submit a passport-style photograph taken not more than 30 days before he/she files the application. How is that possible when the asylum seeker is detained in a prison-type facility? Further the detainee must submit "reasonably available corroborative evidence showing (1) the general conditions in the country from which you are seeking asylum, and (2) the specific facts on which you are relying to support your claim." Continuing, "Supporting evidence may include but is not limited to newspaper articles, affidavits of witnesses or experts, medical and/or psychological records, doctors' statements, periodicals, journals, books, photographs, official documents, or personal statements or live testimony from witnesses or experts. If you have difficulty discussing harm you have suffered in the past, you may wish to submit a health professional's report explaining this difficulty." For an individual detained in a prison type facility, it is practically impossible to obtain any of this information. The detainee has no way to obtain newspaper articles about his home country unless he has relatives or friends here who can obtain them. But that is rarely possible. There is no way the detainee can leave to obtain any of the other supporting evidence. Typically, the detainee's only supporting evidence is only his personal statement. Our understanding is that many immigration judges will not accept such a statement as sufficient in and of itself to grant asylum. **We strongly urge that the requirements as stated in this paragraph are already too difficult for detainees seeking asylum. Increasing such difficulty as proposed in the Proposed Rules is extremely and overly harsh.**

The existing bars to asylum based on allegations of criminal conduct are *already* sweeping and over-broad in nature and scope.[iii] Any conviction for an offense determined to be an "aggravated felony" is considered a *per se* "particularly serious crime" and therefore a mandatory bar to asylum.[iv] "Aggravated felony" is a notoriously vague term, which exists only in immigration law. Originally limited to murder, weapons trafficking and drug trafficking,[v] it has metastasized to encompass hundreds of offenses, many of them neither a felony nor aggravated, including petty offenses such as misdemeanor shoplifting, simple misdemeanor battery, or sale of counterfeit DVDs.[vi] The existing crime bars should be narrowed not expanded.

One assumption fundamentally underlying the Proposed Rules, for example, is that every noncitizen convicted of any offense punishable by more that a year in prison necessarily constitutes a danger to the community. But no evidence is provided to support that assumption and a criminal record does not, in fact, reliably predict future dangerousness. The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence. Conviction for a crime does not, without more, make one a present or future danger – which is why the Refugee Convention's particularly serious crime bar, made part of United States law through 8 U.S.C.

AR.08888

sec. 1158, should only properly apply if both (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows that he or she is a present or future danger.

Similarly, the Proposed Rules fail to address or account for the fact that a significant number of people may agree to plead to a crime so as to avoid the threat of a severe sentence; not only is a conviction an unreliable predictor of future danger, it can also be an unreliable indicator of past criminal conduct. In addition, the Proposed Rules do not address and make no exception for convictions for conduct influenced by mental illness or duress.

The Board of Immigration Appeals has cautioned that, "in light of the unusually harsh consequences which may befall a [noncitizen] who has established a well-founded fear of persecution; the danger of persecution should generally outweigh all but the most egregious of adverse factors.[vii] Yet because of the categorical nature of the seven new bars proposed here, asylum seekers will be precluded from obtaining protection on the basis of a vast array of conduct, without any discretion left to the immigration adjudicator to determine whether the circumstances merit such a harsh penalty. Indeed, in the case of the domestic-violence related ground, the categorical bar will be imposed on the basis of *mere allegations* of conduct without any adjudication of guilt.[viii]

One of the most egregious examples of the proposed new bars as set forth in the Proposed Rules is that they would prevent a discretionary grant of asylum to asylum-seeking mothers convicted of bringing their own child across the southern border in an effort to find safety.

Further, concerning criminal convictions as bars to asylum seekers, in our state, Washington, the least serious class of felonies are Class C felonies which are punishable by up to 5 years in prison, In determining a sentence for such a conviction the courts refer to the Washington Adult Sentencing Guidelines Manual[ix] (the "Manual") for guidance. The Manual is designed to provide guidelines to "score" the offender's criminal history.

The offender's criminal history includes the defendant's prior adult convictions and juvenile court dispositions, whether in this state, in federal court, or elsewhere, and any issued certificates of restoration of opportunity. Although an offender's criminal history consists almost exclusively of felony convictions, in some instances, it also includes misdemeanors. The effect of criminal history also relates to the felony class of the crime (Class A, Class B or Class C), and the type of offense (i.e. serious violent, violent, nonviolent, sex, etc.).

A conviction is defined as a verdict of guilty, a finding of guilty, or an acceptance of a plea of guilty. RCW 9.94A.525(1) defines a prior conviction as one existing before the date of the sentencing for the offense for which the offender score is being computed. Convictions entered or sentenced on the same date as the conviction for which the offender score is being computed are deemed "other current offenses" within the meaning of RCW 9.94A.589. Prior adult convictions should be counted as criminal history unless:

• "Wash out" provisions apply; or
• A court has previously determined that they constituted "same criminal conduct" as defined by RCW 9.94A.589; or
• They were not previously deemed "same criminal conduct" but their sentences were served concurrently and a court now determines that they were committed at the same time, in the same place, and involved the same victim.

AR.08889

**"Wash Out" of Certain Prior Felonies**
The rules governing which prior convictions are included in the offender score can be found in RCW 9.94A.525
• **Prior Class C (juvenile or adult) felony convictions,** other than sex offenses, **are not included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or since the entry of judgment and sentence, the offender had spent five consecutive years in the community without having been convicted of any crime.**
• **Prior (juvenile or adult) serious traffic convictions are not included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or since the entry of judgment and sentence, the offender had spent five years in the community without having been convicted of any crime.**
• **Prior convictions for repetitive domestic violence offense, as defined in RCW 9.94A.030(42), are not included in the offender score if the offender has spent ten consecutive years in the community without committing any crime resulting in a conviction since the last date of release.**

**Further, the Sentencing Reform Act permits vacating records of conviction under certain conditions and provides that vacated convictions "shall not be included in the offender's criminal history for purposes of determining a sentence in any subsequent conviction." RCW 9.94A.640. Vacation of the conviction record does not affect or prevent the use of an offender's prior conviction in a later criminal prosecution. The eligibility rules for vacation of conviction record are similar to the "wash-out" rules. Because the "wash-out" rules are automatic and do not require court action, an offense will "wash out" before formal record vacation occurs. (The main distinction between vacation of record of conviction and "wash-out" is that, after vacation, an offender may indicate on employment forms that he or she was not convicted of that crime.)**

To our experience and knowledge, many undocumented persons reside in the Puget Sound region. To our experience and knowledge, many, if not all of these undocumented persons are either fathers who own their own businesses and are providing for their families, or fathers who are working for others and providing for their families or husbands who are working to provide for themselves and their wives or individual men who are working and providing for themselves or mothers who are either working with their husbands or providing for themselves and, perhaps, a child or children. Additionally there are single women who are looking to establish themselves in our land of justice and opportunity. These people are productive members of our society who pay taxes and into our Social Security System.

**We strongly urge that the Proposed Rules be amended to provide for the same sentencing guidelines as provided in the Washington Adult Sentencing Guidelines Manual. Such Guidelines would provide a clear path for judges in determining requests for asylum.**

We, the Indivisible Vashon: Immigration/Refugee Rights Group respectfully submit these comments in opposition to the proposed new harsh rules and in favor of our suggestions herein.

Respectfully submitted

Dr. Susie Murphy, Ph.D., Chair

ER-0848

AR.08890

i       *See, e.g. Plyler v. Doe 475 U.S. 202 (1982).*
ii      *See, e.g. 59 UCLA L. REV. 1124 (2012).*
iii     The existing categorical bars to asylum eligibility are discussed in detail on p. 69641 of the Proposed Rules.
iv.     8 U.S.C. Secs. 1158(b)((2)(A)(ii) and (B)(i).
v.      Pub. L. No. 100-690, Sec. 7342, 102 Stat. 4181, 4469-70.
vi.     8 U.S.C. Sec. 1101(a)(43).
vii.    *Matter of Pula,* 19 I.&N. Dec. 467, 474(BIA 1987).
viii.   The Proposed Rules at p. 69651.
ix.     2018 Washington State Adult Sentencing Guidelines Manual, ver. 20181214

AR.08891

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejd-x7qg
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0334
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Zackary Berger
**Address:**
  2736 N Calvert St
  Baltimore,  MD,  21218

## General Comment

I am a staff physician at the Esperanza Center Health Clinic in Baltimore, Maryland. Every week I try and help my patients who come here from Guatemala, El Salvador, Honduras, and other countries south of the border. Many are seeking asylum, the victims of violent persecution that chills the blood to hear about. Many also run afoul of our carceral-legal system. Any reading this comment must know this system is not truthfully called a justice system - because it is so often unjust, particular to those who are not white, who do not speak English, do not have legal representation, or don't have money. To penalize precisely those asylum seekers who are most vulnerable to attack by our legal system further reinforces my impression, based on truth, that the Trump administration wishes to allow in only whites, and keep out all else. This is not what I want for this country, and these regulatory changes must be resisted.

AR.08892

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejd-xs9t
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0335
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I'm writing express my opposition to this rule change. Several members of my family are immigrants, and I believe strongly that immigrants are a vital part of our community. I'm concerned that this rule change would only expose people who came to this country for stability and better lives to even more violence and death. Our American values call for us to be a refuge for those fleeing violence, persecution, and poverty, and the effects from this rule would not align with those values. The Trump administration must withdraw this proposal.

AR.08893

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejd-hh5l
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0336
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** anonymous anonymous

---

## General Comment

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.
This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

AR.08894

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08895

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 23, 2020 |
| **Received:** January 18, 2020 |
| **Status:** Posted |
| **Posted:** January 21, 2020 |
| **Tracking No.** 1k4-9eil-h6st |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0337
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Emily Morris

---

## General Comment

I write to express my strong opposition to this proposed rule change. Immigrants are a vital part of my community, my neighborhood, and my state. I believe strongly that it is our responsibility as a wealthy, privileged nation to welcome people fleeing violence, and deeply concerned about negative impact this rule would have on our communities. Please do not pass this rule.

AR.08896

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eje-1m7a
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0338
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Alexis Macnab

## General Comment

I write to express my strong opposition to this proposed rule change.

I am an educator working in state universities, and other schools, and the lives and well-being of my students is very important to me. Many of my students are immigrants themselves, or the children of immigrants and asylum seekers who came to this country fleeing violence, persecution, and extreme economic hardship brought on by frightening political and social instability in their country of origin. Under these circumstances they came to the United States for help, and deserve at the very least to be treated with respect and decency as human beings. The proposed rule would inject racial profiling into the asylum process and subject many of the human beings seeking shelter in the U.S. to the same injustice and discriminatory violence they are trying to escape.

The current criminal legal system in our country needs more help to deconstruct the decades of racial and economic injustice that has been built into it structures. Instead, the proposed Trump rule would further punish human beings who've already endured mistreatment and extreme hardship with unjust racial profiling and deportation back to the life-threatening situations from which they fled. Not only is this deeply immoral, it flies in the face of the stated "American Dream" of being a place that welcomes and supports human beings from everywhere on earth with generosity and compassion. How can you turn your backs on people coming to you for help?

The contributions of my students, my colleagues, and friends who have come from such painful and terrifying circumstances to make lives in this country have made my life richer, and contributed to the richness of our overall culture and national experience. If you needed to flee, not just visit another country or take a vacation from your current home, but FLEE, how would you feel? And, how do you feel knowing that you are in a position to deny human beings their basic safety. This country does have the capacity to honor, recognize, and heal a human being fleeing another country for their lives. How does it feel to know you have that ability and space, and yet you refuse to offer or protect it?

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08897

AR.08898

# PUBLIC SUBMISSION

| |
|---|
| **As of:** January 23, 2020 |
| **Received:** January 19, 2020 |
| **Status:** Posted |
| **Posted:** January 21, 2020 |
| **Tracking No.** 1k4-9eje-5w1a |
| **Comments Due:** January 21, 2020 |
| **Submission Type:** Web |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0339
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anna Kaufman
**Address:**
  1635 w estes
  Chicago, IL, 60626

## General Comment

I urge you to withdraw this proposal. It will endanger many people and damage our entire society. I am the daughter of a refugee, and a teacher of refugees, and friends to formerly and currently incarcerated people, and if any of them were jeopardized my community would fall apart. The United States has shown many times its capacity for nurturing life, justice and prosperity. I am so blessed that my family found safety here. We have also shown many times our capacity for violence, exclusion and cruelty. Incarceration and deportations ruin lives, causing death and generations of trauma. Do not pass this rule.

AR.08899

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eje-z4gm
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0340
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ilyce Shugall
**Address:**
   301 Battery Street
   Third Floor
   San Francisco,  CA,  94111
**Email:** ishugall@gmail.com
**Phone:** (415) 225-2563

## General Comment

See attached file(s)

## Attachments

Asylum ban reg comments_Round Table_FINAL

AR.08900



**ROUND TABLE**
of Former Immigration Judges

January 19, 2020

**VIA E-RULEMAKING PORTAL: www.regulations.gov**

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

<u>Re</u>:      <u>EOIR Docket No. 18– 0002</u>

Dear Ms. Alder Reid and Ms. Dunn,

We are writing as members of the Round Table of Former Immigration Judges to express our strong opposition to the Department of Justice and Department of Homeland Security Joint Notice of Proposed Rulemaking ("proposed rule") on "Procedures for Asylum and Bars to Asylum Eligibility".

The Round Table of Former Immigration Judges is a group of former Immigration Judges and Board of Immigration Appeals (BIA) Members who united to file amicus briefs and engage in other advocacy work. The group formed in 2017. In just over two years, the group has grown to more than 40 members, dedicated to the principle of due process for all. Its members have served as amici 37 times in cases before the Supreme Court, various circuit courts, the Attorney General, and the BIA. The Round Table of Former Immigration Judges has also submitted written testimony to Congress and has released numerous press statements and a letter to EOIR's director. Its individual members regularly participate in teaching, training, and press events.

The Round Table opposes the proposed rule which violates the Immigration and Nationality Act, the United States Constitution, and the country's international treaty obligations. Each member

Page 1

of the Round Table has adjudicated applications for asylum and is intimately familiar with the asylum adjudication process. Accordingly, the Round Table has the following concerns about the additional asylum bars and limits to immigration judges', appellate immigration judges', and asylum officers' ability to exercise discretion in asylum cases.

The Round Table asserts that immigration judges and asylum officers who have been tasked with adjudicating asylum cases, are in the best position to assess the impact of criminal conduct and convictions on asylum applications. The task of analyzing and reviewing criminal conduct and convictions should not be taken away from the judges and asylum officers through regulation. Asylum seekers are the most vulnerable members of society who are seeking refuge in the United States. Trained judges and asylum officers should have the authority to consider their cases, even where the applicants have criminal convictions. Such authority is designated to the judges and asylum officers by statute.[1]

The agencies justify the expansive limitations on asylum by citing the authority designated to the Attorney General in the statute: "Congress further provided the Attorney General with the authority to establish by regulation 'any other conditions or limitations on the consideration of an application for asylum,' so long as those limitations are 'not inconsistent with this chapter.' INA 208(d)(5)(B), 8 U.S.C. 1158(d)(5)(B); *see also* INA 208(b)(2)(C), 8 U.S.C. 1158(b)(2)(C)." The new bars and limits on discretionary relief set forth in the proposed regulation are not consistent with the statute and are contrary to Congressional intent. They also interfere with the role of immigration judges and asylum officers. We therefore oppose the proposed additional bars to eligibility, the clarification of the effect of criminal convictions, and the removal of regulations regarding reconsideration of discretionary denials of asylum.

## Additional Limitations on Eligibility for Asylum

The proposed rule intends to bar asylum to individuals convicted of nearly any criminal offense in the United States:

> Those bars would apply to aliens who are convicted of (1) a felony under federal or state law; (2) an offense under 8 U.S.C. 1324(a)(1)(A) or 1324(a)(1)(2) (Alien Smuggling or Harboring); (3) an offense under 8 U.S.C. 1326 (Illegal Reentry); (4) a federal, state, tribal, or local crime involving criminal street gang activity; (5) certain federal, state, tribal, or local offenses concerning the operation of a motor vehicle while under the influence of an intoxicant; (6) a federal, state, tribal, or local domestic violence offense, or who are found by an adjudicator to have engaged in acts of battery or extreme cruelty in a domestic context, even if no conviction resulted; and (7) certain misdemeanors under federal or state law for offenses related to false identification; the unlawful receipt of public benefits from a federal, state, tribal, or local entity; or the possession or trafficking of a controlled substance or controlled-substance paraphernalia.[2]

---

[1] 8 U.S.C. §§ 1158(b)(1)(A); 1229a
[2] 84 Fed. Reg. 69645 (December 19, 2019).

Page 2

AR.08902

In the domestic violence context, a conviction would not be required.[3]

The agencies rely on the language in 8 U.S.C. § 1158(b)(2)(B)(ii) to assert that the Attorney General and Secretary of the Department of Homeland Security (DHS) have the authority to classify all felony offenses as particularly serious crimes.[4]  However, such a blanket rule is not consistent with 8 U.S.C. § 1158(b)(2)(B)(ii), which states that the Attorney General may designate "offenses that will be considered to be a crime described in clause (ii) or (iii) of subparagraph (A)."  8 U.S.C. §1158(b)(2)(A)(ii) specifies the bar to asylum is for a particularly serious crime wherein the non-citizen is a danger to the community.  Designating all felony convictions under all jurisdictions as bars to asylum is beyond what Congress intended and improperly removes all discretion and legal analysis from immigration judges and asylum officers.  Had Congress intended to bar all felony convictions, it would have specified that in the statute.

The agencies suggest that it has become too time intensive, difficult, and inefficient for immigration judges to make determinations about particularly serious crimes and aggravated felonies using the categorical approach required by the United States Supreme Court.[5]  However, it is the job of an immigration judge to employ his or her legal skills and analyze cases.  Moreover, the statute purposely does not limit the particularly serious crime bar to aggravated felonies.  Immigration Judges are in the best position to analyze whether a conviction, if not an aggravated felony, is nevertheless a particularly serious crime that should bar an individual from asylum.  Regulating away the immigration judge corps' ability to exercise discretion does not render the process more efficient,[6] rather, it turns immigration judges into mindless adjudicators.  Moreover, the agencies cannot regulate out of existence Supreme Court precedent and international treaty obligations in order to promote efficiency.  The Supreme Court has held immigration judges to the categorical and modified categorical analysis when analyzing criminal convictions, as that is what the statute requires.[7]

Furthermore a conviction for a crime does not, without more, make one a present or future danger—which is why the Refugee Convention's particularly serious crime bar, made part of United States law through 8 U.S.C. § 1158, should only properly apply if both (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows that she is a present or future danger.[8]  By acceding to the 1967 Protocol Relating to the Status of

---

[3] *Id.*

[4] 84 Fed. Reg. 69645.

[5] *Id.* citing *Taylor v. United States*, 495 U.S. 575 (1990); *Mathis v. United States*, 136 S. Ct. 2243 (2016); *Descamps v. United States*, 133 S. Ct. 2276 (2013).

[6] 84 Fed. Reg 69646

[7] *Taylor* v. *United States,* 495 U.S. 575 (1990); *Moncrieffe* v. *Holder*, 569 U.S. 184, 186 (2013); *Mathis* v. *United States,* 136 S. Ct. 2243 (2016); *Descamps* v. *United States,* 133 S. Ct. 2276 (2013)

[8] See U.N. High Commissioner for Refugees, *Criminal Justice and Immigration Bill: Briefing for the House of Commons at Second Reading* ¶ 11 (July 2007), http://www.unhcr.org/en-us/576d237f7.pdf (the Refugee Convention's particularly serious crime bar only applies if (1) a migrant is convicted of a particularly serious crime and (2) a separate assessment shows she is a "present or future danger.").

Page 3

AR.08903

Refugees,[9] which binds parties to the United Nations Convention Relating to the Status of Refugees,[10] the United States obligated itself to develop and interpret United States refugee law in a manner that complies with the Protocol's principle of non-refoulement (the commitment not to return refugees to a country where they will face persecution on protected grounds), even where potential refugees have allegedly committed criminal offenses. As noted above, immigration judges and asylum officers already have over-broad authority to deny asylum based on allegations of criminal activity, which vastly exceeds the categories for exclusion and expulsion set out in the Convention. Instead of working towards greater congruence with the terms of the Convention, the Proposed Rules carve out categorical bars from protection that violate the language and spirit of the treaty.

Moreover, the Supreme Court in *INS v. Cardoza-Fonseca* found, "[i]f one thing is clear from the legislative history of the new definition of "refugee," and indeed the entire 1980 Act, it is that one of Congress' primary purposes was to bring United States refugee law into conformance with the 1967 United Nations Protocol Relating to the Status of Refugees."[11] The proposed regulations do the exact opposite.

The suggestion that the extensive bar is intended to increase efficiencies is belied by the agencies' instructions that judges and asylum officers use a "reason to believe" standard to determine whether an offense is in furtherance of a criminal street gang and to "assess all reliable evidence in order to determine whether [a] conviction amounts to a domestic violence offense."[12] Further, in the domestic violence context, the proposed regulation would require the judges and asylum officers to consider whether non-adjudicated *conduct* "amounts to a covered act of battery or extreme cruelty."[13]

The proposed regulations bar asylum to those convicted of a crime involving a criminal street gang, regardless of whether the conviction is a felony or misdemeanor.[14] Moreover, this proposed bar does not even require that the statute of conviction include involvement in a street gang as an element. Rather, the proposal is that the judges and asylum officers use a "reason to believe" standard to make the determination.[15] Federal courts have set forth the way in which to perform the categorical approach, whereas, the "reason to believe" standard is arbitrary. Such an approach in the street gang context will lead to the unpredictable results the agencies suggest they are trying to avoid in other sections of the proposed regulations.

Further, the agencies propose to bar asylum under 8 U.S.C. § 1158(b)(2)(C) to "aliens who engaged in acts of battery and extreme cruelty in a domestic context in the United States,

---

[9] United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, [1968] 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 268.

[10] Convention Relating to the Statute of Refugees, July 28, 1951, 140 U.N.T.S. 1954 (hereinafter "Refugee Convention").

[11] *INS v. Cardoza-Fonseca*, 480 U. S. 421, 437 (1987)

[12] 84 Fed. Reg. 69649, 69652

[13] 84 Fed. Reg 6952.

[14] *Id.*

[15] *Id.*

Page 4

AR.08904

regardless of whether such conduct resulted in a criminal conviction."[16] As discussed above, these sweeping bars to asylum eliminate the discretionary authority given to immigration judges and asylum officers. They also require an immigration judge to hold the equivalent of a criminal trial to determine if such activity has been "engaged in."

Requiring immigration judges to make complex determinations regarding the nature and scope of a particular conviction or, in the case of the domestic violence bar, conduct, will lead to massive judicial inefficiencies and "mini-trials" within the asylum adjudication process. The scope of the "reliable evidence" available to immigration judges in asylum cases is potentially limitless; advocates on both sides would be obligated to present endless documents and testimony to prove their cases. This would put an unsustainable burden on respondents, their counsel, and attorneys for DHS. Asylum merits hearings, which tend to be three hours at most under current case completion requirements[17], would provide insufficient time for either side to fully present their cases and would make it impossible for immigration judges to complete cases under the current time constraints.

As the immigration courts contend with backlogs that now exceed one million cases, tasking judges and asylum officers with a highly nuanced, resource-intensive assessment of the connection of a conviction to gang activity and/or the domestic nature of alleged criminal conduct will prolong asylum cases and lead to disparate results that will give rise to an increase in appeals. The proposed regulations repeatedly cite increased efficiency as justification for many of the proposed changes. Yet requiring immigration judges to engage in mini trials to determine the applicability of categorical criminal bars, rather than relying on adjudications obtained through the criminal legal system, will dramatically decrease efficiency in the asylum adjudication process.

As discussed above, the Supreme Court has "long deemed undesirable" exactly the type of "post hoc investigation into the facts of predicate offenses" proposed by the agencies here.[18] Instead, the federal courts have repeatedly embraced the "categorical approach" to determine the immigration consequence(s) of a criminal offense, wherein the immigration judge relies on the statute of conviction as adjudicated by the criminal court system, without relitigating the nature or circumstances of the offense in immigration court[19]. As the Supreme Court has explained, this approach "promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact."[20]

Furthermore, the Departments asks for comments on: (1) what should be considered a sufficient link between an asylum seeker's underlying conviction and the gang related activity in order to trigger the application of the proposed bar, and (2) any other regulatory approaches to defining

---

[16] *Id.*

[17] Memorandum, James R. McHenry III, Case Priorities and Immigration Court Performance Measures, January 17, 2018; *see also* https://www.npr.org/2018/04/03/599158232/justice-department-rolls-out-quotas-for-immigration-judges (discussing memorandum requiring that Immigration Judges complete 700 cases per year).

[18] *Moncrieffe v. Holder*, 569 U.S. 184, 186 (2013).

[19] *See Moncrieffe*, 569 U.S. at 191 ("This categorical approach has a long pedigree in our Nation's immigration law.").

[20] *Moncrieffe*, 569 U.S. at 200-201.

Page 5

the type of gang-related activities that should render individuals ineligible for asylum. The premise of these questions is wrong: a vague "gang related" bar should not be introduced at all. The Immigration and Nationality Act and existing regulations already provide overly broad bars to asylum where criminal behavior by an asylum seeker causes concern by an immigration judge or asylum officer. Adding this additional, superfluous layer of complication risks erroneously excluding bona fide asylum seekers from protection without adding any useful adjudicatory tool to the process.

Suggesting that the proposed regulations are aiming at efficiency while also requiring immigration judges to engage in excessive litigation is contradictory and makes it clear that the agencies are simply trying to eliminate asylum rather than increase efficiencies in adjudication. This does not comport with the statute, constitution, or the United States' international treaty obligations. Finally, efficiencies will not result, as immigration judges will nevertheless be required to analyze the particularly serious crime bar for the withholding of removal analysis.[21]

In addition to creating new bars to asylum both by designating most crimes as "particularly serious crimes" pursuant to 8 U.S.C. § 1158(b)(2)(B)(ii), the agencies also render most crimes categorically exempt from a positive discretionary adjudication of asylum pursuant to 8 U.S.C. § 1158(b)(2)(C). This effort is unlawful. The agencies' reliance on 8 U.S.C. § 1158(b)(2)(C) to render all felony convictions a bar to asylum takes away the discretionary authority granted to immigration judges and asylum officers when it comes to assessing the impact of a conviction on asylum eligibility. Immigration judges and asylum officers have the opportunity to review all evidence, including the circumstances of the conviction during asylum interviews and hearings. Such discretionary determinations are consistent with the statute and the intent of asylum, which is to protect the most vulnerable individuals in society from persecution. "The Secretary of Homeland Security or the Attorney General _may_ grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under this section if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title."[22]

Setting arbitrary large-scale blanket bars to a discretionary determination is inconsistent with the statute and the United States' international treaty obligations. The statute provides specific language about criminal bars, persecutor bars, and particularly serious crimes.[23] Had Congress intended to remove the discretionary authority to grant relief to nearly all applicants with criminal convictions, it would have made that clear in the above referenced sections. However, Congress clearly delineated bars to asylum and while it also provided the Attorney General the authority to clarify such bars, it in no way suggested the Attorney General could regulate away legal analysis of the bars or an immigration judge's or asylum officer's discretion.[24] The proposed rules add sweeping categories of offenses that automatically remove an applicant from the consideration of discretion—a regulatory proposal that is ultra vires to the plain text of the statute.

---

[21] 8 U.S.C. § 1231(b)(3)(B)(ii)
[22] 8 U.S.C. §1158(b)(1)(A) (emphasis added)
[23] 8 U.S.C. § 1158(b)(2)(A), (B)
[24] 8 U.S.C. § 1158(b)(2)(C) ("The Attorney General may by regulation establish additional limitations and conditions, _consistent with this section_…") (emphasis added)

Page 6

AR.08906

The agencies also propose to bar under 8 U.S.C. 1158(b)(2)(B)(ii) and (b)(2)(C) anyone convicted of alien harboring under 8 U.S.C. § 1324(a)(1)(A), (2),[25] illegal reentry under 8 U.S.C. 1326,[26] any convicted of a second or subsequent offense for driving while intoxicated, impaired (DUI), or under the influence or a single such offense that resulted in death or serious bodily injury.[27] The agencies further propose to bar asylum under 8 U.S.C. § 1158(b)(2)(B)(ii) to all individuals convicted for domestic violence and child abuse, regardless of whether the conviction is a misdemeanor or felony.[28] The proposed regulations do not render the adjudication process more efficient, as the language in the domestic violence and DUI bar is vague and requires a case by case assessment of the facts of the case. The proposed regulations serve to eliminate discretion while increasing demands on immigration judges and asylum officers as well as the length and complexity of hearings and interviews.

Moreover, the proposed bar to asylum for multiple offenses for driving under the influence is problematic, particularly for individuals with offenses from states like New Jersey. Unlike the majority of states, New Jersey does not criminalize the offense of driving while intoxicated (DWI). In NJ, DWI is only a traffic offense.[29] Individuals who have been arrested for a DWI have access to certain constitutional protections, such as being entitled to a public defender, and having the burden of proof of beyond a reasonable doubt.[30] However, other constitutional protections are not available, namely the right to trial by jury. This is true regardless of whether the DWI is a first, second, or third offense, and regardless of whether actual jail time may be imposed.[31]

As a practical matter. NJ DWI adjudications are conducted in municipal courts, in which judges, the prosecutors, and the public defenders are all part-time, township-appointed officials. The dockets are often enormous, and, in many cases, defendants do not even seek time to obtain an attorney. They line up to meet with the prosecutor and enter into plea agreements that limit their amount of jail time and/or loss of license. The defendants, with their attorneys if they have one, then appear before the judge and allocute to a brief set of facts and plead guilty; then pay their fines and leave. The prosecutor does not normally even appear in court.

Thus, under the INA, a DWI offense under NJ law does not constitute a crime. In order to be found guilty of a crime, more is needed than just a formal judgment of guilt under a "reasonable doubt" standard, and some punishment was imposed.[32] However, under the proposed regulations, such an offense could nevertheless bar an individual from asylum.

---

[25] 84 Fed. Reg. 69647
[26] 84 Fed. Reg. 69648
[27] 84 Fed. Reg. 69650
[28] 84 Fed. Reg. 69651
[29] *See* NJSA § 39:4-50; *see generally* NJSA §§2C:1-98 (NJ criminal code, in which DWI does not appear)
[30] *See, e.g. State v. Ebert*, 871 A.2d 664 (App. Div. 2005)
[31] *State v. Hamm*, 121 N.J. 109, 577 A 2.d 1259 (1990)
[32] *Castillo v. Att'y Gen.*, 729 F.3d 296 (3d Cir. 2013)

Page 7

AR.08907

The agencies further propose to bar asylum under 8 U.S.C. § 1158(b)(2)(C) to individuals convicted of an expansive list of misdemeanor convictions, including simple possession of a controlled substance.[33] Including such minor offenses in the list of convictions that lead to a bar to asylum further demonstrate that the agencies are working to eliminate discretion from the adjudicatory process. Furthermore, although Congress assigned to the Attorney General the authority to promulgate regulations further defining the particularly serious crime bar and other limits on asylum, had Congress intended to bar from asylum all applicants with criminal convictions, it would have provided such direction in the statute.[34] The language of the statute shows that Congress intended to distinguish particularly serious crimes and aggravated felonies from other crimes, as it set forth specific language barring applicants with such offenses from asylum.[35] Congress easily could have indicated that all felonies or all criminal convictions constitute particularly serious crimes, but it did not. Accordingly, the bar is in conflict with the statute.

### Clarification on the Effect of Criminal Conviction

The agencies further propose to increase the burden on asylum applicants to prove that orders vacating convictions or modifying sentences were not entered to avoid immigration consequences or for rehabilitative purposes.[36] They also create a rebuttable presumption against the validity of an order if such order was entered after the initiation of a removal proceeding or if the applicant moved for the order more than one year after the original order of sentencing.[37] Furthermore, "the rule would provide that the alien must establish that the court issuing an order vacating or expunging a conviction or modifying a sentence had jurisdiction and authority to do so."[38] These new rules would increase, rather than decrease burdens on immigration judges and asylum officers. It would require judges and asylum officers to look beyond a court order. It would also require judges and asylum officers to make jurisdictional findings about state court orders on facially valid orders. It is a long-standing legal principle that courts have jurisdiction to determine their own jurisdiction.[39] If a state court has determined it had jurisdiction to issue an order, it is not the role of the immigration court or any other court to question that finding.

### Removal of Regulations Regarding Reconsideration of Discretionary Denials of Asylum

"The proposed rule would remove the automatic review of a discretionary denial of an alien's asylum application by removing and reserving paragraph (e) in 8 C.F.R. 208.16 and 1208.16."[40] The current regulatory section is consistent with the purpose of asylum—to protect the most vulnerable members of society, including family members of those fleeing persecution. To remove it is inconsistent with the purpose of asylum and therefore inconsistent with the statute. The

---

[33] 84 Fed. Reg. 69653
[34] 8 U.S.C. § 1158(b)(2)(B)(ii) ("The Attorney General may designate by regulation offenses that will be considered to be a crime described in clause (ii) or (iii) of subparagraph (A).")
[35] 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i)
[36] 84 Fed. Reg. 69654
[37] 84 Fed. Reg. 69655
[38] 84 Fed. Reg. 69656
[39] *United States v. United Mine Workers of America*, 330 U.S. 258, 289 (1947)
[40] 84 Fed. Reg. 69656

Page 8

AR.08908

agencies acknowledge that the purpose of the existing regulation is to promote family unity and reunification with spouses and children in third countries.[41]  However, the agencies suggest that the automatic reconsideration is unnecessary, as family unity is a discretionary factor that should be considered in the original adjudication.[42]  8 C.F.R. § 208.16(e) and 1208.16(e) provide additional procedural protections to vulnerable refuges who have been found eligible for withholding of removal.  While the existing regulations require reconsideration and a weighing of factors, including family reunification, they in no way require the immigration judge or asylum officer to grant asylum upon reconsideration.  The proposed regulation provides an extra layer of protection for vulnerable family members and should not be removed.

The agencies again suggest that efficiency is the reason behind eliminating this regulatory section.  However, as discussed above, there are multiple sections of this proposed regulation that render adjudications less, not more efficient.  The purpose of this proposed section is to further limit discretion and reduce access to asylum.

**Conclusion**

These proposed rules erode access to asylum in violation of Congressional intent, the United States Constitution, and international treaty violations.   The Round Table of Immigration Judges therefore urges the Department of Justice and DHS to withdraw, not implement this rule.

Very truly yours,

/s/
Stephen Abrams
Sarah Burr
Teofilo Chapa
Jeffrey Chase
George Chew
Bruce J. Einhorn
Noel Ferris
John Gossart
Paul Grussendorf
Miriam Hayward
Rebecca Jamil
Bill Joyce
Carol King
Elizabeth A. Lamb
Donn Livingston
Peggy McManus
Laura Ramirez
John Richardson

---

[41] 84 Fed. Reg. 69656
[42] 84 Fed. Reg. 69657

Page 9

AR.08909

Lory Rosenberg
Susan Roy
Paul Schmidt
Ilyce Shugall
Denise Slavin
Andrea Sloan
Polly Webber

The Round Table of Immigration Judges

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eje-yyhd
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0341
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** AC Mogal

## General Comment

I strongly oppose this proposed rule change. By restricting asylum for things like helping your spouse or children cross the border, or returning after an illegal deportation, not to mention targeting those who have been unjustly racially profiled in our deeply flawed "justice" system, you are further entrenching completely anti-American bigotry and prejudice. Basic tenets of human rights and established US law have long protected those with fear for their lives, and actions such as those outlined above are completely understandable and defensible in those who have such fears. A choice between your own eligibility for asylum and the safety of your beloved family members is an impossible, inhumane position into which no one should be cruelly forced.

As a physician and the granddaughter and wife of immigrants, I see firsthand every day the great value immigrants bring to their communities and our country as a whole. The physician who helped my infertile sister have 3 children was an immigrant (from Iran). This is a county of immigrants. Those who built the industries from which our national wealth arises and the railroad which enabled transportation across our country were immigrants. It is only by welcoming and protecting immigrants that our country will continue to grow and improve.

I urge the administration to withdraw this bigoted and cruel proposal.

AR.08911

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eje-wcji
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0342
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Dean Schaffer
**Address:**
  550 Kirkham St.
  Apt. 2
  San Francisco, CA, 94122
**Email:** dschaffer23@gmail.com
**Phone:** 818-642-6293

---

## General Comment

I write to express my strong opposition to this proposed rule change. I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.

For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

This proposed rule would inject racial profiling into the asylum process. This latest attack would put even more people seeking asylum at risk of danger - and death. This would in turn eviscerate one of the most important defenses community members have against deportation.

This proposed Trump rule would punish people who've already endured mistreatment and racial profiling in the

AR.08912

criminal legal system a second time -- with deportation back to the very life-threatening situation they fled. This is profoundly immoral, makes a mockery of due process, and comes right out of Steven Miller's racist playbook. The criminal legal system in the U.S. is wracked with racial profiling and obstacles to equal justice. Our harsh immigration laws exploit these obstacles to drive mass incarceration and mass deportation of people of color.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08913

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejf-tlil
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0343
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Laura Atwood

---

## General Comment

I strongly oppose this proposed rule change.

I work in health care and live in a diverse community I love, including immigrants from around the world. I believe strongly that our nation must welcome people fleeing violence, and I'm also concerned about racial profiling in the criminal legal system.

My husband is an immigrant (now citizen) who has lived in the U.S. for 20 years. As a home physical therapist, I work with immigrant community members regularly, and I see the toll the current anti-immigrant environment takes on their stress levels and quality of life. I am afraid many of them could be sent back to their deaths--and I also fear for my child's friends, that they could find themselves without a parent here/

We need to obey the international Refugee Convention, drafted in the wake of the horrors of World War II, and the bipartisan Refugee Act of 1980, allowing anyone present or arriving in the U.S. to apply for asylum.

This proposed rule would put racial profiling into the asylum process, and would put even more people seeking asylum at risk of danger - and death. It would punish people who've already endured mistreatment and racial profiling in the criminal legal system a second time -- with deportation back to the very life-threatening situation they fled.

I believe we must recognize the humanity of every person, including immigrants, and protect our neighbors from discrimination and abuse. Our immigration and asylum policies must honor our ideals of compassion, fairness, and respect for human rights - not trample them.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08914

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejg-owe5
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0344
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Nancy Jones

## General Comment

I write to express my strong opposition to this proposed rule change.
I am a concerned member of the public who believes strongly that our nation must welcome people fleeing violence, and who is strongly concerned about racial profiling in the criminal legal system. Immigrants are a vital part of my community, my neighborhood, and my state.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.
U.S. law enshrines the protections of the international Refugee Convention, drafted in the wake of the horrors of World War II. Under the Refugee Act of 1980, passed with bipartisan support, anyone present or arriving in the U.S. can apply for asylum.
For asylum seekers, making it to the U.S. often means they have found safety from persecution, torture, and sometimes death. Yet asylum seekers face many unjust obstacles in the immigration system.

For these reasons, I call upon the Trump administration to withdraw this proposal

AR.08915

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 19, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** k5l-y3yl-13g4
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0345
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Maria Garnica Albor
**Address:** United States,

---

## General Comment

I am writing to urge the Department of Homeland Security and the Department of Justice to rescind the set of Proposed Rules issued on December 19, 2019 that would make it more difficult for individuals seeking asylum in the United States. These proposed changes constitute an unnecessary, harsh, and unlawful gutting of the asylum protections enshrined in United States and international law. I submit these comments to express my opposition to the entirety of the Proposed Rules and my grave concerns with the administration's continued efforts to exclude refugees from obtaining the security and stability the United States asylum system has long promised. I urge that the Proposed Rules be rescinded in their entirety.

The barriers to asylum for those previously involved in the criminal legal system are already sweeping in scope; adding more barriers is cruel and unnecessary. The laws, regulations, and process governing asylum adjudications are already exceedingly harsh. Asylum seekers bear the burden of establishing their eligibility for asylum in the face of a complex web of laws and regulations, without the benefit of appointed counsel and often from a remote immigration jail. Immigration adjudicators already have vast discretion to deny asylum to those who meet the refugee definition but have been convicted of criminal conduct. Further categorical bars are not needed.

The Proposed Rules are also arbitrary and are not based on evidence. There is no evidence to support the assumption that every noncitizen convicted of any offense punishable by more than a year in prison necessarily constitutes a danger to the community. The Proposed Rules are so capricious as to peremptorily postulate a noncitizen's supposed danger to the community even in circumstances when a federal, state, or local judge has concluded that no danger exists by, for example, imposing a noncustodial sentence.

Furthermore, the Proposed Rules cruelly disregard the connections between trauma and involvement in the criminal legal system. The harsh nature of the Proposed Rules is especially evident when viewed through a trauma-informed lens. As a physician that works with asylum seekers, they are an especially vulnerable population to unimaginable extensive trauma in their countries of origin and, often, along the journey to find

ER-0874

AR.08916

safety. Existing literature suggests that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD). Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma; some turn to drugs and alcohol in an effort to self-medicate. The proposed new bars to asylum include any drug-related conviction (with one exception for a first minor marijuana offense) and any second conviction for driving under the influence. This approach is outright ignores known evidence and instead opts to further instill barriers that will prevent these individuals from safety, healing, and overall a chance at a better life . Particularly given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not with deportation order.

Immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply based on bias and not evidence. As a physician who works largely with immigrant populations, I know how difficult it is for individuals seeking asylum to be granted asylum, and I am appalled that this Administration is making the process more difficult without offering any evidence for why these changes are needed. I strongly urge that the new Proposal Rules be rescinded entirely.

AR.08917

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejh-kbji
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0346
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Dona Murphey

## General Comment

Submitted via [https://www.regulations.gov/document?D=EOIR-2019-0005-0001]

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41;
Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility

1/19/20

To Whom it May Concern:

I am writing on behalf of myself, Dona Kim Murphey, MD PhD, in response to the above-referenced Proposed
Rules to express my/our strong opposition to the Proposed Rules to amend regulations relating to eligibility for
asylum published in the Federal Register on December 19, 2019.

I currently serve on the Board of Directors of Doctors for America (participating actively on the Immigrant and
Refugee Health Justice Working Group) and as the Director of Medical Initiatives for Project Lifeline

AR.08918

(organizing medical services for migrant children and a medicolegal asylum collaborative with Physicians for Human Rights, Lawyers for Good Government, Catholic Charities Rio Grande Valley, and Justice For Our Neighbors). I have written extensively about immigration and health.

a. http://www.houstonchronicle.com/opinion/outlook/article/Murphey-Let-s-not-fail-immigrants-with-hateful-10907485.php
b. http://www.houstonchronicle.com/opinion/outlook/article/Murphey-The-unintended-consequences-of-policies-11234610.php
c. https://www.houstonchronicle.com/opinion/outlook/article/Vetting-immigrants-with-DNA-testing-to-establish-13104942.php
d. https://www.efe.com/efe/usa/blog-tribuna/la-politica-migratoria-y-sus-nefastas-consecuencias-neuropsiquiatricas/50000001-3658757
e. https://impactolatino.com/el-racismo-en-las-aulas-un-peligro-para-la-salud-de-los-ninos-2/

For the reasons detailed in the comments that follow, the Department of Homeland Security and the Department of Justice should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate to contact Dona Kim Murphey, MD PhD at dmkim@post.harvard.edu to provide further information.

Sincerely,
Dona Kim Murphey, MD PhD

---

# Attachments

criminalizationOfAsylumSeekers_ProposedRules

AR.08919

On December 19th, the Department of Homeland Security (DHS) and the Department of Justice (DOJ) issued a joint set of Proposed Rules that would make three primary changes to the rules governing asylum adjudications. As a physician who is expert in neuroscience and has been deeply involved in immigrant and refugee health justice for the last several years - including immigration detention medical records review and advocacy, Flores Settlement Agreement related work, public engagement around opposition to racial profiling laws in Texas (SB4, 287(g)), and now medical and medicolegal efforts with asylum seekers in Matamoros, I am firmly opposed to the Proposed Rules, which cruelly disregard the connections between trauma and involvement in the criminal legal system.

The harsh nature of the Proposed Rules is especially evident when viewed through a trauma-informed lens. Asylum seekers are an inherently vulnerable population because of the trauma they have experienced in their countries of origin and, often, along the journey to find safety. Existing literature suggests that at least one out of every three asylum seekers struggles with depression, anxiety, and/or post-traumatic stress disorder (PTSD) (1).

As a neurologist and neuroscientist, I understand the relationship between stress hormones and the formation of cerebral circuits, their function and dysfunction, and illness. I am deeply preoccupied with the unintended consequences of our assault on asylum with respect to the health and wellbeing of migrant children, their parents, and future generations.

In my role as Director of Medical Initiatives of Project Lifeline, I coordinate a medicolegal asylum effort in Matamoros, where a large and growing number (2500+) of asylum seekers live in a dangerous outdoor encampment as they await their asylum hearings. One young mother we interviewed who was fleeing specific sexual violence in her home country had also been abducted in Mexico with her two young children. She disclosed to the psychologist that she cries a lot these days, every day, many times. She sleeps very little. She spends nights anxiously worrying about the danger to which she has exposed her children. She has frequent nightmares about being chased by unknown men, about walking among dead bodies. She has lost 17 pounds since being in the camp. She has a clear and compelling diagnosis of PTSD.

One recent study found the mental health problems facing refugees and asylum seekers so acute that more than a third of the study's sample admitted having suicidal thoughts in the preceding two weeks (2). Another young woman we interviewed - a teenager who had been brutally raped - could not sleep, had nightmares, reported violent ideation, and was engaging frequently in self-harm. Under an asylum policy that holds her captive in Matamoros, regarded as a Do Not Travel destination by our Department of State, where she has no access to appropriate therapy, there is no question her trauma is amplified.

AR.08920

I was personally involved in the medical review of this child's case during family separation. His family came in search of asylum.

https://www.washingtonpost.com/local/i-want-to-die-was-a-5-year-old-drugged-after-being-separated-from-his-dad-at-the-border/2018/08/08/df4cc2aa-95e1-11e8-a679-b09212fb69c2_story.html

Studies consistently reveal a high prevalence of comorbidity of PTSD and substance use disorders, with individuals with PTSD up to 14 times more likely to struggle with a substance use disorder (3). Asylum seekers in the United States are often unable to access affordable medical care and treatments for complex trauma (4); some turn to drugs and alcohol in an effort to self-medicate (5). The proposed new bars to asylum include drug-related convictions that ultimately punish people who we have in our part driven to these behaviors by our cruel policies. It also ignores the evidence. Particularly given the vulnerabilities of asylum seeking populations, prior struggles with addiction should be addressed with treatment and compassion, not a closed door and deportation order. While as physicians, we protect the health, wellbeing, and dignity of the individual, a utilitarian (and evidence based) lens also reveals that access to treatment is a cost-effective way to reduce crime (6).

Finally, immigration adjudicators already maintain the authority to deny asylum to individuals with drug-related criminal histories on the basis of discretion; denying asylum seekers even the opportunity to present the countervailing factors of their past trauma and potential recovery is simply diabolical.

(1) Giulia Turrini et al., "Common mental disorders in asylum seekers and refugees: umbrella review of prevalence and intervention studies," International Journal of Mental Health Systems 11 (August 2017): 51, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5571637/.

(2) Megan Brooks, "Refugees have high burden of mental health problems," Psychiatry and Behavioral Health Learning Network, June 2019, https://www.psychcongress.com/article/refugees-have-high-burden-mental-health-problems.

(3) Jenna L McCauley et al., "Posttraumatic Stress Disorder and Co-Occurring Substance Use Disorders: Advances in Assessment and Treatment," Clinical Psychology Science and Practice 19, 3 (October 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3811127/.

(4) For more information on immigrant eligibility for federal benefits, see https://www.nilc.org/issues/health-care/.

(5) Carrier Clinic, Trauma and Addiction (2019), https://carrierclinic.org/2019/08/06/trauma-and-addiction/ ("...some people struggling to manage the effects of trauma in their lives may turn to drugs and

AR.08921

alcohol to self-medicate. PTSD symptoms like agitation, hypersensitivity to loud noises or sudden movements, depression, social withdrawal and insomnia may seem more manageable through the use of sedating or stimulating drugs depending on the symptom. However, addiction soon becomes yet another problem in the trauma survivor's life. Before long, the 'cure' no longer works and causes far more pain to an already suffering person.").

(6) https://www.nber.org/papers/w22610.pdf

# PUBLIC SUBMISSION

| | |
|---|---|
| **As of:** January 23, 2020 | |
| **Received:** January 20, 2020 | |
| **Status:** Posted | |
| **Posted:** January 21, 2020 | |
| **Tracking No.** 1k4-9ejn-sqhn | |
| **Comments Due:** January 21, 2020 | |
| **Submission Type:** Web | |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0347
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Suzanne Sorkin
**Address:**
  800 Cottageview Dr. Ste. 411
  Traverse City,  MI,  49684
**Email:** sorkin@msu.edu

## General Comment

We should not be adding more bars to asylum seekers. For example, if someone has had a conviction expunged or vacated that should not be held against them. These people are leaving terrible, life-threatening circumstances. Whenever possible we should follow our wonderful American tradition of being welcoming to those seeking asylum here.

AR.08923

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejn-eayz
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0348
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Amanda Birdwell
**Address:**
 30 addison st
 Oxford,  19363
**Email:** ars.birdwell@gmail.com
**Phone:** 610-864-1022

---

## General Comment

I am a private citizen writing to express my strong opposition to the current proposed rules for asylum and bars to asl eligibility.

By including in the list of new barriers to entry both any and all minor offense, including some that are often unavoidable for asylum seekers - such as "smuggling" their own children and using fraudulent documents - these rules effectively make asylum impossible. Arguably, a person who did not have to break some of these laws in order to reach safety - who could enter the United States "the right way" - would not need asylum.

This law will kill people by denying asylum to those who need it most.

As a private citizen without immigration experience, whose experience is limited to a basic understanding of what asylum is and my knowledge of the experiences of my family members who had to leave their country during World War II, plus a rudimentary understanding of history, I am embarrassed to have to be explaining this.

There are ways to address both national security and the concern about how many immigrants our nation can support. Lazily appealing to nationalism and racism, and conflating these two issues, and instilling fear of others in our communities in order to maintain the power to do so, are not the solution.

Respectfully,

Amanda Birdwell

AR.08924

AR.08925

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejq-6mb3
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0349
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Janet Rosenbaum
**Address:**
   Brooklyn, NY, 11205-3757
**Email:** janet.rosenbaum@gmail.com
**Phone:** 3472447247

## General Comment

My in-laws came to this country seeking asylum from genocide in Europe. Asylum is a fundamental human right, and it should not be conditional on anything. Please preserve asylum rights for migrants arriving in the US from around the world. Deportation is likely to be a death sentence, and thus disproportionate punishment for a crime. My first family members arrived on these shores in 1639 and were fleeing debts they could not pay in England, so they were criminals under English law. Everyone seeking asylum in the US should be given the same chance that my criminal ancestors --- who helped to found this country --- were given.

AR.08926

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejr-2nz7
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0350
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** connie raether
**Address:**
    1700 E. Memory Lane
    Appleton,  WI,  54913
**Email:** connieraether@gmail.com
**Phone:** 9208788370

## General Comment

The right to asylum is granted under the Refugee Act, passed in 1980. Our values call for asylees to be treated fairly and with dignity and respect. The changes to the laws proposed by this administration do NOT reflect these values. There are many people in this country and many faith communities who have stepped forward to host asylees and keep them safe until their hearing. This ruling would cause them to be deported back to the unsafe conditions from which they fled. There is no reason to further traumatize people who have suffered persecution and horrors that most of us can never imagine. The words on the Statue of Liberty should MEAN something. Our country is a nation of immigrants and we need to honor and celebrate that, not trash it. Please do NOT pass these mean spirited and contrarian proposal. Thank you. Connie Raether

AR.08927

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejr-srdx
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0351
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** E. J.F.
**Address:**
   PA,

---

## General Comment

I am writing to express my strong opposition to the proposed rule. The addition of new criminal bars to asylum unfairly restricts an already onerous asylum process and makes the possibility of asylum an ever more distant and empty promise for the most vulnerable in our society and world.

While the asylum statute, 8 U.S.C. 1158, does bar asylum for individuals convicted of "particularly serious" crimes, this rule broadens the scope of disqualifying crimes so much as to render the qualifier "particularly serious" meaningless. It would cover low-level drug offenses, mere allegations of domestic violence even in the absence of a conviction, and criminal history that the state court has determined in the exercise of its own discretion should be expunged. Especially concerning is the inclusion of offenses that are directly related to an individual's flight itself, including using fraudulent documents, reentry, and alien smuggling. An asylum seeker fleeing imminent violence, denied admission at a port of entry and seeking any way to reach safety with themselves and their children is likely to commit any one of these offenses merely in an attempt to be able to apply for asylum. Placing the label of "criminal" on this conduct is just the latest of a long series of attempts to dehumanize and de-legitimize asylum seekers as our country attempts to slam the door in the face of their suffering. Our government's attempts to do so, and to deny our fellow humans even the dignity of a chance to apply for asylum, is morally wrong.

Additionally concerning are the racially disproportionate effects that this policy will have. Communities of color are already over-policed and racially profiled, and more likely to come into contact with the criminal justice system. As a result, this policy will disproportionately target and exclude poor and minority individuals who are more likely to have these brushes with the criminal justice system. The already existing inequities of our criminal justice system are compounded for recently arrived individuals with limited knowledge of our language and legal system, who may have difficulty accessing counsel or be rushed into plea deals. They should not suffer the additional and grossly disproportionate punishment of a denial of asylum.

This rule's focus on "criminal" behavior also displays a fundamental lack of empathy and disconnect with the realities of trauma facing asylum seekers and immigrant communities generally. Symptoms of trauma may lead to addiction and other regrettable choices such as violent outbreaks, petty crime, DUIs, or drug use. The same is

AR.08928

true in many poor communities throughout the U.S. But the answer is not to pile on additional punishment by categorically denying these individuals the protection of our laws and condemning them to the trauma, suffering, and potential death that they fled. It should be to respond with empathy, treatment, and solutions.

As a law student who has worked with immigrant communities, including individuals with criminal convictions, I am constantly amazed by the resilience and grace of my clients who have overcome things I can barely imagine. The asylum seekers who would be affected by this rule have suffered immensely. They have been tested by threats, violence, poverty, and persecution, but have stood by their convictions with a fortitude that I can only aspire to. Individuals who have made mistakes have a capacity for growth and redemption that is inspiring to witness. They are survivors, and make our country a stronger and more hopeful place. Despite everything they have been through, so many of the people I have the privilege of working with continue to have hope for the future, strength to help their families survive, and faith in our government to treat them fairly. Right now I worry that their faith is misplaced.

For these reasons, I encourage DHS and DOJ to reject this proposed rule, and to scale back the other substantial obstacles to asylum that are currently in place.

AR.08929

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-tlyt
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0352
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Gary Crevier
**Address:**
  37 Ramlen Ct
  Appleton,  WI,  54915
**Email:** gcrevier41@gmail.com
**Phone:** 920-734-2074
**Organization:** ESTHER Fox Valley

## General Comment

My God, my God! How long must we put up with such lack of compassion and respect for all individuals and
their basic human rights that we ALL should be protecting? Should we not be breaking down barriers that
continue to divide us? Please do not pass any legislation that disenfranchises people from their beauty as human
beings denying them the right to exist without segregation and oppression. Do you not see the fear that we are
forcing people to live under? Please do all in your power to deal with all people as your own brother, sister or
your own child.

AR.08930

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-6grn
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0353
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Avi Winokur

## General Comment

See attached file(s)

## Attachments

20200120120854375

AR.08931

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional): Avi Winokur

Comment:

All of the proposed new bars involve alleged offenses that are selectively enforced against people of color and minority groups. In other words the proposed law change traffics in racial bias and prejudice.

The fact that these bars are neutral on their face does not not absolve them from the charge of racial bias.

The idea that a first offense with a possible one year plus [conviction] sentence for conviction when in fact the person is not sentenced and is otherwise exemplary is patently xenophobic.

Finally the kidnapping charge where parents are trying to reunite with their children is too cruel to imagine that this country of immigrant should countenance.

In conclusion this clearly xenophobic and racist rule should be rejected.

AR.08932

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-y63e
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0354
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Mary Ann Buckley

## General Comment

See attached file(s)

## Attachments

20200120120902838

AR.08933

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional): MARY ANN BUCKLEY

Comment:

I oppose the DOJ & DHS proposed Rule change: Procedures for Asylum & Bars to Asylum Eligibility."

I believe these bars are unfair, & create obstacles for people seeking asylum in the USA. They prevent those with minor criminal infractions from seeking asylum. They give too much scope for law enforcement & the judicial system to reject asylum without adequate consideration of whether the migrant is truly dangerous or violent. They will not achieve their goal of making the country safer.

The USA should continue to lead the asylum program rather than create blocks to it, when asylum seekers are seeking to escape horrendous situations of violence. This rule change contradicts our national history of welcoming migrants who are seeking basic safety & security.

I urge you to ___ draw this proposed

AR.08934

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-svfk
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0355
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ulyana Briggs

## General Comment

I write to express my strong opposition to this proposed rule change.

I am a 30 year old immigrant who gained citizenship at the age of 13. My family left a country hostile to their religious and political beliefs and their ability to earn enough to feed their family which included 3 children under the age of 8.
I know firsthand how hardworking, honest, and valuable immigrants are.
I am deeply concerned with this rule change and the dire consequences these precious people would encounter.

Our values call for the U.S. to be a place of refuge for people fleeing violence, starvation, poverty, or persecution.

Both US law and morality indicate asylum seekers must be treated fairly and protected from the hardships and sometimes imminent death they fled from in their origin countries.
The proposed rule change would do the opposite, putting these individuals and families in danger, criminalizing them, and subjecting them to racial profiling.
I believe and hope the US will recognize the humanity of every person and extend our protection to those vulnerable to discrimination and abuse. May we not join in the evil people flee from and cause them further harm but live up to the honorable ideals we often espouse.

For these reasons, I call upon the Trump administration to withdraw this proposal.

AR.08935

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-io9l
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0356
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Patrick Ammerman

## General Comment

See attached file(s)

## Attachments

20200120121535546

AR.08936

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional): Patrick Ammerman

Comment: I am writing to express my disapproval of the Department of Justice and Department of Homeland Security's rule to add new bars to asylum eligibility. The new proposed rule change would put up bars that needlessly impede asylum seekers who are seeking to exercise their nationally and internationally recognized right to seek asylum. There were and are sufficient laws in practice to bar dangerous entities from entering into the United States of America. The proposed additional bars for those who 1) have convictions involving possible jail time 2) are arrested for driving under the influence and 3) are suspected of domestic violence without a conviction are not threats that are being removed from the United States through this rule change. These are relatively minor infractions or infractions that have not been fully processed through the US judicial system. Moreover, these convictions or circumstances are more likely to be true of people of color or populations that have historically been over-policed.

Asylum seekers are not likely to commit crimes and come to the United States seeking safety, security and a better life. The United States has historically acted as a leader in offering asylum, and is an example for the world through its legal processes. But the new proposed rule change would take →

AR 08937

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional):

Comment: the authority of the judicial system and put more in the hands of immigration officers, who can now enforce bars even without a criminal conviction. This is an unjust, unconstitutional granting of power to unelected representatives of the executive branch (the immigration officers and other border officers).

The US government must protect the international rights of asylum seekers and abide by the US's traditional separation of powers. As such, the departments should refrain from enacting this rule change.

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-vvnz
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0357
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Kayo Kamguem

## General Comment

See attached file(s)

## Attachments

20200120120916796

AR.08939

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional): Kaye Kamgwem Cecile Jelissa.

Comment:

- I believe that the rule about kidnapping is very inconsiderate of immigrants trying to safe their children and relatives from wars and strikes. If we would exempt people from charges regarding saving someone's life, then we will be as close to justice as possible.

- It should be noted that most of the people caught driving under influence are people of color, which creates an unjust system. I am for the fact that people should drive when sound but I will stand for the fact that all race should be considered in this law.

AR.08940

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-wqa1
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0358
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Ann Cohen

## General Comment

See attached file(s)

## Attachments

20200120120923007

AR.08941

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional): Ann Cohen, Philadephia, PA
19128

Comment:

On this Martin Luther King Day, it is important to oppose the new rule change.

I am a second generation American I knew my grandparents who built businesses and lives in Philadelphia. Their children, grandchildren, and great grand children have made wonderful contributions to America. My grandparents fled violence and persecution in Estern Europe Just as immigrants from war torn areas and areas of violence in central America, Africa, and the Middle East are doing today.

We should continue to be leaders in welcoming these immigrants.

The new rule throws up barriers for unfounded, and inconsequential criminal infractions. There is NO opportunity for due process for those barred from seeking asylum.

Due process is fundamental to the legal process in the US, and should be reason enough to withdraw this rule.

Thank you for your consideration.

AR.08942

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-82of
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0359
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

See attached file(s)

## Attachments

20200120120929459

AR.08943

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional): I am writing to oppose the proposed rule change.

Comment: The Proposed Rule Change is inhumane and un-American. Our government should take a deeper dive into this issue and assess the circumstantial causes of migration to our country. It is important for us to understand that the conditions of the countries that surround us affect us. We can't simply turn a blind eye to the needs of others. Every human being deserves a right to a better life.

The conditions outlined in the Proposed Rule Change are flawed. They inevitably target a certain group of people. Law enforcement officers have a history of targeting people of color and this rule will further perpetuate this ongoing issue.

AR.08944

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-i2es
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0360
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Hanae Togami

## General Comment

See attached file(s)

## Attachments

20200120120935954

AR.08945

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional): Hanae Togami

Comment:

I am against this rule, because it eliminates the ability for an immigration official from consider facts such as past trauma, rehabilitation, or discrimination connected to a candidate's criminal conduct before denying their asylum case. These rules give law enforcement and the judicial system too much leeway to reject asylum claims based on scant evidence and do so without regard to whether the migrants applying are actually dangerous or violent. Law enforcement is often plagued by corruption and discrimination and often targets people of color. Someone who falls victim to this discrimination should not be barred from receiving asylum. I also believe that small non-violent crimes should not be the barrier for asylum. This rule gives too much power to law enforcement, immigration officials, and those within the judicial system to make arbitrary, misinformed decisions regarding someone's asylum case and is just another move by the administration to deny asylum to hundreds of seekers.

AR.08946

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-25k7
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0361
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

See attached file(s)

## Attachments

20200120120942005

AR.08947

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional):

Comment: I am writing to oppose the Department of Justice and Department of Homeland Security's proposed rule change: Procedures for Asylum and Bars to Asylum Eligibility. These new bars to asylum are based on misconceptions and attacking people of color. This proposed rule is against the history of the United State and help to enforce a mith of a nation of white Europeans colonizers, which not akknolougde the divasity of people and groups who make this country the most culturaly rich in the world. Immigrants are a great asset for the economy & culture of this country and no mimon who seek asylum from escape violence & poverty should be deny.

ER-0906

AR.08948

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-9gv5
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0362
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

See attached file(s)

## Attachments

20200120120948160

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional):

Comment: I am writing to oppose the DOJ and DoHS proposed rule change increasing bars to asylum eligibility. These are asylum seekers, fleeing dangerous living situations. Moreover the problem with these bars is the subjectivity and potential opportunities for racial profiling. Enforcement of these rules can be — and has been shown to be — unfairly and racially targeting asylum seekers of color — families, children, law-abiding people. People like these have been shown, time and time again, to be unjustly used by our legal and criminal justice system. These rules but invite further abuse and mistreatment. We as better than this. We have to be better than this.

These new rules must be withdrawn in entirety and replaced with more careful, just policies.

AR.08950

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 20, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ejt-l22d
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0363
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Deborah Stern

## General Comment

See attached file(s)

## Attachments

20200120120954563

AR.08951

Public Comment on Proposed Rule Change

Procedures for Asylum and Bars to Asylum Eligibility

RIN: 84 FR 69640

Agency: Department of Justice and the Department of Homeland Security

Name (optional): DEBORAH SHAN

Comment:

THE NEW CATEGORIES OF CRIMINAL
CONVICTIONS OR ALLEGED CONDUCT BAR
DESERVING ASYLUM-SEEKERS FROM
SEEK ASYLUM. EXISTING LAWS ALREADY
BANS ANY PERSON CONVICTED OF A "PARTIC-
ULARLY SERIOUS CRIME". ASYLUM-SEEKERS
ARE COMING FROM VIOLENCE AND DANGER
AND NEED TO BE GIVEN THE CHANCE FOR A
BETTER LIFE - THAT IS WHAT THIS COUNTRY STANDS
FOR. I URGE WITHDRAWAL OF THIS PROPOSED RULE
IN IB ENTIRETY, AND THE ENACTMENT OF MORE
WELCOMING POLICIES TOWARD ASYLUM SEEKERS.

AR.08952

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ekj-bxur
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0364
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Ryan Brewer
**Address:**
    2269 Adam Clayton Powell Jr. Blvd
    Apt. 5A
    New York, NY, 10030
**Email:** jazatlan@yahoo.com
**Phone:** 9147197015

---

## General Comment

I am a public defender and immigration attorney who represents immigrants in the custody of U.S. Immigration and Customs Enforcement facing removal proceedings before the Executive Office of Immigration Review. I work every day with individuals who have been convicted of crimes and are seeking asylum in the United States. I strenuously oppose this proposed rule and am deeply troubled by the deleterious impacts it will have on asylum seekers. I further oppose this rule on the basis that it is ultra vires and exceeds the scope of this agency's authority to engage in a proposed rulemaking, given that the Immigration and Nationality Act does not set forth categorical bars for the offenses covered by this proposed rule. Such categorical bars undermine the individualized assessment required in agency discretionary determinations, see Matter of Pula, 19 I&N Dec. 467 (BIA 1987) and as well as the case-by-case determinations required for analyzing whether an offense constitutes a particularly serious crime, see Matter of N-A-M-, 24 I&N Dec. 336 (BIA 2007). Moreover, the categorical bars set forth in the proposed rule violate the presumption that asylum should be granted in discretion but for in the instance of "the most egregious adverse factors." Matter of Kasinga, 21 I&N Dec. 357, 367 (BIA 1996).

This rule will have the impact of removing the discretion of immigration judges, whom are trained to make such determinations, and will result in absurd and outrageous denials of asylum for individuals who would otherwise succeed in even the most demanding analysis of factors to be balanced. Individuals whom have received poor representation or whom are unaware of the consequences of their decisions in criminal court -- asylum seekers are particularly vulnerable given that they often are indigent and unfamiliar with the U.S. legal system -- will suffer double punishment should an unfair criminal conviction further bar them from protection under section 208 of the INA. Moreover, with the tightening of other legal requirements and precedential decisions issued by the Board of Immigration Appeals and the Attorney General (e.g. Matter of L-E-A-, 27 I&N Dec. 494 (A.G.

AR.08953

2018); Matter of A-B-, 27 I&N Dec. 316 (A.G.2018)) the possibility of obtaining alternative forms of relief that require a much more demanding burden of proof is yet more tenuous. These combined factors increase the likelihood that people whom would have otherwise been able to obtain asylum will be deported into persecution or even death. This terrifying prospect is reason enough to stop the enactment of this proposed regulation.

AR.08954

# PUBLIC SUBMISSION

| | |
|---|---|
| **As of:** January 23, 2020 | |
| **Received:** January 21, 2020 | |
| **Status:** Posted | |
| **Posted:** January 21, 2020 | |
| **Tracking No.** 1k4-9ekj-k80h | |
| **Comments Due:** January 21, 2020 | |
| **Submission Type:** Web | |

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0365
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Sarah King
**Address:**
   27 Frye St
   Lewiston,  04240
**Email:** sking2@bates.edu
**Phone:** 6176107252

---

## General Comment

I disagree strongly with these proposed rules by the USCIS and EOIR, as they make asylum eligibility even more difficult to obtain. The provision also threatens to remove reconsideration of discretionary denials of asylum, putting asylum-seekers completely at the mercy of The Departments.

AR.08955

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ekj-ogn2
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0366
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Jill Bussey
**Address:**
  8757 Georgia Avenue
  Suite 850
  Silver Spring,  MD,  20910
**Email:** jbussey@cliniclegal.org
**Phone:** 3015654833

## General Comment

The Catholic Legal Immigration Network, Inc. submits these comments in response and opposition to the Department of Justice and Department of Homeland Security's joint Notice of Proposed Rulemaking entitled "Procedures for Asylum and Bars to Asylum Eligibility" published on December 19, 2019. As detailed in our attached letter, CLINIC urges the withdrawal of these proposed regulations, as they are contrary to our treaty obligations and to the congressional intent behind our domestic asylum law. Please see our full comment attached.

## Attachments

FINAL CLINIC Comment Criminal Bars to Asylum



CATHOLIC LEGAL
IMMIGRATION
NETWORK, INC.

8757 Georgia Avenue ● Suite 850 ● Silver Spring, MD 20910● Tel: 301.565.4800● Fax: 301.565.4824 ● Website: www.cliniclegal.org

*Submitted via www.regulations.gov*

January 21, 2020

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041 Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

**Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and Bars to Asylum Eligibility**[1]

Dear Ms. Alder Reid and Ms. Dunn:

The Catholic Legal Immigration Network, Inc. (CLINIC) submits these comments in response and opposition to the Department of Justice (DOJ) and Department of Homeland Security's (DHS) joint Notice of Proposed Rulemaking (NPRM) entitled "Procedures for Asylum and Bars to Asylum Eligibility" published on December 19, 2019. CLINIC urges the withdrawal of these proposed regulations, as they are contrary to our treaty obligations and to the congressional intent behind our domestic asylum law.

CLINIC embraces the core Gospel value of welcoming the stranger. CLINIC promotes the dignity and protects the rights of immigrants in partnership with a dedicated network of Catholic and community legal immigration programs. CLINIC is the largest nationwide network of nonprofit immigration programs, with approximately 375 affiliates in 49 states and the District of Columbia. With its affiliates, CLINIC advocates for the just and humane treatment of asylum seekers through direct representation, federal litigation, and engagement with policy makers.

---

[1] These comments were primarily drafted by Rachel Naggar, manager of the BIA Pro Bono Project and staff attorney with the Defending Vulnerable Populations program. Significant support was provided by Victoria Neilson, managing attorney of the Defending Vulnerable Populations program.

AR.08957

The implementation of these proposed regulations would result in the wrongful return of refugees to countries where their lives and safety are threatened. The regulations violate our international commitments in acceding to the United Nations Refugee Convention and Protocol, the plain language of the Immigration and Nationality Act (INA), and congressional intent in enacting the Refugee Act of 1980. CLINIC believes that U.S. asylum policies should reflect the country's core moral values and historical practice of providing refuge to those fleeing persecution. Therefore, we urge DOJ and DHS to immediately withdraw the NPRM "Procedures for Asylum and Bars to Asylum Eligibility."

## I.      Background

The United Nations Convention Pertaining to the Status of Refugees ("Refugee Convention") was written to address the needs of the large number of European refugees after World War II.[2] In 1967, the Protocol Relating to the Status of Refugees ("Refugee Protocol") was enacted, applying the principles of the Convention to refugees worldwide.[3] As a signatory to the Refugee Protocol (and, by extension, the Refugee Convention), the United States is prohibited from returning a person to a country where their life or liberty would be threatened on account of race, religion, nationality, political opinion, or membership in a particular social group.[4]

Recognizing that states were concerned with admitting refugees who presented a danger to their security, certain exclusions were included in the Refugee Convention.[5] Article 1F of the Refugee Convention provides that:

> The provisions of this Convention shall not apply to any person with respect to whom there are serious reasons for considering that: (a) he has committed a crime against peace, a war crime, or a crime against humanity, as defined in the inter- national instruments drawn up to make provision in respect of such crimes; (b) he has committed a serious non-political crime outside the country of refuge prior to his admission to that country as a refugee; (c) he has been guilty of acts contrary to the purposes and principles of the United Nations.

The United Nations High Commissioner for Refugees (UNHCR), the agency with supervisory responsibility over the administration of the Refugee Convention, cautions that, "[c]onsidering the serious consequences of exclusion for the person concerned, however, the interpretation of these exclusion clauses must be restrictive."[6] The UNHCR further advises that, in considering what is a serious non-political crime, it must be "a capital crime or very grave punishable act. Minor offenses punishable by moderate sentences are not grounds for exclusion…."[7]

---

[2] U.N. High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol relating to the Status of Refugees*, U.N. Doc. HCR/IP/Eng/REV. ¶ 5, (1979, reissued 2019), found at www.unhcr.org/en-us/publications/legal/5ddfcdc47/handbook-procedures-criteria-determining-refugee-status-under-1951-convention.html (hereinafter "UNHRC Handbook").
[3] *Id*. at ¶ 8.
[4] *Id*. at ¶ 9; Convention Relating to the Statute of Refugees, July 28, 1951, 140 U.N.T.S. 1954 (hereinafter "Refugee Convention") at article 33(1).
[5] Refugee Convention, *supra*, at article 1F; UNHCR Handbook, *supra*, at ¶148.
[6] UNHCR Handbook, *supra*, at ¶148.
[7] UNHCR Handbook, *supra*, at ¶155.

AR.08958

In 1980, Congress passed the Refugee Act, for the purpose of bringing U.S. refugee law into conformance with the Refugee Convention and Protocol.[8] In adopting the Refugee Act, Congress intended that "the language in the Act should be read consistently with the United Nations' interpretation of the refugee standards."[9]

It was not until the Immigration Act of 1990 that Congress introduced the first statutory bars to asylum based on criminal grounds.[10] Drawing from the language of Article 33 of the Refugee Convention, which provides for the expulsion of certain refugees from their receiving country, the Immigration Act barred asylum for anyone who, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States."[11] It further defined all aggravated felonies as particularly serious crimes.[12]

In 1996, as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Congress authorized the attorney general to "designate by regulation offenses that will be considered to be [particularly serious crimes]" for purposes of asylum.[13] IIRIRA further provided the attorney general with the authority to establish by regulation "any other conditions or limitations on the consideration of an application for asylum," so long as those limitations are "not inconsistent with this chapter."[14]

It has generally been well understood by the Board of Immigration Appeals (BIA) and the Courts of Appeals that low-level, "run-of-the-mill" offenses such as simple possession of drug paraphernalia do not constitute particularly serious crimes and should not be bars to asylum.[15] As Judge Reinhardt explained in a concurring opinion in *Delgado v. Holder*, run-of-the-mill crimes like driving under the influence have "little in common" with other crimes the BIA has deemed particularly serious—e.g., felony menacing with a deadly weapon, armed robbery, and burglary of a dwelling in which the offender is armed or causes injury.[16]

Although asylum is a discretionary benefit, it was not the intent of Congress that the attorney general implement regulations categorically barring large swaths of asylum seekers from protection, thus rendering the provisions of the Act meaningless and undermining the goal of bringing the United States in line with international law. As Pope Francis has said, we must "view [migrants] as persons, seeing their faces and listening to their stories, trying to respond as best we can to their situation. To respond in a way which is always humane, just and fraternal."[17]

---

[8] *INS v. Cardoza-Fonseca*, 480 U.S. 421 at 436-37 (1987); *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018).
[9] *Grace v. Whitaker*, 344 F. Supp. at 124.
[10] Immigration Act of 1990, Public Law 101-649, sec. 515, 104 Stat. 4987.
[11] INA § 208(b)(2)(A)(ii).
[12] INA § 208(b)(2)(B)(i).
[13] INA § 208(b)(2)(B)(ii).
[14] INA § 208(d)(5)(B); *see also* INA § 208(b)(2)(C).
[15] *Delgado v. Holder*, 648 F.3d 1095, 1110 (9th Cir. 2011) (en banc) (J. Reinhardt, concurring).
[16] *Id*. at 1110.
[17] Address of Pope Francis to a joint meeting of the United States Congress, September 24, 2015.

AR.08959

## II.     General Comments

CLINIC urges the withdrawal of these unlawful and unduly harsh regulations. These regulations would unnecessarily exclude refugees and their family members who are deserving of safety and stability in the United States.

The regulations propose to severely limit the discretion of asylum adjudicators by creating numerous new categorical bars to asylum eligibility. The proposed bars include any conviction of a felony offense, any conviction for "smuggling or harboring" under 8 U.S.C. § 1324(a), even if the asylum seeker committed the offense for the purpose of bringing their own spouse, child or parent to safety, any conviction for unlawful reentry under 8 U.S.C. § 1326, any conviction for an offense where the adjudicator has reason to believe it was in furtherance of criminal street gang activity, more than one conviction for an offense involving driving while intoxicated, any conviction *or accusation of conduct* for acts of battery involving a domestic relationship, any conviction for a drug-related offense except for a first-time marijuana possession offense, any offense involving a fraudulent document, and any conviction for fraud in public benefits.

The proposed regulations are unnecessary and contrary to the principles established by the United Nations, with which Congress intended U.S. law to comply. The drafters of the Refugee Convention and Protocol considered whether receiving countries should afford protection to individuals who have committed criminal acts. They made the conscious decision to balance the safety concerns of the receiving country with the need to protect refugees.[18]

DOJ and DHS, through their adjudicators, already have broad authority to deny asylum to any individual whom they determine to be a danger to the community or otherwise not deserving of a favorable exercise of discretion.[19] The implementation of the proposed strict categorical bars will result in the wrongful removal of individuals who do not present a danger to the community and who are deserving - and in need - of protection in the United States, without an individualized determination of whether they merit a favorable exercise of discretion. There is no justifiable reason for departing from the prior practice of determining on a case-by-case basis whether an individual is deserving of asylum. In fact, this individualized assessment is the procedure dictated by the UNHCR.[20]

Considering the grave consequences of expelling or excluding a refugee, the UNHCR reminds adjudicators that, before excluding a refugee who has committed a serious non-political crime, adjudicators must consider "all relevant factors, including mitigating circumstances."[21]   The UNHCR Handbook further states that in "applying this exclusion clause, it is also necessary to strike a balance between the nature of the offense presumed to have been committed by the applicant and the degree of persecution feared. If a person has a well-founded fear of very severe

---

[18] UNHCR Handbook, *supra*, at ¶ 151 ("The aim of this exclusion clause is to protect the community of a receiving country from the danger of admitting a refugee who has committed a serious common crime. It also seeks to render due justice to a refugee who has committed a common crime (or crimes) of a less serious nature or has committed a political offence.").

[19] *See Matter of Pula*, 19 I.&N. Dec. 467 (BIA 1987).

[20] UNHCR Handbook, *supra*, at ¶¶ 156, 157.

[21] UNHCR Handbook, *supra*, at ¶157.

AR.08960

persecution, e.g., persecution endangering his life or freedom, a crime must be very grave in order to exclude him."[22]

The Board of Immigration Appeals has historically followed this case-by-case approach to the particularly serious crime determination that would bar an immigrant from receiving asylum.[23] The proposed regulations would tie the hands of adjudicators and prevent them from considering mitigating circumstances, such as the age of the individual at the time the offense was committed, the length of time that has passed since the offense, the individual's rehabilitation efforts, and the severity of persecution faced.

Pope Frances has said that, "The exercise of the right to asylum . . . should be recognized everywhere and not obstructed with deterrent and punitive measures."[24] and "No person must be sent back to a country where he or she fears discriminatory action or serious life-threatening situations."[25] The implementation of the proposed bars would unjustly punish refugees facing serious persecution in their home countries.

### III. The Proposed Regulations are inconsistent with congressional intent and the plain language of the INA, and therefore are an impermissible exercise of DOJ and DHS authority under INA § 208(b)(2)(C) and INA § 208 (b)(2)(B)(ii).

Congress explicitly made the commission of a particularly serious crime a bar to asylum. The canon of interpretation known as *expressio unius est exclusio alterius* instructs that, "expressing one item of [an] associated group or series excludes another left unmentioned."[26] The proposed regulations attempt to create numerous additional categories of crimes that bar asylum, even if those offenses are not particularly serious. Such an effort violates this canon of interpretation, and places the proposed regulations *ultra vires* to the statute.

Congress delegated to the attorney general the authority to designate additional offenses as particularly serious crimes, by reason of which the offender "constitutes a danger to the community."[27] Congress also delegated to the attorney general the authority to establish by regulation "other conditions or limitations on the consideration of an application for asylum" as long as those limitations are not inconsistent with the other provisions of the INA.[28] By designating

---

[22] UNHCR Handbook, *supra*, at ¶156.

[23] *See e.g., Matter of Juarez*, 19 I.&N. Dec. 664 (BIA 1988) (ordinarily a single misdemeanor that is not an aggravated felony will not be a particularly serious crime); *Matter of Frentescu*, 18 I.&N. Dec. 244 (BIA 1982), *modified* (setting forth several factors to be considered before imposing the particular serious crime bar, including: (i) the nature of the conviction, (ii) the circumstances and underlying facts for the conviction, (iii) the type of sentence imposed, and (iv) whether the type and circumstances of the crime indicate that the individual will be a danger to the community); *Matter of Y-L-, A-G-, R-S-R-,* 23 I.&N. Dec. 270 (A.G. 2002) (setting forth a multi-factor test to determine the dangerousness of a respondent convicted of a drug-trafficking offense who is otherwise barred from asylum as an aggravated felon, but seeking withholding of removal).

[24] Pontifical Council "Cor Unum" and Pontifical Council for the Pastoral Care of Migrants and Itinerant People, "Refugees: A Challenge to Solidarity" (1992).

[25] *Id.*

[26] *United States v. Vonn*, 535 U.S. 55, 65 (2002).

[27] INA §§ 208(b)(2)(A)(ii) & (B)(ii).

[28] INA §§ 208(d)(5)(B) & (b)(2)(C).

AR.08961

as categorical bars to asylum numerous offenses that would not be considered "particularly serious," the proposed regulations are inconsistent with the plain meaning of the statute.

The proposed vast expansion of criminal bars to asylum is also inconsistent with congressional intent to comply with the Refugee Convention and Protocol. When Congress first enacted the aggravated felony bar to withholding of removal in the Immigration Act of 1990, Senator Edward Kennedy, who introduced the legislation in the Senate, wrote to the Immigration and Naturalization Service ("INS") that Congress "contemplated that a showing of dangerousness to the community would be necessary in addition to proof of conviction of an aggravated felony."[29] The proposed bars, which exclude asylum seekers based on minor crimes, without a showing of dangerousness to the community, are a clear contradiction of congressional intent. Moreover, the UNHCR has explicitly found that the Refugee Convention does not permit the exclusion of refugees based on minor criminal offenses.[30] It is the intent of Congress that U.S. asylum law should be in line with the Refugee Convention.[31]

## IV.     The availability of withholding of removal for individuals subject to these additional bars is insufficient to meet our obligations under the Refugee Convention.

It is not an adequate remedy that individuals barred from seeking asylum by these new regulations may apply for withholding of removal. An applicant for withholding of removal must show that it is more likely than not that they would be persecuted if returned to their country of origin, meaning they must show a more than 50% chance of being persecuted if returned.[32] Asylum only requires a showing of at least a ten percent chance of being persecuted if returned.[33] The Supreme Court has found that, in enacting the Refugee Act of 1980, Congress could have restricted asylum by holding asylees to the higher standard of showing it is more likely than not that they would be persecuted.[34] But the Court, noting the harshness of forcing an individual to return to a country where they will be subject to death or persecution, found that, "it is clear that Congress did not intend to restrict eligibility for that relief . . . ."[35] Subjecting individuals convicted of minor crimes to the higher withholding of removal standard would result in the return of individuals to countries where they will be persecuted, contrary to the intent of congress.

Even for those who meet the higher standard, withholding recipients are still subject to significant prejudice. For example, they have no ability to travel internationally. The Refugee Convention affords refugees the right to travel in mandatory terms.[36] Article 28 states, "Contracting States shall issue to refugees lawfully staying in their territory travel documents for the purpose of travel outside their territory." Recipients of withholding of removal do not have access to a travel

---

[29] *Mosquera-Perez v. INS*, 3 F.3d 553, 556 (1st Cir. 1993).

[30] UNHCR Handbook, *supra*, at ¶¶155-156.

[31] *Grace v. Whitaker*, 344 F. Supp. at 124.

[32] 8 C.F.R. § 208.16(b)(2); *INS v. Stevic*, 467 U.S. 407, 411 (1984) (explaining that petitioner must show a "clear probability" of the threat to life or freedom if deported, and that this standard is more stringent than the well-founded fear standard for asylum; *see also Cardoza-Fonseca*, 480 U.S. at 431 (describing the difference between a well-founded fear of persecution and a clear probability of persecution).

[33] *Cardoza-Fonseca*, 480 U.S. at 440.

[34] *Id.* at 449.

[35] *Id.*

[36] Refugee Convention at article 28.

AR.08962

document as contemplated by Article 28. By regulation, refugee travel documents are available only to asylees.[37] Additionally, the Board of Immigration Appeals requires that an individual granted withholding—unlike an individual granted asylum—must simultaneously be ordered removed, making any international travel a "self-deportation."[38] Thus, individuals granted withholding of removal often miss their last chance to visit with a dying relative or to attend the funeral of an immediate family member.

An individual granted withholding of removal also cannot petition to bring their spouse or children to safety in the United States.[39] By limiting refugees to the status of withholding of removal, more families will be permanently, unnecessarily separated. In other cases, individual family members will be forced to travel to the United States on their own, without the benefit of an I-730 petition. This will likely endanger children, forced to make the journey by themselves as unaccompanied minors. It will also result in the separation and deportation of spouses and minor children who traveled with the primary asylum-seeker, if they do not independently meet the definition of a refugee or cannot independently qualify for withholding of removal.[40] The Refugee Convention states that governments should take the necessary measures for protecting a refugee's family, "Ensuring that the unity of the refugee's family is maintained particularly in cases where the head of the family has fulfilled the necessary conditions for admission to a particular country."[41] Denying the full benefits of asylum to refugees who have committed minor crimes is a direct violation of this principle of the Refugee Convention.

The Refugee Convention further provides that, "The Contracting States shall as far as possible facilitate the assimilation and naturalization of refugees."[42] Recipients of withholding of removal are not eligible to apply for lawful permanent residence or to become citizens of the United States. They can be removed at any time to a third country.[43] Their status can be terminated at any time if it is determined that there has been a change in the conditions of their home country.[44] Thus, refugees granted only withholding of removal are living a life of uncertainty, in long-term limbo, instead of being fully integrated into the United States. It is the position of the U.S. Conference of Catholic Bishops that, "immigration policy that allows people to live here and contribute to society for years but refuses to offer them the opportunity to achieve legal status does not serve the common good."[45]

---

[37] 8 C.F.R. § 223.1.

[38] *See Matter of I-S- & C-S-*, 24 I.&N. Dec. 432, 434 n.3 (BIA 2008); 8 C.F.R. § 241.7.

[39] 8 C.F.R. § 208.21(a).

[40] Adolfo Flores, *An Immigrant Woman Was Allowed to Stay in the US — But Her Three Children Have a Deportation Order*, BUZZFEED NEWS, Dec. 21, 2019, www.buzzfeednews.com/article/adolfoflores/an-immigrant-woman-was-allowed-to-stay-in-the-us-but-not?fbclid=IwAR0GO6j-Oh5n4vH11SxhYx71fBXXAY7nd-4m4kzRTL7PAoKfUuP2EhTZJeE.

[41] Refugee Convention at section IV.B.

[42] Refugee Convention at article 34.

[43] 8 C.F.R. § 208(16)(f).

[44] 8 C.F.R. § 208.24(b)(1).

[45] *Catholic Social Teaching on Immigration and the Movement of Peoples,* U.S. Conf. of Cath. Bishops, www.usccb.org/issues-and-action/human-life-and-dignity/immigration/catholic-teaching-on-immigration-and-the-movement-of-peoples.cfm (last visited Jan. 17, 2020).

**V.     Barring individuals convicted of a felony, as defined in the proposed rule, will result in the denial of asylum for minor conduct in violation of the Refugee Convention.**

CLINIC urges the withdrawal of the proposed rule barring asylum for individuals convicted of any felony, defined as "crimes designated as felonies by the relevant jurisdiction or crimes punishable by more than one year's imprisonment." Enacting the regulation as proposed would result in the denial of asylum for individuals who have committed minor crimes and who may never have served any time in jail, and therefore cannot reasonably be considered a danger to the community.

As evidenced by the numerous questions raised in the NPRM, it is difficult to state a single felony definition that would result in the consistent, just, and lawful treatment of asylum applicants across jurisdictions. For example, in Virginia, a second offense for tampering with or stealing change from a parking meter or vending machine is punishable as a felony.[46] UNHCR has specifically noted that, "[c]rimes such as petty theft or the possession for personal use of illicit narcotic substances would not meet the threshold of [a particularly serious crime]."[47]

Yet, under the proposed rule, an individual could be barred from seeking asylum for having committed a petty theft crime, even if they were not ordered to serve any time in jail and the offense took place many years ago. For this reason, the UNHCR recommends that countries conduct a case-by-case determination that takes into account all mitigating factors and the circumstances surrounding the offense.[48] The strict bar proposed by the rule is overbroad and would result in the exclusion of legitimate asylum seekers based on minor crimes, in contrast to the principles outlined by the Refugee Convention, which intended to only preclude asylum where the person presents a serious danger to the receiving country.

The NPRM admits that defining a felony based on a potential sentence only "tends to indicate" that the individual is a danger to the community, but does not necessarily indicate it. Immigration adjudicators already have broad authority to deny asylum if they determine that an individual is a danger to the community or otherwise does not merit asylum as a matter of discretion. Creating a sweeping categorical bar, such as the one proposed, will only serve to endanger legitimate asylum seekers who have been convicted of minor crimes, or who may be rehabilitated and no longer present a danger to the community.

This bar fails to account for the potential rehabilitation of juvenile offenders, who the Supreme Court has said, "have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment" and "a greater possibility exists that a minor's character deficiencies will be reformed."[49] It also fails to consider that in the United States, people of color are disproportionately arrested, convicted, and ordered to serve time in jail, particularly for minor

---

[46] Va. Code Ann. Section 18.2-152.
[47] U.N. High Comm'r for Refugees (UNHCR), *Criminal Justice and Immigration Bill: Briefing for the House of Commons at Second Reading* ¶ 10 (July 2007), www.unhcr.org/enus/576d237f7.pdf.
[48] UNHCR Handbook, *supra*, at ¶ 157.
[49] *Roper v. Simmons*, 543 U.S. 551, 570 (2005); N.Y.U. Review of Law and Social Change, *Starting Over: The Immigration Consequences of Juvenile Delinquency and Rehabilitation*, Volume 40:515, 2016.

AR.08964

crimes.[50] This bar to asylum thus compounds the well-documented racial disparities in our criminal justice system and imports them into our immigration system.

## VI. Denying asylum to individuals who have assisted their immediate family members in fleeing persecution is contrary to our international obligations under the Refugee Convention and congressional intent.

CLINIC strongly opposes broadening the asylum bar for smuggling or harboring to include individuals who have helped bring their immediate family members to safety in the United States. The rationale, that these individuals are displaying, "a serious disregard for U.S. immigration law and pose a potential hazard to smuggled family members" is misguided. By definition, these individuals are entering the United States out of desperation and necessity, not with malicious intent to violate U.S. immigration law or put their family members in danger. The principles of Catholic social teaching provide that, "[p]eople have the right to migrate to sustain their lives and the lives of their family."[51]

If Congress expressly made asylum available to anyone physically present in the United States without regard to how they entered,[52] it follows that Congress did not intend for those same individuals to be barred merely because they aided their family members in similarly escaping persecution. The UNHCR also recognizes that refugees are often forced to commit crimes "as a means of, or concomitant with, escape from the country where persecution was feared."[53] The UNHCR advises that this need to escape should be considered a mitigating circumstance, not a bar to admission.[54]

## VII. Illegal reentry to seek asylum is not a dangerous criminal offense and should not be a categorical bar to asylum.

The proposed rule to bar individuals from seeking asylum merely for having illegally reentered the country is unlawful and immoral. This bar directly violates the Refugee Convention's prohibition on imposing penalties based on a refugee's manner of entry or presence.[55] That prohibition is a critical part of the Refugee Convention because it recognizes that asylum seekers often have little control over the place and manner in which they enter the country where they are seeking protection. The BIA has agreed, finding that "circumvention of orderly refugee procedures…should not be considered [so serious an adverse factor] that the practical effect is to

---

[50] The Sentencing Project, *Report to the United Nations on Racial Disparities in the U.S. Criminal Justice System*, Apr.2018, www.sentencingproject.org/publications/un-report-on-racial-disparities/.

[51] *Catholic Social Teaching on Immigration and the Movement of Peoples,* U.S. Conf. of Cath. Bishops, www.usccb.org/issues-and-action/human-life-and-dignity/immigration/catholic-teaching-on-immigration-and-the-movement-of-peoples.cfm (last visited Jan. 17, 2020).

[52] 8 U.S.C. § 1158(a)(1).

[53] UNHCR Handbook, *supra*, at ¶ 158.

[54] *Id.* at ¶ 157.

[55] Refugee Convention, *supra*, at Art. 31; *See also East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1249 (9th Cir. 2018) (upholding a temporary restraining order prohibiting the enforcement of an immigration rule and proclamation barring immigrants crossing the U.S.-Mexico border at non-ports of entry because "the rule of decision enforced by the Government—that illegal entry, through Mexico specifically, will always be disqualifying—is inconsistent with the treaty obligations that the United States has assumed and that Congress has enforced" as well as U.S. case law).

AR.08965

deny relief in virtually all cases."[56] Instead, the Board has rightly found that an individual's manner of entry should be considered on a case-by-case basis in the exercise of discretion.[57] Congress has also addressed the issue of whether asylum should be available to individuals who have been previously removed.[58] Congress chose to only exclude from asylum those whose removal orders have been reinstated.[59] DOJ and DHS cannot now, by regulation, additionally exclude those who have been convicted of unlawfully reentering the United States.[60]

Moreover, the assertion in the proposed rule that an individual who has been previously removed can lawfully present themselves at a port of entry to seek asylum ignores the reality of the situation at our southern border. Individuals fleeing persecution are currently being made to wait outside the U.S., in dangerous border towns for months or longer before being allowed to present themselves at a port of entry.[61] Even once allowed to present themselves for inspection, asylum-seekers are being turned back to await adjudication of their claims in Mexico, or being sent to pursue asylum in other dangerous countries such as Guatemala, pursuant to so-called asylum cooperative agreements.[62]

## VIII. Allowing adjudicators to deny asylum to individuals based on potentially vague, unsubstantiated allegations of gang membership will result in the unfair and inconsistent treatment of asylum-seekers.

The proposed rule allowing adjudicators to deny asylum to someone based on having a "reason to believe" the individual committed a crime in furtherance of criminal street gang activity is dangerous and will create considerable judicial inefficiencies. This new rule would give adjudicators discretion to deny the vital protection of asylum on the basis of unverified suspicions, hearsay, or circumstantial evidence. The regulation will force individuals to counter potentially vague accusations by proving a negative—the lack of gang affiliation. This is a violation of due process.[63]

---

[56] *Matter of Pula*, 19 I&N Dec. 467 at 473 (BIA 1987).

[57] *Id.*

[58] INA § 241(a)(5).

[59] *Id.*

[60] *Zheng v. Gonzales*, 422 F.3d 98, 116-20 (3d Cir. 2005) (invalidating regulation precluding category of people from applying to adjust status "[g]iven Congress's intent as expressed in the language, structure, and legislative history of INA section 245 [8 U.S.C. § 1255]").

[61] Camila DeChalus, *'Metered' Immigrants Face Long Waits at the Border*, ROLL CALL, Oct. 4, 2019; www.rollcall.com/news/congress/metered-immigrants-face-long-waits-border; Jason Kao and Denise Lu, *How Trump's Policies Are Leaving Thousands of Asylum Seekers Waiting in Mexico*, THE NEW YORKER, Aug. 18, 2019, www.nytimes.com/interactive/2019/08/18/us/mexico-immigration-asylum.html.

[62] Jonathan Blitzer, *How the U.S. Asylum System Is Keeping Migrants at Risk in Mexico,* THE NEW YORKER, Oct. 1, 2019; www.newyorker.com/news/dispatch/how-the-us-asylum-system-is-keeping-migrants-at-risk-in-mexico; Adriana Beltrán, *Guatemala Is No Safe Third Country,* FOREIGN AFFAIRS MAGAZINE, Sep. 25, 2019, www.foreignaffairs.com/articles/guatemala/2019-09-25/guatemala-no-safe-third-country.

[63] *Brito v. Barr*, 2019 U.S. Dist. __ F. Supp. 3d __ | WL 6333093, LEXIS 206578 (finding that it violates the Due Process Clause to require noncitizens to prove that they are not a danger and not a flight risk in bond hearings).

AR.08966

Accusations of gang membership and inclusion in gang databases are "notoriously flawed", according to a report by the New York Immigration Coalition (NYIC) and CUNY School of Law.[64] Gang databases are unregulated and the criteria for being included in the database could be as minimal as "living in a building or even neighborhood where there are gang members, wearing certain colors or articles of clothing, or speaking to people law enforcement believe to be gang members."[65] These databases disparately affect young people of color,[66] so relying on information contained in a gang database to bar asylum seekers would further multiply the harm caused by racially disparate policing as well as racially disparate rates of guilty pleas to minor offenses.[67] Additionally, "these databases have created a wide dragnet [catching] innocent individuals, erroneously labeled, many fleeing persecution from the same gangs in their own countries."[68]

Requiring adjudicators to make complex determinations regarding the nature of a particular conviction will lead to massive judicial inefficiencies and slanted "mini-trials" within the asylum adjudication process. Because of the lack of robust evidentiary rules in immigration proceedings, it will be difficult if not impossible for many applicants to rebut negative evidence marshaled against them.[69] Asylum trials, which are typically three or fewer hours, would provide insufficient time to fully present arguments on both sides of these complex issues. Tasking adjudicators with a highly nuanced, resource-intensive assessment of the connection of a conviction to possible gang activity—assessments far outside their areas of expertise—will prolong asylum proceedings and invariably lead to erroneous determinations that will give rise to an increase in appeals. The INA and existing regulations already provide broad authority for the denial of asylum in the exercise of discretion if an individual's prior criminal history causes concern to the adjudicator. Adding this additional, superfluous layer of complication risks erroneously excluding bona fide asylum seekers from protection.

By barring asylum even without a conviction, the asylum-seeker would not have had the opportunity to be confronted with the evidence against them and to thoroughly contest that evidence in the proper venue—a criminal court. In criminal court, defendants are afforded due process protections including the right to counsel, the right to discovery of the evidence that will be presented, and robust evidentiary rules protecting against the use of evidence that is unreliable

---

[64] Nermeen Arastu *et al.*, New York Immigration Coalition and CUNY School of Law, *Swept Up in the Sweep: The Impact of Gang Allegations on Immigrant New Yorkers*, May 2018, at 7, http://thenyic.pi.bypronto.com/wp-content/uploads/sites/2/2018/06/SweptUp_Report_Final-1.pdf [hereinafter "*Swept Up in the Sweep*"].

[65] *Id*; *see also* Annie Sweeney and Madeline Buckley, *Chicago Police Gang Data Collection Faulted by City's Inspector General as Unchecked and Unreliable*, CHICAGO TRIBUNE, Apr. 11, 2019, www.chicagotribune.com/news/breaking/ct-met-chicago-police-gang-data-04112019-story.html; Anita Chabria, *A Routine Police Stop Landed Him on California's Gang Database. Is It Racial Profiling?*, LOS ANGELES TIMES, May 9, 2019, www.latimes.com/politics/la-pol-ca-california-gang-database-calgang-criminal-justice-reform-20190509-story.html.

[66] *Id*.

[67] *Id*.

[68] *Swept Up in the Sweep*, *supra* note 60, at 19; *see also* Jonathan Blitzer, *How Gang Victims Are Labeled as Gang Suspects*, THE NEW YORKER, Jan. 23, 2018, www.newyorker.com/news/news-desk/how-gang-victims-are-labelled-as-gang-suspects.

[69] CLINIC and the University of Maryland Carey School of Law, Gabriela Kahrl *et al.*, *Presumed Dangerous: Bond, Representation, and Detention in the Baltimore Immigration Court,* 2019, https://cliniclegal.org/resources/enforcement-and-detention/presumed-dangerous-bond-representation-and-detention-baltimore (finding that *pro se* individuals faced insurmountable hurdles in presenting evidence and legal arguments to counter accusations of gang affiliation).

AR.08967

or was unlawfully obtained. Considering the harsh and sometimes deadly consequences of denying protection from persecution, the lack of due process in applying this bar would be a grave injustice.

IX. **Barring asylum based on any conviction for domestic assault, battery, or stalking, or mere allegations of domestic assault or battery is a sweeping departure from prior precedent, a violation of our obligations under the Refugee Convention, and will force civil adjudicators to retry criminal cases.**

CLINIC opposes broadening the asylum bars to include any offense relating to domestic assault or battery, stalking, or child abuse, including where the individual has merely allegedly "engaged in acts of battery and extreme cruelty in a domestic context in the United States, regardless of whether such conduct resulted in a criminal conviction."[70] This rule would dramatically expand the number of minor, misdemeanor crimes that would bar asylum, in direct contradiction of the UNHCR guidelines.

This rule would also force asylum officers and immigration judges to conduct mini-trials to determine whether alleged conduct actually occurred and, if so, whether it constitutes battery or extreme cruelty, or whether it was done in a domestic context. In many cases, asylum applicants will struggle to find evidence connected to events that may have happened years prior, especially for those detained. Moreover, asylum adjudicators should not be forced to evaluate such evidence; that should be left to the criminal legal system.

For more than a century the federal courts have consistently embraced the "categorical approach" to determine the immigration consequence(s) of a criminal offense, wherein the immigration adjudicator relies on the statute of conviction as adjudicated by the criminal court system, without relitigating the nature or circumstances of the offense in immigration court.[71] As the Supreme Court has explained, this approach "promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact."[72]

Additionally, domestic violence incidents all too often involve the arrest of both the primary perpetrator of abuse and the survivor.[73] These "cross-arrests" do not always yield clear determinations of victim and perpetrator. Authorizing asylum adjudicators to determine the primary perpetrator of domestic assault, in the absence of a judicial determination, unfairly prejudices survivors who are wrongly arrested in the course of police intervention to domestic disturbances.

---

[70] 84 Fed. Reg. 69651 (Dec. 19, 2019).

[71] *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013).

[72] *Id.* at 200-201.

[73] David Hirschel, *et al.*, *Domestic Violence and Mandatory Arrest Laws: To What Extent Do They Influence Police Arrest Decisions*, Journal of Criminal Law & Criminology 98, no. 1 (2007-2008): 255, https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=7284&context=jclc (noting that "[i]n some cases, dual arrests may be the result of legislation, department policies, or both failing to require officers to identify the primary aggressor. In addition, when such provisions are present, police may lack the training or information needed to identify the primary aggressor when responding to a domestic violence assault. This situation may be compounded by batterers who have become increasingly adept at manipulating the criminal justice system, and may make efforts to 'pre-empt' victims from notifying police in order to further control or retaliate against them.").

AR.08968

**X.** **The proposed regulations barring asylum for individuals convicted of two DUIs and certain minor misdemeanor crimes is a direct violation of UNHCR guidelines, the INA, and the spirit of our asylum laws.**

As previously noted, the UNHCR has instructed that refugees should not be excluded from a receiving country merely because the refugee has committed "minor offenses punishable by moderate sentences."[74] Sections five and seven of the proposed regulations will do just that.

The broad regulation barring asylum for anyone convicted of more than one offense for driving while intoxicated should be withdrawn. In a concurring opinion in *Delgado v. Holder*, Judge Reinhardt noted that both the courts and the public have generally not viewed offenses for driving while intoxicated as particularly serious.[75] "American voters would be unlikely to elect a president or vice president who had committed a particularly serious crime, yet they had no difficulty in recently electing to each office a candidate with a DUI record."[76]

Moreover, multiple DUI convictions are not even an absolute bar to cancellation of removal under INA § 240A(b).[77] The attorney general stated that these offenses are not "conclusive evidence" of an individual's character; a noncitizen can rebut the presumption with a strong showing of evidence of good character and rehabilitation.[78] If individuals seeking discretionary cancellation of removal are afforded the opportunity to show that they merit permanent residence in spite of their prior convictions for driving under the influence, it is nonsensical to promulgate a rule denying asylum seekers that same opportunity. Authority should remain with the adjudicators to balance the seriousness of the offenses against mitigating factors such as the length of time that has passed, evidence of rehabilitation, the potential danger to the community, and the risk of persecution faced by the individual if returned to their home country.

CLINIC also opposes the proposed rule barring asylum for individuals who have been convicted of a misdemeanor offense for use of a fraudulent document. Creating such a blanket bar for asylum seekers, who are often compelled to resort to irregular means to enter the United States, or to remain safely while their applications for asylum are pending, upends decades of settled law directing that violations arising from an asylum applicant's manner of flight should constitute only one of many factors to be considered in the exercise of discretion.[79] Migrants fleeing persecution often leave their home countries with nothing but the clothes on their backs and must rely on informal networks to navigate their new circumstances.[80] Asylum-seekers in the United States are not eligible for any public benefits while their applications are pending and it can take over a year

---

[74] UNHCR Handbook, *supra*, at ¶155.
[75] *Delgado v. Holder*, 648 F.3d 1095, 1110 (9th Cir. 2011) (en banc) (J. Reinhardt, concurring).
[76] *Id.*
[77] *See Matter of Castillo-Perez*, 27 I.&N Dec. 664 (A.G. 2019).
[78] *Id.* at 671.
[79] *See Matter of Pula*, 19 I.&N. Dec. at 474; *Matter of. Kasinga*, 21 I&N Dec. 357 (BIA 1996) (granting asylum despite applicant's purchase and use of a fraudulent passport to enter the United States); *Dong v. Gonzales*, 421 F.3d 573, 579 (7th Cir. 2005) ("use of false documents to facilitate travel or gain entry does not serve to impute a lack of credibility to the petitioner." citing *In re O-D-*, 21 I. N. Dec. 1079, 1081 (BIA 1998)).
[80] *See Matter of Pula*, 19 I.&N. Dec. at 474.

AR.08969

to obtain work authorization.[81] As a result, "[m]any become homeless, live in overcrowded or unsafe conditions, and lack basic needs like food and clothing. Without work authorization, asylum seekers cannot purchase health insurance under the Affordable Care Act or obtain a social security number, and often cannot apply for a state issued identification card or driver's license, which further limits access to transportation, banking, and private support services." [82]

Furthermore, asylum seekers who are struggling to survive are vulnerable to exploitation by unscrupulous individuals or *notarios*, who claim to offer legitimate assistance in providing documentation that turns out to be fraudulent.[83] Asylum seekers are also at risk of being exploited by employers. Many noncitizens working in the low-wage economy face egregious workplace dangers and discrimination and suffer retaliation for asserting their rights.[84] The expansion of the criminal asylum bars to sweep in all document fraud offenses would unfairly prejudice immigrants with meritorious asylum claims and force them deeper into the dangerous informal economy. The NPRM states that the use of fraudulent documents "so strongly undermines government integrity that it would be inappropriate to allow an individual convicted of such an offense to obtain the discretionary benefit of asylum."[85] Yet, an individual not facing persecution could be granted the discretionary benefit of adjustment of status if their offense qualified as a petty offense or if they received a waiver of inadmissibility.[86]

Similarly, a blanket bar on asylum for individuals who have unlawfully received public benefits will unfairly prejudice the most vulnerable and impoverished asylum seekers. As evidenced by the small number of prosecutions each year, fraudulent receipt of public benefits by immigrants is low.[87] There is no justifiable reason to create this additional categorical bar to asylum. In order to maintain our obligations under the Refugee Convention, discretion should remain with adjudicators to balance the severity of the offense against any mitigating factors, particularly the risk of persecution faced by the asylum seeker.

Finally, categorically barring asylum for individuals convicted of misdemeanor offenses relating to controlled substances, particularly possession of marijuana or prescriptions drugs for personal use, is wildly disproportionate to the severity of these offenses. These offenses do not have an element of violence or dangerousness. The only victims are the offenders themselves, who are typically suffering from addiction, a medical condition that can be difficult to treat.[88] This new bar ignores the fact that asylum seekers have experienced tremendous trauma in their home countries

---

[81] 8 U.S.C. § 1611; Human Rights First, *Callous and Calculated: Longer Work Authorization Bar Endangers Lives of Asylum Seekers and Their Families,* Apr. 2019, www.humanrightsfirst.org/sites/default/files/ Work_Authorization.pdf. [hereinafter "*Callous and Calculated.*"].

[82] *Callous and Calculated.*

[83] *See* American Bar Association, *About Notario Fraud*, July 19, 2018, www.americanbar.org/groups/public_interest/ immigration/projects_initiatives/fight-notario-fraud/about_notario_fraud/.

[84] Paul Harris, *Undocumented Workers' Grim Reality: Speak Out on Abuse and Risk Deportation*, THE GUARDIAN, March 28, 2013, www.theguardian.com/world/2013/mar/28/undocumented-migrants-worker-abuse-deportation.

[85] 84 Fed. Reg. 69653 (Dec. 19, 2019).

[86] INA § 212(a)(2)(A)(ii)(II); INA § 212(h).

[87] Kristie De Peña, Niskanen Center, *Do Immigrants Fraudulently Use Public Benefits?*, Sep. 25, 2018, www.niskanencenter.org/do-immigrants-fraudulently-use-public-benefits/.

[88] National Institute on Drug Abuse, *Drugs, Brains, and Behavior: The Science of Addiction*, July 2018, www.drugabuse.gov/publications/drugs-brains-behavior-science-addiction; American Society of Addiction Medicine, *Definition of Addiction*, Sep. 15, 2019, www.asam.org/resources/definition-of-addiction.

AR.08970

and often during their journeys to safety, including violence, torture and sexual assault.[89] As a result, many suffer from post-traumatic stress disorder, which can lead them to self-medicate with controlled substances.[90] These individuals need compassion and treatment, not to be denied their asylum claims and returned to their countries of persecution.

## XI. Conclusion

The criminal bars to asylum under current United States law and regulations are already far more restrictive than what was contemplated by drafters of the Refugee Convention and the guidelines set forth by UNHCR. The proposed new rules, which are lacking in any requirement of proportionality, will further weaken our commitment to protecting refugees. They are contrary to this country's values as a nation of immigrants, and to CLINIC's values as a faith-based organization. As Pope Francis recently reminded us, "It is injustice that forces [refugees] to endure unspeakable forms of abuse, enslavement of every kind and torture in inhumane detention camps. It is injustice that turns them away from places where they might have hope for a dignified life, but instead find themselves before walls of indifference."[91] The United States has always been a world leader in protecting refugees and asylum seekers; the U.S. government should be tearing down walls for those fleeing harm rather than erecting them.

For the foregoing reasons, DHS and DOJ should immediately withdraw their current proposal, and instead dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. Please contact Jill Marie Bussey, Director of Advocacy, at jbussey@cliniclegal.org for further information.

Sincerely,

Anna Marie Gallagher
Executive Director

---

[89] Rocío Naranjo Sandalio, Migration Policy Institute, *Life After Trauma: The Mental-Health Needs of Asylum Seekers in Europe*, Jan. 30, 2018, www.migrationpolicy.org/article/life-after-trauma-mental-health-needs-asylum-seekers-europe.

[90] Danielle Horyniak *et al*., *Epidemiology of Substance Use Among Forced Migrants: A Global Systematic Review*. PLOS ONE 11(7): Jul. 13, 2016, www.ncbi.nlm.nih.gov/pmc/articles/PMC4943736/.

[91] *Pope Decries 'Walls Of Indifference' Migrants Face in New Lands*, WINK NEWS, Dec. 25, 2019, www.winknews.com/2019/12/25/pope-decries-walls-of-indifference-migrants-face-in-new-lands/.

AR.08971

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ekj-b0ck
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0367
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Nate Ewigman

## General Comment

To Whom It May Concern:

I am a licensed psychologist in the State of California, a concerned citizen and have several members of my family who
have had to flee their country of origin.

I am writing to express my deep concern about the proposed rule change in 84FR69640.

As a professional who works with refugees and asylum seekers on a daily basis, I am acutely aware that any rule restricting
asylum law/eligibility (e.g. in this change restricting asylum to 'non-criminals' while defining border crossing - the act of seeking
protection - as well as a parent bringing their children with them when escaping persecution as a crime) has a chilling effect
on those needing protection. No doubt this is the intent of this rule change.

The real moral and psychological cost of this should be considered: this means
that more families will be separated, more women, men and children being persecuted will continue to be and governments
across the world will be held to less account. For the people themselves - those who I can best speak to - the scars of
persecution (be it by the government, neighbors or family members) as well as separation of families is profoundly
psychologically long-lasting and devastating. It creates generations of pain and suffering; whereas protection (i.e. asylum)
creates generations of protection, peace and healing ~ while also improving our economy, culture and moral character.

AR.08972

As a constituent, citizen and a family member, I care about this personally. This rule change will
impact many families - those who are voiceless and are not Americans as well as American families like my
own. This rule
change and others like it make it harder for me to see my country as a welcoming place for members of my
family.

Because of my direct experience with the impact of such policies and on behalf of my patients, my family and
my profession,
I urge you to abandon this pursued rule change and other similar policies.

Thank you for your time and attention.

Nate Ewigman, PhD
San Mateo, California

AR.08973

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9ekj-fw0n
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0368
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Juval Scott
**Organization:** Office of the Federal Public Defender for the Western District of Virginia

## General Comment

See attached file(s)

## Attachments

Asylum rule comments - final

AR.08974



**Juval O. Scott**
*Federal Public Defender*

Brian J. Beck
Randy V. Cargill
Monica D. Cliatt
Nancy C. Dickenson-Vicars
Brooks A. Duncan
Andrea L. Harris
Christine M. Lee
Lisa M. Lorish
Erin M. Trodden
*Assistant Federal Public Defenders*

---

Charlottesville office:
**401 E. Market Street, Suite 106**
**Charlottesville, VA 22902**

Phone: (434) 220-3380
Fax: (434) 220-3390

---

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140

Re: 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87,
1615-AC41; Comments in Opposition to Proposed Rulemaking: Procedures for Asylum and
Bars to Asylum Eligibility

January 21, 2020

To Whom It May Concern:

I am writing on behalf of the Federal Public Defender's Office for the Western District of
Virginia in response to the above-referenced Proposed Rules to express our strong opposition to
the Proposed Rules to amend regulations relating to eligibility for asylum published in the
Federal Register on December 19, 2019.

Our office represents indigent criminal defendants charged with federal crimes. Over the past
two years, our office has seen an exponential increase in aliens charged with illegal reentry under
8 U.S.C. § 1326. Many of the aliens who have been convicted of illegal reentry in our district
have minimal or no criminal history and have substantial ties to the United States, including U.S.
citizen spouses and children. Many of them also have also provided credible evidence that they
were fleeing threats and violence in their home countries when they returned to the United
States.

For the reasons detailed in the comments that follow, the Department of Homeland Security and
the Department of Justice should immediately withdraw their current proposal, and instead

AR.08975

dedicate their efforts to ensuring that individuals fleeing violence are granted full and fair access to asylum protections in the United States.

Thank you for the opportunity to submit comments on the Proposed Rules. Please do not hesitate to contact me at Juval_Scott@fd.org for further information.

Sincerely,
Juval O. Scott
Federal Public Defender for the Western District of Virginia

AR.08976

**DETAILED COMMENTS in opposition to the Proposed Rules re Procedures for Asylum and Bars to Asylum Eligibility, 84 FR 69640; EOIR Docket No. 18-0002, A.G. Order No. 4592-2019; RIN 1125-AA87, 1615-AC41**

**I. The Proposed Rules will disparately impact vulnerable populations already routinely criminalized, including LGBTQ immigrants, low-wage workers, and immigrant youth of color**

The expanded criminal bars exclude from safety and a pathway to citizenship those convicted of offenses that are coincident to their flight from persecution, and do not accomplish the stated goal of making communities safer. They will disparately impact vulnerable populations, who comprise asylum seekers hailing primarily from Central America and the Global South, and those routinely criminalized because of their identities, racially disparate policing practices, or in connection with experiences of trafficking and domestic violence. For these populations especially, the discretion currently delegated to asylum adjudicators is crucial for them to become fully integrated in the larger community. The imposition of additional categorical bars to asylum will only further marginalize asylum seekers already struggling with trauma and discrimination.

The Proposed Rules turn asylum into a blunt instrument that would prevent the use of discretion where it is most needed and most effective. The existing framework for determining if an offense falls within the particularly serious crime bar already provides the latitude for asylum adjudicators to deny relief to anyone found to pose a danger to the community. Furthermore, asylees with convictions that render them inadmissible must apply for a waiver at the time of their applications for permanent residence. These measures ensure that asylum applicants in vulnerable populations have access to supportive resources and have the opportunity to demonstrate their ongoing commitment to social and personal health. Moreover, the existence of provisions allowing the revocation of asylum status ensures that adjudicators may continue to enforce concerns related to the safety of the community even after asylum is granted.

*Barring asylum for immigrants convicted of migration-related offenses punishes them for fleeing persecution and/or seeking safety for their children, and does not make communities safer.*

The Proposed Rules expand the asylum bar to those who have fled persecution multiple times and therefore been convicted of illegal reentry. Their inclusion is premised on conclusory statements regarding the dangerousness of recidivist offenders, without consideration of the seriousness of prior convictions. Rather, the Proposed Rules treat all immigration violations as similar in seriousness to those previously warranting inclusion in the particularly serious crime bar, without any independent evidence to justify the expansion. Such an approach renders meaningless the limiting language of "particularly serious" in the statute.

The government has brought numerous illegal reentry prosecutions in our district against immigrants with minimal or no criminal record, many of whom present no risk to their communities and indeed have been bulwarks of support for the families and friends. One

AR.08977

recently convicted immigrant in our district was a successful small business owner and respected member of his church; another provided the only financial support for a three-year-old U.S. citizen daughter with major health problems. Neither of these individuals could reasonably be considered a danger to their communities, yet both were convicted of illegal reentry under 8 U.S.C. § 1326.

The Proposed Rules also conflate multiple entries by noncitizens having prior removal orders with those who have entered multiple times without ever having their asylum claims heard. Many immigrants who have previously attempted entry to the United States to flee persecution could not have been aware of the complex statutory regime that governs asylum claims and would not have knowingly abandoned their right to apply for asylum. Some asylum seekers have also been wrongly assessed in prior credible fear interviews. And others yet may have previously entered or attempted to enter the United States before the onset of circumstances giving rise to their fear. Preserving discretion to grant asylum in these circumstances allows meritorious asylum seekers to be heard and corrects errors that might have previously occurred.

Our office has represented numerous individuals who have reentered the United States because they were fleeing persecution in their home countries. One client was threatened with harm because he was believed to be homosexual; another was threatened with death by a family member in league with corrupt local police. Numerous clients have provided the press photos or death certificates for brothers, uncles, or cousins, describing their deaths by blunt trauma or gunshot and corroborating the threats our clients are fleeing. All of these individuals have been prosecuted for and convicted of illegal reentry in this district, and would now be ineligible for asylum under the new rule.

*Extending the criminal bars to immigrants convicted of misdemeanor document fraud unfairly punishes low-wage immigrant workers and does not make communities safer.*

The Proposed Rules expand the asylum bar to include any asylum seeker who has been convicted of a misdemeanor offense for use of a fraudulent document. In so doing, the Rule entirely ignores the migration-related circumstances that often give rise to convictions involving document fraud. Migrants fleeing persecution often leave their home countries with nothing but the clothes on their backs and must rely on informal networks to navigate their new circumstances. Extension of a blanket bar to asylum seekers who are compelled to resort to fraudulent means to enter the United States, or to remain safely during their applications for asylum, upends decades of settled law directing that violations of law arising from an asylum applicant's manner of flight should constitute only one of many factors to be consulted in the exercise of discretion.

Moreover, migrants in vulnerable communities who are struggling to survive during the pendency of their asylum proceedings are often exploited by unscrupulous intermediaries who offer assurances and documentation that turn out to be fraudulent. Many noncitizens working in the low-wage economy face egregious workplace dangers and discrimination and suffer retaliation for asserting their rights. The continued availability of asylum to low-wage immigrant workers can encourage them to step out of the shadows. The expansion of criminal asylum bars

AR.08978

to sweep in all document fraud offenses, on the other hand, would unfairly prejudice immigrants with meritorious asylum claims and force them deeper into the dangerous informal economy.

*Barring asylum for immigrants convicted of "gang-related crimes" based on unreliable evidence and racially disparate policing practices is harmful to youth of color and does not make communities safer.*

In recent years, the expansion of gang databases for use in the apprehension and removal of foreign nationals—including children—has generated tremendous concern among advocates and the communities they serve. The use of gang databases by local law enforcement and Immigration and Customs Enforcement has been widely criticized as an overbroad, unreliable and often biased measure of gang membership and involvement. The Proposed Rules expand the criminal bars to asylum to those accused of gang involvement in the commission of minor criminal offenses, embracing an open-ended adjudicative process that will inevitably result in asylum adjudicators relying unfairly on these discredited methods of gang identification. This outcome would compound the disparate racial impact of inclusion in gang databases and bar asylum seekers who are themselves fleeing violence from gangs in their home countries.

Past legislative efforts to expand the grounds of removal and inadmissibility in the Immigration and Nationality Act to include gang membership have failed to pass both houses of Congress. In addition, immigration adjudicators already routinely premise discretionary denials of relief or release on bond on purported gang membership, and scores of alleged gang members have already been deported on grounds related to immigration violations or criminal convictions for which no relief is available. Creating a "gang-related crime" bar will only exacerbate the due process violations already occurring as the result of unsubstantiated information about supposed gang ties.

In addition, by focusing on "reason to believe" as the basis for the bar, rather than the seriousness of the crime, the proposed provision is ultra vires and unconscionably limits the eligibility for asylum of those most in need of protection. The effect of the Proposed Rules would be to expand the number and type of convictions for which an analysis of eligibility is required, sweeping in even petty offenses that would otherwise not trigger immigration consequences. Thus, an asylum applicant convicted of simple assault without use of a weapon, a non-violent property crime, or even possession of under 30 grams of marijuana for personal use (otherwise exempted from the reach of the Proposed Rule), could trigger a bar to asylum if the adjudicator concludes she has "reason to believe" the offense was committed in furtherance of gang activity. In making these determinations, asylum adjudicators would be unable to rely on uncorroborated allegations contained in arrest reports, but could nevertheless shield their decisions by relying on discretion.

The Proposed Rules thus invite extended inquiry into the character of young men of color who otherwise have meritorious asylum claims, based on information gained through racially disparate policing practices. These rules multiply the harm to asylum seekers of color subject to racially disparate policing that results in racially disparate rates of guilty pleas to minor offenses. This same population is overrepresented in gang databases, which are notoriously inaccurate, outdated, and infected by racial bias.

AR.08979

Our office has observed firsthand the unreliability of "gang identification." We have represented numerous young men who have been suspected of gang involvement based on the opaque semiotics of their tattoos, their social media posts, or their identification as a gang member in a law enforcement report. None of these are reliable indicators of gang involvement, but once such allegations are leveled, they become difficult for clients to shake.

## II. Those precluded from asylum eligibility will be gravely impacted even if granted withholding of removal or protection under the Convention Against Torture

Throughout the Proposed Rules, the agencies defend the harsh and broad nature of their proposal by pointing to the continued availability of alternative forms of relief for those precluded from asylum eligibility under the new rules. The availability of these alternatives forms of relief, however—known as withholding of removal and protection under the Convention Against Torture (CAT)—does not nullify the harm created by the Proposed Rule's new limits on asylum. The protections afforded by CAT and by statutory withholding of removal are limited in scope and duration, and they are harder to obtain. As a result, a Rule that limits *bona fide* refugees to withholding of removal and CAT protection would impose a very real harm on individuals who have come to the United States in search of protection.

First, the most serious harm that can befall an individual as a result of these Proposed Rules is removal to persecution and torture, and the existence of withholding of removal does not account for that risk. CAT and withholding protections demand a higher level of proof than asylum claims: a clear probability of persecution or torture. Thus, an individual could have a valid asylum claim but be unable to meet the standard under the other forms of relief and therefore would be removed to their country of origin, where they would face persecution or even death. Our office has represented numerous clients who have well-documented histories of persecution, but who have been unable to obtain relief under CAT and withholding.

Even for those who meet the higher standard, withholding and CAT recipients are still subject to significant prejudice. For example, they have no ability to travel internationally. The United Nations Convention Relating to the Status of Refugees affords refugees the right to travel in mandatory terms. Article 28 states, "Contracting States shall issue to refugees lawfully staying in their territory travel documents for the purpose of travel outside their territory." Withholding and CAT recipients do not have access to a travel document as contemplated by Article 28. By regulation, refugee travel documents are available only to asylees. And the Board of Immigration Appeals requires that an individual granted withholding and CAT—unlike an individual granted asylum—must simultaneously be ordered removed, making any international travel a "self-deportation." Refugees granted only withholding of removal or CAT protection are thus effectively trapped within the United States in long-term limbo.

Withholding and CAT recipients also face permanent separation from their spouses and children. Because international travel is prohibited, these individuals cannot reconnect with their families in a third country. And they also cannot reunite with family in the United States because only asylees and refugees are eligible to petition for a spouse and children to join them as derivatives on that status. For many, this will mean that the Proposed Rules institute yet another

AR.08980

formal policy of family separation. For example, a mother with two young children who flees to the United States and is subject to one of the expanded asylum bars will not be able to ensure that her children will be able to obtain protection in the United States with her if she is granted relief. Rather, if her children are still in her home country, they would need to come to the United States and seek asylum on their own, likely as unaccompanied children. If her children fled to the United States with her, then they will need to establish their own eligibility for protection before an immigration judge, no matter their age.

Recently, this exact scenario played out with a mother who was subject to the so-called Migrant Protection Protocols (also known as Remain in Mexico) and the asylum "transit ban," which made the mother ineligible for asylum and thus required the children to establish their independent eligibility for withholding and CAT protection. An immigration judge granted the mother withholding of removal but denied protection to her young children, leaving the children with removal orders and immense uncertainty about their future. Under the expanded bars in the Proposed Rules, these situations will certainly increase, separating families and forcing parents to return to countries where it has been established they more likely than not will face persecution and torture, rather than leaving their children on their own.

Similarly, our office recently represented a father from a Central American country who was charged with illegal reentry after returning to the United States. He left his home country fleeing violence and persecution, but his children had remained behind. While he may be eligible for withholding or CAT protection, he faces permanent separation from his children unless they can establish their own eligibility for relief.

Withholding recipients likewise face hurdles in access to employment. Article 17 of the Refugee Convention states that a contracting state "shall accord to refugees lawfully staying in their territory the most favorable treatment accorded to nationals of a foreign country in the same circumstances, as regards the right to wage-earning employment." Recipients of withholding enjoy no such right. They must apply for work authorization, and they face frequent delays in the adjudication of these applications, which often result in the loss of legal authorization to work.

And perhaps most fundamentally, there is continuing jeopardy for withholding and CAT recipients that does not exist for asylum recipients. When a noncitizen is granted asylum, the person receives a legal status. Asylum, once granted, protects an asylee against removal unless and until that status is revoked. None of these protections exists for withholding and CAT recipients. They have no access to permanent residency or citizenship. Instead, they are subject to a removal order and vulnerable to the permanent prospect of deportation to a third country and subject to potential check ins with immigration officials where they can be made to pursue removal to third countries to which they have no connection.

Finally, the Federal Public Defender for the Western District of Virginia writes to highlight a different form of prejudice that will flow from the rule: one relating to judicial efficiency. Neither withholding of removal nor CAT protection allow family members who are in the United States together and pursuing protection on the same basis to apply as derivatives on a principal application. As a result, family claims for those rendered ineligible for asylum by the new rules will have to be adjudicated separately, and potentially before different adjudicators

AR.08981

even when the claims are interrelated and even when minor children may not be in a position to explain the claim at all or as sufficiently as a parent. In addition to being unjust to the affected family members, this approach would result in gross inefficiencies, which should be avoided in a system that already contains a significant backlog of pending cases.

**Conclusion**

The proposed rule punishes immigrants for fleeing persecution and exacerbates the inequities our office too often sees in the criminal justice system, while failing to provide any meaningful increase in protection or deterrence. We emphatically urge its withdrawal.

Sincerely,

Juval O. Scott
Federal Public Defender for the Western District of Virginia

AR.08982

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eki-75hw
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0369
Comment on FR Doc # 2019-27055

## Submitter Information

**Name:** Andrew Nguyen

## General Comment

Hi my name is Andrew Nguyen and I'm from San Jose, CA. I'm a Stanford graduate and work as an engineer in the Bay Area. I strongly oppose the proposed rule that would criminalize asylum seekers by injecting more racial profiling into the process. As a descendent of refugees from Vietnam, I know that this new proposed rule would unjustly criminalize my mother, who had to escape from flawed criminal justice systems in Vietnam in the 80s while trying to survive and fight for a better future. If this rule had been put in place back then, my mother may have faced denial and deportation back to a place of danger. The U.S. must honor our ideals of compassion and respect for human rights.

AR.08983

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eki-1bzj
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0370
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Eva Poon

---

## General Comment

I write to express my strong opposition to this proposed rule change. As the child of immigrants who have lived in the U.S. for the past thirty years, I am deeply concerned that this rule change would send people who fled violence back to danger and death. This rule would create racially-biased and subjective measures for people's so-called worthiness to be in the U.S. Due process is a right for everyone regardless of where they were born. The criminal justice system has historically and continues to strip people of their right to rehabilitation. Please do not allow this rule to pass.

AR.08984

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eki-6894
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0371
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** N. Ordover

---

## General Comment

I am writing to oppose this rule change. This rule would be a death sentence for many asylees, the very people we should be protecting. Contact with the criminal justice system does not merit a gross violation of human rights. Furthermore, the racial bias of our criminal justice system all but ensures asylees of color will have some contact with law enforcement. Despite the shrinking number of asylees allowed to make a new life in the U.S., I have had the opportunity to live and work among many people who have fled violence and persecution; torture and abuse. They are my neighbors and teachers and coworkers. My own grandparents came to the U.S. to escape war and murderous countrymen and women. The U.S. already violates human decency and various human rights instruments when it comes to immigrants, refugees, and asylees. Let us not add to our disgrace by adopting this rule. I stand with millions upon millions of Americans in the strongest opposition to the proposed rule

Sincerely,
Dr. N. Ordover

AR.08985

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eki-dvbv
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0372
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Alexandra Blodget
**Address:**
  PO Box 86071
  Portland,  OR,  97286
**Email:** ablodget@outlook.com
**Phone:** 971-373-1522

---

## General Comment

I work in nonprofit immigration legal services. By definition asylum seekers have been through great disruption in their lives as well as traumatic experiences. These new barriers to seeking protection in our country will prevent many deserving asylum seeking survivors from finding safety that is not available in their countries of origin, or in similarly positioned countries where law enforcement is ineffective or nonexistent and violence is targeted and endemic.

For example, I am working with a young women and her three younger, minor siblings, who fled Honduras and traveled through Mexico due to being raped and targeted by gangs for refusal to join. In addition, their father was violent and they had nowhere safe to go in their country. They fled and arrived in the United States and are applying for asylum. If they had been turned away, they would likely have already been killed.

Asylum saves lives and our country is obligated to offer the opportunity to apply and due process protections to ensure that decisions on cases are made on a consistent and fair basis with opportunity for additional review. Asylum seekers should not be barred for minor reasons that are related to their persecution and escape.

AR.08986

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eki-icsb
**Comments Due:** January 21, 2020
**Submission Type:** API

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0373
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Kitty Picker
**Address:**
   Westfield,  NJ,

---

## General Comment

I vehemently oppose this rule as immoral, illegal and un-American. Barring vulnerable individuals from the critical protection of asylum on account of convictions for such a broad and arbitrary range of offenses is in direct contradiction to the intent of Congress and the American people, who stipulated that only the most egregious offenses should bar asylum or refugee status and who granted generous exemption and waiver provisions with respect to grounds of inadmissibility - including criminal grounds - for those seeking protection from persecution under the INA. This administration's attempt to arbitrarily and categorically establish additional bars to asylum through the regulatory process, in furtherance of its nativist, racist immigration agenda, betrays a shocking disregard for the humanitarian values this country was founded upon (yes, it appears this administration is still capable of shocking us with its cruelty). This rule should be rescinded immediately so as to avoid adding insult to injury through spending millions more taxpayer dollars on litigation which will inevitably result in its being struck it down.

AR.08987

# PUBLIC SUBMISSION

**As of:** January 23, 2020
**Received:** January 21, 2020
**Status:** Posted
**Posted:** January 21, 2020
**Tracking No.** 1k4-9eki-i6qe
**Comments Due:** January 21, 2020
**Submission Type:** Web

**Docket:** EOIR-2019-0005
Procedures for Asylum and Bars to Asylum Eligibility

**Comment On:** EOIR-2019-0005-0001
Procedures for Asylum and Bars to Asylum Eligibility

**Document:** EOIR-2019-0005-0374
Comment on FR Doc # 2019-27055

---

## Submitter Information

**Name:** Grace Huang
**Address:**
2366 Eastlake Ave E #322B
Seattle,  WA,  98102
**Email:** ghuang@api-gbv.org
**Phone:** 206-420-7369

---

## General Comment

Please see attached comment from the Asian Pacific Institute on Gender-Based Violence in opposition to increased barriers for survivors to access asylum protections.

---

## Attachments

API-GBV EOIR. 18-0002_Asylum Bar Expansion01212020

AR.08988



January 20, 2020

Lauren Alder Reid, Assistant Director
Office of Policy, Executive Office for Immigration Review
5107 Leesburg Pike, suite 2616
Falls Church, VA 22041

Maureen Dunn, Chief
Division of Humanitarian Affairs, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 20529-2140


*Submitted via* *https://www.regulations.gov/document?D=EOIR-2019-0005-0001*


Re: EOIR Docket No. 18-0002: 84 FR 69640, A.G. Order No. 4592-2019; RIN 1125-AA87,
1615-AC41; *Proposed Rulemaking Procedures for Asylum and Bars to Asylum Eligibility*

To Whom It May Concern:

Below please find comments submitted in response to the Notice of Proposed Rulemaking
(NPRM) and Request for Comment on *Proposed Rulemaking Procedures for Asylum and Bars
to Asylum Eligibility*, EOIR Docket # 18-0002, found at 84 F.R. 69640, published December 19,
2019, on behalf of the Asian Pacific Institute on Gender-Based Violence (API-GBV). The API-
GBV is a national resource center on domestic violence, sexual violence, trafficking, and other
forms of gender-based violence in Asian and Pacific Islander and immigrant communities, and
serves a national network of advocates; community-based service programs; federal agencies;
national and state organizations; legal, health, and mental health professionals; researchers; and
policy advocates from social justice organizations. API-GBV analyzes critical issues, promotes
culturally relevant evidence-informed intervention and prevention, provides consultation,
technical assistance and training; develops resources, conducts and disseminates research, and
impacts systems change through administrative advocacy and policy analysis.

Based on our experience supporting victim services providers and in working directly with Asian
and Pacific Islander (API) and immigrant survivors of domestic violence, sexual assault, and
human trafficking, we strongly oppose the proposed rule that will render many vulnerable and
traumatized API and immigrant survivors of gender-based violence ineligible for asylum. We
urge DOJ and DHS to withdraw the proposed rule immediately.

AR.08989

I.   **Immigrant Survivors Frequently Flee to the U.S. to Seek Asylum as a Last Resort in Desperate Hope of Finding Safety and Protection.**

Immigrant survivors who seek asylum in the United States have frequently endured horrific domestic violence, sexual assault, rape, and other gender-based forms of abuse that have threatened their and their children's lives. For many survivors, the journey to the U.S. is a dangerous one. Still, many survivors traverse the hundreds to thousands of miles because they strongly believe that it is safer to make the journey for the possibility of finding safety and protection in the U.S. than to stay in their home countries where their governments frequently do little to protect them from their abusers and perpetrators.

Many survivors and their children of domestic violence have endured years of abuse, terror, fear, and powerlessness before they finally take the steps to escape from their abusers to come to the U.S.[1]  Many immigrant survivors of sexual assault and rape are subjected to multiple attacks, stalked, or at risk of being murdered by their perpetrators. They are compelled to flee to the U.S. because they recognize that they will never be able to feel safe again if they remain in their home countries.[2] For many immigrant survivors, asylum may be their only chance of finally obtaining safety and protection. Many survivors are faced with having to leave everything they know, and must brace themselves for the tremendous peril that awaits them and their children during their journey, and traverse the many miles with very few possessions of their own – often with nothing but the clothing on their backs. Others, who have already survived years of abuse and violence, and have managed to arrive in the U.S., have no option to be able to return to their countries without the risk of imminent death and grave harm.

For example, a significant percentage of refugees who have escaped Syria are women fleeing with their children due to violence perpetrated against them.[3] It is well documented that at the hands of ISIS, women and children have suffered from widespread gender-based violence, including kidnapping, systematic rape, enslavement, trafficking, stoning, beheading, and sexual harassment and assault.[4]

---

[1] See for example, Dilawar, A. (August 10, 2018). How Anti-Immigration Policy Spurs Domestic Violence. *Pacific Standard.* Retrieved from https://psmag.com/social-justice/how-anti-immigration-policy-spurs-domestic-violence; Morrisey, K. (October 1, 2018). Refugee women struggle to confront domestic violence amid deportation fears. *San Diego Union Tribune.* Retrieved from https://www.sandiegouniontribune.com/news/immigration/sd-me-refugees-dv-20181001-story.html ; Stillman, S. (January 8, 2018). When Deportation Is a Death Sentence. The New Yorker. Retrieved from https://www.newyorker.com/magazine/2018/01/15/when-deportation-is-a-death-sentence.
[2] *Id.*
[3] http://data.unhcr.org/syrianrefugees/syria.php
[4] Rukmini Callimachi, "ISIS Enshrines a Theology of Rape," New York Times, August 2015, available at http://www.nytimes.com/2015/08/14/world/middleeast/isis-enshrines-a-theology-of-rape.html?_r=0.

AR.08990

In addition, nearly 18% of those granted asylum in the United States were from China,[5] where domestic and sexual violence are pervasive issues that Chinese society often minimizes or normalizes violence against women. In China, where 26% of men reported perpetrating physical intimate partner violence one to two times and 19% reported using violence three or more times, and one in five men report ever perpetrating rape against a partner or non-partner and 75% of men report never experiencing any legal consequences,[6] the legal system frequently values keeping families together over the rights and safety of women. Courts in China have repeatedly denied women survivors of domestic violence a divorce, with some even boasting about the number of marriages they have "saved," including in cases involving serious injury or deadly threats.[7]

In 2018, individuals from Venezuela and the Northern Triangle countries – Guatemala, El Salvador, and Honduras – made up one half of the asylum seekers who filed for affirmative asylum – meaning individuals seeking asylum who are present in the U.S. and are not in removal proceedings.[8]  Individuals from these same countries also made up the majority of the asylum seekers in the defensive asylum process – meaning asylum seekers who are in removal proceedings.[9] Venezuela and the Northern Triangle countries are notorious for being places where it is extremely dangerous to be a woman. Many immigrant women and children who flee from these four countries to seek asylum in the U.S. have survived horrendous violence and trauma.

In Venezuela, women and girls become victims of homicide by a rate of 24.5 per every 100,000 women, putting Venezuela as the country with the second highest femicide rate in 2016 when looking at countries that are not currently in an armed conflict.[10]  Furthermore, among 357 cases

---

[5] Mosaad, N., United States Department of Homeland Security, Office of Immigration Statistics, Office of Strategy, Policy & Plans (October 2019). Annual Flow Report: Refugees and Asylees 2018). Retrieved from https://www.dhs.gov/sites/default/files/publications/Refugees_Asylees_2017.pdf.

[6] Wang, X., Gang, F., & Hongtao, L. (2013). Research on Gender-based Violence and Masculinities in China: Quantitative Findings. *United Nations Population Fund China*. Retrieved from: http://www.partners4prevention.org/resource/research-gender-based-violence-and-masculinities-china-quantitative-findings.

[7] Wang, Y. (Nov. 26, 2018). Chinese Courts Give Domestic Abusers a Pass. *Human Rights Watch*. Retrieved from https://www.hrw.org/news/2018/11/26/chinese-courts-give-domestic-abusers-pass#.

[8] Mossaad, N., United States Department of Homeland Security, Office of Immigration Statistics, Office of Strategy, Policy & Plans (October 2019). Refugees and Asylees: 2018. Available at https://www.dhs.gov/sites/default/files/publications/immigration-statistics/yearbook/2018/refugees_asylees_2018.pdf

[9] *Id*.

[10] Mathema, S. (2018, June 1). They Are (Still) Refugees: People Continue to Flee Violence in Latin American Countries. *Center for American Progress*. Retrieved from: https://www.americanprogress.org/issues/immigration/reports/2018/06/01/451474/still-refugees-people-continue-flee-violence-latin-american-countries/.

AR.08991

brought before the International Criminal Court regarding violence, abuse, and torture perpetrated by security forces against political prisoners, 190 were about rape and sexual abuse.[11]

El Salvador and Honduras have among the highest death rates for women in the world.[12] However, with a 95% impunity rate for sexual and femicide crimes, perpetrators and abusers in Honduras rarely face consequences.[13] The rate of violent death for women in El Salvador is the third highest in the world,[14] and seven out of every ten victims of sexual violence are under the age of 20.[15] In Guatemala, acts of violence against women are the most reported crimes, with an average of 560,000 reports a year.[16] Physical and sexual violence against women and girls is frequently committed by gang members and family members, but they are also commonly perpetrated by law enforcement and other governmental actors.[17] Rape and other sexual violence is deeply embedded within gang culture and frequently used as a form of territorial domination.[18] The United Nations has categorized this type of violence and the forced recruitment of girls and women as constituting a contemporary form of slavery.[19] Domestic and family violence are also pervasive in all three countries. According to one local NGO in El Salvador, approximately 70 percent of sexual assault perpetrators know the victim and 20 percent are family members.[20]

The proposed rule released by DHS and DOJ proposes to bar many of the vulnerable and traumatized immigrant survivors of gender-based violence from qualifying for asylum. Specifically, the proposed rule seeks to 1) establish *seven* new bars to eligibility for asylum, 2) expand the discretion of immigration adjudicators to determine whether an individual is barred

---

[11] United States Department of Justice (2018). Venezuela 2018 Human Rights Report. Retrieved from: https://www.justice.gov/eoir/page/file/1160296/download.

[12] Small Arms Survey (November 2016). A Gendered Analysis of Violent Deaths. Small Arms Survey Research Notes, Number 63, 1-8. Retrieved from: http://www.smallarmssurvey.org/fileadmin/docs/H-Research_Notes/SAS-Research-Note-63.pdf.

[13] United Nations Human Rights Office of the Commissioner (10 July 2014). Honduras: UN human rights expert calls for urgent action to address impunity for crimes against women and girls. Retrieved from: https://www.ohchr.org/EN/NewsEvents/Pages/DisplayNews.aspx?NewsID=14847&LangID=E.

[14] O'Toole, M. (2018, March 4). El Salvador's Gangs Are Targeting Young Girls. *The Atlantic*. Retrieved from: https://www.theatlantic.com/international/archive/2018/03/el-salvador-women-gangs-ms-13-trump-violence/554804/.

[15] Lobo-Guerrero, C. (2017, September 2). In El Salvador, 'Girls Are a Problem.' *The New York Times*. Retrieved from: https://www.theatlantic.com/international/archive/2018/03/el-salvador-women-gangs-ms-13-trump-violence/554804/.

[16] Piette, C. (2015, December 5). Where women are killed by their own families. *BBC News*. Retrieved from: https://www.bbc.com/news/magazine-34978330.

[17] See Women on the Run; see also Kids in Need of Defense, Neither Security nor Justice: Sexual and Gender Based Violence in El Salvador, Honduras, and Guatemala, May 4, 2017, https://supportkind.org/wp-content/uploads/2017/05/Neither-Security-nor-Justice_SGBV-Gang-Report-FINAL.pdf.

[18] Andrea Fernández Aponte, Latin America Working Group, "Left in the Dark: Violence Against Women and LGBTI Persons in Honduras and El Salvador," Mar. 7, 2018, https://www.lawg.org/left-in-the-dark-violence-against-women-and-lgbti-persons-in-honduras-and-el-salvador/.

[19] Kids in Need of Defense, Latin America Working Group, Women's Refugee Commission, "Sexual and Gender Based Violence (SGBV) & Migration Fact Sheet," July 2018, https://supportkind.org/wp-content/uploads/2018/08/SGBV-Fact-sheet.-July-2018.pdf.

[20] Fernández Aponte, "Left in the Dark".