No. 20-17490

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

PANGEA LEGAL SERVICES, et al.,

Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants-Appellants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

---

BRIEF FOR *AMICUS CURIAE* IMMIGRATION REFORM
LAW INSTITUTE IN SUPPORT OF
DEFENDENTS-APPELLANTS AND REVERSAL

---

Christopher J. Hajec
Director of Litigation

Matt A. Crapo
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*
Immigration Reform Law Institute

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the FEDERAL RULES OF APPELLATE PROCEDURE,

amicus curiae Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent

corporations: None.

2) For non-governmental corporate parties please list all publicly held

companies that hold 10% or more of the party's stock: None.

DATED: January 26, 2021          Respectfully submitted,

/s/ Matt Crapo
Matt A. Crapo
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF AMICUS CURIAE ..............................................................1

SUMMARY OF THE ARGUMENT ...........................................................1

ARGUMENT .................................................................................................2

I.     The Government Is Likely To Prevail On The Merits ....................2

        A.    Historical Development Of Asylum Law .............................3

        B.    The Rule Is Consistent With Section 208 Of The INA.......10

II.    The Other Winter Factors Favor The Government ......................15

CONCLUSION .............................................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

underline>Page(s)

## CASES

*Dist. of Columbia v. Heller,*
554 U.S. 570, 626–27 (2008)...............................................................13

*E. Bay Sanctuary Covenant v. Barr,*
964 F.3d 832, 846 (9th Cir. 2020) ("*EBSC IV*")......................................12

*Estep v. United States,*
327 U.S. 114, 122 & n.13 (1946)............................................................13

*Hawaii v. Trump,*
859 F.3d 741 (9th Cir. 2017) ...................................................................1

*INS v. Cardoza-Fonseca,*
480 U.S. 421, 429 (1987)........................................................... 3, *passim*

*Lopez-Aguilar v. Marion Cty. Sheriff's Dep't,*
924 F.3d 375 (7th Cir. 2019) ....................................................................1

*Komarenko v. INS,*
35 F.3d 432, 436 (9th Cir. 1994) ..............................................................8

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.
Co.,* 290 F.3d 578, 596 (3d Cir. 2002)....................................................15

*Second City Music, Inc. v. City of Chicago,*
333 F.3d 846, 850 (7th Cir. 2003) ..........................................................15

*Yang v. INS,*
79 F.3d 932, 936-39 (9th Cir. 1996) ........................................................8


## ADMINISTRATIVE DECISION

*Matter of Silva-Trevino,*
26 I&N Dec. 826 (BIA 2016) .....................................................................1

## FEDERAL STATUTES & TREATIES

8 U.S.C. § 1101(a)(42) ........................................................................ 5, 7

8 U.S.C. § 1158 ........................................................................ 2, 6, 10, 14

8 U.S.C. § 1158(b)(1)(A) ........................................................................ 11

8 U.S.C. § 1158(b)(2)(A) ................................................................... 10, 11

8 U.S.C. § 1158(b)(2)(A)(i) ........................................................................ 9

8 U.S.C. § 1158(b)(2)(A)(ii) .................................................................. 9, 10

8 U.S.C. § 1158(b)(2)(A)(iii) ................................................................. 9, 10

8 U.S.C. § 1158(b)(2)(A)(iv) ................................................................. 9, 10

8 U.S.C. § 1158(b)(2)(A)(v) ................................................................. 9, 10

8 U.S.C. § 1158(b)(2)(B)(i) ........................................................................ 9

8 U.S.C. § 1158(b)(2)(B)(ii) ....................................................................... 9

8 U.S.C. § 1158(b)(2)(C) ....................................................................... 3, 9

8 U.S.C. § 1158(b)(3) ................................................................................ 6

8 U.S.C. § 1159(b) ................................................................................... 6

8 U.S.C. § 1231(b)(3) ....................................................................... 5, 7, 8

8 U.S.C. § 1231(b)(3)(A) ......................................................................... 11

8 U.S.C. § 1231(b)(3)(B) ................................................................ 6, 7, 15

8 U.S.C. § 1231(b)(3)(B)(i) ...................................................................... 11

8 U.S.C. § 1231(b)(3)(B)(ii) ..................................................................10, 11

8 U.S.C. § 1231(b)(3)(B)(iii) .................................................................10, 11

8 U.S.C. § 1231(b)(3)(B)(iv) .................................................................10, 11

8 U.S.C. § 1252(b)(9)....................................................................................15

8 U.S.C. § 1253(h) (1995) ..............................................................................5

8 U.S.C. § 1427(a) ..........................................................................................6

18 U.S.C. § 922(g)(1)....................................................................................14

18 U.S.C. § 922(g)(3)....................................................................................14

18 U.S.C. § 922(g)(9)....................................................................................14

Illegal Immigration Reform and Immigrant Responsibility Act,
Pub. L. 104-208, div. C, 110 Stat. 3009-546 (1996) ....................................9

Immigration Act of 1990, § 515,
Pub. L. 101-649, 104 Stat. 4978, 5053 (Nov. 29, 1990)...............................9

Refugee Act, § 208(a),
Pub. L. 96-212, 94 Stat. 102, 105 (Mar. 17, 1980)......................................6

United Nations Protocol Relating to the Status of Refugees,
19 U.S.T. 6223 (1968) ..........................................................................2, 4, 5

## STATE STATUTES AND CONSTITUTIONS

A.R.S. § 13-904...........................................................................................14

Iowa Const. Art. 2, § 5 ................................................................................14

Ky. Const. § 145 ..........................................................................................14

Neb. Rev. St. § 29-2264 .......................................................................14

Va. Const. Art. 2, § 1 ...........................................................................14

## REGULATIONS

8 C.F.R. § 208.14(c) (1991) ...................................................................8

8 C.F.R. § 208.16(d)(2) ........................................................................15

8 C.F.R. § 274a.12(a)(10) ......................................................................7

8 C.F.R. § 1208.16(d)(2) ......................................................................15

## MISCELLANEOUS

*Aliens and Nationality; Asylum and Withholding of Deportation Procedures*
55 Fed. Reg. 30,674 (July 27, 1990) .......................................................8

*Procedures for Asylum and Bars to Asylum Eligibility*,
84 Fed. Reg. 69640 (Dec. 19, 2019) ......................................................14

*Procedures for Asylum and Bars to Asylum Eligibility*,
85 Fed. Reg. 67,202 (Oct. 21, 2020).............................................1, 13, 14

## INTEREST OF *AMICI CURIAE*

*Amicus curiae* Immigration Reform Law Institute ("IRLI") filed this brief with the written consent of all parties.[1]  IRLI is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and lawful permanent residents, and also to assisting courts in understanding and accurately applying federal immigration law.  IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017); *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 924 F.3d 375 (7th Cir. 2019); and *Matter of Silva-Trevino*, 26 I&N Dec. 826 (BIA 2016).

## SUMMARY OF THE ARGUMENT

The district court erred in issuing the preliminary injunction barring the enforcement of the final rule jointly issued by the Departments of Justice and Homeland Security ("the Defendants"), *Procedures for Asylum and Bars to Asylum Eligibility*, 85 Fed. Reg. 67,202-260 (Oct. 21, 2020) ("the Rule").  Historically, Congress entrusted agencies with determining who should be granted asylum in the United States with no limitation on Executive discretion.  Over time, Congress

---

[1]  No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief.  No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

began to establish limits on agencies' discretion to grant asylum, but has never

limited agencies' discretion to deny asylum. The statutory bars to asylum parallel

the bars applicable to withholding of removal and only constrain discretion to grant

asylum to individuals who are dangerous to the community or society of the United

States. Unlike withholding of removal, where the agency is mandated to grant

relief absent an exception, the agency is unconstrained in its discretion to deny

asylum even where no statutory bar requires denial of asylum. Because the Rule is

consistent with the purpose of the asylum statute, that is, the facilitation of

assimilation and naturalization of deserving refugees who respect the laws and

societal values of the United States, the Court should reverse the trial court and

vacate the preliminary injunction.

## ARGUMENT

## I.     The Government Is Likely To Prevail On The Merits

The Court should reverse the district court and vacate the nationwide

injunction barring enforcement of the Rule. The validity of the Rule turns on

whether it is "consistent with" the asylum statute at 8 U.S.C. § 1158. Plaintiffs

argued, and the district court ruled, that the Rule conflicts with the asylum statute

because it will ensure that the discretionary benefit of asylum is not awarded to

individuals who have been convicted of certain crimes (or engaged in certain

criminal conduct) that do not necessarily rise to the level of particularly serious

2

crimes making the applicant a danger to the community of the United States. The district court ruled that 8 U.S.C. § 1158(b)(2)(C) does not give the Attorney General the authority to designate additional offenses, outside of the "particularly serious crime" bar, that will render an applicant ineligible for asylum. Op. 19-24, 1-ER-21-26. The district court further concluded that the Rule designated crimes, or criminal conduct, that are not sufficiently serious or dangerous to the broader community to warrant a categorical bar to asylum eligibility. Op. 21-22, 1-ER-23-24.

The district court misconstrued the statutory framework for asylum and conflated asylum with withholding of removal in ruling that the Executive Branch is constrained from establishing additional bars to asylum outside the particularly serious crime bar. A review of the background, history, and purpose of the statutory framework governing asylum and withholding of removal is helpful in understanding what limitations and conditions on asylum are consistent with the statute.

## A. Historical Development Of Asylum Law

In 1968, the United States acceded to the United Nations Protocol Relating to the Status of Refugees ("Protocol"), which bound the United States to the "substantive provisions of Articles 2 through 34 of the 1951 United Nations Convention Relating to the Status of Refugees." *INS v. Cardoza-Fonseca*, 480

U.S. 421, 429 (1987) (citing 19 U.S.T. 6223, 6259-6276 (1968)). The Protocol includes two provisions relevant here: Article 33, which provides that "'[no] Contracting State shall expel or return ('*refouler*') a refugee in any manner whatsoever to the frontiers or territories *where his life or freedom would be threatened* on account of his race, religion, nationality, membership or a particular social group or political opinion[;]'" and Article 34, which provides that the contracting States "'shall as far as possible facilitate the assimilation and naturalization of refugees . . . .'" *Cardoza-Fonseca*, 480 U.S. at 440-41 (quoting 19 U.S.T. at 6276) (emphasis in original). Article 33(2) provides an exception to the non-refoulement obligation with respect to refugees who may be a danger to the country, whereas Article 34 has no such exception.[2]

In 1980, Congress enacted the Refugee Act, which sought to bring United States law into conformity with the Protocol. *See Cardoza-Fonseca*, 480 U.S. at 436-37. The definition of "refugee" that Congress adopted in the Refugee Act is similar to the one prescribed by Article 1(A)(2) of the Convention.[3] As the Court

---

[2] Article 33(2) of the Protocol states:
The benefit of the present provision may not, however, be claimed by a refugee whom there are reasonable grounds for regarding as a danger to the security of the country in which he is, or who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of that country.

[3] Congress defined "refugee" as:

in *Cardoza-Fonseca* explained, former section 243(h) of the INA, which governed

withholding of deportation, corresponds to Article 33 of the Protocol and

established a binding non-refoulement obligation.[4]  *See* 480 U.S. at 440.  Former

section 243(h) of the INA, like Article 33, excepted from protection individuals:

who persecuted others on account of a protected ground; who, having been

convicted of a particularly serious crime, constitute a danger to the community of

the United States; who committed a serious nonpolitical crime prior to coming to

the United States; and who are a danger to the security of the United States.[5]

---

> any person who is outside any country of such person's nationality or,
> in the case of a person having no nationality, is outside any country in
> which such person last habitually resided, and who is unable or
> unwilling to return to, and is unable or unwilling to avail himself or
> herself of the protection of, that country because of persecution or a
> well-founded fear of persecution on account of race, religion,
> nationality, membership in a particular social group, or political
> opinion . . . .  The term 'refugee' does not include any person who
> ordered, incited, assisted, or otherwise participated in the persecution
> of any person on account of race, religion, nationality, membership in
> a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42) (1980).  Unlike the definition of refugee set forth under the
Convention, the statutory definition does not exclude persons who have committed
a serious non-political crime outside the country of refuge prior to being admitted
as a refugee.  *Compare* 8 U.S.C. § 1101(a)(42) *with* Article 1(F)(b) of the
Convention.

[4]  Former section 243(h) of the INA, 8 U.S.C. § 1253(h) (1995), was moved
to section 241(b)(3) of the INA and is now codified at 8 U.S.C. § 1231(b)(3).

[5]  The Protocol excludes from protection persons who persecute others and
who commit serious non-political crimes by excluding such persons from its

Section 208 of the INA, 8 U.S.C. § 1158, like Article 34 of the Protocol, is

non-binding and does not establish a right to asylum. *See Cardoza-Fonseca*, 480

U.S. at 441. As enacted in 1980, section 208 of the INA delegated the authority to

grant asylum to the Attorney General's unfettered discretion.[6] So long as an alien

could demonstrate that he was a refugee under the statutory definition, the

Attorney General could exercise his discretion to grant asylum. Asylum, unlike

withholding of removal, is discretionary and is more generous in that it offers the

same asylee status to spouses and children and places the alien on a path to

naturalization. *See* 8 U.S.C. § 1158(b)(3). One year after being granted asylum,

an asylee may apply for adjustment of status to that of a lawful permanent resident.

*See* 8 U.S.C. § 1159(b). After residing in the United States as a lawful permanent

resident for five years, an alien may apply for naturalization. *See* 8 U.S.C.

§ 1427(a).

Thus, following the enactment of the 1980 Refugee Act, Congress had

established two distinct forms of protection from persecution: asylum and

---

definition of refugee. Former section 243(h) and current section 241(b)(3) of the
INA do not refer to or rely upon the definition of refugee. *See* 8 U.S.C.
§ 1231(b)(3)(B) (providing exceptions to withholding of removal).

[6] As enacted, section 208(a) provided in relevant part that an "alien may be
granted asylum in the discretion of the Attorney General if the Attorney General
determines that such alien is a refugee within the meaning of section
101(a)(42)(A)." Refugee Act, § 208(a), Pub. L. 96-212, 94 Stat. 102, 105 (Mar.
17, 1980).

withholding of removal. While there were several statutory bars to withholding of removal, the only conduct that precluded a grant of asylum was if the alien engaged in the persecution of others. *See* 8 U.S.C. § 1101(a)(42) (excluding persecutors of others from the definition of refugee). Asylum, a discretionary form of relief with a lower burden of proof (the applicant need only demonstrate a well-founded fear of persecution on account of a protected ground) is aimed at the assimilation and naturalization of the applicant and his or her spouse and children. Congress entrusted the Executive Branch with the authority to decide, in its discretion, to whom this generous form of relief would be granted. Withholding of removal, on the other hand, is a mandatory form of relief that requires a higher burden of proof (the applicant must demonstrate a clear probability of persecution on account of a protected ground) that merely prevents the government from removing the alien to the country in which he or she would be persecuted.[7] Because this form of relief is mandatory and not discretionary, Congress had to define the outer limits of who could qualify for this form of protection and precluded the granting of withholding of removal to those who are a danger to the United States. *See* 8 U.S.C. § 1231(b)(3)(B). Because the United States's obligations under Article 33 of the Protocol are wholly satisfied by the withholding

---

[7] An alien who has been granted withholding of removal under 8 U.S.C. § 1231(b)(3) may also be granted work authorization by the Department of Homeland Security. *See* 8 C.F.R. § 274a.12(a)(10).

of removal provisions set forth in 8 U.S.C. § 1231(b)(3), and because those who would be ineligible for asylum under the Rule will remain eligible to seek statutory withholding of removal and CAT protection, the Rule does not violate the principle of non-*refoulement* or undermine the United States' obligations under the Protocol.

Subsequent history confirms that Congress entrusted the Executive Branch with discretion to grant asylum to individuals who could be assimilated and naturalized. For ten years, Congress did not amend the asylum statute or place any limits on the Attorney General's discretion over asylum. Indeed, the first bar to asylum was enacted by the Attorney General, when he issued regulations requiring denial of asylum where the alien has been convicted of a "particularly serious crime," where the alien has been firmly resettled in another country, or where there are reasonable grounds for regarding the alien as a danger to the security of the United States. *See* 8 C.F.R. § 208.14(c) (1991); *Aliens and Nationality; Asylum and Withholding of Deportation Procedures*, 55 Fed. Reg. 30,680, 30,683 (July 27, 1990). This Court upheld the promulgation of those regulatory bars to asylum as consistent with the statute. *See Yang v. INS*, 79 F.3d 932, 936-39 (9th Cir. 1996) (upholding regulatory implementation of the firm resettlement bar); *Komarenko v. INS*, 35 F.3d 432, 436 (9th Cir. 1994) (upholding regulatory implementation of the "particularly serious crime" bar). Later that same year, Congress amended both the asylum and withholding of removal statutes to preclude relief to aliens who had

8

been convicted of an aggravated felony.  *See* Immigration Act of 1990, § 515, Pub. L. 101-649, 104 Stat. 4978, 5053 (Nov. 29, 1990).

Finally, in 1996, Congress significantly amended the asylum statute when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. 104-208, div. C, 110 Stat. 3009-546 (1996) ("IIRIRA").  Section 604 of IIRIRA adopted the 1990 regulatory bars and added statutory bars to asylum for aliens who persecuted others, committed a serious non-political crime prior to entering the United States, or were involved in terrorist activities or organizations.  *See* 8 U.S.C. § 1158(b)(2)(A)(i)-(v).[8]  In addition to adopting the regulatory bars to asylum and adding several statutory bars, Congress explicitly authorized the Attorney General to designate by regulation offenses that will be considered a "particularly serious crime" or a "serious non-political crime."  8 U.S.C. § 1158(b)(2)(B)(ii).  Finally, Congress provided that "[t]he Attorney General may by regulation establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum under paragraph (1)." 8 U.S.C. § 1158(b)(2)(C).

---

[8]  The amended statute also provides that "an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime."  8 U.S.C. § 1158(b)(2)(B)(i).

**B.     The Rule Is Consistent With Section 208 Of The INA**

The district court concluded that the Rule is inconsistent with section 208 of the INA, 8 U.S.C. § 1158, because the criminal bars established by the Rule do not approach the seriousness of, and are not of the same nature as, the statutory criminal bars established by Congress in 1996.  Op. 19-24, 1-ER-21-26.  To be sure, the criminal bars to asylum that Congress established by statute correspond roughly to the exceptions set forth in Article 33 of the Protocol and the withholding of removal statute section 241(b)(3)(B), both of which exclude from protection individuals who are a danger to the security of the country or who have been convicted of a particularly serious crime and are therefore a danger to the community of that country.  *Compare* 8 U.S.C. § 1158(b)(2)(A)(ii)-(v) *with* 8 U.S.C. § 1231(b)(3)(B)(ii)-(iv).  But as explained above, prior to 1996, these statutory limitations on asylum did not exist, and the Executive Branch had broad discretion to grant or deny asylum unfettered by any statutory limitations apart from the aggravated felony bar that was enacted in 1990.  Indeed, nothing in section 208 as amended since 1980 indicates that Congress sought to constrain the Executive Branch's discretion to *deny* asylum in any way.  Instead, the mandatory bars to asylum set forth at 8 U.S.C. § 1158(b)(2)(A)(ii)-(vi) only constrain the Executive Branch's discretion to *grant* asylum.  In other words, after the enactment of the statutory bars to asylum at section 1158(b)(2)(A), the Executive Branch

could no longer *grant* asylum to an applicant to whom the mandatory bars to asylum apply. Or as the government puts it, section 1158(b)(2)(A) eliminates "the discretion to *grant* asylum for (among others) certain categories of criminals who *obviously* do not merit it." Appellant's Opening Brief ("Gov't Br.") at 20 (emphasis in original).

By construing section 208 in such a way that the agencies cannot designate offenses outside of the "particularly serious crime" context that would bar granting asylum, the district court turned section 1158 on its head and conflated asylum with withholding of removal. Under the withholding of removal statute, the agency must *grant* withholding unless an exception applies (or put another way, the agency may only *deny* withholding of removal if an exception applies). *See* 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General *may not remove an alien to a country* if the Attorney General decides that the alien's life or freedom would be threatened in that country" on account of a protected ground.); 8 U.S.C. § 1231(b)(3)(B)(i)-(iv) (listing exceptions to paragraph (A)). Under the asylum statute, in contrast, the agencies may *deny* asylum as a matter of discretion even if a mandatory bar does not apply. 8 U.S.C. § 1158(b)(1)(A) (providing that the agencies "may grant asylum" to an alien if it is determined that the alien is a refugee). The Executive Branch may not grant asylum, however, if a mandatory bar applies.

11

Thus, to the extent that the district court concluded that the statutory bars to asylum added to the statute in 1996 somehow preclude the agencies from adopting additional regulatory bars because such regulatory bars would not be "consistent with this section," Op. at 19-20, 1-ER-21-22, the district court erred. Nothing in the 1996 amendments to the asylum statute suggest that Congress intended to repeal the Executive's pre-existing discretion with respect to denying asylum. While it would plainly be inconsistent with section 1158 to contradict the categorical bars that Congress enacted, supplementing those categorical bars by regulation presents no logical inconsistency.

The agencies' discretion to deny asylum and to promulgate "additional limitations and conditions" by regulation under which an alien shall be ineligible for asylum is not constrained by the statutory bars to asylum. As explained above, the statutory bars to asylum limit the agencies' discretion to *grant* asylum but do not constrain the discretion to deny asylum. The district court appeared to concede this point inasmuch as it acknowledged "that for several decades, any criminal history outside of the statutory eligibility bars did not preclude asylum outright but was rather for the asylum adjudicator to weigh on a case by case basis." Op. at 25, 1-ER-27. To be sure, as this Court acknowledged in *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 846 (9th Cir. 2020) ("*EBSC IV*"), the statutory bars to asylum cover two broad categories: those who pose a threat to society and those who do

12

not need the protection of asylum in the United States.[9]  But as explained above, the asylum statute was enacted in order to "facilitate the assimilation and naturalization of refugees . . . ."  *Cardoza-Fonseca*, 480 U.S. at 440-41.  In light of this purpose, it would be "consistent with" section 1158 to constrain eligibility to aliens who respect and uphold the societal values of the United States.  *See* 85 Fed. Reg. at 67,242-43, 67,249, 67,252 (explaining that the Rule renders ineligible for asylum aliens who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States").

The additional criminal bars to asylum established by the Rule are not aimed solely at protecting society from individuals who pose a danger to others.  Inasmuch as the asylum statute corresponds with the assimilation and naturalization of refugees, the criminal bars established by the Rule are proper and consistent with the statutory framework enacted by Congress.  In proposing the Rule, the agencies noted:

> Felons, including those who are U.S. citizens, may lose certain privileges, including the ability to apply for Government grants and live in public housing. *See Estep v. United States*, 327 U.S. 114, 122 & n.13 (1946) (explaining that ''[a] felon customarily suffers the loss of substantial rights''); *see also*, *e.g.*, *Dist. of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008) (the Second Amendment does not prohibit laws

---

[9]  In *EBSC IV*, the Court ruled that the regulation being challenged in that case was inconsistent with section 1158 because it did not substantively comply with either the safe-third-country or firm-resettlement bars.  964 F.3d at 846-49.

disallowing the possession of firearms by felons). Treating a felony conviction as disqualifying for purposes of obtaining the discretionary benefit of asylum would be consistent with the disabilities arising from felony convictions in these other contexts and would reflect the serious social cost of such crimes.

84 Fed. Reg. 69640, 69647 (Dec. 19, 2019); *see also* 85 Fed. Reg. at 67216

(reiterating the same). Indeed, Congress has enacted laws that prohibit United

States citizens who have been convicted of certain crimes from exercising their

constitutional rights. For instance, any person who has been convicted in any court

of a crime punishable by imprisonment for a term exceeding one year, is an

unlawful user of or addicted to a controlled substance, or has been convicted of a

misdemeanor crime of domestic violence is prohibited from possessing a firearm.

18 U.S.C. § 922(g)(1), (3), (9). Similarly, many states prohibit citizens who have

been convicted of a felony from voting. *See*, *e.g.*, A.R.S. § 13-904, Iowa Const.

Art. 2, § 5, Ky. Const. § 145, Neb. Rev. St. § 29-2264, Va. Const. Art. 2, § 1.

Establishing additional limitations and conditions for asylum aimed at barring

aliens who have committed serious criminal conduct from obtaining asylum (and

eventually naturalization) is consistent with the asylum statute.

In sum, Congress enacted section 208 of the INA, 8 U.S.C. § 1158, to

provide for the assimilation and naturalization of refugees. The Rule published by

the agencies is consistent with that section because the Rule is aimed at limiting

asylum to aliens who respect the societal values of the United States and are

deserving of a path to citizenship. Importantly, the Rule does not prohibit any individual from receiving the protection he or she is eligible for under Article 33 of the Protocol because the Rule does not affect the eligibility criteria for withholding of removal under the INA or the Convention Against Torture. *See* 8 U.S.C. § 1231(b)(3)(B), 8 C.F.R. §§ 208.16(d)(2), 1208.16(d)(2). Because the Rule is consistent with the INA, the Government is likely to succeed on the merits.

## II. The Other *Winter* Factors Favor The Government

As the Government notes, Gov't Br. at 39, neither Plaintiffs nor the district court have identified a single alien who would be affected by the Rule.[10] The only harm alleged by Plaintiffs is that they will divert funding or resources to familiarizing themselves with the new Rule. Such self-inflicted injuries are not irreparable. *See Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("injury . . . may be discounted by the fact that [a party] brought that injury upon itself").

On the other hand, the injunction prevents the government from enacting the Rule that would prevent criminal aliens from obtaining asylum in the United States. As the Government points out in its brief, many aspects of the Rule are

---

[10] Even if they had identified an alien who would be affected by the Rule, the alien would be able to challenge the Rule through a petition for review with this Court. 8 U.S.C. § 1252(b)(9).

aimed at preventing dangerous aliens from receiving asylum. Gov't Br. at 38.

Accordingly, the public interest weighs in favor of the Government.

## CONCLUSION

For the foregoing reasons and those argued by the Government, this Court

should vacate the injunction.

DATED: January 26, 2021          Respectfully submitted,

                                         Christopher J. Hajec
                                         Director of Litigation

                                         /s/ Matt A. Crapo
                                         Matt A. Crapo
                                         Immigration Reform Law Institute
                                         25 Massachusetts Ave., NW, Suite 335
                                         Washington, DC 20001
                                         Telephone: (202) 232-5590

                                         Attorneys for *Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

1.    The foregoing brief complies with the type-volume limitation of Fed.

Fed. R. App. P. 29(a)(5) because:

This brief contains 3,835 words, including footnotes, but excluding the parts

of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using

Microsoft Word 365 in Times New Roman 14-point font.

DATED: January 26, 2021         Respectfully submitted,

/s/ Matt Crapo
Matt A. Crapo
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on January 26, 2021, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


/s/ Matt Crapo
Matt A. Crapo